**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 756-6994
Facsimile: (619) 756-6991

*Counsel for Plaintiffs and the Class*

[Additional counsel listed on signature page.]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARA CENTKO and JENN LAZAR, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KIA MOTORS AMERICA, INC., <br><br> Defendant. | Case No.: 8:17-cv-838 <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S CLASS ACTION COMPLAINT FOR:** <br><br> 1. VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, Civil Code §1750, *et seq.*; <br> 2. VIOLATION OF THE UNLAWFUL PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW; <br> 3. VIOLATION OF THE UNFAIR PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW; <br> 4. VIOLATION OF THE FRAUDULENT PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW; <br> 5. VIOLATION OF CALIFORNIA'S FAIR ADVERTISING LAW; <br> 6. BREACH OF EXPRESS WARRANTY; <br> 7. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; <br> 8. COMMON LAW FRAUD; and |

1

9.  BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

**DEMAND FOR JURY TRIAL**

///

///

///

Plaintiffs Cara Centko and Jenn Lazar bring this class action against Defendant Kia Motors America, Inc. ("KMA"), by and through their attorneys, individually and on behalf of others similarly situated, and allege as follows:

## INTRODUCTION

1.      This class action lawsuit is brought by Plaintiffs on behalf of a class of consumers who purchased or leased Model Year 2010-2017 KIA vehicles equipped with an I-4 DOHC engine ("Class Vehicles").

2.      This action arises from Kia's marketing, leasing, and sale of defective Class Vehicles to Plaintiffs and the Class members.  Kia represented to Plaintiffs and the Class members that the Class Vehicles are safe, usable vehicles and were backed with a limited warranty when in fact they contain a defect that results in premature failure of engine components and ultimately engine failure.

3.      On March 8, 2017 Plaintiffs sent a demined letter describing the claims in this complaint to Kia as required under the Consumer Legal Remedies Act, Cal. Civ. Code § 1782.

4.      On March 31, 2017, likely prompted by Plaintiffs' demand, Kia initiated a recall program of many of the vehicles identified in Plaintiffs' class definition, but not including Plaintiffs' 2015 Kia Sorento.

## JURISDICTION

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Kia is headquartered in this district, is subject to personal jurisdiction in this district, and

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

therefore is deemed to be a citizen of this district.  Additionally, Defendant has advertised in this district and have received substantial revenue and profits from their sales and leasing of Class Vehicles in this district; therefore, a substantial part of the events and omissions giving rise to the claims occurred, in part, in this district.

## PARTIES

### The Plaintiffs

7.     Plaintiff Cara Centko is a resident of Oregon, residing in Portland Oregon.

8.     Plaintiff Jenn Lazar is a resident of Oregon, residing in Portland Oregon.

9.     In September of 2014, Plaintiffs leased a 2015 KIA Sorento from Kia of Valencia in California. Both did so in reliance on Kia's representations that they were receiving a safe, usable vehicle.  However, in December 2016, the vehicle began experiencing major issues with the engine and it became noisier and noisier.  When Plaintiffs took the vehicle in to be inspected, they were told that oil sludge was causing the performance issues and ultimately Kia of Portland recommended they replace the engine.

10.     Plaintiffs had performed all things agreed to or required under the lease agreement and warranty, except as may have been excused or prevented by the conduct of Kia.  However, Kia refused to honor the warranty on the vehicle.

11.     Plaintiffs have suffered an ascertainable loss as a result of Defendant's omissions and misrepresentations associated with the Defect, including but not limited to out of pocket loss associated with the repair of the Defect as well as the diminished value of their vehicle occasioned by the Defect.

12.     Neither Kia nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the Defect or defective vehicle design, manufacture, or materials prior to purchase.  Similarly, despite efforts to get Kia to accept responsibility following manifestation of the Defect in Plaintiffs' Vehicle, Kia has continued to deny the existence of a Defect and to actively conceal its existence.

**Defendant**

13.   Defendant Kia Motors America, Inc. is a wholesale vehicle distributor and is a wholly-owned subsidiary of Kia Motors Corporation ("KMC").  Upon information and belief, Kia designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Class Vehicles.

14.   KMA is incorporated and headquartered in the State of California with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606.  KMA manufactures and distributes Kia vehicles and sells them throughout the United States through its network of dealerships.

15.   Upon information and belief, the distribution, service, repair, installation, and decisions related to the Defect in the Class Vehicles were performed exclusively by KMA. KMA is listed as the manufacturer on the Recall Report that covers the Class Vehicles.

## TOLLING AND STATUTES OF LIMITATIONS

16.   Any applicable statues of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Defect until shortly before this litigation was commenced.

17.   Defendant was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality, and nature of the Class Vehicles; that this Defect is based on a poor design, substandard materials, or material defects; and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.  As a result of the active concealment by Defendant, any and all applicable statutes of limitations have been tolled.

## FACTUAL ALLEGATIONS

**The Class Vehicles' Engines**

18.   Kia Motors Corporation ("KMC") was founded in 1944 under the laws of the Republic of Korea to manufacture and sell a range of passenger cars, recreational vehicles,

and other commercial vehicles in the domestic and international markets.[1]  Hyundai Motor Company holds 33.88 percent of KMC stock.  Kia Motors America, Inc. ("KMA") is a subsidiary of KMC and is located in the United States.  KMA is the exclusive importer and distributor of motor vehicles and parts.  Kia Motors Manufacturing Georgia, Inc. ("KMMG") is owned by KMA and manufactures and sells vehicles and parts from its facilities in West Point, Georgia.  More than 40% of Kia's vehicles, the Optima and Sorento, are built in West Point.[2]

19.  On its website, Kia touts that it "produces more than three million vehicles a year from 14 manufacturing and assembly operations in five countries.  These vehicles are sold and serviced through a network of distributors and dealers covering around 180 countries worldwide.  Globally, Kia has over 50,000 employees and annual revenues of nearly US$44 billion."[3]

20.  The Theta 2.0 liter and 2.4 liter engines contained in the Class Vehicles contain a gasoline direct-injection ("GDI") fuel delivery system.  Kia represents that the "GDI injects highly-pressurized fuel directly into the cylinders during the engine's combustion cycle.  The result is an increased quality of combustion and efficiency."[4] Further, Kia claims that "with GDI, the driver enjoys smooth, powerful acceleration and a longer time between refueling."[5]

---

[1] Kia Motors, Annual Report 2015, *available at* http://pr.kia.com/en/company/ir/ir-library/annual-report.do (last visited Apr. 12, 2017).
[2] http://www.kia.com/us/en/content/why-kia/built-in-the-usa/overview (last visited Apr. 12, 2017).
[3] http://www.kia.com/eu/company/kia-motors-corporation/ (last visited Apr. 12, 2017).
[4] http://www.kia.com/us/en/content/why-kia/leadership/performance (last visited Apr. 12, 2017).
[5] *Id.*

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

**The Defect and Resultant Engine Failures**

21.     Upon information and belief, the connecting rod bearings in the GDI engines undergo a prolonged failure as metal debris circulates throughout the engine via the engine oil.  Over time, and as a result of these contaminates in the oiling system, the connecting rod bearings begin to fracture.  Once the connecting rod bearings fracture, large amounts of metal debris begin to accumulate in the engine oil.  As a result, the oil becomes so contaminated with metal debris that the oil filter can no longer remove the plethora of contaminates and maintain the necessary oil pressure within the engine.  This contaminated engine oil is recirculated throughout the engine by the oil pump, causing damage to the various engine components and eventually results in sudden and unexpected catastrophic engine failure.  If the vehicle is being operated on the highway at the time of the engine failure, it will ultimately result in a high speed stalling event, as it did for some of the Class members.

22.     Additionally, as the connecting rod bearings continue to fracture, the acceptable tolerances between the bearings, the connecting rod, and the crankshaft rapidly deteriorate.  Eventually, the Class Vehicles begin producing a "knocking" sound originating from the engine as a result of the deteriorating bearings, as was the case for Plaintiffs.  In some instances, the defective connecting rod bearings may eventually cause the piston to break through the engine block as a result of the deterioration. Damage can also be caused to other key engine components.

23.     As a result of the Defect, the Class Vehicles suffer from restricted and inadequate engine oil lubrication.  In the Class Vehicles, the lubrication channels become clogged and restricted due to the Defect even under normal use and proper maintenance.  When the lubrication channels clog, engine oil is unable to be both pumped throughout the engine (through the oil pump) and is also unable to adequately return to the oil pan, which results in insufficient lubrication and premature wear of the engine components and engine failure.

**Complaints by Other Class Members**

24.    Plaintiffs' experiences are by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs or other websites where consumers have complained of the exact same Defect with the Class Vehicles.  Putting aside the numerous other websites that collect consumer complaints, the NHTSA website alone demonstrates the gravity of the Defect.  And it is well known that car manufacturers, in general, and Kia, in particular, closely monitor NHTSA complaints, so there can be no doubt that Kia has long known of this issue from the NHTSA website.  Additionally, a car re-design takes years of research and development to effectuate, further demonstrating Kia's presale knowledge of this Defect.  For example, until the last several years, the mere creation of a prototype of one new piece of an automobile would take 8 months, after which months of time were needed for additional testing, redesign time, and integration into the manufacturing process.6

25.    The Office of Defects Investigation ("ODI") is an office within the NHTSA, which conducts defect investigations and administers safety recalls to support the NHTSA's mission to improve safety on the highways.  The complaints submitted to ODI/NHTSA via their website are attached hereto as Exhibit A.

26.    Upon information and belief, at the time of lease to Plaintiffs, Kia had in its possession all relevant information concerning the Defect.

---

6 For a rough overview of the relevant timelines today, which have shortened since 2006-2007, *see* Mike Ramsey, *Design Revolution Sweeps the Auto Industry*, Oct. 20, 2013, *available at* http://www.wsj.com/articles/ SB10001424127887323968704578649862128698352 (last accessed, Nov. 20, 2015); *See also* http://blog.caranddriver.com/how-a-car-is-made-every-step-from-invention-to-launch/.

8

**The Recall**

27.     On March 31, 2017, Defendant issued a Part 573 Safety Recall Report ("Recall Report").   See Part 573 Safety Recall Report, 17V-224, *available at* https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V224-2355.PDF (last visited Apr. 28, 2017).

28.     The recall was announced shortly before Defendant's response to Plaintiffs' CLRA letter was due.  Plaintiff's vehicle is a 2015 Kia Sorento, so is not a part of the recall (which among other cars, covers the 2011-2014 Sorento), though it has the same engine.

29.     It appears Plaintiffs' demand letter was the impetus of the recall.

30.     The Recall Report indicates there are 618,160 vehicles potentially involved and estimates that 2% have the defect.  According to Defendant's estimate, there are over 12,000 vehicles that are defective.  The Recall Report impacts the following Kia vehicles: (1) 2011-2014 Kia Optima, including all 2011 -2013 MY Optima vehicles equipped with the 2.4L GDI and 2.0L Turbocharged GDI ("T-GDI") engines produced from August 12, 2010 through September 27, 2013, and all 2014 MY Optima vehicles equipped with the 2.4L GDI and 2.0L T-GDI engines produced at KMMG from August 28, 2013 through May 15, 2014, with engines supplied by Hyundai Motor Manufacturing Alabama; (2) 2012-2014 Kia Sorento, including All 2012-2014 MY Sorento vehicles equipped with the 2.4L GDI engines produced from April 19, 2011 through February 10, 2014; and (3) 2011-2013 Kia Sportage, including All 2011-2013 MY Sportage vehicles equipped with the 2.0L T-GDI engines produced from December 30, 2010 through August 30, 2013.[7]

31.     The Recall Report describes the defect:

Metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft which may not have been

---

[7] Part 573 Safety Recall Report, 17V-224, *available at* https://static.nhtsa.gov/odi/rcl/2017/ RCLRPT-17V224-2355.PDF (last visited Apr. 28, 2017).

completely removed from the crankshaft's oil passages during the cleaning process. In addition, the machining processes of the crankpins caused an uneven surface roughness.  As a result, the metal debris and uneven surface roughness can restrict oil flow to the bearings, thereby increasing bearing temperatures causing premature bearing wear.  A word connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the engine warning lamp and/or oil pressure lamp in the instrument panel.  If the warnings are ignored and the vehicle is continued to be driven, the bearing may fail and the vehicle could stall while in motion.[8]

32.    The Recall Report indicates that an engine stall at higher speeds can increase the risk of crash.[9]

33.    The Recall Report indicates it will notify all owners of the subject vehicles by mail regarding instructions to bring their vehicles to a Kia dealer, who will be instructed to the engine assembly and replace, if necessary.[10]  For individuals who already repaired their vehicles, the Recall Report states that Kia will reimburse owners for repair expenses already incurred pursuant to Kia's General Reimbursement Plan filed March 21, 2016.[11]

**Defendant's Warranty Practices**

34.    Kia provides a general warranty to the consumer for each product sold.[12]

35.    In its Warranty and Consumer Information Manual, which upon information and belief is provided to consumers upon lease or purchase of the Class Vehicles and is available online, Kia promises consumers will "be pleased by how strongly we stand

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] Kia Motors, Annual Report 2015, *available at* http://pr.kia.com/en/company/ir/ir-library/annual-report.do (last visited Apr. 12, 2017).

---

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

behind every Kia Vehicle."[13]  Kia's Limited Warranty provides that Kia will arrange for an Authorized Kia dealer "to provide for the repair of your vehicle if it fails to function properly during normal use."[14]  Kia promises consumers the "Authorized service facilities will remedy such failures to function properly at Kia's expense."[15]

36.    Basic Warranty Coverage covers "all components" of a new Kia vehicle for 60 months/60,000 miles from the Date of First Service.[16]  Power Train Coverage covers the following components in the engine for up to 120 months or 100,000 miles from the Date of First Service for Original Owners: cylinder block, cylinder head and all internal parts, timing gear, seals and gaskets, valve cover, flywheel, oil pump, water pump and turbo charger."[17]

37.    Despite consumers, including Plaintiffs, abiding by all maintenance requirements, Kia fails to honor its warranty on these engines.

## **CLASS ALLEGATIONS**

38.    Plaintiffs bring this action on their own behalf and on behalf of the following Classes pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.  Specifically, the Class consists of the following:

Nationwide Class.  All persons or entities in the United States who are current or former owners or lessees of a Class Vehicle.

---

[13] Kia, 2015 Warranty and Consumer Information Manual, *available at* http://www.kia.com/us/k3/content/media/all/warranty/2015_warranty.pdf (last visited Apr. 28, 2017).
[14] *Id.* at p. 4.
[15] *Id.*
[16] *Id.* at 5.
[17] *Id.*

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

39.     Excluded from the Class are Defendant, its affiliates, employees, officers, and directors; persons or entitles that purchased the Class Vehicles for resale; and the Judge(s) assigned to the case.  Plaintiffs reserve the right to modify, change, or expand the Class definition.

40.     <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that more than 600,000 Class Vehicles were sold or leased throughout the United States.

41.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

a. whether the Class Vehicles contain the Defect;

b. whether the engines in the Class Vehicles contain a design, workmanship/manufacturing, or material defect;

c. whether the defective design is common to all or some of the Class Vehicles;

d. if so, whether the Defect causes engine components to fail prematurely in the Class Vehicles;

e. whether Defendant knowingly failed to disclose the existence and cause of the Defect in the Class Vehicles;

f. whether Defendant's conduct violates California and the other statutes asserted herein;

g. whether as a result of Defendant's omissions and misrepresentations of material facts related to the Defect Plaintiffs and members of the Class have suffered ascertainable loss of monies, property, or value;

12

h. whether Plaintiffs and the Class members are entitled to monetary damages or other remedies and, if so, the nature of such relief

42.   <u>Typicality:</u>  All of Plaintiffs' claims are typical of the claims of the Class since they leased a Class Vehicle that contained the Defect as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct.   Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

43.   <u>Adequacy:</u>  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and their counsel intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

44.   <u>Superiority:</u>  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based

PLAINTIFF'S CLASS ACTION COMPLAINT

on, *inter alia*, Defendant's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

45.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

### CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et seq.*)
### (On Behalf of the Nationwide Class)

46.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

47.     Plaintiff brings this claim for violation of the CLRA on behalf of the Nationwide Class, or alternatively California Class.

48.     Under the CLRA, "goods" mean "tangible chattels bought or leased for use primarily for personal, family, or household purposes." CIV. CODE § 1761(a).

49.     The Products are "goods" under Civil Code section 1761(a).

50.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* § 1761(d).

51.     Plaintiff and the Class members are "consumers" under Civil Code section 1761(d).

52.     Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* § 1761(c).

53.     Defendant is a "person" under Civil Code section 1761(c).

54.     Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

55.     Defendant, on one hand, and Plaintiff and the Class members, on the other hand, engaged in "transactions" as the CLRA defines that term because, among other reasons, Defendant agreed to sell, and pursuant to that agreement sold, Class Vehicles to Plaintiff and the Class members.

56.     Defendant's actions, representations, and conduct violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods to consumers.

57.     Under section 1770(a) of the CLRA:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

* * *

(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

* * *

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

* * *

(9) Advertising goods or services with intent not to sell them as advertised;

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

* * *

(16) Representing that the subject of a transaction has been supplied in

accordance with a previous representation when it has not.

*Id.* § 1770(a).

58.    As alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(5) by representing the Class Vehicles have characteristics, uses, benefits, and qualities which they do not.  Specifically, Defendant represents the Class Vehicles are safe, usable, and defect-free when in fact they contain a Defect that causes engine components to fail prematurely.

59.    Further, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(7) by representing the Class Vehicles have characteristics, uses, benefits, and qualities which they do not.  Specifically, Defendant represents the Class Vehicles are safe, usable, and defect-free when in fact they contain a Defect that causes engine components to fail prematurely.

60.    Further, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(9) by representing the Class Vehicles as safe, usable, and defect-free with the intent to sell vehicles that contain a Defect causing premature engine failure.

61.    Finally, as alleged above, Defendant violated, and continues to violate, Civil Code section 1770(a)(16) by representing the Class Vehicles it sold to Plaintiffs and the Class members as safe, usable, and defect-free when in fact they contain a Defect that causes engine components to fail prematurely.

62.    Defendant violates the CLRA by representing through its marketing that the Class Vehicles as safe, usable, and defect-free, as described above, when it knows or should know that the representations are unsubstantiated, false, and misleading.

63.    Plaintiff and the Class members believe Defendant's representations that the Class Vehicles as safe, usable, and defect-free, and would not have purchased them but for Defendant's misleading statements.

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

64.     Plaintiff and the Class members are injured in fact and lost, and continue to lose, money as a result of Defendant's conduct of improperly describing the Class Vehicles as safe, usable, and defect-free.  Plaintiff and the Class members paid for safe, usable, and defect-free automobiles but did not receive such products because the Class Vehicles contain a Defect which causes premature engine failure.

65.     Upon information and belief, Defendant's actions were willful, wanton, and fraudulent.

66.     Upon information and belief, officers, directors, or managing agents at Defendant authorized the use of the misleading statements about the Class Vehicles.

67.     CLRA SECTION 1782 NOTICE.  On March 8, 2017, Plaintiffs, through counsel, sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, Plaintiffs would file a complaint seeking damages in accordance with the CLRA.  Defendant failed to comply with the letter.  For the foregoing reasons, pursuant to Civil Code section 1780(a)(3), Plaintiffs, individually and on behalf of all other Class members, seek compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

68.     Pursuant to Civil Code sections 1780 and 1782, Plaintiffs and the Class members seek damages in an amount to be proven at trial, an injunction to bar Defendant from continuing its deceptive practices, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE "UNLAWFUL" PRONG OF THE UCL
### (On Behalf of the Nationwide Class)

69.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

70.     California's Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent" business practice.  Cal Bus. & Prof. Code § 17200.  Defendant's marketing and sale of the Class Vehicles as safe, usable, and defect-free is "unlawful," "unfair," and "fraudulent."

71.     A business practice is "unlawful" under the UCL if it violates any other law or regulation.

72.     Defendant's conduct also violates various provisions of California's Consumer Legal Remedies Act, including Civil Code § 1770(a)(2), Civil Code § 1770(a)(5), Civil Code § 1770(a)(7), Civil Code § 1770(a)(9), and Civil Code § 1770(a)(16).

73.     As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and the other Class members. Specifically, Defendant has been enriched by obtaining revenues and profits it would not otherwise have obtained absent its false, misleading, and deceptive practices.

74.     Plaintiffs seek to enjoin further unlawful, unfair, and fraudulent acts and practices by Defendant, to obtains restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE "UNFAIR" PRONG OF THE UCL
### (On Behalf of the Nationwide Class)

75.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

76.     California's UCL prohibits any "unlawful, unfair, or fraudulent" business practice.  Cal. Bus. & Prof. Code § 17200.  Defendant's marketing and sale of the Class Vehicles as safe, usable, and defect-free is "unlawful," "unfair," and "fraudulent."

77.   A business practice is "unfair" under the UCL if the gravity of the harm to the victim outweighs the utility of the defendant's conduct.

78.   Defendant has violated, and continues to violate, the "unfair" prong of the UCL by luring consumers into buying the Class Vehicles by representing they are safe, usable, and defect-free, as discussed herein.

79.   The gravity of the harm to Plaintiffs and the Class members resulting from these unfair acts and practices outweighs any conceivable utility of Defendant's conduct.

80.   As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and the Class members. Specifically, Defendant has been enriched by obtaining revenues and profits it would not otherwise have obtained absent its false, misleading, and deceptive practices.

81.   Plaintiffs seek to enjoin further unlawful, unfair, or fraudulent acts and practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

### FOURTH CAUSE OF ACTION
### VIOLATION OF "FRAUDULENT" PRONG OF THE UCL
### (On Behalf of the Nationwide Class)

82.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

83.   California's UCL prohibits any "unlawful, unfair, or fraudulent" business practice.  Cal. Bus. & Prof. Code § 17200.  Defendant's marketing and sale of the Class Vehicles as safe, usable, and defect-free is "unlawful," "unfair," and "fraudulent."

84.   A fraudulent business practice is one in which members of the public are likely to be deceived.

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

85.     Defendant has violated, and continues to violate, the "fraudulent" prong of the UCL by luring consumers into buying the Class Vehicles by representing safe, usable, and defect-free as discussed herein.

86.     As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and the Class members. Specifically, Defendant has been enriched by obtaining revenues and profits it would not otherwise have obtained absent its false, misleading, and deceptive practices.

87.     Plaintiffs seek to enjoin further unlawful, unfair, or fraudulent acts and practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE FAIR ADVERTISING LAW
### (On Behalf of the Nationwide Class)

88.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

89.     This cause of action is brought under California's Fair Advertising Law, California Business & Professions Code §§ 17500 *et seq.* ("FAL").

90.     The FAL prohibits the dissemination of any advertising which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.

91.     Defendant represented, and continues to represent, that the Class Vehicles are safe, usable, and defect-free, which is untrue and misleading.   The marketing and advertising is unfair, deceptive, and misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.*

92.     Plaintiffs suffered injury in fact and a loss of money or property as a result of Defendant's acts and practices, which violate California Business & Professions Code §§ 17500, *et seq.*

### SIXTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class)

93.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

94.     Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  Defendant also expressly warranted it would repair or replace defects in material or workmanship free of charge during the warranty period.

95.     Defendant breached this warranty by selling Plaintiff and Class members the Class Vehicles with known problems that impacted the rotating assembly and engine block, which are not of high quality and which fail prematurely or fail to function properly.

96.     Defendant further breached express warranties by failing to honor them when the Defect manifested in the Class Vehicles.

97.     As a result of Defendant's actions, Plaintiffs and the Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

98.     Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

99.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs and the members of the Class.  Among other things, Plaintiffs and the Class members had no meaningful choice in determining

these time limitations, the terms of which unreasonably favored Defendant.  A gross disparity in bargaining power existed between Kia and Class members, and Kia knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

100.   Plaintiffs and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## SEVENTH CAUSE OF ACTION
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class)

101.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

102.   Defendant is a "merchant" within the meaning of the Uniform Commercial Code ("UCC").

103.   The Class Vehicles are "goods" as defined under the UCC.

104.   With the sale and lease of each Class Vehicle, Defendant impliedly warranted that the Class Vehicles were of merchantable quality.

105.   The Class Vehicles are not of merchantable quality due to the Defect, which causes premature engine failure, posing an unreasonable risk to driver and public safety, and potentially leading to thousands of dollars in repair expenses, costly and inconvenient maintenance, and risk of serious injury.  Therefore, the Class Vehicles are not fit for their purpose of providing reliable and safe transportation.

106.   Defendant's attempt to limit the duration of the applicable warranty period is unconscionable.   Among other things, Plaintiffs and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Kia and Class members, and Kia knew that the Class Vehicles were defective at the time of sale and

would fail well before their useful lives, yet chose to conceal that information, depriving Plaintiffs and Class members of the ability to make an informed decision with respect to their purchase or lease decisions.

107.   As a direct and proximate cause of Kia's breach of implied warranty, Plaintiffs and the other Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value.

### EIGHTH CAUSE OF ACTION
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class)**

108.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

109.   Defendant made material omissions concerning a presently existing or past fact.

110.   For example, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent defect with the Class Vehicles' engines, which was not readily discoverable until years later, or even after the warranty has expired.  As a result, Plaintiffs and the other Class members were fraudulently induced to lease or purchase the Class Vehicles, with said Defect and all of the resultant problems.

111.   These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and the Class members rely upon them.

112.   Plaintiffs and Class members reasonably relied upon these omissions and suffered damages as a result.

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838

## NINTH CAUSE OF ACTION
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (On Behalf of the Nationwide Class)

113.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as if fully set forth herein.

114.    Plaintiffs and each Class member's contract included an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

115.    Defendant breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiffs and Class members of the Defect in the Class Vehicles, and failing to fully and properly repair this Defect.

116.    Defendant acted in bad faith and with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request this Court:

A.    determine the claims alleged herein be maintained as a class action under Rule 23 of the Federal Rules of civil Procedure, and issue an Order certifying the Class defined herein;

B.    declare that the initiation of this litigation was the primary cause of Defendant's recall of many of the class vehicles;

C.    appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

D.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and the Class members are entitled;

24

E.    award pre-judgment and post-judgment interest on such monetary relief;

F.    grant appropriate injunctive or declaratory relief, including without limitation an Order that requires Defendant to repair, recall, or replace the Class Vehicles and extent the applicable warranties to a reasonable period of time or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design Defect;

G.    award reasonable attorneys' fees and costs; and

H.    grant such further relief that this Court deems appropriate.

Dated: May 10, 2017

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

*/s/ Todd D. Carpenter*

Todd D. Carpenter (CA#234464)
tcarpenter@carlsonlynch.com
402 W Broadway, 29th Floor
San Diego, CA 92101
Phone: (619) 756-6994
Fax: (619) 756-6991

Edwin J. Kilpela (to be admitted *pro hac vice*)
ekilpela@carlsonlynch.com
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq. (to be admitted *pro hac vice*)
*sultzerj@thesultzerlawgroup.com*
Adam Gonnelli, Esq. (to be admitted *pro hac vice*)
*Gonnellia@thesultzerlawgroup.com*
85 Civic Center Plaza, Suite 104

25

Poughkeepsie, New York 12601
Telephone: (854) 705-9460
Facsimile: (888) 749-7747

**HALUNEN LAW**
Melissa W. Wolchansky (to be admitted *pro hac vice*)
*Wolchansky@halunenlaw.com*
Amy E. Boyle (to be admitted *pro hac vice*)
*boyle@halunenlaw.com*
1650 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

**WALSH PLLC**

Bonner C. Walsh (to be admitted *pro hac vice*)
*bonner@walshpllc.com*
PO Box 7
Bly, Oregon 97622
Telephone:  (541) 359-2827
Facsimile:  (866) 503-8206
Email:  bonner@walshpllc.com

*Counsel for Plaintiffs and the Class*

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-cv-838