QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (Bar No. 187736)
shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Kari Wohlschlegel (Bar No. 294807)
kariwohlschlegel@quinnemanuel.com
Tina Lo (Bar No. 311184)
tinalo@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Defendant Kia Motors America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

Cara Centko and Jenn Lazar, on behalf of themselves and all others similarly situated,

Plaintiff,

vs.

Kia Motors America, Inc.,

Defendant.

CASE NO. 8:17-cv-00838

**DEFENDANT KIA MOTORS AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1), 12(B)(6), 9(B) and 8;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: August 25, 2017
Time: 2:30 p.m.

The Hon. Josephine L. Staton

Complaint Filed: May 10, 2017
Trial Date: None Set

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on August 25, 2017, at 2:30 p.m. or as soon thereafter as the matter may be heard, defendant Kia Motors America, Inc. ("KMA") will and hereby does move the above-entitled Court pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1) and 12(b)(6) to dismiss the claims identified below in plaintiffs' Class Action Complaint. This motion is made on the grounds that each of these purported claims fails to state a claim upon which relief can be granted. This motion is made following the conference of counsel pursuant to Local Rule 7-3 on June 23, 2017.

Specifically: (1) plaintiffs fail to state a UCL, CLRA, FAL or fraud claim because their allegations do not meet the particularity requirement of Fed. R. Civ. P. 9(b), they do not adequately plead KMA had knowledge of the purported defect at issue and they do not allege actual reliance; (2) plaintiffs fail to state a claim for breach of express warranty because they do not allege what express warranty KMA purportedly breached nor whether the purported defect manifested during the warranty period; (3) plaintiffs fail to state a claim for breach of implied warranty because their vehicle remains fit for use; (4) plaintiffs' claim for equitable relief is preempted by federal law; and (5) plaintiffs lack standing to assert claims related to vehicles they did not purchase.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the concurrently-filed Request for Judicial Notice, all pleadings on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

DATED: June 30, 2017

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Shon Morgan
Shon Morgan
Attorneys for Defendant Kia Motors America, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 3

LEGAL STANDARD .......... 5

I. PLAINTIFFS' UCL, CLRA, AND FAL CLAIMS FAIL .......... 6

- A. Plaintiffs' Misrepresentation Claims Are Subject to Rule 9(b) .......... 6
- B. Plaintiffs Do Not Plead Specific Misleading Statements .......... 7
- C. Plaintiffs Do Not Sufficiently Plead Reliance .......... 8
- D. There Are No Allegations KMA Knew About the Purported Defect at the Time of The Transaction .......... 9

II. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT .......... 11

III. PLAINTIFFS' EXPRESS WARRANTY CLAIM FAILS .......... 14

- A. Plaintiffs Do Not Allege An Enforceable Express Warranty .......... 14
- B. Puffery Does Not Create An Express Warranty .......... 15
- C. Plaintiffs Fail to Allege Their Vehicle Was Under Warranty When They Sought Repairs .......... 16
- D. Plaintiffs Fail To Allege Breach Of Any Express Warranty .......... 17

IV. PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY FAILS .......... 19

V. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING .......... 20

VI. PLAINTIFFS' REQUEST FOR A RECALL IS PREEMPTED .......... 21

VII. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS RELATING TO OTHER VEHICLE MODELS .......... 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acedo v. DMAX, Ltd.*, No. CV1502443MMMASX, 2015 WL 12912365 (C.D. Cal. July 31, 2015) ....................17, 18, 19

*Am. Suzuki Motor Corp v. Superior Court*, 37 Cal. App. 4th 1291 (1995) ....................19

*Baba v. Hewlett-Packard Co.*, No. C 09–05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ....................7, 8, 9

*Barakezyan v. BMW of N. Am., LLC*, No. CV1600173SJOGJSX, 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016) ....................16, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................6

*Belodoff v. Netlist, Inc.*, No. SA CV 07-00677 DOC(MLGx), 2008 WL 2356699 (C.D. Cal. May 30, 2008) ....................15

*Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018 (N.D. Cal. 2010) ....................6, 8

*Careau & Co. v. Sec. Pac.*, 222 Cal. App. 3d 1371 (1990) ....................20

*Chin v. Gen. Mills, Inc.*, No. 12–2150(MJD/TNL), 2013 WL 2420455 (D. Minn. June 3, 2013) ....................25

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ....................16

*Cohen v. Guidant Corp.*, No. CV–05–8070–R, 2011 WL 637472 (C.D. Cal., Feb. 15, 2011) ....................19

*Cox House Moving, Inc. v. Ford Motor Co.*, No. 7:06-1218-HMH, 2006 WL 2303182 (D.S.C. Aug. 8, 2006) ....................23

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ....................21

*Datel Holdings, Ltd.*, 712 F. Supp. 2d 974, 984 ....................5

*Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (Ct. App. 2006) ....................11, 16

*Davis v. Apperience Corp.*,
No. C 14–00766 WHA, 2014 WL 5528232 (N.D. Cal. 2014)....................21

*Doe v. SuccessfulMatch.com*,
70 F. Supp.3d 1066 (N.D. Cal. Sept. 30, 2014)....................8

*Edejer v. DHI Mortgage Co.*,
No. C 09-1302 PJH, 2009 WL 1684714 (N.D. Cal. 2009)....................20

*Env't Furniture, Inc. v. Bina*,
2010 WL 5060381, No. CV 09-7978 PSG (JCx), at *3 (C.D. Cal. Dec. 6, 2010)....................20

*Fisher v. Honda N. Am., Inc.*,
2014 WL 2808188 (C.D. Cal. June 12, 2014)....................18

*Green v. Green Mountain Coffee Roasters, Inc.*,
279 F.R.D. 275 (D.N.J. 2011)....................25

*Grodzitsky v. Am. Honda Motor Co.*,
No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013)....................10

*Hines v. Davidowitz*,
312 U.S. 52 (1941)....................22

*Hoey v. Sony Electronics, Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007)....................12

*In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*,
153 F. Supp. 2d 935 (S.D. Ind. 2001)....................23

*In re Homestore.Com, Inc. Sec. Litig.*,
347 F. Supp. 2d 814 (C.D. Cal. 2004)....................5

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010)....................5, 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010)....................17

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS(JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)....................25

*Johnson v. Mistubishi Digital Elecs. Am. Inc.*,
578 F. Supp. 2d 1229 (C.D. Cal. 2008)....................16

*Kearney v. Hyundai Motor Am.*,
No. SACV09–1298–JST(MLGx), 2010 WL 8251077 (C.D. Cal. Dec. 17, 2010)....................14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)....................6, 7

*Kowalsky v. Hewlett-Packard Co.*,
771 F. Supp. 2d 1156 (N.D. Cal. 2011) ..... 9

*Lewis v. Casey*,
518 U.S. 343 (1996) ..... 25

*Lilly v. Ford Motor Co.*,
No. 00 C 7372, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ..... 23

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..... 24

*MacRae v. HCR Manor Care Services*,
No. SACV 14–0715–DOC, 2014 WL 3605893 (C.D. Cal. July 21, 2014) ..... 8

*Mantolete v. Bolger*,
767 F.2d 1416 (9th Cir. 1985) ..... 24

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) ..... 12

*Mauro v. General Motors Corp.*,
No. CIV. S–07–892 FCD GGH, 2008 WL 2775004 (E.D. Cal. July 15, 2008) ..... 17

*Mlejnecky v. Olympus Imaging Am. Inc.*,
No. 2:10–CV–02630 JAM–KJN, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ..... 25

*Mocek v. Alfa Leisure, Inc.*,
114 Cal. App. 4th 402 (2003) ..... 19

*Oestreicher v. Allenware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ..... 8, 11, 14

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..... 6, 7, 9

*Osborne v. Subaru of Am. Inc.*,
198 Cal. App. 3d 646 (1988) ..... 16

*Park-Kim v. Daikin Industries, Ltd.*,
No. 2:15-cv-09523-CAS(KKx), 2016 WL 5958251 (C.D. Cal. Aug. 3, 2016) ..... 14

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) ..... 24, 27

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
11 Cal. App. 4th 1026 (1992) ..... 20

*Rice v. Sunbeam Prods., Inc.*,
No. CV 12–7923–CAS–(AJWx), 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ..... 11

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 23, 26

*Savage v. Jones*, 225 U.S. 501 (1912) .......... 22

*Schwartz v. Wright Med. Tech., Inc.*, No. EDCV1401615JGBSPX, 2014 WL 11320637 (C.D. Cal. Sept. 11, 2014) .......... 17

*Smith v. Ford Motor Co.*, 462 Fed. Appx. 660 (9th Cir. 2011) .......... 18

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010) .......... 13

*Swartz v. KPMG, LLP*, 476 F.3d 756 (9th Cir. 2007) .......... 6

*Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–cv–02965 SC, 2013 WL 5770542 (N.D. Cal. 2013) .......... 19

*Tae Hae Lee*, 992 F. Supp. 2d 962, 980 (C.D. Cal 2014) .......... 19

*Taragan v. Nissan North America, Inc.*, No. 09–3660 SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013) .......... 19

*Trinity Hotel Investors, LLC v. Sunstone OP Prop., LLC*, No. SA CV 07–1356 AHS(MLGx), 2009 WL 303330 (C.D. Cal. Feb. 6, 2009) .......... 20

*U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 15

*Vess v. Ciba-Geigy Crop. USA*, 317 F.3d 1097 (9th Cir. 2003) .......... 6

*Wallis v. Kia Motors America*, No. 8:16-cv-01033 (C.D. Cal. June 6, 2016) .......... 4, 5

*Wallis v. Kia Motors America*, No. 8:16-cv-01033 (C.D. Cal. Nov. 7, 2016) .......... 5

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) .......... 10, 11

*Yumul v. Smart Balance Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......... 7

**Statutes**

49 U.S.C. §§ 30101-30183 (2012) .......... 21

49 U.S.C. § 30118(a) .......... 22

49 U.S.C. § 30118(b)(2) ....................22
49 U.S.C. § 30118(d) ....................22
49 U.S.C. § 30119 ....................22
49 U.S.C. § 30119(a)(7) ....................25
49 U.S.C. § 30119(b) ....................22
49 U.S.C. § 30119(c)(1) ....................22
49 U.S.C. § 30119(d)(2) ....................22
49 U.S.C. § 30119(d)(3) ....................22
49 U.S.C. § 30119 (e) ....................22
49 U.S.C. § 30120 ....................22
49 U.S.C. § (a)(2) ....................22
49 U.S.C. § (c)(3) ....................22
49 U.S.C. § (d) ....................22
49 U.S.C. § (e) ....................22
Cal. Bus. & Prof. Code § 17500 ....................4
Cal. Com. Code § 2314(2) ....................19
Illinois Consumer Fraud and Deceptive Trade Practices Act (815 ILCS 505/1) ....................4

**Rules and Regulations**

Fed. R. Civ. P. 23 ....................24

**Preliminary Statement**

Plaintiffs' Complaint is a fraud case with no misrepresentation, and a warranty case with no breach. It instead involves a manufacturer that consistently provided voluntary, proactive support and remedies to customers with vehicle models that might be affected by a particular issue—above and beyond its contractual warranty obligations—being sued because it did not extend those same extraordinary steps to plaintiffs' *unaffected* model.

Specifically, KMA identified in 2016 a manufacturing issue that could result in lubrication-based connecting rod failures in the Theta II engine in some 2011-2014 model years of the Kia Optima, Sorento and Sportage. Kia Motors America voluntarily extended the warranties for these vehicles in mid-2016 and offered to reimburse customers who previously paid for such repairs. KMA upgraded those actions on March 31, 2017 by conducting a recall in conjunction with the National Highway Traffic Safety Administration. The additional benefit under the recall was to provide free inspections , but to only replace engines if an actual connecting rod lubrication defect was determined to exist. Although denominated as a safety recall, the notices unambiguously state that no affected consumer ever experienced a resulting accident or injury.

KMA determined no other model and model years were affected by the same issue, and thus no other Kia vehicle and customer received those extended warranty benefits. Nor did NHTSA conclude any other vehicles should be subject to a recall—including specifically plaintiffs' 2015 Sorento. Thus, that vehicle was not part of any remedial program.

In June 2016, after KMA had decided to extend the warranty for the connecting rod issue for the 2011-2014 Optima, KMA was sued in a purported class action regarding those Optima vehicle models and others. In connection with KMA's voluntary remedies, the class action claims were voluntarily dismissed before any court hearings on the matter.

Here, plaintiffs Cara Centko and Jenn Lazar contend their 2015 Sorento experienced engine noise and damage that a Kia dealer determined resulted from engine oil sludge caused by poor maintenance and thus was not covered by any warranty. Specifically, the engine did *not* experience any connecting rod failure such as that which occurred in some of the 2011-2014 models.

Lacking any factual connection between their issue and the proactive remedial programs KMA instituted for the earlier model years, plaintiffs have illogically speculated and now allege that the earlier connecting rod issue must also have affected them. Their purported class action seeks to represent all owners and lessees of 2011-2017 Theta II engines in all Kia models during those years. These claims disregard that owners and lessees of affected Theta II engines have already been provided full remedial benefits. Plaintiffs fail to allege any factual basis to conclude that the later model year Theta II engines had any identifiable connecting rod issue, or that their car suffered from anything but poor maintenance.

Consistent with a complaint based largely on surmise and hope, each claim suffers insurmountable pleading holes. Most significantly, the fraud-based allegations fail because plaintiffs do not identify any actionable fraud-based affirmative misrepresentations upon which they relied. They similarly do not plead any material omissions of which KMA was aware and was obliged to disclose, which affected their purchase/lease decision.

As to the breach of warranty claims, plaintiffs present no factual support that either their warranty contract was breached or, even more significantly, that any classwide breach of KMA's warranty repair obligations occurred. Rather, for the 2011-2014 model years, not only did KMA honor customer warranties, but it extended them and offered customers the opportunity to submit claims for previous repairs. Plaintiffs' remaining claims fail for various additional reasons detailed in this motion.

Independent of plaintiffs' failure to plead individual claims, they also lack standing to sue concerning other vehicle models and years they never owned or leased. In similar circumstances, courts have not hesitated to strike overbroad class definitions and limit any purported class to the model vehicle the named plaintiffs actually possess. That result is appropriate here, should any of plaintiffs' individual claims survive.

## Background

**Plaintiffs' Alleged Experience with their 2015 Sorento.** Plaintiffs leased a 2015 Sorento from Kia of Valencia in September 2014. (Compl. ¶ 9). Plaintiffs do not allege that they viewed any owner's manuals, advertisements or other marketing or informational materials related to the vehicle before leasing.

More than two years later, in December 2016, plaintiffs allegedly "began experiencing major issues with the engine and it became noisier and noisier." (*Id.*). Plaintiffs took their vehicle to Kia of Portland (where they now reside), which diagnosed the problem as oil sludge resulting from poor maintenance. Plaintiffs do not contend their engine failed while driving or were ever at risk of accident or injury. (*Id.*). The dealer recommended that they replace the engine. (*Id.*). Plaintiffs do not allege the vehicle mileage at the time of this incident or that the vehicle remained under warranty, though they contend Kia refused to honor the warranty. (*Id.* ¶ 10).

**Plaintiffs' Broad, Unspecified Purported Class.** Plaintiffs now allege that their vehicle, along with several other unspecified Kia models, contains a defect that results in build-up of metal debris in the engine oil that purportedly may lead to "sudden and unexpected catastrophic engine failure." (*Id.* ¶ 21). Plaintiffs sue not merely for buyers of their model year Sorento, but also on behalf of owners of unspecified Kia models that span eight years from 2010 to 2017. Plaintiffs connect their purported class only by stating that the vehicles at issue all contain an engine designated by Kia as the Theta 2.0 liter and 2.4 liter. They do not allege that the

engines of all these vehicles were identically designed or manufactured, or that the relevant marketing or warranty statements were the same for each model over this wide range of model years.

As evidentiary support for their broad class, plaintiffs reference customer complaints that appear on the NHTSA website. (Compl. ¶¶ 24-25). The earliest complaint identified by plaintiffs was submitted in October 2014, one month after plaintiffs leased their vehicle in September 2014. (Compl. Ex. A). Most of the NHTSA submissions either fail to identify which vehicle was allegedly affected, or discuss issues they experienced with vehicles other than the 2015 Kia Sorrento. (*Id.*).

**KMA Already Addressed Any Issues With Potentially Affected Vehicles.**

In 2016, KMA's regular ongoing review of warranty data and customer feedback revealed a heightened number of issues surrounding engine lubrication for certain model years of the Kia Optima, Sportage, and Sorento.[1]

On June 2, 2016, KMA was sued in a purported class action in the United States District Court for the Central District of California, Southern Division, concerning engine lubrication issues with the 2011-2014 model year Optima, 2011-2014 Sportage, and 2012-2014 Sorento. That action, *Wallis v. Kia Motors America*, Case No. 8:16-cv-01033-AG-DFM, asserted claims under the CLRA, UCL, California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et. seq.*); Illinois Consumer Fraud and Deceptive Trade Practices Act (815 ILCS 505/1 *et seq.*); and for breach of warranty.[2]

---

[1] Some of the discussion in this section is offered merely as background and is not necessary to resolve any issues in this motion. Fact citations are provided where appropriate.

[2] Complaint, *Wallis v. Kia Motors America*, No. 8:16-cv-01033 (C.D. Cal. June 6, 2016), ECF No. 1 (Ex. D). The Court may take judicial notice of exhibits D and E attached to the Request for Judicial Notice because they are court records from

KMA notified owners of the 2011-2014 Optima that KMA was extending the warranty coverage for the "short block" engine assembly on Optima vehicles with a 2.4L GDI or 2.0L Turbo GDI engine to 10 years starting from the date of first service or 120,000 miles, whichever occurs first.[3] This warranty extension was then also provided to owners of the 2011-2014 Sportage and 2012-2014 Sorento.[4] In light of these and other remedial efforts by KMA, the plaintiffs in the *Wallis* class action agreed to dismiss the case on November 7, 2016.[5]

KMA continued to monitor the situation with respect to all its vehicles. On March 31, 2017, in coordination with NHTSA, KMA issued a recall ("Part 573 Safety Recall Report") for this engine lubrication issue for the 2011-2014 Optima; 2012-2014 Sorento; and 2011-2013 Sportage. KMA did not conclude any action was warranted regarding plaintiffs' model year Sorento or other vehicles falling within their class definition.

**<u>Legal Standard</u>**

To withstand a motion to dismiss, the complaint must plead sufficient facts to state a claim that is plausible on its face. *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1086 (S.D.

---

another proceeding. *In re Homestore.Com, Inc. Sec. Litig.*, 347 F. Supp. 2d 814, 816 (C.D. Cal. 2004) ("[A] court may take judicial notice of court records and court proceedings."). All exhibits cited in this memorandum are attached to KMA's concurrently filed Request for Judicial Notice.

[3] June 10, 2016 letter from KMA to owners of the 2011-2014 model year Optima vehicles (Ex. A). The Court may take judicial notice of exhibits A, B, and C because their contents and existence are readily confirmable. *Datel Holdings, Ltd.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010) (taking judicial notice of portion of product packaging).

[4] August 24, 2016 letter from KMA to owners of the 2011-2014 model year Sportage vehicles (Ex. B); August 29, 2016 letter from KMA to owners of the 2012-2014 model year Sorrento vehicles (Ex. C).

[5] Stipulation to Dismiss Case, *Wallis v. Kia Motors America*, No. 8:16-cv-01033 (C.D. Cal. Nov. 7, 2016), ECF No. 23 (Ex. E).

Cal. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is obligated to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1087. A court may not assume the plaintiff can prove facts that have not been alleged, nor may the court assume the defendant has violated laws in a way that has not been alleged. *Id.*

Claims premised on fraudulent conduct must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." This means the plaintiff must state "the who, what, when, where, and how" of the misconduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-26 (9th Cir. 2009) (upholding dismissal of UCL and CLRA claims because plaintiff failed to plead the "particular circumstances" surrounding the alleged misrepresentations, what the advertisements "specifically stated," who made what representations, and when the plaintiff heard them); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1045 (N.D. Cal. 2014) (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 765 (9th Cir. 2007)) (Allegations of misrepresentations must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."). Additionally, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1030 (N.D. Cal. 2010) (quoting *Vess v. Ciba-Geigy Crop. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Allegations that fail to meet this standard "should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124.

## I. PLAINTIFFS' UCL, CLRA, AND FAL CLAIMS FAIL

### A. Plaintiffs' Misrepresentation Claims Are Subject to Rule 9(b)

Plaintiffs' claims under the UCL, CLRA and FAL are premised on KMA's purported "fraudulent business practices," "misrepresentations," and

"conceal[ment]" of the alleged defect. (Compl. ¶¶ 12, 65, 84-85, 90-91). Accordingly, the claims sound in fraud and are subject to the heightened pleading requirements of Rule 9(b). *See Kearns*, 567 F.3d at 1125 (dismissing CLRA and UCL claims premised on fraudulent course of conduct for failing to meet Rule 9(b) pleading standards); *Opperman*, 87 F. Supp. 3d at 1045-52 (dismissing UCL, FAL, and CLRA claims for failing to satisfy heightened pleading standards). Where, as here, plaintiffs allege a "unified course of fraudulent conduct," the heightened pleading standard applies to the pleading as a whole even if fraud is not a necessary element of the claim. *Kearns*, 567 F.3d at 1125.

**B. Plaintiffs Do Not Plead Specific Misleading Statements**

The mere fact that a product did not meet the plaintiff's expectations is not sufficient to state a cause of action. *See Baba v. Hewlett-Packard Co.*, No. C 09–05946 RS, 2010 WL 2486353, at *4 n.2 (N.D. Cal. June 16, 2010). To establish fraud-based claims, a plaintiff must plead what the advertisements or representations "specifically stated," and the "particular circumstances" surrounding the alleged misrepresentations. *Kearns*, 567 F.3d at 1124-26; *Yumul v. Smart Balance Inc.*, 733 F. Supp. 2d 1117, 1123-25 (C.D. Cal. 2010) (dismissing UCL and CLRA claims for failure to plead "with particularity when, where, and how the alleged misrepresentations were communicated").

Plaintiffs' CLRA, UCL, and FAL claims are premised on the contention that KMA falsely represented the class vehicles were "safe, usable, and defect-free . . . ." (Compl. ¶ 62 (CLRA); ¶¶ 78, 85 (UCL); ¶ 91 (FAL). But plaintiffs fail to identify *any* specific statement or advertisement containing these representations, much less when the statements were made, in what medium they were distributed, and who made the misleading statements. *See Baba*, 2010 WL 2486353, at *5 (citations omitted) (allegation that defendant "warranted that the computers would be 'free from defects' [and] promised to repair the computers if a defect existed" did

not "'provide the who, what, where, when, and how' of any affirmative misrepresentations as required under Rule 9(b)")

Plaintiffs identify only three sets of statements attributable to KMA: (i) KMA's website describing its manufacturing operations, (ii) descriptions that the Theta 2.0 liter and 2.4 liter engines feature "smooth, powerful acceleration and a longer time between refueling," and (iii) statements in the Warranty and Consumer Information Manual promising consumers will "be pleased by how strongly we stand behind every Kia Vehicle" and the warranty program will "provide for the repair" of vehicles that fail to function. (Compl. ¶¶ 19-20, 35). However, plaintiffs fail to allege how these statements are untrue or misleading. *Briosos*, 737 F. Supp. 2d at 1030 (quoting *Vess*, 317 F.3d at 1106) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."); *see also Baba*, 2010 WL 2486353, at *4 ("[W]arranties that the tablets are 'free from defects,' or 'promises to repair' do not become untrue statements under CLRA simply because the computers had defects."). Moreover, these statements are too generalized to constitute anything more than non-actionable puffery. *Sony*, 758 F. Supp. 2d at 1089 (generalized, vague, or highly subjective claims of product quality constitute non-actionable puffery); *Oestreicher v. Allenware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (statements regarding "longer battery life," "faster access to data," or "higher performance" constitute non-actionable puffery).

**C. Plaintiffs Do Not Sufficiently Plead Reliance**

Plaintiffs also fail to allege they saw and relied upon any particular misrepresentation. *See Doe v. SuccessfulMatch.com*, 70 F. Supp.3d 1066, 1076 (N.D. Cal. Sept. 30, 2014) (actual reliance element in fraud-based UCL claim requires plaintiffs to plead "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct"); *MacRae v. HCR Manor Care Services*, No. SACV 14–0715–DOC, 2014 WL 3605893, at *4 (C.D. Cal. July 21, 2014) (plaintiff "fails to plead a violation of the CLRA because he

neither alleges actual reliance, nor meets the 9(b) heightened pleading standard for claims sounding in fraud"); *Opperman*, 87 F. Supp. 3d at 1045 (N.D. Cal. 2014) (misrepresentation claims under UCL, FAL, and CLRA require plaintiffs to plead injury and causation).

Here, plaintiffs make only conclusory group allegations of reliance: "Plaintiff[s] and the Class members believe[d] Defendant's representations that the Class Vehicles as [sic] safe, usable, and defect-free, and would not have purchased them but for Defendant's misleading statements." (Compl. ¶ 63). Nowhere do the two named plaintiffs contend they *read* or were otherwise exposed to the representations, much less relied on them, before leasing their vehicle. *Opperman*, 87 F. Supp. 3d at 1047 (dismissing UCL, FAL, and CLRA claims because plaintiff failed to allege she read and relied on misleading statements from defendant's website). Similarly, with regard to the statements KMA purportedly made on its website and in the warranty manual (Compl. ¶¶ 19-20, 35), plaintiffs nowhere suggest they reviewed and relied on such statements in making their leasing decision.

### D. <u>There Are No Allegations KMA Knew About the Purported Defect at the Time of The Transaction</u>

For a misrepresentation to be actionable, plaintiffs must demonstrate that KMA knew of the purported defect (and falsity of any statement) at the time of plaintiffs' transaction. *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) (A defendant cannot be "liable under the CLRA for representations about [a product's] characteristics that are rendered misleading due to a defect of which [the defendant] did not know, or of which it did not have reason to know, at the time [the defendant] made the representations." ); *Baba*, 2010 WL 2486353, at *4 ("[T]he failure to fulfill promises under a limited warranty is simply a contractual breach that does not become actionable under CLRA without proof of

more, such as the fact that the defendant sold a product it was aware was defective.").

The Complaint states without supporting averments that Kia had "presale knowledge of this Defect." (Compl. ¶ 24). In lieu of supporting facts, plaintiffs cite customer complaints regarding a variety of Kia vehicle models that were lodged with NHTSA *after* plaintiffs leased their vehicle. (*Id.* ¶¶ 24-25, Ex. A). Second, plaintiffs allege without further explanation that "years of research and development" are necessary to re-design a prototype, (*id.* ¶ 24), suggesting without basis in fact or common experience that field failures occurring long after a product has been sold and used (more than two years in plaintiffs' case) would necessarily be identified in the research and development process.

In *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136 (9th Cir. 2012), the Ninth Circuit rejected similarly attenuated allegations of a defendant's knowledge in affirming dismissal of UCL and CLRA claims. 668 F.3d at 1145-48. The plaintiffs in *Wilson* alleged: (i) the defendant had access to data regarding the claimed defect; (ii) there was another lawsuit involving the same defect in a different model; and (iii) several customer complaints were made regarding the defect. *Id.* at 1146. The court, however, found these allegations insufficient because they were speculative, the lawsuit did not involve the plaintiffs' product, and none of the customer complaints pre-dated the plaintiffs' purchase. *Id.* at 1146-48.

So here. Complaints to NHTSA regarding *other* vehicles lodged *after* plaintiffs leased their Sorento do not plausibly give rise to the conclusion that KMA knew of an alleged defect in plaintiffs' vehicle at the time of the lease. *Grodzitsky v. Am. Honda Motor Co*., No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) (plaintiffs cannot "establish a plausible inference of knowledge based on their allegation that Defendant received customer complaints *after* the sales of the vehicles in question."). Just as clearly, if the mere fact that car design requires significant advance time sufficed to show knowledge of a later-

manifesting defect, a presumption would have developed that all auto manufacturers are aware of defects at the time of sale. That is not and has never been the law.

Plaintiffs also vaguely refer to "blogs or other websites where consumers have complained of the exact same Defect with the Class Vehicles." (Compl. ¶ 24). Plaintiffs, however, do not state when any of these purported complaints were made nor that KMA would have plausibly been exposed to the complaints, and thus these sources cannot provide basis to conclude KMA knew of the alleged defect. *See Rice v. Sunbeam Prods., Inc.*, No. CV 12–7923–CAS–(AJWx), 2013 WL 146270, at *7 (C.D. Cal. Jan. 7, 2013) ("Because plaintiff's allegations are lacking in factual support or specificity as to defendant's knowledge of the purported defect, plaintiff's claim based on a theory of omission is insufficient."); *Kowalsky*, 771 F. Sup. 2d. at 1160-63 (dismissing UCL and CLRA claims because the plaintiff "did not sufficiently allege facts raising a plausible inference that [the defendant] knew, or by the exercise of reasonable care should have known, of the alleged defect in the [product]").

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT

Plaintiffs assert that KMA "fraudulently induced" plaintiffs to lease a vehicle by not fully disclosing the purported defect to its customers. This claim fails, however, because plaintiffs do not allege KMA was obliged to disclose the information or was even aware of it when plaintiffs leased their vehicle.

Federal courts applying California law have generally rejected a broad obligation to disclose information. *See, e.g., Wilson*, 668 F.3d at 1141. A manufacturer may only be held liable for fraud if the omission is "contrary to a representation actually made by the defendant or an omission of fact that the defendant was obliged to disclose." *Id.* (quoting *Daugherty v. American Honda Motor Co*., 144 Cal. App. 4th 824, 835 (Ct. App. 2006)); *Oestreicher*, 544 F. Supp. 2d at 971 ("[A] manufacturer's duty to consumers is limited to its warranty

obligations absent either an affirmative misrepresentation or a safety issue."). As with other fraud-based claims, a plaintiff alleging fraudulent concealment must satisfy Rule 9(b). *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1000-02 (N.D. Cal. 2009). This means the plaintiff must plead the circumstances of the fraudulent omission with specificity:

> [T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.

*Id.* at 1002. Plaintiffs fall far short of this standard—they fail to allege KMA had a duty to disclose any information, much less plead facts demonstrating "where the omitted information should or could have been revealed."

First, plaintiffs have not identified any contrary representations made by KMA that would trigger its obligation to disclose information regarding the purported defect. *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (dismissing fraudulent concealment claim because complaint did not identify any representations by defendant that product would be defect-free). Plaintiffs rely on generalized allegations that KMA represented its vehicles as "safe, usable, and defect-free," but do not point to any specific statements or advertisements to support this allegation. The court in *Hoey v. Sony Electronics, Inc.*, rejected this type of barebones pleading:

> [P]laintiffs should note that the court is not satisfied that the allegations sufficiently allege fraudulent conduct. For example, the allegations in paragraph ¶ 9 stating, *inter alia,* that "Sony concealed from and/or failed to disclose ... the true defective nature of the Affected Computers" and that it "sold and serviced the Affected Computers even though it knew, or was reckless in not knowing, that the Affected Computers were defectively designed, would prematurely fail and would ultimately result in [the] inability to use the[ ] Affected Computers for their intended use" are so general that

> the same statement could be made of regarding any design defect in any product. The same is true of plaintiff's allegations in ¶ 81, which assert generically that Sony was in a superior position to know the facts about the defects, that it made "partial disclosures about the quality of the Affected Computers while not revealing their true defective nature" and that it "fraudulently and actively concealed the defective nature of the Affected Computers."

*Id.* at 1106. Plaintiffs' allegations are similarly generic and substantively do nothing more than recite the elements of the claim. (*See* Compl. ¶¶ 110 ("Defendant did not fully and truthfully disclose to its customers the true nature of the inherent defect"), 111 ("These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and the Class members rely upon them."), 12 ("Kia has continued to deny the existence of a Defect and to actively conceal its existence.")). This failure alone warrants dismissal.

Second, plaintiffs have not sufficiently alleged a safety risk that would trigger KMA's duty to disclose. Plaintiffs describe a variety of consequences they claim can be associated with the purported defect: circulation of contaminated engine oil that "results in sudden and unexpected catastrophic engine failure," "a high speed stalling event," "a 'knocking' sound originating from the engine as a result of the deteriorating bearings," and "premature wear of the engine components and engine failure." (Compl. ¶¶ 21-23). But notably, plaintiffs experienced only *one* of these purported manifestations: the knocking sound. (*See id.* ¶ 9). A sound does not pose a safety risk, and the alleged potential for "a high speed stalling event" is too speculative to give rise to a disclosure obligation. *Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 663 (9th Cir. 2011). NHTSA has declined to investigate vehicular defects under similar circumstances, finding the risk associated with the potential for stalling was reduced by the progressive nature of the damage which gave consumers sufficient notice. *See* Denial of Motor Vehicle Defect Petition, 66 FR 55243-01 (Nov. 1, 2001) (noting that expenditure of agency's investigative resources is unwarranted because "the distributor bearing failure on these vehicles is almost

always progressive, and . . . warnings such as significant bearing noise, poor engine performance, and starting difficulty are clearly evident to the operator long before the bearing seizes and causes the engine to stop running"). Plaintiffs here claim merely the inconvenience of a "noisy" engine, not an accident, injury, or a plausible imminent risk of one. Consequently, they fail to plead that KMA owed a duty to disclose.

Finally, plaintiffs cannot allege KMA was aware of the purported defect before plaintiffs leased their vehicle, and a manufacturer cannot disclose information of which it is not aware. *Oestreicher*, 544 F. Supp. 2d at 974 (dismissing fraudulent concealment claim because no basis to allege the defendant knew of and concealed the defect).

## III. PLAINTIFFS' EXPRESS WARRANTY CLAIM FAILS

### A. Plaintiffs Do Not Allege An Enforceable Express Warranty

Under California law, "to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty." *Kearney v. Hyundai Motor Am.*, No. SACV09–1298–JST (MLGx), 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010); *Park-Kim v. Daikin Industries, Ltd.*, No. 2:15-cv-09523-CAS(KKx), 2016 WL 5958251, at *15 (C.D. Cal. Aug. 3, 2016) ("Where, as here, plaintiffs' 'action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference.'").

Here, plaintiffs' generalized statements that "Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly" and that KMA "would repair or replace defects in material or workmanship free of charge during the warranty period," (Compl. ¶ 94), lack sufficient specificity to plead a warranty claim. *See Kearney*, 2010 WL 8251077, at *9 (dismissing express warranty claim to the extent it was based on "general statements" concerning the warranty).

The Complaint does cite a few out-of-context excerpts from the KMA Warranty and Consumer Information Manual, (Compl. ¶ 35-36), but without the critical qualifying language that also appears, which is shown in italics below:

> *Subject to the other terms and conditions of this limited warranty manual,* Kia Motors America, Inc. ("Kia") warrants that it will arrange for an Authorized Kia dealer at locations of its choice to provide for the repair of your vehicle if it fails to function properly during normal use. Authorized service facilities will remedy such failures to function properly at Kia's expense, if you present your vehicle to such a service facility during its normal operating hours, provide sufficient information to permit a proper identification and diagnosis of the failure to function, and permit the facility adequate time to perform the necessary repairs. *As this obligation is subject to the terms, conditions and limitations of this manual, you should refer to the manual to understand which repairs and replacements are covered by this warranty.*

(Emphasis added).[6] Plaintiffs' selective quotation of 40 words from a 100-page warranty manual that contains important limitations as to the cited passages shows precisely why a plaintiff is required to plead the exact terms of the express warranty they contend have been breached.

**B. <u>Puffery Does Not Create An Express Warranty</u>**

Other purported misrepresentations, such as that the vehicles are of "high quality" or a purchaser will "be pleased by how strongly we stand behind every Kia Vehicle" are not sufficiently "specific and unequivocal" to constitute express

---

[6] KMA's warranty is incorporated by reference in the complaint and forms the basis of plaintiffs' express warranty claim. (Compl. ¶¶ 35-36, 94) ("Warranty"). For this reason, the Court may take judicial notice of the warranty (Ex. F). *See Belodoff v. Netlist, Inc.*, No. SA CV 07-00677 DOC (MLGx), 2008 WL 2356699, at *4 (C.D. Cal. May 30, 2008) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)) ("The defendant may offer documents referenced heavily in the complaint or documents that form the basis of the plaintiff's claim, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).").

warranties. *Park-Kim*, 2016 WL 5958251, at *15 (quoting *Rice*, 2013 WL 146270, at *11) ("Under California law, 'to create a warranty, representations regarding a product must be specific and unequivocal.'"); *Barakezyan v. BMW of N. Am., LLC*, No. CV1600173SJOGJSX, 2016 WL 2840803, at *6 (C.D. Cal. Apr. 7, 2016) ("[A]dvertising that merely states in general terms that one product is superior is not actionable."); *Osborne v. Subaru of Am. Inc.,* 198 Cal. App. 3d 646, 660 n.8 (1988) (manufacturers "are permitted to 'puff' their products by stating opinions about the quality of the goods"); *Johnson v. Mistubishi Digital Elecs. Am. Inc.,* 578 F. Supp. 2d 1229, 1238 (C.D. Cal. 2008) (summary judgment on express warranty claim because statement that television had "unsurpassed picture quality" was "merely sales puffery").

### C. **Plaintiffs Fail to Allege Their Vehicle Was Under Warranty When They Sought Repairs**

An "express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citation omitted); *Daugherty*, 144 Cal. App. 4th at 830 (noting that "[s]everal courts have expressly rejected the proposition that a latent defect, discovered outside the limits of a written warranty, may form the basis for a valid express warranty claim if the warrantor knew of the defect at the time of sale").

KMA's Basic Warranty Coverage covers new KMA vehicles for 60 months or 60,000 miles. The Power Train Coverage covers certain engine components for up to 120 months or 100,000 miles. These limited warranties exclude certain items or repairs from coverage and require owners to properly operate and maintain their vehicles, retain maintenance records, and take vehicles to authorized dealers in order to maintain coverage. (Ex. F (Warranty) at 8-13). Plaintiffs do not allege both that they were within the mileage limitations and that they performed all required maintenance and retained appropriate records. In fact, it appears from plaintiffs'

description of events that the dealer rejected their warranty claim precisely on the basis of the maintenance history.

These specific circumstances putting their warranty compliance at issue cannot be overcome by plaintiffs' conclusory allegation that they "have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein." (Compl. ¶ 100). *Acedo v. DMAX, Ltd.,* No. CV1502443MMMASX, 2015 WL 12912365, at *18 (C.D. Cal. July 31, 2015) (quoting *Mauro v. General Motors Corp.*, No. CIV. S–07–892 FCD GGH, 2008 WL 2775004, *9 (E.D. Cal. July 15, 2008)) ("Here, the complaint's sole allegation regarding the express warranty claim is the following: 'plaintiffs have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented ....' With no other facts relating to any actions by or towards the class members, the allegation is, once again, more akin to a statement of a legal requirement than a factual allegation.").

### D. Plaintiffs Fail To Allege Breach Of Any Express Warranty

A threshold requirement of breach of warranty is that plaintiffs "read or relied on [KMA's statement] before entering into [their] lease agreement with [KMA]." *Barakezyan*, 2016 WL 2840803, at *6. Although plaintiffs contend they "leased a 2015 Kia Sorento . . . in reliance on Kia's representations they were receiving a safe, usable vehicle," they do not describe the representation, where it was made, or how they were exposed to it before leasing their vehicle. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010) ("Plaintiffs cannot base a claim on [an express warrant created by representations in advertisements] in the absence of allegations that they were exposed to them."); *Schwartz v. Wright Med. Tech., Inc.*, No. EDCV1401615JGBSPX, 2014 WL 11320637, at *4 (C.D. Cal. Sept. 11, 2014) ("[P]laintiff must have actually been exposed to the advertising").

Second, plaintiffs have not alleged any facts to demonstrate KMA breached an express warranty. Even were statements touting "smooth, powerful acceleration" (Compl. ¶ 20), and that customers will "be pleased" (*id.* ¶ 35), not mere puffery, the only engine-related issue plaintiffs identify is that "it became noisier and noisier." (*Id.* ¶ 9). Plaintiffs do not contend the vehicle was no longer operational or suffered other performance-related issues. *Barakezyan*, 2016 WL 2840803, at *7 (dismissing a breach of express warranty claim where the brakes were emitting "a loud, annoying noise when utilized," as there was no allegation that the brakes themselves did not work properly).

Further, courts have rejected mere conclusory allegations, such as plaintiffs make here, that a defendant breached a warranty to repair. (Compl. ¶ 10). *See Acedo*, 2015 WL 12912365, at *19 (finding insufficient the allegation that the "[Defendant] breached the express warranty by . . . refusing to honor the express warranty by repairing or replacing, free of charge [the alleged defect] and instead, charging for repair and replacement parts."). Plaintiffs ignore the limitations contained in the written warranty and do not allege the Kia dealer was unjustified in suggesting their vehicle did not qualify for warranty coverage under those terms. "Without such factual allegations, [their] allegation amounts to nothing more than a legal conclusion which fails to give rise to a plausible claim under *Twombly* and *Iqbal*." *Id.* at *18.[7]

---

[7] Plaintiffs passingly suggest, with no specificity, that the limitations of KMA's warranty are unconscionable. (Compl. ¶¶ 98-99, 106). But vehicle warranties that contain similar provisions are routinely deemed both procedurally and substantively fair. *See Fisher v. Honda N. Am., Inc.*, 2014 WL 2808188, at *9-10 (C.D. Cal. June 12, 2014) (durational limits on an auto warranty not procedurally unconscionable because of the availability of alternative vehicles; not substantively unconscionable because no allegation the defendant was aware of the defect at the time of the warranty); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 993-994 (N.D. Cal. 2010) (no procedural unconscionability because buyers have other options when purchasing vehicles).

## IV. PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY FAILS

"Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability ... arises by operation of law ... [I]t provides for a minimum level of quality." *Am. Suzuki Motor Corp v. Superior Court,* 37 Cal. App. 4th 1291, 1295–96 (1995). An implied warranty of merchantability guarantees that goods are fit for the ordinary purposes in which they are used. *Tae Hae Lee*, 992 F. Supp. 2d 962, 980 (C.D. Cal 2014). Thus, a plaintiff claiming breach of an implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.,* 114 Cal. App. 4th 402, 406 (2003) (citing Cal. Com. Code § 2314(2)). In the context of automobiles, the vehicle "need not be perfect in every detail." *Tae Hae Lee*, 992 F. Supp. 2d at 980. "The basic inquiry, therefore, is whether the vehicle was fit for driving." *Id.*

Although plaintiffs claim their car "became noisier" and it was recommended that they replace the engine (Compl. ¶ 9), they do not allege that the functionality of the vehicle was impaired. It appears the car operated without incident for more than two years and an unspecified number of miles. These facts do not indicate the car was unfit for expected use. Moreover, the risk that a defect will arise in the future does not establish a current breach of an implied warranty. *See American Suzuki,* 155 Cal. App. 4th at 1299 (breach of implied warranty action cannot be used to compensate a plaintiff "for a potential injury that never, in fact, materialized ... for a product 'defect' that was never made manifest."); *Acedo*, 2015 WL 12912365, at *22 (C.D. Cal. July 31, 2015) (quoting *Taragan v. Nissan North America, Inc.,* No. 09–3660 SBA, 2013 WL 3157918, *4 (N.D. Cal. June 20, 2013)) ("[I]t is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather the plaintiffs must allege that their product actually exhibited the alleged defect."); *Cohen v. Guidant Corp.,* No. CV–05–8070–R, 2011

WL 637472, *2 (C.D. Cal., Feb. 15, 2011) ("Plaintiff's claim of fear of future injury, premised on the risk that [the product] may malfunction in the future, is not a legally cognizable injury under California law.").

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

"To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Edejer v. DHI Mortgage Co.*, No. C 09-1302 PJH, 2009 WL 1684714, at *9-10 (N.D. Cal. 2009) (citing *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031-32 (1992)) (dismissing a breach of the covenant of good faith and fair dealing claim because plaintiff failed to allege the existence of a contractual obligation). As explained above, plaintiffs do not allege that their vehicle was still covered by the express warranty, *i.e.* a contract. As such, they cannot state a claim for the breach of the implied covenant of good faith and fair dealing.

Plaintiffs also impermissibly base their claim on the same acts as their breach of express warranty claim. California law does not permit a claim for breach of the implied covenant of good faith and fair dealing to "rely on the same alleged acts or simply seek the same damages or other relief already claimed in a companion contract cause of action." *Env't Furniture, Inc. v. Bina*, 2010 WL 5060381, No. CV 09-7978 PSG (JCx), at *3 (C.D. Cal. Dec. 6, 2010) (quoting *Careau & Co. v. Sec. Pac.,* 222 Cal. App. 3d 1371, 1395 (1990)). Consequently, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged act, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Trinity Hotel Investors, LLC v. Sunstone OP Prop., LLC*, No. SA CV 07–1356 AHS (MLGx), 2009 WL 303330, at *3-4 (C.D. Cal. Feb. 6, 2009) (citation omitted) (dismissing claim for breach of covenant of

good faith and fair dealing because it was "subsumed within plaintiffs' breach of contract claim").

Here, both plaintiffs' claim for breach of the duty of good faith and fair dealing and for breach of express warranty arise from the same allegation that KMA purportedly leased plaintiffs a vehicle with defective rod bearings. (*Compare* Compl. ¶¶ 95-96 (KMA breached express warranty by selling vehicle with engine defect and failing to honor warranty when defect became apparent), *with* ¶ 116 (KMA breached duty of good faith and fair dealing by failing to notify Plaintiffs of defect and failing to repair the defect)). Accordingly, the claim for the breach of the implied covenant of good faith and fair dealing is impermissibly duplicative. *See Davis v. Apperience Corp.*, No. C 14–00766 WHA, 2014 WL 5528232, at *6 (N.D. Cal. 2014) (dismissing a claim for a "breach of the implied covenant of good faith and fair dealing where those claims failed to go beyond the breach of contract claims"); *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–cv–02965 SC, 2013 WL 5770542, at *13 (N.D. Cal. 2013) (dismissing a claim for a breach of the implied covenant of good faith and fair dealing because "[n]othing in Plaintiff's breach of implied covenant claim suggests that this claim is at all different from Plaintiff's breach of contract claim").

## VI. PLAINTIFFS' REQUEST FOR A RECALL IS PREEMPTED

Plaintiffs seek injunctive relief "including, without limitation, an Order that requires Defendant to repair, recall, or replace the Class Vehicles and exten[d] the applicable warranties to a reasonable period of time . . . ." (Compl., Prayer for Relief). Plaintiffs' request for injunctive relief is preempted by federal law, specifically the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), 49 U.S.C. §§ 30101-30183 (2012). Conflict preemption in the form of frustration-of-purpose preemption, exists where "under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l*

*Foreign Trade Council*, 530 U.S. 363, 373 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). "If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power.'" *Id.* (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912).

The Safety Act provides the Secretary of Transportation with the authority to determine whether a "vehicle or equipment contains a defect related to motor vehicle safety or does not comply with an applicable motor vehicle safety standard . . . ." 49 U.S.C. § 30118(a). The Secretary further has the authority to order the manufacturer (i) to give notification to owners of the defect under 49 U.S.C. § 30119, and (ii) to remedy the defect or noncompliance under 49 U.S.C. § 30120. 49 U.S.C. § 30118(b)(2). Section 30119 provides the Secretary authority to (i) prescribe by regulation the contents of notices to owners, (ii) disapprove of the date the manufacturer specifies is the earliest date parts will be available for repair, (iii) prescribe the time after the Secretary notifies the manufacturer that the manufacturer will notify the owners, (iv) prescribe the means of notice to owners, (v) require a public notice, and (vi) require additional notifications to owners. 49 U.S.C. § 30119(a)(7), (b), (c)(1), (d)(2), (d)(3), (e). Section 30120 provides the Secretary authority to (i) prescribe regulations regarding the replacement of a vehicle, (ii) prescribe regulations regarding the timely completion of repairs, (iii) prescribe regulations regarding the reimbursement of owners who had the repairs performed before being notified of the recall, and (iv) conduct hearings to determine if a manufacturer's remedy is adequate. *Id.* § 30120(a)(2), (c)(3), (d), (e). However, the Safety Act also provides the Secretary with authority to exempt a manufacturer from the remedy and notification obligations if the Secretary determines that "a defect or noncompliance is inconsequential to motor vehicle safety." *Id.* § 30118(d). Thus, the regulatory structure governing recalls prescribed by the Safety Act and overseen

by the NHTSA, shows "Congress intended to establish comprehensive administrative regulation of recalls to promote motor vehicle safety." *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 153 F. Supp. 2d 935, 945 (S.D. Ind. 2001).

Permitting courts to order recalls based on state-law claims would "disturb the careful administrative procedure envisioned by Congress." *Id.* at 946; *see also Lilly v. Ford Motor Co.,* No. 00 C 7372, 2002 WL 84603, at *5 (N.D. Ill. Jan. 22, 2002) ("The discretion given the Secretary of Transportation also indicates that Congress intended to limit the authority to recall motor vehicles to the Secretary."). The process provided by the Safety Act provides for an agency with expertise to oversee a process that addresses both the owner notification and remedy components of recalls. A court ordered recall based on state-law claims would effectively provide a means to "overturn" a NHTSA decision not to require a recall or to bypass the NHTSA process to create competing proceedings. *In re Bridgestone/Firestone*, 153 F. Supp. 2d at 946 (court ordered recall based on state-law claims would "essentially 'overturn[]' the Secretary's decision" and "obviously upset the congressional intent of leaving the question to an agency with the expertise, experience, and resources to reach sound decisions"). The recall remedy sought by plaintiffs would frustrate the comprehensive administrative regulation of recalls established by Congress, and thus is preempted by the Safety Act. *Cox House Moving, Inc. v. Ford Motor Co.*, No. 7:06-1218-HMH, 2006 WL 2303182, at *8-9 (D.S.C. Aug. 8, 2006) (dismissing the plaintiffs' request for a court ordered recall as preempted by federal law); *Lilly*, 2002 WL 84603, at *3-5 (same); *In re Bridgestone/Firestone*, 153 F. Supp. 2d at 943-48 (same).

## VII. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS RELATING TO OTHER VEHICLE MODELS

A court can and should strike class allegations that on their face cannot be certified. *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("Where

the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."). Although named plaintiffs often argue that class determinations should await discovery, courts recognize that where, as here, discovery would simply expend the resources of the parties and the court without altering the result, discovery is unwarranted. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949-50 (6th Cir. 2011) (affirming a district court's granting of a motion to strike class allegations at the pleading stage and rejecting the argument that the plaintiff needed additional time and the opportunity for discovery before confronting class certification); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("[T]he plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations.").

Here, plaintiffs' claims on behalf of purchasers of other vehicles should be dismissed for lack of standing. Plaintiffs leased only a 2015 Kia Sorento, yet they seek to certify a nationwide class of all purchasers of every 2010-2017 Kia vehicle equipped with a Theta 2.0 liter or 2.4 liter engine. (Compl. ¶ 1). Plaintiffs allege no facts showing group treatment of these vehicles is warranted.[8] Instead, plaintiffs simply lump them together under the term "Class Vehicles."

Even were plaintiffs able to allege such facts, however, they would still be precluded from asserting claims based on the 2010-2017 Kia vehicles they did not lease. To have standing as to those vehicles, plaintiffs "must have suffered an injury in fact" with respect to them. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

---

8 Plaintiffs assert, without any supporting factual allegations, that all Kia-vehicles with these engines "undergo a prolonged failure as metal debris circulates throughout the engine via the engine oil." (Compl. ¶ 21). There are no well-pleaded, plausible allegations that every Kia vehicle with these engines over a 8-year period suffers from the purported defect.

(1992) (internal quotations omitted). That plaintiffs' claims are brought in the class action context has no consequence, as "named plaintiffs . . . must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

For this reason, where, as here, plaintiffs attempt to assert claims based on purported defects in products they did not purchase or suffer injury from, courts regularly disallow such claims at the pleading stage. *See, e.g.*, *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10–CV–02630 JAM–KJN, 2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (dismissing for lack of standing claims based on product named plaintiff did not purchase, even though product appeared in the same advertisements as a product she did purchase and plaintiff alleged the same underlying defect in both products); *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (dismissing action and noting that named plaintiff "cannot expand the scope of his claims to include a product he did not purchase"); *Chin v. Gen. Mills, Inc.*, No. 12–2150 (MJD/TNL), 2013 WL 2420455, at *2-4 (D. Minn. June 3, 2013) (dismissing claims because named plaintiff lacked standing to sue for products he did not purchase).

Plaintiffs do not allege any injury arising from a vehicle other than the 2015 Kia Sorento, and they may not assert claims based on those vehicles "through the backdoor of a class action." *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011) (dismissing claims based on products named plaintiff did not purchase). Accordingly the class allegations to the 2010-2017 Kia vehicles, other than the 2015 Kia Sorento, should be stricken.

DATED: June 30, 2017

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Shon Morgan
Shon Morgan
Attorneys for Kia Motors America, Inc.