Richard D. McCune, State Bar No. 132124
rdm@mccunewright.com
David C. Wright, State Bar No. 177468
dcw@mccunewright.com
**MCCUNE WRIGHT AREVALO LLP**
3281 Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Joseph G. Sauder
jgs@mccunewright.com
Matthew D. Schelkopf (*pro hac vice*)
mds@mccunewright.com
Joseph B. Kenney
jbk@mccunewright.com
**MCCUNE WRIGHT AREVALO LLP**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0581

*Attorneys for Plaintiffs and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Kia Engine Litigation* | Case No.: 8:17-cv-00838-JLS-JDE |
| | The Honorable Judge Josephine L. Staton |
| | Original Complaint filed: May 10, 2017 |
| | **SECOND CONSOLIDATED CLASS ACTION COMPLAINT** |
| | 1. Violation of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); |
| | 2. Violation of California Unfair Competition Laws (Cal. Bus. & Prof. Code § 17200); |
| | 3. Violation of California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*); |
| | 4. Violation of Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. tit. 5, § 205, *et seq.*); |
| | 5. Breach of Express Warranty; |
| | 6. Breach of Implied Warranty; |
| | 7. Breach of Written Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*); |
| | 8. Common Law Fraud; |

-1-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9. Breach of the Duty of Good Faith and Fair Dealing;
10. Violation of the Song-Beverly Act – Breach of Implied Warranty (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

**DEMAND FOR JURY TRIAL**

**PLAINTIFFS' SECOND CONSOLIDATED CLASS ACTION COMPLAINT**

     Plaintiffs Christopher Stanczak, Rose Creps, Cara Centko, and Jenn Lazar bring this action against Defendants Kia Motors America, Inc. ("KMA"), and Does 1 through 10 (collectively "Defendants"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

**INTRODUCTION**

    1.    This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees with Theta 2.0-liter and 2.4-liter gasoline direct injection engines (the "GDI Engines") installed in certain 2011-2016 Kia Optima, Sorento and Sportage vehicles (the "Class Vehicles").[1]

    2.    This action arises from Defendants' failure to disclose to Plaintiffs and similarly situated consumers, despite their longstanding knowledge, that the engines in the Class Vehicles contain, *inter alia*, a latent defect that results in the restriction of oil flow through the connecting rod bearings, as well as to other vital areas of the engine. This defect – which typically manifests itself during and shortly after the limited warranty period has

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models and model years included in the definitions of Class Vehicles after conducting discovery.  Upon information and belief, the engines in the Class Vehicles are identically designed and manufactured.

-2-

expired – will cause the Class Vehicles to experience vehicle stalling during operation and catastrophic engine failure.

3.     Significantly, the presence of this defect, resulting in restricted oil flow within the engine, poses a safety risk to the operator and passengers of the Class Vehicles. The failure to have sufficient engine lubrication can cause complete and catastrophic engine failure while the Class Vehicles are in operation at any time and under any driving conditions or speed. This exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced engine damage and catastrophic failure while operating the Class Vehicles, thus placing themselves and those around them in immediate danger.

4.     Not only did Defendants actively conceal the fact that particular components within the Class Vehicles' engines are prone to failure, they did not reveal that the existence of the defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described herein.

5.     Defendants have long been aware of the defect described herein, yet Defendants have routinely refused to repair the Class Vehicles without charge when the defect manifests. Indeed, in many cases Defendants have even refused to disclose the existence of the defect when Class Vehicles displaying symptoms consistent with the defect are brought in for service, instead choosing to ignore the defect until it has caused significant mechanical problems necessitating costly repairs.

6.     Many other owners and lessees of the Class Vehicles have communicated with Defendants and/or their agents to request that they remedy and/or address the defect and/or resultant damage at no expense. Defendants have routinely failed to do so even within the warranty period.

7.     Defendants have also refused to take any action to correct this concealed defect when it manifests in the Class Vehicles outside of the warranty period. Because the defect can manifest shortly outside of the warranty period for the Class Vehicles – and

-3-

given Defendants' knowledge of this concealed, safety-related defect – Defendants' attempt to limit the warranty with respect to the engine defect is unconscionable and unenforceable here.

8.     Despite notice and knowledge of the defect from the numerous complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and their own internal records, including pre-sale durability testing, Defendants have not recalled and/or offered an adequate engine repair to the Class Vehicles, offered their customers suitable repairs or replacements free of charge, or offered to reimburse their customers who have incurred out-of-pocket expenses to repair the defect.

9.     As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiffs and other Class Members known of the defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

11.     Plaintiffs are also informed and believe, and on that basis allege, that as the number of complaints increased, and Class Members grew dissatisfied with the performance of the Class Vehicles, Defendants were forced to acknowledge that the Class Vehicles suffer from an inherent defect.

12.     As a result of the defect and the monetary costs associated with attempting to repair the defect, Plaintiffs and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct.

13.     Accordingly, Plaintiffs bring this action to redress Defendants' violations of the consumer protection statutes of California and Maine and also seek recovery for

-4-

Defendants' breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and common law fraud.

## JURISDICTION

14.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of California and throughout the United States.

## VENUE

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because KMA maintains its corporate headquarters in this district, Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, there are one or more authorized Kia dealers within this district and Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

**A.    Plaintiff Chris Stanczak**

17.     Plaintiff Chris Stanczak is a citizen of the State of California, and currently resides in Lincoln, California.

18.     On or about October 8, 2014, Plaintiff Stanczak leased a new 2015 Kia Optima LX (VIN: KNAGM4A73F5554289) from Roseville Mitsubishi-Kia located in

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Roseville, California. Prior to purchasing his vehicle, Plaintiff reviewed the window sticker placed on the vehicle by Defendants. The window sticker advertised the various features of the vehicle (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state the vehicle suffered from any defects.

19.　　During his lease term, Plaintiff purchased his 2015 Kia Optima LX.

20.　　Plaintiff Stanczak purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

21.　　On or about August 22, 2016, while driving on the highway, Plaintiff Stanczak began to hear an unusual engine noise upon acceleration. He then brought his vehicle to Roseville Mitsubishi-Kia, an authorized Kia dealership located in Roseville, California, that same day. At the time, his vehicle had approximately 59,787 miles on the odometer and was still under warranty by Kia.

22.　　As a result of the defect, Roseville Kia had Plaintiff Stanczak's vehicle in its possession for diagnosis until on or about August 30, 2016. A service technician found, and notated in the repair order, that they had discovered metal shavings inside the vehicle's engine and that the vehicle's engine would need to be replaced. Plaintiff Stanczak then requested that such needed repairs be completed at no charge pursuant to the terms of the factory warranty. Plaintiff Stanczak's request was denied.

23.　　Because Plaintiff Stanczak was denied the requested warranty repair, he then took his vehicle home so that he could obtain a second opinion. On the following day, while Plaintiff Stanczak was merging onto a highway, the engine in his vehicle seized and catastrophically failed while traveling at approximately 35 miles per hour. Fortunately, Plaintiff Stanczak was able to quickly pull his vehicle to the side of the road. He then phoned for road service and paid approximately $180 to have his vehicle towed back to Roseville Mitsubishi-Kia.

-6-

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

24.     Plaintiff Stanczak's vehicle remained at Roseville Mitsubishi-Kia from August 31, 2016, until October 3, 2016. Representatives of Roseville Mitsubishi-Kia initially informed Plaintiff Stanczak that the vehicle's long block[2] needed to be replaced, but that the necessary parts were on nationwide backorder.

25.     Plaintiff Stanczak then contacted Kia's corporate offices and requested that Kia cover the necessary repairs under its warranties. Kia's corporate representative declined to honor Plaintiff Stanczak's request. Plaintiff Stanczak also requested rental car coverage since he was without his vehicle, which Kia also declined. Kia also informed Plaintiff Stanczak that the long block for his vehicle was actually no longer in production and, as a result, they needed to order a used long block.

26.     Roseville Mitsubishi-Kia quoted Plaintiff Stanczak approximately $3,200 for the used engine. Plaintiff Stanczak inquired where it was ordering the engine from so he could check the price. Upon further investigation, Plaintiff Stanczak found that the price for the engine was actually $2,210 and that the dealership was attempting to charge him a $1,000 "finder's fee" on the engine.

27.     Plaintiff Stanczak purchased the engine himself from Kia's source and had it shipped to the dealership. Plaintiff Stanczak paid Roseville Mitsubishi-Kia approximately $1,980.00 for labor to install the used engine in his vehicle.

28.     At all times relevant herein, Plaintiff Stanczak adhered to Kia's recommended maintenance intervals.

29.     Plaintiff Stanczak has suffered an ascertainable loss as a result of the engine defect, Defendant's omissions and/or misrepresentations associated with the engine defect, including, but not limited to, out of pocket losses associated with the engine defect, diminished value of his vehicle, and other consequential damages.

---

[2] "Long block" is an automotive term for an engine sub-assembly that consists of the assembled engine block, crankshaft, pistons, connecting rods, cylinder head, camshafts, and valve train.

-7-

30.     Neither Defendant, nor any of their agents, dealers, or other representatives informed Plaintiff Stanczak of the existence of the defect prior to, or any time after, his purchase.

**B.     Plaintiff Rose Creps**

31.     Plaintiff Rose Creps is a citizen of the State of Maine, and currently resides in Auburn, Maine.

32.     On or about April 21, 2015, Plaintiff Creps purchased a new 2015 Kia Optima EX (VIN: 5XXGN4A79FG394415) from Rowe Kia Auburn, an authorized Kia dealership located in Auburn, Maine. Prior to purchasing her vehicle, Plaintiff reviewed the window sticker placed on the vehicle by Defendants. The window sticker advertised the various features of the vehicle (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings). The window sticker did not state the vehicle suffered from any defects.

33.     Plaintiff Creps relied on these representations and purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

34.     In or about July 23, 2016, with approximately 43,473 miles on the odometer, while accelerating to merge onto a highway, Plaintiff Creps heard a loud banging noise originating from the engine. Plaintiff Creps immediately pulled over and called Rowe Kia Auburn and made an appointment to bring her vehicle in so that the dealership could evaluate it as the vehicle was still under warranty by Kia.

35.     The dealership informed Plaintiff Creps that her PCV valve was "bad" and needed to be replaced. The dealership also informed Plaintiff Creps that they found sludge in the engine oil. Plaintiff Creps requested warranty repairs and the dealership informed her that the PCV valve would be replaced under Kia's warranty but that it would not "clean the engine" of the sludge under the warranty and required Plaintiff Creps to pay approximately $294.71 for this service, which Plaintiff Creps paid.

36.     In or about early August 2016, Plaintiff Creps was driving her vehicle in New Jersey when she accelerated to merge across traffic and her vehicle again made a loud knocking noise before it shut off entirely and stalled during operation.

37.     Plaintiff Creps had her vehicle towed to a Kia dealership in New Jersey who examined it, filled it with oil, and instructed her to drive it back to her dealership in Auburn, Maine, which Plaintiff Creps did.

38.     Plaintiff Creps brought her vehicle to Rowe Kia Auburn on or about August 8, 2016, with approximately 44,688 miles on the odometer, and requested no-cost repairs under the terms of Kia's warranties. The dealership informed Plaintiff Creps that her engine needed to be replaced. The dealership also informed Plaintiff Creps that she needed to produce documentation for all oil changes in order to receive warranty repairs, otherwise she would be required to pay out of pocket for any repairs.

39.     At all times relevant herein, Plaintiff Creps adhered to Kia's recommended maintenance intervals. Plaintiff Creps, however, did not keep receipts of each and every oil change.

40.     Plaintiff Creps brought the oil change receipts that she did have to Rowe Kia Auburn. Regardless, the dealership denied her warranty claim, and quoted her approximately $5,324.21 in parts and labor to complete the required engine replacement.

41.     Plaintiff Creps then contacted Kia's corporate office and again requested her engine be replaced under warranty. Kia corporate denied her request but offered her a credit of approximately $1,200.00 as a goodwill gesture, which Plaintiff Creps declined.

42.     During this time, Plaintiff Creps was unable to drive her vehicle and paid approximately $576.93 for a rental car from August 8, 2016, until August 26, 2016.

43.     After being denied warranty repairs by both Rowe Kia Auburn and Kia's corporate office, Plaintiff Creps was forced to pay $5,324.21 to replace her engine.

44.     Plaintiff Creps has suffered an ascertainable loss as a result of the defect, Defendant's omissions and/or misrepresentations associated with the engine defect,

-9-

including, but not limited to, out-of-pocket losses associated with the engine defect, diminished value of her vehicle, and other consequential damages.

45.    Neither Defendant, nor any of its agents, dealers, or other representatives informed Plaintiff Creps of the existence of the defect prior to, or any time after, her purchase.

**C.    Plaintiff Cara Centko and Plaintiff Jenn Lazar**

46.    Plaintiff Cara Centko is a resident of Oregon, residing in Portland, Oregon.

47.    Plaintiff Jenn Lazar is a resident of Oregon, residing in Portland, Oregon.

48.    In September of 2014, Plaintiffs Centko and Lazar leased a 2015 Kia Sorento from Kia of Valencia in California. Plaintiffs Centko and Lazar leased this vehicle for personal, family and/or household uses. Prior to leasing their vehicle, Plaintiffs reviewed the window sticker placed on the vehicle by Defendants. The window sticker advertised the various features of the vehicle (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings). The window sticker did not state the vehicle suffered from any defects.

49.    Both leased the vehicle in reliance on Kia's representations that they were receiving a safe, usable vehicle.  However, in December 2016, the vehicle began experiencing major issues with the engine and it became noisier and noisier.  The vehicle also smoked and the functionality was impaired.  When Plaintiffs took the vehicle in to be inspected, they were told that oil sludge was causing the performance issues and ultimately Kia of Portland, an authorized dealership located in Portland, Oregon, recommended they replace the engine long block.  As the vehicle was still under warranty, Plaintiffs believed that Kia would do the needed repairs in accordance with the warranty terms.

50.    Plaintiffs presented the car to the dealer for repair and/or inspection on December 19, 2016 with approximately 25,501 miles on the odometer.  The dealership informed Plaintiffs that they needed to produce documentation for all oil changes in order to receive warranty repairs, otherwise they would be required to pay out of pocket for any repairs.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

51.   At all times relevant herein, Plaintiffs adhered to Kia's recommended maintenance intervals. Plaintiffs, however, did not keep receipts of each and every oil change.   Plaintiffs produced the receipt they had and showed the dealer charges to their credit card for other oil change events.  Regardless, the dealership denied their warranty claim, and stated unless Plaintiffs paid for a full diagnostic the dealership would not give an estimate.

52.   Plaintiffs contacted Kia Leasing at least five times and Kia of America at least three times seeking resolution.  Despite repeated contacts and demands for estimates to make the repairs to the vehicle and install the needed "new engine," as it was referred to by Kia on the phone, no estimate for repairs was provided.  Plaintiffs refused to pay for a full diagnostic as all issues should have been resolved under warranty.

53.    Plaintiffs took the car home and continued to honor their lease and make payments of $299.30 per month until the contract was fulfilled.  At the end of the lease, the car was surrendered and transported to Kia of Portland for preservation and storage during the pendency of this litigation.

54.   Plaintiffs had performed all things agreed to or required under the lease agreement and warranty, except as may have been excused or prevented by the conduct of Kia.  However, Kia refused to honor the warranty on the vehicle.

55.   Plaintiffs have suffered an ascertainable loss as a result of the defect, Defendant's omissions and misrepresentations associated with the Defect, including but not limited to out of pocket loss associated with the repair of the Defect as well as the diminished value of their vehicle occasioned by the engine defect.

56.   Neither Kia nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the Defect or defective vehicle design, manufacture, or materials prior to purchase.  Similarly, despite efforts to get Kia to accept responsibility following manifestation of the engine defect in Plaintiffs' vehicle, Kia has continued to deny the existence of a defect and to actively conceal its existence.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

1    **D.      Defendant KMA**

2       57.    Defendant KMA is an automobile design, manufacturing, distribution, and/or

3    service corporation doing business within the United States. Furthermore, Defendant KMA

4    designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and

5    repairs passenger vehicles, including the Kia Class Vehicles.

6       58.    Defendant KMA is incorporated and headquartered in the state of California

7    with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606.

8    KMA is the U.S. sales and marketing division, which oversees sales and other operations

9    across the United States. KMA distributes Kia vehicles and sells these vehicles through its

10   network of more than 755 dealerships. Money received from the purchase or lease of a Kia

11   vehicle from a dealership flows from the dealer to KMA.

12      59.    Upon information and belief, the distribution, service, repair, installation, and

13   decisions regarding the GDI Engine as it relates to the engine defect within the Kia Class

14   Vehicles was performed by Defendant KMA.

15      60.    Upon information and belief, Defendant KMA developed the post-purchase

16   owner's manuals, warranty booklets, and information included in maintenance

17   recommendations and/or schedules for the Kia Class Vehicles.

18      61.    KMA engages in continuous and substantial business in California.

19      62.    The true names and capacities of the defendants sued herein as DOES 1

20   through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such

21   defendants by such fictitious names. Each of the defendants designated herein as a DOE is

22   legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will

23   seek leave of Court to amend this Complaint to reflect the true names and capacities of the

24   defendants designated herein as DOES when such identities become known.

25                               **CALIFORNIA LAW APPLIES**

26      63.    It is appropriate to apply California law to the nationwide claims because

27   California's interest in this litigation exceeds that of any other state.

28

-12-

64.     As discussed above, Defendant KMA is located in Irvine, California and is the sole entity in the contiguous 48 U.S. states responsible for distributing, selling, leasing and warranting Kia vehicles.

65.     KMA maintains customer relations, engineering, marketing, and warranty departments at their corporate headquarters in this district. KMA's customer service complaint address is Kia Motors America Consumer Affairs Department, P.O. Box 52410, Irvine, California 92619-2410. KMA's customer relations departments are responsible for fielding customer complaints and monitoring customer complaints posted to their respective websites or third-party websites. KMA's warranty and engineering departments are both responsible for the decisions to conceal the engine defect from KMA's prospective customers, and for instituting a policy to systematically deny warranty coverage to those who experienced engine failure caused by the defect.

66.     Based on the foregoing, such policies, practices, acts, and omissions giving rise to this action were developed in, and emanated from, KMA's headquarters in Irvine, California. As detailed below, KMA also came to know, or should have come to know, of the engine defect through the activities of their divisions and affiliated entities located within California. Accordingly, the state of California has the most significant relationship to this litigation and its law should govern.

## TOLLING OF STATUTES OF LIMITATIONS

67.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the engine defect until shortly before this class action litigation was commenced.

68.     In addition, even after Plaintiffs and Class Members contacted Defendants and/or their authorized dealers for vehicle repairs concerning the engine defect, they were routinely told by Defendants and/or through their dealers that the Class Vehicles were not defective. As described below, the true cause of the premature and catastrophic failure in the Class Vehicles is a defect that results in restricted oil flow.

-13-

69.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and the Members of the Class the true character, quality, and nature of the Class Vehicles, that the manufacturing defect will result in restricted oil flow and catastrophic engine failure, and that the defect will require costly repairs, pose safety concerns, and diminish the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.     The Defective Engine Components within the Class Vehicles**

70.     Kia Motors Corporation ("KMC"), one of the leading motor vehicle manufacturers in Korea, was established in December, 1944 under the laws of the Republic of Korea to manufacture and sell a range of passenger cars, recreational vehicles and other commercial vehicles in the domestic and international markets. As of December 31, 2016, Kia Motors Corporation's largest shareholder is Hyundai Motor Company, which holds 33.88 percent of KMC's stock.[3]

71.     KMA is the American sales, marketing, and distribution arm of KMC. KMA offers a complete line of vehicles through more than 755 dealers throughout the United States.

72.     Upon information and belief, certain GDI Engines, which KMC and Defendant KMA used in the Class Vehicles, were manufactured by Hyundai Motor Company.

**1. The GDI Engines**

73.     The Theta 2.0 liter and 2.4 liter engines contained in the Class Vehicles contain a gasoline direct-injection ("GDI") fuel delivery system. Kia advertises that "[i]t's the Gasoline Direct Injection engine that helps a Kia deliver outstanding performance—in

[3] http://www.kia.com/worldwide/about_kia/investor_relations/annual_report.do (2016 Annual Report, pg. 67) (last visited August 7, 2017).

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

both power and fuel use. GDI injects highly-pressurized fuel directly into the cylinders during the engine's combustion cycle. The result is an increased quality of combustion and efficiency. By making smarter use of fuel, GDI also reduces emissions. What the driver experiences is still the most critical element of any powertrain technology. And with GDI, the driver enjoys smooth, powerful acceleration and a longer time between refueling."

74.     As background, the GDI Engines contained in the Class Vehicles use four reciprocating pistons to convert pressure into a rotating motion. Gasoline is mixed with air in the combustion chambers of the engine. To generate such rotating motion, a four-step sequence is used (the "Combustion Cycle"). First, the intake stroke begins with the inlet valve opening and a vaporized fuel mixture is pulled into the combustion chamber. Second, the compression stroke begins with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber. Third, the power stroke begins when the spark plug ignites the fuel mixture, expanding the gases and generating power that is transmitted to the crankshaft. And fourth, the exhaust stroke begins with the exhaust valve opening and the piston moving back up, forcing the exhaust gases out of the cylinder. The exhaust valve then closes, the inlet valve opens, and the Combustion Cycle repeats itself. A diagram of Combustion Cycle is below:

/



75.     The pistons are connected to the crankshaft via the connecting rod.  As the connecting rod moves up and down during the Combustion Cycle, this causes the crankshaft to rotate, ultimately resulting in power to the drive wheels of the vehicle.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

During this cycle, the crankshaft rotates many thousands of times per minute within each connecting rod.  In order to reduce friction and prolong longevity, this design utilizes a bearing placed between the connecting rod and crankshaft surfaces.  The connecting rod bearings allow the crankshaft to rotate within the connecting rods during the Combustion Cycle.  An exemplar diagram of the piston, connecting rod, connecting rod bearing and crankshaft are shown below:



Figure 3-70.—Connecting rod bearings.

76.     When the Class Vehicles are in operation, engine oil is used to lubricate the pistons, cylinder walls, connecting rod bearings and other rotating and moving components as the pistons moves up and down through the four-stroke sequence. Engine oil is necessary to reduce wear on moving parts throughout the engine, improve sealing, and cool the engine by carrying away heat from the moving parts. Engine oil also cleans and transports contaminants away from the engine to the engine oil filter. Oil is pumped and pressurized throughout the engine by the oil pump. The oil pump draws oil from the oil pan, located underneath the piston and crankshaft. The oil pump forces engine oil through the oil filter and then through passages in the engine to properly lubricate and reduce friction in internal moving engine components. The oil then returns to the oil pan

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

through small drainage holes located throughout the engine where it will be recirculated by the oil pump. Below is a diagram illustrating the typical path and channels of engine oil lubrication in an overhead cam engine:

77.    The connecting rod bearings are also lubricated with engine oil in order to allow the crankshaft to rotate within the connecting rods.  A close-up picture of a functional connecting rod bearing is below:

//
//
//
//
//
//
//
//
//

-17-



### 2. Previous GDI Engine Recalls

78.     In or around September 10, 2015, Hyundai Motor America publicly recalled certain model year 2011-2012 Sonata vehicles manufactured at Hyundai Motor Manufacturing Alabama and equipped with the 2.4 liter and 2.0 liter GDI Engines. (*See* Exhibit 1.)

79.     According to the Hyundai GDI Recall, Hyundai determined that metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft during December 11, 2009, to April 12, 2012. As a result, and according to the Hyundai GDI Recall:

> [i]f the debris is not completely removed from the crankshaft's oil passages, it can be forced into the connecting rod oiling passages restricting oil flow to the bearings. Since bearings are cooled by oil flow between the bearing and journal, a reduction in the flow of oil may raise bearing temperatures increasing the potential of premature bearing wear. A worn connecting rod bearing will produce a metallic, cyclic knocking noise from the

-18-

engine which increases in frequency as the engine rpm increases. A worn connecting rod bearing may also result in illumination of the oil pressure lamp in the instrument cluster. If the vehicle continues to be driven with a worn connecting rod bearing, the bearing can fail, and the vehicle could stall while in motion.

80.    Hyundai went on to explain, in Safety Recall Report 15V-568, that it became aware of engine-related warranty claims in the field. Furthermore, "[t]he vast majority of those claims evidenced that customers were responding to substantial noise, or the vehicle's check engine light, and bringing their vehicles to service as a result of those warnings. Many customers also complained after the warranty was no longer available."

81.    As a result, Hyundai decided to issue a safety recall for approximately 470,000 model year 2011-2012 Sonata vehicles manufactured between December 11, 2009 and April 12, 2012 at Hyundai Motor Manufacturing Alabama and equipped with either a 2.0 liter or 2.4 liter Gasoline Direct Injection engine.

82.    The recall provided notification to owners of the issue, inspection, and replacement of the engine assembly, as necessary, free of charge. Additionally, Hyundai increased the warranty for the engine sub-assembly (short block) to 10 years/120,000 miles for both original and subsequent owners.

83.    In a document filed with NHTSA, attached hereto as Exhibit 2, Kia claims the following relevant chronology took place regarding its knowledge of the defect:

a. **September 2015:** Kia learns of the Hyundai recall related to engine damage in 2011-2012 MY Sonata vehicles with Theta engines caused by oil blockage from debris left in engines during manufacturing at Alabama plant.

b. **January–April, 2016:** Engine remanufacturer Translead conducts detailed review of all recent Kia warranty returned engines. Translead identifies oil delivery issue with Theta GDI engines (Optima, Sportage & Sorento). Low claims rate with no accidents/injuries. Decision: monitoring.

c. **May 5, 2016:** Kia learns of Hyundai Sonata warranty extension program for next two model years after recall (2013 MY-2014 MY).

d. **May 5-25, 2016:** Kia Motors America, Inc. (KMA) analyzes field data for Theta engine vehicles. No accidents or injuries. Claims are low but

-19-

have increased. Customer satisfaction identified as critical complaint factor due to high engine repair costs for vehicles out of warranty (especially used vehicle owners). Decision: extend warranty AND encourage customer repairs before breakage with one customer notice.

e. **May 25–June 10, 2016:** Kia extends warranty coverage to all 2011-2014 MY Optima owners (original and used) with 2.0L and 2.4L GDI engines to 10 years or 120,000 miles to reduce customer financial burden. Emphasis on customer opportunity to get repair done before engine breakage based on clear knocking noise developing as mutual benefit for both customer and Kia.

f. **August 24 and 29, 2016:** KMA notifies owners of 2011-2014 Sportage and 2012-2014 Sorento vehicles equipped with 2.0L and 2.4L Theta GDI engines of Warranty Extension Program.

g. **October 21, 2016:** KMA sees continuing costs related VOQs [Vehicle Owner Questionnaire] and determines dealers are not approving extended warranty repairs due to customer lack of oil maintenance proof. Decision: KMA advises dealers that coverage under the Extended Warranty Program does not require maintenance records.

h. **March 28, 2017:** Kia makes decision to conduct a voluntary safety recall based on anticipatory risk concerns.

84.    As described above, in or around May 25-June 10, 2016, Kia followed Hyundai's lead and notified owners of 2011-14 MY Optima vehicles of issues with the same connecting rod wear which results in knocking noise from the engine. (*See* Exhibits 2 and 3.) As a result, Kia provided all owners with a warranty extension on the "short block"[4] assembly for a period of 10 years starting from the date of first service or 120,000 miles. Kia also alerted owners that if the vehicles continue to be driven with a worn connecting rod bearing, the bearing can fail and may result in engine failure.

85.    In April 2017, Hyundai and Kia announced that they were recalling an additional 1.4 million vehicles with the GDI Engines because they received widespread reports that the engines could fail and stall, *i.e.* the same reason for the first recall. This

---

[4] Per Kia's description, the short block consists of the engine block, crankshaft and bearings, connecting rods and bearings and pistons. *See* Exhibit 2.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

recall included the 2013-2014 Hyundai Santa Fe, the 2011-2014 Kia Optima, the 2011-2013 Kia Sportage, and the 2012-2014 Kia Sorento vehicles. (*See also* Exhibit 4.)

86.    Despite Kia's recall, Defendant Kia has failed to adequately repair the recalled 2011-14 Kia Class Vehicles. Instead, the parts required to conduct the repair are typically unavailable, on nationwide backorder and/or no longer being manufactured. This has resulted in Class Members being without the use of their vehicles for weeks and/or months at a time and incurring additional and unreimbursed expenses such as rental vehicles. Furthermore, when repaired, Kia often utilizes used replacement parts which fail to adequately place Class Members in the same position as prior to such engine failures.

87.    The model year 2015-16 Kia Class Vehicles have also not been recalled despite being equipped with the same engines and defect as the recalled model year 2011-14 Kia Class Vehicles, as well as Plaintiffs and Members of the Class notifying Kia about their engines stalling and failing while being operated. Kia is also aware that these engines are prone to the same failure and risk to safety as the 2011-14 Class Vehicles yet has failed to provide the appropriate notice to Class Members, as well as the appropriate and necessary repairs.

### 3. Engine Failures within the Class Vehicles

88.    Upon information and belief, the connecting rod bearings in the GDI Engines undergo prolonged failure as metal debris circulates throughout the engine via the engine oil. Over time, and as a result of these contaminants in the oiling system, the connecting rod bearings begin to fracture. Once the connecting rod bearings fracture, large amounts of metal debris begins to accumulate in the engine oil. As a result, the oil becomes so contaminated with metal debris that the oil filter can no longer remove the plethora of contaminants and maintain the necessary oil pressure within the engine. This contaminated engine oil is recirculated throughout the engine by the oil pump, causing damage to the various engine components and eventually results in sudden and

unexpected catastrophic engine failure. If the vehicle is being operated on the highway at the time of the engine failure, it will ultimately result in a high-speed stalling event.

89.     Additionally, as the connecting rod bearings continue to fracture, the acceptable tolerances between the bearings, the connecting rod, and the crankshaft rapidly deteriorate. Eventually, the Class Vehicles begin producing a "knocking" sound originating from the engine as a result of the deteriorating bearings. In some instances, the defective connecting rod bearings may eventually cause the piston to break through the engine block as a result of the deterioration.

90.     A photograph of a fractured connecting rod bearing removed from a GDI Engine is included below. As shown in the photograph, the bearing has fractured and worn away to the point of laying flush along the inside of the connecting rod. A large fracture is also plainly visible along the bottom left side of the bearing.



91.     After the connecting rod bearings fail and metal debris is circulated throughout the engine via the engine oil, damage is caused to other key engine components. As pictured below, the main cap – which fastens the crankshaft to the engine – can also be damaged by the metal debris in the engine oil. After the main cap is

1  damaged, play between the main cap and engine develops, which also leads to
2  catastrophic engine failure.



14  92.    As a result of the defect, the Class Vehicles suffer from restricted and
15  inadequate engine oil lubrication. As explained above, engines are designed to have oil
16  distributed throughout the engine through lubrication channels. When operating properly,
17  the engine oil is distributed throughout the engine by the oil pump and then flows back
18  to the oil pan where it is redistributed throughout the engine.

19  93.    In the Class Vehicles, the lubrication channels become clogged and
20  restricted as a result of the defect, even under normal use and proper maintenance. When
21  the lubrication channels clog, engine oil is unable to be both pumped throughout the
22  engine (through the oil pump) and is also unable to adequately return to the oil pan,
23  causing a condition known as oil starvation. This results in insufficient lubrication
24  throughout the Class Vehicle's engine, which causes premature wear of the engine
25  components and catastrophic engine failure.

26  94.    The engine defect poses serious safety and security issues for operators and
27  occupants of the Class Vehicles. By way of example, the California Department of Motor
28  Vehicles asserts that stalled engines pose a significant safety risk and, as part of its safety

-23-

curriculum, instructs how to properly respond to a stalled action in order to avoid further risk of injury.

95.     NHTSA takes a similar view of engine failure during vehicle operation. For instance, according to *Forbes*, in 2011 the NHTSA recalled certain Chrysler and Dodge vehicles due to "engine seizure because of connecting rod bearing failure . . . . Engine seizure could increase the risk of a crash."[5]

96.     Defendants failed to adequately research, design, test, and/or manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

## B.     Defendant KMA's Knowledge of the Engine Defect

97.     Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same engine defect within the Class Vehicles and complaints from earlier model year Kia owners and lessees with the same engines.  Upon information and belief, Defendant KMA, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration ("NHTSA"), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing, and (6) other various sources, were well aware of the engine defect but failed to notify consumers of the nature and extent of the problems with the GDI Engines or provide any adequate remedy.

98.     KMA routinely monitors the internet for complaints similar in substance to those quoted below. KMA's customer relations department routinely monitors the internet for customer complaints, and KMA has retained the services of third-parties to do the same. Further, the customer relations division regularly receives and responds to

---

[5]  http://www.forbes.com/sites/altheachang/2011/09/30/engine-problems-prompt-chrysler-recalls/ (last visited August 7, 2017).

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

customer calls concerning, *inter alia*, product defects. Through these sources, KMA was made aware of the engine defect. The complaints also indicate KMA's knowledge of the defect and its potential danger.

99.   KMA is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, KMA likely conducts testing on incoming batches of components, including the GDI Engine, to verify that the parts are free from defects and comply with KMA's specifications. Accordingly, KMA knew or should have known that the engine used in the Class Vehicles is defective and likely to fail prematurely, costing Plaintiffs and Class Members thousands of dollars in expenses.

100.   Moreover, KMA also should have known of the connecting rod bearing defect and insufficient lubrication channels because of the sheer number of reports of engine problems relating to the connecting rod bearings and/or lubrication channels. For instance, KMA's customer relations department, which interacts with Kia-authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, has received numerous reports of engine problems relating to the connecting rod bearings and lubrication channels. Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

101.   KMA's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. KMA dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide KMA with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case KMA later determines to audit the dealership or otherwise verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to KMA because KMA will not pay

-25-

1  the service centers for the repair if the complaint, cause, and correction are not sufficiently
2  described.

3      102.  KMA knew or should have known about the engine defect because of the
4  high number of replacement parts likely ordered from KMA. All Kia service centers are
5  required to order replacement parts, including engines, piston assemblies, and connecting
6  rod bearings directly from KMA. Other independent vehicle repair shops that service
7  Class Vehicles also order replacement parts directly from KMA. KMA routinely monitor
8  part sales reports, and are responsible for actually shipping parts requested by dealerships
9  and technicians. Thus, KMA has detailed, accurate, and real-time data regarding the
10 number and frequency of replacement part orders. The sudden increase in orders for the
11 GDI Engines and engine components used in the Kia Class Vehicles was known to KMA,
12 and should have alerted it to the scope and severity of the engine defect.

13     103.  In February 2012, KMA issued a technical service bulletin ("TSB") to its
14 authorized dealerships regarding an engine knocking noise. TSBs are documents used by
15 automotive manufacturers to inform dealership technicians about new information,
16 including vehicle problems, new repair procedures, and improved parts. In TSB
17 No. ENG114R1, KMA acknowledged that the earlier model years of the Class Vehicles
18 with identical engines were defective and experienced a "knocking noise." As a result,
19 KMA directed dealers to blame the engine defect on the use of aftermarket oil filters and
20 instructed the dealers to replace the aftermarket oil filter with a genuine Kia oil filter. The
21 TSB also explained that this "repair" is not covered under warranty. KMA has failed to
22 provide any post-sale notification to owners and lessees regarding the use of only genuine
23 Kia oil filters in the Kia Class Vehicles. Instead, KMA attempts to circumvent warranty
24 obligations related to the engine defect by faulting customers for use of an aftermarket
25 oil filter. The defective connecting rod bearings and oil lubrication channels are not,
26 however, caused by the use of an aftermarket engine oil filter. Despite KMA's knowledge
27 of this fact, KMA has not informed Plaintiffs of the true cause of the defective connecting
28 rod bearings and insufficient oil lubrication channels.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

1

### 1. Complaints by Other Class Members

2

104. Representative examples of complaints on the NHTSA website regarding

3

the Kia Class Vehicles are included below (with emphasis supplied in capitalized bold,

4

underlined letters)[6]:

5

### a. *KIA GDI Engine Complaints*

6

Vehicle: 2015 Kia Optima

7

Date Complaint Filed: 05/10/2017

Date of Incident: 04/28/2017

8

Component(s): ENGINE

9

NHTSA ID Number: 10984694

10

**SUMMARY**:

11

ENGINE LOCKED UP DURRING ACCELERATION TO 40

MPH WHY MERGING INTO TRAFFIC FOUND OUT

12

ENGINE HAS A BENT ROD. OIL AND COOLENT WHERE

13

SUFFICINT BUT KIA WILL NOT FIX OR REPLACE.

14

COULD OF CAUSED MY WIFE TO CRASH OR BE HIT BY

TRAFFIC

15

16

17

Vehicle: 2015 Kia Optima

Date Complaint Filed: 05/03/2017

18

Date of Incident: 11/26/2016

19

Component(s): ENGINE

20

NHTSA ID Number: 10983354

21

**SUMMARY**:

22

ENGINE LIGHT CAME ON, THEN THE OIL LIGHT. I

STOPPED TO CHECK OIL. THERE WAS NO OIL ON THE

23

DIPSTICK. I CHECKED FOR LEAKS. FOUND NONE. I

24

ADDED 2 QUARTS. THE ENGINE WAS KNOCKING. I

25

TOOK IT TO THE DEALERSHIP. MY CAR WAS UNDER

WARRANTY. BUT WOULDN'T REPLACE IT. IT WOULD

26

COST ME $7200. SO I TRIED TO DRIVE IT HOME, AND

27

───────────────

28

[6] The foregoing complaints are reproduced as they appear on the NHTSA website. Any typographical errors are attributable to the original author of the complaint.

-27-

IT QUIT.THE ENGINE SHUT DOWN. I HAD TO HAVE IT
TOWED HOME. THIS WAS IN NOVEMBER 2016. AND IT
IS STILL DOWN. THEN I HEARD KIA IS GETTING A
CLASS ACTION LAWSUIT AGAINST THEM, FOR OIL
FLOW ISSUES. I'M STILL PAYING ON THE CAR. I
FINANCED THROUGH MY CREDIT UNION. SO THEY
ALREADY GOT THERE MONEY. I THINK THAT IS WHY
THEY ARE SCREWING ME OVER. TO BE CLEAR I HAD
JUST LEFT THE DEALERSHIP WHEN IT QUIT. IT NEVER
MADE A SOUND, THE DEALERSHIP HAD IT 3 DAYS.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 01/09/2017
Date of Incident: 11/01/2016
Component(s): ENGINE
NHTSA ID Number: 10943930

**SUMMARY**:
2015 KIA OPTIMA WAS OUT OF OIL @ 22,000 MILES
AND NO INDICATOR LIGHT HAD GONE ON WHEN IT
WAS TAKEN TO AN OIL CHANGE. THE OIL CHANGE
PLACE WAS THE ONE THAT INDICATED THAT THE
VEHICLE HAD NO OIL IN IT. IT STARTED MAKING
SOME RATTLING NOISE SPECIALLY GOINT UPHILL SO
I TOOK IT IN TO KIA SERVICE DEPARTMENT. THEY
DIAGNOSED IT WITH "SLUDGE" IN THE ENGINE AND
ENGINE WOULD HAVE TO BE REPLACED. I HAD TO
PROVE 3 PREVIOUS RECEIPTS OF OIL CHANGES
OTHERWISE THE WARRANTY WOULD NOT COVER IT.
I DO NOT HAVE THOSE RECEIPTS AND 16 DAYS
LATER TOOK IT TO THE SAME PLACE I DID MOST
RECENT OIL CHANGE BECAUSE OIL LIGHT HAD
TURNED ON. THE VEHICLE AGAIN HAD NO OIL IN IT.
THE TOPPED IT OFF BUT MENTIONED THAT IT WAS
NOT NORMAL FOR SUCH A RECENT MODEL TO BE
BURNING OIL. VEHICLE IS STILL RUNNING BUT
MAKES RATTLING NOISE ONCE IN A WHILE,
PRODUCES WHITE SMOKE OUT OF EXHAUST PIPE

-28-

AND I HAVE TO PUT OIL IN IT EVERY COUPLE OF
DAYS. I CANNOT AFFORD TO BUY A NEW ENGINE. I
AM A SINGLE MOM AND NEEDS A RELIABLE VEHICLE
TO GET TO WORK.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 11/03/2016
Date of Incident: 11/02/2016
Component(s): ENGINE
NHTSA ID Number: 10923952

**SUMMARY**:
THE VEHICLE WAS IN MOTION AND HAD AN OIL
CHANGE THE PREVIOUS DAY. THE VEHICLE LOST
POWER AND AN AUDIBLE CLICKING OR TAPPING
NOISE CAME ON WHILE DRIVING ON THE HIGHWAY.
MY WIFE HAD JUST ENOUGH TIME TO PULL OFF INTO
A LOCAL BUSINESS AND PARKED THE CAR. I TOOK IT
TO KIA AND THEY ADVISED THERE WAS "SLUDGE" IN
THE ENGINE AND WE HAD NOT BEEN MAINTAIN THE
VEHICLE PROPERLY. OFFERED TO PRODUCE
RECORDS BUT THEY ADVISED THEY STILL WOULD
NOT COVER IT. *TR

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/29/2016
Date of Incident: 07/22/2016
Component(s): ENGINE
NHTSA ID Number: 10910586

**SUMMARY**:
ENGINE FAILURE AT 15 MONTHS OLD AND 42,000
MILES. KIA DENIED WARRANTY COVERAGE
BECAUSE I COULD NOT PROVE OIL CHANGES. SAME
COMPLAINT AS THOUSANDS OF OTHER KIA
VEHICLES, HAPPENED ABRUPTLY, CAR STARTING
MAKING LOUD RATTLING NOISE ON ACCELERATION

WHILE DRIVING, NO WARNING, SLUDGE IN ENGINE. I HAD TO PAY OUT OF POCKET FOR A NEW ENGINE TO BE INSTALLED WITH NO ASSISTANCE FROM KIA OR MY LOCAL DEALERSHIP.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/09/2016
Date of Incident: 06/10/2016
Component(s): ENGINE
NHTSA ID Number: 10905150

**SUMMARY**:
MY 2015 KIA OPTIMA HAS 23000 MILES.. I COULDN'T REMEMBER WHEN I HAD THE OIL CHANGED,BUT I WAS DRIVING ON 75 COMING FROM FLA. THE AC STOP WORKING AND THEN SHORTLY AFTER THAT THE CAR STARTED TO SLOW DOWN. IT FINALLY CAME TO A COMPLETE STOP, WHEN I GOT IT TO THE KIA DEALERSHIP THEY INFORMED ME THAT THE ENGINE HAD SEIZED .BECAUSE THE SAID I COULD NOT PROVE THAT THE OIL HAD BEEN CHANGED,THE WARRANTY WOULD NOT COVER IT. I BOUGHT THE CAR BRAND NEW. ONLY HAD IT 15 MONTHS. THERE WAS NO WARNING LIGHTS OR ANY SIGNS OF TROUBLE .KIA WILL NOT FIX IT, THEY WANT ALMOST 8.000 TO PUT IN A NEW ENGINE.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/07/2016
Date of Incident: 09/04/2016
Component(s): ENGINE
NHTSA ID Number: 10904330

**SUMMARY**:
AS I WAS DRIVING MY 2015 OPTIMA TO THE STORE MY CHECK ENGINE LIGHT CAME ON. THE NEXT DAY I STARTED MY CAR AND HEARD A RATTLING OR

-30-

TICKING SOUND, THIS WAS ON LABOR DAY, SO I TURNED MY CAR OFF AND CALLED THE DEALERSHIP. DUE TO HOLIDAY THE SERVICE DEPT WAS NOT OPEN. I CALLED THEM AGAIN ON TUESDAY SEPT 6TH AND WAS ADVISED THEY WOULD HAVE IT TOWED. I RECEIVED A PHONE CALL ON TUESDAY EVENING STATING MY MOTOR HAS SLUDGE AND NEEDS TO BE REPLACED.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 09/06/2016
Date of Incident: 09/03/2016
Component(s): ENGINE
NHTSA ID Number: 10904201

**SUMMARY**:
2015 KIA OPTIMA, ONLY 47K MILES....ENGINE FAILURE...THE DEALERSHIP SAYS ITS SLUDGE... AND I HAVE TO PROVIDE ALL MY MAINTENANCE RECORDS. IT STARTED WITH WHITE SMOKE COMING OUT OF THE TAILPIPE AND LOUD RATTLING NOISE WHEN I ACCELERATED, THEN THIS PAST SATURDAY, IT STARTED TO SHAKE VIOLENTLY AND THE CHECK ENGINE LIGHT WENT ON . I HAD TO GET IT TOWED. THIS IS KIA'S FAULT!!! NOT MINE. I'VE DONE THE SAME ROUTINE MAINTENANCE ON MY TOYOTA AND HONDA WHICH HAD OVER 100K MILES WITH NO PROBLEMS! I AM BEING TOLD BY KIA THAT IT WON'T BE COVERED UNDER THE WARRANTY.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 06/15/2016
Date of Incident: 06/04/2016
Component(s): ENGINE
NHTSA ID Number: 10874312

**SUMMARY**:

-31-

MY 2015 KIA OPTIMA HAS 26,456 MILES. THE LAST OIL CHANGE WAS PERFORMED AT 26,064 MILES. ON 6/4/16 WHILE DRIVING APPROX. 50MPH IN 3 LANE TRAFFIC THE ENGINE SEIZED UP, CAR SHUT DOWN AND INTERIOR FILLED WITH SMOKE. HAD VEHICLE TOWED TO KIA. WAS TOLD IT NEEDS A NEW ENGINE DUE TO SLUDGE IN THE OIL. KIA IS REFUSING TO HONOR THE WARRANTY BECAUSE I CANNOT PRODUCE RECEIPTS FOR PREVIOUS OIL CHANGES. I HAVE RESEARCHED AND MANY OTHER KIA VEHICLES ARE HAVING VERY SIMILAR PROBLEMS WITH LOW MILES! THERE HAS TO BE SOMETHING WRONG THAT KIA IS NOT AWARE OF OR IS JUST NOT WILLING TO ADMIT. NOT ONLY WILL THEY NOT FIX MY VEHICLE BUT I FEAR SOMEONE IS GOING TO GET HURT OR EVEN KILLED. I INFORMED KIA OF MY CONCERN BUT THEY DID NOT SEEM TO CARE.

Vehicle: 2015 Kia Optima
Date Complaint Filed: 05/24/2016
Date of Incident: 10/15/2015
Component(s): ENGINE
NHTSA ID Number: 10870505

**SUMMARY**:
TL* THE CONTACT OWNS A 2015 KIA OPTIMA. WHILE DRIVING 60 MPH, SMOKE EMITTED FROM THE ENGINE COMPARTMENT WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE DEALER. THE TECHNICIAN DIAGNOSED THAT THE NUMBER TWO CYLINDER WAS DEFECTIVE AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 58,000.

Vehicle: 2015 Kia Sorento
Date Complaint Filed: 04/25/2017

Date of Incident: 04/11/2017
Component(s): ENGINE
NHTSA ID Number: 10980556

**SUMMARY:**
WE STARTED HAVING PROBLEMS AT ABOUT 20,000
MILES.THE CAR WAS PULLING AS WE TRIED TO
ACCELERATE AND SMOKE WOULD BLOW OUT OF
THE TAILPIPE. WE TOOK IT INTO THE DEALERSHIP IN
WHICH THEY STATED WE HAD SLUDGE IN THE
ENGINE. THEY STATED TO MAINTAIN REGULAR OIL
CHANGES, BUT WE WOULD NEED A NEW ENGINE. 4
MONTHS LATER THEY DID AN OIL CHANGE AND
STATED THE OIL WAS CLEAR OF SLUDGE. WITHIN 2
WEEKS, WE HEARD A LOUD BANGING SOUND FROM
THE ENGINE, IT GOT LOUDER AND WAS BARELY
GOING 5 MILES/HR. WE WERE ON A MAJOR ROAD
AND WERE ABLE TO PULL INTO A PARKING LOT. WE
HAD IT TOWED TO THE DEALERSHIP (CENTRAL KIA
OF PLANO). WITHOUT EVEN LOOKING AT IT, THEY
SAID IT WAS THE SLUDGE IN THE ENGINE AND WE
NEEDED OUR ENGINE REPLACED ($7000). THEY
WOULD NOT EVEN LOOK UNDER THE HOOD UNTIL
WE PAID THEM $400 TO OPEN IT UP. THEY STATED
THE WORK WOULD NOT BE COVERED UNDER OUR
WARRANTY EVEN THOUGH WE ARE ONLY 2 YEARS
INTO IT AND AROUND 30,000 MILES. I CALLED KIA
CONSUMER AFFAIRS (800-333-4542) AND THEY
CONTACTED THE DEALERSHIP AND THAT'S WHEN
THEY FINALLY OPENED THE HOOD AND FOUND
SLUDGE IN THE ENGINE. THEY TOOK PICTURES AND
SENT IT TO KIA "TECH" IN WHICH OUR CLAIM WAS
DECLINED DUE TO "LACK OF MAINTENANCE". WE
PROVIDED RECEIPTS FOR OUR OIL CHANGES. THEY
DID NOT ACCEPT 3 OF THEM BECAUSE THEY DID NOT
HAVE A "PO#" AND THEY DID NOT ACCEPT 2 OF MY
CREDIT CARD RECEIPTS. I TOLD KIA CONSUMER
AFFAIRS THE 2015'S ARE HAVING THE SAME ISSUES
AS THE RECALLS 2011-2014. SHE STATED THE DMV IS

-33-

COLLECTING INFORMATION ON THE 2015'S.
EVERYONE CALL CONSUMER AFFAIRS!! THERE IS AN
ENGINE PROBLEM WITH THE 2015'S AND KIA IS NOT
STANDING BY THEIR WARRANTY. WE HAVE NOT
BEEN PROVIDED A RENTAL CAR. I HAVE ALSO
ESCALATED THIS ISSUE TO KIA'S "ESCALATION
DEPT" IN WHICH THEY STATED TO GET THEM MORE
RECEIPTS AND "TECH" CAN REVIEW THE CASE
AGAIN! I HAVE GATHERED MORE RECEIPTS
INCLUDING HOW OFTEN WE WERE PUTTING OIL IN
BETWEEN OIL CHANGES.

---

Vehicle: 2015 Kia Sorento
Date Complaint Filed: 08/24/2016
Date of Incident: 07/01/2016
Component(s): ENGINE
NHTSA ID Number: 10898199

**SUMMARY:**
I WAS DRIVING DOWN THE ROAD WITH MY 4
CHILDREN IN THE CAR AT 45 MPH WHEN ALL OF A
SUDDEN MY CAR COMPLETELY LOST POWER.
LUCKILY I WAS ABLE TO COAST TO THE SIDE OF THE
ROAD. IT WAS OVER A 100 DEGREES OUTSIDE AND
MY 4 KIDS UNDER 6 HAD TO SIT AND WAIT ON A RIDE
IN THE HEAT. THE CAR HAS 40,000 MILES ON IT AND
HAS HAD 7 OIL CHANGES, OF WHICH I HAVE
PROVIDED THE RECEIPTS FOR. THERE IS ENGINE
SLUDGE DESPITE THE FACT THAT THE OIL WAS
CHANGED MORE FREQUENTLY THAN THE MANUAL
SUGGESTED 7500 MILES,

---

Vehicle: 2015 Kia Sorento
Date Complaint Filed: 06/23/2017
Date of Incident: 12/01/2014
Component(s): ENGINE

-34-

NHTSA ID Number: 11000887

**SUMMARY:**
(AMENDMENTS TO ODI#S: 10668775 & 10663356 - UPDATE)

ON 12/01/2014, I WAS IN A 2015 KIA SORENTO LX (ENTERPRISE INSURANCE RENTAL) TRAVELING ON CRABB RIVER ROAD, (A CITY STREET) SUGARLAND, TEXAS. I FULLY STOPPED AT THE TRAFFIC LIGHTS BECAUSE IT WAS RED. ONCE LIGHTS TURNED GREEN, I PUT THE VEHICLE IN MOTION BY STEPPING ON THE GAS PEDAL TO ACCELERATE BUT THE CAR FELT REALLY SLUGGISH SO I GAVE IT MORE GAS IN ORDER TO GAIN ENOUGH SPEED AS I WAS ABOUT TO GO OVER SOME RAILROAD TRACKS (APPROX. 55+ MPH) WHICH WERE ON A ROAD THAT WAS ON AN INCLINE. RIGHT AS THE CAR REACHED THE TRACKS, THE ENGINE STALLED, THE STEERING WHEEL LOCKED AND I LOST ALL CONTROL OF THE VEHICLE AND IT DOVE INTO A DITCH; PLOWED DIRECTLY INTO A STEEL BILLBOARD POLE WHICH WAS CEMENTED INTO THE GROUND BECAUSE THE BRAKES BECAME  UNRESPONSIVE. THERE WERE NO WARNING LIGHTS ON THE DASH PRIOR TO THE CRASH. EVEN THOUGH I WAS FULLY BUCKLED, THE SEATBELT DID NOT PREVENT MY HEAD FROM VIOLENTLY HITTING THE WINDSHIELD AND BOUNCING OFF THE STEERING WHEEL SINCE NONE OF THE 8 AIRBAGS DEPLOYED. I SUFFERED NEAR FATAL INJURIES INCLUDING A BROKEN BACK (L2 FRACTURE), SPINAL CORD, HEAD, EYE, CHIN, JAWS, NECK AND HIP; BROKEN TEETH, PERMANENT DISFIGURATION (18 STITCHES), SOME VISION & HEARING LOSS FROM NERVE DAMAGE AND PTSD, MENTAL ANGUISH, CHRONIC MIGRAINES, EXTREME STRESS, TERRIBLE RECURRING NIGHTMARES, ETC. I'M A 5'2" WOMAN AND MY CHEST WAS PINNED TO THE STEERING WHEEL UPON THE IMPACT WITH THE

-35-

POLE AND THE FIRE DEPT. HAD TO FREE ME AND
LIFT ME UP TO THE EMTS. I WAS TRANSPORTED TO
THE ER OF A HOSPITAL BY AMBULANCE AND LATER
TRANSFERRED TO THE TRAUMA UNIT OF MEMORIAL
HERMANN HOSPITAL DUE TO THE SEVERITY OF MY
INJURIES.

Vehicle: 2016 Kia Sorento
Date Complaint Filed: 10/12/2017
Date of Incident: 10/09/2017
Component(s): ENGINE
NHTSA ID Number: 11033167

**SUMMARY:**
VEHICLE STALLED WHILE DRIVING WITH SPEED ON
NORMANDIE AVE IN TORRANCE CALL TRIPLE FOR
THEM TO TOW IT TO KIA DEALER. RECEIVED A
CALLED FROM DEALER SAYING THE ENGINE BLOWN
OUT. AT 50000 MILES. TECHNICIAN FROM KIA
MENTIONED IT'S A RECALL.

Vehicle: 2015 Kia Sportage
Date Complaint Filed: 09/13/2017
Date of Incident: 08/23/2017
Component(s): ENGINE
NHTSA ID Number: 11022956

**SUMMARY:**
I WAS DRIVING ON THE FREEWAY AT 65 MPH IN THE
SLOW LANE WHEN THE CHECK ENGINE LIGHT
SUDDENLY CAME ON, THEN ALL THE SERVICE
LIGHTS LIT UP AND THE CAR BEGAN LOSING POWER.
LUCKILY, I WAS COMING TO AN OFFRAMP AND WAS
ABLE TO MAKE IT TO THE END OF THE OFFRAMP
(SIGNAL) BEFORE THE CAR DIED COMPLETELY. WE
HAD TO PUSH THE CAR OUT OF THE ROAD AND
AROUND THE CORNER TO A CURB AS WE WERE

-36-

BLOCKING ONE SIDE OF THE OFFRAMP. HAD I NOT
BEEN IN THE SLOW LANE AND NEAR AN OFFRAMP,
THE CAR WOULD HAVE DIED ON THE FREEWAY
WHICH WOULD HAVE BEEN A MUCH MORE
DANGEROUS SITUATION. WAS TOLD BY KIA SERVICE
DEPT. THAT THE ENGINE BLEW BECAUSE OF SLUDGE
IN THE OIL.

### b.    *Previous Model Year Kia GDI Engine Complaints*

Vehicle: 2011 Kia Optima
Date Complaint Filed: 10/16/2014
Component(s): ENGINE
Date of Incident: 10/12/2014
NHTSA ID Number: 10645013

**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA OPTIMA. THE
CONTACT STATED THAT **WHILE DRIVING 75 MPH AT
NIGHT WITH THE CRUISE CONTROL ACTIVATED,
THERE WAS SMOKE COMING FROM UNDER THE
HOOD AND THE VEHICLE ENGULFED INTO
FLAMES.** THE FIRE DEPARTMENT EXTINGUISHED
THE FIRE. A POLICE/FIRE REPORT WAS FILED AND
THERE WERE NO INJURIES REPORTED. THE VEHICLE
WAS DESTROYED AND THE CAUSE OF THE FIRE WAS
NOT DETERMINED. THE MANUFACTURER WAS NOT
MADE AWARE OF THE FAILURE. THE FAILURE
MILEAGE WAS 51,500.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 04/16/2015
Date of Incident: 03/31/2015
Component(s): ELECTRICAL SYSTEM, ENGINE
NHTSA ID Number: 10706020

**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA OPTIMA. **WHILE**

-37-

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

**TRAVELING AT APPROXIMATELY 50 MPH AND ATTEMPTING TO SLOW DOWN FOR A STOP LIGHT, THE VEHICLE STALLED WITHOUT WARNING AND FAILED TO RESTART.** THE VEHICLE WAS TOWED TO AN AUTHORIZED DEALER WHO DIAGNOSED THAT THE STARTER BURNED OUT AND THAT THE ENGINE SEIZED. THE DEALER REPLACED THE STARTER AND WAS NOT ABLE TO DIAGNOSE THE SOURCE OF THE FAILURE. THE CONTACT WAS INFORMED THAT A MORE EXTENSIVE DIAGNOSIS WAS REQUIRED AND THE ENGINE NEEDED TO BE TAKEN APART. THE ENGINE FAILURE WAS NOT REPAIRED BY THE DEALER. THE VEHICLE WAS NOT ABLE TO BE DRIVEN. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 05/29/2015
Date of Incident: 05/27/2015
Component(s): ENGINE, SERVICE BRAKES
NHTSA ID Number: 10722186

**SUMMARY:**
I HAVE A 2011 KIA OPTIMA LX, 2.4 LITER ENGINE. ALWAYS KEEP UP ON THE MAINTENANCE AND OIL CHANGES, CAR IS IN GREAT SHAPE. I WAS NOT EXPERIENCING ANY ISSUES, WARNINGS, NO CHECK ENGINE/OIL LIGHTS, NO NOISES, ABSOLUTELY NOTHING. **THEN LAST NIGHT MY CAR JUST SPUTTERED AND CUT OFF WHILE BEING DRIVEN. APPARENTLY WHEN THE ENGINE CUTS OFF, SO DOES THE BRAKES. THERE WAS NO WAY TO PUSH THE BRAKES, SO I HAD TO TRY TO SAFELY COAST TO THE SIDE OF THE ROAD, WITH NO BRAKES AND NO POWER STEERING.** I FINALLY PULLED OVER, TRIED TO RESTART THE CAR AND THERE WAS SUCH A LOUD KNOCKING NOISE, AND SOME SQUEALING

-38-

NOISES AS WELL. THE CAR WILL NO LONGER START EITHER. I HAD A MECHANIC LOOK AT IT TODAY AND SAYS THE ENGINE IS "JUST GONE." NO EXPLANATIONS AT ALL. I VERIFIED THAT THE KIA OPTIMA AND THE HYUNDAI SONATA ARE THE SAME MANUFACTURER AND USE THE SAME ENGINES. I SEE THERE ARE WAY MORE COMPLAINTS ABOUT THE 2011 HYUNDAI SONATA WITH THIS SAME ISSUE. I WILL TRY TO NOTIFY KIA AND SEE IF THEY ARE WILLING TO STEP UP AND CORRECT THIS EVEN WITH THE WARRANTY EXPIRING 7,000 MILES AGO, SINCE I AM THE SECOND OWNER. I HAVE FOUND MANY COMPLAINTS ABOUT THIS SAME THING FOR BOTH THE 2011 OPTIMAS AND SONATAS. THIS IS SO DANGEROUS BECAUSE THERE ARE NO WARNINGS, AND THE ENGINE CUTS OFF IN TRAFFIC, WHICH ALSO CAUSES THE BRAKES AND STEERING TO GO OUT. NOT SAFE AT ALL.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 08/24/2015
Date of Incident: 08/24/2013
Component(s): ENGINE
NHTSA ID Number: 10778079

**SUMMARY:**
DRIVING DOWN EXPRESS WHEN ENGINE STARTED TO LOOSE OIL. PULLED OVER ON SHOULDER, NOTICE A CLICKING NOISE AND SMELLED BURNING OIL. DEALER FOUND HOLE IN SIDE OF ENGINE BLOCK. STATED NEEDS NEW ENGINE AND QUOTED AND ESTIMATED PRICE OF $5,875.64 FOR A USED ENGINE WITH 46,000 MILES INSTALLED. HAD CAR REPAIRED AT ANOTHER PLACE FOR $5477.06 WITH 41,000 MILES. THIS SHOP SAID THE ENGINE HAD A ROD KNOCK THEN LOCKED UP. NEEDS THE ENGINE REPLACED. **THIS IS THE SAME 2.4 LITER ENGINE THAT IS BEING RECALLED FOR THE HYUNDAI SONATAS.**

-39-

Vehicle: 2011 Kia Optima
Date Complaint Filed: 09/29/2015
Date of Incident: 06/21/2015
Component(s): ENGINE
NHTSA ID Number: 10778375

**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA OPTIMA. **WHILE DRIVING AT APPROXIMATELY 40 MPH, THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE DRIVER SHUT OFF THE VEHICLE AND IT FAILED TO RESTART.** THE VEHICLE WAS TOWED TO A DEALER WHO DIAGNOSED THAT THE ENGINE NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 71,106.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 11/09/2015
Date of Incident: 10/31/2015
Component(s): ELECTRICAL SYSTEM , ENGINE
NHTSA ID Number: 10789435

**SUMMARY:**
**WHILE DRIVING 70 MPH ON THE HIGHWAY MY 2011 KIA OPTIMA ENGINE SHUT DOWN AND WOULD NOT ACCELERATE AND THE BRAKES WOULD NOT FUNCTION.** LUCKILY, I SAFELY MADE IT TO THE FAR SHOULDER OF THE HIGHWAY ONLY TO FIND THAT MY CAR WAS SMOKING AND SMELLED LIKE SOMETHING WAS BURNING. HAD TO GET THE CAR TOWED TO THE DEALERSHIP AND THEY INFORMED THE ENGINE NEEDS TO BE REPLACED AND THE STARTER IS ALSO FRIED. I HAVE SEEN FOUR COMPLAINTS SO FAR OF 2011 KIA OPTIMA'S WITH THE SAME ISSUE AND AM SURE I WILL FIND MORE.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

THAT SEEMS LIKE TOO MUCH OF A COINCIDENCE THAT IT HAPPENS SO FREQUENTLY WITH THESE MODELS AND THERE ISN'T ANY SORT OF RECALL. NO BREAKS AT 70 MPH IS PRETTY DANGEROUS. I HAVE CONTACTED MY ATTORNEY AND HOPE THIS MANUFACTURER WILL DO THE RIGHT THING.

Vehicle: 2011 Kia Optima
Date Complaint Filed: 12/13/2015
Date of Incident: 12/06/2015
Component(s): ENGINE
NHTSA ID Number: 10809924

**SUMMARY:**
WAS DRIVING DOWN THE INTERSTATE AND THE CAR DIED AFTER PULLING OFF TO THE SHOULDER TRIED TO START THE CAR AND ALL IT WOULD DO WAS CLICK. TOWED THE CAR HOME THINKING IT WAS AN ALTERNATOR OR SOMETHING SIMPLE. NEXT MORNING LOOKED AT THEN CHANGED THE BATTERY AND TRIED TO GET IT STARTED IN SLIGHTLY TURNED OVER BUT NOT ENOUGH TO START CALLED THE DEALER TO DROP IT OFF AND THEY SAID CAR WAS SEIZED OUT OF WARRANTY AND NEEDS THE ENGINE REPLACED. **AFTER SEARCHING ON THE INTERNET AND LOOKING AT COMPLAINTS FOUND THAT MY ENGINE WAS BUILT AT THE SAME PLANT AS THE HYUNDAI SONATA SAME ENGINE, WHICH IS RECALLED FOR THIS SAME EXACT PROBLEM . I AM WONDERING WHY KIA ACTED LIKE THE CANT BELIEVE THIS WOULD HAPPEN WHEN THESE CARS SHOULD BE RECALLED** ALSO . WHAT CAN BE DONE HERE ? I WILL NOT LET THIS GO IT IS WRONG KIA'S SHOULD BE LOOKED INTO AND RECALLED

Vehicle: 2011 Kia Optima

-41-

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Date Complaint Filed: 02/29/2016
Date of Incident: 05/09/2015
Component(s): ENGINE
NHTSA ID Number: 10838965

**SUMMARY:**
TL-THE CONTACT OWNS A 2011 KIA OPTIMA. **THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 60 MPH, AN ABNORMAL SOUND EMITTED FROM UNDER THE HOOD OF THE VEHICLE AS THE CHECK ENGINE OIL WARNING LIGHT FLICKERED.** THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHERE IT WAS DIAGNOSED THAT THE CONNECTING ROD FAILED AND THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 92,000. SS

Vehicle: 2012 Kia Optima
Date Complaint Filed: 09/23/2014
Date of Incident: 09/22/2014
Component(s): ENGINE
NHTSA ID Number: 10638362

**SUMMARY:**
**DRIVING VEHICLE AT 35-40 MPH. ALL OF A SUDDEN ENGINE STOPPED.** THERE WAS HEAVY SMOKE COMING FROM UNDER THE HOOD AND SMELLED OF AN ELECTRICAL FIRE. SMOKE DISSIPATED AFTER 15 MINUTES. VEHICLE WAS UNABLE TO BE RESTARTED AND HAD TO BE TOWED TO KIA DEALERSHIP IN TURNERSVILLE NJ. SPOKE WITH DEALERSHIP ON 9/23 AND WAS TOLD STARTER AND ENGINE NEEDS TO BE REPLACED. *TR

Vehicle: 2012 Kia Optima

-42-

Date Complaint Filed: 09/26/2014
Date of Incident: 09/11/2014
Component(s): ENGINE
NHTSA ID Number: 10639417

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA OPTIMA. **THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 70 MPH, THE ENGINE STALLED WITHOUT WARNING.** IN ADDITION, A STRONG ELECTRICAL BURNING ODOR EMITTED INSIDE OF THE VEHICLE. THE VEHICLE WAS TOWED TO A DEALER FOR DIAGNOSIS. THE MECHANIC INFORMED THAT THE STARTER AND ASSOCIATED FUSES WERE COMPLETELY BURNT. THE VEHICLE WAS REPAIRED. THE CONTACT STATED THAT AFTER THE REPAIRS WERE PERFORMED, THE VEHICLE FAILED TO START. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHO RECOMMENDED THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 55,000.

Vehicle: 2012 Kia Optima
Date Complaint Filed: 09/30/2015
Date of Incident: 08/02/2015
Component(s): ENGINE
NHTSA ID Number: 10778891

**SUMMARY:**
I WAS DRIVING ON I 95 ON OUR WAY HOME FROM FLORIDA. WE WERE PASSING FAYETTSVILLE ,NC WHEN MY CAR ENGINE MADE SOME KNOCKING NOISE AND THEN THE ENGINE LIGHT CAME ON, BEFORE I CAN PULL TO THE SHOULDER, **THE CAR STALLED,LOST POWER AT 70 MLS PER HR. WE**

-43-

**WERE LUCKY NO ONE HIT US AS I WAS SLOWLY NAVIGATING TO THE SHOULDER.** I HAD IT TOWED TO A KIA DEALERSHIP IN FAYETTSVILLE,NC. THEY SAID ENGINE SEIZED UP AND NEEDS TO BE REPLACE. THE CAR HAS 71,000MLS BUT KIA DENIED MY WARRANTY CLAIM SO I END UP PAYING $5,700 FOR A REMANUFACTURED ENGINE.

Vehicle: 2012 Kia Optima
Date Complaint Filed: 12/14/2015
Date of Incident: 11/28/2015
Component(s): ENGINE
NHTSA ID Number: 10809989

**SUMMARY:**
THE VEHICLE HIT 63,000 MILES DURING THIS INCIDENT. AS I WAS MERGING ONTO THE EXPRESSWAY AT 50MPH, **I GOT THE VEHICLE TO 60MPH AND THE SPEEDOMETER GAUGE FROZE AT 60MPH. THEN, THE RPM GAUGE DROPPED TO 0. SUDDENLY THE ENGINE LOST POWER, THE BRAKES LOCKED UP AND BEFORE I GOT THE CAR OFF TO THE SHOULDER AT A COMPLETE STOP, THE ENGINE CUT OUT COMPLETELY.** THE ENGINE WOULD NOT START AT ALL AFTER IT CUT OUT. I THEN BROUGHT THE VEHICLE TO A DEALERSHIP WHERE THEY DEEMED A NEW ENGINE AS THE CURRENT ENGINE BLEW.

Vehicle: 2012 Kia Optima
Date Complaint Filed: 01/21/2016
Date of Incident: 01/13/2016
Component(s): ENGINE
NHTSA ID Number: 10821364

**SUMMARY:**
**DRIVING AT APPROXIMATELY 50 MPH ON THE**

-44-

**PARKWAY, ENGINE STALLED WITHOUT WARNING AND WOULD NOT RE-START.** I HAD THE CAR TOWED TO A SHOP WHERE THEY INFORMED ME THE ENGINE HAD SEIZED. THERE WAS DEFINITELY OIL IN THERE AS I HAD AN OIL CHANGE WITHIN THE LAST COUPLE OF WEEKS,. THE CAR HAS 72K MILES ON IT AND I AM THE SECOND OWNER SO NOT COVERED BY KIA'S NON-TRANSFERABLE 10YR/100K MI WARRANTY. WORKING WITH KIA CUSTOMER SERVICE, WAITING TO HEAR BACK FROM A SUPERVISOR.

Vehicle: 2013 Kia Optima
Date Complaint Filed: 06/14/2013
Date of Incident: 06/12/2013
Component(s): ENGINE
NHTSA ID Number: 10519827

**SUMMARY:**
DRIVING ON A CITY ROAD DURING NORMAL TRAFFIC (4:30PM EST) MY VEHICLE BEGAN TO MAKE LARGE RATTLING NOISE FROM THE ENGINE COMPARTMENT. AT FIRST I THOUGHT I HAD PICKED UP SOMTHING ON THE ROAD, BUT AS I ACCELERATED/DECCELERATED THE NOISE BECAME LOUDER/SOFTER. I IMMEDIATLEY CONTACTED MY KIA DEALERSHIP. AFTER SPEAKING TO THE SERVICE MANAGER HE TOLD ME TO BRING THE VEHICLE IN NEXT WEEK SINCE THAT WOULD BE THE SOONEST IT COULD BE LOOKED AT. I INFORMED HIM THAT I DID'NT THINK I COULD EVEN MAKE IT HOME LET ALONE WAIT A WEEK TO BRING THE VEHICLE IN. HE STATED I COULD DROP IT OFF, BUT IT WOULD NOT BE LOOKED AT UNTIL NEXT WEEK. EITHER WAY, WITHIN 10 MIUTES OF DRIVING A LARGE BANGING NOISE WENT OFF UNDER THE HOOD, ENGINE OIL SPRAYED THROUGHT THE ENGINE COMPARTMENT AND I HAD COMPLETE LOSS OF POWER. KIA ROADSIDE ASSISTANCE TOWED THE VEHICLE TO THE

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

DEALERSHIP WHERE THEY HAVE INFORMED ME THAT THE ENGINE NEEDS TO BE REPLACED. THE VEHICLE IS LESS THAN 2 WEEKS OLD AND HAD 600 MILES WHEN THIS OCCURED. I INFORMED THE DEALERSHIP I WOULD NOT WANT A VEHICLE WITH A REPLACED ENGINE AND THEY HAVE INFORMED ME THAT IS MY ONLY OPTION. I WILL NOT BE PURCHASING FROM KIA AGAIN AS THERE WAS NO SUPPORT FROM THEIR CORPORATE CUSTOMER SERVICE EITHER. *TR

Vehicle: 2013 Kia Optima
Date Complaint Filed: 08/17/2015
Date of Incident: 08/12/2015
Component(s): ENGINE
NHTSA ID Number: 10749310

**SUMMARY:**
THE EVENING OF 8/12/15 **I WAS DRIVING DOWN A 4 LANE CITY ROAD, 2 LANES EACH DIRECTION. THE ENGINE COMPLETELY SHUT OFF LEAVING ME WITH NO POWER AND IN A VERY DANGEROUS SITUATION WITH SUDDEN DECELERATION AND VEHICLES COMING UP FROM BEHIND.** FORTUNATELY, NO ONE HIT ME AND I WAS ABLE TO MOVE THE CAR OUT OF TRAFFIC. NO ENGINE MAINTENANCE/WARNING LIGHTS CAME ON PRIOR TO THE ENGINE FAILURE. WE HAVE BEEN INFORMED THE ENGINE IS LOCKED UP AND WILL NEED COMPLETELY REPLACE WITH A NEW ENGINE. ROUTINE MAINTENANCE, INCLUDING KIA'S 22,500 MILE RECOMMENDED MAINTENANCE WAS PERFORMED ONLY 16 DAYS PRIOR ON 7/27/15. DAVE GREEN, KIA ARAPAHOE SERVICE MANAGER, INFORMED TODAY (8/17/15) THAT THEY HAVE SEEN SEVERAL INSTANCES OF THIS IN THE PAST WEEK. THEY BELIEVE THERE IS A CONNECTION TO THE HOT WEATHER. WHAT EVER THE CAUSE THIS HAS A VERY

-46-

HIGH POTENTIAL TO CAUSE DEATH OR EXTREME INJURY

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 10/11/2011
Date of Incident: 07/18/2011
Component(s): ENGINE AND ENGINE COOLING
NHTSA ID Number: 10429442

**SUMMARY:**
WHILE DRIVING DOWN THE EXPRESSWAY, WITHOUT WARNING, THERE WAS A CATASTROPHIC ENGINE FAILURE CAUSING ONE OR TWO OF THE CONNECTING RODS TO BLOW THROUGH THE OIL PAN AND START A FIRE FROM THE FRONT OF THE VEHICLE TO THE BACK UNDERNEATH THE CARRIAGE. THE FLAMES CAME UP THE SIDES AND BACK OF THE CAR. NEEDLESS TO SAY IT WAS EXTREMELY FRIGHTENING. LOOKING AT THE DAMAGE OF THE CAR I NEVER EXPECTED THEM TO ATTEMPT TO REPAIR THIS CAR YET THEY DID. THE CAR WAS DOWN FOR ALMOST TWO MONTHS, THE SECOND ENGINE AND POWER STEERING FAILED BEFORE WE EVEN DROVE THE REPAIRED CAR OFF THE LOT. KIA STILL DID NOT WANT TO DO ANYTHING BUT REPAIR THE CAR AGAIN. THEY SAID, "THESE THINGS HAPPEN THATS WHY YOU HAVE A WARRANTY". THESE THINGS HAVE NEVER HAPPENED TO ME OR ANYONE I KNOW IN THE 30 YEARS I HAVE BEEN DRIVING. YOU BUY A NEW CAR TO AVOID SUCH PROBLEMS. THE CAR HAS NOW BEEN RETURNED TO ME AND IT IS STILL NOT RIGHT. I JUST TOOK IT IN FOR THEM TO BLOW OUT THE VENTS AND FILTERS. THERE WAS STILL REMNANTS OF THE FIRE EXTINGUISHER COMING OUT WHEN YOU TURNED ON THE AIR. THIS CAR IS DEFECTIVE AND SHOULD HAVE A SALVAGED TITLE. I WAS FORCED TO PUT IN A LAW SUIT. *KB

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 08/02/2017
Date of Incident: 03/16/2016
Component(s): ENGINE
NHTSA ID Number: 11012248

**SUMMARY:**
BEGINNING MARCH OF 2016, LOUD BANGING AND
CLANKING WHEN STARTING ENGINE. I TOOK IT TO
DEALERSHIP WHERE THEY DIAGNOSED IT WITH
BEARING PROBLEM WHICH COULD POTENTIALLY
CAUSE ENGINE FAILURE. VEHICLE OUT OF
WARRANTY SO NO COVERAGE FOR AN ESTIMATED
6,000.00 REPAIR. WHEN MENTION OF RECALL CAME
OUT I WAS RELIEVED AS I AM STILL DRIVING THE
VEHICLE. HOWEVER, IT SEEMS THAT THE RECALL
ONLY COVERS 2012 OR NEWER MODELS. THE 2011'S
HAVE MAJOR ENGINE ISSUES AS WELL AND NEED TO
BE INCLUDED IN THE RECALL

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 05/15/2017
Date of Incident: 05/07/2017
Component(s): ENGINE
NHTSA ID Number: 10985666

**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA SORENTO. THE
CONTACT STATED THAT A METAL BANGING NOISE
WAS HEARD UNDERNEATH THE HOOD OF THE
VEHICLE. THE CONTACT TOOK THE VEHICLE TO THE
DEALER WHERE IT WAS DIAGNOSED THAT THE
MOTOR FAILED AND NEEDED TO BE REPLACED. THE
VEHICLE HAD NOT BEEN REPAIRED. THE
MANUFACTURER OPENED CASE NUMBER: K3454763.
THE APPROXIMATE FAILURE MILEAGE WAS 63,000.

-48-

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 04/20/2017
Date of Incident: 03/27/2017
Component(s): ENGINE
NHTSA ID Number: 10979469

**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA SORENTO.
WHILE DRIVING 55 MPH, THE ENGINE STALLED AND
THE WARNING INDICATOR ILLUMINATED. THE
CONTACT PULLED THE VEHICLE OVER TO THE SIDE
OF THE ROAD. THE VEHICLE FAILED TO RESTART.
THE VEHICLE WAS TOWED TO THE DEALER WHERE
IT WAS DIAGNOSED THAT THE ENGINE NEEDED TO
BE REPLACED. THE VEHICLE WAS NOT REPAIRED.
THE MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS 96,000.

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 04/12/2017
Date of Incident: 04/07/2017
Component(s): ENGINE
NHTSA ID Number: 10972008

**SUMMARY:**
THE ENGINE BEGAN TO BE HARD TO START LEAVING
WORK FOR HOME. THEN THE NEXT MORNING IT WAS
HARD TO START AND WOULD ALMOST STALL AT
IDLE. AFTER PARKING AT WORK I ATTEMPTED TO
START IT AND DRIVE TO THE KIA DEALERSHIP FOR
DIAGNOSIS, IT WOULD NOT KEEP RUNNING MORE
THAN A FEW SECONDS.

THE ENGINE HAS SUFFERED A CATASTROPHIC
FAILURE. THE DEALER SAYS THAT IT IS LIKELY THAT
THE CRANK SHAFT BEARINGS FAILED, OR POSSIBLY
THE CONNECTING ROD BEARINGS. THE ENGINE

-49-

NEEDS TO BE REPLACED.

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 04/10/2017
Date of Incident: 02/10/2017
Component(s): ENGINE
NHTSA ID Number: 10971641

**SUMMARY:**
TL* THE CONTACT OWNS A 2011 KIA SORENTO. THE
CONTACT NOTICED SMOKE COMING FROM THE
VEHICLE AND DISCOVERED THAT IT WAS LOW ON
OIL. THE VEHICLE WAS TAKEN TO THE DEALER
WHERE IT WAS DIAGNOSED THAT THE BEARING WAS
FAULTY AND CAUSED AN OIL LEAK. THERE WAS
SLUDGE IN THE MOTOR, WHICH NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
CONTACT REFERENCED NHTSA CAMPIAGN NUMBER:
17V224000 (ENGINE AND ENGINE COOLING) AS A
POSSIBLE SOLUTION TO THE FAILURE; HOWEVER,
THE VIN WAS NOT INCLUDED. THE MANUFACTURER
WAS NOTIFIED OF THE FAILURE. THE FAILURE
MILEAGE WAS 55,000.

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 03/21/2017
Date of Incident: 02/27/2017
Component(s): ENGINE
NHTSA ID Number: 10967659

**SUMMARY:**
ON FEBRUARY 27, 2017, MY 2011 KIA SORENTO'S
ENGINE DIED. I HAD ONLY ONE WARNING THAT
THERE WAS A PROBLEM AND THAT WAS A LACK OF
POWER. I WAS GOING UP A SLIGHT HILL AND I HAD
TO FLOOR THE GAS PEDAL TO MAINTAIN 20MPH UP
IT. I WENT OUT AT 830PM THAT NIGHT TO TAKE IT TO

-50-

MY MECHANIC AND MY SORENTO WOULD NOT START. I HAD IT TOWED TO GORRING AUTOMOTIVE AT 1030PM. ON MARCH 1, 2017, MR. GORRING CALLED AND TOLD ME I WOULD NEED A NEW ENGINE. I CONTACTED CENTURY 3 KIA AND SPOKE TO THE SERVICE MANAGER DAN. HE STATED THAT I NEEDED TO BRING IT BACK TO THE DEALERSHIP TO HAVE IT LOOKED AT. I ALSO CONTACTED KIA CONSUMER NUMBER AND SPOKE TO ERIC. ERIC TOLD ME THE SAME INFORMATION AND I STATED I DID NOT WANT TO PAY FOR THE DIAGNOSIS AGAIN. I HAD MY SORENTO TOWED TO CENTURY 3 KIA ON MARCH 1, 2017. DAN STATED THAT HE WAS SURPRISED THAT MY VIN WAS NOT ON THE EXTENDED WARRANTY LIST. ON MARCH 3, 2017, DAN FROM CENTURY 3 KIA CALLED ME AND SAID THAT I DID NEED A NEW ENGINE. CHARLES FROM KIA'S CONSUMER NUMBER AND DAN FROM CENTURY 3 KIA BOTH STATED THAT IF I WAS THE ORIGINAL OWNER THEY WOULD REPLACE THE ENGINE AT NO COST TO ME BUT SINCE I AM THE SECOND OWNER OF THE SORENTO, IT WOULD BE MY RESPONSIBILITY. I INQUIRED AT THE COST OF LABOR AND WAS TOLD 15 HOURS AT $108 AN HOUR. I HAVE LOOKED AROUND AND FOUND THAT MOST ENGINES WITH ROUGHLY THE SAME MILEAGE AS MINE ARE AROUND $2,500. THE TOTAL COST WILL ROUGHLY BE BETWEEN $4,500 AND $6,500 TOTAL WITH ALL THE FLUIDS AND OTHER PARTS NEEDED TO RETURN MY SORENTO TO A FUNCTIONAL STATE. I PURCHASED THE SORENTO WITH 53,857 MILES ON IT AND HAD IT FOR ONE YEAR. I PUT 12,000 MILE ON IT ROUGHLY. MY SORENTO HAD ROUGHLY 65,500 MILES ON IT WHEN THIS HAPPENED. I HAVE DONE SOME RESEARCH AND FOUND THIS TO BE A COMMON PROBLEM WITH THE 2.4L ENGINES. IF THIS IS TRUE, WHY HAS KIA NOT DONE ANYTHING ABOUT IT.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 01/02/2017
Date of Incident: 12/07/2016
Component(s): ENGINE
NHTSA ID Number: 10939102

**SUMMARY:**
THE CAR WAS NOT ALWAYS RESPONDING TO ME
WHEN I WANTED TO ACCELERATE, I WOULD HEAR
THE RPMS GOING UP BUT THE CAR WOULD NOT GO
FASTER, THEN A PUFF OF WHITE SMOKE WOULD
COME OUT THE TAIL PIPE. THEN ONE DAY, I WAS
DRIVING THE CAR AND IT STARTED MAKING A
CLANKING NOISE WHEN I WOULD PUSH THE GAS
PEDAL. IT SOUNDED LIKE THE NOISE A ROLLER
COASTER MAKES WHEN YOU ARE CLANKING UP THE
HILL AT THE BEGINNING. TOOK THE CAR TO THE
DEALERSHIP AND THEY TOOK THE ENGINE APART
TO FIND THE PROBLEM. THE CAR HAS AN ENGINE
DEFECT THAT WAS DIAGNOSED BY A KIA DEALER AS
A MANUFACTURERS DEFECT. NOW THE CAR IS NOT
DRIVABLE AND KIA IS REFUSING TO PAY FOR A NEW
ENGINE. KIA NEEDS TO RECALL ALL VEHICLES WITH
THESE ENGINES. THEY ARE BUILT BY HYUNDAI AND
THEY RECALLED THEIR VEHICLES WITH THE SAME
ENGINES. *TR

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 07/21/2016
Date of Incident: 07/18/2016
Component(s): ENGINE
NHTSA ID Number: 10887421

**SUMMARY:**
ENGINE WAS MAKING A CYCLICAL
CLICKING/KNOCKING NOISE. WE TOOK THE VEHICLE
TO KIA DEALERSHIP AND THEY SAID THEY COULD
NOT FIND ANY ISSUES WITH THE CAR. ABOUT A

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

WEEK LATER THE CAR BROKE DOWN WHILE DRIVING AT HIGHWAY SPEEDS. AFTER HAVING IT TOWED TO AN INDEPENDENT GARAGE, WE WERE INFORMED THE ENGINE HAD A CONNECTING ROD FAILURE. THIS IS THE EXACT SAME PROBLEM THE HYUNDAI SONATA HAS WITH THE EXACT SAME THETA 2.4 LITER ENGINE. HYUNDAI HAS ISSUES A RECALL BUT KIA FAILS TO ACKNOWLEDGE THE ISSUE.

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 05/12/2016
Date of Incident: 05/02/2016
Component(s): ENGINE
NHTSA ID Number: 10864508

**SUMMARY:**
AT 68,000 MILES THE OIL PRESSURE SENSOR (PART #94750-37100) FAILED AND CAUSED A SUDDEN AND IMMEDIATE LOSS OF ALL ENGINE OIL. IN THE HALF MILE IT TOOK US TO SAFELY PULL OVER THE OIL PRESSURE LIGHT ACTIVATED AND THE DIP STICK READ BONE DRY. I HAVE RESEARCHED THE ISSUE AND FOUND IT TO BE A COMMON PROBLEM WITH KIA'S, A RECALL SHOULD BE ISSUED TO REPLACE THE PART WITH A BETTER ENGINEERED VERSION. HAD WE NOT BEEN ALERT / AWARE OF WHAT WAS GOING ON THE ENGINE COULD HAVE SEIZED AND ALL POWER COULD HAVE BEEN LOST WHILE IN MOTION.

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 02/16/2016
Date of Incident: 01/31/2016
Component(s): ENGINE
NHTSA ID Number: 10836400

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

**SUMMARY:**

ON 1-31-16 HEARD A PINGING NOISE ON THE HIGHWAY; THEN THE CAR STALLED AT THE EXIT LIGHT; STARTED IT AGAIN AND LOUD BANG BLOW A ROD AFTER GETTING BACK ON THE HIGHWAY TO DRIVE IT TO A SHOP. DIED ON THE SIDE OF THE HIGHWAY AND HAD TO HAVE IT TOWED TO KIA IN AUBURN WA. KIA STATED THEY WILL NOT FIX UNDER THE WARRANTY BECAUSE THE WRONG OIL FILTER WAS INSTALLED AND I DIDN'T PROVIDE PROPER MAINTENANCE; WHICH I TOOK IT IN EACH AND EVERY TIME FOR OIL CHANGES TO MY AUTO SHOP. SAME OIL FILTER HAS BEEN PUT INTO MY CAR SINCE 2011. WENT BACK TO MY AUTO SHOP INFORMED THEM THEY STARTED THE PROCESS OF SENDING THE OIL FILTER IN TO BE CHECKED FOR DEFECTS, ALSO FOUND ON 3 DIFFERENT WEB SITES THE FILTER CAN BE USED FOR MY MAKE AND MODEL. NOW KIA WANT FIX MY CAR; IT HAS BEEN 3 WEEKS WITHOUT A VEHICLE AND NO WORD FROM KIA; NOT EVEN FROM THEIR HEADQUARTERS. KIA WILL NOT PROVIDE THE WORK ORDER STATING THEY ARE NOT ALLOWED TO GIVE TO THIRD PARTY.

Vehicle:  2011 Kia Sorento
Date Complaint Filed: 03/13/2015
Date of Incident: 03/02/2015
Component(s): ENGINE
NHTSA ID Number: 10694186

**SUMMARY:**

TL* THE CONTACT OWNS A 2011 KIA SORENTO. WHILE TRAVELING APPROXIMATELY 40 MPH, THERE WAS A LOUD NOISE COMING FROM THE FRONT OF THE VEHICLE. ALSO, THE CONTACT MENTIONED THAT SMOKE EMITTED FROM THE ENGINE COMPARTMENT. UPON PULLING THE VEHICLE OVER, IT WAS FURTHER NOTICED THAT THE ENGINE

-54-

COMPARTMENT WAS ON FIRE. THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC, WHO DIAGNOSED THAT A ROD FRACTURED INTO THE ENGINE AFFECTING THE OTHER COMPONENTS CAUSED A FIRE. ALSO, THE MECHANIC DIAGNOSED THAT THE PISTONS MAY NEED TO BE REPLACED BUT FURTHER EXTENSIVE DIAGNOSIS WAS REQUIRED TO REPAIR THE VEHICLE. THE CONTACT WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 10V388000 (ELECTRICAL SYSTEM). THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 102,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 10/23/2017
Date of Incident: 02/20/2017
Component(s): ENGINE
NHTSA ID Number: 11035862

**SUMMARY:**
OUR 2012 KIA SORENTO WAS IN MOTION ON THE HIGHWAY WHEN A LOUD KNOCKING SOUND BEGAN. AT THIS POINT THE ENGINE SEIZED AND THE CAR STALLED. IT HAD TO BE TOWED TO THE KIA DEALER AND A NEW ENGINE HAD TO BE PUT IN. WE WERE TOLD BY THE SERVICE MANAGER AT THE KIA DEALERSHIP THAT RECALL SC147 ADDRESSES 2012 KIA SORENTO'S AND THE EXACT SAME ISSUE AS OUR CAR HAD. HOWEVER, THE RECALL DOES NOT INCLUDE HER ENGINE TYPE. GIVEN WHAT HAPPENED TO OUR 17 YEAR OLD DAUGHTER AND THE DANGEROUS SITUATION THAT SHE WAS PUT IN, WE FEEL THAT THESE SORENTO ENGINE TYPES SHOULD ALSO BE INCLUDED IN THE RECALL. KIA CONSUMER AFFAIRS WAS CONTACTED AND THEY REFUSED TO PROVIDE ANY TYPE OF COMPENSATION OR ADD THIS VEHICLE ENGINE TYPE TO THE RECALL.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 09/26/2017
Date of Incident: 09/24/2017
Component(s): ENGINE
NHTSA ID Number: 11030026

**SUMMARY:**
AFTER 88,000 MILES, THE SORENTO'S ENGINE
STARTED MAKING A LOUD SOUND WHILE DRIVING
AT HIGHWAY SPEED. THE ENGINE STAYED ON BUT
CONTINUED TO MAKE A LOUD SOUND. THE CAR WAS
TOWED TO PEAK KIA IN LITTLETON, CO WHERE IT
WAS DETERMINED THAT A NEW ENGINE WAS
NEEDED AT A COST OF $7000-$10,000 DOLLARS. THE
VEHICLE HAD REGULAR OIL CHANGES UP TO THIS
POINT. THE DEALERSHIP CHECKED AN MY VIN
NUMBER AND SAID THAT I DIDN'T QUALIFY FOR THE
RECALL FOR ENGINE PARTICLES. AS A SECOND
OWNER, I DID NOT HAVE ACCESS TO THE 10 YEAR
WARRANTY. I FEEL AS IF THE RECALL NEEDS TO BE
EXPANDED AND HONORED. MY 5 YEAR OLD WELL
MAINTAINED CAR HAD NO REASON TO HAVE
CATASTROPHIC ENGINE FAILURE. I BELIEVE THIS IS
A MANUFACTURING DEFECT THAT IS DANGEROUS
AND THAT IS EFFECTING OWNERS ACROSS THE
COUNTRY.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 09/11/2017
Date of Incident: 09/10/2017
Component(s): ENGINE
NHTSA ID Number: 11022610

**SUMMARY:**
ON 09/10/2017 WHILE DRIVING A 2012 KIA SORENTO
DOWN THE HIGHWAY I HEARD A RATTLING NOISE
FROM THE ENGINE WITH A LOUD BANG A FEW

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

SECONDS LATER.THERE WAS SMOKE COMING FROM UNDER THE HOOD. I RESEARCHED AND FOUND THAT ON 03/17/2017 KIA ANNOUNCED A RECALL FOR 2012 SORENTOS. KIA'S RECALL: SC147: " BEARING WEAR MAY RESULT IN ENGINE SEIZURE" THIS IS ON KIA'S AND NHTSA'S WEBSITES. [ NHTSA CAMPAIGN # 17V224000 "MACHINING ERRORS DURING THE ENGINE MANUFACTURING PROCESS MAY CAUSE PREMATURE BEARING WEAR WITHIN THE ENGINE"] I CONTACTED KIA'S CUSTOMER SERVICE AT 1800-333-4542 AND BETHANY TOLD THAT MY 2012 KIA SORENTO WAS NOT ELIGIBLE FOR THE RECALL BECAUSE THE VIN # WAS NOT PART OF THE RECALL. SHE SAID THAT I COULD TAKE IT TO THE DEALER AND THEY WOULD CHECK THE OTHER 2 RECALL THOUGH. WHEN THE VEHICLE WAS TOWED I LOOKED UNDER THE VEHICLE TO SEE OIL POURING OUT FROM A 3 INCH HOLE IN THE BLOCK, TOWARD THE REAR OF THE VEHICLE, WHERE THE THROWN ROD BROKE THE BLOCK. OIL IS CHANGED EVERY THREE MONTHS AND THE VEHICLE HAS 120,129 MILES ON IT. THE COST OF A USED ENGINE ALONE IS NEAR $3000, PLUS LABOR TO INSTALL A MOTOR THAT COULD DO THE SAME THING. I WOULD LIKE KIA MOTORS TO REPLACE THE DEFECTIVE ENGINE WITH A NEW ENGINE AT NO COST.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/16/2017
Date of Incident: 08/10/2017
Component(s): ENGINE
NHTSA ID Number: 11015830

**SUMMARY:**
ON 08/10/12017 WHILE DRIVING MY 2012 KIA SORENTO ON I-40. I HEARD A "RATTLING NOISE" FROM THE ENGINE. AS I SLOWED DOWN THE SOUND GOT LOUDER. I TURNED ON A SIDE STREET INTO A SAFE

AREA AND PARKED MY VEHICLE. THERE WAS
SMOKE COMING FROM UNDER MY HOOD. I OPENED
THE HOOD AND SAW 2 SMALL PATCHES OF FIRE. I
WAS ABLE TO PUT THEM OUT, THEN RAN TO A BEST
WESTERN HOTEL AND ASKED FOR A FIRE
EXTINGUISHER IN CASE A FIRE WOULD ERUPT
AGAIN. I RESEARCHED AND DISCOVERED THAT ON
03/17/2017 KIA ANNOUNCED A RECALL FOR 2012
SORENTOS. KIA'S RECALL: SC147: " BEARING WEAR
MAY RESULT IN ENGINE SEIZURE" THIS IS ON KIA'S,
NHTSA'S , PBS AND FORBES WEBSITES. [ NHTSA
CAMPAIGN # 17V224000 "MACHINING ERRORS
DURING THE ENGINE MANUFACTURING PROCESS
MAY CAUSE PREMATURE BEARING WEAR WITHIN
THE ENGINE"] I CONTACTED KIA'S CONSUMER
AFFAIRS # AND THE PERSON TOLD THAT MY 2012 KIA
SORENTO WAS NOT ELIGIBLE FOR THE RECALL. HE
SAID MY VIN # WAS NOT PART OF THE RECALL. I HAD
JUST RETURNED WITH MY FAMILY 1 DAY PRIOR
FROM A TRIP TO MOBILE, AL. (1500 MILES ROUND
TRIP). ON 08/12/17 I HAD MY VEHICLE TOWED TO
BATTLEGROUND KIA WHERE THE ADVISOR &
TECHNICIAN SHOWED ME THE PROBLEM A "THROWN
ROD".THIS HOLE IS 3" TO 4" DIAMETER. (PICTURES
ATTACHED). I ASKED WHAT COULD HAVE CAUSED
THE ROD TO BE THROWN? I HAD MY OIL CHANGED
ON SCHEDULE THE LATEST WAS 07/26/2017. THIS
VEHICLE HAS 123,937 MILES ON IT. HE REPLIED HE
DIDN'T KNOW WHAT CAUSED IT. ON 08/15/2017 I WAS
INFORMED THAT TO REPLACE THE ENGINE WITH A
USED ONE WITH 99,000 MILES WAS $6400 PLUS
LABOR. [THAT IS ABOUT 24,000 MILES LESS THAN
MINE CURRENT MILEAGE WITH THE SAME
POTENTIAL PROBLEM LINGERING TO HAPPEN AGAIN]
IT IS OBVIOUS THAT THE PROBLEMS WITH THE
RECALL ENGINES ARE IDENTICAL WITH MINE. I
WOULD LIKE KIA MANUFACTURING TO REPLACE MY
DEFECTIVE ENGINE WITH A NEW ENGINE AND
RENTAL VEHICLE AT NO COST TO ME. I'LL LIKE TO

-58-

PARTNER WITH THE LOCAL DEALERSHIP TO RECTIFY THIS.

UPDATED 08/31/2017*JS

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/05/2017
Date of Incident: 08/02/2017
Component(s): ENGINE
NHTSA ID Number: 11013013

**SUMMARY:**
AS I CAME AROUND A BEND AT ABOUT 20 MPH, MY 2012 KIA SORENTO DIED. THERE WAS NO WARNING, AND NO CHECK ENGINE LIGHT. I WAS ON A CITY STREET, AND HAD JUST PRESSED THE BRAKE PEDAL TO SLOW DOWN FOR THE TURN. THANKFULLY I WAS ABLE TO PULL INTO A PARKING LOT, AND NOT DRIVING ON THE HIGHWAY WITH MY CHILDREN. I TRIED TO CRANK THE CAR AGAIN, AND IT STARTED, RAN FOR A BRIEF MOMENT, SOUNDED NORMAL, THEN DIED. I TRIED TWICE MORE WITH THE SAME RESULT, THEN CALLED A TOW TRUCK TO GET HOME. WE CALLED THE DEALERSHIP THE NEXT DAY TO NOTIFY THEM OF THE ISSUE, AND THEY SENT OUT A TOW TRUCK. WHEN THEY TRIED TO CRANK IT, IT RAN ROUGH AND THEN DIED. WE ARE AWAITING APPROVAL FROM CORPORATE KIA, AS WE BELIEVE THAT THIS IS RELATED TO THE ENGINE RECALL THEY HAVE ISSUED.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 07/03/2017
Date of Incident: 01/14/2017
Component(s): ENGINE
NHTSA ID Number: 11002875

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE DRIVING 90 MPH, THE ENGINE FAILED
WITHOUT WARNING. THE CONTACT STATED THAT
THERE WAS A KNOCKING NOISE FROM INSIDE THE
ENGINE AND THE VEHICLE LOST POWER. IN
ADDITION, THE VEHICLE WOULD NOT SWITCH
GEARS AND DECREASED IN ACCELERATION UNTIL
THE CONTACT REACHED THE DEALER. CATHEDRAL
CITY KIA OF CATHEDRAL CITY, CALIFORNIA
REPLACED THE ENGINE IN THE VEHICLE. THE
MANUFACTURER WAS MADE AWARE OF THE ISSUE
AND STATED THAT THE FAILURE WAS INCLUDED IN
AN UNKNOWN RECALL; HOWEVER, THE CONTACT'S
VIN WAS NOT INCLUDED. THE FAILURE MILEAGE
WAS 97,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/27/2017
Date of Incident: 06/22/2017
Component(s): ENGINE
NHTSA ID Number: 11001807

**SUMMARY:**
MY ENGINE SEIZED WHILE DRIVING ON TO RAMP TO
HIGHWAY. MY CAR CUT OFF AND WAS
UNRESPONSIVE. I FORCED THE CAR TO THE SIDE OF
THE ON-RAMP DURING RUSH HOUR TRAFFIC. AT THIS
TIME, I HAD TO HAVE MY VEHICLE TOWED. THERE IS
A RECALL ON THE 2012 KIA SORENTO ENGINE FOR IT
STALLING WHILE DRIVING. I CALLED KIA
CORPORATE FOR ASSISTANCE WITH THIS MATTER
AND THEY ARE GIVING US THE RUN-AROUND. I HAVE
HAD THE VEHICLE BORE SCOPED, PROVING SEIZING
OF THE ENGINE. IN ADDITION, I AM A LICENCES AIR-
FRAME AND POWER-PLANT MECHANIC SO I KNOW
MY WAY AROUND A CAR. THIS WAS VERY
DANGEROUS AND UNEXPECTED SITUATION TO BE IN.

-60-

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 07/27/2017
Date of Incident: 06/23/2017
Component(s): ENGINE
NHTSA ID Number: 11001733

**SUMMARY:**
MY VEHICLE IS AT 117K MILES. IT USES APPROX 6
QTS OF OIL/3000 MILES.I CANNOT GET UP TO SPEED
ON THE HIGHWAY AS IT WILL NOT AUTO SHIFT
DOWN WITH ANY ACCELERATION RPMS RUN AND
STAY AT 6,000 WHEN TRYING TO GET TO 70MPH - IT IS
INCLUDED IN SC147 RECALL, HOWEVER THE
DEALERSHIP IS STATING IT PASSED THE RECALL
TEST AND IT'S THE TRANSMISSION NOT THE ENGINE.
TRANSMISSION DOES NOT BURN OIL AT 6 QTS/3000
MILES

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/23/2017
Date of Incident: 06/14/2017
Component(s): ENGINE
NHTSA ID Number: 11000841

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE DRIVING ON THE HIGHWAY, THE MOTOR
SEIZED. THE VEHICLE WAS UNABLE TO BE DRIVEN
AND WAS TOWED TO AN INDEPENDENT REPAIR SHOP
WHO INDICATED THAT THE VEHICLE NEEDED TO BE
SERVICED BY AN AUTHORIZED DEALER. THE
CONTACT WAS INCLUDED IN NHTSA CAMPAIGN
NUMBERS: 17V224000 (ENGINE AND ENGINE
COOLING) AND 15V626000 (POWER TRAIN), BUT THE
CONTACT WAS UNABLE TO RECEIVE THE REMEDY
AND PARTS FOR THE RECALL REPAIR. THE VEHICLE

-61-

WAS TOWED TO MEDVED KIA (11201 W INTERSTATE 70 FRONTAGE RD N, WHEAT RIDGE, CO 80033, (303) 421-0100). THE CONTACT WAS WAITING ON A RESPONSE FROM THE MANUFACTURER TO PROVIDE A REMEDY FOR THE TWO RECALL REPAIRS. THE MANUFACTURER STATED THAT THEY WOULD RESPOND, BUT THE CONTACT HAD NOT RECEIVED THE REPAIRS SINCE JUNE OF 2016. THE APPROXIMATE FAILURE MILEAGE WAS 104,000. PARTS DISTRIBUTION DISCONNECT.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/19/2017
Date of Incident: 03/31/2017
Component(s): ENGINE
NHTSA ID Number: 10995819

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE CONTACT STATED THAT THE ENGINE MADE AN ABNORMAL NOISE AND STALLED SEVERAL TIMES WITHOUT WARNING. THE VEHICLE WAS UNABLE TO BE DRIVEN AND WAS TOWED TO THE DEALER (MORITZ KIA FORT WORTH 501 WEST FWY, FORT WORTH, TX 76116 (817) 560-6000). IT WAS DIAGNOSED THAT THE ENGINE ASSEMBLY NEEDED TO BE REPLACED. THE DEALER INDICATED THAT THEY WERE UNCERTAIN OF WHEN THE PART WOULD BE PRODUCED. THE CONTACT WAS PROVIDED WITH A LOANER VEHICLE, BUT WAS UNABLE TO DETERMINE A REASONABLE TIME FRAME FOR WHEN THE VEHICLE WOULD BE REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 78,000. UPDATED 08/30/17*LJ

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/16/2017
Date of Incident: 05/01/2017
Component(s): ENGINE
NHTSA ID Number: 10995476

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE OPERATING THE VEHICLE, A LOUD TICKING
NOISE WAS PRESENT COMING FROM THE ENGINE
AND THE VEHICLE SUDDENLY SHUT OFF. THE
VEHICLE WAS TOWED TO SOUTHWEST KIA OF
ROUND ROCK, TEXAS WHERE IT WAS DIAGNOSED
THAT THE ENGINE WAS FAULTY AND NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE FAILURE MILEAGE WAS 103,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/12/2017
Date of Incident: 05/06/2017
Component(s): ENGINE
NHTSA ID Number: 10994530

**SUMMARY:**
ON TUESDAY MAY 16TH, 2017 AT ABOUT 10:30 PM I
WAS DRIVING DOWN THE HIGHWAY IN MY KIA ALL
OF A SUDDEN LOST POWER. THERE WAS NO
INDICATION THAT A PROBLEM EXISTED. I WAS
DRIVING EAST ON THE INTERSTATE AT ABOUT 70
MPH BUT I WAS ABLE TO MANEUVER TO THE SIDE OF
THE ROAD AFTER THE LOSS OF POWER AND
AVERTED BEING HIT FROM BEHIND FROM A SEMI. I
HAD 5 OTHER OCCUPANTS IN THE CAR AS WE WERE
COMING HOME FROM A BALL GAME. A GOOD
SAMARITAN HAPPENED ALONG AND TOOK THE
OCCUPANTS TO A WAFFLE HOUSE WHILE I WAITED
WITH MY WIFE FOR A TOW TRUCK. WE TOOK THE

-63-

CAR TO MY MECHANIC WHO INFORMED ME THAT THE ENGINE HAD SEIZED. HE NOTICED THAT THERE WERE BITS OF METALLIC IN THE OIL AND SAID IT WOULD BE BEST TO HAVE IT REPLACED. WE HAD STARTED INVESTIGATING THE COST OF A USED ENGINE WHEN I READ ABOUT A CLASS ACTION SUIT INVOLVING KIA AND OWNERS OF CARS WITH A 2.4 GDI ENGINE. THEIR COMPLAINTS PARALLELED WHAT I HAD JUST WITNESSED. THE RECALL NUMBER FOR THIS IS IS NHTSA 17V-224.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 06/01/2017
Date of Incident: 05/19/2017
Component(s): ENGINE
NHTSA ID Number: 10992669

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. WHILE DRIVING 45 MPH, THE CRANK CASE BEARING IN THE ENGINE DISINTEGRATED AND RUINED THE MOTOR. THE VEHICLE WAS TOWED TO OXONDALE KIA IN FLAGSTAFF ARIZONA WHERE IT WAS DIAGNOSED THAT METAL FRAGMENTS ENTERED INTO THE ENGINE OIL DEPOSIT, WHICH CAUSED FURTHER DAMAGE TO THE VEHICLE. THE SERVICE MANAGER AT THE DEALER STATED THAT THERE WAS A RECALL FOR THE FAILURE, BUT THE CONTACT'S VIN WAS NOT INCLUDED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE RECALL DETAILS WERE NOT PROVIDED. THE FAILURE MILEAGE WAS APPROXIMATELY 81,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 03/31/2017
Date of Incident: 03/30/2017

-64-

Component(s): ENGINE
NHTSA ID Number: 10992492

**SUMMARY:**
5/30/2017 I WAS DRIVING AND I WAS MERGING ONTO
THE FREEWAY SO I GAVE MY CAR ABOUT HALF
THROTTLE AND AS SOON AS THE CAR STARTED TO
ACCELERATE THE ENGINE STOPPED ACCELERATING
WHILE MY FOOT WAS STILL ON THE GAS AND ALL OF
THE LIGHT WENT ON ON MY DASHBOARD AND THE
ENGINE COMPLETELY SHUT OFF. THE RPM'S
DROPPED COMPLETELY BUT EVERYTHING ELSE
STAYED ON, LIGHTS,STEERING,BRAKES,INTERIOR
ELECTRONICS, EVERYTHING BUT THE ENGINE ITSELF
REMAINED ON. I WENT TO START THE CAR AFTER I
CAME TO A COMPLETE STOP AND IT MAKE SOME
WEIRD TICKING NOISES BEFORE IT ACTUALLY
TURNED ON AND IT IDLED, BUT AS SOON AS I GAVE
IT SOME GAS THE ENGINE SHUT OFF.

DEALER SAID ENGINE WAS SEIZED AND THERE WAS
SLUDGE IN THE OIL, DID NOT PHYSICALLY SEE THIS
MY SELF

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 05/24/2017
Date of Incident: 05/15/2017
Component(s): ENGINE
NHTSA ID Number: 10991363

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE
CONTACT STATED THAT WHILE DRIVING AT
APPROXIMATELY 60 MPH, ALL THE WARNING
INDICATORS ILLUMINATED AND THE VEHICLE LOST
ACCELERATION POWER. THE CONTACT COASTED TO
THE SIDE OF THE ROAD. THE VEHICLE WAS TOWED
TO THE RESIDENCE. THE FOLLOWING DAY THE
VEHICLE WAS TOWED TO THE DEALER WHERE IT

WAS DIAGNOSED THAT THE ENGINE NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE APPROXIMATE FAILURE MILEAGE WAS 82,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 05/16/2017
Date of Incident: 03/16/2017
Component(s): ENGINE
NHTSA ID Number: 10985936

**SUMMARY:**
I HAVE CONTACTED THE KIA DEALERSHIP THREE
TIMES ABOUT THIS CAR BURNING OIL. THEY TOLD
ME THIS IS NORMAL FOR A VEHICLE THAT HAS 90,000
MILES ON IT. ONE TIME I HAD TO PUT 2 QUARTS OF
OIL IN IT AND THEN AFTER DRIVING 400 MILES I HAD
TO PUT ANOTHER 1 QUART OF OIL IN IT. I
UNDERSTAND THEY COULD BE A PROBLEM WITH
THE 2.4 ENGINE IN THIS VEHICLE. ALL I AM ASKING
IS FOR THEM TO DO A COMBUSTION TEST ON THE
ENGINE WHILE IT IS STILL UNDER WARRANTY.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 05/08/2017
Date of Incident: 05/01/2017
Component(s): ENGINE
NHTSA ID Number: 10984187

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. THE
CONTACT STATED THAT THERE WAS A SUDDEN LOSS
OF POWER WHEN APPLYING THE ACCELERATOR
PEDAL. THE DRIVER NOTICED THAT SMOKE WAS
EMITTING UNDER THE HOOD OF THE VEHICLE, THE
CHECK ENGINE WARNING LIGHT ILLUMINATED AND
A FIRE ERUPTED UNDER THE HOOD. A PASSERBY
STAYED WITH THE DRIVER UNTIL A STATE TROOPER

WAS PRESENT AS THE VEHICLE WAS ON FIRE AND THE FLAMES WENT OUT OVER TIME. THE DRIVER WAS ABLE TO EXIT THE VEHICLE. THE VEHICLE WAS TOWED TO A MECHANIC YARD. THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 17V224000 (ENGINE AND ENGINE COOLING). THE CONTACT WAS WAITING TO DETERMINE A RESPONSE FROM THE MANUFACTURER TO DIAGNOSE HOW THE FAILURE OCCURRED. THE APPROXIMATE FAILURE MILEAGE WAS 103,000. ..UPDATED 06/27/17 *BF

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 04/27/2017
Date of Incident: 04/01/2017
Component(s): ENGINE
NHTSA ID Number: 10981104

**SUMMARY:**
CAR NEVER GAVE A WARNING THAT ANYTHING WAS WRONG, TOOK IT TO GET REGULAR OIL CHANGES AS NEEDED AND SUDDENLY IN TRAFFIC WHILE MOVING FORWARD, THE CAR BEGAN BUCKING AND JUMPING, THE NOISE SOUNDED LIKE A CLUCK. I THOUGHT SOMETHING HAD FALLEN OFF AS THE CAR WAS ORIGINALLY DRIVING SMOOTHLY. I HAD IT TOWEDT TO KIA AND IT WAS SAID THE ENGINE WAS NO GOOD. NO WARNING LIGHTS OR ENGINE LIGHTS EVER CAME ON TO FOREWARN OF ANY ISSUES EVER WITH THE CAR.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 04/19/2017
Date of Incident: 04/17/2017
Component(s): ENGINE
NHTSA ID Number: 10979270

**SUMMARY:**
BOUGHT MY SORENTO BRAND NEW. HAVE HAD FOR

-67-

5 YEARS AND HAVE 1 YEAR LEFT ON LOAN. I HAVE
RECORDS OF TAKING VEHICLE TO DEALERSHIP AND
HAD SEVERAL COMPLAINTS OF HEARING RATTLE
LIKE A PAINT CAN.. YET THEY BLEW ME OFF. GAVE
ME POOR EXCUSES FOR REASONING AND STATED
THIS WAS NORMAL SOUND.. I FELT THAT THERE WAS
AN ISSUE YET BELIEVED THE TECHNICIAN OVER MY
CONCERNS.. NOISES CONT FOR COUPLE YEARS YET
NOTHING GOT WORSE. THEN SHE. I WAS AT 128 K
MILES KIA SENDS OUT THE EXTENDED WARRANTY
LETTER AND I TOOK MY VEHICLE TO ANOTHER
DEALER TO GET AN UNDERSTANDING THAT THIS
ISN'T A NORMAL SOUND AND THAT THERE WAS
SOMETHING SERIOUSLY WRONG YET THEY
BELIEVED A ENGINE FLUSH WOULD GET RID OF
CARBON BUILD UP AND ALL WOULD BE GOOD..
AFTER PAYING OUT OF POCKET FOR THIS NOTHING
CHANGED AND I GOT LITTLE TO NO ASSISTANCE W
THE NEW DEALER I TRAILED. I DON'T TO DRIVE THE
VEHICLE BC I HAD NO OPTIONS. NO MONEY LEFT TO
FIX MY CAR IN WHICH CAST ME MONTHLY...
REPAIRED ALL THINGS NEEDED BY THE KIA BOOK
AND AS REQUIRED BY SERVICING W FUEL
ADDITIVES AS RECOMMENDED YET NOW I HAVE A
COMPLETE BLOWN ENGINE. STILL OWE AND NOW
FIGHTING TO GET KIA TO HELP ME. THE RECALL
LETTER ISN'T OUT YET THERE IS EXPECTED A
RECALL.. I NOW HAVE 141K MILES AND NEED HELP..
I'M LUCKY THAT WE WERE NOT HURT.. OUR ENGINE
BLEW IN THE MOUNTAINS.. TOOK ME AAA.. 150
BUCKS AND 6HRS TO GET HOME W FRIENDS
ASSISTANCE..

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 04/07/2017
Date of Incident: 08/07/2014
Component(s): ENGINE
NHTSA ID Number: 10971238

**SUMMARY:**

I USED MOBILE ONE 5W30, I USED KIA OIL FILTERS (2
GENERIC), I HAD 44,516K MILES ON IT ON AUGUST 7,
2014. I DID 8 OIL CHANGES. MY CAR WAS RUNNING
PERFECTLY FINE. NO WHITE OR BLACK SMOKE, NO
DASHBOARD LIGHTS, NOT SLUGGISH, NOTHING AND
THE ENGINE SEIZED WITHOUT WARNING. I WAS ON
THE HIGHWAY DOING ABOUT 65 WHEN I HEARD A
FLUTTERING NOISE THAT VERY QUICKLY TURNED
INTO A KNOCKING NOISE. I COULD BARELY PULL
OVER WITHOUT ALMOST GETTING HIT TWICE. I HAD
IT TOWED TO THE DEALERSHIP AND THEY SAID I
NEVER DID ANY OIL CHANGES AND THERE WAS
APPROXIMATELY 20K MILES WORTH OF SLUDGE IN
MY ENGINE. MY OIL WAS CHANGED AROUND MARCH
7, 2014. KIA MOTORS DOWN RIGHT REFUSED TO EVEN
LOL AT IT. I HIRED AND ATTORNEY WHO WROTE A
DEMAND LETTER AND 4 MONTHS LATER THEY
DOWN RIGHT REFUSED TO FIX IT UNDER THE
WARRANTY. MY CAR SAT IN MY DRIVEWAY FOR
OVER 15 MONTHS. I REPORTED THIS TO NHTSA BACK
IN LATE 2012 EARLY 2013. I WORE A LETTER TO THE
OWNER OF THE DEALERSHIP AND SHE PUT A USED
ENGINE IN IT AND PAID FOR HALF. NEEDLESS TO SAY
I'M HAPPY I HAVE MY CAR BACK BUT I DON'T TRUST
IT. I HAVE THE TOP OF THE LINE SX AWD AND I ALSO
ADDED THE AMBIENT LIGHTING AND TINTED THE
FRONT WINDOWS. I LOVE MY CAR BUT FEEL I
SHOULD BE COMPENSATED FOR THE SHEAR HELL
AND HUGE FINANCIAL BURDEN IT HAS CAUSED MY
FAMILY. I'VE HAD IT BACK SINCE NOVEMBER 12, 2016
AND THE FINANCIAL BURDEN IS STILL HAUNTING
MY FAMILY.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 03/03/2017
Date of Incident: 02/24/2017

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Component(s): ENGINE
NHTSA ID Number: 10958352

**SUMMARY:**
COMPLETE ENGINE FAILURE. WHILE PASSING A
LARGE TRUCK ON A NARROW TWO LANE HIGHWAY
THE ENGINE COMPLETELY SHUT DOWN MIDWAY
THROUGH THE PASS. MOMENTUM ALLOWED THE
CAR TO COMPLETE THE PASS, BUT DUE TO THE
SPEED AND WITHOUT POWER STEERING IT WAS
VERY DIFFICULT TO MANEUVER. FORTUNATELY I
WAS FAMILIAR WITH THE ROAD AND ABLE TO MAKE
IT SAFELY TO A PULL OFF. MY LOCAL REPAIR
GARAGE DETERMINED THE ENGINE IS SEIZED, WITH
METAL FRAGMENTS IN THE OIL. HAVE MADE
MULTIPLE ATTEMPTS TO CONTACT THE DEALER
WHERE THE CAR WAS PURCHASED. TO DATE, NO
RESPONSE. CAR IS CURRENTLY NOT DRIVABLE.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 03/02/2017
Date of Incident: 03/02/2017
Component(s): ENGINE
NHTSA ID Number: 10958256

**SUMMARY:**
VEHICLE WAS ON THE HIGHWAY AT
APPROXIMATELY 55 MPH, READY TO GET OFF OFF
RAMP WHEN VEHICLE STARTED RUNNING ROUGH
AND TURNED OFF, ON 2-28-17 IN THE MORNING. WE
TOWED IT TO THE KIA SERVICE. THEY DIAGNOSED
SLUDGE IN THE ENGINE AND THAT IT HAS TO BE
REPLACED. THE VEHICLE ONLY HAS 84K MILES AND
THE OIL CHANGES HAVE BEEN DONE EVERY 3 TO 4 K.
THEY REQUESTED ALL THE OIL SERVICE RECORDS.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 02/18/2017
Date of Incident: 06/04/2016
Component(s): ENGINE
NHTSA ID Number: 10955428

**SUMMARY:**
ENGINE FAILURE ENGINE STOPPED IN MIDDLE OF
HIGHWAY TRAVELING AT 55 MPH STRAIGHT
HIGHWAYPUT FAMILY IN DANGER 2016 JUNE OIL
LEAKING ALL OVER GROUND AND ELECTRICAL
FAILURE PUSHED CAR TO SIDE OF HIGHWAY .140000
MILE PAST WARRANTY KIA REFUSE TO FIX.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 01/06/2017
Date of Incident: 12/30/2016
Component(s): ENGINE
NHTSA ID Number: 10940101

**SUMMARY:**
I NOTICED THAT UPON STARTING , MY KIA LET OUT
BLUE SMOKE. I SAW NO WARNING LIGHTS, NO OIL
ON THE GROUND, NO INDICATION OF A SERIOUS
PROBLEM OTHER THAN THE SMOKE.

I HAVE A LITTLE OVER 95,000 MILES ON THE CAR
AND A 100,000 MILE WARRANTY

I MADE AN APPOINTMENT TO SERVICE THE CAR AND
HAVE IT LOOKED AT. EVERYTHING WAS RUNNING
FINE AND DRIVING FINE.

THREE DAYS LATER, THE CHECK ENGINE LIGHT
CAME ON. NO OTHER INDICATORS WERE PRESENT. I
DROVE THE CAR A SHORT DISTANCE AND IT SEIZED
UP WHILE I WAS TRAVELING AT ABOUT 45 MPH.

-71-

I CHANGED THE OIL ON A REGULAR BASIS & DID THE NORMAL SERVICE WORK.

THE CAR WAS TOWED TO THE DEALER. THE DEALER INSPECTED THE CAR AND SAID IT NEEDED A NEW ENGINE AND REAR END. THE REAR END WOULD BE COVERED UNDER WARRANTY BUT THE ENGINE WOULD NOT. I DID NOT HAVE MY RECEIPTS FOR OIL CHANGES.

I AM TRYING TO GET KIA TO HONOR THE WARRANTY. THEY WILL COVER THE REAR END BUT NOT THE ENGINE AT THIS POINT. *TR

---

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 12/09/2016
Date of Incident: 12/08/2016
Component(s): ENGINE
NHTSA ID Number: 10934130

**SUMMARY:**
CATASTROPHIC ENGINE FAILURE, STATIONARY, ENGINE SEIZED UP AFTER OWNING IT FOR 10 MONTHS. 104,000 MILES, OIL CHANGES REGULAR, METAL SHAVINGS IN OIL, NO OIL LIGHTS OR ENGINE LIGHTS ON. *TR

---

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 10/12/2016
Date of Incident: 10/9/2016
Component(s): ENGINE
NHTSA ID Number: 10915477

**SUMMARY:**
10/09/2016 DRIVING HOME FROM BEING EVACUATED BECAUSE OF HURRICANE MATTHEW, WITH MY

-72-

DAUGHTER, SON-IN-LAW AND GRANDBABY. WHILE
GOING DOWN THE HWY 65 MILES PER HOUR, WE
HEARD A LOUD NOISE, I FELT A THUMP UNDER MY
FOOT ON THE PASSENGER SIDE. WE LATER LEARNED
IT WAS THE ROD THAT WENT THROUGH THE ENGINE.
THANK GOD MY HUSBAND COSTED THE CAR OVER
TO THE SIDE, IT WOULD NOT START. WE CALLED FOR
HELP FROM A FRIEND THEY PICKED US UP. TOWED
THE CAR TO KIA DEALERSHIP IN MYRTLE BEACH.

WE HAVE JUST LEARNED THEY ARE NOT GOING TO
PAY FOR A NEW MOTOR. THEY HAVE DETERMINED IT
WAS NOT THEIR FAULT!! HOW IS THIS POSSIBLE??
WITH ALL THESE COMPLAINTS. WHY IS THERE NOT A
CLASS ACTION LAW SUITE?

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 09/22/2016
Date of Incident: 09/22/2016
Component(s): ENGINE
NHTSA ID Number: 10908736

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE DRIVING VARIOUS SPEEDS, AN ABNORMAL
SOUND WAS HEARD COMING FROM THE BOTTOM OF
THE VEHICLE. THE VEHICLE STALLED WITHOUT
WARNING. THE CONTACT PULLED OVER TO THE
SHOULDER, BUT THE VEHICLE FAILED TO RESTART.
THE VEHICLE WAS TOWED TO THE DEALER WHERE
IT WAS DIAGNOSED THAT THERE WAS A HOLE IN
THE ENGINE BLOCK, THE RODS CAME APART, AND
THERE WAS NO OIL IN THE VEHICLE. THE DEALER
STATED THAT THE ENGINE BLOCK WOULD HAVE TO
BE REPLACED. THE VEHICLE WAS NOT REPAIRED.
THE MANUFACTURER WAS NOTIFIED OF THE
FAILURE. THE APPROXIMATE FAILURE MILEAGE
WAS 14,000.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle: 2012 Kia Sorento
Date Complaint Filed:  09/22/2016
Date of Incident: 09/02/2016
Component(s): ENGINE
NHTSA ID Number: 10908752

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO.
WHILE DRIVING 80 MPH, THE VEHICLE
DECELERATED AND STALLED WITHOUT WARNING.
THE VEHICLE WAS TOWED TO THE DEALER WHERE
IT WAS DIAGNOSED THAT A ROD WENT THROUGH
THE ENGINE BLOCK. THE VEHICLE WAS NOT
REPAIRED. THE MANUFACTURER WAS MADE AWARE
OF THE FAILURE. THE FAILURE MILEAGE WAS
144,000.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/12/2016
Date of Incident: 08/07/2016
Component(s): ENGINE
NHTSA ID Number: 10895275

**SUMMARY:**
WHILE DRIVING 70MPH ON THE HIGHWAY THE
ENGINE SHUT DOWN NO WARNING LIGHTS, NO
CHECK ENGINE LIGHTS, NO WARNING WHAT SO
EVER. WE HAD A NEAR MISS WITH THE PERSON
BEHIND US BUT WERE ABLE TO GET TO THE SIDE OF
THE ROAD WITHOUT INCIDENT. THE VEHICLE
WOULD NOT START. AFTER WAITING 15 MINUTES I
WAS ABLE TO GET THE VEHICLE TO START, IT NOW
HAS A LOUD CLANK COMING FROM THE ENGINE AND
STILL NO POWER. WE WERE STRANDED UNABLE TO
DRIVE IT. WE HAD IT TOWED TO THE DEALERSHIP.
THE SERVICE DEPARTMENT LOOKED AT IT AND

FOUND METAL SHAVINGS IN THE MOTOR, SAID HE
HAS HAD TO FIX MANY OF THESE ISSUES ON THIS
PARTICULAR MOTOR, GDI 2.4 L AND THAT IT IS A
MANUFACTURING ISSUE NOTHING WE DID. THE
CAUSE WAS FROM METAL SHAVINGS BLOCKING OIL
PASSAGE TO THE RODS AND THE ROD BEARINGS
WENT OUT CAUSING A CATASTROPHIC ENGINE
FAILURE WITHOUT WARNING.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 08/06/2016
Date of Incident: 08/02/2016
Component(s): ENGINE
NHTSA ID Number: 10893682

**SUMMARY:**
THE CAR WOULD LOSE POWER WHILE DRIVING THEN
ACCELERATE TO SPEED. THIS WAS FOLLOWED BY
SMOKE FROM THE TAIL PIPE. I HAVE RETURNED TO
THE YONKERS KIA DEALERSHIP ON CENTRAL PARK
AVENUE IN YONKERS NY ON AUGUST 5TH, 2016 TO
LOOK INTO A PROBLEM. A DIAGNOSTIC WAS DONE
AND IT WAS DETERMINED THE ENGINE WAS RUINED
DO TO SLUG BUILD UP. I WAS TOLD THAT A
REPLACEMENT WOULD COAST ABOUT $10,000. ODD
FOR ME BECAUSE MY WIFE AND I TOOK THE CAR IN
FOR REGULAR OIL CHANGES AND NO INDICATION OF
ENGINE ISSUES DISPLAYED ON THE DASHBOARD.

AFTER SPEAKING TO A SERVICE REPRESENTATIVE
HE STATED THAT I WOULD HAVE TO SUPPORT PROOF
OF MAINTENANCE ON MY CAR WHICH WOULD
ALLOW MY REPAIRS DONE UNDER OUR WARRANTY.
I BECAME EXTREMELY DISILLUSIONED AFTER
BRINGING THE CAR INTO KIA DUE TO AN ISSUE THAT
CAN BE TIED TO THE MANUFACTURER. WE WERE
DENIED SERVICE UNDER THE WARRANTY WHICH WE
ARE STILL UNDER. OUR CAR IS FAIRLY NEW WITH

-75-

LESS THAN 25K MILES. WE CARRIED OUT ALL OF THE STEPS THUS FAR INCLUDING TAKING CARE OF OUR INVESTMENT, PROVING OUR CAR HAS BEEN TAKEN CARE OFF INCLUDING KEEPING METICULOUS ANNOTATIONS (KEPT IN THE LOG PROVIDED BY KIA) AND RECEIPTS TO DATE. THIS IS ANOTHER EXAMPLE OF BIG COMPANIES LOOKING FOR LOOPHOLES AND USING TACTICS TO SWINDLE PEOPLE OF THEIR HARD EARNED PAYCHECKS.

HOWEVER, KIA DOES NOT WANT TO HONOR US. OUR PAPERWORK/LOG/RECEIPTS ARE BEING TAKEN APART WITH PREJUDICE IN ORDER TO NOT PROVIDE SERVICES AND RECTIFY THIS ISSUE THAT IS PROVEN TO BE A DEFECT.

WE ARE CONCLUDING THAT BASED ON THE POOR HANDLING OF OUR CASE AND MANY OTHERS LIKE OURS, KIA AND ITS AFFILIATES /DEALERS AND CORPORATE, ARE NOT ABOUT SAFETY AND CUSTOMER SATISFACTION. ALL WE ASK IS THAT KIA HONORS ITS WARRANTY RATHER THAN FINAGLE USE ON THE FABRICATED NOTION THAT WE ARE AT FAULT RATHER THAN POOR ENGINEERING.

Vehicle: 2012 Kia Sorento
Date Complaint Filed: 07/29/2016
Date of Incident: 07/05/2016
Component(s): ENGINE
NHTSA ID Number: 10891685

**SUMMARY:**
TL* THE CONTACT OWNS A 2012 KIA SORENTO. WHILE DRIVING 70 MPH, THE VEHICLE RANDOMLY STALLED WITHOUT WARNING. THE VEHICLE WAS UNABLE TO BE DRIVEN DUE TO THE FAILURE AND WAS TOWED TO THE DEALER. THE DEALER INDICATED THAT THE ENGINE FRACTURED AND

-76-

FRAGMENTS ENTERED INTO OTHER AREAS OF THE VEHICLE. THE DEALER REPLACED THE ENGINE ASSEMBLY. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND PROVIDED NO SOLUTION. THE VIN WAS NOT AVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 67,000. UPDATED 09/23/16*LJ

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 10/05/2017
Date of Incident: 09/22/2017
Component(s): ENGINE
NHTSA ID Number: 11031971

**SUMMARY:**
KIA REPLACED MY ENGINE TWICE, DUE TO OIL CONSUMPTION. A MONTH AFTER THE FIRST ENGINE REPLACEMENT, I HAD THE SAME PROBLEMS.. SMOKE COMING OUT OF EXHAUST, LOSS OF POWER, STALLING AND OIL CONSUMPTION. I WAS IN AND OUT OF KIA'S SERVICE DEPARTMENT. THEY TOLD ME NOTHING WAS WRONG! I MOVED FROM CO TO NE, MY HUSBAND AND I HAD TO ADD OIL EVERY 100 MILES, WITH SMOKE COMING OUT OF EXHAUST AND STALLING. LINCOLN NE KIA FOUND AN OIL LEAK AT THE EXHAUST MANIFOLD RIGHT AWAY! KIA INSTRUCTS THEN TO REPLACE MY ENGINE AGAIN! ONCE THEY REPLACED ENGINE, THEY STILL SAW THE LEAK AT THE EXHAUST MANIFOLD WITH RESULTED IN MORE GUESSING AND PARTS. THE DAY AFTER I PICKED IT UP, MY HUSBAND AND I WENT OUT TO DINNER AND MY SORENTO DIED IN THE MIDDLE OF THE ROAD. RIGHT AWAY CALLED AND GOT IT BACK IN. AT FIRST THEY COULD NOT DUPLICATE, HOWEVER AFTER TAKING IT 50 MILES, IT DIED 3 TIMES. THEY STILL CAN'T FIND ANYTHING, BUT FEEL IT MAY BE THE THROTTLE BODY. THEY PUT A USED ONE ON AND HAVE ME DRIVE IT A FEW WEEKS, IT DIDN'T DIE DURING THAT TIME, SO THEY

ORDERED A NEW ONE AND INSTALLED. A MONTH LATER I DRIVE TO CO, I BREAK DOWN, IT'S TOWED BACK AND KIA CAN'T FIND ANYTHING. I DRIVE IT AND IT DIES 1/2 DOZEN MORE TIMES, EACH TIME I TAKE IT RIGHT IN, BUT THE CODE HAS CLEARED AND THEY CAN'T FIND ANYTHING! FINALLY, IT DOES AND THE LIGHT STAYS ON, IT SHOWS IT'S THE MAP SENSOR. KIA HAS A SPECIALIST COME OUT TO INSTALL THAT AND INSPECT MY CAR. THEY SAY IT'S FIXED AND SAFE. I DRIVE TO CO ON 9/22/17, 2 MONTHS LATER AND MY ENGINE CATCHES ON FIRE. I LOSS MY BRAKES, CAN'T PUT IT IN PARK AND EMERGENCY BRAKE WON'T WORK. FLAMES ARE EVERYWHERE, SMOKE FILLING MY CAR. I JUMP OUT OF MY BURNING, MOVING CAR AND SECONDS LATER THE WHOLE THING ENGULFS IN FLAMES! MOST HORRIFIC, AWFUL THING EVER! I WAS LUCKY ENOUGH TO HAVE MINOR INJURIES. MY MENTAL AND EMOTIONAL STATE ARE A MESS! KIA WON'T DO ANYTHING!

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 09/14/2017
Date of Incident: 06/26/2017
Component(s): ENGINE
NHTSA ID Number: 11023453

**SUMMARY:**
MILITARY STATIONED OVERSEAS WITH AN UPCOMING MOVE TO THE USA (MOVED AUGUST 2017).ENGINE LIGHT ILLUMINATED ON JUNE 25 2017. ENGINE KNOCK STARTED ON JUNE 26. TOWED TO DEALERSHIP IN ENGLAND ON JULY 11. CAR WAS RULED INOPERABLE WITH ENGINE FAILURE ON JULY 12. WE WERE FORCED TO LEAVE OUR CAR IN ENGLAND DUE TO PARTS AVAILABILITY AND LACK OF ASSISTANCE FROM KIA. WE STILL HAVE NOT HEARD ABOUT PARTS AVAILABILITY NOR ARE WE IN

-78-

POSSESSION OF OUR CAR. NEARING 3 MONTHS
WITHOUT OUR VEHICLE HAS PUT US IN FINANCIAL
DISTRESS.

---

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 07/2/2017
Date of Incident: 07/16/2017
Component(s): ENGINE
NHTSA ID Number: 11010999

**SUMMARY:**
CAR HAS 45K MILES. TOTAL LOSS DUE TO ENGINE
FIRE. OIL PAN FAILURE. CAUSE AND ORIGIN REPORT
PENDING

---

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 07/11/2017
Date of Incident: 06/30/2017
Component(s): ENGINE
NHTSA ID Number: 11004374

**SUMMARY:**
MY HUSBAND AND I WERE DRIVING NORTH ON I-49
IN LOUISIANA WHEN OUR 2013 KIA SORENTO
(APPROXIMATELY 86,000 MILES) BEGAN MAKING A
CLICKING/KNOCKING NOISE UPON ACCELERATION,
THE CHECK ENGINE LIGHT BEGAN BLINKING, AND
THE ENGINE IMMEDIATELY SHUT DOWN. WE PULLED
OVER TO THE SHOULDER, TURNED THE VEHICLE OFF,
AND ATTEMPTED TO RESTART THE VEHICLE;
HOWEVER, THE ENGINE FAILED TO RESTART. WE
TURNED OUR EMERGENCY LIGHTS ON FOR
CAUTIONARY PURPOSES, BUT AFTER
APPROXIMATELY 30 MINUTES, THE LIGHTS
COMPLETELY STOPPED WORKING. THERE WAS
EVIDENCE OF OIL LEAKAGE UNDERNEATH THE
VEHICLE, AS WELL AS OIL SPLATTER UNDERNEATH

-79-

THE HOOD OF THE VEHICLE NEAR THE ENGINE AND OVER THE ENTIRE EXTERIOR OF THE VEHICLE, FROM THE FRONT HOOD TO THE BACK WINDOW. WE HAD THE VEHICLE TOWED TO THE NEAREST KIA DEALERSHIP AND WERE TOLD BY THE SERVICE DEPARTMENT THAT THE BEARINGS IN THE ENGINE HAD FAILED, WHICH RESULTED IN "CATASTROPHIC ENGINE FAILURE," AND THAT ENGINE WILL NEED TO BE REPLACED. WE WERE ALSO INFORMED THAT THE ENGINE IN OUR VEHICLE IS A 2.4-L MPI ENGINE, WHICH IS NOT PART OF THE CURRENT RECALL; HOWEVER, INDIVIDUALS AT THE DEALERSHIP AND WITH KIA CUSTOMER SERVICE CONFIRMED THAT THE PROBLEMS WE EXPERIENCED ARE THE EXACT SAME PROBLEMS THAT HAVE BEEN REPORTED WITH THE 2.4-L GDI ENGINES THAT ARE PART OF THIS RECALL. WE HAVE BEEN EXTREMELY DILIGENT WITH OIL CHANGES, AND HAD APPROXIMATELY 2000 MILES UNTIL OUR NEXT OIL CHANGE, WHICH WE CAN SUPPORT WITH DOCUMENTATION. KIA HAS DENIED OUR REQUEST FOR ASSISTANCE BECAUSE OUR VEHICLE IS NO LONGER UNDER WARRANTY.

Vehicle: 2013 Kia Sorento
Date Complaint Filed: 09/08/16
Date of Incident: 08/3016
Component(s): ENGINE
NHTSA ID Number: 10904585

**SUMMARY:**
ON TUESDAY, AUGUST 30TH, 2016, MY HUSBAND WAS DRIVING IN OUR 2013 KIA SORENTO WITH OUR TWO TODDLERS WHEN THE CAR JUST STOPPED RUNNING WITH NO WARNING WHATSOEVER. HE WAS GOING APPROXIMATELY 45 MPH DRIVING STRAIGHT WHEN THE FAILURE OCCURRED. WE LOST ALL POWER INCLUDING POWER STEERING SO IT TOOK ALL HE HAD TO COAST AND PULL OVER SAFELY. HE CALLED

-80-

KIA WHO GOT A TOW TRUCK EN ROUTE TO TOW THE
VEHICLE TO OUR DEALERSHIP. MY DAD HAD TO
COME BY TO PICK UP MY FRIGHTENED GIRLS WHILE
MY HUSBAND WAITED WITH THE VEHICLE (IT TOOK
TWO HOURS). WE HAVE NEVER HAD ANY MAJOR
ISSUES BEFORE WITH THIS VEHICLE AND
FAITHFULLY HAD IT MAINTAINED THROUGH THE
DEALERSHIP. THE NEXT DAY, THE SERVICE
DEPARTMENT GAVE US NEWS WE WERE NOT
EXPECTING; THE ENGINE WAS BLOWN AS WE BROKE
A CRANKSHAFT. THIS VEHICLE ONLY HAS 36,000
MILES ON IT!! LUCKILY THIS IS COVERED UNDER THE
WARRANTY SINCE THEY VERIFIED THAT IT WAS
PROPERLY MAINTAINED BY THEM. FAST FORWARD A
WEEK AND WE GET THE CALL TONIGHT THAT KIA
HAS YET TO RELEASE A NEW ENGINE TO BE
INSTALLED AND THEY HAVE NO TIME FRAME.

Vehicle: 2014 Kia Sorento
Date Complaint Filed: 08/21/2017
Date of Incident: 08/16/2017
Component(s): ENGINE
NHTSA ID Number: 11018645

**SUMMARY:**
MY CAR STARTING TO BEGIN TO SHOW LACK OF
POWER AT FIRST, WHICH I HAD MENTIONED IN
ADVANCE IN SERVICE APPOINTMENTS. TWO DAYS
BEFORE MY ONE YEAR OF OWNING IT, THE CAR
BEGAN TO STALL OUT WHEN I STOPPED FOR TRAFFIC
LIGHTS WITHIN THE SAME DAY A OIL LIGHT
WARNING FLASHED, AND THE CAR STARTED TO
HAVE A KNOCKING NOISE. I WENT AND ADDED TWO
QUARTS OF OIL. ONCE THE OIL LIGHT DISAPPEARED
BUT THE KNOCKING CONTINUED . I TOOK THE CAR
TO MY REGULAR KIA SERVICE PROVIDER THE SAME
DAY AND IN THE PROCESS OF GOING THERE THE
ENGINE LIGHT CAME ON. I WAS TOLD TO BRING IT IN

-81-

THE NEXT DAY, THE ATTENDANT TOLD ME THAT HE
COULD HEAR THE KNOCKING, WHICH SOUNDED
CONCERNING. I BROUGHT THE CAR BACK THE NEXT
DAY AS INSTRUCTED AND WAS TOLD THAT I
SHOULD BE ABLE TO PICK IT UP AT END OF DAY.
TIME PASSED BY AND IT WAS GETTING LATE
TOWARDS CLOSING, SO I CALLED THE SHOP. I WAS
TOLD THAT THE ENGINES HAD SEIZED AND THAT
THE OIL BAY WAS DRY. I HAVE NEVER SEEN
SOMETHING HAPPEN SO FAST. I HAD NO WARNING
OF ANY KIND OF OIL ISSUES UNTIL THE DAY BEFORE,
AND I HAD BEEN TAKING THE CAR IN FOR IT'S
REGULAR SERVICES. THE CAR WAS IN THE KIA
SERVICE SHOP, AND MOVED BY THEM. IT WAS
RUNNING WHEN I BROUGHT IT IN BUT I AM BEING
TOLD THAT THE ENGINE IS SHOT.

Vehicle: 2011 Kia Sportage
Date Complaint Filed: 02/13/2017
Date of Incident: 02/03/2017
Component(s): ENGINE
NHTSA ID Number: 10954281

**SUMMARY:**
2011 KIA SPORTAGE - ENGINE FAILED WITHOUT
WARNING WITH TWO TODDLERS IN CAR. LUCKILY
THIS HAPPENED AS I TURNED OFF A HIGHWAY AND
WAS ABLE TO STOP ON THE SHOULDER.
MANUFACTURER REFUSES TO FIX BECAUSE I DON'T
HAVE MAINTENANCE RECORD. I HAVE A FRIEND
WHO HAS BEEN CHANGING OIL/SERVICING CAR. I
HAVE LEARNED THAT MANY OWNERS OF THIS
YEAR/MODEL CAR HAVE SIMILAR EXPERIENCES. I
FEEL THE MANUFACTURER SHOULD DEAL WITH A
PROBLEM AS SEVERE AS THIS IMMEDIATELY!

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle: 2011 Kia Sportage
Date Complaint Filed: 06/20/2016
Date of Incident: 06/15/2016
Component(s): ENGINE
NHTSA ID Number: 10875228

**SUMMARY:**
ENGINE SHUT DOWN IN THE HIGHWAY CAUSING
LOSS OF POWER STEERING/BRAKES. CAR HAS LESS
THAN 80K MILES, ALL OIL CHANGES PERFORMED PER
SPEC RECENTLY ADTER SWITCHING TO FULL
SYNTHETIC OIL CHANGED EVERY 5000 MILES.
ENGINE SEIZED. VERY SIMILAR TO HYUNDAI RECALL
ISSUED 9/25/2015. SAME ENGINE MANUFACTURED IN
THE SAME PLANT WITH A DIFFERENT NAME BADGE.

Vehicle: 2011 Kia Sportage
Date Complaint Filed: 10/01/2014
Date of Incident: 08/30/2014
Component(s): ENGINE
NHTSA ID Number: 10640483

**SUMMARY:**
SECOND CATASTROPHIC FAILURE OF 2.0 LITER
TURBOCHARGED ENGINE IN LESS THAN 30,000 MILES
SERVICE. *TR

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 10/18/2017
Date of Incident: 10/06/2017
Component(s): ENGINE
NHTSA ID Number: 11034261

**SUMMARY:**
MY DAUGHTER WAS DRIVING ON THE HIGHWAY
AND THE CAR JUST STOPPED, NO WARNING,
NOTHING. LUCKILY WAS ABLE TO GET TO SIDE OF

-83-

ROAD, TOWED AND MECHANIC SAID THE ENGINE IS
COMPLETELY BLOWN/SEIZED. WON'T START, STILL
AT MECHANICS IN ANOTHER STATE. NO WARNINGS
OR PRIOR ISSUES. CONSISTENT W/OIL CHANGES AND
UPKEEP

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 07/03/2017
Date of Incident: 02/12/2017
Component(s): ENGINE
NHTSA ID Number: 11002799

**SUMMARY:**
DRIVING DOWN THE ROAD AT APPROXIMATELY 45-
50 MPH AND THE ENGINE BEGAN KNOCKING. LOST
ALL POWER TO THE CAR. A FEW MOMENTS LATER,
THE CAR STOPPED COMPLETELY IN THE MIDDLE OF
A BUSY INTERSECTION. I GOT OUT OF THE CAR AND
PUSHED IT INTO A GAS STATION PARKING LOT. THE
CAR WOULD CRANK BUT THE KNOCKING OF THE
ENGINE WAS BECOMING WORSE. I HAD THE CAR
TOWED TO A SHOP WHERE THE PROBLEM WAS
DIAGNOSED AS "ROD KNOCK" WHICH IS CAUSED BY
A FAULTY MOTOR, ALLOWING METAL SHAVINGS TO
ENTER AND BLOCK THE FLOW OF OIL TO THE
MOTOR. NOT WANTING TO BELIEVE THAT I WAS
GOING TO HAVE TO PAY $5,000 TO REPLACE THE
ENGINE, I GOT A SECOND OPINION FROM A KIA
DEALERSHIP IN MY HOME TOWN. NOT ONLY DID
THEY CONFIRM WHAT THE INITIAL MECHANIC HAD
DIAGNOSED, BUT WERE VERY RUDE WHEN ASKING
US TO "REMOVE OUR CAR FROM THEIR PARKING LOT
BECAUSE UNLESS WE WERE GOING TO PAY THEM TO
FIX IT, IT HAD NO BUSINESS BEING THERE." ALL OIL
CHANGES HAVE BEEN DONE REGULARLY AND I
HAVE DOCUMENTATION FOR THEM ALL. OUR
VEHICLE HAD 74,000 MILES ON IT AND WAS KEPT IN
EXCELLENT CONDITION. AS OF NOW, KIA HAS DONE

NOTHING TO EXPLAIN WHY NOTHING HAS BEEN DONE ABOUT OUR PROBLEM, AS WELL AS MANY OTHERS WHO HAVE HAD THIS SAME PROBLEM.

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 05/27/2017
Date of Incident: 05/24/2017
Component(s): ENGINE
NHTSA ID Number: 10991919

**SUMMARY:**
DRIVING DOWN THE FREEWAY AT 80MPH (SPEED LIMIT IN IDAHO), RPMS STARTED TO REV OVER 6K, HEARD A TICKING SOUND, THEN A VERY LOUD BANG, FOLLOWED BY A BIG PUFF OF BLACK SMOKE, ALL IN THE SPAN OF AROUND 20 SECONDS. CAR DIED ON THE FREEWAY, HAD TO COAST TO GET IN EMERGENCY LANE. THEN THE CHECK ENGINE LIGHT CAME ON. THERE WAS NO INDICATION OF ENGINE ISSUES UNTIL IT WAS FAR TOO LATE. THANKFUL THE CARS BEHIND ME WERE PAYING ATTENTION OR I WOULD HAVE BEEN IN AN AWFUL ACCIDENT WITH AN 18 WHEELER. MECHANIC FOUND THAT ENGINE HAD THROWN A ROD AND PUT A HOLE IN THE ENGINE BLOCK. 106K MILES ON THE VEHICLE, DID NOT EXPECT TO HAVE ENGINE FAILURE THIS EARLY. THIS VIN IS NOT PART OF THE CURRENT RECALL, I BELIEVE IT SHOULD BE, AS IT HAS BEEN PROPERLY MAINTAINED AND SHOULD NOT HAVE FAILED ON THE FREEWAY WITH NO INDICATION OF PROBLEMS UNTIL IT WAS TOO LATE.

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 05/22/2017
Date of Incident: 04/24/2017
Component(s): ENGINE
NHTSA ID Number: 10991094

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

**SUMMARY:**
CRUISING ALONG AT FREEWAY SPEED, 75 MPH, VEHICLE MOMENTARILY LOST POWER AS IF IT WAS GOING TO STALL OR DOWN SHIFT. UPON RESUMING SPEED, HEARD A TAPPING NOISE AND A LOUD BANG, SAW SMOKE COMING OUT THE BACK OF THE VEHICLE AND OBJECTS TOSSED OUT. SAW A VEHICLE FOLLOWING IN MY LANE, SWERVE AS IF AVOIDING AN OBJECT BUT DID NOT STOP. COASTED TO THE SIDE OF THE FREEWAY, NOTICED A TRAIL OF OIL. UPON PARKING, CHECKED UNDERNEATH THE ENGINE COMPARTMENT, NOTICED OIL DRIPPING AND METAL PIECES, AND WHAT APPEARED TO BE A HOLE IN THE OIL PAN. VEHICLE WAS TOWED TO A DEALERSHIP AND WAS TOLD, A COUPLE OF DAYS LATER, THAT THE VEHICLE MAY BE SUBJECT TO A RECALL FOR SIMILAR DEFECTS. DOING AN ONLINE QUERY, I NOTICED THAT THE 2.4 ENGINE FOR THIS MODEL WAS NOT A PART OF THE RECALL CAMPAIGN, ALTHOUGH OTHER MODELS WITH THE 2.4 ENGINE WERE.

FORTUNATELY, IT APPEARS THAT NO FOLLOWING VEHICLES WERE HIT WITH ANY OF THE DEBRIS COMING OFF THE VEHICLE. UPON CHECKING THE SIDE OF THE FREEWAY, I PICKED UP WHAT APPEARED TO BE A PIECE OF THE ENGINE'S CONNECTING ROD. HAD THIS PIECE HIT A FOLLOWING VEHICLE, IT COULD'VE RESULTED IN PROPERTY DAMAGE OR UNKNOWN INJURIES TO ITS OCCUPANTS.

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 04/09/2014
Date of Incident: 04/03/2014
Component(s): ENGINE
NHTSA ID Number: 10578489

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

**SUMMARY:**
DRIVING ON THE INTERSTATE, THE ENGINE OF THE CAR GAVE OUT. I WAS GIVEN ZERO WARNING BEFORE THE ENGINE COMPLETELY DIED AND I WAS FORCED TO PULL MY CAR OFF TO THE SIDE OF THE ROAD. I WAS LUCKY THAT THE CAR BEHIND ME DID NOT HIT ME. THE CAR IS ONLY 2 YEARS OLD WITH ABOUT 30,000 MILES AND THIS SHOULD NOT HAVE HAPPENED. IT PUT MY LIFE AND THAT OF MY 11 MONTH OLD SON AT RISK. THE PUBLIC NEEDS TO BE AWARE OF THIS ISSUE! NO ONE SHOULD HAVE TO WORRY ABOUT BEING IN A FATAL ACCIDENT DUE TO KIA'S FAULTY PARTS. *TR

Vehicle: 2012 Kia Sportage
Date Complaint Filed: 03/24/2014
Date of Incident: 03/20/2014
Component(s): ENGINE
NHTSA ID Number: 10574623

**SUMMARY:**
AT APPROXIMATELY 5:30AM, I WAS DRIVING DOWN THE FREEWAY. MY KIA SPORTAGE SUDDENLY MADE A LOUD BANG, AND THE ENGINE STALLED. IT ALSO SHUT OFF THE HEADLIGHTS, AND DISABLED THE POWER STEERING, WHILE ON A CURVE, GOING 70MPH. THE POWER ASSISTED BRAKES WERE ALSO NOT WORKING, BECAUSE THE ENGINE SHUT DOWN. I MANAGED TO PULL THE VEHICLE OVER WITHOUT INCIDENT, BUT WAS ALMOST HIT BY SEVERAL VEHICLES THAT COULD NO LONGER SEE ME, BECAUSE MY LIGHTS WERE OFF. THE ENGINE WOULD NOT START UP AGAIN, AND I HAD TO HAVE THE VEHICLE TOWED HOME. THIS IS THE 3RD TIME THIS VEHICLE HAS DONE THIS, AND KIA REFUSES TO REPAIR THE VEHICLE. *TR

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

Vehicle: 2013 Kia Sportage
Date Complaint Filed: 09/19/2017
Date of Incident: 09/08/2017
Component(s): ENGINE
NHTSA ID Number: 11024230

**SUMMARY:**
JUST BEFORE REACHING TRYON, NC, COMING FROM
CHARLESTON, SC, WE BEGAN TO HEAR A DISTINCT
KNOCKING NOISE COMING FROM UNDER THE HOOD,
AND WERE UNABLE TO ACCELERATE ANY FURTHER
THAN AROUND 55 MPH. EVENTUALLY THE ENGINE
FAILED AND WE WERE ABLE TO JUST PULL OFF TO
THE SIDE OF THE ROAD JUST YARDS FROM WHERE
THE SHOULDER ENDED, AND WE ALMOST HIT A
STATIONARY VEHICLE JUST IN FRONT OF US ON THE
SHOULDER. WE WERE TRYING TO EVACUATE FROM
THE HURRICANE WITH MY 7 MONTH OLD
GRANDDAUGHTER.. AFTER THE ENGINE HAD
COOLED, WE CHECKED AND MADE SURE THAT MY
OIL WAS OVER HALF FULL, AND IT WAS. A RENTAL
PLACE STAYED OPEN A FEW EXTRA HOURS FOR US,
AND WE MANAGED TO GET TO OUR DESTINATION
THREE HOURS AWAY FROM THE INCIDENT, BECAUSE
WE WERE IN DESPERATE NEED OF SOMEWHERE
THAT ALLOWED DOGS. ON MONDAY, WE FOUND OUT
FROM THE MECHANIC THE CAR HAD EVENTUALLY
BEEN TOWED TO THAT THE ENGINE WAS SHOT. THE
MECHANIC LET US KNOW THAT THIS WAS AN
EXTREMELY COMMON ISSUE WITH OUR MAKE AND
MODEL, AND THAT WE SHOULD HAVE HAD A
RECALL ISSUED FOR SAFETY MEASURES. WHILE IN
ASSEMBLY THERE WAS A MANUFACTURING ERROR
WHICH WOULD NOT BE NOTICED UNLESS THE
DRIVER WAS GOING LONG DISTANCE ON THE
HIGHWAY. THERE WERE TINY METAL SHAVINGS
WITHIN THE ENGINE THAT BLOCKED THE OIL FROM
PROPERLY CIRCULATING THROUGH THE ROD
BEARINGS TO CRITICAL PARTS OF THE ENGINE. WE

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

CONTACTED CORPORATE, AND THEY TOLD US OUR
CAR WAS NOT LISTED UNDER THE WARRANTY
BECAUSE IT WAS ASSEMBLED IN A DIFFERENT
LOCATION THAN THE ONES RECALLED. THEY THEN
TOLD US I HAD A 60,000 MILE WARRANTY INSTEAD
OF A 100,000 MILE, WHICH WAS A FLAT OUT LIE. WE
CONTACTED OUR DEALER AND THEY CONFIRMED
WE HAD A 100K. NOW AFTER COLLECTING ALL OF
OUR SERVICE RECORDS, THE DEALERSHIP IS TRYING
TO TELL US THEY WILL NOT COVER THE 7,000
DOLLAR COST BECAUSE MY OIL WAS LOW, WHICH IS
ANOTHER FLAT OUT LIE. I DON'T WANT TO MAKE
ANY MONEY OFF THEM, I JUST WANT MY REPAIRS
COVERED.

Vehicle: 2013 Kia Sportage
Date Complaint Filed: 08/18/2017
Date of Incident: 06/26/2017
Component(s): ENGINE
NHTSA ID Number: 11016229
**SUMMARY:**
2013 KIA SPORTAGE ENGINE FAILURE IN JUNE OF
2017. I WAS DRIVING THE VEHICLE EASTBOUND AT
75MPH ON INTERSTATE 10 BEAR BLYTHE, AZ IN
SIGNIFICANT TRAFFIC. THE ENGINE SHUT OFF AND
POWER STEERING FAILED. I ABLE TO AVOID A
COLLISION BUT SPUN OUT INTO THE INTERSTATE
MEDIAN.

I HAD THE VEHICLE TOWED TO A KIA DEALERSHIP IN
AVONDALE, AZ. KIA DEALERSHIP CONFIRMED THE
ENGINE HAD SEIZED. KIA DENIED WARRANTY
COVERAGE FOR ENGINE CLAIMING IT IS NOT PART
OF THE KIA ENGINE SAFETY RECALL CAMPAIGN
SC147. KIA CLAIMS THE ENGINE WAS
MANUFACTURED IN KOREA SO IT IS NOT INCLUDED.
HOWEVER, THERE ARE AT LEAST 6 OTHER "NOT
COVERED" SPORTAGE'S PARKED IN SERVICE LOT

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

AWAITING REPAIR. SERVICE MANAGER REPORTED TO ME THAT KIA IS DENYING THE COVERAGE WHEN HE "KNOWS" THE ENGINE PROBLEM IS CAUSED BY A DEFECTIVE MANUFACTURING PROCESS.

---

Vehicle: 2014 Kia Sportage
Date Complaint Filed: 08/28/2016
Date of Incident: 08/03/2016
Component(s): ENGINE
NHTSA ID Number: 10902014

**SUMMARY:**
WHILE DRIVING MY LEASED 2014 KIA SPORTAGE, THERE WAS NONSTOP CONTINUOUS HESITATION "BUCKING", WITH WHITE SMOKE BLOWING OUT OF THE TAILPIPE, LOSS OF SPEED THEREFORE HAVING TO PRESS HARD ON GAS PEDAL TO AVOID ACCIDENT BY TRYING PULL OFF ROAD. THIS HAPPENS ON CITY ROADS AND HIGHWAY. NO DASHBOARD LIGHT INDICATED THERE WAS A PROBLEM. THE SERVICE ADVISOR AT DESTINATION KIA SAID MY MODEL DOES NOT COME WITH WARNING LIGHTS.

IT APPEARS TO BE AN OIL PROBLEM. OIL LEVEL GOES DOWN WITH NO VISIBLE SIGNS OF LEAKING. I ONLY HAVE 24,000 ON MY KIA SPORTAGE, WITH ONE YEAR LEFT ON MY LEASE. I AM NOT ABLE TO DRIVE THE VEHICLE AS I AM IN FEAR OF STALLING IN TRAFFIC CAUSING MYSELF OR OTHERS TO BE INJURED.

105.    Upon information and belief, Defendants regularly monitor these NHSTA databases as part of its ongoing obligation to identify potential defects in its vehicles. NHTSA complaints establish that KMA knew, or should have known, of the engine

defect **at least** as early as October 11, 2011 based on publicly available information,[7] years before the Class Vehicles at issue in this litigation were sold. Upon information and belief, Defendants became aware of the engine defect earlier than June 2013 via: (1) Defendants' own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) other various sources.

## C.   Pre-Sale Durability Testing

106.   Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants conduct tests, including pre-sale durability testing, on incoming components, including the engine, to verify the parts are free from defects and align with Defendants' specifications.

107.   Kia conducts expansive presale durability testing on its vehicles to make sure they "endure over a long time without fault."[8] This presale testing includes seven different types of durability tests: (1) an item durability test; (2) a module durability test; (3) a Belgian road test; (4) a high-speed test; (5) a corrosion test; (6) a P/T test; and (7) a vehicle test. Kia conducts these tests "in extreme weather conditions including desert with blazing sunlight and coldness of 40 degrees below zero."

108.   Specifically, regarding testing its engines, Kia states that it puts "our engines through rigorous testing in the highest, hottest and coldest places that a car can possibly be before we use them in our cars."

109.   In addition, Kia conducts extensive "driving test[s]" in which it puts "our cars to endurance test under diverse harsh conditions that can be encountered on Earth" because "[a]ny fault in your car can affect your safety." Kia expands on six different road tests that it conducts, including a durability test on a road "so rough that driving around

---

[7] NHTSA ID No. 10429442, *supra* at p. 44.
[8] http://www.kia.com/worldwide/experience_kia/rnd/performance.do (last visited Nov. 20, 2017).

-91-

10,000 miles on it gives the same effect of driving around 60,000 on regular roads. Cars that survive the test only can be presented to customers."

110.   In addition, John Juriga, the Director of Powertrain at Kia in 2015, stated that Kia's validation testing is among the toughest in the automotive industry.[9] Among other things, this validation testing runs the engine at maximum throttle (the maximum speed the engine can operate under) while under full load "so we're stressing the components as much as possible and we run it virtually nonstop for 300 hours." After, Kia does an "overrun spec" where it runs it over spec for 10-20 hours to make sure it can survive past the red line limits in order to "make sure these products stay durable in the customers' hands."

111.   Moreover, Kia also uses "the most extreme and rigorous vehicle testing program ever devised by the company."[10] As part of this test, Kia stimulates stop-and-go driving repeated over several times to "put additional strain on the engine, transmission and HVAC systems and eliminate any possible flaws." In addition, at its Mojave Proving Grounds test site, Kia utilizes a "high-speed oval, gravel off-road tracks, high-vibration road surfaces, brake test facilities and different gradients. These each enable engineers to evaluate and refine the ride, handling, brakes and NVH of prototype and production vehicles."

112.   As a result, Kia was well aware of the engine defect prior to the Class Vehicles being sold to Class Members.

**D.   Defendants' Warranty-Related Practices**

113.   KMA issued two relevant warranties with each Kia Class Vehicle: a "New Vehicle Limited Warranty," and a "Powertrain Warranty."

---

[9] https://www.youtube.com/watch?v=GNPB3RtHN2M (last visited Nov. 21, 2017).
[10] http://www.hyundaimotorgroup.com/MediaCenter/News/Press-Releases/kmc-hot-weather-test-all-new-Kia-Sportage-150917.hub#.WhRXYziourF (last visited Nov. 21, 2017).

114.   Under the basic New Vehicle Limited Warranty, KMA agreed to repair defects reported within the earlier of 5 years or 60,000 miles.

115.   Under the Powertrain Warranty, KMA agreed to repair defects affecting various powertrain components through 10 years and 100,000 miles. According to the Warranty and Consumer Information Manual, Powertrain Coverage Components include:

**In the Engine:** Cylinder block, cylinder head and all internal parts, timing gear, seals and gaskets, valve cover, flywheel, oil pump, water pump and turbo charger.

**In the Transaxle:** Transmission case and all internal parts, torque converter, drive shafts, universal joints, front hubs, bearings, seals and gaskets.

**In the Transmission**: Transmission case, transfer case, torque converter and all internal parts, seals, and gaskets.[11]

116.   KMA instructs vehicle owners and lessees to bring their vehicles to a Kia dealership for the warranty repairs. Many owners and lessees have presented Kia Class Vehicles to Kia dealerships with complaints related to the engine defect.

117.   In addition to the above warranties, KMA has also issued a 10 year/120,000 mile warranty on the short blocks contained in all 2011-14 Kia Class Vehicles. (*See* Section A.2, *supra*).

118.   KMA has evaded its warranty obligations by failing to tell consumers that their vehicles are defective and by representing that the cause of the defect is the owner's neglect to properly maintain the engine oil and/or engine oil level. This representation, however, is false as the engine is inherently defective and will inevitably fail. *See* Exhibit 2 ("October 21, 2016 - KMA sees continuing cost related VOQs [Vehicle Owner Questionnaire] and determines dealers are not approving extended warranty repairs due to customer lack of oil maintenance proof.").

---

[11] *See, e.g.*, http://www.kia.com/us/k3/content/media/all/warranty/2014_warranty.pdf (last visited August 7, 2017).

-93-

119.   In addition, KMA has also evaded its warranty obligations by requiring consumers to produce the entire maintenance history of the Kia Class Vehicles, including a mandate that all oil changes be completed at a Kia dealership, before determining whether to make the necessary repairs under warranty. *See Id*. KMA, however, knows that the defect in the Kia Class Vehicles' engines manifests even if the owner or lessee has followed Kia's oil change guidelines.  Even if consumers produce their vehicles' maintenance history, KMA blames the defect and engine failure on the consumer, refuses to cover the necessary repairs under warranty, and charges as much as $10,000 to repair/replace the engine.

120.   Kia also advertises that it offers "an industry-leading Kia 10-year or 100,000-mile warranty program."  With respect to the powertrain warranty, however, Kia publicizes the existence of 10 year/100,000 mile powertrain warranty but fails to mention that subsequent owners only receive powertrain warranty coverage for 5 years/60,000 miles.  As such, subsequent owners are left to discover the limited warranty coverage after purchasing their vehicle.  Kia's failure to cover repairs under the powertrain warranty between 5 years/60,000 miles and 10 years/100,000 miles is therefore unconscionable and the warranty reduction should be unenforceable.  A typical Kia advertisement touting its warranty is pictured below:

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

121.   In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the defect (despite such defect having been contained in the Kia Class Vehicles when manufactured by Defendants), repair and replacement of the GDI Engine and the unnecessary and premature replacement of the connecting rods, crank shaft, oil pump, and other engine components.

122.   Furthermore, a number of Class Members who presented their Kia Class Vehicles to Kia dealerships because of issues related to the defective connecting rod bearings and insufficient engine oil lubrication channels were denied warranty repairs and, instead, were informed that nothing was wrong with their vehicles. As a result, after expiration of the warranty period, Class Members are forced to pay costly repairs to correct the defect.

## CLASS ALLEGATIONS

123.   Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3).

### Nationwide Class:

All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle.

124.   In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above.  Specifically, the state classes consist of the following:

### California Class:

All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

**<u>Maine Class:</u>**

All persons or entities in Maine who are current or former owners and/or lessees of a Class Vehicle.

125.    Together, the California Class, the Maine Class, and the Nationwide Class shall be collectively referred to herein as the "Class." Excluded from the Class are KMA, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

126.    <u>Numerosity</u>:   Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in each of the states that are the subject of the Class.

127.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, whether:

    a.   The Class Vehicles were sold with a defect;

    b.   Defendants knew of the defect but failed to disclose the problem and its consequences to their customers;

    c.   A reasonable consumer would consider the defect or its consequences to be material;

    d.   Defendants have failed to provide free repairs as required by their New Vehicle Limited Warranty and/or Powertrain Warranty;

    e.   Defendants should be required to disclose the existence of the defect; and

-96-

f.   Defendants' conduct violates the California Legal Remedies Act,
California Unfair Competition Law, and the other statutes asserted
herein.

128.   <u>Typicality</u>:   All of Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased Class Vehicles with the same engine defect, defective vehicle design, and defective engine, as did each member of the Class. Furthermore, Plaintiffs and all Members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

129.   <u>Adequacy</u>:   Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel who are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

130.   <u>Superiority</u>:   A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Members of the Class individually to redress effectively the wrongs done to them. Even if the Members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

131.   Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et seq.*)**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

132.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

133.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class.  Alternatively, Plaintiffs Stanczak, Centko, and Lazar bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

134.   Defendants are persons as that term is defined in California Civil Code § 1761(c).

135.   Plaintiffs and the Class Members are "consumers" as that term is defined in California Civil Code §1761(d).

136.   Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

-98-

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

137. Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

138. Defendants knew that the Class Vehicles and GDI Engines were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

139. Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and the defective nature of the connecting rod bearings and insufficient engine oil lubrication channels because:

    a.    Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles and their engines;

    b.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles and their engine had dangerous safety defect until manifestation of the defect;

    c.    Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the defect; and

    d.    Defendants actively concealed the safety and security defect and the associated repair costs by asserting to Plaintiffs and Class Members that the cause of their engine problems was the result of Plaintiffs' and the Class Members' inability to maintain the proper engine oil levels despite knowing the repairs needed to correct the defect.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

140.   In failing to disclose the engine defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

141.   The facts concealed or not disclosed by Defendants to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Class Vehicles and their engines, they would not have purchased the Class Vehicles or would have paid less for them.

142.   On or about June 2, 2016, Plaintiffs' counsel provided Defendant KMA with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) regarding the engine defect in the MY 2011-13 Kia Sportage, 2011-14 Kia Optima and 2012-14 Kia Sorento vehicles.

143.   On or about March 8, 2017, Plaintiffs' counsel, in the Centko matter, provided Defendant KMA with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) regarding the engine defect contained in the MY 2010-17 Kia vehicles equipped with the GDI engine.

144.   On or about June 8, 2017, Plaintiffs' counsel, in the Stanczak matter, provided Defendant KMA with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) regarding the engine defect contained in the MY 2015-16 Kia Sportage, Optima and Sorento vehicles.

145.   Plaintiffs and the other Class Members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

146.   Therefore, Plaintiffs and the other Class Members seek all relief available under the CLRA.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAWS**

**(Cal. Bus. & Prof. Code § 17200)**

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

147.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

148.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class. Alternatively, Plaintiffs Stanczak, Centko, and Lazar bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

149.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

150.   Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members that the Class Vehicles suffer from a defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

151.   The defective connecting rod bearings and insufficient engine oil lubrication channels constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

152.   These acts and practices have deceived Plaintiffs and are likely to deceive the public.  In failing to disclose the defect and suppressing other material facts from Plaintiffs and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class Members. The omissions and acts

of concealment by Defendants pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

153.   The injuries suffered by Plaintiffs and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class Members should have reasonably avoided.

154.   Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

155.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (Cal. Bus. & Prof. Code § 17500, *et seq*.)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

156.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

157.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class. Alternatively, Plaintiffs Stanczak, Centko, and Lazar bring this claim on behalf of themselves and on behalf of the California Class against Defendants.

158.   California Business & Professions Code § 17500 states:  "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is

untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

159.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

160.   Defendants have violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

161.   Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations were untrue because the Class Vehicles are distributed with defective connecting rod bearings and insufficient engine oil lubrication channels. Had Plaintiffs and the other Class Members known this, they would not have purchased or leased their Class Vehicles or would not have paid as much for them. Accordingly, Plaintiffs and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

162.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

163.   Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and

the other Class Members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## FOURTH CAUSE OF ACTION

## VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT

### (On Behalf of the Maine Class)

164.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

165.   Plaintiff Creps brings this claim on behalf of herself and on behalf of the Maine Class against Defendants.

166.   Plaintiff Creps and the Maine Class are persons as that term is defined by Me. Rev. Stat. Ann. tit. 5, § 206(2).

167.   Defendants are engaged in "trade" and "commerce" as those terms are defined by Me. Rev. Stat. Ann. tit. 5, § 206(3).

168.   Maine's Unfair Trade Practices Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. Ann. tit. 5, § 207.

169.   Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Creps and the Class Members that the Class Vehicles suffer from a defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiff Creps and Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

170.   The defective connecting rod bearings and insufficient engine oil lubrication channels constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

171. These acts and practices have deceived Plaintiff Creps and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiff Creps and the Class Members, Defendants breached their duties to disclose these facts, violated Maine's Unfair Trade Practices Act, and caused injuries to Plaintiff Creps and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff Creps and the Class Members, as it would have been to all reasonable consumers.

172. The injuries suffered by Plaintiff Creps and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Creps and the Class Members should have reasonably avoided.

173. The facts concealed or not disclosed by Defendants to Plaintiff Creps and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiff Creps and the Class known about the defective nature of the Class Vehicles and their engines, they would not have purchased the Class Vehicles or would have paid less for them.

174. Plaintiff Creps' and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

175. Plaintiff Creps has provided Defendants with notice of these violations pursuant to Me. Rev. Stat. Ann. tit. 5, § 213(1-A).

176. Plaintiff seeks all relief available under Maine's Unfair Trade Practices Act, including the recovery of attorneys' fees and costs pursuant to Me. Rev. Stat. Ann, tit. 5, § 213(2).

//
//
//
//
//

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

# FIFTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (On Behalf of the Nationwide Class or, Alternatively, the California Class and Maine Class)

177.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

178.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of each of the state subclasses.

179.   Defendants provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Defendants' warranties are express warranties under state law.

180.   The parts affected by the defect, including the rotating assembly and engine block, were distributed by Defendants in the Class Vehicles and are covered by the warranties Defendants provided to all purchasers and lessors of Class Vehicles.

181.   Defendants breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

182.   Plaintiffs notified Defendants of the breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches of written warranty would have been futile. Defendants also knew of the defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

183.   As a direct and proximate cause of Defendants' breach, Plaintiffs and the other Class Members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiffs and Class Members have also incurred and will

continue to incur costs related to the diagnosis and repair of the defective connecting rod bearings and insufficient engine oil lubrication channels.

184. Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

185. The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Class Members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

186. Plaintiffs and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively, the California Class and Maine Class)**

187. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

188. Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of each of the state subclasses.

189. Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

190.   Defendants provided Plaintiffs and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles and their engines suffered from defective connecting rod bearings and insufficient engine oil lubrication channels at the time of sale that causes the vehicles to experience premature and catastrophic engine failure. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

191.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not experience premature and catastrophic engine failure; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

192.   Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

193.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

//
//
//
//
//

-108-

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

## <u>SEVENTH CAUSE OF ACTION</u>

**BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, *et seq.*)**

**(On behalf of the Nationwide Class or, Alternatively, the California Class, and Maine Class)**

194.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

195.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

196.   Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

197.   Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

198.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

199.   Defendants' 5 year/60,000 miles Basic Warranty and 10 year/100,000 miles Powertrain Warranty are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

200.   Defendants breached the express warranties by:

　　a.　　Providing a 5 year/60,000 miles Basic Warranty and a 10 year/100,000 miles Powertrain Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

　　b.　　Selling and leasing Class Vehicles with engines that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

　　c.　　Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the engine or any of its

-109-

component parts in order to remedy the defective connecting

rod bearings and insufficient engine oil lubrication channels.

201.   Plaintiffs and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

202.   Defendants' breach of the express warranties has deprived Plaintiffs and the other Class Members of the benefit of their bargain.

203.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

204.   Defendants have been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class Members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged defect from the complaints and service requests it received from Class Members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

205.   As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## EIGHTH CAUSE OF ACTION

### COMMON LAW FRAUD

### (On Behalf of the Nationwide Class or, Alternatively, the California Class and Maine Class)

206.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

-110-

207.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

208.   Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to their customers the true nature of the inherent defect with the GDI Engine, which was not readily discoverable until years later, often after the New Vehicle Limited Warranty or the Powertrain Warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defect and all of the resultant problems.

209.   These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class Members rely on them.

210.   Plaintiffs and the Class Members reasonably relied on these omissions, and suffered damages as a result.

## NINTH CAUSE OF ACTION

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

### (On Behalf of the Nationwide Class or, Alternatively, the California Class and Maine Class)

211.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

212.   Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

213.   All contracts in California and Maine contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

214.   Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiffs and Class Members of the defective connecting rod bearings and insufficient engine oil lubrication channels in the Class Vehicles, and failing to fully and properly repair this defect.

-111-

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

215.   Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### VIOLATION OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY

### (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class and Maine Class)

216.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

217.  Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class or, alternatively, on behalf of the state subclasses.

218.  At all relevant times hereto, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or should have known of the specific use for which the Class Vehicles were purchased.

219.  Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles and their engines suffered from an inherent defect at the time of sale that causes the Class Vehicles to experience premature and catastrophic engine failure.

220.  The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the defect.

221.  Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation

-112-

and would not prematurely and catastrophically fail; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

222.   Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose.  Instead, the Class Vehicles are defective, including, but not limited to, the engine defect and/or manufacture of the GDI Engines.

223.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. appoint Plaintiffs as the representatives of the Classes and their counsel as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class Members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the engine defect;

-113-

1    F.  award reasonable attorneys' fees and costs; and

2    G.  grant such further relief that this Court deems appropriate.

3    Dated:  February 2, 2018                    Respectfully submitted,

4

5    By: _/s/ David C. Wright_____

6           Richard D. McCune
            David C. Wright

7           MCCUNE WRIGHT AREVALO LLP
            3281 Guasti Road, Suite 100

8           Ontario, California 91761
            Telephone: (909) 557-1250

9           Facsimile: (909) 557-1275

10          Email:  rdm@mccunewright.com

11                  dcw@mccunewright.com

12          Joseph G. Sauder
            Matthew D. Schelkopf

13          Joseph B. Kenney

14          MCCUNE WRIGHT AREVALO LLP
            555 Lancaster Avenue

15          Berwyn, Pennsylvania 19312

16          Telephone: (909) 557-1250
            Email:  jgs@mccunewright.com

17                  mds@mccunewright.com

18                  jbk@mccunewright.com

19
            Bonner Walsh

20          WALSH PLLC
            1561 Long Haul Road

21          Grangeville, ID 83530

22          Telephone: (541) 359-2827
            Facsimile: (866) 503-8206

23          Email:  bonner@walshpllc.com

24

25

26

27

28

-114-

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Adam Gonnelli
**THE SULTZER LAW GROUP, PC**
280 Highway 35, Suite 304
Red Bank, NJ 07701
Telephone: (732) 741-4290
Facsimile: (888) 749-7747
Email: gonnellia@thesultzerlawgroup.com

Attorneys for Plaintiffs and Putative Class

-115-

1

## JURY DEMAND

2          Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on

3    all issues so triable.

4                                        MCCUNE WRIGHT AREVALO LLP

5
                          By:   /s/ David C. Wright
6                               David C. Wright
                                Attorneys for Plaintiffs and Putative Class
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-116-

Second Consolidated Class Action Complaint
Case No. 8:17-cv-00838-JLS-JDE