7.2     Defendant shall not represent or imply that a Tire is safe if the Defendant knows or reasonably should know that the Tire has a safety-related defect or is otherwise unsafe.

7.3     To the extent it has not already done so, Defendant shall cease directly or indirectly producing, manufacturing, distributing, advertising or selling any of the Defined Tires.

7.4     Defendant shall not make any representation concerning the safety features of any Tire or Tire component which it knows or reasonably should know is untrue, deceptive, misleading or unfair.

**Claims must be Substantiated.**

7.5     At all times prior to or contemporaneous with making any representations, express or implied, regarding any specific Tire safety, performance or durability claim, Defendant shall possess Competent and Reliable Scientific Evidence which reasonably substantiates each specific claim.  Nothing herein shall prevent Defendant from advertising or otherwise making general statements or claims concerning the quality of its Tires, if such claims are truthful, non-misleading, non-deceptive and fair.

**General Tire or Tread Pattern Representations.**

7.6     Defendant shall not represent or imply that Tires, Tire components, or Tread Patterns are of a grade, quality, construction, make, value, age, size, strength, characteristic, material, durability, usability or origin when such representations or implications are not the case.

10

**Representations Concerning Recall Process.**

      7.7     In connection with any Recall, Defendant shall not make any misrepresentations regarding the availability of replacement Tires or the costs associated with obtaining replacement Tires.

      7.8     In connection with any Recall, Defendant shall not:

     (A)     Charge a Consumer to replace a Tire with one of Defendant's tires when Defendant replaces a Tire; provided that if the Consumer authorizes in writing a more expensive replacement Tire then Defendant may charge the Consumer the incremental cost difference;

     (B)     Represent or imply that a replacement Tire is unavailable (if Defendant knows or reasonably should know that the Tire is available) and that a Consumer will have to wait for such Tire to become available and then charge a Consumer a fee to replace a recalled Tire with a different Tire, when a replacement Tire is actually available;

     (C)     Charge or authorize others to charge (unless Defendant fully reimburses any such costs) any Consumer for a Warranty on a replacement Tire when the original Tire being replaced was purchased with such Warranty. A road hazard Warranty purchased on a Tire later recalled shall be pro-rated in accordance with the Tire's remaining treadwear; or

     (D)     Authorize its Authorized Retailers or agents to engage in any of the practices identified in 7.8(A) through (C).

      7.9     In promoting a Recall program or Customer Satisfaction Program (or term or phrase of similar import) relating to a Tire, Defendant shall fulfill each and every promise or representation made by Defendant to Consumers through the advertised or promoted program with regard to that recall program or Customer Satisfaction Program.

**Representations regarding Customer Satisfaction or Enhancement Programs.**

      7.10    Defendant shall not inform Consumers that their vehicles should be brought in for a stated purpose when in fact the Consumers are being requested to come in for a different Tire-related purpose.

**Identification of Manufacturer.**

7.11    Defendant shall not misrepresent the identity of the manufacturer of a Tire

to consumers, including but not limited to the manufacturer of Private Label or House

Brand Tires. Provided that, the mere fact that Defendant sells Private Label or other Tires

branded other than Firestone or House Brand or that it sells other branded Tires made by

another manufacturer does not constitute a misrepresentation concerning the identity of

the manufacturer.

**Nylon Cap Plies or Strips Claims.**

7.12    Defendant shall not represent or imply that a Tire has Nylon Cap Plies or

Strips, if such is not the case.

**Inflation Pressure.**

7.13    Defendant shall not provide or facilitate the provision of inconsistent or

contradictory information by Defendant regarding Tire inflation pressure to Consumers.

Nothing herein shall prevent Defendant from expressing its honest, best judgment for

altering a vehicle manufacturer's Tire inflation pressure recommendation provided that

such recommendation is made Clearly and Conspicuously in a non-misleading, non-

deceptive manner.

**Light Truck/Sport Utility Vehicle "SUV" Usage Claims.**

7.14    Defendant shall not represent or imply that certain Tires are intended or

appropriate for use on light trucks or SUVs, unless such is in fact the case.

**Terrain Usage and Warranty Claims.**

7.15    Subject to the limitations, exclusions and owner's obligations Clearly and

Conspicuously disclosed by Defendant to Consumers, prior to the Consumer's purchase

of a Tire, Defendant shall not deny a Warranty claim solely on the basis of certain terrain usage of that Tire if that terrain usage was, directly or indirectly, promoted or represented to the public by Defendant as acceptable use in any advertisement, promotional material or other manner.

**Representations Concerning Guarantees and Warranties.**

7.16    Defendant shall not represent or imply that a warranty, guarantee or customer satisfaction program (or term or phrase of similar import) confers, has or involves rights, remedies or obligations which it does not have or involve.

7.17    Defendant shall not represent or imply in any Warranty, guarantee or the like that a Tire will be replaced with an "equivalent" Tire (or term or phrase of similar import), and then fail to fulfill that commitment to Consumers.

7.18    Defendant shall not advertise or promote any guarantee, or Warranty (or term or phrase of similar import) concerning a Tire, in a manner which would have a tendency or capacity to mislead and/or deceive the Consumer into believing that the Tires guaranteed or covered by the Warranty have a greater degree of serviceability or durability than Competent and Reliable Scientific Evidence shows to be true.  Nothing herein shall prevent Defendant from warranting a Tire against defects for a finite period of time.

**Retroactive Changes to Warranty or Guarantee Programs.**

7.19    Defendant shall not retroactively change any Warranty, guarantee or customer service satisfaction program relating to a Tire that already has been sold in a manner which would diminish or otherwise reduce its terms.

**Improved Disclosures for (1) 30 Day Test Drive: Unconditional Money Back
Guarantee and (2) Gold Pledge Limited Warranty: Free Replacement.**

7.20    Defendant shall not represent or imply that it is "expanding" (or term or
phrase of similar import) its Warranty program with regard to a Tire, if

(A)    such is not the case; or

(B)    such Warranty program reduces the Warranty coverage.

**Expert Claims.**

7.21    Defendant shall not represent or imply publicly to Consumers that
Defendant will provide an expert with all requested information concerning its Tires and
then fail to do so.

**Tire Tread Pattern Design Claims.**

7.22    Defendant shall not represent or imply that a Tire will last or is expected
to be used for a particular mileage or time frame unless, based on Competent and
Reliable Scientific Evidence, the Tire belts and all other components of the Tire type, are
expected to last no less than the length of mileage or time promoted.

7.23    Defendant shall not represent or imply that a Tire will have "long, even
tread wear" or "long, even wear" (or term or phrase of similar import), if such is not
supported by Competent and Reliable Scientific Evidence.

**Handling Complaints.**

7.24    Defendant shall handle Consumer complaints and inquiries regarding
performance problems with Defendant's Tires in a truthful, ethical and timely manner.

## 8. CONSUMER EDUCATION

8.1    Notwithstanding consumer education already provided to Consumers,
within ninety (90) days of entry of the Tennessee Order, Defendant, if not already doing

14

so, will provide the following consumer education information to consumers through

Defendant's company owned stores:

   (A)    Clear and Conspicuous Tire safety information to Consumers containing, at a minimum, in writing (including but not limited to, on the sidewall[2] and/or invoice) and delivered to individual Consumers, the following:

      (1)    The importance of maintaining a Tire properly and the possible consequences for failing to do so that are known or reasonably should have been known by Defendant;

      (2)    The type, model and the week of manufacture of the particular Tire for non-O.E. Tires; provided that disclosure to the consumer at the point of sale of a Tire's Department of Transportation serial number along with Clear and Conspicuous disclosure in writing of how to understand shall constitute compliance with this provision;

      (3)    The maximum inflation pressure for the particular Tires, directly or through Clear and Conspicuous reference to the vehicle placard or Owner's Manual, and what that means;

      (4)    The load capacity of the particular Tires and the significance of the load capacity;

      (5)    An explanation of how Consumers should determine when the particular Tires should be replaced or inspected;

      (6)    An explanation of what Consumers should do if their Tires are continually losing pressure;

      (7)    The speed rating, if any, for the particular Tires and the significance of the rating;

      (8)    The UTQG temperature resistance rating for the Tire and the significance of the rating;[3]

      (9)    The UTQG traction rating for the particular Tire and the significance of the rating;

---

[2] Provided however, that nothing contained in this Section shall require Defendant to provide the information disclosed on the sidewalls of its Tires in black and white or other contrasting colors but it shall be a Clear and Conspicuous disclosure.

[3] With regard to paragraphs 8.1(A)(8), (9) and (10), compliance with the federal UTQG statute regarding how to make such disclosures to Consumers shall be deemed compliance with this required disclosure provision.

(10)     The UTQG tread wear rating for the particular Tire and the significance of the rating;

(11)     Safety risks associated with the use of the Tires, including temporary Tires, that are known or should have been known by Defendant and particular means for avoiding or minimizing said risks; and

(12)     The importance of obtaining a proper Tire repair and the consequences to the Warranty of failing to do so.

With respect to O.E. Tires mounted on vehicles for which the owner's manual does not include such materials and Tires that are sold by Defendant to non-company owned stores, Defendant shall make these consumer education materials available for each sale of Tire(s) to the consumer at the delivery of the Tires to the purchaser.  Defendant shall encourage these purchasers to provide such consumer education directly to consumers at the point of sale.

**Warranty Disclosures.**

(B)     A copy of any written Warranty, including road hazard Warranty if purchased or available at no charge, and any guarantee for the particular Tire and Clearly and Conspicuously disclose, on the first page(s) of text of any Warranty or guarantee that certain occurrences might not be covered under the Warranty, and may in fact void the Warranty.  Without limiting the scope of this provision, the disclosure shall, at a minimum, direct the reader to the location in the Warranty where the descriptions of the occurrences not covered are listed.  Further, the disclosure must also, at a minimum, Clearly and Conspicuously inform the reader of the availability of a road hazard Warranty and direct the reader to the location of a description of any occurrences not covered by such Warranty.

**Temporary Tires.**

(C)     Clear and Conspicuous disclosure and permanently mark on each temporary Tire[4], at a minimum, (1) that the Tire is for temporary use, (2) any speed limitations associated with the Tire, and (3) any maximum load

---

[4]Provided however, nothing contained in this Section shall require Defendant to provide this information disclosed on the sidewalls of its Tires in black and white or contrasting colors but it shall be a Clear and Conspicuous disclosure to consumers.

limitations related to the use of temporary tires that are known or reasonably should have been known by the Defendant.

## 9. FULL COOPERATION IN ANY RELATED INVESTIGATIONS OR LAWSUITS

9.1 Defendant shall cooperate, and use its best efforts to ensure that its officers, directors, employees, former employees, advisors and other released persons in this investigation will provide truthful sworn testimony and cooperate in connection with the Multi-state Working Group investigation commenced in August of 2000 of unfair and deceptive trade practices allegedly committed by other individuals and/or business entities relating to rollover incidents involving sport utility vehicles equipped with Defendant's Tires. Cooperation shall mean Defendant, through counsel, will actively cooperate to obtain and provide access to documents and information (including the right to make copies of same) and to secure the appearance, interview and/or sworn testimony of its officers, directors, employees, former employees, advisors and other released persons in this investigation.[5] Such appearance, interview or sworn testimony shall be provided at no cost to the State. However, the State shall pay all transcription costs.

## 10. RESTITUTION

10.1 Defendant has paid refunds, replaced Recalled Tires and Consumer Advisory Tires, implemented a bounty program, purchased Tires for consumers or otherwise made adjustments in the fifty States, the District of Columbia and the Territories of Puerto Rico and Virgin Islands at a cost totaling approximately Four Hundred and Fifty Million Dollars ($450,000,000.00). In the State of Ohio

---

[5]Nothing herein shall limit the rights of the Attorney General (or designated representative) or the Multi-state Working Group to enforce this provision nor shall it limit any other remedies available under state law in the event of deceptive, evasive or dilatory cooperation or assistance.

17

approximately Fifteen Million Three Hundred Forty Four Thousand One Hundred Ninety Four Dollars ($15,344,194) has been spent to refund money to consumers, to purchase competitors' replacement tires for the Recalled Tires and Consumer Advisory Tires and to implement the bounty program. A total of One Hundred Sixty Three Thousand One Hundred and Ninety One (163,191) tires were replaced for consumers in the State of Ohio. Defendant has estimated that the costs of implementing this Restitution program and Defendant's compliance with this Order may be as much as Ten Million Dollars ($10,000,000.00). Provided, however, that this is not a limitation upon Defendant's obligation to make restitution pursuant to this Agreed Entry and Final Judgment Order.

 10.2 Certain consumer complaints regarding the Defined Tires and Consumer Advisory Tires which were filed with the Attorneys' General Offices and/or relevant state agencies have been submitted to Defendant prior to entry of this Agreed Entry and Final Judgment Order or will be submitted to Defendant by no later than December 31, 2001. Within thirty (30) days of receipt of each complaint from the Attorney General, Defendant will either reimburse the consumer or submit such complaint to arbitration. Defendant will review and treat these complaints in conformity with this Order.

 10.3 In addition to the amounts previously paid in restitution (as set forth in paragraph 10.1) and the review of consumer complaints (as set forth in paragraph 10.2), Defendant shall provide additional restitution as described in this Section, as appropriate, to Affected Consumers. For the purposes of this Order, the term "Affected Consumer" shall mean each Consumer who was, in whole or in part, denied a refund or other reimbursement under the Defendant's "Voluntary Safety Tire Recall Reimbursement Program" or Customer Satisfaction Program.

10.4     Within sixty (60) days of entry of the Tennessee Order, Defendant shall
send to each Affected Consumer identified in paragraph 10.3 a letter along with a
reconsideration form from the Bridgestone/Firestone Attorneys General Multi-state
Working Group, in the form attached as Collective Exhibit 2 by United States mail, first
class postage pre-paid.  No other materials may be included in the mailing.  The mailing
shall be sent in envelopes identical to the one attached as Exhibit 3 except Defendant
shall insert the appropriate address information.  The envelope shall include the Clear and
Conspicuous statements "Postmaster: Address Correction Requested"[6] and "Important
Information about Attorneys General Settlement with Bridgestone/Firestone."

10.5     Within seventy-five (75) days of entry of the Tennessee Order, each
member of the Multi-state Compliance Committee shall receive an alphabetical list of
each and every Affected Consumer that Defendant has identified to receive the mailing
described in paragraph 10.4 along with an affidavit stating that all Affected Consumers
under the terms of this Judgment are included on the list.

10.6     The letter and reconsideration form (identified in paragraph 10.4) shall
explain to Affected Consumers that they may return the attached form within sixty (60)
days[7] and request their complaint or request for reimbursement be reviewed again by the
Defendant for possible payment.  The Defendant shall have ninety (90) days following
receipt of a reconsideration form from an Affected Consumer, to decide whether to pay

---

[6]Defendant shall be required to re-send any notice, letter, refund or denial to Affected Consumers
under the Restitution Program set forth in Section 10 which is returned with forwarding address
information.  The time limitations shall apply from the date of the re-sending said notice.

[7]Any time limitation placed on a consumer to return a mailing, form or notice under the
Restitution Program set forth in Section 10 shall be calculated based upon the postmark of the item
received from the Affected Consumer.  Without limiting the scope of this provision, if a Affected
Consumer's notice is postmarked within the time frame it shall be deemed eligible under this part.

19

the request for reimbursement/refund or to notify the Affected Consumer's of his or her right, at no cost, to refer the complaint to an Arbitrator.

10.7    Within ten (10) business days after: (A)  Defendant decides an Affected Consumer should be paid; or (B) the expiration of the ninety (90) days provided in paragraph 10.6 without action by Defendant for good cause, the Defendant shall mail a copy of the letter attached as Collective Exhibit 4 and a refund check to the Affected Consumer via first class, United States mail postage pre-paid. The envelopes used shall be subject to the approval of the Multi-state Compliance Committee and shall be Clearly and Conspicuously marked "Postmaster: Address Correction Requested." No other materials may be included within this mailing. The refund check shall be drawn on an account backed by good and sufficient funds and made in the entire amount due the Affected Consumer. Further, refunds shall not consist of credits or coupons in any form.

10.8    Defendant's review of all consumer complaints and requests for refunds or reimbursements shall be based upon a credible evidence standard. If there is credible evidence that any Affected Consumer essentially meets each requirement of the Voluntary Tire Safety Recall Reimbursement Program or the Customer Satisfaction Program, the Affected Consumer shall be paid. Without otherwise limiting the scope of this provision, an example of credible evidence would be a copy (not an original) of the receipt for Tires purchased, in the absence of evidence that the Affected Consumer or another person has received a refund using the original receipt.

10.9    Within ten (10) business days following Defendant's decision to deny an Affected Consumer's reconsideration request, Defendant shall send the Affected Consumer via first class, United States mail postage pre-paid, the letter and arbitration

request form attached as Collective Exhibit 5 which shall inform the Affected Consumer of the reason for the denial and inform him/her of the option to submit his/her claim to an Arbitrator.  Affected Consumers must mail their election for arbitration within forty-eight (48) days of the mailing of Collective Exhibit 5.  No other materials shall be included with this mailing.

10.10  Prior to entry of the Tennessee Order, the Arbitrator shall be selected jointly by agreement of the Multi-state Executive Committee and the Defendant.  The Arbitrator shall be an individual with offices located within a thirty (30) mile radius of Nashville, Tennessee.

10.11  Once the Arbitrator is selected, Defendant and the Arbitrator shall enter into a contract providing for the method of payment for his/her services and requiring the Arbitrator to comply with the terms of the Tennessee Order, including but not limited to, its auditing provisions and to respond to requests for information by the Attorneys General, to provide to each member of the Multi-state Compliance Committee, within twenty (20) days of a written request, copies of records, documents and reports reasonably necessary to ascertain the performance of the Defendant and the Arbitrator and their obligations under this Judgment as to the Affected Consumers in Ohio and to determine, based on credible evidence, essential compliance with the rules of the "Voluntary Safety Tire Recall Reimbursement Program" and Customer Satisfaction Program and the terms of this Order .

10.12  The Arbitrator shall review each timely request for reconsideration and other information  within a reasonable time, not to exceed sixty (60) days after receipt of the reconsideration form and other information from the Defendant.  The Arbitrator shall

21

make his/her decision based on the written submission but may make a written request for additional information in writing from either the Defendant or the Affected Consumer.

10.13  The Arbitrator shall review timely submissions based on a credible evidence standard, as described in paragraph 10.8.  If the Arbitrator believes the Affected Consumer has essentially complied with each requirement of the Voluntary Safety Tire Recall Reimbursement Program or the Customer Satisfaction Program and the Affected Consumer's request is eligible for reimbursement, the Arbitrator shall decide for the Affected Consumer.  If the Arbitrator believes the Affected Consumer has not essentially complied with each requirement of the Voluntary Safety Tire Recall Reimbursement Program or the Customer Satisfaction Program, the Arbitrator shall decide for the Defendant.

10.14  The Arbitrator shall so notify the Affected Consumer and the Defendant of his or her decision by United States mail first class postage pre-paid within ten (10) business days of the decision.  The envelopes used for these mailings shall be Clearly and Conspicuously marked "Postmaster: Address Correction Requested".  Such notification shall include the amount awarded the specific Consumer.  Defendant shall make any payment awarded by the Arbitrator, subject to the limitations contained in paragraph 10.17, within thirty (30) days of receipt of the Arbitrator's decision regarding each particular Affected Consumer.  When Defendant mails the payment to the Affected Consumer, Defendant shall also send a copy of Exhibit 6.  No other materials other than Exhibit 6 and the check shall be sent in this mailing.

10.15   If the Arbitrator decides for the Defendant, the Arbitrator shall so notify the Affected Consumer and the Defendant of the decision within ten (10) business days by United States mail first class postage pre-paid.  The envelopes used for these mailings shall be Clearly and Conspicuously marked "Postmaster: Address Correction Requested".

10.16   Each decision of the Arbitrator is final and non-appealable by the State or the Defendant.  The decision of the Arbitrator is not appealable by the Affected Consumer.  Both the Multi-state Compliance Committee and Defendant retain the right to object to the process of review by the Arbitrator and seek relief from such process as permitted by applicable law.

10.17   Defendant shall make available to the Arbitrator, at no cost, and upon reasonable notice, all documents, persons and other information reasonably necessary to the Arbitrator to make a decision regarding an Affected Consumer identified pursuant to paragraph 10.2 and 10.3.  In no event shall any Affected Consumer be entitled to reimbursement or refund, including amounts previously paid by the Defendant to such Affected Consumer under the Voluntary Tire Safety Reimbursement Program or Customer Satisfaction Program, of an amount greater than either One Hundred Dollars ($100.00) per Tire for a claim or request for arbitration made under this Section with respect to the "Voluntary Safety Tire Recall Reimbursement Program" or One Hundred and Forty Dollars ($140.00) per Tire for a claim or request for arbitration made under this section with respect to the Customer Satisfaction Program.  Personal injury or property damage claims are not covered in this Agreed Entry and Final Judgment Order.

10.18   If any payment to an Affected Consumer is, or any other Consumer's payment under the earlier Voluntary Safety Tire Recall Reimbursement Program or

23

Customer Satisfaction Program previously was, returned as undeliverable, Defendant shall take or cause reasonable steps to be taken, including skip tracing, to locate the Affected Consumer.  If, thereafter, the Affected Consumer or other Consumer still is not located (or an Affected Consumer's or other Consumer's check is not cashed within six months), any funds payable under this Section or Defendant's previous programs due to such Affected Consumer whose last known address is in the State of Ohio but not deliverable, pursuant to this Judgment, shall be provided to the Ohio Attorney General's Office, Consumer Protection Section, pursuant to R.C. §1345.07(C), who shall attempt to locate such Consumer(s).  The Defendant shall provide whatever available information is requested by the Attorney General's Office to handle the funds.  The Defendant shall deliver the cashier's or certified check and a report to the Attorney General within one (1) year of entry of this Order which details the amount delivered to the Attorney General for treatment as undeliverable monies to affected consumer(s).

10.19   Within sixty (60) days following completion of this Restitution program but in no event later than November 8, 2002, Defendant shall provide written certification to the Multi-state Compliance Committee that all restitution required under this Section due to all eligible Affected Consumers in each state, territory and the District of Columbia has been paid. The report shall also verify and certify compliance with each provision of this Order related to restitution.

Defendant shall also provide:

(A)     A separate alphabetical list of the name, address, and amount of refund provided to each such Affected Consumer as defined herein, for each state, territory and the District of Columbia, together with the total amount of compensation paid to each such state, territory and the District of Columbia; and

24

(B)   A report compiling the total amount of compensation to all consumers in each state, territory and in the District of Columbia and to all states, territories, and the District of Columbia.

10.20   Defendant shall provide to each member of the Multi-state Compliance Committee, at Defendant's expense, a copy of all reports prepared by the Arbitrator regarding Restitution within ten (10) business days of completion of each such report.

10.21   Nothing in this Order shall limit the State's right to request or obtain information from Defendant as otherwise provided in this Judgment or as provided by law, regulation or rule.

10.22   Not later than thirty (30) days after the date that all payments must be made to Affected Consumers herein, Defendant, at its sole expense, shall provide to each member of the Multi-state Compliance Committee a Written Summary (the "Written Summary") describing the process Defendant used:

(A)   to identify Affected Consumers and locate Consumers whose refunds were returned as undeliverable;

(B)   to confirm compliance with the Voluntary Tire Safety Recall Reimbursement Program and Customer Satisfaction Program and restitution was provided as promised by the Defendant; and

(C)   to confirm all required mailings were sent as required by this Section.

10.23   If, after consultation with the Defendant, the State continues to have concerns regarding significant discrepancies in Defendant's compliance with the Restitution process and can establish the discrepancies or concerns to the Court by a preponderance of the evidence, the State shall have the right to seek and obtain from this Court an order requiring Defendant to hire and pay a certified public accountant ("CPA") to verify Defendant's compliance with the Restitution Program set forth herein.  If such request is granted, Defendant shall, at its own expense, hire a CPA that shall be a

25

nationally recognized public accountant firm which has not previously been employed by the Multi-state Compliance Committee states or the Defendant. The State shall be considered a client of the CPA so retained. However, Defendant shall assume all liabilities, responsibilities and costs associated with retaining and employment of the CPA.

10.24  All costs associated with this Restitution Program, including the costs associated with the Arbitrator, shall be paid by the Defendant.

10.25  Defendant and the Multi-State Compliance Committee may agree in writing to alter any time periods or deadlines set forth in this Section.

## 11.  **BRIDGESTONE/FIRESTONE SETTLEMENT FUND**

11.1  Contemporaneous with the entry of the Tennessee Order in the Circuit Court of Davidson County, Tennessee, Defendant shall immediately pay the amount of Forty One Million, Five Hundred Thousand and 00/100 Dollars ($41,500,000.00) to the States. Such payment shall be made by electronic funds transfer, or certified or cashier's check made payable to the "State of Tennessee – Attorney General" and shall be tendered to the State of Tennessee to be distributed to the States pursuant to the terms of this Order.

11.2  Upon payment of the monies described in paragraph 11.1, Defendant shall immediately be fully divested of any interest in, or ownership of, the monies paid and all interest in the monies, and any subsequent interest or income derived therefrom, shall inure entirely to the benefit of the States pursuant to the terms herein.

11.3  Upon receipt of the payment pursuant to paragraph 11.1, the State of Tennessee shall deposit all the funds into an interest-bearing account (hereinafter, the

"Settlement Account") and be deemed custodian of the funds on behalf of the States, and shall remain custodian of such monies until the terms of Sections 12 and 13 infra are satisfied.

11.4     The State of Tennessee, acting through the Tennessee Attorney General, shall be the sole authorized agent on behalf of the States with power to open, disburse and close the Settlement Account.  The entity holding the Settlement Account shall be paid solely from the interest generated by the Settlement Account.

11.5     On the 95th day after the entry of the Tennessee Order, or as soon as practicable thereafter, the State of Tennessee, acting through the Tennessee Attorney General, on behalf of the States, shall disburse funds from the Settlement Account pursuant to Sections 12 and 13 *infra*, and according to the Schedule attached hereto as Exhibit 7.

11.6     Defendant expressly waives any right to challenge any action or inaction by any State with regard to the receipt, retention, disbursement, or other payment made or received from or to the Settlement Account.

## 12. CONSUMER AWARENESS/PUBLIC SERVICE ANNOUNCEMENTS

12.1     Five Million Dollars and 00/100 Dollars ($5,000,000.00) shall be paid from the interest bearing Settlement Account for use by the Bridgestone/Firestone Attorney General Multi-state Working Group to produce, publish and broadcast the consumer education and awareness Public Service Announcements regarding the need for Tire maintenance, general Tire safety and handling characteristics of Tires in a manner to reach consumers across the country.

12.2    On behalf of the participating Attorneys General, the representatives of the
Multi-state Executive Committee shall design and implement the consumer education and
awareness program for the Multi-state Working Group in consultation with Defendant,
where appropriate.

12.3    Any monies not expended under this Section may be distributed at the sole
discretion of the Multi-state Working Group.

### 13.  PAYMENTS TO THE STATES

13.1    Ten Million and 00/100 Dollars ($10,000,000.00) from the interest bearing
Settlement Account described in Section 11 shall be paid to the States for reasonable and
appropriate investigative and case related costs which shall be used as set forth in
paragraph 13.2. This payment shall be for the attorneys' fees and costs incurred by the
Attorneys General in the investigation, prosecution and monitoring for compliance of this
matter.

13.2    From the Settlement Account, the State of Ohio shall receive Thirty
Thousand and 00/100 Dollars ($30,000.00) as payment for Ohio's attorneys' fees and
costs. Said payment shall be used by the Plaintiff as and for attorney's fees and other
costs of investigation and litigation, or to be placed in, or applied to, the consumer
protection enforcement fund, a consumer education, litigation or local consumer aid fund
or revolving fund, or used to defray the costs of the inquiry leading hereto, in each case
as permitted by the laws of the State of Ohio, at the sole discretion of the Attorney
General. Said payment shall be made from the Settlement Account in accordance with
the terms of the Tennessee Order.

13.3    Five Hundred Thousand and 00/100 Dollars ($500,000.00) from the

Settlement Account shall be disbursed to each State as monetary payment for the

Attorney General's Claims set forth in the State's Complaint.

13.4    The State of Ohio's portion of the monetary payment of Twenty Six

Million Five Hundred Thousand and 00/100 Dollars ($26,500,000.00) shall be paid as

follows:

(A)    The Settlement Account shall disburse the sum of Five Hundred Thousand
and 00/100 Dollars ($500,000.00) to the State of Ohio, payable to the
"Ohio Attorney General." Such sums to be used by the Plaintiff as and for
attorney's fees and other costs of investigation and litigation, or to be
placed in, or applied to, the consumer protection enforcement fund, a
consumer education, litigation or local consumer aid fund or revolving
fund, or used to defray the costs of the inquiry leading hereto, in each case
as permitted by the laws of the State of Ohio. Said payment shall be made
from the Settlement Account in accordance with the terms of the
Tennessee Order.

13.5    Upon execution and entry of this Agreed Entry and Final Judgment Order,

the State of Ohio shall be entitled to receive from the Settlement Account any monies to

which it is entitled under this Judgment. However, in no event shall any disbursement

from the Settlement Account be made to any State prior to ninety-five (95) days

following the filing of the Tennessee Order, or as soon as practicable thereafter. In the

event an Agreed Entry and Final Judgment Order has not been executed between a State

and the Defendant by December 31, 2001, the Settlement Account shall upon the passing

of the time specified above distribute that State's share to the other participating states in

an equal share, provided however, that such time limitation shall not apply to a State (A)

that has received an extension of time in writing from the Defendant, (B) where

Defendant has failed or refused to execute a Judgment in substantially the same form as

29

the Tennessee Order, or (C) where a State and Defendant have filed in state court a

Judgment but such Judgment has not been approved by the Court.

## 14. **GENERAL PROVISIONS**

14.1    This Agreed Entry and Final Judgment Order is entered into by the parties

as their own free and voluntary act and with full knowledge and understanding of the

nature of the proceedings and the obligations and duties imposed by this Agreed Entry

and Final Judgment Order.  Each party represents and warrants that no offers, agreements

or inducements of any nature whatsoever (except as expressly set forth herein) have been

made to it by the other party to procure this Agreed Entry and Final Judgment Order.

14.2    Neither Defendant nor anyone acting on its behalf shall state or imply or

cause to be stated or implied that the State of Ohio, the Attorney General, or any other

governmental unit of the State of Ohio has approved, sanctioned, or authorized any

practice, act, advertisement or conduct of the Defendant.

14.3    Nothing in this Order shall require Defendant to waive any applicable

privileges, nor shall the provision by Defendant of access to any of its officers, directors,

employees or agents or to any reports or documents or their creation of any records or

documents pursuant to or in connection with this Order constitute a waiver of any

applicable privileges, including individual privileges or claims of confidentiality.

14.4    This Order may only be enforced by the parties hereto.

14.5    The titles and headers to each section of this Order are for convenience

purposes only and are not intended by the parties to lend meaning to the actual provisions

of the Order.

14.6     This document shall not be construed against the "drafter" because both parties participated in the drafting of this document.

14.7     As used herein, the plural shall refer to the singular and the singular shall refer to the plural and the masculine and the feminine and the neuter shall refer to the other, as the context requires.

14.8     Nothing in this Order shall limit the Attorney General's right to obtain information, documents or testimony from Defendant pursuant to any state or federal law, regulation or rule.

14.9     Nothing in this Order shall be construed to limit the authority of the Attorney General to protect the interests of the State or the people of the State of Ohio except as expressly set forth in paragraphs 14.13 and 16.1.  In addition, this Order shall not bar the State, National Highway Traffic Safety Administration or any other governmental entity from enforcing laws, regulations or rules against Defendant.

14.10     Nothing in this Order constitutes any agreement by the parties concerning the characterization of the amounts paid hereunder for purposes of any proceeding under the Internal Revenue Code or any state tax laws.

14.11     Any failure by any party to this Order to insist upon the strict performance by any other party of any of the provisions of this Order shall not be deemed a waiver of any of the provisions of this Order, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Order and the imposition of any applicable penalties, including but not limited to contempt, civil penalties and/or the payment of reasonable and appropriate attorneys' fees to the State related thereto.

31

14.12  If any clause, provision or section of this Order shall, for any reason, be held illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other clause, provision or section of this Order and this Order shall be construed and enforced as if such illegal, invalid or unenforceable clause, section or other provision had not been contained herein. Provided however, that if Section 16.3 is declared illegal, invalid, or unenforceable for any reason, this entire Agreed Final Judgement shall be null and void at the election of the State.

14.13  Except as otherwise provided herein, this Agreed Entry and Final Judgment Order shall be modified, waived or amended as to any State only by a written instrument signed by or on behalf of the Attorney General of that State and Defendant and then only to the extent set forth in such written waiver, modification or amendment. Defendant understands that in some states, court approval of any modification will be necessary, including but not limited to Florida, Tennessee, Texas and Ohio. To seek a modification of this Agreed Entry and Final Judgment Order, Defendant shall send a written request for modification to the Attorney General of the State or States involved. If more than one State is involved, Defendant also shall send a copy to the Multi-state Compliance Committee representatives which shall use their best efforts to coordinate the States' response to Defendant's request for modification. The States shall respond within ninety (90) days of receiving such request as follows:

    (A)    If any State, or the Attorney General thereof, or any agency of a State charged with the administration of the State's consumer protection statutes, subsequently enacts or promulgates any legislation, rule, or regulation with respect to the subject matter of this Judgment or if the applicable law of any State shall otherwise change so as to be inconsistent and conflict with any provision of this Agreed Entry and Final Judgment Order, the affected State

32

shall agree to modify such provision to the extent necessary to
eliminate such inconsistency and conflict.

(B)    If the federal government subsequently enacts or promulgates any
legislation, rule, or regulation with respect to the subject matter of this
Judgment or if the applicable federal law shall otherwise change so as to
be inconsistent and conflict with any provision of this Agreed Entry and
Final Judgment Order, the affected State shall agree to modify such
provision to the extent necessary to eliminate such inconsistency and
conflict.

(C)    Defendant may serve upon the Attorneys General for the States
constituting the Multi-state Compliance Committee a written request to
modify or vacate any part or all of this Agreed Entry and Final Judgment
Order for good cause, other than as set forth in subparagraphs (A) or (B)
above. Defendant shall serve a copy of the written request upon the
Attorney General for each State which has entered into an Order similar to
this Order. The Attorney General for any State that objects to any change
sought in the written request shall provide a written objection to
Defendant and a representative of each Attorney General for the States
constituting the Multi-state Compliance Committee. No written objection
shall be made unless the Attorney General for the objecting State believes
that the change sought in the Defendant's written request is not in the
public interest and articulates the reasons therefor. Such written objection
must be served upon the Defendant within the ninety (90) days of the
objecting State's receipt of the Defendant's written request. If a State
does not serve upon Defendant its objection to the written request within
the ninety (90) day period, that State shall be deemed conclusively not to
object to the written request and to have waived any objection should
Defendant file an appropriate pleading in this Court with jurisdiction of
this Order. If a State does serve upon Defendant its written objection
within the requisite ninety (90) day period and Defendant files an
appropriate pleading with this Court in the objecting State, Defendant
shall attach the State's written objection to its pleading to modify or to
vacate. Any pleading filed by Defendant shall be served upon the
Attorney General for the State in which it is filed in full conformity with
the notice provisions of the State's rules of civil procedure and local court
rules, provided, however, that if Defendant's written request seeks to
vacate the order generally, it shall not be made prior to the fifth
anniversary of the effective date of this Order and it shall include a
certification under oath that Defendant has committed no material
violation of the Order for a period of not less than five years prior to the
request having been served upon the Multi-state Compliance Committee
and the States. Such a general pleading to vacate shall state with
specificity why the change is in the public interest. If a State objects to
such a general pleading to vacate, it must within ninety (90) days of its

33

receipt of the written request, serve upon Defendant and the Multi-state
Compliance Committee its written objection which shall state that the
request is not in the public interest and articulate the reasons therefor.
Provided, however, in no event shall Defendant seek any modification the
application of which would conflict with the laws of the State(s) in which
the modification is sought.

14.14  Defendant will not participate directly or indirectly in any activity to form
a separate entity or corporation which engages in acts prohibited in this Order or for any
other purpose which would otherwise circumvent any part of this Order or the spirit or
purposes of this Order.

14.15  Within thirty (30) days of the entry of the Tennessee Order, Defendant
shall submit a copy of the Tennessee Order to each of its officers, directors, senior
executives, managers and any third parties, who have responsibility for Tire development
and Tire manufacturing or quality assurance, or the sale, advertisement or promotion of
its Tires, including any advertising agency(ies) retained or used by Defendant to
advertise, promote or offer to sell Defendant's Tires.  Within forty-five (45) days of entry
of the Tennessee Order, Defendant shall provide the Multi-state Compliance Committee
with an affidavit verifying and certifying that all required persons have been supplied
with a copy of the Tennessee Order along with an alphabetical list of the names and
addresses of the persons who were provided a copy of the Order under this provision.

14.16  This Agreed Entry and Final Judgment Order, or any provision thereof,
shall not be an admission by Defendant of the truth of any fact alleged in the Complaint
or that it has engaged in the conduct described in or prohibited by provisions in the
Agreed Entry and Final Judgment Order.  Nothing herein shall restrict the parties' use of
this Order for any lawful purpose or any other purpose expressly permitted by state law.

34

14.17   This Agreed Entry and Final Judgment Order, or any provision thereof, shall not in any way be construed to prevent the Defendant from defending itself or otherwise availing itself of its administrative or civil rights except as set forth herein.

14.18   Time shall be of the essence with respect to each provision of this Agreed Entry and Final Judgment Order that requires action to be taken by either party within a stated time period or upon a specified date.

14.19   This Agreed Entry and Final Judgment Order sets forth the entire agreement between the parties, and there are no representations, agreements, arrangements, or understandings, oral or written, between the parties relating to the subject matter of this Agreed Entry and Final Judgment Order which are not fully expressed herein or attached hereto.

14.20   This Agreed Entry and Final Judgment Order, or any provision thereof, shall not in any way be construed to restrict Defendant from offering general customer satisfaction programs designed to satisfy consumer complaints.

14.21   The footnotes, exhibits and attachments to this Agreed Entry and Final Judgment Order are and shall be considered a part of the Agreed Entry and Final Judgment Order.

14.22   The Attorney General agrees to file and seek approval of this Agreed Entry and Final Judgment Order as soon as reasonably practicable after signing of this Agreed Entry and Final Judgment Order. If such does not occur, Defendant may take steps in a court of competent jurisdiction to have this Judgment entered. Otherwise, this document shall be enforced as a binding contract between the parties.

35

14.23   Nothing in this Order shall be construed to waive any claims of Sovereign Immunity the State may have in any action or proceeding.

## 15.  REPRESENTATIONS AND WARRANTIES

**Authority to bind.**

15.1    The parties represent and warrant that their signatories to this Order have authority to act for and bind the respective parties.

**Good faith.**

15.2    The parties represent and warrant that this Judgment is the result of good faith negotiations.  The parties represent and warrant that they will implement the terms of this Judgment in good faith and in a fair and reasonable manner.[8]

**Notification to Authorized Retailers.**

15.3    Defendant represents and warrants to the State that beginning within sixty (60) days after entry of the Tennessee Order, it will seek to amend all future agreements with its Authorized Retailers to provide that all information described in paragraph 8 of this Order will be provided to Consumers.

**Tire Replacements.**

15.4    Defendant represents and warrants to the State that if Defendant replaces Tires under any Recall, or Customer Satisfaction Program (or term or phrase of similar import), the replacement Tires shall be at a minimum: (a) Tires fit for the intended purpose, and (b) an equivalent or better Tire.

---

[8] The parties retain all remedies available at law to enforce this important provision.

36

**No Silent or Secret Warranties.**

     15.5    Defendant represents and warrants to the State that it will not make or cause to be made any Silent or Secret Warranties. Without limiting the scope of this provision, Defendant represents and warrants to the State that any such policy targeted at a particular problem will be affirmatively, Clearly and Conspicuously announced and disclosed to the public and individual notice shall be provided to persons known to the Defendant to have the particular problem if the problem involves the safety of the Tire or its safe operation. In order to be considered publicly announced, the Defendant will, at a minimum, have posted the information on its web site, and provided it in written form to each Attorney General. Nothing herein shall be construed to restrict Defendant in any way from offering general customer satisfaction programs designed to satisfy complaints.

**Fulfillment of Warranties and Guarantees.**

     15.6    Defendant represents and warrants to the State that it will act in good faith and use its best efforts to fulfill all Warranties, guarantees or customer satisfaction program (or term or phrase of similar import) which it promotes to Consumers, subject to the terms and conditions it discloses to Consumers. Nothing herein shall restrict a private contract or warranty claim by an individual consumer.

**Impractical to Fulfill Warranties and Guarantees.**

     15.7    Defendant represents and warrants to the State that it will not offer any guarantee, customer service satisfaction program or Warranty (or term or phrase of similar import) which under normal conditions is impractical for Defendant to fulfill.

**Withdrawal of Recalled Tires from Trade or Commerce.**

15.8    Defendant represents and warrants it has used its best efforts to withdraw all Recalled Tires from trade or commerce.

15.9    Defendant further acknowledges that it understands that the State expressly relies upon all of the representations and warranties set forth herein, and that if they are false, unfair, deceptive, misleading or inaccurate, the State has the right to move to vacate or set aside this Order and proceed under the Original State's Complaint, if the State so elects.

## 16. RELEASE

16.1    Conditioned upon Defendant making full payment as provided under Section 11 of this Agreed Entry and Final Judgment Order, and subject to the provisions of Sections 16.3, the Defendant and all of its present and former officers, directors, shareholders, partners, any parents or other affiliates, subsidiaries, employees, successors and assigns are released from all civil claims or consumer related administrative claims, to the extent permitted by state law, which the Attorney General could bring or could have brought prior to the date of entry of this Order for conduct falling within the scope of the Multi-state Working Groups Investigation limited to the Defined Tires, the implementation and advertisement of the Voluntary Recall, the Voluntary Safety Tire Recall Program or the Customer Satisfaction Program, including the causes of action alleged in the Attorney General's Complaint and the matters addressed in this Agreed Entry and Final Judgment Order.

16.2     Notwithstanding any term of this Order or the Release herein, specifically reserved and excluded from the scope and terms of the Release as to any entity or person are any and all of the following:

(A)     any criminal liability;

(B)     any private right of action, provided however, that nothing herein shall prevent the Defendant from raising the defense of set-off against a consumer who has received restitution;

(C)     any personal injury, property damage, indemnification or contribution claims by the State, including but not limited to, its employees, agents or volunteers while engaged in State business;

(D)     any environmental or tax liability;

(E)     any vehicle manufacturer; and

(F)     any obligations created under this Order.

16.3     Notwithstanding the provision set forth above, if Defendant, any successor in interest or any other person or entity acting on Defendant's behalf, is successful in avoiding the payment under Section 11 of this Order and such monies revert, in whole or in substantial part, to Defendant or its successor in interest, then at the election of the State, paragraph 16.1 shall be null and void as to all parties covered by the Release and for all conduct covered by the Release.

## 17. MONITORING FOR COMPLIANCE

17.1     For the purposes of determining and securing compliance with this Judgment, duly authorized representatives of the State shall be permitted, upon twenty (20) days prior written notice specifically identifying the information and/or individuals (or a description of the individuals) to which the State requests access, through Defendant's counsel:

    (A)    Reasonable access to inspect and copy[9] any and all relevant and non-privileged records and documents in the possession, custody or control of Defendant, and any other persons acting on its behalf which relate to Defendant's compliance with this Agreed Entry and Final Judgment Order, during normal office hours; and

    (B)    To conduct interviews, depositions or sworn statements of any of the Defendant's directors, officers, employees, or any other persons acting on its behalf, each of whom may have counsel present, relating to Defendant's compliance with this Agreed Entry and Final Judgment Order.

Defendant retains the right to object on the grounds that the request is not relevant to the matters contained herein or obtain confidentiality to the extent permitted by state law or both, to any request by the State under subparagraph "(A)" or "(B)" above within ten (10) business days after its receipt. Any such objection or request for a protective order shall be directed to this Court for ruling with service by mail of the objection upon the authorized representative of the State making the request. Provided, however, that nothing in this Judgment shall be construed to require any officer, director or employee of Defendant, or Defendant itself, to relinquish any Constitutional or other legal right which he or she may have. Defendant shall use its best efforts to obtain the cooperation and compliance of the officer, director or employee with this Order.

    17.2    The Attorneys General agree to consider the cost associated with Defendant's cooperation pursuant to Sections 9 and 17 when making their requests. Additionally, the parties agree to attempt to conduct any sworn statements in geographic proximity to the witnesses' location, or Defendant's principal place of business, whenever possible.

---

[9]The State will only pay reasonable copying costs as set forth or permitted in state law.

40

17.3    Upon default of any monetary relief set forth in Section 11 or if Defendant fails to substantially fulfill and comply with the Restitution Program set forth in this Order, other than in the context of any bankruptcy of Defendant, Defendant agrees to provide testimony under oath for the purposes of determining Defendant's financial status and to locate any assets available to the State for execution and seizure to fulfill the Defendant's restitution/monetary obligations under this Order.  Defendant shall be required to pay all costs associated with court reporting and transcription of such sworn statements.  Defendant also agrees within ten (10) business days to provide written sworn responses to the State's request for documents or other information in the event of default.  The State expressly reserves any and all rights it may have under law, regulation or rule.

**Corporate Compliance.**

17.4    To the extent Defendant has not already done so, within thirty (30) days of entry of the Tennessee Order, Defendant shall institute a formal corporate compliance or ethics program and shall establish an officer post of Chief Compliance Officer.  The Chief Compliance Officer shall have or has the right to request, inspect and authority to act upon the records of any department or division of the Defendant and its related entities to insure the safety of the public.  The Officer shall provide a copy of the Biannual Report of the Chief Compliance Officer to the Defendant's Board of Directors within ten (10) days of its completion.  Defendant shall notify each State Attorney General of the name, address, telephone number and facsimile number and E-mail address of this person within forty-five (45) days of entry of the Tennessee Order.

41

17.5    Each employee of Defendant to whom Defendant is obligated pursuant to paragraph 14.15 of this Order to provide a copy of this Order shall be required to supply to Defendant's Chief Compliance Officer within sixty (60) days of receipt of the Tennessee Order (unless extended for good cause by written agreement of the Multi-state Compliance Committee and the Defendant) a written certification providing that he or she has read the Order and agrees to comply with it.  Said certification shall be retained by the Defendant and available for review by the State upon written request.  Such employees' annual performance evaluation, if any, shall expressly include consideration of his or her compliance with this Order.  No such employee shall be subject to contempt as a result of his or her non-compliance with the provisions of this Order, except as otherwise expressly provided by state law.

**Consumer complaints.**

17.6    To the extent not already done so, within thirty (30) days of entry of the Tennessee Order, Defendant shall appoint an employee to act as a direct contact for State Attorneys' General (or other state or territorial agencies responsible for Consumer complaint handling and mediation) for resolution of Consumer complaints.  Defendant shall notify each State Attorney General of the name, address, telephone and facsimile number of this person no later than forty-five  (45) days of following entry of the Tennessee Order.

**Record Keeping.**

17.7    Defendant shall accurately maintain all "warranty and claims data" provided to NHTSA pursuant to § 3(m)(3)(A) of the Tread Act, 49 U.S.C. § 30166 and/or any new or successor federal provision or requirement and make such data available for

42

review by the Attorney General (or designated representative), upon issuance of a Civil
Investigative Demand/Investigative Subpoena (or other similar State process with
confidentiality protections). Defendant shall have any rights to object to such process that
exist under state law when such process is issued.

**Records of Complaints.**

    17.8    For a period of five (5) years from the date of entry of the Tennessee
Order, Defendant (or Defendant's agent) shall maintain records of:

        (A)    all warranty or safety-related Consumer complaints or inquiries
received by any office or agent of Defendant having responsibility
for responding to or otherwise handling Consumer complaints or
inquiries; and,

        (B)    all responses to and dispositions of such complaints or inquiries by
Defendant (or Defendant's agent).

For the purposes of this provision, "records" shall include all writings, tape or digital
recordings, electronic communications, and all written notes regarding such writings,
tape or digital recordings, and electronic communications. Defendant (or Defendant's
agent) shall maintain such records in an accurate and easy to review format. Defendant
(or Defendant's agent) shall make all such records available at no cost to the Attorney
General and/or NHTSA for inspection and copying during normal business hours upon
reasonable notice and consistent with applicable requirements of state or federal law,
regulation, or rule. Defendant may request the issuance of a Civil Investigative
Demand/Investigative Subpoena (or other similar State process with confidentiality
protections). Defendant shall have any rights to object to such process that exist under
state law when such process is issued.

43

## 18. **FORBEARANCE ON EXECUTION AND DEFAULT**

18.1    Defendant agrees to pay all reasonable attorneys' fees and costs, including but not limited to court costs, associated with any successful collection efforts under this Order by the State or its representative.

18.2    On the day of entry of the Tennessee Order, Defendant shall provide the State with a current address and telephone number where it can be contacted and served with process in the event of default until its monetary obligations under this Order are completed.  Defendant shall further be required to provide any new address, telephone number and facsimile number within five (5) days of relocating to a new address or of obtaining a new telephone/facsimile number.  Service upon the Defendant for the purposes of enforcing the monetary portion of this Order in the event of default shall be effective upon mailing a notice via first class mail and facsimile transmissions.  If there is no response within ten (10) business days, the State may obtain a default judgment or other adverse ruling sought by the State.

18.3    Defendant agrees that if Defendant defaults on any monetary payments or in the event Defendant substantially fails to make restitution payments under Section 10, then the State shall be able to seek any remedies available at law including but not limited to statutory interest.

18.4    In the event Defendant should enter bankruptcy, Defendant agrees not to oppose any motion for the entry of orders granting relief from any stay for the State to proceed to judgment in any civil action.  The State will make no efforts to enforce any monetary judgment herein except as permitted by bankruptcy law.

18.5    In the event of default of any monetary provision of this Order or any

proceeding based upon the monetary amount, Defendant agrees that all statements and

allegations set forth in the State's Complaint shall be deemed to be admitted for the

limited purpose of establishing the nature and the amount of the debt owed to the State.

18.6    The Parties expressly warrant that in evaluating whether to execute this

Agreed Entry and Final Judgment Order the Parties:

(A)    represent that the mutual promises, covenants and obligations set forth
herein constitute a contemporaneous exchange for new value given to
Defendant, within the meaning of 11 U.S.C. § 547(c)(1); and

(B)    agree that these mutual promises, covenants and obligations do, in fact,
constitute such a contemporaneous exchange;

18.7  The Defendant is receiving reasonably equivalent value, so as to take these

promises, covenants and obligations outside the purview of 11 U.S.C. § 548 (a)(1)(B)(i).

18.8    Defendant shall give written notice of any bankruptcy filing to:

Sandra L. Lynskey
Assistant Attorney General
Consumer Protection Section
30 East Broad Street – 25th Floor
Columbus, Ohio 43215
Telephone: 614/644-9618
Facsimile: 614/466-8898

## 19. PENALTIES FOR FAILURE TO COMPLY

19.1    Pursuant to R.C. §1345.07(A)(2), any knowing violation of the terms of an

injunction or order shall be punishable by a civil penalty of not more than Five Thousand

Dollars ($5,000.00) recoverable by the State for each day of violation.  In the event that

the Attorney General must initiate legal action or incur any costs to recover and/or collect

any sums due pursuant to this Agreed Entry and Final Judgment Order or to compel

Defendant to abide by the terms, conditions or orders contained herein, Defendant shall

be liable to the Attorney General for all reasonable attorneys' fees and costs, including but not limited to, court costs associated with any collection efforts.

19.2    The Attorney General (or designated representative) shall have the authority to enforce the injunctive provisions of this Order or to seek sanctions for violations hereof or both.

19.3    As consideration for the injunctive relief agreed to herein, if the Attorney General determines that Defendant has failed to comply with any of the terms of this Order, and if in the Attorney General's sole discretion the failure to comply does not threaten the health or safety of the citizens of the State of Ohio, the Attorney General will notify the Defendant in writing of such failure to comply and Defendant shall then have ten (10) business days from receipt of such written notice to provide a good faith written response to the Attorney General's determination.  The response shall include an affidavit containing, at a minimum:

> (A)    a statement that Defendant is in full compliance with the Order; or
>
> (B)    a detailed explanation of how the alleged violation(s) occurred; and
>
>> (i)    a statement that the alleged breach has been cured and how; or
>>
>> (ii)    a statement that the alleged breach cannot be reasonably cured within ten (10) days from receipt of the notice, but (1) Defendant has begun to take corrective action to cure the breach, (2) Defendant is pursuing such corrective action with due and reasonable diligence, and (3) Defendant has provided the Attorney General with a detailed and reasonable time table for curing the breach.

Nothing herein shall prevent the Attorney General from agreeing in writing to provide the Defendant with additional time beyond the ten (10) business day period to respond to the notice.

19.4    Nothing herein shall be construed to exonerate any contempt or failure to comply with any provision of this Order after the date of its entry, to compromise the authority of the Attorney General to initiate a proceeding for any contempt or other sanctions for failure to comply, or to compromise the authority of the court to punish as contempt any violation of this Order.  Further, nothing in this subsection shall be construed to limit the authority of the Attorney General to protect the interests of the State or the people of the State of Ohio.

19.6    The State represents that it will seek enforcement of the provisions of this Judgment with due regard for fairness.

### 20.  PRIVATE RIGHT OF ACTION

20.1    Nothing in this Order shall affect the right of a Consumer to commence a private cause of action against Defendant.  Further, nothing in this Agreed Entry and Final Judgment Order may prevent Defendant from raising any defenses it may have in any private right of action, including a claim of set-off for any restitution received under this order by a particular consumer.

### 21.  COMPLIANCE WITH ALL LAWS

21.1    Nothing in this Order shall be construed as relieving Defendant of its obligation to comply with all state and federal laws, regulations or rules, nor shall any of the provisions of this Order be deemed to be permission to engage in any acts or practices prohibited by such law, regulation or rule.

### 22.  NOTICES UNDER THIS JUDGMENT

22.1    For five (5) years following execution of this Order, Defendant shall notify the Attorney General, in writing, at least thirty (30) days prior to the effective date

of any proposed changes in its corporate structure that will affect compliance with obligations arising out of this Judgment.

22.2     Except as otherwise provided herein, any notices required to be sent to the State or the Defendant by this Judgment shall be sent by United States mail, certified mail return receipt requested or other nationally recognized courier service that provides for tracking services and identification of the person signing for the document.  The documents shall be sent to the following addresses:

For the State of Ohio:

Sandra L. Lynskey
Assistant Attorney General
Consumer Protection Section
30 East Broad Street – 25th Floor
Columbus, Ohio 43215
Telephone: 614/644-9618
Facsimile: 614/466-8898


For Bridgestone/Firestone, Inc.:

General Counsel
Bridgestone/Firestone, Inc.
50 Century Blvd.
Nashville, Tennessee 37214
Telephone Number: (615) 872-1496
Facsimile Number: (615) 872-1490

## 23. PAYMENT OF COURT COSTS

23.1     All court costs associated with this lawsuit and the entry and approval of this Agreed Entry and Final Judgment Order thereby shall be borne by Defendant.  No costs shall be taxed to the State.  Further, no discretionary costs shall be taxed to the State.

IT IS SO ORDERED, ADJUDGED AND DECREED.


_____ *11/8/01* _____                          *Deborah P. O'Neil*
DATE                                           JUDGE


JOINTLY APPROVED AND
SUBMITTED FOR ENTRY:


FOR THE STATE OF OHIO:

BETTY D. MONTGOMERY
Attorney General


MICHAEL S. ZIEGLER (0042206)
Assistant Attorney General
Consumer Protection Section
30 East Broad Street – 25th Floor
Columbus, Ohio 43215
Telephone: 614/644-9618
Facsimile: 614/466-8898


SANDRA L. LYNSKEY (0067618)
Assistant Attorney General
Consumer Protection Section
30 East Broad Street – 25th Floor
Columbus, Ohio 43215
Telephone: 614/644-9618
Facsimile: 614/466-8898


Attorneys for Plaintiff

FOR DEFENDANT:

GLENN R. HAASE
General Counsel, Corporate & International
Assistant Secretary
Bridgestone/Firestone, Inc.
50 Century Boulevard
Nashville, Tennessee 37214
Telephone: (615) 872-1496
Facsimile: (615) 872-1482
Federal Tax I.D. No.:_____

Douglas M. Mansfield (0063443)
Jones, Day, Reavis & Pogue
1900 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 469-3939
(614) 461-4198 (facsimile)

Attorney for Defendant Bridgestone/Firestone, Inc.

F:consumer/0cases/firestone/pleadings/order

**EXHIBIT 1**

# TIRES INCLUDED IN THE SEPTEMBER 1, 2000
# NHTSA CONSUMER ADVISORY

| Tire Line | Size | Plant Code | Original Installation** |
|---|---|---|---|
| ATX | P205/75R15 | VD | 1991 Chevy Blazer |
| ATX | P225/75R15 | HY | |
| ATX | 30X9.50R15LT | VD | |
| ATX | 31X10.50R15LT | VD | 1991-1994 Nissan Pick up |
| ATX | 32X11.50R15LT | VD | |
| ATX | 31X10.50R16.5LT | VD | |
| ATX | 33X12.5R16.5LT | VD | |
| Firehawk ATX | 27X8.50R14LT | VD | |
| Firehawk ATX | 235/75R15* | VD | |
| Firehawk ATX | 30X9.50R15LT | VD | |
| Firehawk ATX | 31X10.50R15LT | VD | |
| Firehawk ATX | 32X11.50R15LT | VD | |
| Firehawk ATX | 33X12.50R15LT | VD | |
| Firehawk ATX | 265/75R16LT | VD | |
| Firehawk ATX | 255/85R16LT | VD | |
| Firehawk ATX | 31X10.50R16.5LT | VD | |
| Firehawk ATX | 33X12.50R16.5LT | VD | |
| ATX 23 Degree | 31X10.50R15LT | VD | |
| ATX 23 Degree | 33X12.50R16.5LT | VD | |
| Widetrack Radial Baja | P225/75R15 | HY | |
| Widetrack Radial Baja A/S | 32X11.50R15LT | VD | |

EXHIBIT

1

| Tire Line | Size | Plant Code | Original Installation** |
|-----------|------|-----------|------------------------|
| Wilderness AT | P235/70R16 | W2 | 1996-98 Ford F150 |
| Wilderness AT | 33X12.50R16.5LT | VD | |
| Wilderness HT | P255/70R15 | VD | |

\*      Firestone's lists this model as a LTP235/75R15

\*\*     Only some of the listed models had these tires installed as original equipment

49624



EXHIBIT
1

**COLLECTIVE EXHIBIT 2**

STATE OF TENNESSEE

# Office of the Attorney General



**PAUL G. SUMMERS**
ATTORNEY GENERAL AND REPORTER

**ANDY D. BENNETT**
CHIEF DEPUTY ATTORNEY GENERAL

**LUCY HONEY HAYNES**
ASSOCIATE CHIEF DEPUTY
ATTORNEY GENERAL

**MICHAEL E. MOORE**
SOLICITOR GENERAL

425 FIFTH AVENUE NORTH
NASHVILLE, TN 37243-0485

TELEPHONE (615) 741-3491
FACSIMILE (615) 741-2009

(INSERT DATE)

RE:     Attorneys General Settlement with Bridgestone/Firestone, Inc. Restitution Program

Dear Consumer:

On behalf of the Attorneys General of all fifty states, the District of Columbia and the Territories of Puerto Rico and the Virgin Islands, we are writing to inform you about a restitution program that is available to you because of a settlement entered into between the Attorneys General and Bridgestone/Firestone, Inc.  That settlement arose from a 14 month long investigation by the Attorneys General into alleged unfair or deceptive acts or practices by Bridgestone/Firestone with regard to the sale of certain tires.  Bridgestone/Firestone has denied wrongdoing but has entered into a settlement with the States.

You are receiving this letter and attached form because your request has been determined to be eligible for reconsideration under the Attorneys General settlement with Bridgestone/Firestone. You are eligible because in the past you requested a refund or reimbursement from Bridgestone/Firestone under its Voluntary Safety Tire Recall Reimbursement Program ("Recall") or Customer Satisfaction Program which was denied, in whole or in part.  According to the terms of the settlement, consumers who have credible evidence that they replaced or exchanged recalled tires after August 8, 2000, or exchanged recalled tires between January 1, 2000 and August 8, 2000 at a company owned Firestone Tire Service Center or authorized participating Bridgestone/Firestone retailer on a pro-rated basis, are eligible for reimbursement as provided in the Recall.  Similarly, consumers who have credible evidence that they replaced tires on the September 1, 2000 NHTSA consumer advisory list are eligible for reimbursement as provided in the original Customer Satisfaction Program.

**If you would like Bridgestone/Firestone, Inc. to reconsider, for any reason, your previous request for reimbursement/refund, simply complete and return the enclosed form by no later than (insert date: 63 days from the postmark on this envelope).**  Since your materials were returned to you when your request was denied, you will need to provide that information and any additional information, to support your request. The form must be mailed directly to **(insert in BOLD the address.)**  Bridgestone/Firestone will review your request and

EXHIBIT
2

notify you in writing of its decision.  If Bridgestone/Firestone denies your request, you will be notified in writing of your right to elect, at no cost, to you to submit your request to an independent arbitrator who will review your request again.  The arbitrator may request additional information from either party or just make a decision.

**You should be aware, however, that reconsideration of your request under the rules of the Recall or Customer Satisfaction Program may still result in its denial.**  For example, the following requests, among others, are not eligible for reimbursement: (1) requests for purchase of replacement tires prior to January 1, 2000; (2) requests for replacement of tires not recalled on August 9, 2000 or on the NHTSA Consumer Advisory; (3) requests for recovery of costs not covered in the Recall or Customer Satisfaction Program; (4) requests for recovery of costs above the $100 or $140 per tire established limit; and (5) requests for purchase of replacement tires between January 1, 2000 and August 8, 2000 from other than a competitive retailer and not on a pro-rata, customer satisfaction basis.

The Attorneys General are pleased to offer you this opportunity to have your complaint or request for a refund reconsidered, if you so elect.  We will continue to work to protect the consumers of our respective states.

**ON BEHALF OF THE ATTORNEYS GENERAL**
**IN THE BRIDGESTONE/FIRESTONE WORKING GROUP**

PAUL G. SUMMERS
Attorney General


Enclosure:  Reconsideration Form                                    49733



**DIRECT QUESTIONS ABOUT THE SETTLEMENT TO THE FOLLOWING PERSONS:**

Alabama - Attorney General Bill Pryor - 800-392-5658
Alaska - Attorney General Bruce Botelho - contact  Clyde "Ed" Sniffen, 907-269-5100
Arizona - Attorney General Janet Napolitano - 602-542-5763; outside Phoenix- 800-352-8431
Arkansas - Attorney General Mark Pryor - 501-682-234, toll free - 800-482-8982
California - Attorney General Bill Lockyer - 800-952-5225
Colorado - Attorney General Ken Salazar - 800-222-4444
Connecticut - Attorney General Richard Blumenthal - 860-808-5400
Delaware - Attorney General Jane Brady - 302-577-8600
District of Columbia - Corporation Counsel Robert R. Rigsby - 202-442-9828
Florida - Attorney General Robert Butterworth - 850-414-3600
Georgia - Office of Consumer Affairs Barry W. Reid - 404-651-8600
Hawaii - Consumer Protector Stephen Levins - 808-586-2636
Idaho - Attorney General Alan Lance - 800-432-3545
Illinois - Attorney General Jim Ryan, Consumer Fraud Bureau - 312-814-3000
Indiana - Attorney General Steve Carter - 317-232-6330
Iowa - Attorney General Tom Miller - 515-281-5926
Kansas - Attorney General Carla Stovall - 785-296-3751
Kentucky - Attorney General Albert B. Chandler III - 502-696-5389
Louisiana - Attorney General Richard P. Ieyoub - 225-342-7013
Maine - Attorney General Steven Rowe - 207-626-8800
Maryland -  Attorney General J. Joseph Curran, Jr. - 410-528-8662
Massachusetts  -  Attorney General Thomas F. Reilly - 617-727-8400
Michigan - Attorney General Jennifer M. Granholm - 517-335-0855
Minnesota--Attorney General Mike Hatch: 651-296-3353, 800-657-3787; TYY: 651-297-7206,
800-366-4812
Mississippi -  Attorney General Mike Moore - 601-359-4230
Missouri - Jeremiah W. (Jay) Nixon - 800-392-8222
Montana - Montana Office of Consumer Protection Cort Jensen - 406-444-5439
Nebraska - Attorney General Don Stenberg - 402-471-2682
Nevada - Attorney General Frankie Sue Del Papa - 702-486-3786
New Hampshire - Consumer Protection Bureau - 603-271-3641
New Jersey - Attorney General John J. Farmer, Jr. - 973-504-6361
New Mexico - Attorney General Patricia Madrid - 800-678-1508
New York - Attorney General Eliot Spitzer - 800-771-7755
North Carolina - Attorney General Roy Cooper - 919-716-6000
North Dakota - Attorney General Wayne Stenehjem - 800-472-2600
Ohio - Attorney General Betty D. Montgomery - 614-466-4986
Oklahoma-Attorney General W.A. Drew Edmondson- 405-522-1015
Oregon- Attorney General Hardy Myers- (Portland) 503 229-5576; outside Portland (toll free) 877-877-9392
Pennsylvania - Attorney General Mike Fisher - 800-441-2555
Puerto Rico - Deputy Attorney General Irma Rodríguez-Justiniano - 787-723-7555
Rhode Island - Attorney General Sheldon Whitehouse - 401- 274-2225
South Carolina - Attorney General Charles M. Condon - 803- 734-3680
South Dakota - Mark Barnett - 800 - 300-1986
Tennessee - David McCollum, TN Division of Consumer Affairs - 800-342-8385
Texas - Attorney General John Cornyn - 800-252-8011
Utah - Attorney General Mark Shurtleff - 801-538-9600.
Vermont - Attorney General William H. Sorrell - 802-656-3183
Virgin Islands - Office of the Solicitor General - 340-774-5666
Virginia - Office of the Attorney General - 804-786-2115
Washington State-Attorney General, Christine O. Gregoire - 800-551-4636
West Virginia- Attorney General Darrell V. McGraw, Jr. - 304-558-8986
Wisconsin - Attorney General James Doyle - 608-266-1852
Wyoming - Attorney General Hoke MacMillan - 307-777-7874



EXHIBIT

2

# ATTORNEYS GENERAL SETTLEMENT WITH BRIDGESTONE/FIRESTONE, INC. REQUEST FOR RECONSIDERATION FORM

**Return Request for Reconsideration Form to:**

**(INSERT ADDRESS)**

**IMPORTANT NOTE: THIS FORM MUST BE RETURNED TO THE ABOVE ADDRESS BY NO LATER THAN (insert date: 63 days from the postmark on the envelope) TO BE ELIGIBLE FOR RECONSIDERATION AND A POSSIBLE REFUND.**

If, after reviewing the letter accompanying this form, you would like to request reconsideration of your previous refund or reimbursement request to Bridgestone/Firestone, Inc.,  please complete this form and <u>provide copies of all information you want considered</u> when your request is reviewed.

Please type or clearly print your responses to the following items:

Name: _____

Address: _____

City, State: _____

Zip Code: _____

Daytime telephone number: _____

Evening telephone number: _____

_____     _____
Signature                                                    Date

You should initially hear from Bridgestone/Firestone in approximately 15 weeks. PLEASE KEEP A COPY OF THIS REQUEST FOR RECONSIDERATION FORM, COVER LETTER AND ATTACHMENTS FOR YOUR RECORDS.

49734

