UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

|  |  |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | 8:17-cv-00838-JLS-JDE<br><br>Related Cases:<br>8:17-cv-01365-JLS-JDE<br>8:17-cv-02208-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT KIA MOTORS AMERICA, INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS COMPLAINT**<br><br>Date: November 16, 2018<br>Time: 2:30 p.m.<br>Crtm.: 10A, 10th Floor<br><br>The Hon. Josephine L. Staton<br><br>Trial Date: Not currently set |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

LEGAL STANDARD................................................................................2

ARGUMENT ............................................................................................3

   I.   Plaintiffs Consumer Protection Claims Are Properly Pled .............................3

     A.   Plaintiffs' Fraudulent Omission Claims Satisfy Rule 9(b) .......................3

     B.   Plaintiffs Allege That Kia Had A Duty to Disclose The Defect...............4

     C.   Plaintiffs Adequately Allege Kia's Knowledge of the Defect..................5

   II.   Plaintiffs Have Stated A Claim For Breach of Express Warranty...............8

     A.   The Terms of The Warranty.............................................8

     B.   The Vehicles Are Covered by Kia's Warranty .........................................9

     C.   Allegations of Breach.............................................9

   III.   Plaintiffs Have Stated Claims For Breach Of The Implied Warranty of
Merchantability ................................................................10

   IV.   Plaintiffs Have Stated a Claim For Breach of the Magnuson-Moss
Warranty Act................................................................12

   V.   Plaintiffs Stanczak, Centko and Lazar Have Stated Claims Under the Song-
Beverly Act ................................................................13

   VI.   The Good Faith and Fair Dealing Claims of Plaintiffs Stanczak, Centko
and Lazar Should Not Be Dismissed ................................................................15

   VII.   It is Premature To Dismiss Plaintiffs' Unjust Enrichment Claims. ..........16

i

VIII.    Plaintiffs Have Standing to Assert Claims for Other Vehicle Models with

the Same Engine ...................................................................................17

CONCLUSION ..........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afzal v. BMW of N. Am., LLC,*
   No. 2:15-cv-08009, 2017 WL 3207232 (D.N.J. July 27, 2017)................7, 9, 16

*Arteaga v. Carmax Auto Superstores West Coast, Inc.,*
   No. 14-1888, 2014 WL 3505527 (C.D. Cal. July 11, 2014) ............................10

*Asghari v. Volkswagen Group of America,*
   42 F. Supp. 3d (C.D. Cal. 2013) .........................................................10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................2

*Becerra v. GM LLC,*
   241 F. Supp. 3d 1094 (S.D. Cal. 2017)...............................................17

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).............................................................................2

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ............................................................3

*Brazil v. Dole Food Co.,*
   No.: 12-cv-01831, 2013 WL 5312418 (N.D. Cal. Sep. 23, 2013) ....................19

*Brown v. Hain Celestial Grp., Inc.,*
   913 F. Supp. 2d 881 (N.D. Cal. 2012)................................................19

*Cardenas v. NBTY, Inc.,*
   870 F. Supp. 2d 984 (E.D. Cal. 2012) ...............................................19

*Cholakyan v. Mercedes-Benz USA,*
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) .......................................10, 20

*Cleary v. Philip Morris Inc.,*
   656 F.3d 511 (7th Cir. 2011) ............................................................17

*Clemens v. DaimerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) .................................................................13

*Cohen v. Am Gen. Corp.*,
    264 F. Supp. 2d 616 (N.D. Ill. 2003) ......................................................13

*Continental Casualty Company v. Enodis Corp.*,
    417 Fed. Appx. 668 (9th Cir. 2011) .........................................................17

*Daniel v. Ford Motor Co.*,
    806 F. 3d 1217 (9th Cir. 2015) ................................................................14

*Davidson v. Apple, Inc.*,
    No. 16-4942, 2018 WL 2325426 (N.D. Cal. May 8, 2018) .......................19

*Decker v. Mazda Motor of Am., Inc.*,
    No. 11-0873, 2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) .......................7

*Doyle v. Chrysler Grp. LLC*,
    No. SACV 13-00620 JVS (ANx), 2014 WL 1910628 (C.D. Cal.
    Jan. 29, 2014) .............................................................................................3

*Falco v. Nissan N. Am., Inc.*,
    No. 13-00686 DDP, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ..........2, 7, 11

*GMAC Commercial Mortg. Corp. v. Gleichman*,
    84 F. Supp. 2d 127 (D. Me. 1999) ...........................................................17

*Hanley v. Trendway Corp.*,
    No. 94 C 5406, 1995 WL 103748 (N.D. Ill. Mar. 6, 1995) .......................17

*Kaplan v. Shure Bros.*,
    153 F.3d 413 (7th Cir. 1998) ...................................................................12

*Kearney v. Hyundai Motor Am.*,
    No. SACV09-1298-JST MLGX, 2010 WL 8251077, at *6 (C.D.
    Cal. Dec. 17, 2010) ....................................................................................5

*Kransco v. Am. Empire Surplus Lines Ins. Co.*,
    23 Cal. 4th 390, 97 Cal. Rptr. 2d 151, 2 P.3d 1 (Cal. 2000) ...................15

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
    751 F. Supp. 2d 183 (D. Me. 2010) .........................................................16

iv

*Lima v. Gateway, Inc.*,
　710 F. Supp. 2d 1000 (C.D. Cal. 2010) ................................................9

*Lohr v. Nissan N. Am., Inc.*,
　No. C16-1023RSM, 2017 WL 1037555 (W.D. Wash. Mar. 17,
　2017) ..............................................................................................18

*Longest v. Green Tree Servicing LLC*,
　74 F. Supp. 3d 1289 (C.D. Cal. 2015) ..............................................16

*Lopez v. Smith*,
　203 F.3d 1122 (9th Cir. 2000) ..........................................................20

*MacDonald v. Ford Motor Co.*,
　37 F. Supp. 3d 1087 (N.D. Cal. Mar. 31, 2014) ............................3, 7

*Mexia v. Rinker Boat Co.*,
　174 Cal. App. 4th 1297 (2009) ..........................................................14

*Moss v. U.S. Secret Serv.*,
　572 F.3d 962 (9th Cir. 2009) ..............................................................2

*In re MyFord Touch Consumer Litig.*,
　46 F. Supp. 3d 936 (N.D. Cal. 2014) ..................................................7

*Philips v. Ford Motor Co.*,
　No. 14-cv-02989, 2015 WL 4111448 (N.D. Cal. July 7, 2015) ...........7

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab.
　Litig.*,
　880 F. Supp. 2d 801 (S.D. Ohio 2012) ..............................................13

*Roberts v. Electrolux Home Prods., Inc.*,
　No. 12-1644, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) ...............11

*Rollolazo v. BMW of N. Am., LLC*,
　No. CV 16-00966 BRO, 2017 WL 1536456 (C.D. Cal. Feb. 3,
　2017) ..........................................................................................12, 13

*Romero v. HP, Inc.*,
　No. 16-CV-05415-LHK, 2017 WL 386237 (N.D. Cal. Jan. 27,
　2017) ..............................................................................................18

*Rothe v. Maloney Cadillac, Inc.*,
     119 Ill. 2d 288, 518 N.E.2d 1028, 116 Ill. Dec. 207 (Ill. 1988) ........................11

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*,
     155 F. Supp. 3d 772 (N.D. Ill. 2016) ...........................................................11, 12

*In re: Shop-Vac Mktg. & Sales Practices Litig.*,
     964 F. Supp. 2d 355 (M.D. Pa. 2013) .................................................................12

*Sims v. Kia Motors Am., Inc.*,
     No. SACV131791AGDFMX, 2014 WL 12558249 (C.D. Cal. Mar.
     31, 2014) ..............................................................................................................20

*Szajna v. General Motors Corp.*,
     115 Ill. 2d 294 (Ill. 1987) ...................................................................................13

*Velasco v. Chrysler Grp. LLC*,
     No. 13-08080 DDP VBKX, 2014 WL 4187796, at *5 (C.D. Cal.
     Aug. 22, 2014) ........................................................................................................3

*Vess v. Ciba-Geigy Corp. USA*,
     317 F.3d 1097 (9th Cir. 2003) ...............................................................................2

*Von Slomski v. Hain Celestial Grp., Inc.*,
     No. SACV131757AGANX, 2014 WL 12771116 (C.D. Cal. June
     10, 2014) .........................................................................................................19, 20

*Weydert Homes, Inc. v. Kammes*,
     917 N.E.2d 64 (Ill. App. Ct. 2009) .....................................................................17

*Wilson v. Hewlett-Packard Co.*,
     668 F.3d 1136 (9th Cir. 2012) .......................................................................4, 6, 7

**Statutes**

Magnuson-Moss Warranty Act ...................................................................................12

Song-Beverly Act .......................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 8(d) ..............................................................................................16, 17

vi

Fed. R. Civ. P. 9(b) ........................................................................................2, 3

## **PRELIMINARY STATEMENT**

Plaintiffs are owners or lessees of certain 2011-2016 model year Kia Optima, Sorrento, and Sportage vehicles ("Class Vehicles") sold with gasoline direct injection ("GDI") engines. The Class Vehicles contain a defect that restricts or cuts off oil flow throughout the engine. This results in fracturing and damage to the connecting rod bearings, which, in turn, causes the oil flow to further diminish as metal debris from the connecting rod bearings begins to accumulate in the oil. This accumulation can result in sudden and catastrophic engine failure, which can happen at any time and under any condition. (ECF No. 74 (hereinafter cited as "¶") ¶¶ 83-96.)

The failure of a connecting rod bearing is a clear safety hazard. Both the National Highway Traffic Safety Administration ("NHTSA") and Hyundai Motor Company ("Hyundai"), Kia's sister company, have acknowledged that fact. Hyundai stated that its 2015 recall of vehicles with the same defect in the same GDI engines was for safety issues: "If the vehicle continues to be driven with a worn connecting rod bearing, the bearing can fail, and the vehicle could stall while in motion." (¶¶ 95, 98.)

Kia has long been aware of this defect. As early as 2011, complaints regarding this same issue were filed with NHTSA concerning the same GDI engines sold by Hyundai. (¶ 107.) Complaints about Kia vehicles with the GDI engines were also made to NHTSA as early as 2013. (¶ 118.)

Despite its long-held knowledge about the defect, Kia did not advise consumers about the risks of engine failure and only initiated a recall, which did not include all the Class Vehicles, after Plaintiffs had sent a letter demanding one under California law. (¶¶ 154-55.)

1    Kia has moved to dismiss Plaintiffs' claims in this litigation. (ECF No. 86,

2    ("Def. Mem.").) For the reasons stated below, Kia's motion to dismiss should be

3    denied.

4    ## LEGAL STANDARD

5    In evaluating Defendant's motion to dismiss, the Court must accept

6    Plaintiffs' "well-pleaded factual allegations" as true and draw all reasonable

7    inferences in the Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

8    While the complaint need not contain "detailed factual allegations," *Bell Atlantic*

9    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the allegations must "state a claim to

10   relief that is plausible on its face." *Id*. at 570. A claim "has facial plausibility when

11   the plaintiff pleads factual content that allows the court to draw the reasonable

12   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

13   at 678. That is, "the non-conclusory factual content, and reasonable inferences

14   from that content, must be plausibly suggestive of a claim entitling the plaintiff to

15   relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (internal

16   quotation marks omitted).

17   To the extent that Plaintiffs' claims are grounded in fraud, Rule 9(b) requires

18   these claims to be pleaded with particularity. The standard requires the plaintiff set

19   forth "the who, what, when, where and how of the misconduct charged." *Vess v.*

20   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation

21   marks omitted). Claims premised on omission or concealment, however, "can

22   succeed without the same level of specificity required by a normal fraud claim."

23   *Falco v. Nissan N. Am., Inc.*, No. 13-00686 DDP (MANx), 2013 WL 5575065, at

24   *6-7 (C.D. Cal. Oct. 10, 2013). A pleading is sufficient under Rule 9(b) if it

25   identifies the circumstances constituting fraud so that a defendant can prepare an

26

27

adequate answer from the allegations. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

## ARGUMENT

### I. Plaintiffs Consumer Protection Claims Are Properly Pled

#### A. *Plaintiffs' Fraudulent Omission Claims Satisfy Rule 9(b)*

Defendant contends that Plaintiffs "rely on conclusory allegations that KMA failed to disclose an alleged defect . . . but do not allege 'they *reviewed* or were *exposed*' to KMA advertisements or misrepresentations." (Def. Mem. at 10 (emphasis in original).[1]) This is simply not true. All Plaintiffs purchased their Class Vehicles directly from Kia authorized dealerships. (¶¶ 18, 31, 47, 58.) Numerous courts within the Ninth Circuit have summarized the Rule 9(b) standard for omissions claims as follows:

> Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim. In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles.

*MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. Mar. 31, 2014); *see also Velasco v. Chrysler Grp. LLC*, No. CV 13–08080 DDP VBKX, 2014 WL 4187796, at *5 (C.D. Cal. Aug. 22, 2014) ("Plaintiff has identified the 'who' (Chrysler); the 'what' (knowing about yet failing to disclose to customers, at the point of sale or otherwise, that the TIPM 7 installed in Plaintiffs' vehicles was defective and posed a safety hazard); the 'when' (from the time of the sale of the

---

[1] Kia also criticizes the complaint because plaintiffs are not specific about their exposure to Kia's omissions. (Def. Mem. at 10.) However, "the question of where a material omission was not made ventures into a metaphysical realm not amenable to legal analysis." *Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS (ANx), 2014 WL 1910628, at *4 (C.D. Cal. Jan. 29, 2014).

3

first Class Vehicle until the present day); and the 'where' (the various channels through which Chrysler sold the vehicles, including the authorized dealers where Plaintiffs' [*sic*] purchased their vehicles).")

Here, the "who" is Defendant. (¶¶ 1-2.) The "what" is the dangerous defect in the GDI Engines. (¶¶ 2-3.) The "when" is from the time of the sale of the first Class Vehicle to the present day. (¶¶ 97-118.) The "where" is the various channels through which Defendant sold its vehicles.[2] (¶¶ 18, 31, 47, 58.)

### B.     *Plaintiffs Allege That Kia Had A Duty to Disclose The Defect*

Defendant asserts that Plaintiffs have failed to allege that Defendant had a duty to disclose the dangerous safety defect. (Def. Mem. at 11.) Defendant cites *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. 2012) in support of their argument. However, *Wilson* itself states that a duty to disclose attaches when Plaintiffs plausibly allege a safety issue. *Id.* at 1142 ("California federal courts have generally interpreted *Daugherty* as holding that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation **or a safety issue**.") (emphasis added) (collecting cases).

Thus, the only question the Court need to consider is whether Plaintiffs have adequately alleged a safety issue. In the second paragraph of the Complaint, Plaintiffs' allege that the defect "will cause the Class Vehicles to experience vehicle stalling during operation and catastrophic engine failure." (¶ 2.) Both the

---

[2] Defendant seems to suggest that the Class Vehicles were sold to Plaintiffs without any advertising materials that Defendant could have, but failed to, disclose the defect through. Although this is absurd on its face, in an abundance of caution and to avoid wasting the Court's resources with an amendment and further briefing, signed declarations from all Plaintiffs are attached attesting to reviewing the Class Vehicles' window stickers prior to purchase. *See* Declarations of Chris Stanczak, Rose Creps, Cara Centko and Jenn Lazar, and Andrea Smolek attached hereto as Exhibits 1-4.

4

California Department of Motor Vehicles and NHTSA agree that engine failure during vehicle operation is dangerous and increases the risk of a crash. (¶¶ 94-95.) Moreover, as discussed in more detail below, Defendant acknowledged that the *same engine* in prior makes and models of Hyundai vehicles was defective and issued a safety recall. (¶¶ 102.) Finally, the fifty pages of NHTSA complaints reproduced in the Complaint discuss how many Class Vehicle owners feared for their lives when their Class Vehicles experienced catastrophic engine failure on the highway. (¶ 117.) As this Court has previously held, "[b]ecause manufacturers like Hyundai have a duty to disclose facts concerning 'safety issues,' and defective air bags certainly concern a safety issue, Plaintiffs have sufficiently alleged a CLRA claim based on Hyundai's fraudulent omissions." *Kearney v. Hyundai Motor Am.*, No. SACV09-1298-JST MLGX, 2010 WL 8251077, at *6 (C.D. Cal. Dec. 17, 2010) (Staton, J.). The same is true here.

### C.   *Plaintiffs Adequately Allege Kia's Knowledge of the Defect*

Kia's next argument is that Plaintiffs have failed to allege that Kia had knowledge of the defect at the time Plaintiffs purchased their Class Vehicles. (Def. Mem. at 11.) This is simply not true. Consumers began complaining to NHTSA about the engine defect in October of 2011, immediately after the Class Vehicles were sold to the public. (¶ 107, 115.) Then, just a few months later, Kia issued an internal technical service bulletin ("TSB") to their authorized dealerships regarding the defect in the Class Vehicles. (¶ 114.) Plaintiffs also allege in detail that Kia knew of the defect through customer complaints, warranty claims and pre-sale testing. (¶¶ 107-125.)

In addition, Plaintiffs allege that the Class Vehicles – manufactured, marketed, and sold by Defendant – use the Theta 2.0 or 2.4 liter GDI Engines. (¶ 1.) The same GDI Engines were also used by Kia's sister company, Hyundai, in its

model year 2011-2012 Hyundai Sonata vehicles. (¶ 97.) Hyundai Motor Company owns 33.8% of Kia Motor Corporation's stock and, as a result, the two companies regularly communicate about parts common between their vehicles and suspected defects in those vehicles. (¶ 118.) Indeed, Kia and Hyundai regularly communicated about Hyundai's recall of the Hyundai Sonata vehicles with the same engines and same defect. (¶¶ 102.) After warranty claims were made on the issue, Hyundai recalled the 2011-12 Sonatas with GDI engines on September 10, 2015, because metal debris from the manufacturing process was not completely removed from the engine, causing restricted oil flow and eventually catastrophic engine failure. (¶ 98.) This is the ***exact defect*** that Plaintiffs allege here. (¶ 2.) Defendant's attempt to gloss over these allegations because they "concerned different models and model years" (Def. Mem. at 12) fails because the relevant defective part is the same.

Defendant again cites *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) to support their argument. (Def. Mem. at 10.) But the facts of Wilson were very different:

> Plaintiffs …reference neither the specific defect alleged in the complaint nor HP's knowledge of that defect. The allegation that HP, as the manufacturer, had "access to the aggregate information and data regarding the risk of overheating" is speculative and does not suggest how any tests or information could have alerted HP to the defect.

*Id.* at 1146-47. Indeed, within the *Wilson* opinion itself, the Ninth Circuit observed that the plaintiffs had properly pled knowledge in a prior case against Hyundai where they alleged "Since 1999, Defendant has constantly tracked the National Highway Traffic Safety Administration . . . database to track reports of defective Sonata sub-frames. From this source, Defendant knew that its 1999–2004 Sonatas

were experiencing unusually high levels of sub-frame deterioration, steering control arm separation, steering loss, and highway accidents." 668 F.3d at 1146 (citing *Cirulli v. Hyundai Motor Co.*, No. SACV 08–0854 AG (MLGx), 2009 WL 5788762, at *3–4 (C.D. Cal. June 12, 2009) (internal alterations omitted)).

Here, Plaintiffs allege: the same defective engines were used in Hyundai vehicles (and Hyundai owns a significant percentage of KMC), (¶¶ 97, 118); Kia issued a TSB in 2012 regarding the defect, (¶ 114); and after repeated customer complaints, Defendant issued an inadequate recall for those vehicles, (¶ 102). Plaintiffs also allege that Defendant issued the Technical Service Bulletin in 2012 – just months after the Class Vehicles were sold to the public. The timing of the TSB gives rise to an inference that Kia knew about the defect earlier. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) (finding "the TSBs and updates were proceeded by an accretion of knowledge by Ford"); *Falco v. Nissan N. Am., Inc.*, No. 13–00686, 2013 WL 5575065, at *6-7 (C.D. Cal. Oct. 10, 2013) (stating that, where defendant issued the first of several TSBs in July 2007 and further did a redesign in 2006 or 2007, that "permit[s] plausible inferences that [defendant] was aware of the defect at the time they sold the vehicles in 2005 and 2006"); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) (identifying "a number of facts" that support plaintiffs' knowledge allegations, including internal data, NHTSA complaints, and TSBs); *Decker v. Mazda Motor of Am., Inc.*, No. 11-0873, 2011 WL 5101705, at *5 (C.D. Cal. Oct. 24, 2011) (finding allegations of internal data and TSBs issued within one of year of purchase sufficient to plead knowledge); *see also Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2015 WL 4111448, at *9 (N.D. Cal. July 7, 2015) (same). *See also Afzal v. BMW of N. Am., LLC*, No. 2:15-cv-08009, 2017 WL 3207232, at *6 (D.N.J. July 27, 2017) (pre-sale knowledge satisfied where

plaintiffs alleged BMW introduced a defective engine in 2005 and then incorporated the same defective engine specifications in the class vehicles, but failed to disclose the defect prior to the plaintiffs' purchases in 2013 and 2014).

In addition, Kia's decision to issue an inadequate, partial recall of the Class Vehicles – at the same time many of the Class Vehicles at issue here began to be sold – simply supplies another persuasive indication of knowledge. Indeed, it seems highly unlikely that Defendant was not discussing halting the sale of the 2015-16 Class Vehicles with the same defective GDI Engines as the one Defendant was actively investigating for recall.

At this early stage, without the benefit of any fact discovery, Plaintiffs have adequately alleged Kia's knowledge of the defect.

## II.     Plaintiffs Have Stated A Claim For Breach of Express Warranty

### A. *The Terms of The Warranty*

Kia argues that Plaintiffs have not alleged the terms of the express warranties. (Def. Mem. at 13.) Defendant, however, proceeds to quote Plaintiffs' complaint, which describes the exact terms of the express warranties Plaintiffs allege have been breached. (*Id.*) Plaintiffs describe two warranties: the "New Vehicle Limited Warranty" and the "Powertrain Warranty." Plaintiffs describe the terms of each: 10 years and 100,000 miles for the Powertrain warranty and 5 years and 60,000 for the New Vehicle Warranty. (¶¶ 126-132.) Plaintiffs even include an ad in which Kia touts its "10-year/100,000 mile limited powertrain warranty and 5-year/60,000-mile limited basic warranty." (¶ 132.) Further, with respect to the Powertrain Warranty, Plaintiffs also quote the KMA Warranty and Consumer Information Manual, which specifically lists the components covered by the powertrain warranty. (¶ 128.)

Kia argues that Plaintiffs' express warranty claims fail because Plaintiffs did not include the portion of the KMA Warranty and Consumer Information Manual warranty referring to certain unspecified "other terms and conditions" and the passage which advises consumers to read the manual to see what repairs and replacements are not covered by the warranty. (Def Mem. 13.) Kia does not explain how this language would have any impact on Plaintiffs' warranty claims, especially at the pleading stage. Plaintiffs are not required to prospectively address Kia's potential defenses in their complaint. *See Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1006 (C.D. Cal. 2010) ("Plaintiff thus has no obligation to allege facts related to Gateway's proposed warranty-based defenses.").

### B. The Vehicles Are Covered by Kia's Warranty

Next, Kia argues that Plaintiffs have failed to allege that their cars were under warranty because they have not alleged that they followed Kia's maintenance instructions. (Def. Mem. at 14.)

Plaintiffs have each alleged that they followed Kia's maintenance instructions. (¶ 26 (Stanczak alleges he "adhered to Kia's recommended maintenance intervals."); ¶ 38 (Creps, same allegation); ¶ 50 (Centko and Lazar, same allegation); ¶ 60 (Smolek, produced records showing compliance).) At the pleading stage, Plaintiffs' allegations are sufficient and Plaintiffs are not required to offer proof of their compliance with Kia's maintenance requirements. *See Lima*, 710 F. Supp. 2d at 1006 (holding a plaintiff is not required to plead that computer broke during warranty period); *Afzal*, 2016 WL 6126913, at *6 ("[W]hether Plaintiff[s] fulfilled [their] responsibilities under the warranty is a quintessential fact question. Dismissal at this stage would be premature.").

### C. Allegations of Breach

9

Kia next argues that "Plaintiffs have not alleged any facts to demonstrate KMA breached an express warranty." (Def. Mem. at 15.) However, Plaintiffs have pleaded Kia's breaches of warranty in great detail. (¶ 24 (Mr. Stanczak asked Kia to cover repairs under warranty and Kia refused); ¶ 39-40 (Ms. Creps' warranty claim twice denied by Kia); ¶ 50 (Kia denied warranty claim of Centko and Lazar); ¶ 62 (Ms. Smolek's warranty claim denied by Kia); ¶ 210 ("Defendants breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods."); ¶ 229 (describing breach).) These allegations more than suffice to describe Kia's breaches of Plaintiffs' warranties.

## III. Plaintiffs Have Stated Claims For Breach Of The Implied Warranty of Merchantability

Next, Kia argues that Plaintiff Creps (Maine) and Plaintiffs Centko and Lazar (California) have not alleged that their cars were unfit for driving and thus cannot bring claims for Kia's breach of the implied warranty of merchantability. (Def. Mem. at 16-17.) However, "[v]ehicles subject to engine failure cannot be said to be merchantable." *Cholakyan v. Mercedes-Benz USA*, 796 F. Supp. 2d 1220, 1244 (C.D. Cal. 2011). It is enough to state a claim that Plaintiffs have described an existing engine defect which destroys the engine. *See Asghari v. Volkswagen Group of America*, 42 F. Supp. 3d at 1311, 1338-39 (C.D. Cal. 2013) (implied warranty claim upheld where plaintiffs alleged defect leading to engine failure); *Arteaga v. Carmax Auto Superstores West Coast, Inc.*, No. 14-1888 (CWx), 2014 WL 3505527 (C.D. Cal. July 11, 2014) (holding defective engine, even if defect has not manifested, is not merchantable).

In addition, safety defects, such as the one at issue here, even if they have not manifested and are not apparent at the time of purchase, render a vehicle unmerchantable. *Falco*, 2013 WL 5575065, at *11 (implied warranty of merchantability pleaded concerning alleged safety defect); *Roberts v. Electrolux Home Prods., Inc.*, No. CV 12-1644, 2013 WL 7753579, at *5 (C.D. Cal. Mar. 4, 2013) ("[T]his safety defect renders the dryers unfit and unmerchantable…. California courts have rejected the argument that unsafe products retaining some functionality satisfy the implied warranties.").

Kia also argues that Plaintiff Smolek cannot satisfy the privity requirement under Illinois law. Where the seller is an agent of the defendant, however, privity is not required. *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 518 N.E.2d 1028, 1029-30, 116 Ill. Dec. 207 (Ill. 1988). Here, Ms. Smolek purchased her car from a Kia dealer. (¶ 58.) Plaintiffs have alleged that Kia dealerships are agents of Kia because Kia is responsible for the "distribution, service, repair, installation and decisions regarding the GDI Engine," (¶ 70); the warranties, owners' manuals and maintenance requirements of the Class Vehicles were created by Kia and distributed by the dealers (¶ 71); the dealerships are the means by which most communications and Kia policies are conveyed to Class Members (¶¶ 81; 102; 114. 115 (class members mostly complain to dealers and dealers convey Kia's policies)), including to Plaintiffs (¶¶ 20-26; 37-39; 48-52; 60-63); and the dealers are the mechanism by which money from leases and sales flows to Kia (¶ 68.)

In addition, privity is not required where, like Kia has done here, the defendant maintains a widespread marketing campaign that reaches consumers. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 806-07 (N.D. Ill. 2016) (privity not required where consumers were targeted with "direct marketing campaign" by manufacturer). Kia, for example,

11

1    advertises "an industry-leading Kia 10-year or 100,000-mile warranty program." (¶

2    132.) Plaintiffs have also shown that a typical Kia ad touts its warranties. *Id.*

3           In any case, privity is an issue of fact which should not be decided on a

4    motion to dismiss. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab.*

5    *Litig.*, 155 F. Supp. 3d at 807 (viewing in light most favorable to plaintiffs,

6    allegations sufficient to proceed to discovery on privity issue); *Kaplan v. Shure*

7    *Bros.*, 153 F.3d 413, 419 (7th Cir. 1998) (breach of contract claim sufficient where

8    allegations put defendant on notice of claim of privity).Thus, even if the privity

9    requirement exists, Ms. Smolek's implied warranty claim should not be dismissed

10   until a more complete factual record is established.[3]

11   **IV.    Plaintiffs Have Stated a Claim For Breach of the Magnuson-Moss**

12   **        Warranty Act**

13          Kia argues that the Plaintiffs cannot bring a claim under the Magnuson-Moss

14   Warranty Act because they did not participate in Kia's informal dispute resolution

15   process. (Def. Mem. at 18.) However, the rules are different in the class context.

16   Consumers in a class action need not, and indeed, **cannot**, avail themselves of this

17   procedure until after the class action is filed. *See* 15 U.S.C § 2310 (e) ("…*named*

18   *plaintiffs* shall at that time notify the defendant that they *are* acting on behalf of the

19   class."). Indeed, the MMWA contemplates such action occurring just before or in

20   conjunction with a motion for class certification. *See In re: Shop-Vac Mktg. &*

21   *Sales Practices Litig.*, 964 F. Supp. 2d 355, 362 (M.D. Pa. 2013) (declining to

22   dismiss MMWA claim on notice grounds and stating, "Thus, a named plaintiff in a

23   class action may bring an action prior to affording the defendant an opportunity to

24   _____

25   [3] Kia cites *Rollolazo v. BMW of N. Am., LLC*, No. CV 16-00966 BRO (SSx), 2017
     WL 1536456, at *15 (C.D. Cal. Feb. 3, 2017) in support of its privity argument.
26   Notably, however, the court granted plaintiff leave to amend its agency allegations
     with respect to the dealer.
27

cure, for the purpose of establishing his or her representative capacity."); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012) ("In contrast [to individual plaintiffs], plaintiffs bringing a class action may file suit before the defendant is afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named plaintiffs.").

Kia next argues that Plaintiffs must assert a viable state law warranty claim in order to procced with a Magnuson-Moss claim. Generally, Magnuson-Moss warranty claims rise and fall with the underlying state law claims. *Clemens v. DaimerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (holding that such claims "stand or fall with [their] express and implied warranty claims under state law"). Plaintiffs, however, have already established that their breach of warranty claims are properly pled. *See* Section II, *supra*.

Finally, the vertical privity requirement that Kia argues requires dismissal of Plaintiff Smolek's implied warranty claim, Def. Mem. at 17, does not apply to her Magnuson-Moss claim because Kia provided a written warranty. *Cohen v. Am Gen. Corp.*, 264 F. Supp. 2d 616, 621 (N.D. Ill. 2003) (following Illinois Supreme Court decision in *Szajna v. General Motors Corp.*, 115 Ill. 2d 294 (Ill. 1987). *Cf. Rollolazo*, 2017 WL 1536456, at *15-16 (acknowledging existence of written warranty satisfies vertical privity requirement for implied warranty claim under Illinois law).

## V.     Plaintiffs Stanczak, Centko and Lazar Have Stated Claims Under the Song-Berverly Act

Kia argues that a Song-Beverly claim cannot be brought unless the alleged defect manifests within "the Song-Beverly Act's maximum one-year implied warranty period." (Def. Mem. at 19.) However, this is not the law. Kia notes that

13

"a small number of courts" have taken a different view.  (Def. Mem. at 19 n. 12.) But one of the courts that did so was the Ninth Circuit Court of Appeals, whose 2015 decision on this issue Kia did not cite. In *Daniel v. Ford Motor Co.*, 806 F. 3d 1217,1222-23 (9th Cir. 2015) the Ninth Circuit reversed summary judgment granted to an auto manufacturer and held that under the Song-Beverly Act, latent defects may breach the implied warranty even if they are not discovered during the duration of the implied warranty. The Ninth Circuit did so because of a California appellate decision, *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304-05 (2009), which held that "a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect [at the time of sale], not by its subsequent discovery." The Ninth Circuit noted that while *Mexia* has been given "mixed treatment" by California federal courts, it "must be followed." *Id*. at 1223. Since Plaintiffs Stanczak, Centko and Lazar have alleged that the engine defect existed at the time of sale, their claims are permitted under Song-Beverly.

Kia also argues that because Plaintiffs Stanczak, Centko and Lazar have not stated a claim for breach of implied warranty, they have not stated a claim under Song-Beverly. (Def. Mem. at 19.) As set forth above, this is not true. In addition, Kia has not opposed Plaintiff Stanczak's breach of implied warranty claim, so, at minimum, his Song-Beverly claim should not be dismissed. Kia also argues the implied warranty claims of Plaintiffs Centko and Lazar fail because they have not alleged that their vehicle was unmerchantable. (Def. Mem. at 16-17.) Plaintiffs Centko and Lazar, however, have alleged that the vehicles were prone to engine failure and that the defect created a safety risk. *See* Sections I(B), III, *supra*. As such, their claims should not be dismissed.[4]

---

[4] Plaintiffs Creps and Smolek concede their Song-Beverly claims.

14

**VI.    The Good Faith and Fair Dealing Claims of Plaintiffs Stanczak, Centko and Lazar Should Not Be Dismissed**

Kia argues that Plaintiffs Stanczak, Centko and Lazar's claims under California law must be dismissed as duplicative of their breach of express warranty claims. (Def. Mem. at 20-21.) Under California law, there is an implied covenant of good faith and fair dealing requiring the parties to refrain from preventing the other party from receiving the benefits of the contract. *See Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400, 97 Cal. Rptr. 2d 151, 2 P.3d 1 (Cal. 2000). Kia is correct that if the factual basis for a claim of breach of the implied covenant of good faith and fair dealing is identical to that underlying a breach of contract claim, the claim for a breach of the implied covenant of good faith and fair dealing can be dismissed as superfluous. That is not the case here.

The factual basis for California Plaintiffs Stanczak, Centko and Lazar's express warranty claim is distinct from their good faith and fair dealing claims. The warranty claim is based on the existence of a contract and Kia's failure to perform. In contrast, the good faith and fair dealing claim is based on the allegation that Kia knew about the engine defect but concealed it, *i.e.* Kia's failure to disclose. (¶ 243.)

Under these circumstances, the good faith and fair dealing claim should not be dismissed. *Afzal*, , 2016 WL 6126913, at *6-7 (holding under California law, a claim for failing to honor warranty was distinct from a good faith and fair dealing claim based on BMW's failure to disclose defect during warranty period); *cf. Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1300 (C.D. Cal. 2015) ("California law requires that a claim for breach of the implied covenant of good faith and fair dealing 'go beyond the statement of a mere contract breach' and not

15

1   'rel[y] on the same alleged acts [or] simply seek the same damages or other relief
2   already claimed in a companion contract cause of action.") (internal quotations
3   omitted).[5]

4   **VII.   It is Premature To Dismiss Plaintiffs' Unjust Enrichment Claims.**

5   Kia argues that under Maine and Illinois law, a claim for unjust enrichment
6   is precluded in the presence of a valid and enforceable contract. (Def. Mem at 21-
7   22.)

8   In order to dispose of a Maine law unjust enrichment claim at the pleading
9   stage, the court must be sure that the legal cause of action is the ***exclusive remedy***,
10  not merely that a legal cause of action exists. *In re Light Cigarettes Mktg. Sales*
11  *Practices Litig.*, 751 F. Supp. 2d 183, 192 (D. Me. 2010). Such a determination is
12  not appropriate at the pleading stage. *Id.* at 191 ("In general, courts cannot
13  determine the adequacy of a legal remedy from the pleadings."). Plaintiff Creps is
14  permitted to plead in the alternative under Fed. R. Civ. P. 8(d)(3). *See GMAC*
15  *Commercial Mortg. Corp. v. Gleichman*, 84 F. Supp. 2d 127, 136-37 (D. Me.
16  1999) (denying motion to dismiss state unjust enrichment claim because the federal
17  rules allow plaintiffs to plead alternative forms of relief). Accordingly, at this stage
18  it is premature to dismiss her unjust enrichment claim.

19  Under Illinois law, unjust enrichment is an independent cause of action.
20  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) ("The Illinois
21  Supreme Court appears to recognize unjust enrichment as an independent cause of
22  action."). To the extent Kia is arguing that Plaintiff Smolek's unjust enrichment
23  claim must be dismissed because there is an adequate remedy at law, Kia is wrong.
24  *Hanley v. Trendway Corp.*, No. 94 C 5406, 1995 WL 103748, at *2 (N.D. Ill. Mar.

25
26  [5] Plaintiffs Creps and Smolek concede their good faith and fair duty claims.
    Neither, however, agrees to dismiss the underlying allegations, which support their
27  breach of contract claims.

16

6, 1995) (stating because unjust enrichment is not necessarily an equitable action, "[t]he existence of a full and adequate remedy at law . . . is not always an appropriate reason for dismissal."). It is also premature to dismiss this claim. *See Weydert Homes, Inc. v. Kammes*, 917 N.E.2d 64, 73 (Ill. App. Ct. 2009) (overturning trial court's dismissal of an unjust enrichment claim as premature because could not tell from the pleadings whether a binding contract existed).

Further, regarding the claims of Plaintiffs Stanczak, Centko and Lazar, under California law, "unjust enrichment is an action in quasi-contract and is not cognizable when there is a valid and enforceable contract between the parties." *Continental Casualty Company v. Enodis Corp.*, 417 Fed. Appx. 668, 670 (9th Cir. 2011). Here, plaintiffs have alleged the existence of an express warranty between themselves and Kia, which Kia has challenged. (Def. Mem. at 13-17.) Fed. R. Civ. P. 8(d), however, permits plaintiffs "to plead claims in the alternative or in an inconsistent manner, and courts in this Circuit have allowed unjust enrichment and breach of contract claims to proceed simultaneously in one action." *Becerra v. GM LLC*, 241 F.Supp.3d 1094, 1117 (S.D. Cal. 2017) (citing *Longest v. Green Tree Servicing LLC*, 74 F. Supp.3d 1289, 1302 (C.D. Cal. 2015)).

Accordingly, Plaintiffs unjust enrichment claims should not be dismissed.

## VIII.  Plaintiffs Have Standing to Assert Claims for Other Vehicle Models with the Same Engine

Seeking to narrow the class, Defendant argues that Plaintiffs should not be allowed to represent a class of all Kia Optima, Sorento and Sportage vehicles because plaintiffs allegedly "fail to allege any facts showing group treatment of these vehicles is warranted." (Def. Mem. at 24.) This, also, is not true. Plaintiffs allege that **all** Class Vehicles contain the same defective GDI Engines. (¶¶ 1, 83-88.) Plaintiffs' quote statements directly from Kia about the GDI Engines,

including technical specifications regarding compression ratios, psi, and other features of the GDI Engines. (¶¶ 83-88.)

Numerous courts have held – both on the pleadings and at class certification – that plaintiffs have standing to represent purchasers of substantially similar products. *See, e.g.*, *Romero v. HP, Inc.*, No. 16-CV-05415-LHK, 2017 WL 386237, at *7 (N.D. Cal. Jan. 27, 2017) (finding class representatives are permitted to represent unnamed class members who have not purchased the same exact product "so long as the products and alleged misrepresentations are substantially similar"); *see also Lohr v. Nissan N. Am., Inc.*, No. C16-1023RSM, 2017 WL 1037555, at *4 (W.D. Wash. Mar. 17, 2017) (holding named plaintiffs may represent class members for models of vehicles they did not own because the models were substantially similar to the model plaintiffs purchased). The claims and products at issue do not have to be "identical in every respect" to confer standing. *Romero*, 2017 WL 386237 at *8 (collecting cases applying the "Ninth Circuit's admonition that courts 'should not be too rigid in applying standing requirements to proposed classes'" and the substantial similarity test). In fact, the Ninth Circuit has cautioned that when "determining what constitutes the same type of relief or the same kind of injury, [courts] must be careful not to employ too narrow or technical an approach. Rather, [courts] must examine the questions realistically: [they] must reject the temptation to parse too finely, and consider instead the context of the inquiry." *See Brazil v. Dole Food Co.*, No.: 12-cv-01831-LHK, 2013 WL 5312418, at *8 (N.D. Cal. Sep. 23, 2013) (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-05 (2005) (internal quotation marks omitted); *see also Davidson v. Apple, Inc.*, No. 16-4942-LHK, 2018 WL 2325426, at *9 (N.D. Cal. May 8, 2018) ("In sum, Plaintiffs have made a strong case as to why the

18

iPhone 6 and iPhone 6 Plus are substantially similar, and the allegedly distinguishing features are little more than minor configuration and size differences.")

The cases upon which Defendant relies have all been distinguished by other courts within the Ninth Circuit as improperly narrow and against the weight of authority.[6] *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.")

At minimum, any motion to dismiss is procedurally premature before discovery commences and Plaintiffs have an opportunity to take discovery on their allegations. *See, e.g.*, *Von Slomski*, 2014 WL 12771116, at *5 (deferring question of whether tea products were substantially similar until after discovery at class certification); *Sims v. Kia Motors Am., Inc.*, No. SACV131791AGDFMX, 2014 WL 12558249, at *5 (C.D. Cal. Mar. 31, 2014) (same); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011) (collecting cases declining to strike class action allegations prior to discovery).

---

[6] *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) (rejecting reasoning of both *Johns v. Bayer Corp.*, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) and *Mlejnecy v. Olympus Imaging Am. Inc.*, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011)); *Von Slomski v. Hain Celestial Grp., Inc.*, No. SACV131757AGANX, 2014 WL 12771116, at *5 (C.D. Cal. June 10, 2014) (finding question of whether "differences between the tea varieties and their labels are material and substantial enough that Plaintiffs cannot represent consumers of all of them" is more appropriately dealt with after discovery).

19

## **CONCLUSION**

For the reasons set forth above, Kia's motion should be denied.[7]


Dated: October 9, 2018.                    Respectfully submitted,


                              By:   */s/ Matthew D. Schelkopf*
                                    Matthew D. Schelkopf
                                    *pro hac vice*
                                    Sauder Schelkopf
                                    555 Lancaster Ave.
                                    Berwyn, PA 19312
                                    Telephone: (610) 200-0581
                                    Email: mds@sstriallawyers.com

                                    Adam Gonnelli, Esq.
                                    *pro hac vice*
                                    THE SULTZER LAW GROUP
                                    85 Civic Center Plaza, Suite 104
                                    Poughkeepsie, NY 12601
                                    Tel: (845) 483-7100
                                    Fax: (888) 749-7747
                                    Email:
                                    gonnellia@thesultzerawgroup.com

                                    *Co-Lead Counsel*

                                    Bonner Walsh
                                    *pro hac vice*

---

[7] Where pleadings are determined to be deficient, leave to amend is liberally granted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Plaintiffs have properly pled their claims and any purported deficiencies are of a technical nature and will be easily corrected. If the Court determines that Plaintiffs' Complaint is in any manner deficient, Plaintiffs respectfully request that they be permitted leave to amend to cure any deficiencies that the Court identifies.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com

*Executive Committee*

21

## CERTIFICATE OF SERVICE

I, Matthew D. Schelkopf, hereby certify that on this 9th day of October, 2018, I caused the foregoing to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.


DATED: October 9, 2018          Respectfully submitted,


By:     */s/ Matthew D. Schelkopf*
        Matthew D. Schelkopf