# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into as of this __ day of October, 2019, by and between Plaintiffs Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse (the "Plaintiffs" or "Class Representatives"), individually and as representatives of the Class defined below, and Defendants Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), Kia Motors Corporation ("KMC") and Kia Motors America ("KMA") (collectively the "Parties").

WHEREAS, Plaintiffs Centko and Lazar filed the proposed nationwide class action lawsuit *Centko and Lazar v. Kia Motors America, Inc.*, No. 8:17-cv-00838 (C.D. Cal.) on May 10, 2017; Plaintiffs Stanczak and Creps filed the proposed nationwide class action lawsuit *Stanczak and Creps v. Kia Motors America, Inc. et al.,* No. 8:17-cv-1365 (C.D. Cal.) on August 8, 2017; Plaintiffs Kinnick and Coats filed the proposed nationwide class action lawsuit *Kinnick and Coats v. Hyundai Motor Company, et al*., No. 8:17-cv-02208 (C.D. Cal.) on December 19, 2017; Plaintiff Brogan filed the proposed nationwide class action lawsuit *Brogan v. Hyundai Motor America, et al.*, No. 8:17-cv-00622 (C.D. Cal)  on January 23, 2018; and Plaintiff Smolek filed the proposed nationwide class action lawsuit *Smolek v. Hyundai Motor America, et al.*, No. 2:18-cv-05255 (C.D. Cal.) on April 16, 2018;

WHEREAS, on August 7, 2018, the Court ordered these cases consolidated as *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.);

WHEREAS, these cases arise from Plaintiffs' allegations that certain Kia and Hyundai vehicles equipped with Theta II 2.0-liter and 2.4-liter gasoline direct injection engines were manufactured, marketed, sold, and leased with an engine defect that can result in sudden engine seizure, engine failure and/or engine fire;

WHEREAS, HMA, HMC, KMC and KMA deny Plaintiffs' allegations, deny all liability and culpability, and maintain that they have meritorious defenses;

WHEREAS, following consolidation of the cases, counsel for the Parties met and conferred several times, including with an engineering representative from HMA, HMC, KMC and KMA present, regarding Plaintiffs' allegations, HMA's, HMC's, KMC's and KMA's defenses, and potential resolution of the litigation;

WHEREAS, as part of these discussions, and in the context of a potential classwide resolution, HMA, HMC, KMC and KMA informed plaintiffs they planned to conduct a product improvement campaign of some of the vehicles at issue in these actions, in accordance with procedures reviewed by the National Highway Traffic Safety Administration;

WHEREAS, Defendants in *In re: Hyundai and Kia Engine Litigation* moved to dismiss the claims of the plaintiffs on September 4, 2018, and plaintiffs opposed the motion October 9, 2018;

WHEREAS, on December 14, 2018, Plaintiffs Fockler, House, Loomis, Miller, Moore, Rice, and Smith, along with other plaintiffs not subject to this Settlement (defined below), filed the proposed nationwide class action lawsuit *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.), alleging similar claims to those in *In re: Hyundai and Kia Engine Litigation*; *Flaherty* was amended twice, on January 10, 2019, and May 1, 2019, to add Plaintiffs Dickerson, McCallister, Montoya, Franklin, North, Schmitt, and Stackhouse, along with other plaintiffs not subject to this Settlement;

WHEREAS, Defendants and the Plaintiffs in *In re: Hyundai and Kia Engine Litigation* mediated on December 21, 2018, with the assistance of Hon. Ronald M. Sabraw (Ret.) of JAMS, at which time they reached a settlement in principle to resolve the class allegations, subject only to Hyundai and Kia management approval;

WHEREAS, the Parties, including counsel in *Flaherty,* continued settlement discussions over the next several months, resulting in certain modifications and enhancements to the proposed settlement;

WHEREAS, the Parties have continued to negotiate the final portions of this Settlement Agreement including fees and administrative matters;

WHEREAS, Class Counsel (defined below) have investigated the facts and law relating to Plaintiffs' claims and HMA's, HMC's, KMC's and KMA's defenses, and have concluded that a settlement with HMA, HMC, KMC and KMA according to the terms set forth below is in the best interests of Plaintiffs and the Class;

WHEREAS, despite their denial of any liability or culpability and their belief that they have meritorious defenses to the claims alleged, HMA, HMC, KMC and KMA nevertheless decided to enter into the Settlement described herein as a benefit to their customers and to avoid further litigation;

WHEREAS, Plaintiffs have and will continue to take reasonable confirmatory discovery, including deposition(s) of a corporate designee(s), to the extent that additional information is reasonably required to support the terms of the Settlement Agreement. Any such discovery shall be subject to limitations negotiated by Class Counsel and HMA's, HMC's, KMC's and KMA's counsel.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and intending to be legally bound, it is agreed by and among the undersigned that this Action be settled, compromised, and judgment entered on the terms and conditions set forth below.

## I.   DEFINITIONS

### A.   "Action"

"Action" refers to the consolidated litigation titled *In re: Hyundai and Kia Engine Litigation,* No. 8:17-cv-00838 (C.D. Cal.), inclusive of the underlying cases that were consolidated, and the claims of Plaintiffs Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, Chris Stackhouse and Class members from *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.). *Flaherty* is not settled in its entirety, and the claims of *Flaherty*'s named plaintiffs and putative class members not explicitly named, identified, or encompassed in this Settlement Agreement are subject to ongoing litigation.

### B.   "Claim"

A "Claim" is a request for reimbursement under this Settlement.

### C.   "Claimant"

"Claimant" is a Class member or other person or entity eligible to make a Claim pursuant to this Settlement Agreement (*e.g.*, a subsequent purchaser of a Class Vehicle under the terms of the Lifetime Warranty, described in Section II).

### D.    "Claim Form"

"Claim Form" refers to a form used to make a Claim under this Settlement, substantially in the form attached hereto as Exhibit B.

### E.   "Settlement Class" or "Class"

"Settlement Class" or "Class" refers to:

*All owners and lessees of a Class Vehicle who purchased or leased a Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories and/or abroad.*

Excluded from the claims of the Class (and not released by this Settlement) are all claims for death, personal injury, property damage (other than damage to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation.  Also excluded from the Class are HMA, HMC, KMC and KMA; any affiliate, parent, or subsidiary of HMA, HMC, KMC or KMA; any entity in which HMA, HMC, KMC or KMA has a controlling interest; any officer, director, or employee of HMA, HMC, KMC or KMA; any successor or assign of HMA, HMC, KMC or KMA; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (c) individuals and/or entities who validly and timely opt-out of the settlement; (d) consumers or businesses that have purchased Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means); and (e) current or former owners of a Class Vehicles that previously released their claims in an individual settlement with HMA, HMC, KMC and KMA with respect to the issues raised the Action (for the purpose of clarity, individual owners of 2011-2014 Hyundai Sonatas who released claims against HMA and HMC in the settlement reached in *Mendoza v. Hyundai Motor Company Ltd., et. al.*, Case No. 15-cv-01685-BLF (C.D. Cal.) are not excluded from the claims of the Class).

**F.      "Class Counsel"**

"Class Counsel" means Matthew D. Schelkopf of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, and Bonner Walsh of Walsh PLLC, as per the Order of Judge Staton of June 16, 2018 in *In re: Hyundai and Kia Engine Litigation* (Dkt. 80), and also Steve Berman of Hagens Berman Sobol Shapiro LLP.

**G.      "Class Vehicles"**

"Class Vehicles" refer to all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Hyundai Sonata vehicles, all 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Hyundai Santa Fe Sport vehicles, all 2014, 2015, 2018, and certain 2019 model year Hyundai Tucson vehicles, all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Kia Optima vehicles, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain

2019 model year Kia Sorento vehicles, and all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Kia Sportage vehicles, originally equipped with or replaced with a genuine Theta II 2.0 liter or 2.4 liter gasoline direct injection engine within OEM specifications, that were purchased or leased in the United States, excluding the territories, and including those that may have been purchased while the owner was abroad on active U.S. military duty.  For 2019 model year vehicles listed above, the Class shall include those vehicles that were manufactured before the Knock Sensor Detection System technology described in this agreement was incorporated into their production.

H.      **"Court"**

"Court" means the United States District Court for the Central District of California.

I.       **"Effective Date"**

"Effective Date" means the first date after the Court's entry of final approval ("Final Approval Order") and entry of Judgment is entered, if no appeal is timely filed or if no motion to extend the time for filing an appeal has been filed.  If there is an appeal, the Effective Date of Settlement shall be the date on which all appellate rights with respect to the Final Approval Order and Judgement in the Action have expired or been exhausted in such a manner as to render the Final Approval Order and Judgment non-appealable.

J.      **"Exceptional Neglect"**

"Exceptional Neglect" means (a) when the vehicle clearly evidences a lack of maintenance or care for a significant period of time of not less than one (1) year, such that the vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance was due to a Loss Event; or (b) failure of a Settlement Class member to have the KSDS ("Knock Sensor Detection Software") installed pursuant to the KSDS Product Improvement Campaign by a Hyundai or Kia dealer within 60 days of the Notice Date, or within 60 days of the mailing of the KSDS campaign notice, whichever is later.  Diagnostic costs associated with establishing Exceptional Neglect will be borne by Defendants.

K.      **"Fairness Hearing" and/or "Final Approval Hearing"**

"Fairness Hearing" and/or "Final Approval Hearing" means the final hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Settlement in accordance with applicable jurisprudence, to be held after notice has been provided to the Settlement Class in accordance with this Settlement, and

where the Court will: (a) determine whether to grant final approval to the certification of the Settlement Class; (b) determine whether to designate Plaintiffs as the representatives of the Settlement Class; (c) determine whether to designate Class Counsel as counsel for the Settlement Class; (d) determine whether to grant final approval to the Settlement; (e) rule on Class Counsel's Application for a Fee and Expense Award; (f) rule on Class Representatives' Application for Class Representative Service Awards;  and (g) consider whether to enter the Final Approval Order.

### L.      "Knock Sensor Detection Software"

"Knock Sensor Detection Software" (or "KSDS") refers to the engine monitoring technology developed by Defendants that, with software innovations, leverages existing hardware on the subject Class Vehicles to continuously monitor engine performance for symptoms that may precede engine failure and that is being offered as a software update to Class members free of charge pursuant to the product improvement campaigns referenced herein.

### M.      "Lifetime Warranty"

"Lifetime Warranty" refers to the extension of the existing Powertrain Warranty to cover the short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, in those Class Vehicles owned by individual consumers that have completed the KSDS update in connection with Defendants' now-ongoing product improvement campaigns described herein.  The Lifetime Warranty shall also apply to any damage caused to the long block assembly due to connecting rod bearing failure.   With the exception of cases of Exceptional Neglect and subject to the existing terms, limitations, and condition of the Class Vehicles' original Powertrain Warranty, the Lifetime Warranty shall otherwise endure irrespective of the Class Vehicle's mileage or duration of ownership.  The Lifetime Warranty shall not apply or be available to commercial entities such as used car dealers, franchisees, or automobile auction houses.  For Class Vehicles that may otherwise need a new engine pursuant to this warranty at or above 150,000 miles and more than eight (8) years from the original in-service date, Defendants shall have the option, in lieu of replacing the engine under warranty, to either, at the vehicle owner's election, (i) repurchase the vehicle at Bluebook value (very good/private party) or (ii) pay the owner $2,000.00 in lieu of an engine replacement, provided that the owner has installed the KSDS, and which payment will require that the owner agree in writing to assume all risk going forward and to void the vehicle's remaining Lifetime Warranty.

### N.      "Long Form Notice"

"Long Form Notice" refers to the notice to be sent to the Class as detailed below, substantially in the same form as Exhibit A.

### O.      "Loss Event"

"Loss Event" means any Class Vehicle incident that would have led to a Qualifying Repair (including, but not limited to, an engine fire) but either the cost of the repair was too great or other circumstances led the Class member to dispose of the Class Vehicle at a loss.  This includes events in which there was insurance coverage, but where the Class member was still not made whole by such insurance payments.

### P.      "Notice Date"

"Notice Date" refers to the date 90 days after the Court enters an order preliminarily approving this Settlement.

### Q.      "Pamphlet"

"Pamphlet" refers to the separate, color-printed document that will be provided after the Effective Date, substantially in the same form as attached as Exhibit C.  The Pamphlet shall be designed to be kept with the owner's manual for Class Vehicles.  The Pamphlet shall (i) prominently warn of the risk that Class Vehicles may suffer engine stalling while driving, (ii) list all warning signs known by HMA and HMC (for Hyundai Class Vehicles) and KMA and KMC (for Kia Class Vehicles) that potentially precede such an engine seizure or stall, such as engine knocking and illumination of the Class Vehicle's oil lamp; (iii) recommend that any Class member who has not already done so, should promptly present their Class Vehicle to an authorized Hyundai or Kia dealership (as appropriate depending on the vehicle) for a free inspection and, if appropriate, repair; (iv) describe the warranty and reimbursement benefits provided by this Settlement; and (v) describe HMA's, HMC's, KMC's or KMA's (as the case may be) product improvement campaign for the Class Vehicles, including the free knock sensor detection software update.

### R.      "Parties"

"Parties" (or "Party" individually) means Plaintiffs and Defendants.

### S.      "Plaintiffs' Counsel"

"Plaintiffs' Counsel" (as distinct from "Class Counsel") means Matthew D. Schelkopf of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, Bonner Walsh of Walsh PLLC,

Daniel C. Levin and Adam B. Cohen of Levin Sadran and Berman LLP, Jason S. Rathod,
Nicholas Migliaccio, and Esfand Nafisi of Migliaccio & Rathod LLP, Steve Berman and
Christopher Pitoun of Hagens Berman Sobol Shapiro LLP, and Robert Hilliard of Hilliard
Muñoz Gonzales LLP.

### T.      "Preliminary Approval Order"

"Preliminary Approval Order" means the proposed order to accompany the motion for
preliminary approval, substantially in the form attached hereto as Exhibit D.

### U.      "Proof of Loss Event"

"Proof of Loss Event" means the original or a copy of any document(s) generated
pertaining to the loss that was incurred.

### V.      "Proof of Repair Expense"

"Proof of Repair Expense" means the original or a copy of any document(s) generated at
or around the time expense was incurred for a Qualifying Repair that identifies the Qualifying
Repair's nature, date performed, and cost incurred by the Class member for the Qualifying
Repair.  For Class members who had the Qualifying Repair performed at a Hyundai or Kia
dealership, the cost incurred by the Class member for the Qualifying Repair shall be
substantiated as set forth in Section II.C.3.

### W.      "Proof of Repair-Related Expense"

"Proof of Repair-Related Expense" means the original or a copy of any document(s)
generated at or around the time that expense was incurred for a rental car, towing service, or
other out-of-pocket expense in direct conjunction with obtaining a Qualifying Repair, and which
identifies the nature of the expense, the date the cost was incurred, and the dollar amount.

### X.      "Qualifying Repair"

"Qualifying Repair" refers to any type of repair, replacement, diagnosis, or inspection of
the Class Vehicle short block assembly consisting of the engine block, crankshaft and bearings,
connecting rods and bearings, and pistons, due to a connecting rod bearing failure or symptoms
associated with connecting rod bearing failure, but excluding Exceptional Neglect.  Diagnostic
costs associated with establishing Exceptional Neglect will be borne by Defendants.  For
purposes of reimbursement of repairs that occurred before the Class member received notice of
this Settlement, "Qualifying Repair" also includes any other Class Vehicle components,
including but not limited to the Class Vehicle long block (and the long block's components),

battery, or starter, provided that the corresponding Proof of Repair Expense reflects that the work was conducted in an attempt to address engine seizure, engine stall, engine noise, engine compartment fire, illumination of the oil lamp, or otherwise repair mechanical or cosmetic damage to the Class Vehicle that are the natural and probable consequence of a connecting rod bearing failure or symptoms associated with connecting rod bearing failure, but excluding Exceptional Neglect, except for any repairs for which the Proof of Repair Expense reflects that the repairs were plainly unrelated to the engine short block assembly issues (for example, a stall caused by a fuel pump, oxygen sensor, or the electrical system).  Any repairs or replacement of a Class Vehicle oil filter in an attempt to address engine seizure, engine stall, engine noise, or illumination of the oil lamp, caused by a connecting rod bearing failure, but excluding Exceptional Neglect, will be presumed to be included within the definition of a Qualifying Repair.  Nothing in this definition shall require HMA, HMC, KMC or KMA to provide repairs caused by a collision involving a Class Vehicle, unless such collision is directly caused by a Class Vehicle failure otherwise subject to a Qualifying Repair, such as an engine fire.

  **Y.**   **"Releasees"**

 "Releasee[s]" shall refer jointly and severally, individually and collectively to entities that marketed the Class Vehicles, entities that designed, developed, and/or disseminated advertisements for the Class Vehicles, HMA, Hyundai America Technical Center, Inc. (also doing business as Hyundai-Kia America Technical Center), HMC, KMA, KMC, all affiliates of the Hyundai Motor Group, and each of their respective future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, dealers, distributors, agents, principals, suppliers, vendors, issuers, licensees, and joint ventures, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this paragraph, "affiliates" means entities controlling, controlled by, or under common control with a Releasee.

  **Z.**   **"Releasors"**

 "Releasor[s]" shall refer jointly and severally, individually and collectively to the Class Representatives, the Class members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their

respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

> **AA.** **"Settlement"**

"Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Settlement Agreement and attached exhibits.

> **BB.** **"Settlement Administrator" or "Claims Administrator"**

"Settlement Administrator" or "Claims Administrator" means Defendants or their administrators selected to administer the Settlement and approved by the Court.

Capitalized terms in this Settlement Agreement not defined in this section shall have the meanings ascribed to them elsewhere in this Agreement.

## II.    SETTLEMENT CONSIDERATION

In consideration for the Settlement, entry of judgment, and dismissal, and for the mutual release provided herein, HMA and KMA agree to provide the following consideration to the Class:

> **A.** **Lifetime Warranty Coverage For Engine Short Block**

1. Effective beginning on the Notice Date, HMA and KMA shall extend and sustain into full effect the Lifetime Warranty for all eligible Class Vehicles.

2. For the 90-day period immediately following the Notice Date, all Class Vehicles that have not received a recall inspection under at least one of the campaigns referenced below will be eligible under the Lifetime Warranty for free inspections and, as needed on a vehicle-by-vehicle basis, short block assembly repairs, irrespective of the Class Vehicles' mileage, duration of ownership, or prior repairs.

3. The Lifetime Warranty shall cover all costs associated with inspections and repairs including, without limitation, the costs associated with replacement parts, labor, diagnoses, and mechanical or cosmetic damage to the Class Vehicle caused by the engine malfunction (*e.g.,* engine failure or fire).

4.      Notwithstanding any provision(s) to the contrary in any express warranty provided by HMA or KMA in conjunction with the sale or lease of Class Vehicles, the Lifetime Warranty shall persist in its full duration regardless of any transfer in ownership or lease of a Class Vehicle.

5.      In conjunction with any Qualifying Repair, HMA (for Class members who own(ed) or leas(ed) Hyundai Class Vehicles, *i.e.* "Hyundai Class members") and KMA (for Class members who own(ed) or leas(ed) Kia Class Vehicles, *i.e.* "Kia Class members") shall, through authorized Hyundai or Kia dealerships, provide a comparable class of loaner vehicle, as may be available at a dealer location, at no cost if requested.  To the extent no loaner vehicle is reasonably available through HMA's or KMA's authorized Hyundai or Kia dealerships at the time of the request, HMA and KMA will provide reimbursement of reasonable rental car expenses up to $40 per day until engine replacement or repair is completed and submitted pursuant to section II.D.1.  No Lifetime Warranty inspections or repairs shall be denied for a Class Vehicle on the grounds that the Qualifying Repair was necessitated by the owner or lessor failing to properly service or maintain the vehicle, except in instances of Exceptional Neglect. Upon request, HMA (for Hyundai Class members) and KMA (for Kia Class members) will reasonably promptly furnish a list of all such cases of Exceptional Neglect, if any, to Class Counsel.  This Settlement shall not be construed as obligating HMA, KMA, or their dealerships to repair engines or provide new engines under the Lifetime Warranty, or provide any other compensation or reimbursement for otherwise inoperative vehicles (*e.g.*, branded, salvage, or junkyard vehicles not otherwise roadworthy) unless such inoperability is directly caused by a Class Vehicle failure originating from a connecting rod bearing failure and otherwise subject to a Qualifying Repair, such as an engine fire.

6.      Class members shall not be required to present the Long Form Notice, Pamphlet, Claim Form, or any other Settlement-related document in order to receive Lifetime Warranty inspections or repairs at an authorized Hyundai or Kia dealership. Class members are suggested to retain all vehicle maintenance records after the Notice Date, and may be required to provide records for vehicle maintenance performed after the Notice Date to receive Lifetime Warranty repairs.

7.      All rights otherwise available to owners and lessees under preexisting warranties will continue to remain available to Class members notwithstanding the implementation of this

Settlement. Nothing in this Settlement will be construed as diminishing or otherwise affecting any express or implied warranty, duty, or contractual obligation of HMA or KMA in connection with Class Vehicles.

8.      HMA and KMA may implement or continue to implement any additional customer satisfaction or goodwill policy, program, or procedure at their discretion, and may extend goodwill consideration to individual Class members on a case-by-case basis, without regard to their entitlement to relief under the Settlement. No such goodwill decision by HMA or KMA, however, shall act to deprive a Class member or Claimant of the benefits available under the Settlement.

9.      Any dispute concerning coverage under the Lifetime Warranty shall be resolved through a Better Business Bureau ("BBB") administered alternative dispute resolution process. The Claimant must provide written notice to HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) requesting alternative dispute resolution. After receipt of the written notice, HMA or KMA shall be permitted a 30-day good faith period in which HMA or KMA can confer with the Class member in an attempt to resolve the claim. If the claim cannot be resolved during this period, Claimant shall initiate a BBB administered alternative dispute resolution process. Class Counsel shall be notified of—through monthly reports provided by HMA--and have the right to participate in any such process. Class Counsel, however, shall not be obligated to participate. The BBB administered alternative dispute resolution fees and expenses shall be borne by HMA or KMA (as the case may be) unless the mediator or arbitrator finds that the Claimant's claims were brought in bad faith. HMA and KMA will not bear the costs of the Claimant's attorneys' fees by Class Counsel or other counsel selected by the Claimant, if any.

10.      As set out in the Long Form Notice, any repairs performed pursuant to the Lifetime Warranty before the notice date shall preclude the Class members who received such repairs from opting out of the Class. For sake of clarity, a class member who received a lifetime warranty under a previous KMA recall is not precluded from opting out of this Settlement.

B.      **Recall and Product Improvements**

1.      HMA acknowledges that the consideration provided in conjunction with its voluntary safety recall of certain model year 2011 and 2012 Sonata vehicles in or about September 2015 (NHTSA Campaign Number 15V-568) and its voluntary safety recall of certain model year 2013 and 2014 Hyundai Sonata and Santa Fe Sport vehicles in or about March 2017

(NHTSA Campaign Number 17V226), represent part of the consideration to the Class in exchange for the settlement in this Action.

2.     HMA and KMA acknowledge that in December 2018 and January 2019, they issued a subsequent recall of the same vehicles identified in the paragraph above to inspect and confirm proper reinstallation of the fuel tube in order to address car engines at risk of fire (NHTSA Campaign number 18V934000 as to HMA; NHTSA Campaign Number 18V907000 as to KMA).  HMA and KMA further acknowledge that, as required by existing law, they are each conducting the voluntary recalls in accordance with NHTSA mandates.

3.     HMA and KMA acknowledge that by January 2019, they each had initiated product improvement campaigns in which knock sensor detection technology could be added through a free software update to the Class Vehicles.

4.     HMA and KMA acknowledge that Class Counsel sought relief for some of the Class Vehicles subject to this agreement before any NHTSA inquiry or recall.  As a result, recalls were issued for more than 227,000 Class Vehicles.

C.     **Repair Reimbursements**

1.     To the extent any Claimant, before receiving notice of this Settlement, obtained a Qualifying Repair for a Class Vehicle, the Claimant will be entitled to full reimbursement by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of any and all such expenses incurred for the Qualifying Repair, regardless of whether the Claimant was an original owner, lessee or subsequent purchaser or whether (for Class members with 2013 and 2014 Hyundai Sonata and Santa Fe Sport vehicles and 2011, 2012, 2013, and 2014 Kia Optima, Sorento, or Sportage vehicles) the Qualifying Repair was completed before or after receiving notification of NHTSA Campaign Numbers 17-V226 and 17-V224 unless the Claimant was previously reimbursed for any and all such expenses incurred, provided that:

a.     A Claim is submitted no later than 90 days after the Notice Date;

b.     The Claim contains a completed Claim Form;

c.     The Claim contains a Proof of Repair Expense incurred by the Claimant; and

d.     The Proof of Repair Expense reflects that the work was conducted in an attempt to address a Qualifying Repair.

2.      Class members who were also members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF (C.D. Cal.) class population) are also eligible for repair reimbursements under the terms of this section for Qualifying Repairs that arose after the claims period expired under the terms of that settlement.

3.      For Claims submitted for reimbursement for Qualifying Repairs performed at authorized Hyundai or Kia dealerships, HMA (for Hyundai Class Vehicles) and KMA (for Kia Class Vehicles) shall take all reasonably available steps to acquire from the dealership the information reasonably necessary to approve the Claim—namely, the date, nature, and cost charged for the Qualifying Repair. In connection with entering into this Settlement, HMA (for Hyundai Class Vehicles) and KMA (for Kia Class Vehicles) acknowledge and represent that they should be able to acquire that information in many instances, except for proof that cost for the Qualifying Repair was paid by the Claimant. Claimants shall substantiate the cost for the Qualifying Repair that they paid in a manner consistent with the method of payment the Claimant used.

4.      Claimants who paid for the Qualifying Repair with a credit card shall substantiate the cost for the Qualifying Repair that they paid with a repair receipt from the dealership showing their payment, a credit card receipt from the dealership, or a credit card statement showing a payment to the dealership.  Claimants who paid for the Qualifying Repair with a debit card or check shall substantiate the cost for the Qualifying Repair with a repair receipt from the dealership showing their payment, debit card receipt from the dealership, cleared check showing their payment to the dealership, or a bank statement showing a payment to the dealership. Claimants who paid for the Qualifying Repair with cash shall substantiate the cost for the Qualifying Repair with a repair receipt from the dealership showing their payment, or if they do not have such a repair receipt, the Claimant shall attest under penalty of perjury that they do not have a repair receipt from the dealership showing their payment and as to the specific dollar amount they paid in cash to the dealership.

5.      Consistent with the above provisions, repair reimbursements shall be provided irrespective of whether Qualifying Repairs were incurred at an authorized Hyundai or Kia dealership or elsewhere.

6.      Except in instances of Exceptional Neglect, reimbursements shall be provided to Claimants even if warranty coverage was initially denied for the Qualifying Repair on the

grounds that it was necessitated by a failure to properly service or maintain the vehicle. Customers who presented to a Hyundai or Kia dealership, were denied an in-warranty repair prior to receiving notice of this Settlement, and obtained their Qualifying Repair elsewhere, are entitled to claim an additional $140 goodwill payment.

7.     Claimants previously reimbursed in full or in part for the expense incurred in connection with a Qualifying Repair (*e.g*., through an HMA, KMA, or dealership goodwill payment) shall not be entitled to a reimbursement under this Settlement for that portion of the expense for which they have already been reimbursed. Instead, they will be entitled to only that amount to fully reimburse them for a Qualifying Repair, if any.

**D.     Other Repair-Related Reimbursements**

1.     To the extent any Claimant incurs expenses, such as for a rental car or towing service, or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair for a Class Vehicle, the Claimant shall be entitled to full reimbursement of any towing expenses or other out-of-pocket expense reasonably related to obtaining a Qualifying Repair, and up to $40 per day for rental car expenses if a loaner vehicle was not originally provided by HMA or KMA provided that:

      a.     A Claim is submitted within 90 days after the later of (i) the Notice Date, (ii) the date on which the expense is incurred, or (iii) the date the expense is paid;

      b.     The Claim contains a completed Claim Form;

      c.     The Claim contains a Proof of Repair-Related Expense; and

      d.     The Claim contains a Proof of Repair Expense that reflects a Qualifying Repair performed within 30 days of the incurred rental car or towing expense.

2.     With respect to the reimbursements available pursuant to the above paragraph, Claimants shall not be entitled to receive compensation apart from their out-of-pocket costs incurred.  For example, the above paragraph shall not entitle Claimants to lost wages allegedly incurred due to an inability to get to or from a place of employment or to recover other forms of consequential damages.

3.     Claimants previously reimbursed in full or in part for rental car or towing expenses following an engine seizure, engine stall, engine noise, engine compartment fire, or

illumination of the oil lamp diagnosed as requiring repair of the engine (*e.g.,* through an HMA, KMA, or dealership goodwill payment) shall not be entitled to a reimbursement under this Settlement for that portion of the expense for which they have already been reimbursed.

### E.     Inconvenience Due to Repair Delays

1.     To the extent any Claimant is or was inconvenienced by prolonged delays (exceeding 60 days) obtaining any Qualifying Repair from an authorized Hyundai or Kia dealership, the Claimant shall be entitled to a goodwill payment based on the length of the delay provided that:

> a.     A Claim is submitted within 90 days after the later of (i) the Notice Date, or (ii) the date on which the repair is completed;
>
> b.     The Claim contains a statement under oath by the Claimant attesting that he or she felt inconvenienced by the delay;
>
> c.     The Claim specifies the number of days the repair was delayed and provides supporting documentation.

2.     The goodwill payment will be calculated as follows: $50 for delays lasting between 61 and 90 days, and $25 for each additional 30-day period of delay or fraction thereof (*e.g*., a Class member may receive $50 for delays lasting 61-90 days, $75 for delays lasting 91-120 days, etc.).

3.     A Class member may elect to receive his or compensation in the form of a dealer service card valued at 150% of the amount that would otherwise be paid under this provision as a cash debit card.  The dealer service debit card may only be used at any authorized Hyundai dealer (for Hyundai Class Vehicles) or any authorized Kia dealer (for Kia Class Vehicles) in payment towards any merchandise, parts, or service.

4.     Class members who were also members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF (C.D. Cal.) class population) are also eligible for compensation for the inconvenience of delayed repairs under the terms of this section in connection with Qualifying Repairs that arose after the claims period expired under the terms of that settlement.

5.     Claimants that have already received a goodwill payment by HMA, KMA, or any authorized Hyundai or Kia dealerships for any delay due to a Qualifying Repair will be ineligible for this inconvenience payment.

**F.**     **Loss of Value for Sold or Traded-In Vehicles due to a Loss Event**

1.     Claimants who before notice of this Settlement experienced a Loss Event may recover for the loss.  Those Claimants who: (i) had a Class Vehicle experience an engine seizure, engine stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring repair of the engine block, and (ii) sold or traded-in the Class Vehicle without first procuring the recommended repair, will be entitled to reimbursement by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the baseline Black Book value (*i.e.,* wholesale used vehicle value) of the sold or traded-in Class Vehicle plus $140.00 at the time of loss minus actual amount received from the sale or trade-in provided that:

   a.     A Claim is submitted no later than 90 days after the Notice Date;

   b.     The Claim contains a completed Claim Form; and

   c.     The Claim contains a proof of sale or trade-in and value received for sale or trade-in as well as any additional Proof of Loss Event.

2.     A Claimant's maintenance history or lack thereof before the repair diagnosis (except limited Exceptional Neglect circumstances), shall not be a basis for denying or limiting compensation under this section.  The notice, cure, and arbitration provisions of Section III shall apply and be available to Claimants who notify HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of their circumstances under this section.

3.     To the extent a Claimant contends that the actual damages incurred exceed the reimbursement amount as provided in this section, including any actual damages due to a repossession or other financing-based damages,  the Claimant must provide written notice to HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) requesting alternative dispute resolution.  After receipt of the written notice, HMA and KMA shall be permitted a 30-day good faith period in which HMA or KMA can confer with the Claimant in an attempt to resolve the claim.  If the claim cannot be resolved during this period, Claimant shall initiate a BBB administered alternative dispute resolution process.  If class members are claiming actual damages due to a repossession or other financing-based damages, such claims should be addressed through the BBB administered alternative dispute resolution process as well.  The mediator or arbitrator shall have the ability to make the final determination regarding the amount to be paid to any Claimant who elects this process.  Class Counsel shall be notified of—through monthly reports provided by HMA or KMA—and have the right to participate in any such

process.  Class Counsel, however, shall not be obligated to participate.  The BBB administered alternative dispute resolution fees and expenses shall be borne by HMA or KMA (as the case may be) unless the mediator or arbitrator finds that the Claimant's claims were brought in bad faith.  HMA and KMA will not bear the costs of Claimant's attorneys' fees by Class Counsel or other counsel selected by the Claimant, if any.

4.       Class members who were also members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF (C.D. Cal.) class population) are also eligible for compensation under the terms of this section for Loss Events that arose after the claims period expired under the terms of that settlement.

5.       Claimants previously reimbursed in full or in part in connection with a sale or trade-in following an engine seizure, engine stall, engine noise, engine compartment fire, engine compartment fire, or illumination of the oil lamp, caused by a connecting rod bearing failure or symptoms associated with connecting rod bearing failure, but excluding Exceptional Neglect, diagnosed as requiring repair of the engine (*e.g.,* through an HMA, KMA, or dealership goodwill payment) shall not be entitled to a reimbursement under this Settlement for that portion of the expense for which they have already been reimbursed.  It shall be Defendants' burden to establish that any prior reimbursements were directly related to a connecting rod bearing failure or symptom.  If class members are claiming actual damages due to a repossession or other financing-based damages, such claims should be addressed through the process discussed under this section in II.F.3.

**G.       Loss of Vehicle By Engine Fire**

1.       To the extent any Claimant suffers a loss of vehicle by engine fire directly caused by the Class Vehicle's failure arising from a vehicle condition that would have otherwise been addressed by a Qualifying Repair, the Claimant will be entitled to payment by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the maximum Black Book value (*i.e.,* private party/very good) of the Class Vehicle at the time of loss minus actual value received (if any) plus an additional $140 goodwill payment provided that:

a.       A Claim is submitted no later than 90 days after the Notice Date or, for losses incurred after the Notice Date, no later than 90 days after the engine compartment fire occurred;

b.       The Claim contains a completed Claim Form;

c.      The Claimant submits Proof of Loss Event for the Class Vehicle; and

d.      The Claim contains documentation establishing that the fire originated from the engine compartment and was unrelated to any sort of collision.

2.      To the extent a Claimant contends that the actual damages incurred exceed the total reimbursement amount as provided in this section, the Claimant must provide written notice to HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) requesting alternative dispute resolution.  After receipt of the written notice, HMA and KMA shall be permitted a 30-day good faith period in which HMA or KMA can confer with the Claimant in an attempt to resolve the claim.  If the claim cannot be resolved during this period, Claimant shall initiate a BBB administered alternative dispute resolution process.  The mediator or arbitrator shall have the ability to make the final determination regarding the amount to be paid to any Class member who elects this process.  Class Counsel shall be notified of—through monthly reports provided by HMA or KMA—and have the right to participate in any such process.  Class Counsel, however, shall not be obligated to participate.  The BBB administered alternative dispute resolution fees and expenses shall be borne by HMA or KMA (as the case may be) unless the mediator or arbitrator finds that the Claimant's claims were brought in bad faith.  HMA and KMA will not bear the costs of Claimant's attorneys' fees by Class Counsel or other counsel selected by the Claimant, if any.

3.      Any reimbursement for loss of vehicle by engine fire under this section shall not be construed as a waiver or release of claims for death or personal injury.

4.      Nothing in this section shall require HMA or KMA to provide for the loss of a Class Vehicle due to an engine fire caused by a collision or a source other than the engine.

**H.**      **Rebate Program**

1.      To the extent any Class member loses faith in their Class Vehicle as a result of this Settlement, the Class member may present a claim for a rebate after selling the Class Vehicle in an arm's length transaction provided that:

a.      The Class member (a) experienced an engine failure or engine compartment fire, and (b) purchases a replacement Hyundai vehicle (for Hyundai Class members) or Kia vehicle (for Kia Class members);

b.      A Claim is submitted within 90 days of the Notice Date;

c.      The Claim contains a completed Claim Form;

> d.   The Claim contains a statement under oath that the Claimant lost faith in the Class Vehicle;
>
> e.   The Claim contains a proof of sale or trade-in and value received for sale or trade-in;
>
> f.   The Claim contains proof of purchase of a replacement Hyundai or Kia vehicle.

2.   This rebate is also available to any Class member who, after the Notice Date, experiences an engine failure or fire in a Class Vehicle, loses faith in their Class Vehicle, and completes all other steps to qualify for the rebate, including the purchase of a replacement Hyundai or Kia vehicle, provided that the Class member submits a Claim within 90 days of the engine failure or fire.

3.   The amount of the rebate shall be calculated as actual loss by comparing sales documentation to the maximum Black Book value (*i.e.,* private party/very good) of the Class Vehicle at the time of the Knock Sensor Detection System campaign launch up to the following amounts:

> a.   For model year 2011-2012 Class Vehicles: $2,000
>
> b.   For model year 2013 and 2014 Class Vehicles: $1,500
>
> c.   For model year 2015 and 2016 Class Vehicles: $1,000
>
> d.   For model year 2017, 2018, and 2019 Class Vehicles: $500

**I.   Costs of Administration and Notice**

HMA and KMA shall be responsible for all costs of Class notice and settlement administration.  In no event shall Plaintiffs' Counsel or the Class be responsible for any costs associated with Class notice or settlement administration.  Class Counsel retains the right to audit and review the administration of Claims.

**III.   CLAIMS ADMINISTRATION**

1.   HMA and KMA have the option of self-administrating or electing a third-party administrator to process submitted claims.

2.   Claims submitted pursuant to this Settlement may be submitted, at the election of the Claimant, by U.S. mail, email, or through the dedicated settlement website discussed below. The mailing address and email address to which Claimants may submit Claims, as well as Claimants' right to submit their Claims through the settlement website, shall be posted

prominently in each of the following locations: the Long Form Notice, the Pamphlet (once prepared and as made available before the Effective Date on the settlement website), the Claim Form, and the dedicated settlement website.  The www.hyundaiusa.com/myhyundai website shall provide a link to the dedicated settlement website for Hyundai Class Vehicles accessible from its homepage.  The www.owners.kia.com website shall provide a link to the dedicated settlement website for Kia Class Vehicles accessible from its homepage.

3.      The Claim Form shall provide an option for Claimants to indicate a preference for communication via regular U.S. mail instead of email.  If HMA or KMA has an email address for a Claimant and the Claimant did not indicate on the claim form that he or she prefers to communicate via regular U.S. mail, HMA and KMA shall respond by email.  In instances in which U.S. mail is used, HMA and KMA shall respond using the address provided on the corresponding Claim Form.

4.      Upon receipt of a Claim, Defendants or their Settlement Administrators shall review the Claim to determine whether the Claim meets all qualifications for payment set forth in this Settlement Agreement and, if so, the amount of the reimbursement owed.

5.      Within 60 days of receiving a Claim, Defendants or their Settlement Administrators shall provide written notice to the Claimant who submitted it, notifying the Claimant of:

a.      the amount, if any, that HMA or KMA proposes to reimburse the Claimant under this Settlement;

b.      the basis for HMA's or KMA's decision to either deny or pay less than a full reimbursement (if applicable); and

c.      the Claimant's right to attempt to cure any deficiency that led to HMA's or KMA's proposal to award less than full reimbursement.

6.      In response to receiving the written notice under section III.5, Claimants may:

a.      Attempt to cure the deficiency stated as justification for not awarding a full reimbursement, by submitting the information and/or documentation identified by HMA or KMA as lacking in the Claim, within 35 days of receipt of the written notice.  Defendants or their Settlement Administrators shall have 35 days from the date of the cure attempt to provide written notice to the Claimant stating its final determination as to

the total reimbursement to be paid to the Claimant and the reasons for the

reimbursement amount if less than requested; or

b.       Accept the partial reimbursement offered by HMA or KMA, which

acceptance will be presumed if no cure attempt is received by HMA or

KMA within 35 days of the date of the written notice.

7.       Within 60 days of receipt of HMA's or KMA's final determination of a Claim,

any Claimant dissatisfied with HMA's or KMA's determination may seek arbitration through a

BBB administered alternative dispute resolution process by notifying HMA or KMA (as the case

may be) in writing that the Claimant requests arbitration.  HMA and KMA shall promptly

provide copies of all such requests to Class Counsel.  After receipt of the Claimant's written

notice, HMA and KMA shall be permitted a 30-day good faith period in which to confer with the

Claimant in an attempt to resolve the claim.  If the claim cannot be resolved during this period,

Claimant shall initiate arbitration proceedings through a BBB administered alternative dispute

resolution process.  The arbitration shall take place by written submission with a telephonic

hearing to occur if the arbitrator determines it is needed.  The arbitrator shall have the ability to

make the final determination regarding the amount to be paid to any Claimant who elects this

process.  HMA and KMA shall provide Class Counsel with copies of any communications

concerning such arbitration review, and Class Counsel shall have the right to participate in any

written submission or telephonic hearing.  Class Counsel, however, shall not be obligated to

participate.  The expense for each such arbitration review shall be borne by HMA (for Hyundai

Class Vehicles) or KMA (for Kia Class Vehicles) unless the arbitrator finds that the Claimant's

claims were brought in bad faith.  HMA and KMA will not bear the costs of Claimant's

attorneys' fees by Class Counsel or other counsel selected by the Claimant (if any).

8.       On a monthly basis beginning 30 days after the Notice Date, HMA and KMA

shall provide Class Counsel with a copy of each final determination notice sent by HMA and

KMA pursuant to section III.5., along with the Claim Form and all other documentation

associated with the Claim.

9.       For each Claim qualifying for a reimbursement payment under this Settlement

Agreement, HMA (for Hyundai Class Vehicles) and KMA (for Kia Class Vehicles) shall mail to

the Claimant, at the address on the Claim Form, no later than 30 days after the Effective Date, a

check or a reimbursement debit card, at the Class member's request.  The debit cards provided

under this Settlement shall be redeemable for at least one year, without any fees charged by HMA, KMA, or the debit card issuer, at ATMs and merchants that accept Visa cards.  The debit cards shall indicate their "use by" dates on their face.

10.     The value of any debit card shall remain the property of HMA or KMA unless and until it is expended by the Claimant.  Upon expiration of any debit card, any unexpended funds shall become the permanent property of HMA or KMA.

11.     The Parties acknowledge and agree that any and all provisions, rights, or benefits conferred by any law of any state or territory of the U.S., or any principle of common law, that provides for how residual amounts in a settlement fund should be distributed, including, but not limited to, California Code of Civil Procedure section 384(b), are not applicable to this Settlement Agreement.  Although the Parties expressly agree that this Settlement is not governed by California Code of Civil Procedure section 384(b) or other similar laws and does not create a settlement fund nor any "unpaid residue," the Class Representatives on behalf of themselves and the Class members nonetheless expressly acknowledge and agree that, to the extent permitted by law, they are waiving any protections of California Code of Civil Procedure section 384(b) and of any comparable statutory or common law provision of any other jurisdiction.

12.     The Parties acknowledge and agree that the forms of compensation set forth in sections II.C, II.D, II.E, II.F, II.G, and II.H do not constitute gift cards, gift certificates, or member rewards cards under any federal and/or state laws.

13.     Nothing in this Settlement Agreement shall be read to prevent HMA or KMA from electing, at its sole discretion and on a case-by-case basis, to implement or to continue to implement any customer satisfaction or goodwill policy, program, or procedure at its discretion, that provides consideration to Class members over and above that required by this Settlement, without regard to the Class members' entitlement to relief under the Settlement.  No such election by HMA or KMA, however, shall act to deprive a Class member or Claimant of any of the benefits available under the Settlement.

14.     Unless otherwise specified, all terms of this Settlement Agreement apply to class members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza* class population).

**IV.     NOTICE TO THE CLASS**

      **A.     CAFA Notice**

      1.      In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, HMA and KMA shall provide notice of this Settlement to the Attorney General of the United States, and the attorneys general of each state or territory in which a Class member resides.

      **B.     Notice Deadline**

      1.      No later than the Notice Date, HMA and KMA shall cause notice to the Class to be disseminated by U.S. mail, email, and the dedicated settlement website (with a link to the dedicated settlement website from www.hyundaiusa.com/myhyundai (for Hyundai Class Vehicles) or www.owners.kia.com (for Kia Class Vehicles)).  The form and substance of all notices provided by HMA and KMA to Class members shall be subject to prior input and approval from Class Counsel.

      **C.     Individual Class Notice Methods**

      1.      Following the Court granting preliminary approval of this Settlement, Defendants or their Settlement Administrators shall provide by direct U.S. mail, to all reasonably identifiable Class members, each of the following: (i) the Long Form Notice and (ii) a Claim Form.  For purposes of identifying the requisite names and addresses, Defendants or their Settlement Administrators agree to provide, to the extent they have not already done so, all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to R.L. Polk & Company, or a similar third-party entity, who shall be authorized to use that information to obtain the names and most current addresses of Class Vehicle owners through state agencies.  Because some states require a prior court order before vehicle owner and lessee information can be released, such information may not be available until after the preliminary approval order is entered.  Prior to mailing individual notice, Defendants or their Settlement Administrators shall conduct an address search through the United States Postal Service's National Change of Address database to update the address information for Class Vehicle owners.  For each individual notice that is returned as undeliverable, Defendants or their Settlement Administrators shall use its best efforts to conduct an advanced address search using HMA's and KMA's customer database information regarding the Class Vehicle owner to obtain a deliverable address.

2.     Additionally, Defendants or their Settlement Administrators shall provide by email, to all Class members for which HMA and KMA maintain email addresses, a hyperlink to the dedicated settlement website discussed below and electronic versions of the Long Form Notice and Claim Form following the Court granting preliminary approval of this Settlement.

3.     Defendants or their Settlement Administrators shall each maintain a dedicated settlement website— the content and domain name of such are subject to prior Class Counsel approval—which will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism by which Claimants can submit Claims electronically; (iii) instructions on how to contact Defendants or their Settlement Administrators for assistance with their Claims; (iv) the Long Form Notice; (v) the Pamphlet; (vi) the Claim Form; (vii) this Settlement Agreement; (viii) any orders issued in this Action approving or disapproving of the proposed settlement; and (ix) any other information the Parties determine is relevant to the Settlement.  Defendants or their Settlement Administrators shall make the same information available to Class members through www.hyundaiusa.com/myhyundai and www.owners.kia.com via links to the dedicated settlement websites (apart from the mechanism for submitting Claims).

4.     Defendants or their Settlement Administrators shall be prepared, through Defendants' customer service departments, to respond to questions regarding the status of submitted Claims, how to submit a Claim, and other aspects of this Settlement.  Defendants or their Settlement Administrators shall maintain a dedicated toll-free telephone number for Class members to call.  The telephone numbers shall be listed on the Long Form Notice, Pamphlet, Claim Form, and the dedicated settlement websites.

5.     For a period ending 90 days after the Notice Date, Defendants or their Settlement Administrators shall provide Class Counsel with reasonable periodic reports of the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable.  The Claims Administrator shall communicate with Class Counsel regarding delivery of notice and the number of Class members who have responded to the notice.

6.     Following the Effective Date of the Settlement Agreement, Defendants or their Settlement Administrators shall provide a copy of the company's version of the Pamphlet by direct U.S. mail to all of HMA's and KMA's respective reasonably identifiable Class members.  Defendants or their Settlement Administrators shall use the name and address information

compiled through the steps described in section IV.C.1 and the claims process pursuant to the
Settlement Agreement.

7.      Additionally, following the Effective Date of the Settlement Agreement,
Defendants or their Settlement Administrators shall each provide an electronic version of the
Pamphlet by email to all of its Class members for which HMA and KMA maintain email
addresses.  The Parties may publically release and announce the fact and terms of the settlement,
subject to the Parties reaching mutual written consent on the contents of the press release prior to
filing for preliminary approval.  Excepting such announcement and the Exhibits to this
agreement, neither the Parties nor their Counsel shall issue (or cause any other Person to issue)
any other press release concerning this Agreement or the settlement set forth herein, unless
otherwise agreed to in writing and neither the Parties or their Counsel shall make (or cause any
other Person to make) any statements of any kind to the press concerning this Agreement or the
settlement set forth herein, except that a Party or Party's counsel may respond to an inquiry from
a member of the press by (a) directing the member of the press to a public resource to review or
obtain a copy of this Agreement or the Class Notice or (b) by supplying additional information to
the member of the press, provided that the responding Party will provide such additional
information to the other Parties as promptly as practicable.  A Party or Party's counsel shall
provide notice to the other Parties before responding to a press inquiry whenever reasonably
possible.  If such notice cannot reasonably be provided before responding to a press inquiry, the
responding Party or Party's Counsel shall notify the other Parties promptly after responding to
the press inquiry.  This paragraph does not prevent Class Counsel from communicating with
individual class members about the Settlement.

8.      Beginning no later than two weeks after the Effective Date, HMA and KMA shall
provide—in both hard copy and electronic form— the Pamphlet to each of its authorized
dealerships, with instruction to disseminate the Pamphlet to any person who presents a Class
Vehicle for maintenance or service of any type and information regarding HMA's and KMA's
product improvement campaign, including the free knock sensor detection software update.

## V.      ATTORNEYS' FEES AND SERVICE PAYMENTS

1.      Plaintiffs, through Class Counsel, shall petition the Court for an attorneys' fee
award, cost award, and for Class Representative service payments.  Any petition by Plaintiffs,
through Class Counsel, shall be inclusive of an attorneys' fee and cost award sought on behalf of

Plaintiffs' Counsel, including any attorneys currently or previously affiliated with those law firms.

2.     The total amount of attorneys' fees requested will be negotiated by the parties at a later date.  If the parties are unable to agree on the requested amount of attorneys' fees, the parties will submit the issue to the Court.

3.     Subject to entry of the Final Approval Order and Judgment pursuant to section VII.C, HMA and KMA will not oppose, undermine, or solicit others to oppose or undermine Class Representative service payments in the amount of each.

4.     HMA and KMA agree to pay the attorneys' fees, costs, and service payments separate and apart from, and in addition to, the relief provided to the Class.

5.     HMA and KMA shall pay Class Counsel the fees, expenses, and service payments awarded by the Court within the later of thirty (30) days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order.  Within three (3) days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Class Counsel shall provide HMA and KMA, for each payee, a W-9, wire instructions on their firm letterhead for the payment to Class Counsel of fees, expenses, and service payments awarded by the Court.

## VI.    MUTUAL RELEASE

1.     Upon entry of a Court order granting final approval of the Settlement and entering judgment pursuant to section VII.C below, Releasors irrevocably release, waive, and discharge any and all past, present, and future liabilities, claims, causes of action, legal claims, damages, costs, attorneys' fees, losses, or demands that have been brought or could have been brought, whether known or unknown, existing or potential, or suspected or unsuspected relating to Class Vehicles against Releasees, whether or not specifically named herein, asserted or unasserted, under or pursuant to any statute, regulation, common law, or equitable principle, based on (i) the facts alleged in any complaint filed in the Action and all legal claims of whatever type or description arising out of, that may have arisen as a result of, or which could have been brought based on, any of the facts, acts, events, transactions, occurrences, courses of conduct,

representations, omissions, circumstances or other matters pleaded in complaints filed in the Action, (ii) oil consumption, oil maintenance, engine repairs or replacement related to oil maintenance for the Class Vehicles, engine durability related to oil maintenance for the Class Vehicles, or vehicle fire originating in the engine compartment or (iii) marketing or advertising for the oil consumption, oil maintenance, engine repairs or replacement related to oil maintenance for the Class Vehicles, engine durability related to oil maintenance for the Class Vehicles, or vehicle fire originating in the engine compartment. The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, (iii) damage to tangible property other than a Class Vehicle, or (iv) subrogation.

The release effected by this Settlement Agreement is intended to be a specific release and not a general release. If, despite, and contrary to the Parties' intention, a court construes the release as a general release under California law and determines that Section 1542 of the California Civil Code is applicable to the release, the Class Representatives, on behalf of themselves and all Class members, hereby expressly waive and relinquish to the fullest extent permitted by law, the rights provided by Section 1542 of the California Civil Code, which provides:

> *Certain Claims Not Affected By General Release:* *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

Each of the Class Representatives expressly acknowledges that the Class Representative has been advised by Class Counsel of the contents and effects of Section 1542, and with knowledge, each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, whatever benefits the Class Representatives and the Class members may have had pursuant to such section. Each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, the benefit of any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

2.      Plaintiffs and the Class members recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and Judgment, Releasors fully, finally, and forever settle and release any and all legal claims against Releasees.  The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement.

3.      By this Settlement Agreement, HMA, KMA, HMC, and KMC, release the Plaintiffs and Plaintiffs' Counsel from any and all claims or causes of action that were, or could have been, asserted by HMA, KMA, HMC, and KMC, pertaining to this Action or Settlement. HMA, KMA, HMC, and KMC, recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, both entities nevertheless agree that, upon entry of an order granting final approval to this Settlement and entering judgment, HMA, KMA, HMC, and KMC, fully, finally, and forever settle and release any and all such claims.  The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement.

4.      This Settlement and the release in the preceding paragraph do not affect the rights of Class members who timely and properly request exclusion from the Class, or anyone encompassed within the class definitions set forth in the complaints in this Action who are not a member of the Class defined in this Settlement Agreement, including but not limited to the named plaintiffs and putative class members in *Flaherty* that are not expressly named, identified, or encompassed in this Settlement Agreement.  The Parties do not intend this Settlement Agreement and release to affect any legal claims that arise out of a consumer's purchase or use of any vehicle other than a Class Vehicle.  The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, (iii) damage to tangible property other than a Class Vehicle, or (iv) subrogation.

5.      The administration and consummation of the Settlement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Settlement.  The Court retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement, including, but not limited to, orders enjoining Class members from prosecuting claims that are released pursuant to the Settlement and allowing for discovery related to objectors.

6.      Upon issuance of the Final Approval Order and Judgment: (i) the Settlement shall be the exclusive remedy for Class members; (ii) Releasees shall not be subject to liability or expense of any kind to any Class member(s) for reasons related to the Action except as set forth herein; and (iii) Class members shall be permanently barred from initiating, asserting, or prosecuting any and all released claims against the Releasees.

## VII.    SETTLEMENT APPROVAL PROCESS

### A.    Intention to Complete Settlement.

1.      The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement and the transactions contemplated hereby.  Plaintiffs shall prepare all preliminary approval and final approval papers.

2.      If the preliminary approval order or the Final Approval Order and Judgment is not obtained from the Court in the form contemplated by this Settlement or Final Approval Order and Judgment is reversed or materially modified on appeal this Settlement should be null and void *ab initio* upon election of any of the Parties and have no further force and effect with respect to any of the Parties in this Action.  Nothing in this provision shall affect HMA and KMA's obligation to pay all costs reasonably incurred by the settlement administration process.

### B.    Preliminary Court Approval

1.      Promptly after execution of this Settlement by the Parties, counsel for the Parties shall present this Settlement to the Court for review and jointly seek entry of an order that certifies the Class as a settlement class, grants preliminary approval of this Settlement, and directs HMA and KMA to provide notice of the Settlement in the manners listed herein.

2.      No later than twenty (20) days before the Court hearing on final approval of the Settlement, HMA and KMA shall provide affidavits for the Court, with a copy to Class Counsel, attesting that notice was disseminated in a manner consistent with the terms of this Settlement Agreement, or as otherwise required by the Court.

### C.    Final Court Approval

1.      Once the Court enters a preliminary approval order, counsel for the Parties shall use their best efforts to promptly obtain entry of a Final Approval Order and Judgment that:

a.      Finds the Settlement to be fair, reasonable, and adequate;

b.      Finds that the Class notice given constitutes the best notice practicable;

c.      Approves the release specified in Section VI as binding and effective as to all Class members who have not properly excluded themselves from the Class;

d.      Directs that judgment be entered on the terms stated herein; and

e.      Provides that the Court will retain jurisdiction over the Parties and Class members to enforce the terms of the final order and judgment.

2.      Upon entry of the final order and judgment, this Action shall be dismissed, on its merits and with prejudice, with respect to all Plaintiffs and all Class members who have not properly excluded themselves from the Class, and without prejudice as to anyone else, subject to the continuing jurisdiction of the Court, including but not limited to the claims of the named plaintiffs and putative class members in *Flaherty* that are not expressly named, identified, or encompassed in this Settlement Agreement.

## VIII.   REQUESTS FOR EXCLUSION

1.      The provisions of this section shall apply to any request by a Class member for exclusion from the Class.

2.      Any Class member may make a request for exclusion by submitting such request in writing as set forth in the Class notice.

3.      Any request for exclusion must be submitted not later than the date specified in the Court's preliminary approval order.

4.      Any request for exclusion shall (i) state the Class member's full name and current address, (ii) provide the model year and Vehicle Identification Number ("VIN") of his/her/its Class Vehicle(s) and the approximate date(s) of purchase or lease, and (iii) specifically and clearly state his/her/its desire to be excluded from the Settlement and from the Class.

5.      Failure to comply with these requirements and to timely submit the request for exclusion will result in the Class member being bound by the terms of the Settlement Agreement.

6.      Any Class member who submits a timely request for exclusion may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

7.     HMA and KMA shall report the names of all Class members who have submitted a request for exclusion to Class Counsel on a weekly basis, beginning 30 days after the Notice Date.

8.     Class Counsel represent and warrant that they have no other agreements with other counsel respecting Class members, including any agreements with respect to referring, soliciting, or encouraging any Class members to request to be excluded (or "opt out") from this agreement.

9.     Upon certification of the Class in connection with the Preliminary Approval of this agreement, Class Counsel agree to seek in the Preliminary Approval Order from the Court a provision encouraging all written communications to multiple Class members with respect to this Agreement to be reviewed and approved by Class Counsel and the Court, and Class Counsel agree to abide by that provision as may be required by the Court.

## IX.     OBJECTIONS

1.     The Parties will request that the Court enter an order requiring any Class member who wishes to enter an objection to be considered, to submit a written notice of objection to HMA and KMA by the deadline set in the Court's preliminary approval order.

2.     To state a valid objection to the Settlement, an objecting Class member must provide the following information in his, her, or its written objection: (i) the case name and number, *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.); (ii) his/her/its full name, current address, and current telephone number; (iii) the model year and VIN of his/her/its Class Vehicle(s); (iv) a statement of the objection(s), including all factual and legal grounds for the position; (v) copies of any documents the objector wishes to submit in support; (vi) the name and address of the lawyer(s), if any, who is representing the objecting Class member in making the objection or who may be entitled to compensation in connection with the objection; (vii) a statement of whether the Class member objecting intends to appear at the Final Approval Hearing, either with or without counsel; (viii) the identity of all counsel (if any) who will appear on behalf of the Class member objecting at the Final Approval Hearing and all persons (if any) who will be called to testify in support of the objection; and (ix) the signature of the Class member objecting, in addition to the signature of any attorney representing the Class member objecting in connection with the objection, and date the objection.  In addition, any Class member objecting to the Settlement shall provide a list of any other objections submitted

by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five years.  If the Class member or his or her counsel has not made any such prior objection, the Class member shall affirmatively so state in the written materials provided with the objection.

3. If the objecting Class member intends to appear, in person or by counsel, at the final approval hearing, the objecting Class member must so state in the objection.  Any Class member who does not state his or her intention to appear in accordance with the applicable deadlines and other specifications, or who has not filed an objection in accordance with the applicable deadlines and other specifications, will be deemed to have waived any objections to the Settlement and can be barred from speaking or otherwise presenting any views at the final approval hearing.

4. The Parties will request that the Court enter an order providing that the filing of an objection allows Class Counsel or counsel for HMA and KMA to notice such objecting person for and take his, her, or its deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection.  Failure by an objector to make himself/herself/itself available for a deposition or comply with expedited discovery requests may result in the Court striking the objection and otherwise denying that person the opportunity to be heard.  The Court may tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for improper purpose.

5. Any objector who seeks a fee for their objection shall do so as prescribed under Federal Rule of Civil Procedure 23(e)(5)(B).

6. These procedures and requirements for objecting are intended to ensure the efficient administration of justice and the orderly presentation of any Class member's objection to the Settlement, in accordance with the due process rights of all Class members.

7. Any Class member who fails to file and serve timely a written objection containing all of the information listed in paragraphs 2 and 3 above, including notice of his/her intent to appear at the Final Approval Hearing, shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by any means, including but not limited to an appeal.

8.     The Parties shall promptly inform the Court of any consideration sought by an objector and the circumstances of such a request.

## X.     MISCELLANEOUS

### A.     Choice of Law

This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of California without giving effect to any choice or conflict of law provision, or rule that would cause the application of the laws of any other jurisdiction.

### B.     Not Evidence

1.     The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party.

2.     Neither this Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of it: (a) is, or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any legal claim made by Plaintiffs or Class members, or of any wrongdoing or liability of HMA and/or KMA, or (b) is, or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of Releasees in any proceeding in any court, administrative agency, or other tribunal.

3.     This provision shall survive the expiration or voiding of the Settlement Agreement.

### C.     Headings

The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

### D.     Effect of Exhibits

The exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

### E.      Entire Agreement

This Settlement Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this agreement has been made or relied on except as expressly set forth in this Settlement Agreement.  No modification or waiver of any provisions of this Settlement Agreement shall in any event be effective unless the same shall be in writing and signed by the person or Party against whom enforcement of the Agreement is sought.

### F.      Counterparts

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it, and all of which shall be deemed a single agreement.

### G.      Arm's-Length Negotiations

1.      The Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length.  The provisions for attorneys' fees and costs and service awards set forth herein were negotiated separately from and after agreement on the provisions for relief to Plaintiffs and the Class.

2.      All terms, conditions, and exhibits in their exact form are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

3.      The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel.  Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

### H.    Public Statements.

1.    The Parties and their Counsel agree to keep the substance of this agreement confidential until the date on which the agreement is filed with the Court, provided that this Section shall not prevent HMA or KMA from disclosing such information, prior to the date on which the agreement is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or attorneys, nor shall it prevent the Parties and their Counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of the agreement; provided further that HMA and KMA may disclose publicly the terms of the agreement that it deems necessary to meet its regulatory obligations or fiduciary duties; and provided further that Plaintiffs may disclose the terms to their expert(s).  Neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any press release concerning the existence or substance of this agreement, excepting the jointly-created press release described previously in Section IV.C.7.

### I.    Good Faith

The Parties acknowledge that prompt approval, consummation, and implementation of this Settlement is essential.  The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement, shall promptly perform their respective obligations hereunder, and shall attempt to resolve any dispute that may arise under this Settlement in a good faith and expeditious manner.

### J.    Continuing Jurisdiction

The Parties agree the Court may retain continuing and exclusive jurisdiction over them, and all Class members, for the purpose of the administration and enforcement of this Settlement.

### K.    Extensions of Time

The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement without further notice (subject to Court approval as to court dates).

### L.    Service of Notice

Whenever, under the terms of this Settlement Agreement, written notice is required to HMA, HMC, KMC, or KMA or Class Counsel, such service or notice shall be directed to the

individuals and addresses specified below, unless those individuals or their successors give notice to the other parties in writing:

As to Plaintiffs:        Matthew Schelkopf (pro hac vice)
                         Sauder Schelkopf
                         555 Lancaster Ave.
                         Berwyn, PA 19312
                         Telephone: (610) 200-0581
                         Email: mds@sstriallawyers.com

                         Adam Gonnelli, Esq. (pro hac vice)
                         THE SULTZER LAW GROUP
                         85 Civic Center Plaza, Suite 104
                         Poughkeepsie, NY 12601
                         Tel: (845) 483-7100
                         Fax: (888) 749-7747
                         Email: gonnellia@thesultzerlawgroup.com

                         Bonner Walsh (pro hac vice)
                         WALSH PLLC
                         1561 Long Haul Road
                         Grangeville, ID 83530
                         Telephone: (541) 359-2827
                         Facsimile: (866) 503-8206
                         Email: bonner@walshpllc.com

                         Steve W. Berman
                         HAGENS BERMAN SOBOL SHAPIRO LLP
                         1301 Second Avenue, Suite 2000
                         Seattle, WA 98101
                         Telephone: (206) 623-7292
                         Fax: (206) 623-0594
                         Email: steve@hbsslaw.com


As to HMA, HMC,
KMC and KMA:             Shon Morgan
                         **QUINN EMANUEL URQUHART**
                         **& SULLIVAN, LLP**
                         865 S. Figueroa St. 10th Floor
                         Los Angeles, California 90017


        IN WITNESS HEREOF, each of the Parties hereto has caused this agreement to be executed, as of the day(s) set forth below.

Dated:  October  ____, 2019          By: _____

    Matthew Schelkopf
    Sauder Schelkopf
    555 Lancaster Ave.
    Berwyn, PA 19312
    Telephone: (610) 200-0581
    Email: mds@sstriallawyers.com

    Adam Gonnelli, Esq.
    THE SULTZER LAW GROUP
    85 Civic Center Plaza, Suite 104
    Poughkeepsie, NY 12601
    Tel: (845) 483-7100
    Fax: (888) 749-7747
    Email: gonnellia@thesultzerlawgroup.com
    Co-Lead Counsel

    Bonner Walsh
    WALSH PLLC
    1561 Long Haul Road
    Grangeville, ID 83530
    Telephone: (541) 359-2827
    Facsimile: (866) 503-8206
    Email: bonner@walshpllc.com
    Executive Committee

    *Counsel for Plaintiffs*, *In re: Hyundai and Kia Engine
    Litigation*, No. 8:17-cv-00838 (C.D. Cal.)

Dated:  October  ____, 2019          By: _____

    Steve W. Berman
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Second Avenue, Suite 2000
    Seattle, WA 98101
    Telephone: (206) 623-7292
    Fax: (206) 623-0594
    Email: steve@hbsslaw.com

    Christopher R. Pitoun
    HAGENS BERMAN SOBOL SHAPIRO LLP
    301 N. Lake Ave., Suite 920
    Pasadena, CA 91101
    Tel: (213) 330-7150

Fax: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert Hilliard
HILLIARD MUNOZ GONZALES L.L.P.
719 S Shoreline Blvd, Suite #500
Corpus Christi, TX 78401
Tel: (361) 882-1612
Fax: (361) 882-3015
Email: bobh@hmglawfirm.com

*Counsel for Plaintiffs, Flaherty v. Hyundai Motor
Company, et al.*, No. 18-cv-02223 (C.D. Cal.)

Dated:  October  ____, 2019          By: _____
                                          Shon Morgan
                                          **QUINN EMANUEL URQUHART
                                          & SULLIVAN, LLP**
                                          865 S. Figueroa St. 10th Floor
                                          Los Angeles, California 90017

                                          *Counsel for Defendants Hyundai Motor America, Hyundai
                                          Motor Company, Kia Motors Company and Kia Motors
                                          America*