1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

CASE NO. 8:17-CV-00838-JLS-JDE

12
13

In re: Kia Engine Litigation

**ORDER (1) CONDITIONALLY
GRANTING PLAINTIFFS'
UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT (Doc.
112); AND (2) SETTING A FINAL
FAIRNESS HEARING FOR
NOVEMBER 13, 2020, AT 10:30 A.M.**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement. (Mot., Doc. 112.) Plaintiffs seek preliminary approval of a proposed class action settlement of claims against Defendants Kia Motors America, Inc., Kia Motors Corporation, Hyundai Motor America, Inc., and Hyundai Motor Company, Ltd. arising out of Defendants' alleged failure to disclose a material defect in their Theta 2.0-liter and 2.4-liter gasoline direct injection engines (the "GDI Engines"). (Amended Consolidated Class Action Complaint ("Compl.") ¶ 2, Doc. 84.) In the instant Motion, Plaintiffs ask the Court to (1) preliminarily approve the terms of the class action settlement; (2) certify the proposed class for settlement purposes; [1] (4) appoint Matthew D. Schelkopf of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, Bonner Walsh of Walsh PLLC, and Steve W. Berman of Hagens Berman Sobol Shapiro LLP as Class Counsel; (5) authorize R.L Polk & Company, or a similar third party, to compile and provide information on Class Members' identities to Defendants; (6) approve the form and manner of class notice; and (7) schedule a final fairness hearing. (Proposed Order ¶¶ 3-6, 11, 12, Doc. 112-5.) On December 13, 2019, the Court held a hearing on the matter. At the hearing and by written order, the Court directed the parties to meet and confer regarding the Settlement Agreement's "Mutual Release" language to ensure that its scope was not overly broad. (*See* Doc. 120.) The parties also filed supplemental papers addressing the Court's concerns regarding (1) Defendants' proposed self-administration of the settlement and (2) the deadline for the submission of Claims under the Settlement Agreement. (*See* Order on Claims Administration, Doc. 126; Hyundai Self-Administration Supp. Brief, Doc. 127; Supplemental Schelkopf Decl., Doc. 129.) In response to the Court's concerns, the parties modified the release provision and Claims submission

---

[1] Plaintiffs seek to appoint the following individuals as Class Representatives: Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse.

deadline.  (*See* Revised Settlement Agreement, Doc. 128-1.)  Having read and considered the papers on file, held a hearing, and taken the matter under submission, the Court CONDITIONALLY GRANTS Plaintiffs' Motion and sets a final fairness hearing for November 13, 2020, at 10:30 a.m.

### I.  BACKGROUND

Plaintiffs Centko and Lazar filed a putative class action against Kia Motors America, Inc. on May 10, 2017.  (Centko-Lazar Compl., Doc. 1.)  They alleged that Kia vehicles using Theta 2.0 and 2.4-liter engines were plagued by a defect whereby the "connecting rod bearings" fracture and cause contaminated engine oil to circulate throughout the engine, resulting in "restricted and inadequate … lubrication," and ultimately engine failure.  (*Id*. ¶¶ 21-23.)  On October 2, 2017, the Court granted a stipulation to consolidate the Centko-Lazar action with a similar putative class action brought by Plaintiffs Stanczak and Creps, *Christopher Stanczak et al v. Kia Motors America, Inc.*, No. 8:17-cv-01365-JDS-JDE (C.D. Cal. 2017), which involved allegations concerning the same defect in Kia vehicles using Theta 2.0 and 2.4-liter engines.  (Doc. 53.)  On August 7, 2018, the Court granted a stipulation to further consolidate the action with three additional cases brought against Kia and Hyundai, alleging the very same engine defect: (1) *Wallace Coats et al. v. Hyundai Motor Company, Ltd. et al.*, No. 8:17-cv-02208-JLS-JDS (C.D. Cal. 2017); (2) *Maryanne Brogan v. Hyundai Motor America, et al.*, No. 8:17-cv-00622-JLS-JDE (C.D. Cal 2017); and (3) *Andrea Smolek v. Hyundai Motor America, et al.*, No. 2:18-cv-05255-JLS-JDE (C.D. Cal. 2018).  (Doc. 85.)  The consolidated matter, in its present form, bears the caption *In re: Kia Engine Litigation*, No. 8:17-cv-00838-JLS-JDE (C.D. Cal. 2017).

Plaintiffs filed their Amended Consolidated Class Action Complaint on July 31, 2018.  (Compl.)  They seek to represent a "nationwide class[2] of current and former owners and lessees" of "Class Vehicles"[3] equipped with GDI Engines.  (*Id.* ¶ 1.)  Plaintiffs allege that despite long-held knowledge, Defendants failed to disclose to purchasers and lessees of Class Vehicles that the GDI Engines contain the latent defect resulting in "the restriction of oil flow … to vital areas of the engine," and ultimately causing "vehicle stalling during operation and catastrophic engine failure."  (Compl. ¶ 2.)  Accordingly, Plaintiffs assert that this engine defect creates an "increased risk of accident, injury, or death" and "diminish[es] the intrinsic and resale value of the Class Vehicles."  (Id. ¶¶ 3-4.)  They further allege that Defendants actively concealed information about the defect and "routinely refused to repair the Class Vehicles without charge" or even "disclose the defect when Class Vehicles displaying symptoms consistent with the defect [were] brought in for service, instead choosing to ignore the defect until it … caused significant mechanical problems necessitating costly repairs."  (Id. ¶ 5.)  Plaintiffs bring claims for: (1) violation of California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.); (2)

---

[2] For the purposes of the instant Motion for Preliminary Approval, "'Settlement Class' or 'Class' refers to:  All owners and lessees of a Class Vehicle who purchased or leased a Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories and/or abroad."  (Revised Settlement Agreement at 4, Doc. 121-1.)

[3] "'Class Vehicles' refer to all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Hyundai Sonata vehicles, all 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Hyundai Santa Fe Sport vehicles, all 2014, 2015, 2018, and certain 2019 model year Hyundai Tucson vehicles, all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Kia Optima vehicles, all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Kia Sorento vehicles, and all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Kia Sportage vehicles, originally equipped with or replaced with a genuine Theta II 2.0 liter or 2.4 liter gasoline direct injection engine within OEM specifications, that were purchased or leased in the United States, excluding the territories, and including those that may have been purchased while the owner was abroad on active U.S. military duty. For 2019 model year vehicles listed above, the Class shall include those vehicles that were manufactured before the Knock Sensor Detection System technology described in this agreement was incorporated into their production."  (Revised Settlement Agreement at 4-5.)

violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200); (3)
violation of California False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.);
(4) violation of the Song-Beverly Act – Breach of Implied Warranty (Cal. Civ. Code §§
1792, 1791.2, et seq.); (5) violation of the Maine Unfair Trade Practice Act (5 Me. Rev.
Stat. § 205A, et seq.); (6) violation of the Illinois Consumer Fraud and Deceptive Practices
Act (85 ILCS 505/1 et seq. and 720 ILCS 295/1a); (7) breach of express warranty; (8)
breach of implied warranty; (9) breach of written warranty under the Magnuson-Moss
Warranty Act (15 U.S.C. § 2301, et seq.); (10) common law fraud; (11) breach of the duty
of good faith and fair dealing; and, (12) unjust enrichment.  (Id. ¶¶ 144-248.)

Defendants Hyundai Motor America, Inc., Hyundai Motor Company, Ltd., and Kia
Motors America, Inc. filed Motions to Dismiss on September 4, 2018.  (Docs. 86, 88.)  On
October 9, 2018, Plaintiffs opposed those Motions.  (Docs. 93, 94.)  Those Motion were
not decided, as the Court granted the parties' repeated stipulations to continue the
calendared hearings in light of the parties ongoing settlement efforts.  (*See* Docs. 97-109.)
Plaintiffs' counsel "met and conferred with counsel for Defendants on multiple occasions,
including with an engineering representative from HMA and KMA present, regarding the
allegations in the consolidated action, the potential defenses of HMA and KMA, and
potential resolution."  (Mot. at 3.)  "These meetings between counsel culminated in a
mediation session before Honorable Ronald M. Sabraw (Ret.) of JAMS on December 21,
2018, where the parties settled in principle."  (*Id.*)  On October 10, 2019, Plaintiffs filed
their unopposed Motion for Preliminary Approval of Class Action Settlement.  (Mot.)

The Settlement Agreement provides consideration to the class consisting of: (1) a
lifetime warranty for the engine short block of all Class Vehicles; (2) product recalls and
improvements; (3) reimbursement for previously undertaken Qualifying Repairs[4]; (4)

---

[4] "'Qualifying Repair' refers to any type of repair, replacement, diagnosis, or inspection of the
Class Vehicle short block assembly consisting of the engine block, crankshaft and bearings,
connecting rods and bearings, and pistons, due to a connecting rod bearing failure or symptoms
    (footnote continued)

reimbursement for incidental expenses incurred in connection with a Qualifying Repair; (5) "goodwill payments" provided if a "Class [M]ember is or was inconvenienced by delays of more than 60 days when obtaining a repair from an authorized Hyundai or Kia dealership;" (6) payments in compensation for a "loss of value for sold or traded-in vehicles due to a Loss Event[5];" (7) compensation for a "loss of vehicle by engine fire directly caused by the Class Vehicle's failure arising from a vehicle condition that would have otherwise been addressed by a Qualifying Repair;" and, (8) a "rebate program." (Mot. at 3-9; Revised Settlement Agreement at 10-21.)

In return for the settlement consideration, Class Members[6] will irrevocably release all claims based on:

> (i) the facts alleged in any complaint filed in the Action and all legal claims of whatever type or description arising out of, that may have arisen as a result of, or which could have been brought based on, any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters pleaded in complaints filed in the Action,
>
> (ii) The release described in section (i) includes claims related to issues of oil consumption, oil maintenance, and vehicle fires originating in the engine

---

associated with connecting rod bearing failure, but excluding Exceptional Neglect." (Revised Settlement Agreement at 8-9.)

[5] "'Loss Event' means any Class Vehicle incident that would have led to a Qualifying Repair (including, but not limited to, an engine fire) but either the cost of the repair was too great or other circumstances led the Class member to dispose of the Class Vehicle at a loss. This includes events in which there was insurance coverage, but where the Class member was still not made whole by such insurance payments." (Revised Settlement Agreement at 7.)

[6] The Releasors are defined in the Settlement agreement to include "Class Representatives, the Class members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing." (Revised Settlement Agreement at 10.)

compartment that are covered by and remedied under the Lifetime Warranty and other benefits described in Sections II.A through II.H (including the Lifetime Warranty, Repair Reimbursements, Other Repair-Related Reimbursements, Inconvenience Due to Repair Delays, Loss of Value for Sold or Traded-In Vehicles due to a Loss Event, Loss of Vehicle By Engine Fire, and Rebate Program).[7]

(Revised Settlement Agreement at 27-28.)  The "Releasees" covered by the Settlement Agreement are "entities that marketed the Class Vehicles, entities that designed, developed, and/or disseminated advertisements for the Class Vehicles, HMA, Hyundai America Technical Center, Inc. (also doing business as Hyundai-Kia America Technical Center), HMC, KMA, KMC, all affiliates of the Hyundai Motor Group, and each of their respective future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, dealers, distributors, agents, principals, suppliers, vendors, issuers, licensees, and joint ventures, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing."  (*Id.* at 9.)

Kia will employ a third-party to administer this settlement, while Hyundai intends to self-administer.  (Hyundai Self-Administration Supp. Brief at 1, 1 n.2.)  In either case, Defendants "shall be responsible for all costs of Class notice and settlement administration."  (*Id.* at 20-21.)  Defendants have also agreed to pay an award of attorneys' fees, costs, and Class Representative service payments, "separate and apart from, and in addition to, the relief provided to the Class."  (Mot. at 11; Revised Settlement Agreement

---

[7] "The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, (iii) damage to tangible property other than a Class Vehicle, or (iv) subrogation." (Settlement Agreement at 28.)

at 27.)  The parties have yet to negotiate the size of that award and if they are unable to reach an agreement, they will submit the issue to the Court.  (Revised Settlement Agreement at 27.)

The Settlement Agreement also describes the manner in which notice will be disseminated to the Class.  Defendants shall ensure that no later than the Notice Date, notice will be distributed via U.S. mail, email, and the dedicated settlement websites.  (*Id.* at 24; *see also* Hyundai Self-Administration Supp. Brief at 3-4.)  The direct mailing campaign will deliver (1) the Long Form Notice and (2) a Claim Form to all "reasonably identifiable" Class Members.  (Revised Settlement Agreement at 24.)  To identify Class Members names and most current addresses, Defendants or their elected administrator will provide all Class Vehicles VINs, and the known names and addresses of those vehicles' owners and lessees, to R.L. Polk & Company or a similar entity, such as IHS Markit.  (*Id.*)  That entity, through the use of that data, will compile a notice mailing list, validated through a U.S.P.S. National Change of Address database search to determine Class Member's most recent addresses.  (*Id.* at 25.)  In response to any mailed notice that is returned as undeliverable, Defendants will, using information in their customer databases, make further efforts to obtain a deliverable address.  (*Id.*)  The Long Form Notice and Claim Form will also be sent to all known Class Member email addresses.  (*Id.*)  Those documents, and additional settlement-related information, will be accessible on the dedicated settlement websites, links to which will be placed on Defendants' websites: www.hyundaiusa.com/myhyundai and www.owners.kia.com.  (*Id.*)

In order to obtain most forms of consideration offered under the proposed settlement, Class Members must submit a Claim Form within ninety days of the date of the Final Approval Order[8].  (*See id.* 10-20.)  However, there is no such limitation on the

---

[8] For compensation sought due to loss of vehicle by engine fire, Class Members may submit a Claim Form within ninety days of the date of the Final Approval Order or, for losses occurring

(footnote continued)

benefits conferred to the Class Members under the lifetime warranty coverage provided for the engine short block.  (*Id*. at 10-11.)  Claim Forms are to be submitted via U.S. mail, email, or through the dedicated settlement websites.  (*Id*. at 21.)  Upon receipt of any Claim Form, Defendants, or their chosen administrator, shall review the Claim[9] for compliance with the conditions for payment set forth in the Settlement Agreement, and within sixty days, notify the Claimant of the review's outcome and the amount in which the Claimant will be reimbursed.  (*Id*. at 21-22.)  Claimants shall thereafter have thirty-five days to attempt to cure any deficiencies identified in their original claim, and upon receipt of the cure attempt, Defendants or their chosen administrator shall, with thirty-five days, notify the Claimant of the final determination on their claim.  (*Id*. at 22.)  Within sixty days of receipt of the final determination, a Claimant may seek arbitration of their claim.  (*Id*.)  For each Claim that results in a reimbursement payment, Defendants will mail to the Claimant, within thirty days of the Effective Date, a check or debit card, at the Class Member's request.  (*Id*. at 23.)

Plaintiffs now move for preliminary approval of the proposed settlement.  (Mot.)  Plaintiffs contend that the proposed settlement was "thoroughly negotiated" and is fair, reasonable, adequate, and desirable to the Settlement Class.  (*Id*. at 3, 11, 15.)

---

after that date, within ninety days of the occurrence of the engine compartment fire.  (Revised Settlement Agreement at 19.)

[9] In its Supplemental Brief on Self-Administration Hyundai provided additional detail on this review process.  (*See* Hyundai Self-Administration Supp. Brief at 4-5, Doc. 127.)  Hyundai will retain third-party vendor JNR Adjustment Company, to conduct an initial review of claims and refer less "straightforward" claims to the Hyundai customer service department for further analysis.  (*Id*. at 4; Lee Decl. ¶ 6, Doc. 127-1.)  JNR will commit approximately fifty employees to this review process while Hyundai has prepared fifty dedicated customer service representatives to conduct reviews, reserving capacity to add twenty representatives.  (Hyundai Self-Administration Supp. Brief at 5; Lee Decl. ¶¶ 5, 8.)

## II. <u>CONDITIONAL CERTIFICATION OF THE CLASS</u>

Plaintiffs request that the Court preliminarily certify the proposed Settlement Class for settlement purposes under Rule 23(a) and 23(b)(3).  (Mot. at 19-23.)

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation."  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 564 U.S. at 350.  This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  *Id.* at 350–51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  *Id.* at 345.  Here, Plaintiffs seek certification of the class under Rule 23(b)(3), which permits maintenance of a class action if "the court finds that the questions

of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.  The Proposed Class Meets All Rule 23(a) Requirements

#### 1.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "The Ninth Circuit has required at least fifteen members, to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement."  *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 232 (C.D. Cal. 2018).  By Plaintiffs' calculations, the Class Vehicles number 4.1 million, meaning that the settlement class certainly satisfies the numerosity requirement.  (Mot. at 20.)

#### 2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Dukes*, 564 U.S. at 349–50 (citation and internal quotation marks omitted).  The plaintiff must allege that the class injuries "depend upon a common contention" that is "capable of classwide resolution."  *Id.* at 350.  In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (internal quotation marks and citation omitted).

Here, the causes of action raise a variety of questions common to the Settlement Class, including: (i) whether the Class Vehicles' engines all suffered the same risks arising from Defendants' unreasonable acts and omissions in the manufacturing and production of

certain Theta II GDI engines and its components ("defective engines"); (ii) whether the defective engines can cause catastrophic engine failure and potentially result in engine fires; (iii) whether and when Defendants knew of the defective engines; (iv) whether a reasonable consumer would consider the defective engine and its consequences to be material; (v) whether the defective engine implicates safety concerns; and (vi) whether Defendants' conduct violates the consumer protection statutes alleged, and the terms of their warranties.  Accordingly, Plaintiffs easily satisfy the commonality requirement.  *See Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010).

### 3.    Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*, 564 U.S. 338 (2011).  As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent."  *Id.* (citing *Gen. Tech. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).  The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other.  *Dukes*, 564 U.S. at 349 n.5 (citing *Falcon*, 457 U.S. at 157–58 n.13).

In the motion at bar, Plaintiffs request that they be appointed class representatives. (Mot. at 1.)  Here, Plaintiffs' claims arise from the same common course of conduct and events as the claims of all Class Members.  Plaintiffs and the Class Members are all purchasers or lessees of Class Vehicles utilizing GDI Engines that suffer from the same alleged latent defect.  (*Id.* at 20-21.)  And as Plaintiffs point out, "[t]ypicality can be satisfied despite different factual circumstances surrounding the manifestation of the

1    defect." *Wolin*, 617 F.3d at 1175.  Accordingly, Plaintiffs satisfy the typicality

2    requirement.

3          **4.     Adequacy**

4          Rule 23(a)(4) permits certification of a class action only if "the representative

5    parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

6    23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named

7    plaintiffs and their counsel have any conflicts of interest with other class members and

8    (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of

9    the class?"  *Hanlon*, 150 F.3d at 1020.

10         Again, Plaintiffs' claims arise out of the same set of facts as the claims for the

11   proposed Settlement Class.  Thus, their interest in obtaining the maximum recovery is

12   coextensive with the interests of the Class Members.  Further Plaintiffs assert that they and

13   their counsel have vigorously litigated and negotiated this action and will continue to do

14   so.  (Mot. at 21.)  The Court notes that Plaintiffs seek service awards of "less than $5,000

15   each."  (See Revised Settlement Agreement at 10-20.)  Courts recognize a potential

16   conflict of interest between the named plaintiffs and the class when "there is a large

17   difference between the enhancement award and individual class member recovery."

18   *Mansfield v. Sw. Airlines Co.*, No. 13CV2337 DMS (KSC), 2015 WL 13651284, at *7

19   (S.D. Cal. Apr. 21, 2015).  While the proposed service awards do not appear to pose any

20   problem in this instance, at the final approval stage, the Court will nevertheless "be

21   vigilant in scrutinizing all incentive awards to determine whether they [impact] the

22   adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d

23   1157, 1163 (9th Cir. 2013).  At this preliminary stage, and in the absence of any apparent

24   conflict, the Court concludes that Plaintiffs are adequate Class Representatives.

25

26

27

28

**B.     The Proposed Class Meets the Rule 23(b) Requirements**

Plaintiffs seek certification under Rule 23(b)(3).  (Mot. at 21-23.)  For the reasons set forth below, the Court holds that certification of the proposed Settlement Class is appropriate.

Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. R. 23(b)(3) (emphases added).  When examining a class that seeks certification under Rule 23(b)(3), the Court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id*. The Court finds that Plaintiffs' proposed Class satisfies both the predominance and superiority requirements.

**1.     Predominance**

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (citations and internal quotation marks omitted).  "Rule 23(b)(3) requires [only] a showing that questions common to the

1   class predominate, not that those questions will be answered, on the merits, in favor of the

2   class." *Id.* (alterations in original).

3         Here, as discussed above, the Class Members' claims are all tied to Defendants'

4   actions in connection with the GDI Engines and the sale and leasing of the Class Vehicles.

5   (Mot. at 21-22.)  If the GDI Engine contains an inherent latent defect, then all Class

6   Members have a range of identical consequential claims.  "A common nucleus of facts and

7   potential legal remedies dominates this litigation."  *Hanlon*, 150 F.3d at 1022 (finding

8   predominance satisfied in analogous circumstances).  Thus, common questions will

9   predominate.

10       **2.**    **Superiority**

11         The Court further finds that a class action would be a superior method of

12   adjudicating Plaintiffs' claims for the proposed Class.  "The superiority inquiry under Rule

13   23(b)(3) requires determination of whether the objectives of the particular class action

14   procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023.  "This

15   determination necessarily involves a comparative evaluation of alternative mechanisms of

16   dispute resolution."  *Id.*  Here, if each member of the proposed Class pursued a claim

17   individually, the judicial system would be heavily burdened and would run afoul of Rule

18   23's focus on efficiency and judicial economy.  *See Vinole v. Countrywide Home Loans,*

19   *Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by

20   class representation would further the goals of efficiency and judicial economy").  Further,

21   litigation costs would likely exceed potential recovery if each Class Member litigated

22   individually.  "Where recovery on an individual basis would be dwarfed by the cost of

23   litigating on an individual basis, this factor weighs in favor of class certification."  *Wolin v.*

24   *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

25         In light of the number of Class Vehicles at issue here, and considering the non-

26   exclusive factors under Rule 23(b)(3)(A)–(D), the Court finds that Class Members'

27   potential interests in individually controlling the prosecution of separate actions and the

28

1   potential difficulties in managing the class action do not outweigh the desirability of

2   concentrating this matter in one litigation.  See Fed. R. Civ. P. 23(b)(3)(A), (C), (D).

3   Therefore, the Court finds that the proposed Class may be certified under Rule 23(b)(3).

4   **C.      Rule 23(g) – Appointment of Class Counsel**

5       Under Rule 23(g), "a court that certifies a class must appoint class counsel."  Fed.

6   R. Civ. P. 23(g)(1).  The Court must consider "(i) the work counsel has done in identifying

7   or investigating potential claims in the action; (ii) counsel's experience in handling class

8   actions, other complex litigation, and the types of claims asserted in the action; (iii)

9   counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit

10  to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

11      Here, Plaintiffs ask the Court to appoint Matthew D. Schelkopf of Sauder

12  Schelkopf, Adam Gonnelli of The Sultzer Law Group, Bonner Walsh of Walsh PLLC, and

13  Steve W. Berman of Hagens Berman Sobol Shapiro LLP as Class Counsel.  (Mot. at 1, 26-

14  27.)  Based on Defendants' Notice of Non-Opposition, it appears that they do not object to

15  this appointment.  (Doc. 116.)  In connection with this motion, Plaintiffs have filed law

16  firm resumes for Sauder Schelkopf and Hagens Berman.  Schelkopf and Berman, as well

17  as their firms, have extensive experience in litigating consumer class actions.  (See

18  Schelkopf Decl. ¶¶ 4-11, Doc. 112-1; Sauder Schelkopf Firm Resume, Schelkopf Decl. Ex.

19  2, Doc. 112-3; Berman Decl ¶ 3, Doc. 112-4; Hagens Berman Firm Resume, attached to

20  Berman Decl., Doc. 112-4.)  Further, Plaintiffs submitted documentation of the similar

21  experience of Gonnelli and Walsh, and their firms, in connection with Plaintiffs' prior

22  Motion for the Appointment of Interim Class Counsel.  (See Gonnelli Decl. ¶¶ 4-6 Doc.

23  69-4; Sultzer Firm Resume, Doc. 69-5; Interim Class Counsel Mem. at 5-9, Doc. 69-1.)

24  From this experience, it appears Schelkopf, Gonnelli, Walsh, and Berman each have

25  extensive knowledge of the applicable law in this area.  Based on the experience and work

26  of Plaintiffs' counsel, the Court concludes that they have satisfied the adequacy

27

28

1  requirement.  The Court therefore appoints Matthew D. Schelkopf, Adam Gonnelli,

2  Bonner Walsh, and Steve W. Berman as Class Counsel in this action.

3          Having found that the proposed Class satisfies the remaining elements of Rule

4  23(a), the Court conditionally certifies the Class for settlement purposes only.

5

6  **III.   <u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>**

7          To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires

8  the Court to determine whether the proposed settlement is fair, reasonable, and adequate.

9  Fed. R. Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two

10 stages, with preliminary approval followed by a final fairness hearing.  Federal Judicial

11 Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

12         "To determine whether a settlement agreement meets these standards, a district

13 court must consider a number of factors, including: the strength of plaintiffs' case; the risk,

14 expense, complexity, and likely duration of further litigation; the risk of maintaining class

15 action status throughout the trial;[10] the amount offered in settlement; the extent of

16 discovery completed, and the stage of the proceedings; the experience and views of

17 counsel; the presence of a governmental participant;[11] and the reaction of the class

18 members to the proposed settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir.

19 2003) (internal citation and quotation marks omitted).  "The relative degree of importance

20 to be attached to any particular factor will depend upon and be dictated by the nature of the

21 claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

22 presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n of City &*

23 *Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  "'It is the settlement taken as a whole,

24 _____

25     [10] Because the class has not been certified other than for settlement purposes, this factor does
   not apply in this case.

26     [11] While the National Highway Traffic Safety Administration oversaw Defendants' prior

27 voluntary recalls of certain Class Vehicles, (Mot. at 18-19), this factor does not directly apply in
   this case.

28

rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

In addition to these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks and citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (quotation marks and citations omitted).

At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary . . . ." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of *possible* approval . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

In evaluating all applicable factors below, the Court finds that the proposed settlement agreement should be preliminarily approved.

### A. <u>Strength of Plaintiffs' Case</u>

The claims at issue involve Defendants' alleged negligent production of the GDI Engines with a significant latent defect and subsequent concealment of that defect while marketing and selling Class Vehicles powered by those engines.   While Plaintiffs state they are prepared to "mount a formidable case that Defendants violated numerous state consumer protection statutes, breached state and federal warranty laws, and engaged in fraud," (Mot. at 14), Defendants deny any liability (Revised Settlement Agreement at 2-3). In addition, Defendants have already filed comprehensive Motions to Dismiss under Rules 8, 9, and 12(b)(6).  (Docs. 86, 88.)  Further, Plaintiffs acknowledge that they may be unable to make some of the factual showings required to succeed on the claims brought, Defendants may argue that they did not conceal any material information, and Defendants might otherwise successfully "whittle down [their] overall liability" to the Class if litigation were to proceed.  (Mot. at 14.)  They also note that the passage of time, during a potentially years-long litigation, would reduce the value of consideration received by the Class as benefits of the lifetime warranty would be reduced, and vehicle ownership and service records may become harder to locate.  (*Id*. at 14-15.)  The Court finds that these considerations, as well as the inherent risk of litigation, weigh in favor of granting preliminary approval.

### B. <u>Risk, Complexity, and Likely Duration of Further Litigation</u>

Plaintiffs argue that continued class action litigation would be expensive, inherently uncertain, and lengthy.  (*Id*. at 15.)  They also assert that settling allows Class Members to immediately obtain consideration and repairs for their allegedly dangerously defective Class Vehicles.  (*Id*. at 15.)  Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the last opportunity for Class Members to obtain relief.  This factor therefore weighs in favor of

1    granting preliminary approval.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221

2    F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly

3    inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

4    with uncertain results." (citation omitted)).

5        **C.  <u>Amount Offered in Settlement</u>**

6        Plaintiffs argues that the "proposed settlement provides Class [M]embers with

7    virtually everything Plaintiffs sought in their complaints."  (Mot. at 16.)  Class Members

8    are: (1) being warned of the risk of potential engine stalling and seizure; (2) receiving a

9    lifetime warranty extension for the engine short block; (3) entitled to reimbursement, in

10   full, for prior repair costs and incidental expenses; (4) entitled to additional goodwill

11   payments; (5) eligible for compensation if they've already traded in their vehicles or lost

12   confidence in them; and (6) retaining the right, for a limited time, to seek further redress

13   through arbitration if they are dissatisfied with the outcome of their claims.  (*Id.* at 16-17.)

14   Plaintiffs believe that this is an "excellent result for the Class" and "it is unlikely that trial

15   would produce a better result."  (*Id.* at 17.)

16       The "Lifetime Warranty extension" in the Settlement Agreement provides the Class

17   Members with significant value.  Such a remedy is "directed at repairing the alleged harm"

18   and "advances the primary goal of the lawsuit."  *Klee v. Nissan North America, Inc.*, No.

19   CV 12–08238 AWT (PJWx), 2015 WL 4538426, at *8 (C.D. Cal. July 7, 2015) (citing

20   *Kearney v. Hyundai Motor America*, No. SACV 09-1298-JST (MLGx), 2013 WL

21   3287996, at *5 (June 28, 2013)) (collecting cases in which extended warranties were

22   approved in automotive class action settlements); *Corson v. Toyotal Motor Sales U.S.A.,*

23   *Inc.*, No. CV 12-8499-JGB (VBKx), 2016 WL 1375838, at *7 (C.D. Cal. Apr. 4, 2016).

24       When analyzing the adequacy of a settlement amount, the Court typically

25   "consider[s] plaintiffs' expected recovery balanced against the value of the settlement

26   offer."  *K.H. v. Secretary of Department of Homeland Security*, No. 15-cv-02740-JST,

27   2018 WL 6606248, at *4 (N.D. Cal. Dec. 17, 2018).  And a "settlement amounting to only

28

a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (internal quotation marks and citation omitted).  The parties have not yet quantified either the proposed settlement's value or Class Members' potential recovery, both of which the Court will require before final approval.  However, in light of the comprehensive nature of the consideration offered as well as the obvious value of the Lifetime Warranty extension, the Court finds that the amount offered in settlement weighs in favor of approval at this preliminary stage.

The allocation of settlement funds also appears fair, adequate, and reasonable.  Each Class Member is equally entitled to all forms of consideration offered in the proposed settlement.  Considering the difficulties and expenses Class Members would face to individually pursue litigation and the likelihood that they may otherwise be unaware of their claims, this weighs in favor of preliminary approval.

Finally, the amount of the settlement also appears fair, adequate, and reasonable in light of the claims released by Plaintiff and Class Members.  After the Court noted its concerns with the breadth of the release originally contemplated, the parties modified the relevant language.  In its present form, the Mutual Release requires Class Members to release only those claims tied to the facts alleged in the complaints filed in this consolidated action.  (Revised Settlement Agreement at 27-28.)  The only claims released relating to issues of "oil consumption, oil maintenance, and vehicle fires originating in the engine compartment" are those remedied by the consideration offered in the proposed settlement.  (*Id.* at 28.)  The scope of this release weighs in favor of preliminary approval. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citation omitted)).

**D.  Stage of the Proceedings and Extent of Discovery Completed**

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Discovery can be both formal and informal.  *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).  Here, Plaintiffs' counsel expended substantial effort in investigating the facts of this case, reviewing technical information, analyzing the GDI Engines, and consulting with automotive experts.  (Mot. at 17.)  The parties engaged in "confirmatory discovery" which included the "supervised tear-down of one named Plaintiff's vehicle by Kia representatives," two depositions of Korean engineers with knowledge of the design and construction of the GDI Engines, communication with various Class Members, and the review of thousands of pages of document discovery.  (*Id.* at 10-11, 17-18.)

Given these facts, the Court concludes that the parties possess sufficient information to make an informed settlement decision.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but Class Counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services").  Accordingly, this factor weighs in favor of granting preliminary approval.

**E.  Experience and Views of Counsel**

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  As a result, representation by competent counsel familiar with the law in the relevant area and with "the strengths and weaknesses of [the parties'] respective positions "suggests the reasonableness of the settlement."  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal.

2007).  "On the other hand, recognizing the potential conflict of interest between attorneys and the class they represent, the Court should not blindly follow counsel's recommendations, but give them appropriate weight in light of all factors surrounding the settlement."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

As discussed above, Plaintiffs' counsel have experience serving as plaintiffs' counsel in automotive class actions, and have endorsed the settlement as fair, reasonable, and adequate.  (*See* Schelkopf Decl. ¶ 16, Doc. 112-1; Berman Decl. ¶ 5; Doc. 112-4.)  More importantly, at this stage the Court does not detect a conflict of interest between Class Counsel and the Class.  Thus, this factor favors preliminary approval.

### F.  Reaction of Class Members to Proposed Settlement

Though Plaintiffs have not provided evidence of the Class Members' reactions to the proposed settlement, the Court recognizes that the lack of such evidence is not uncommon at the preliminary approval stage.  The parties have stated that they "will provide the Court with any objections they receive after notice is disseminated."  (Mot. at 19.)  Further, before the final fairness hearing, Class Counsel shall submit a sufficient number of declarations from Class Members discussing their reactions to the proposed settlement.  A limited number of objections at the time of the fairness hearing raises a presumption that the settlement is favorable to the class.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 (finding reaction of class favored approval where court received three objections from 57,630 class members who received notice).

### G.  Signs of Collusion

As noted above, because this settlement was reached prior to certification of the class, the Court must be "particularly vigilant" for signs of collusion, including: (1) a disproportionate distribution of the settlement fund to counsel, or when the class receives no monetary compensation but counsel receive an ample award of attorneys' fees; (2) negotiation of a "clear sailing provision" according to which defendants agree not to oppose an attorney's fee award up to a certain amount; and (3) an arrangement for funds

1  not awarded to revert to defendants rather than to be added to the common settlement fund.

2  *In re Bluetooth*, 654 F.3d at 946-47.

3      Plaintiffs state that the proposed settlement is a product of months of arm's-length

4  bargaining.  (Mot. at 10.)  The parties have not negotiated a "clear-sailing" agreement

5  regarding attorneys' fees and costs—to the contrary, they have stated that they will submit

6  the issue to the Court if they are unable to agree on Class Counsels' attorneys' fees, costs,

7  and Class Representatives' service awards.[12]  (Revised Settlement Agreement at 27.)

8  Thus, there are no telltale signs of collusion among the parties at the expense of the Class

9  Members.

10      Though the Court does not approve attorneys' fees at this stage, the Court raises its

11  concerns with the dearth of information about Class Counsels' attorneys' fees.  Plaintiffs

12  state only that "Defendants have agreed to separately pay an award of attorneys' fees and

13  costs, [but] the Parties have yet to negotiate them."  (Mot. at 10.)  To be sure, payment of

14  Class Counsels' attorneys' fees "separate and apart from" the consideration paid to the

15  Class reduces concerns that Class Counsel's fees will deprive Class Members of their

16  recovery.  (*See* Mot. at 11; Revised Settlement Agreement at 27.)  But Defendants

17  presumably have limited resources to settle this entire matter, including both class

18  recovery and attorneys' fees.  Hence, the Court will carefully scrutinize the relationship

19  between the benefit to the class and any agreement as to attorneys' fees to avoid conflicts

20  of interest and possible collusion.

21      The Court does not find, however, that the lack of information regarding attorneys'

22  fees precludes preliminary approval.  First, the Court will require Plaintiffs to file their

23  Motion for Attorneys' Fees, Costs, and Service Awards **thirty (30) days before the**

24

25

26      [12] While the parties have not yet agreed on the Class Representatives' service awards, "Plaintiffs seek less than $5,000 for each."  (Mot. at 12.) Moreover, any awards, either to Class

27  Representatives or Class Counsel, must be approved by the Court, even if agreed upon by the parties.

28

1    exclusion deadline, such that Class Members will have an opportunity to review Class

2    Counsels' and Class Representatives' requested award before deciding whether to exclude

3    themselves from the settlement or otherwise object.  Second, whether the parties ultimately

4    calculate Class Counsels' attorneys based on the lodestar method[13] or as a percentage of

5    the value of any "common fund," the Court will analyze the requested amount to

6    determine if any adjustment is necessary.

7           Finally, the Revised Settlement Agreement states that reimbursement payments to

8    Class Members may be made, at the Class Member's election, via check or debit card.

9    (Revised Settlement Agreement at 23.)  "The value of any debit card shall remain the

10   property of HMA or KMA unless and until it is expended by the Claimant. Upon

11   expiration of any debit card, any unexpended funds shall become the permanent property

12   of HMA or KMA."  (*Id.*)  The parties offer no justification for the reversionary nature of

13   these debit card funds.  While the Court's concerns are somewhat allayed by Class

14   Members' ability to choose payment by check, Plaintiffs should be prepared to explain at

15   final approval the reasonableness of including the reversionary debit card option.  Failure

16   to do so adequately may result in the Court's disapproval of the use of debit cards as an

17   option.

18          Considering all factors, the Court preliminarily concludes that the settlement is fair,

19   reasonable, and adequate.

20

21   **IV. CLAIMS ADMINISTRATION**

22          When granting preliminary approval of class action settlements, the Court typically

23   approves a third-party claims and settlement administrator that the parties have agreed on.

24   _____

25

26          [13] If the parties elect to use the lodestar method, Class Counsel must adequately support its fee
     request with detailed billing records as required by the Court's Procedures (See Procedure Page ¶

27   26, available at https://www.cacd.uscourts.gov/honorable-josephine-l-staton) as well as evidence
     justifying Class Counsel's requested hourly rate.

28

1    However, the proposed settlement provides that Defendants "have the option of self-

2    administering" the settlement.  (Revised Settlement Agreement at 21.)  The Court has

3    already made clear its reservations concerning such an arrangement and the incentives that

4    result when an interested party has autonomous control over the notice campaign and

5    approval of claims.  (*See* Order on Claims Administration.)  As the Court noted, "[w]hile it

6    may be possible for defendants to successfully self-administer relatively straightforward

7    class action settlements, *see, e.g.*, *Torres v. Pet Extreme*, No. 1:13-CV-01778-LJO-SAB,

8    2015 WL 224752, at *6 (E.D. Cal. Jan. 15, 2015)," the parties here must show that it will

9    work fairly—and transparently— in this case.  (*Id*. at 1-2.)  The parties provided a

10    comprehensive response, noting that Kia will retain a third-party settlement administrator

11    (Hyundai Self-Administration Supp. Brief at 2 n.1.); clarifying its claims review and

12    administration procedure, in which dissatisfied Class Members may ultimately seek

13    arbitration through a Better Business Bureau-administered alternate dispute resolution

14    process (*id.* at 3-5); emphasizing that Class Counsel will receive updates on the review and

15    disposition of Claims (Supplemental Schelkopf Decl. ¶ 3); and detailing Hyundai's history

16    of satisfactorily conducting notice campaigns and self-administering automotive class-

17    action settlements (*id*. ¶ 4, Hyundai Self-Administration Supp. Brief at 5-7; Lee Decl. ¶ 9,

18    Doc. 127-1).  While Hyundai's self-administration is not a sufficient reason to withhold

19    preliminary approval, the Court will examine any objections and Class Member

20    declarations submitted prior to the Final Fairness Hearing for views on settlement

21    administration.  In addition, the parties, particularly Hyundai, should anticipate that this

22    Court will require ongoing reporting to the Court as to the claims process and results, and

23    may require post-distribution accounting reports.  Further, Kia shall **within fourteen (14)**

24    **days of the date of this Order,** file a supplementary brief (1) identifying its proposed

25    claims administrator; (2) describing the qualifications of that entity; and (3) detailing the

26    process by which the administrator will process claims and report on claims' disposition.

27

28

## V. <u>PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD</u>

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Pursuant to the settlement, Defendants, or the Settlement Administrator, will, no later than the Notice Date, mail the Long Form Notice and a Claim Form to each reasonably identifiable Class Member. (Revised Settlement Agreement at 24.) Class Members will be identified through use of Defendants' records, which are to be provided to R.L. Polk & Company, or similar third party entity, such as IHS Markit. (*Id*.) That information will be used to obtain the names and most current addresses of Class Vehicle owners through relevant state agencies. (*Id*.) Before mailing notice, Defendants, or the Settlement Administrator will ensure that address information is as current as possible by conducting an address search via the U.S.P.S. National Change of Address database. (*Id*. at 25.) Further efforts will be made to deliver any individual notice that is returned as undeliverable. (*Id*.) Any Class Members for whom Defendants maintain email addresses are also to receive the Long Form Notice and Claim Form via email. (*Id*.) The email will also contain a hyperlink to the Hyundai and Kia dedicated settlement websites which will contain the Long Form Notice and Claim Form, in addition to other relevant settlement information and documents. (*Id*.)

The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Sullivan*, 2011 WL 2600702 at *8 (quoting *Mullane*). Under the circumstances of this case, notice by mail, email, and dedicated website is a "reasonably calculated" method by which to apprise Class Members of the

1  settlement.  The Court finds that the proposed procedure for class notice satisfies these

2  standards.

3        Plaintiff provided the Court with a copy of the proposed notice and Claim Form.

4  (Class Notice, Schelkopf Decl. Ex. 1 at 41-57, Doc. 112-2; Revised Hyundai Notice, Doc.

5  128-3; Revised Kia Notice, Doc. 128-5.)  Under Rule 23, the notice must include, in a

6  manner that is understandable to potential class members: "(i) the nature of the action; (ii)

7  the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a

8  class member may enter an appearance through an attorney if the member so desires; (v)

9  that the court will exclude from the class any member who requests exclusion; (vi) the

10 time and manner for requesting exclusion; and (vii) the binding effect of a class judgment

11 on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed notice

12 includes this necessary information.

13        The Court, however, requires the notice to be modified as follows:

14 •   Under the initial chart ("Your Legal Rights and Options in This Settlement")

15      and Question 19 ("How do I tell the Court if I do not like the Settlement?"), the

16      notice must eliminate any reference to filing a written objection with the Court.

17      Plaintiffs' counsel are responsible for filing, in connection with Plaintiffs'

18      motion for final approval, any objections along with a brief responding to such

19      objections.  Accordingly, the notice should instruct Class Members to object by

20      mailing a written objection to Plaintiffs' counsel only, and Plaintiffs' counsel

21      shall be responsible for ensuring that any objections are shared with counsel for

22      Defendants and where applicable, Kia's claims administrator.

23 •   Under Question 26 ("How do I get more information?"), the notice should also

24      state that all papers filed in this action will also be available for review via the

25      Public Access to Court Electronic Resources System (PACER), available online

26      at http://www.pacer.gov.  The Kia-specific notice should also identify the

27

28

1   contact information of Kia's claims administrator, *i.e.*, its phone number and

2   address.

3        Subject to the changes discussed above, the Court approves the claim form as well

4   as the form and method of class notice.  The Court ORDERS the parties to file a revised

5   version of the Class Notice within **fourteen (14) days** of this Order.[14]

6        The Court requires that any motion for attorneys' fees and costs be filed with the

7   Court **no later than thirty (30) days before** the exclusion deadline.  Plaintiffs shall file

8   their motion for final approval no later than **October 16. 2020**, including a brief

9   responding to any submitted objections and otherwise summarizing the Class Members'

10  participation in the settlement and the settlement administration to date.

11

12  **VI. <u>CONCLUSION</u>**

13       For the reasons discussed above, the Court (1) CONDITIONALLY GRANTS

14  preliminary approval of the terms of the class action settlement; (2) certifies the proposed

15  class for settlement purposes; (3) appoints Cara Centko, Jenn Lazar, Christopher Stanczak,

16  Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny

17  Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph

18  McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James

19  Smith, and Chris Stackhouse as Class Representatives; (4) appoints Matthew D. Schelkopf

20  of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, Bonner Walsh of Walsh

21  PLLC, and Steve W. Berman of Hagens Berman Sobol Shapiro LLP as Class Counsel; (5)

22  authorizes, for the purposes of identifying Class Members, R.L Polk & Company, or

23  similar third-party entity, such as IHS Markit, to compile and provide information on Class

24  Members' names and addresses to Defendants or their designees; and (6) approves the

25  form and manner of class notice, subject to the changes discussed above.  The Court

26  _____

27       [14] These changes must be made as to both the Hyundai and Kia Long Form Notices.  (Docs. 128-3, 128-5.)

28

ORDERS (1) the parties to file a revised version of the Class Notice and (2) to identify and provide information on the adequacy of Kia's proposed claims administrator, **within fourteen (14) days of the date of this Order.**

The Court SETS the following schedule which shall govern the class action settlement proceedings:

(i) Defendants shall cause individual notice, in the form approved by the Court, to be mailed via first-class mail to all reasonably identifiable Class Members, to be emailed to those Class Members with known email addresses, and to be posted on the dedicated settlement websites, within **thirty (30) days** of the Court's approval of the revised Class Notice (the "Notice Date").

(ii) Class Members must mail any letter objecting to or opting out of the proposed settlement within **sixty (60) days** after the Notice Date.

(iii) Plaintiffs shall file their Motion for Attorneys' Fees, Costs, and Class Representative Service Awards **no later than thirty (30) days before** the exclusion deadline.

(iv) The Parties shall submit motions for final approval of the proposed settlement, including any exhibits or attachments thereto, **on or before October 16, 2020.**

(v) The Fairness Hearing shall be held on **November 13, 2020 at 10:30 a.m.**, to determine whether the settlement should be finally approved as fair, reasonable, and adequate to the Class Members.

The dates set forth above in items (ii) and (iii) shall be included in the Long Form Notice distributed to Class Members.  The Court reserves the right to continue the date of the Final Fairness Hearing without further notice to Class Members.

Finally, the Court noted at the December 13, 2019 hearing on this Motion, that on the CM/ECF docket for this case as well as in various filings in this matter, Defendants' counsel, Shon Morgan, is listed as representing Defendants Hyundai Motor America, Inc.,

1   Hyundai Motor Company, Ltd., and Kia Motors America, Inc., but not Defendant Kia

2   Motors Corporation.  At that hearing, Mr. Morgan affirmed that he is representing Kia

3   Motors Corporation in this litigation.  As such, the Court directed Mr. Morgan to take

4   whatever steps necessary to ensure that the docket and future filings adequately reflect the

5   nature of his representation.  As of the date of this Order, the docket still does not indicate

6   that Mr. Morgan is counsel of record for Kia Motors Corporation.  The Court again

7   DIRECTS Mr. Morgan to remedy this inaccuracy.  The Court will not grant final approval

8   of this proposed settlement unless the appropriate actions are taken.

11   DATED:  May 06, 2020

14   _____
    JOSEPHINE L. STATON
    UNITED STATES DISTRICT JUDGE