# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | 8:17-cv-00838-JLS-JDE<br><br>Related Cases:<br>8:17-cv-01365-JLS-JDE<br>8:17-cv-02208-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE<br>8:18-cv-02223-JLS-JDE |

**DECLARATION OF MATTHEW D. SCHELKOPF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CLASS COUNSEL FEE AND EXPENSE AWARD AND CLASS REPRESENTATIVE SERVICE AWARDS**

I, Matthew D. Schelkopf, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted *pro hac vice* to this Court and am counsel for Plaintiffs and the Settlement Class. I respectfully submit this declaration in further support of Plaintiffs' Unopposed Motion for Class Counsel Fees and Expenses Award and Named Plaintiffs' Service Awards. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify to the statements set forth below.

2. I am a partner at Sauder Schelkopf LLC. My firm is a four attorney firm located in Berwyn, Pennsylvania representing plaintiffs in consumer fraud class actions, product liability, and other complex class action litigations in Pennsylvania, New Jersey, and across the United States. I obtained my J.D. from Widener University in 2002.

3. Since 2010, I have been selected by Pennsylvania Super Lawyers as a Rising Star (a distinction held by the top 2.5% of attorneys in PA) and then a Pennsylvania Super Lawyer, as chosen by their peers and through the independent research of Law & Politics. In 2012, The American Lawyer Media, publisher of The Legal Intelligencer and the Pennsylvania Law Weekly, named me as one of the "Lawyers on the Fast Track" a distinction that recognized thirty-five Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community. I was also selected as a Top 40 under 40 by the National Trial Lawyers in 2012-2015.

4. I have an extensive background in litigation on behalf of consumers, and I am currently serving as lead or co-lead counsel in many class actions in federal courts across the country, including automotive defect cases similar to this one. This experience, coupled with the experience of our co-counsel, enabled our firms to undertake this matter and to successfully combat the resources of Defendant and their capable and experienced counsel.

## PERSONAL AUTOMOTIVE EXPERIENCE

5. I have been restoring, building, and/or racing automobiles since I was approximatey15 years old.

6. Prior to attending law school, I worked in two different automotive shops performing everything from routine maintenance to full automotive restorations. These opportunities have provided me with unique, first-hand experience and expertise with automotive parts, including engines, drivetrains, and electric systems.

7. By way of example, through my years of automotive experience, I have been able to do the following:

    a. Dissembled, analyzed, removed/replaced, rebuilt and/or repaired more than fifty (50) automobile engines;

      b. Rebuilt, replaced and/or repaired more than twenty (20) transmissions;

      c. Diagnosed, replaced and/or repaired electrical issues including, but not limited to, those within the engine and body wiring harnesses;

      d. Performed paint and autobody repairs; and

      e. Performed preventive automotive maintenance a countless number of times including, but not limited to, engine oil changes, transmission fluids changes, brake pad and rotor replacement, brake fluid flushing, timing belt replacement, spark plug and ignition wire replacement, tire replacement and balancing, filter replacements (including air, oil and fuel filters).

8. I continue to restore and maintain my own automobiles in my free time and some of my past automotive restorations have been featured in nationally circulated automotive publications.

## AUTOMOTIVE DEFECT EXPERIENCE

9. I have been appointed to leadership positions in automobile defect related class actions across the United States, including:

- *Fath v. American Honda Motor Co., Inc.*, No. 18-cv-1549 (D. Minn.). I was appointed as lead class counsel in this class action against Honda related to an alleged engine oil dilution defect in certain Honda CR-V and Civic vehicles. The Honorable Nancy E. Brasel granted final approval to the class action settlement on September 11, 2020.

- *In re Subaru Battery Drain Prod. Liab. Litig.,* No. 1:20-cv-03095-JHR-JS (D.N.J.). I was appointed as interim co-lead class counsel in this class action against Subaru related to an alleged defect pertaining to parasitic electrical drain resulting in premature battery failure in certain Subaru vehicles. The case is currently pending before the Honorable Joseph H. Rodriguez.

- *Salcedo v. Subaru of America, Inc.*, No. 1:17-cv-08173 (D.N.J.). My partner Joseph Sauder and I were appointed as interim lead counsel in

this class action against Subaru related to an alleged engine defect in certain Subaru WRX vehicles. The Honorable Joseph H. Rodriguez granted final approval to the class action settlement on June 5, 2019.

- *Bang v. BMW of North America, LLC*, No. 2:15-cv-6945 (D.N.J.). I served as counsel in this class action case on behalf of hundreds of thousands of purchasers and lessees of certain BMW vehicles with N63 engines containing an alleged oil consumption defect. The Honorable Madeline Arleo granted final approval to the class action settlement on September 11, 2018.

- *Tolmasoff v. General Motors, LLC*, No. 2:16-cv-11747 (E.D. Mich.). I served as co-lead counsel in this class action case against General Motors related to alleged discrepancies in the miles-per-gallon estimates of its vehicles. The Honorable George Caram Steeh granted final approval of the class action settlement on November 6, 2017.

- *In re: Hyundai Sonata Engine Litig.*, No. 5:15-cv-1685 (N.D. Cal.). I served as co-lead counsel in this class action case against Hyundai involving an alleged engine design defect that resulted in catastrophic engine failure. The Honorable Beth Labson Freeman granted final approval to the class action settlement on January 31, 2017.

- *Yaeger v. Subaru of America, Inc.*, No. 1:14-cv-04490 (D.N.J.). I served as co-lead counsel in this class action against Subaru involving an alleged design defect resulting in excessive consumption of engine oil. The Honorable Jerome B. Simandle granted final approval to the class action settlement on August 31, 2016.

- *Davitt v. American Honda Motor Co., Inc.*, No. 2:13-cv-381 (D.N.J.). I served as co-lead counsel in this class action against Honda involving an alleged design defect resulting in the door lock actuators to operating improperly. The Honorable Madeline Arleo granted final approval to the class action settlement on May 8, 2015.

10. My firm's hourly rates were submitted in connection with motions for attorneys' fees in the preceding cases, and our motions for attorneys' fees were granted.

## PRE-SUIT INVESTIGATION

11. My firm conducted a significant pre-suit investigation into the alleged Defect in this litigation that started on or about February 2, 2017 and lasted until the initiating complaint was filed on May 10, 2017.

12. This investigation included, *inter alia*, interviewing hundreds of members of the putative Class, reviewing documents and other information provided by the members of the putative Class, reviewing online complaints, reviewing Hyundai and Kia engine designs along with experienced automotive experts, and investigating potential legal claims that could be brought against both the domestic and foreign entities at issue in the litigation.

13. Utilizing my knowledge and experience described in paragraphs ¶¶5-7, I also conducted a tear down and personally inspected a failed Theta II engine that I received from a member of the putative Class.

14. The extensive pre-suit investigation conducted by my firm resulted in the filing of a detailed initiating Complaint that contained a plethora of well-researched factual allegations related to the alleged defect, as well as cognizable legal theories.

## DISCOVERY

15. The parties engaged in extensive discovery related to the alleged defect. My firm drafted and served Requests for Production and Interrogatories on Defendants, to which Defendants provided written responses and produced documents.

16. The written and document discovery included data and analyses relating to potential defects, warranty claims, customer complaints, and internal communications.

17. My firm also drafted and served a deposition notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. In response, two employees of Hyundai Motor Corporation, the Korean parent corporation of Hyundai Motor

1  America, were designated to testify. They traveled from South Korea to Los
2  Angeles for their depositions. With the aid of an experienced translator, the
3  depositions spanned two days and covered hundreds of pages of documents
4  produced by Defendants during confirmatory discovery.
5      18.   I personally took the lead role in deposing the two 30(b)(6) designees.
6  At the conclusion of the depositions, Class Counsel understood both the nature of
7  the alleged defect and the scope of potential corrective actions.

## SETTLEMENT NEGOTIATIONS

19. After this Court entered the order consolidating the various cases filed against Defendants and designated the master docket as *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (ECF No. 85.), counsel for the parties met and conferred about potential resolution, including an in-person meeting in Los Angeles with an engineering representative from Defendants.

20. These meetings between counsel eventually culminated in a mediation session before the Hon. Ronald M. Sabraw (Ret.) of JAMS of December 21, 2018. During this mediation, the parties settled in principle. Settlement discussions continued over the next several months, along with consultations with the named Plaintiffs regarding the terms of the Settlement, which resulted in modifications and enhancements to the proposed settlement.

21. Once the Settlement was reached in principle, Class Counsel spent months drafting and revising the Settlement Agreement and conferring with defense counsel regarding both the Settlement Agreement and the notices that were to be disseminated to the Class, as well as supervising the content of the Settlement websites.

22. Only after agreeing to the relief to the Settlement Class did the parties begin negotiations on attorneys' fees and expenses, and service awards to the named Plaintiffs. The parties engaged in two mediations with the Hon. Edward A.

Infante (Ret.), and reached agreement during the second mediation on September 1, 2020.

## RISKS PRESENTED BY CONTINUED LITIGATION

23. Based on my substantial experience litigating complex class action cases involving automotive defects, I believe the Settlement offers substantial relief to the Settlement Class.

24. Had the litigation not settled, the Court would first need to rule on the two pending motions to dismiss, which could have resulted in certain claims being dismissed.

25. Additional motion practice was sure to follow. Additional document discovery would need to be performed, additional depositions would need to be taken, and, like most class action cases, a number of discovery related disputes would need to be resolved by the Court.

26. Further, both the Plaintiffs and the Defendants would need to retain liability and damages experts and produce expert reports, with *Daubert* briefing and hearings shortly thereafter.

27. Plaintiffs would then file for class certification. Regardless of the decision on the class certification motion, a Rule 23(f) appeal would likely be filed, delaying further prosecution of the litigation until the appeal was resolved.

28. After the disposition of any summary judgment motions, the parties would likely reach a trial in late 2021. The trial would be complex and likely span multiple weeks. Similar to the result of class certification, any trial result would likely be appealed.

29. The Settlement offered here bypasses the lengthy delays and risk involved in proceeding on a litigation track and instead offers the Settlement Class with all the relief they could expect to achieve after winning at trial.

## LODESTAR

30. As of September 25, 2020, my firm has collectively spent

approximately 1401.1 hours working on this case, for a total lodestar amount of $907,045. All of this work was done on a contingent basis with no guarantee of payment.

| Name | Role | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Joseph G. Sauder | Partner | $750 | 145.90 | $109,425.00 |
| Matthew D. Schelkopf | Partner | $700 | 881.60 | $617,120.00 |
| Lori Kier | Of Counsel | $500 | 121.6 | $60,800.00 |
| Joseph B. Kenney | Associate | $475 | 252.00 | $119,700.00 |
| **Totals** | | | **1401.1** | **$907,045.00** |

31. The hourly rates of Sauder Schelkopf attorneys ranged from $475 per hour for associate work, to $750 per hour for partner work.

32. Due to the amount of privileged information contained in the hourly billing records, those detailed records are not attached here. Consistent with Your Honor's Procedures, a spreadsheet in Microsoft Excel format will be provided that lists billed tasks, will be provided to the Court well in advance of the Final Fairness Hearing.

33. Class Counsel made significant efforts toward the efficient allocation of work between them. Partners in the firms coordinated their work assignments on a regular basis to prevent unnecessary duplication of work across the firms.

34. Having the firms serving as Class Counsel work on the case together added substantial value to the case, as borne out by the ultimate relief achieved for the Class. Class Counsel were able to work together to develop sophisticated and effective strategies for pursuing the claims of Plaintiffs and the Class.

35. Moreover, the arrangement between the Class Counsel firms also reflects the reality of large consumer protection class actions where, because of the great risk involved, multiple firms with national practices work together to spread the risk.

36. The work performed in this case was reasonable and necessary to the prosecution and settlement of this case. Class Counsel conducted a significant factual investigation during the prosecution of this action. Because of their comprehensive evaluation of the facts and law, Class Counsel was able to settle this case and provide substantial relief to the Class. Class Counsel provided Settlement Class Members with substantive and certain relief much sooner than if litigation of this matter had continued.

37. As settlement administration is ongoing, and based on my experience in previous consumer protection class actions, the lodestar figures reported herein will meaningfully increase by the time the settlement is completely and finally administered.

38. Further, the time and resources dedicated to this matter also meant foregoing other legal work for which my firm otherwise could have been compensated.

39. The fees sought in this litigation were negotiated after the Settlement terms were agreed upon, and will not dilute or impact the recovery made available to the Settlement Class.

## COUNSEL'S EXPENSES

40. This litigation required Class Counsel to advance costs. Where corporate defendants and their attorneys are well funded, as was true here and in most national consumer protection cases, this type of litigation can prove to be expensive and risky. Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys.

41. As of September 25, 2020, my firm has expended costs of approximately $32,360.38. These expenses are reflected in the books and records of my firm. All of the expenses incurred were reasonable and necessary to the prosecution of this case. These expenses included travel to Los Angeles for the deposition of two Hyundai employees, travel to Portland for the argument before

the Judicial Panel on Multidistrict Litigation, expert retainer fees, travel to Los Angeles for mediation, and JAMS mediation fees.

42. On behalf of Plaintiffs and all counsel in this litigation, I respectfully request that the Court award the requested attorneys' fees and costs.

## SERVICE AWARDS

43. The contributions made by the Class Representatives to the prosecution and resolution of this litigation were significant. The Class Representatives produced documents related to their claims, were prepared to sit for a deposition and testify at trial if needed, and stayed abreast of developments throughout the litigation. The Class Representatives also reviewed the Settlement Agreement carefully and signed it.

44. To date, I am aware of just one objection to Class Counsel's fee and expense award. The objection is attached hereto as **Exhibit A**.

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct.

Dated: September 30, 2020         */s/ Matthew D. Schelkopf*
                                  Matthew D. Schelkopf

# EXHIBIT A

The Honorable Judge Josephine Staton

United States District Court for the Central District of California
Los Angeles Courthouse
411 W. Fourth St.
Santa Ana, CA 92701

Re: Hyundai and Kia Engine Litigation No. 8:17-cv-00838-JLS-JDE objection to settlement

29 August 2020

Your Honor:

1. This class action lawsuit is by Plaintiffs attorney who do not represent my wishes, a member of this class action suit. I object to this legitimately representing my interests, a member of the class it purports to represent.

2. In addition, I object to the 12M max legal fee.

3. I am a simple automobile consumer who doesn't want to pay more for my next car because in my opinion the plaintiffs counsel are lining their pockets producing nothing of value to me on the back of a company that produces a tangible good of value to me.

4. Please help citizens like myself not be used in my opinion as pawns by these class action legal teams draining resources from producers of value to me like Kia based on what I consider flimsy claims.

Thank you for you consideration of this, your Honor.

Edward A. Maybury

The above comments are what I ask of you. I kept it simple and short out of respect for your time. For completeness, here is my best attempt at complying with the legal "requirements of an objection" letter as laid out in the mailing from the class action legal team to me so plaintiffs attorney can't deny my objection based on technicalities:

1. The name and title of the lawsuit: In re: Hyundai and Kia Engine Litigation, No. 8:17-cv-00838-JLS-JDE and Flaherty v. Hyundai Motor Company; et al., No. 18-cv-02223 (C.D. Cal.)

2. Written statement of each objection: I object to the 12M cap on fees and expenses as being orders of magnitude too great. The potential financial windfall to the legal team has been described as incentivizing the filing of class action lawsuits. A cap of 1.2 M would be more appropriate for the intellectual work described as equivalent to whiting out the name of the last corporation tagged with a law intended to protect people from corporate malfeasance being hijacked by class action legal firms for their personal enrichment on the backs of consumers who end up paying the bill. In my opinion the legal fees requested are obscene and offensive, and are particularly striking when compared to the monetary compensation that the actual class members are likely to get. I'm not saying they actually whited out the name of a prior corporation or they have a pattern of litigation against companies with similar flimsy underpinnings or that I have evidence that their motivation is simply money. I'm saying I object to this 12M cap because a 1.2M cap would be much more appropriate and congruent with what a reasonable person would consider appropriate for the intellectual and administrative work involved in this case.

3. Edward A. Maybury 7938 Quimby Court Viera, Florida 32940. 904-703-9268.

4. 2011 Kia Optima Vin KNAGM4A7XB5163585

5. Given current Covid limitations, I will not be able to travel to California to voice my objections in person at the fairness hearing. If a virtual hearing option exists, I would like 3 minutes to voice my objections at the virtual fairness hearing. Legal counsel won't be necessary since my objections are simple as outlined above.

6. The supporting materials are my comments above.

7. No counsel is representing me currently.  No former or current counsel are entitled to compensation related to this action are known by me at this point.

8. I have objected once in my life to another class action suit.  This seems to be a rather curious question, your honor,  from the court to be "required" to be included in my objection letter.  The number of  class action lawsuits the legal team has pursued in the past would be a similarly helpful metric.

9. Consideration received:. I have indeed received considerable compensation for my prior objection to a class action lawsuit- It is the compensation of sleeping well at night knowing I objected to what has been called "legal blackmail" and "hydraulic pressure.... to settle"  pursued by class action legal firms. I do not seek and have not received any financial or other material compensation in any way from objecting to this and the prior other class action lawsuit. I wonder how much compensation the class action law firm has received; I hope the legal team compensation  data is available to you, your honor,  as  this seems like a similarly helpful, admissible  and germane metric as my compensation from prior class action activity to fair adjudication of this matter.

10. My signature:

*[signature]*

cc: Bonner Walsh Bon
    Walsh PLLC
    1561 Long Haul Road Grangeville, ID 83530

Matthew D. Schelkopf
Sauder Schelkopf
1109 Lancaster Avenue Berwyn, Pennsylvania 19312

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Second Avenue
Suite 2000
Seattle, WA 98101