Matthew D. Schelkopf (*pro hac vice*)
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
mds@sstriallawyers.com

Adam Gonnelli (*pro hac vice*)
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
7030 E. Genesee Street
Fayetteville, NY 13066
adam@arglawoffice.com

Bonner Walsh (*pro hac vice*)
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
bonner@walshpllc.com

*Attorneys for Plaintiffs and the Settlement Class*

*[List of Additional Counsel On Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | 8:17-cv-00838-JLS-JDE |
| | Related Cases:<br>8:17-cv-01365-JLS-JDE<br>8:17-cv-02208-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE<br>8:18-cv-02223-JLS-JDE |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** |
| | Date: November 13, 2020<br>Time: 10:30 a.m.<br>Hon. Josephine L. Staton<br>Courtroom: 10A |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on November 13, 2020, at 10:30 a.m. before Honorable Josephine L. Staton in Court 10A, 10th Floor, of the United States District Court for the Central District of California, located at Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Plaintiffs Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse will and hereby do move for an order of the Court to finally approve the class action settlement and reaffirm its certification of the settlement class.

Plaintiffs' unopposed motion is based on this notice; the accompanying Memorandum of Law; the Declaration of Matthew D. Schelkopf; the Declaration of Adam R. Gonnelli; the Declaration of Steve W. Berman; the Declaration of Amanda Sternberg; the Declaration of Daniel Lee; the Declaration of Brian Latouf; the Expert Report and Opinion of Susan K. Thompson; the Proposed Order Granting Final Approval of the Class Action Settlement; and all other papers filed and proceedings had in this Action.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 16, 2020.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

Dated: October 16, 2020          Respectfully submitted,

                                 By:  /s/ *Matthew D. Schelkopf*
                                 Joseph G. Sauder
                                 Matthew D. Schelkopf
                                 Joseph B. Kenney
                                 **SAUDER SCHELKOPF LLC**
                                 1109 Lancaster Avenue
                                 Berwyn, PA 19312
                                 Telephone: (610) 200-0581
                                 jgs@sstriallawyers.com
                                 mds@sstriallawyers.com
                                 jbk@sstriallawyers.com

                                 Adam Gonnelli (*pro hac vice*)
                                 **LAW OFFICE OF ADAM R.
                                   GONNELLI, L.L.C.**
                                 7030 E. Genesee Street
                                 Fayetteville, NY 13066
                                 Telephone: (917) 541-7110
                                 Facsimile:  (315) 446-7521
                                 adam@arglawoffice.com

                                 Bonner Walsh (*pro hac vice*)
                                 **WALSH PLLC**
                                 1561 Long Haul Road
                                 Grangeville, ID 83530
                                 Telephone: (541) 359-2827
                                 Facsimile:  (866) 503-8206
                                 bonner@walshpllc.com

                                 Steve W. Berman (*pro hac vice*)
                                 **HAGENS BERMAN SOBOL
                                   SHAPIRO LLP**
                                 1301 Second Avenue, Suite 2000
                                 Seattle, WA 98101
                                 Telephone: (206) 623-7292
                                 Facsimile:  (206) 623-0594
                                 steve@hbsslaw.com

2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................... 3

    A.    Plaintiffs' Allegations and Pre-Litigation Investigation ......................... 3

    B.    History of the Litigation ......................................................................... 4

    C.    Settlement ............................................................................................... 5

    D.    Terms of the Settlement Agreement ....................................................... 6

        1.    *Lifetime Warranty Coverage for the Engine Short
            Block* ............................................................................................. 7

        2.    *Recall and Product Improvements* ................................................ 8

        3.    *Repair Reimbursements* ................................................................ 9

        4.    *Other Repair-Related Reimbursements* ....................................... 11

        5.    *Inconvenience Due to Repair Delays* .......................................... 12

        6.    *Loss of Value for Sold or Traded-In Vehicles* ............................. 12

        7.    *Loss of Vehicle by Engine Fire* .................................................... 13

        8.    *Rebate Program* ........................................................................... 13

    E.    Preliminary Approval ............................................................................ 14

    F.    Notice .................................................................................................... 14

III.  ARGUMENT ........................................................................................... 15

    A.    The Court Should Reaffirm its Certification of the
        Settlement Class ..................................................................................... 15

    B.    The Settlement is Fair, Reasonable, and Adequate ............................... 15

        1.    *The Strength of Plaintiffs' Case* ................................................... 17

2.   *The Risk, Expense, Complexity, and Duration of Further Litigation* .......................................................... 18

3.   *Risk of Maintaining a Class Action Throughout Trial* ............... 18

4.   *The Amount Offered in the Settlement* ......................................... 19

5.   *Extent of Discovery and Stage of the Proceedings* ...................... 20

6.   *The Experience and Views of Counsel* ......................................... 21

7.   *The Presence of a Governmental Participant* .............................. 21

8.   *The Reaction of the Class* ............................................................ 21

C.   The Settlement is Not the Product of Collusion ..................................... 24

IV.   CONCLUSION ....................................................................................................... 26

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

4                                              CASES

5    *In re Bluetooth Headset Prods. Liab. Litig.*,
6         654 F.3d 935 (9th Cir. 2011) .................................................................. 16

7    *In re Bluetooth Headset Prods. Liab. Litig.*,
8         654 F.3d at 946–47 ............................................................................... 25

9    *Brogan v. Hyundai Motor America, et al.*,
10        No. 8:17-cv-00622 (C.D. Cal) ................................................................. 4

11   *Centko and Lazar v. Kia Motors America, Inc.*,
12        No. 8:17-cv-00838 (C.D. Cal.) ............................................................... 4

13   *Flaherty v. Hyundai Motor Co., et al.*,
14        No. 18-cv-02223 (C.D. Cal.) ............................................................... 4, 5

15   *In re Gen. Motors Corp. Pickup Truck Fuel Tank Products Liab. Litig.*,
16        MDL 961, 1993 WL 204116 (E.D. Pa. June 10, 1993) ...................... 21

17   *Kinnick and Coats v. Hyundai Motor Co., et al.*,
18        No. 8:17-cv-02208 (C.D. Cal.) ............................................................... 4

19   *Kissel v. Code 42 Software, Inc.*,
         No. SACV151936JLSKES, 2017 WL 10560526 (C.D. Cal.
20        Oct. 4, 2017) ......................................................................................... 26

21   *Linney v. Cellular Alaska P'ship*,
22        151 F.3d 1234 (9th Cir. 1998) ............................................................. 21

23   *Mendoza v. Hyundai Motor Company Ltd., et al.*,
24        Case No. 15-cv-01685-BLF (C.D. Cal.) ........................................... 6, 10

25   *Musgrave v. Hyundai Motor America, Inc.*,
26        No. 4:18-cv-07313-YGR (N.D. Cal.) ...................................................... 5

27   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
28        221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 21

*Ruiz v. JCP Logistics, Inc.*,
    No. 13-1908, 2016 WSL 6156212 (C.D. Cal. Aug. 12, 2016) ........................... 18

*Smolek v. Hyundai Motor America, et al.*,
    No. 2:18-cv-05255 (C.D. Cal.) ............................................................................. 4

*Stanczak and Creps v. Kia Motors America, Inc. et al.*,
    No. 8:17-cv-1365 (C.D. Cal.) ............................................................................... 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................. 16

*Wallace v. Countrywide Home Loans, Inc.*,
    No. SACV081463JLSMLGX, 2015 WL 13284517 (C.D. Cal.
    Apr. 17, 2015) .................................................................................................... 25

*Zubia v. Shamrock Foods Co.*,
    No. CV1603128ABAGRX, 2017 WL 10541431 (C.D. Cal.
    Dec. 21, 2017) .................................................................................................... 19

STATUTES

Magnuson-Moss Warranty Act .............................................................................. 17

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ....................................................................................... 3, 15, 16

## I.    INTRODUCTION

After three years of litigation, Plaintiffs are pleased to present this proposed settlement to the Court for final approval. The Settlement[1] resolves consumer class action litigation alleging certain Hyundai and Kia vehicles suffer from premature engine failure caused by a defect that has plagued Class Vehicles for nearly a decade. The Settlement provides significant relief to consumers including a Lifetime Warranty extension, free installation of the Knock Sensor Detection System to prevent engine failure, a free diagnostic inspection following final approval, full reimbursement for certain out-of-pocket repairs and costs, payments for inconvenience due to repair delays, a rebate program, and reimbursement for sold or traded-in Class Vehicles with a failed engine and Class Vehicles destroyed by fire. A conservative estimate as of mid-September of the value of the benefits to Class members is a minimum of $889,570,109. *See* Declaration of Matthew D. Schelkopf ("Schelkopf Decl."), Ex. 4 (Expert Report and Opinion of Susan K. Thompson ("Thompson Report") at ¶ 10 Summary Table).

The reaction of the Class has been overwhelmingly positive. Just over ninety-six percent of declarations submitted by Class members approve of the Settlement. Declaration of Steve W. Berman ("Berman Decl."), ¶ 7. In particular, the monetary reimbursement and warranty components of the Settlement are very popular. The Lifetime Warranty on the engine short block, specifically the rotating assembly where the alleged defect is located, covers all costs associated with inspections and repairs, including the costs associated with replacement parts, labor, diagnoses, and mechanical or cosmetic damage to the Class Vehicles caused by an engine

---

[1] The capitalized terms used herein are defined in the Settlement Agreement (ECF No. 128-1, p.3).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

malfunction. Accordingly, consumers will not have to pay out of pocket if the alleged defect manifests in the future.[2]

Once installed, the Knock Sensor Detection System (KSDS) software will alert a driver to any early bearing wear before any severe engine damage occurs that could ultimately lead to engine failure or fire.[3] Schelkopf Decl., Ex. 3 (Declaration of Brian Latouf ("Latouf Decl."), ¶ 2). With the aid of the software, the knock sensor listens to the engine for vibrational acoustic signals which indicate early signs of bearing wear that may ordinarily precede an engine failure. *Id.* When bearing wear is detected, the KSDS triggers multiple alerts to the driver and allows for the vehicle to be operated at a safe speed back home or to a repair facility for inspection and diagnosis while limiting the risk of an accident. *Id.* In addition, for ninety days following final approval, Class members will be entitled to a free diagnostic inspection.[4]

Class members who were forced to pay out of pocket for past repairs related to the alleged defect will be entitled to a full refund plus attendant expenses such as towing and car rentals.[5] Class members may also submit claims for compensation based on their vehicles' loss in value at the time of sale or trade in due to the alleged defect, or even if the car was destroyed by an engine fire. This compensation is

---

[2] The market value of the Lifetime Warranties that have already been activated for the 2,924,209 Class Vehicles with the KSDS update is $689,712,359. Thompson Report at ¶ 10. The potential maximum value of the warranties for the entire Class of 3,956,568 vehicles is $932,939,474. *Id.*

[3] Although the upgrade is free, the value of the labor to install the software is estimated at $108,143,498 for the upgrades that have already occurred, which is a benefit conferred on the Class. Thompson Report at ¶ 10. The maximum value of the installations, assuming it is performed on all Class Vehicles, is $146,274,716. *Id.* Class Counsel has not attempted to place a value on the software itself.

[4] Based on the estimated number of inspections that will occur, the value of the labor to perform these inspections is estimated at $64,597,623. *Id.* at ¶ 10.

[5] Class members who paid for defect-related repairs will receive 100% reimbursement plus compensation for rentals, towing, and other expenses relating to the repairs. As of September 18, 2020, Hyundai and Kia owners had submitted $27,116,629 in claims for past repairs and related expenses.

calculated as the difference between what the Class member received through insurance, sale, or trade in and Black Book value (*i.e.*, wholesale used vehicle value), which is an estimate of what a dealer would pay a consumer for the car. It is not currently possible to determine the total value of this relief until after all individual claims have been processed; however, thus far 7,536 Class members (4,215 Kia and 3,321 Hyundai) submitted claims for this compensation.

Per the Court's May 7, 2020 Order (ECF No. 132), Plaintiffs collected 546 declarations[6] from Class members gauging their reactions to the Settlement. Berman Decl. ¶ 7. Of these declarations, 525 support the Settlement and only 21 do not support it. Berman Decl. ¶ 7. While all of the non-supporting declarations have been submitted for the Court's consideration, Class Counsel provided only a sampling of the supporting declarations received (100 of 525). Berman Decl. ¶ 9. All of the declarations are available for the Court's review upon request. Berman Decl. ¶ 9

Given the results achieved, the reaction of Class members, and consideration of the Rule 23 factors for approval of class settlements in the Ninth Circuit, Plaintiffs respectfully request the Court grant final approval of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    <u>Plaintiffs' Allegations and Pre-Litigation Investigation</u>

Beginning in February 2017, Class Counsel began their investigation into the alleged defect, which included speaking with hundreds of Kia and Hyundai owners, reviewing their repair records and invoices, online and social media research into the frequency of the manifestation of the alleged defect, a mechanical inspection, public statements by the Defendants and NHTSA, past recalls, reviewing Hyundai and Kia engine designs with automotive experts, and investigating potential legal claims applicable to the class.

---

[6] In the declarations, Class Counsel identified 29 declarations based on vehicles bearing a VIN number identical to another submission. These duplicate declarations were removed from the database. Of the duplicative declarations removed, 2 did not support the settlement and 27 did support it.

3

1

### B. History of the Litigation

2      On May 10, 2017, Plaintiffs Cara Centko and Jenn Lazar filed the proposed

3      nationwide class action lawsuit *Centko and Lazar v. Kia Motors America, Inc.*, No.

4      8:17-cv-00838 (C.D. Cal.). On August 8, 2017, Plaintiffs Christopher Stanczak and

5      Rose Creps filed the proposed nationwide class action lawsuit *Stanczak and Creps v.*

6      *Kia Motors America, Inc. et al.,* No. 8:17-cv-1365 (C.D. Cal.).  On December 19,

7      2017, Plaintiffs James Kinnick and Wallace Coats filed the proposed nationwide class

8      action lawsuit *Kinnick and Coats v. Hyundai Motor Co., et al.*, No. 8:17-cv-02208

9      (C.D. Cal.).  On January 23, 2018, Plaintiff Maryanne Brogan filed the proposed

10      nationwide class action lawsuit *Brogan v. Hyundai Motor America, et al.*, No. 8:17-

11      cv-00622 (C.D. Cal). On April 16, 2018, Plaintiff Andrea Smolek filed the proposed

12      nationwide class action lawsuit *Smolek v. Hyundai Motor America, et al.*, No. 2:18-cv-

13      05255 (C.D. Cal.).  On August 7, 2018, the Court ordered these cases consolidated as

14      *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.) (ECF No.

15      85.)

16      On September 4, 2018, Kia Motors America, Inc. and Hyundai Motor America,

17      Inc. and Hyundai Motor Company, Ltd. filed separate motions to dismiss Plaintiffs'

18      claims. (ECF Nos. 86-89.) On October 9, 2018, Plaintiffs filed oppositions to

19      Defendants' motions. (ECF Nos. 93-94.) Shortly thereafter, the Court entered the

20      parties' request to continue the hearing date on Defendants' motions to dismiss to

21      allow the parties to explore the opportunity for settlement. (ECF Nos. 97, 98.)

22      On December 14, 2018, Plaintiffs Fockler, House, Loomis, Miller, Moore, Rice,

23      and Smith, along with other plaintiffs not subject to this proposed Settlement,[7] filed

24      the proposed nationwide class action lawsuit *Flaherty v. Hyundai Motor Co., et al.*,

25      No. 18-cv-02223 (C.D. Cal.), alleging similar claims to those in *In re: Hyundai and*

26

---

27      [7] *Flaherty* is not settled in its entirety because the case includes additional Hyundai

28      and Kia vehicles (with different engines than those of the Class Vehicles) that are not included in this Settlement, and the claims of *Flaherty*'s named plaintiffs and putative class members not explicitly named, identified, or encompassed in this Settlement are subject to ongoing litigation that is currently stayed.

*Kia Engine Litigation*. *Flaherty* was amended twice, on January 10, 2019, and May 1, 2019, to add Plaintiffs Dickerson, McCallister, Montoya, Franklin, North, Schmitt, and Stackhouse, along with other plaintiffs not subject to this proposed Settlement.

On April 22, 2019, plaintiffs in a separate lawsuit pending in the Northern District of California moved to transfer and coordinate or consolidate this Action with *Musgrave v. Hyundai Motor America, Inc.*, No. 4:18-cv-07313-YGR (N.D. Cal.) as well as others in the Central District of California. The Judicial Panel on Multidistrict Litigation denied that motion on August 1, 2019.

### C.   Settlement

In late 2018, counsel in the consolidated cases met and conferred with counsel for Defendants on multiple occasions, including with an engineering representative from HMA and KMA present, regarding the allegations in the consolidated action, the potential defenses of HMA and KMA, and potential resolution. These meetings between counsel culminated in a mediation session before Honorable Ronald M. Sabraw (Ret.) on December 21, 2018, where the parties settled in principle. Counsel, including counsel in *Flaherty*, continued settlement discussions over the next several months, which resulted in additional modifications and enhancements to the proposed settlement. In May 2019, while the settlement negotiations were ongoing, Plaintiffs' counsel engaged in discovery, which included deposing two Hyundai Motor Co., Ltd. engineers, both of whom traveled from South Korea for their deposition. With the aid of an experienced translator, the depositions spanned two days and covered hundreds of pages of technical documents produced by Defendants.

After months of continued negotiations, the Parties executed the Settlement Agreement on October 10, 2019. At that time, the parties had not reached agreement on attorneys' fees and the issue was expressly left open in the Settlement Agreement, which stated the parties would negotiate or submit the issue to the Court. On September 1, 2020, before Class Counsel filed their unopposed fee application, the parties participated in a mediation with the Honorable Edward A. Infante (Ret.) and

1    reached a settlement on Class Counsel's fees, costs, and class representative service

2    awards.

3          **D.**      <u>**Terms of the Settlement Agreement**</u>

4          The Settlement provides substantial benefits to the following Class: All owners

5    and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the

6    United States, including those that were purchased while the owner was abroad on

7    active U.S. military duty, but excluding those purchased in the U.S. territories and/or

8    abroad. The Class Vehicles include: all 2011-2018 and certain 2019 model year

9    Hyundai Sonata vehicles, all 2013-2018 and certain 2019 Hyundai Santa Fe Sport

10    vehicles, all 2014-2015, 2018, and certain 2019 Hyundai Tucson vehicles, all 2011-

11    2018 and certain 2019 Kia Optima vehicles, all 2011-2018 and certain 2019 Kia

12    Sorento vehicles, and all 2011-2018 and certain 2019 Kia Sportage vehicles originally

13    equipped with or replaced with a genuine Theta II 2.0 liter or 2.4 liter gasoline direct

14    injection engine within OEM specifications.[8] There are 3,956,568 Class Vehicles, not

15    including vehicles that were destroyed or have branded titles (indicating the vehicle

16    suffered significant damage). Thompson Report Schedules 7 & 8.

17    

_____

18    [8] Excluded from the Class (and not released by the Settlement) are all claims for death,
personal injury, property damage (other than damage to a Class Vehicle that is the
19    subject of a Qualifying Repair), and subrogation. Also excluded from the Class are (a)
20    HMA and KMA; any affiliate, parent, or subsidiary of HMA or KMA; any entity in
which HMA or KMA has a controlling interest; any officer, director, or employee of
21    HMA or KMA;(b) any successor or assign of HMA or KMA; any judge to whom this
22    Action is assigned, his or her spouse, and all persons within the third degree of
relationship to either of them, as well as the spouses of such persons; (c) individuals
23    and/or entities who validly and timely opt-out of the settlement; (d) consumers or
24    business that have purchased Class Vehicles previously deemed a total loss (i.e.,
salvage) (subject to verification through Carfax or other means); and (e) current or
25    former owners of a Class Vehicles that previously released their claims against HMA,
26    HMC, KMC, and KMA in an individual settlement with respect to the issues raised in
the Action (for the purpose of clarity, individual owners of 2011-2014 Hyundai
27    Sonatas who released claims against HMA and HMC in the settlement reached in
28    *Mendoza v. Hyundai Motor Company Ltd., et al.*, Case No. 15-cv-01685-BLF (C.D.
Cal.) are not excluded from the claims of the Class).

**1.**     ***Lifetime Warranty Coverage for the Engine Short Block***

All Class Vehicles are eligible to receive a Lifetime Warranty, which covers all costs associated with inspections and repairs, including the costs associated with replacement parts, labor, diagnoses, and mechanical or cosmetic damage to the Class Vehicles caused by the alleged defect. The Lifetime Warranty covers consumers for any future manifestations of the alleged defect.[9] The Lifetime Warranty supplements any existing warranties. Further, to remedy the issue of oil change service records as an obstacle to coverage, a problem experienced by some of the Plaintiffs as well as Class members, the Settlement prohibits denial of coverage for alleged failure to properly service or maintain the Class Vehicle, except in instances of Exceptional Neglect. Disputes about Exceptional Neglect will be resolved through the Better Business Bureau's ("BBB") alternative dispute resolution process, with costs and fees borne by Kia and Hyundai.

The value of the Lifetime Warranty to the Class is calculated in the accompanying report of Susan Thompson, a partner at the economic consulting firm of Hemming Morse. Generally, the value was derived by using the existing prices of other Hyundai and Kia warranties as reference points, and Hyundai and Kia's estimation that the value of the engine short block represents 10% of the value of the full powertrain. Thompson Report at ¶¶ 39-40. Using 10% of Defendants' prices for powertrain warranties, Ms. Thompson concludes that a reasonable estimate of the value of the warranty to the 2,924,209 Class members whose vehicles have already received the KSDS installation is $689,712,359. Thompson Report at ¶ 40 Table 2. Hemming Morse then cross-checked this conclusion by surveying the market of automobile parts outside of Hyundai and Kia. This method estimates that the short block value is slightly higher, at 12.15% of the powertrain's value. Thompson Report

---

[9] The only precondition of the warranty is the installation of the KSDS software. *See infra* Section II(D)(2).

1    at p.35, Schedule 6a. The value of the warranties under this assumption is

2    $838,046,609.[10] Thompson Report at ¶ 43.

3         In addition, for 90 days following the final approval date, all Class Vehicles that

4    have not already received a recall inspection[11] are eligible for free inspections and, if

5    necessary, short block assembly repairs, irrespective of the Class Vehicles' mileage,

6    duration of ownership, or any prior repairs. This inspection is meant to identify and

7    remedy existing problems, especially the deterioration of the connecting rod bearings,

8    as soon as possible. The benefit to the Class, not counting any subsequent repairs

9    found necessary by the inspection, is based on the labor expended by Kia and Hyundai

10   dealerships. Kia states that an average recall will yield a 25-35% response rate. Using

11   the bottom of the range, the value to the Class is estimated at $64,597,623. Thompson

12   Report at ¶ 46.

13        Defendants will also provide a comparable class of loaner vehicle to Class

14   members during any repairs required under the Lifetime Warranty. If no loaner vehicle

15   is reasonably available through Defendants' authorized dealerships, Defendants will

16   reimburse Class members up to $40 per day for reasonable rental car expenses until

17   the repairs are completed.

18        In the event any disputes about Lifetime Warranty coverage occur, they will be

19   resolved through the Better Business Bureau's ("BBB") alternative dispute resolution

20   process, with costs and fees borne by Defendants.

21        **2.**    *Recall and Product Improvements*

22        Hyundai previously recalled certain model year 2011-2012 Hyundai Sonata

23   vehicles in September 2015 through the National Highway Transportation Safety

24   Administration (NHTSA) Campaign Number 15V-568 and recalled certain model year

25   2013-2014 Hyundai Sonata and Santa Fe Sport vehicles in March 2017 through

26

27        [10] The potential maximum value assuming all Class Vehicles have the KSDS is

28   $932,939,474 using the Hyundai and Kia assumption, and roughly $1.1 billion using the 12.15% figure. Thompson Report at ¶ 40 Table 2; ¶ 43 Table 2a.

     [11] Previous recall campaigns are discussed *infra*.

NHTSA Campaign 17V-226. In December 2018 and January 2019, Defendants issued a subsequent recall of those same vehicles to inspect and confirm proper reinstallation of the fuel tube to address car engines at risk of fire, through NHTSA Campaign numbers 18V93400 (as to HMA) and 18V907000 (as to KMA). As part of the Settlement, Defendants represent that these recalls and product improvements represent part of the consideration to the Class.[12]

All Class Vehicles are entitled to a free KSDS software addition to the vehicles' Engine Control Units .[13] If the KSDS detects bearing wear in the engine, it triggers multiple alerts to the driver: (1) the check engine light (or Malfunction Indicator Lamp) on the dashboard will blink, and (2) the car will be placed in a temporary engine protection mode. The temporary engine protection mode limits acceleration, limits the car's maximum speed to 65 miles per hour, and limits the engine speed to approximately 1800 to 2000 rpm. This mode allows the driver to drive at a safe speed home or to a repair facility for inspection and diagnosis while limiting the risk of an accident. Latouf Decl. ¶ 2. The KSDS is a safety feature designed to prevent the engine defect from putting drivers and occupants at further risk, such as avoiding sudden and unexpected stalling. The value of the labor to install the KSDS in vehicles that have received it as of September 2020 is $108,143,509. Thompson Report at ¶ 53. If all Class Vehicles receive the software, the value of the labor to install the KSDS would be $146,247,716. Thompson Report at ¶ 53 Table 4.

### 3.  *Repair Reimbursements*

Plaintiffs and many of the Class members, including many who no longer own or lease their vehicles, were forced to pay out of pocket for repairs related to the alleged defect. Often, this was due to a denial of warranty coverage, for reasons that

---

[12] For valuation purposes, inspections performed on these 227,000 vehicles are not factored into the value of the Settlement.

[13] The KSDS is free, but the value of the labor required to install the KSDS is 0.3 or 0.5 hours, depending on the vehicle, multiplied by the average dealer labor rates. The value of the labor already expended is a benefit to the Class totaling $108,143,509. Thompson Report at ¶ 53.

included misdiagnosis, a spurious requirement for oil change or maintenance records, or disputes about coverage. These Class members are now eligible to submit Claims that, if approved, will reimburse them in full for these expenses, regardless of whether the Class member was an original owner, lessee, or subsequent purchaser, or whether the repair was completed before or after the recall campaigns identified above. To receive reimbursement, the Class member must submit a completed Claim Form by April 12, 2021, with proof of the repair expense that reflects that the work was conducted to address the repair.[14]

With a view toward the difficulties experienced by some Plaintiffs and Class members, the Settlement provides that "Defendants shall take all reasonably available steps to acquire from the dealerships the information reasonably necessary to approve the claim (i.e. the date, nature, and cost charged for the repair)." And if the Class member does not have a repair receipt, the Class Member may attest under the penalty of perjury that they do not have a receipt. Repair reimbursements shall be provided regardless of whether the repairs were performed at an authorized Hyundai or Kia dealership or by a third-party. In addition, reimbursements will be provided even if warranty coverage was initially denied for alleged failure to properly service or maintain the Class Vehicle. In addition to reimbursement, Class members who presented their Class Vehicle to an authorized dealership and were denied in-warranty repair prior to receiving notice of this Settlement, and then obtained their repair elsewhere, are eligible for an additional $140 goodwill payment. Repair reimbursements will only be denied if Exceptional Neglect is shown.[15]

---

[14] Class members who were members of the prior *Mendoza* settlement class of 2011-2014 Hyundai Sonatas are also eligible for reimbursements for repairs that arose after the claims period expired in that settlement.

[15] "Exceptional Neglect" means (a) when the vehicle clearly evidences a lack of maintenance or care for a significant period of time of not less than one (1) year, such that the vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance was due to a Loss Event; or (b) failure of a Class member to have the KSDS installed pursuant to the KSDS Product Improvement Campaign by a Hyundai or Kia dealer within 60 days from notice date, or within 60 days of mailing of KSDS

10

As of September 16, 2020, 5,503 Hyundai Class members had submitted claims for approximately $9.9 million for reimbursement of past repairs (Thompson Report at p.32, Schedule 4), and 4,900 Kia Class members submitted claims for approximately $10.9 million.[16] Thompson Report at p.33, Schedule 5 (sum of Repair Reimbursements and Repair Reimbursements (3d Party)).

### 4.    *Other Repair-Related Reimbursements*

Additionally, Class members may submit claims for reimbursement for any towing expenses or other out-of-pocket expenses reasonably related to a Qualifying Repair (*i.e.*, repairs of the short block assembly due to a connecting rod bearing failure), and up to $40 per day for rental car expenses if a loaner vehicle was not originally provided by Defendants. Class members who experienced repossession or other financing-based damages due to the cost of Qualifying Repairs may also seek reimbursement. As of September 16, 2020, there have been 3,108 claims from Hyundai Class members totaling $2,205,775, and 2,964 claims from Kia Class members totaling $2,566,661 under this reimbursement category.

So far 19,077 Class members have submitted claims with a total face value of $25,947,884 for both past Qualifying Repairs that were initially denied and paid out-of-pocket by Class members, and related expense reimbursements such as towing and rentals. Thompson Report p.32-33, Schedules 4 & 5. Epiq, Kia's notice administrator, stated that it expects to receive approximately 86,400 claims by the end of the notice period. *Id.* at ¶ 22. Using similar assumptions for Hyundai, the face value of claims for past repairs and related expenses at the end of the notice period is projected to be $156,894,354. *Id.* at ¶ 10 (sum of lines d. and e., $64,286,216 for Hyundai and $92,608,138 for Kia).

---

campaign notice, whichever is later. Diagnostic costs associated with establishing Exceptional Neglect will be borne by Defendants.

[16] Thus far, the average Kia repair claim is $2,280, and the average Kia third-party repair claim is $2,161. The average Hyundai claim is $1,805. Thompson Report Schedules 4 & 5.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

### 5.    *Inconvenience Due to Repair Delays*

If a Class member is or was inconvenienced by delays of more than 60 days when obtaining a repair from an authorized Hyundai or Kia dealership, the Class member may submit a claim for a goodwill payment based on the length of delay. Class members are eligible for goodwill payments of $50 for delays lasting between 61 and 90 days, and $25 for each additional 30-day period. Class members can also elect to receive their compensation in the form a dealership service card valued at 150% of the amount that would otherwise be paid (and can only be used at authorized Hyundai dealerships (for Hyundai Class Vehicles) or Kia dealerships (for Kia Class Vehicles)). As of September 20, 2020, Class members have submitted $189,025 in claims for repair delays. Thompson Report, p. 32-33, Schedules 4 & 5.

### 6.    *Loss of Value for Sold or Traded-In Vehicles*

For Class members who submit valid claims for sold or traded-in vehicles, Defendants will pay the difference between the value the Class Member received in the transaction and the vehicles' baseline "Black Book" value. Black Book value is a standardized value used by car dealers to determine what to pay a consumer for a vehicle (or the wholesale value).[17] Thus, if a Class member experienced an engine seizure, stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring repair of the engine block, and then surrendered, sold, or traded-in the Class Vehicle without first procuring the recommended repair, they will be compensated up to the vehicle's Black Book value, plus a $140 goodwill payment.

If a Class member contends that the actual damages incurred exceed the reimbursement provided, the Class member can provide written notice to Hyundai or Kia requesting alternative dispute resolution through the BBB. The costs of the BBB-administered alternative dispute resolution will be borne by Hyundai or Kia, excluding

---

[17] In contrast, the more commonly known Blue Book value is a reference for consumers that provides prices the consumer might expect to pay for a car.

attorneys' fees, unless the mediator or arbitrator determines the Class member's claims were brought in bad faith.

### 7.    *Loss of Vehicle by Engine Fire*

Class members whose vehicles were lost in an engine fire directly caused by a Class Vehicle's condition that would have otherwise been addressed by a Qualifying Repair are eligible to receive payment by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the time of loss, plus an additional $140 goodwill payment. The maximum Black Book value, as opposed to the baseline value used for sales or trade-ins, represents a reasonable estimate of the maximum amount a consumer could receive from a dealer for the car.[18] Again, should any disputes arise, the BBB option is available at Defendants' expense. As of September 20, 2020, 4,537 claims for loss of value and fire loss have been received, totaling at least $635,180. Thompson Report, p. 32-33, Schedules 4 & 5. This figure uses only the $140 goodwill payment because actual damages cannot be calculated yet, and assumes all claims are valid.

### 8.    *Rebate Program*

Relief is also provided for Class members who received notice of this Settlement, have lost faith in the Class Vehicle, and prefer to own a different vehicle. If they sell, surrender or trade in their vehicle, they can submit claims to receive the baseline Black Book value. But if the Class member buys another Hyundai or Kia vehicle, they will also be eligible for a rebate. If a Class member loses faith in their Class Vehicle as a result of this Settlement, the Class member may seek a rebate after selling the Class Vehicle in an arm's length transaction if they purchased a

---

[18] Any and all claims for personal injury or property damage (other than the car itself) are expressly excluded from the settlement. Whether such claims are from a fire, or from an engine failure, they are not a part of this Settlement and are preserved for Class members who experienced such an injury.

1  replacement Hyundai vehicle (for Hyundai Class members) or Kia vehicle (for Kia

2  Class members).

3        The rebate is also available to any Class member who, after the Notice Date,

4  experiences an engine failure or fire in a Class Vehicle, loses faith in their Class

5  Vehicle, and completes all other steps to qualify for the rebate, including the purchase

6  of a replacement Hyundai or Kia vehicle and submission of a claim within 90 days of

7  the engine failure or fire.

8        The amount of the rebate is calculated by comparing sales documentation to the

9  maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the

10  time of the KSDS campaign launch up to the following amounts: (a) for model year

11  2011-2012 Class Vehicles: $2,000; (b) for model year 2013-2014 Class Vehicles:

12  $1,500; (c) for model year 2015-2016 Class Vehicles: $1,000; (d) for model year

13  2017-2019 Class Vehicles: $500. As of September 20, 2020, 2,999 claims for rebates

14  have been submitted. The amount of the rebates to be issued has not been calculated

15  yet.

16        **E.    <u>Preliminary Approval</u>**

17        On May 7, 2020, the Court issued an Order (1) Conditionally Granting

18  Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement

19  (Doc. 112); and (2) Setting a Final Fairness Hearing for November 13, 2020, at 10:30

20  a.m. (ECF No. 132.) Consistent with the Settlement, the deadline for Class members

21  to object or opt out of the Settlement is October 30, 2020. Class members who do not

22  opt out have until April 12, 2021, to submit most claims for reimbursements. As of

23  October 13, 2020, Class Counsel received a total of 27 objections and 946 requests for

24  exclusion (622 for Kia and 323 for HMA). Given the class size, even if all opt-outs

25  and objections are added together this represents less than 25 one thousandths of 1%

26  (.025%) of the class.

27        **F.    <u>Notice</u>**

28        Notice to the Class was carried out by Hyundai and Epiq. Schelkopf Decl., Ex.1

(Declaration of Daniel Lee ("Lee Decl.")); Ex. 2 (Declaration of Amanda Sternberg

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

("Sternberg Decl.")). In total, 10,642,839 first-class mail notices were sent out. Lee Decl. ¶ 6; Sternberg Decl. ¶ 15. Email notice was sent to 6,309,594 email addresses. Lee Decl. ¶ 8; Sternberg Decl. ¶ 21. The Settlement-dedicated phone lines established by Hyundai and Epiq have received 144,193 calls. Lee Decl. ¶ 4; Sternberg Decl. ¶ 27. Epiq's settlement website has received 156,340 unique visitors.[19]

As of October 7, 2020, 22,842 Hyundai Class members have submitted claims, and, as of October 14, 2020, 29,894 Kia Class members have also done so. Lee Decl. ¶ 10(a); Sternberg Decl. ¶ 29. Notably, the 52,736 claims submissions is nearly *double* the 28,488 claims received by mid-September 2020, the number used by the valuation expert in calculating Settlement value.

## III.    ARGUMENT

### A.    The Court Should Reaffirm its Certification of the Settlement Class

In the Court's Order granting preliminary approval of the Settlement, it analyzed each class certification element under Rule 23(a) and (b)(3), and concluded that the Class should be certified for settlement purposes. (ECF No. 132, p. 10-16.) Nothing has changed since the Court's prior Order, and no objections have been received challenging the propriety of the certification of the Settlement Class (the current objections only seek clarification or perceived improvements to the certified class) thus Class Counsel respectfully submits that the Court reaffirm its certification of the Settlement Class here.

### B.    The Settlement is Fair, Reasonable, and Adequate

Before approving a class-action settlement, Federal Rule 23 requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Under Ninth Circuit law, the Court must consider: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of

---

[19] Data for Hyundai's site was not available at the time of filing.

the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The factors recently added to Fed. R. Civ. P. 23(e)(2) substantially overlap with the factors the Ninth Circuit has enumerated above.[20] The first factor requires the Court to determine whether the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The Court found that Plaintiffs and Class Counsel adequately represented the Settlement Class in its Preliminary Approval Order. (ECF No. 132, at 13.) The second factor requires the Court to determine that the proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This factor has been a requirement in the Ninth Circuit since the *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) decision, and was addressed by the Court in its Preliminary Approval Order (ECF No. 132, at 23-24), and is discussed further below in Section III(C). The third factor, whether the relief provided for the class is adequate, is addressed by factors one through six, and eight.[21]

---

[20] "The goal of this amendment [to Rule 23(e)] is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Rule 23 Advisory Committee Notes 2018 Amendment Subd. (e)(2)*.

[21] Specifically, the costs, risks, and delay of trial and appeal is addressed by factors two and three. The effectiveness of any method of distributing relief to the class is addressed by factor four in III.B.4. The terms of any proposed award of attorney's fees, including the timing of payment, is addressed in Class Counsel's fee motion

1  The final factor, whether the Settlement treats class members equitably relative to each

2  other, was addressed in the Court's prior adequacy analysis, and is also addressed by

3  factor four.

4  ### 1.    *The Strength of Plaintiffs' Case*

5  Plaintiffs allege that Defendants sold the Class Vehicles with defective engines,

6  which can cause sudden and catastrophic engine failure when the defect manifests. In

7  some instances, catastrophic engine failure can cause engine fires. Plaintiffs contend

8  that this safety-related defect can manifest in the Class Vehicles at any time. Through

9  discovery, Plaintiffs expected to present evidence that Defendants had knowledge of

10 the defects before the Class Vehicles were sold to the public, and that instead of

11 disclosing the defect as the law obligates, Defendants concealed the defect. If the

12 litigation had proceeded, Plaintiffs are confident that they could demonstrate that

13 Defendants violated state consumer protection laws, breached their express and

14 implied warranties, violated the Magnuson-Moss Warranty Act, and engaged in fraud.

15 As a result of this conduct, Plaintiffs and the class suffered damages in the form of

16 costly repairs.

17 It is unlikely, however, that Plaintiffs would be able to recover under each claim

18 alleged against Defendants. Indeed, Defendants would argue that the Class Vehicles

19 are not defective, or that Defendants were not aware of any defect in the engine at the

20 time of sale. Even if Plaintiffs were able to establish knowledge of the defect on a

21 particular date, it is possible that such a date would be after some of the Class Vehicles

22 were sold, reducing the potential class size. Defendants would likely argue that they

23 honored their warranty obligations and that any denied warranty repairs were properly

24 attributable to the Class member's failure to properly maintain the Class Vehicle. As

25 such, the "these potential obstacles weigh in favor of granting final approval." *Ruiz v.*

26

27

28

_____

(ECF No. 139), included in the Notice, and is also addressed in Section C, below.

Finally, there are no Rule 23(e)(3) agreements.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

*JCP Logistics, Inc.*, No. 13-1908, 2016 WSL 6156212, at *4 (C.D. Cal. Aug. 12, 2016) (observing that while plaintiff was confident he could prevail on a class-wide basis, various legal and factual challenges remained).

### 2.   The Risk, Expense, Complexity, and Duration of Further Litigation

While Plaintiffs are confident in the strength of their claims, there is little question that Defendants would mount a vigorous defense if the litigation were to proceed. Defendants expressly deny that the Class Vehicles are defective in the Settlement. (Revised Settlement Agreement at 2-3.) At the time settlement discussions were initiated, "comprehensive Motions to Dismiss under Rules 8, 9, and 12(b)(6)" were pending. (ECF No. 132, at 19.) After the Court resolved the pending motions, the parties would need to conduct additional, substantial discovery, brief class certification, brief summary judgment, prepare and serve expert reports, brief *Daubert* motions, and proceed to a lengthy trial, most likely in late 2022. Regardless of the outcome of the class certification motion, a 23(f) appeal would likely be filed, further delaying any potential relief. By the time the parties reached trial, many Class members will have likely sold their Class vehicles, losing the powertrain warranty that is being extended to a Lifetime Warranty under the Settlement, and expose those who kept their Class Vehicles to an increased risk of expenses, engine seizure or stalling.

Instead of proceeding with risky and time-consuming litigation, the Settlement offers immediate and substantial relief to the Settlement Class. As such, this factor supports final approval. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."); *Ruiz*, 2016 WL 6156212, at *5 ("Settlement eliminates the risks inherent in continued litigation, and it may be the last chance for class members to obtain relief.").

### 3.   Risk of Maintaining a Class Action Throughout Trial

While Plaintiffs are confident in certifying one or more classes, Defendants maintain the Class Vehicles are not defective. As such, class certification would be

18

contested. This would likely result in a 23(f) appeal. After Plaintiffs successfully certified a class or classes, Defendants would likely file motions to decertify the class(es). This presents a substantial risk of maintaining a class action throughout trial. *Zubia v. Shamrock Foods Co.*, No. CV1603128ABAGRX, 2017 WL 10541431, at *12 (C.D. Cal. Dec. 21, 2017) ("The uncertainty surrounding class certification favors approval of the Settlement here, especially 'because settlement was reached prior to a hearing on Plaintiffs' motion for class certification . . . a time when there was still risk that the class would not be certified by the Court.'") (quoting *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 888-89 (C.D. Cal. 2016)).

### 4. *The Amount Offered in the Settlement*

Even with conservative assumptions, the amount offered in the Settlement as of mid-September is estimated to have a minimum value to consumers of $889,570,109. Thompson Report at ¶ 10 (Summary Table). This number may rise to $1.3 billion. *Id.*

The Settlement achieved here offers the class virtually everything Plaintiffs hoped to recover through the litigation. Defendants are providing warnings related to the risk of engine stalling. Class members will receive a Lifetime Warranty, allowing for free inspections and necessary repairs. Reimbursements to Class members for past repair expenses, including those incurred for rental cars and towing services in connection with obtaining repairs, are offered through a simple, straightforward claims process. Class members who experienced engine failures or fires and/or delays in repairs are eligible for additional goodwill payments. Class members who sold or traded-in their vehicles after receiving a sizable engine repair estimate instead of having the vehicle repaired will be eligible for compensation. Class members who, after notice, lost faith in their Class Vehicle and purchased a replacement Hyundai or Kia can also file a rebate claim. The Settlement even provides a mechanism for Class members to seek additional actual damages or review of warranty denials through BBB-administered alternative dispute resolution, with the costs to be borne by Defendants.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

The Settlement provides for a robust direct notice plan, which has been executed. *See* II. F. *supra*. The Settlement has also proven effective at distributing benefits to the Class. As of September 18, 2020 the KSDS had already been installed on 2,924,209 Class Vehicles, or 74% of those vehicles still on the road. Class members with the KSDS installed automatically receive the Lifetime Warranty without having to do anything else. Dealerships have received notice of the improvement campaigns and, in addition to doing the inspections and updates, must provide a brochure to vehicle owners detailing the warranty coverage and relief available. In order to receive cash payments, Class members must complete a simple Claim Form, which can be submitted electronically.

No group of Class members is favored over any other in the Settlement. As the Court recognized in its Preliminary Approval Order, "[e]ach Class Member is equally entitled to all forms of consideration offered in the proposed settlement." (ECF No. 132, at 21.) Multiple elements of relief and compensation are offered to Class members that reflect the varying degrees to which they were harmed or suffered losses due to the defect. All Class members are treated equally in that Black Book value is used as a standard to determine what Class members should have received in a given transaction. Black Book values are an objective and reasonable standard to use in making this determination, and do not favor any Class members over others.

The relief provided to the Class is adequate, and the Settlement should be finally approved.

### 5.    *Extent of Discovery and Stage of the Proceedings*

The Court must evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Class Counsel conducted a significant pre-suit investigation, interviewed hundreds of class members, filed detailed complaints, engaged in discovery that included an engine tear-down and two depositions of Defendants' Korean engineers, and reviewed thousands of pages of document discovery. As the Court previously recognized, this afforded the parties "sufficient

information to make an informed settlement decision." (ECF No. 132, at 22 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but Class Counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services").)

### 6. *The Experience and Views of Counsel*

As the Court previously recognized, Class Counsel have extensive experience in class action litigation involving automotive defects. (ECF No. 132, at 16.) Class Counsel believes that the Settlement offers an excellent result for the Class. Berman Decl. ¶ 10-11. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

### 7. *The Presence of a Governmental Participant*

Because Defendants conducted voluntary recalls of certain Class Vehicles, described in Section II(D)(2), *supra*, which was overseen by NHTSA, there was no presence of a governmental participant in this litigation. While NHTSA might have eventually initiated an investigation into all of the Class Vehicles, a great benefit of the Settlement is that it avoids the protracted process of a multistage NHTSA investigation that can take years to complete. *See generally In re Gen. Motors Corp. Pickup Truck Fuel Tank Products Liab. Litig.*, MDL 961, 1993 WL 204116, at *3 (E.D. Pa. June 10, 1993) (noting NHTSA proceedings can take several years to conclude).

### 8. *The Reaction of the Class*

The reaction of the Class has been overwhelmingly positive. As of October 13, 2020, 52,736 Settlement claims have been filed, 525 declarations supporting the Settlement have been submitted, and 27 objections have been received, three of which have been withdrawn thus far. Berman Decl. ¶ 7.

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

At the direction of the Court in the Preliminary Approval Order, Class Counsel obtained declarations from putative Class members. Of the 546 Class members who provided declarations, 525 supported the Settlement and wish to see it approved, while only 21 did not support the settlement. Berman Decl. ¶ 7. Most of those providing declarations found the relief fully satisfactory (some 395 Class members) while others, though they supported the Settlement, wanted greater relief (130 Class members). Berman Decl. ¶ 7. To Class Counsel's knowledge, this direct request for declarations is unique to this case, but with over 96.15% of declarants supporting the Settlement there is little doubt that the settlement is well received. Berman Decl. ¶ 7. When prompted to discuss the most important aspect of the Settlement, Class members said the following:

> "Being compensated for the repairs that I paid for. The car had 34,000 miles on it when the engine blew. Kia should have covered this under the 100,000 mile warranty.:;"
>
> "The most important part of the settlement to me is receiving all my money back that I put into getting my Kia fixed.;"
>
> "monetary reimbursement and lifetime warrant [*sic*];"
>
> "lifetime power train warrant [*sic*]";
>
> "The money I lost an [*sic*] the lifetime warranty for my motor;"
>
> "Paying me back for finances I lost in this endeavor.....and, accountability for them knowing this was an issue";
>
> "People receive fair financial compensation quickly";
>
> "The most important part of this settlement is the financial reimbursement for the motor I had to purchase";
>
> "To receive the payment for the repairs needed in my car. This was an unexpected bill of $5551.34.";
>
> "Timely results and payment.";

1    "Monetary. Hyundai needs to compensate me. I suffered a significant
2    financial loss when my car's engine seized. I only had 80,000 miles on
3    my car.";
4    "Reimbursement of costs for towing, repairs and rental cars";
5    "Lifetime warranty and towing reimbursement";
6    "Lifetime warranty";
7    "I hope it appropriately compensates me since I had $4,500 worth of
8    repairs";
9    "peace of mind";
10   "Financial reimbursement and Hyundai making this right.";
11   "The lifetime warranty and being reimbursed for what I had to pay
12   out";
13   "Getting my money back I had to pay out for my car getting fixed";
14   "To have closure and to be adequately compensated for my
15   inconvenience";
16   "Reimbursement of a large amount of out of pocket money due to
17   major engine failure"; and
18   "The extended warranty and the reimbursement of $846.50 for car
19   rental charges since August 2020 when the Sonata was in the shop
20   getting another engine under a recall."

21   Although the deadline for objecting is October 30, 2020, so far Class Counsel
22   have received 27 objections.[22] The majority of the objections relate to
23   misunderstandings about what the Settlement provides or a desire for expanded
24   benefits. Thus far, after resolving their misunderstandings with Class Counsel, three
25   potential objectors have withdrawn their objections. Class Counsel have reached out to
26   other objectors who seem to have misunderstood some aspect of the Settlement, but
27   have not yet heard back from all of them. Beyond those with a misunderstanding,
28

_____

[22] Professional objections tend to arrive at or just before the deadline.

23

other objectors have insisted on engine or vehicle replacements, complained that Hyundai cannot diagnose certain problems with their vehicles (often unrelated to the defect here), or felt they lost value on a sale or trade-in of their vehicle for another make prior to notice of the Settlement. One objector complained that he could not obtain the KSDS update because he had no local dealership; the closest Kia dealership being 30 miles away.

One objection received from attorney Daniel Thornton mistakenly relied on damages provided by a New Jersey statute not available to the Class, especially where the defect does not always manifest itself. In his assertion that the New Jersey statute applied to his and others' claims, Mr. Thornton construed the possibility that the defect could cause metal shavings to accrue in the engine as a certainty. The objector was deposed by Class Counsel, and during the course of the deposition he could not demonstrate that any such problems had manifested in his own vehicle, yet alone for New Jersey Class members. Mr. Thornton raised several other objections that will be more fully addressed by supplemental briefing once the October 30, 2020 objection deadline has passed.

On balance, the Settlement has been well received by the Class, and this reaction supports final approval.

### C.    <u>The Settlement is Not the Product of Collusion</u>

Where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946–47 (citations and internal quotation marks omitted) (emphasis in original). The Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to

revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted). A mediator's involvement in the settlement supports the argument that a settlement is non-collusive. *Wallace v. Countrywide Home Loans, Inc.*, No. SACV081463JLSMLGX, 2015 WL 13284517, at *7 (C.D. Cal. Apr. 17, 2015) (citing *Satchell v. Fed. Exp. Corp.*, No. C 03–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

First, Class Counsel is not receiving any distribution from the Settlement; their fees will be paid separately by Defendants. The Settlement is not structured as a common fund, and "[e]ach Class Member is equally entitled to all forms of consideration offered in the proposed settlement." (ECF No. 132, at 21.) Further, the Settlement benefits are not reduced *pro rata* based on the number of claimants. These benefits are conservatively valued as of mid-September at $889,570,109 and could rise to $1.3 billion. Thompson Report at ¶ 10 (Summary Table).

Second, the fee negotiations were protracted and adversarial. Only after reaching agreement on the relief to Class members did the parties negotiate attorneys' fees and expenses and service awards to the Plaintiffs. While Class Counsel first discussed potential attorneys' fees and service awards during the December 21, 2018 mediation with Judge Sabraw, these negotiations were not resolved until the second of two mediations with the Judge Infante on September 1, 2020. The fee agreement at the second mediation was reached almost a year after the Settlement Agreement was signed by the parties, and less than a month from when the then-contested fee motion was due. Even though Defendants have agreed to pay Class Counsel's attorneys' fees and expenses, this does not evidence collusion. *Kissel v. Code 42 Software, Inc.*, No. SACV151936JLSKES, 2017 WL 10560526, at *9 (C.D. Cal. Oct. 4, 2017) (finding that "clear sailing" agreement by itself does not evidence collusion).

Last, there is no reverter to the Defendants here. Defendants are obligated to provide all of the benefits offered under the Settlement regardless of the number of Class members who submit claims.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated: October 16, 2020                     Respectfully submitted,

                                    By:     /s/ *Matthew D. Schelkopf*
                                            Joseph G. Sauder
                                            Matthew D. Schelkopf
                                            Joseph B. Kenney
                                            **SAUDER SCHELKOPF**
                                            1109 Lancaster Avenue
                                            Berwyn, PA 19312
                                            Telephone: (610) 200-0581
                                            jgs@sstriallawyers.com
                                            mds@sstriallawyers.com
                                            jbk@sstriallawyers.com

                                            Adam Gonnelli (*pro hac vice*)
                                            **LAW OFFICE OF ADAM R.
                                                GONNELLI, L.L.C.**
                                            7030 E. Genesee Street
                                            Fayetteville, NY 13066
                                            Telephone: (917) 541-7110
                                            Facsimile:  (315) 446-7521
                                            adam@arglawoffice.com

                                            Bonner Walsh (*pro hac vice*)
                                            **WALSH PLLC**
                                            1561 Long Haul Road
                                            Grangeville, ID 83530
                                            Telephone: (541) 359-2827
                                            Facsimile:  (866) 503-8206
                                            bonner@walshpllc.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL**
   **SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

1

## **CERTIFICATE OF SERVICE**

2      I, Matthew D. Schelkopf, hereby certify that on this 16th day of October, 2020,

3  I caused the foregoing to be filed using the Court's CM/ECF system, and thereby

4  electronically served it upon all registered ECF users in this case.

5

6

7                          By:    /s/ *Matthew D. Schelkopf*

8                               Matthew D. Schelkopf

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838