Expert Report
of
Susan K. Thompson, CPA/CFF

In re: Hyundai and Kia Engine Litigation

United States District Court
Central District of California

8:17-cv-00838-JLS-JDE

# Table of Contents

I.      Introduction and Qualifications ...................................................................... 4

II.     Documents Considered ..................................................................................... 5

III.    Summary of Opinions ....................................................................................... 5

IV.     Background ........................................................................................................ 7

    A.    Settlement Considerations ............................................................................ 7

        1.    Lifetime warranty .................................................................................... 7

        2.    Recall and Product Improvements ........................................................... 9

        3.    Repair Reimbursements ........................................................................... 9

        4.    Other Repair-Related Reimbursements .................................................. 10

        5.    Inconvenience Due to Repair Delays ..................................................... 10

        6.    Loss of Value for Sold or Traded-In Vehicles due to a Loss Event ........ 11

        7.    Loss of Vehicle by Engine Fire .............................................................. 12

        8.    Rebate Program ..................................................................................... 12

        9.    Cost of Administration and Notice ......................................................... 13

V.      Analysis ........................................................................................................... 13

    A.    Class Vehicles ............................................................................................ 13

    B.    Lifetime Warranty Coverage for Engine Short Block ................................. 14

    C.    Free Diagnostic Inspection ......................................................................... 16

    D.    Knock Sensor Update and Vehicle Improvements ...................................... 17

    E.    Repair-Related Reimbursements - Hyundai ............................................... 19

    F.    Repair-Related Reimbursements - KIA ...................................................... 20

    G.    Cost of Administration and Notice ............................................................. 21

VI.     Conclusion ...................................................................................................... 21

Schedules
Schedule 1: Summary of the Settlement Agreement Value by Make (As of September 2020)
Schedule 1a: Summary of the Settlement Agreement Value by Make (Projected through April 12, 2021)
Schedule 2: Lifetime Warranty Value Calculation Hyundai and Kia Estimate
Schedule 2a: Lifetime Warranty Value Calculation (HM Calculation)
Schedule 3: Diagnostic Inspection Calculations
Schedule 3a: KSDS Installation Calculations
Schedule 4: Additional Claim Reimbursements: Hyundai Claims
Schedule 5: Additional Claim Reimbursements: Kia Claims
Schedule 6: Extended/Lifetime Warranty Price Hyundai and Kia Estimate
Schedule 6a: Extended/Life Warranty Price (HM Calculation)
Schedule 7: Hyundai Class Vehicles
Schedule 8: Kia Class Vehicles

<u>Exhibits</u>

Exhibit A: Curriculum Vitae, Susan K. Thompson, CPA/CFF

Exhibit B: Documents Considered

Exhibit C: Settlement Agreement

Exhibit D: Declaration of Adam Gonnelli

Exhibit E: Plaintiffs' Notice for Preliminary Approval

Exhibit F: Declaration of Alan Dow Regarding Knock Sensor Detection System

Exhibit G: Hyundai Protection Plan

Exhibit H: Kia Protection Plan

Exhibit I: Average Replacement Cost (Screen Shots)

# EXPERT REPORT AND OPINION OF SUSAN K. THOMPSON

## I.      Introduction and Qualifications

1. My firm, Hemming Morse, LLP, was retained by counsel for the plaintiffs ("Counsel"), representing the proposed class (the "Class") in *In re: Hyundai and Kia Engine Litigation*, Case No. 8:17-cv-00838-JLS-JDE (the "Litigation"), to provide an expert report concerning the value to the consumer (economic benefit) that is provided to the class as a result of the Settlement Agreement submitted to the Court on March 11, 2020 between the parties to this Litigation (Dkt 128-1, "Settlement Agreement").   Specifically, we were engaged to determine the value of the various elements of the settlement including the lifetime warranty, the installation of the knock sensor software update, the free diagnostic inspection and various cash reimbursements and payments.  In doing so, we determined a value for the lifetime warranty and reviewed the records of Hyundai Motor Co., Hyundai Motor America, Inc. ("HMA"), Kia Motors Corp., Kia Motors America, Inc. ("KMA"), collectively "Defendants," concerning inspection, repair, reimbursements and other consideration contemplated in Settlement Agreement.

2. I am a Partner in the Forensic Consulting Services Group of Hemming Morse, LLP.  I have over 35 years of experience in public accounting with both a national firm and a local firm in Fresno prior to joining Hemming Morse, Inc. in 2001 (the company changed from a corporation to a limited liability partnership in 2012).  My expert qualifications, including the testimony I have given during the last 17 years are described in Exhibit A hereto.

3. My primary background is in auditing, and I have performed extensive litigation and forensic accounting and consulting services for over 25 years.  My forensic accounting and consulting experience includes assistance in various forms of business litigation, fraud investigations, professional liability litigation, investigations of property and casualty insurance and fraud claims, and investigations of internal controls of for profit and not for profit companies. I also have experience in criminal matters, having provided services to the United States Attorney, County District Attorneys and the California Attorney General.  I have testified in several superior courts and participated in arbitration proceedings, mediation proceedings and administrative hearings.

4. I am a Certified Public Accountant and Certified in Financial Forensics by the American Institute of Certified Public Accountants.  I earned a Bachelor of Science degree from Loma Linda University, La Sierra Campus.

5. My hourly rate for preparing this report is $460 per hour.  Others in my firm assisting in this Litigation under my supervision and control are compensated their respective hourly rates. My compensation for any deposition and trial testimony in this Litigation is billed at the rate of $460 per hour.  Counsel has also agreed to reimburse my out-of-pocket expenses. My compensation is not dependent either on the opinions I express or the outcome of this Litigation.

6. This report should not be construed as expressing opinions on matters of law, which are outside of my expertise.  To the extent I have interpreted regulations, contracts, agreements, relevant cases, or other evidence, these interpretations necessarily reflect my understanding thereof from an accounting and financial reporting perspective.

## II.    Documents Considered

7. A list of the sources I consulted in preparing this report, as required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii) may be found in Exhibit B to this report.

8. In addition, other evidence may be produced to me that could be relevant to my conclusions, including the testimony and reports of other witnesses, and I reserve the right to amend my report and supplement my opinions after considering such evidence, if necessary.

## III.    Summary of Opinions

9. The value of the various benefits provided to the Class under the Settlement Agreement through April 12, 2021 totals $1,305,608,759[1] based on the following elements:

   a. The value of the Lifetime Warranty Coverage for the Class Vehicles related to the engine short block assembly is $932,939,474.  Hyundai Class Vehicles represent $541,647,464 and Kia Class Vehicles represent $391,292,010 of the total value.[2]

   b. The value of the free Diagnostic Inspection for Class Vehicles is $64,597,623.  Hyundai Class Vehicles represent $31,807,659 and Kia Class Vehicles represent $32,789,964 of the total value.[3]

   c. The value of the Knock Sensor Detection Software ("KSDS") update installation in the Class Vehicles is $146,247,716.  Hyundai Class Vehicles represent $86,615,052 and Kia Class Vehicles represent $59,632,644 of the total value.[4]

   d. The value of the Repair Reimbursements including the goodwill payment of $140 for both Hyundai and Kia is $128,316,075.[5]  Hyundai Class Vehicles represent $52,942,940[6] and Kia Class Vehicles represent $75,373,135[7] of the total value.

---

[1] Schedule 1a.

[2] Schedule 2.

[3] Schedule 3.

[4] Schedule 3a.

[5] See Schedule 4 for Hyundai $52,942,940 and Schedule 5 for Kia $75,373,135 which totals $128,316,075.

[6] Schedule 4, Hyundai total Repair Reimbursement of $52,942,940 = Repair Reimbursement (Hyundai) of $51,069,600 + Inconvenience: Repaired Elsewhere of $1,873,340.

[7] Schedule 5, Kia total Repair Reimbursements of $75,373,135 = Repair Reimbursement (Kia) of $37,342,004 + Repair Reimbursements (3rd Party) of $35,717,631 + Inconvenience: Repaired Elsewhere of $2,313,500.

e.   The value of Other Repair-Related Reimbursements for both Hyundai and Kia is $28,578,279.[8]   Hyundai Class Vehicles represent $11,343,276[9] and Kia Class Vehicles represent $17,235,003[10] of the total value.

f.   The value of the Inconvenience Due to Repair Delays for both Hyundai and Kia is $1,133,913.[11] Hyundai Class Vehicles represent $442,350[12] and Kia Class Vehicles represent $691,563[13] of the total value.

g.   The value of the Loss of Value for Sold or Traded-In vehicles due to a loss event cannot be calculated at this time as it relies, in part, on the Black Book value. Therefore, the loss has been calculated only for the $140 goodwill payment for Hyundai and Kia which is $2,681,560.[14]   Hyundai Class Vehicles represent $1,111,600[15] and Kia Class Vehicles represent $1,569,960[16] of the total value.

h.   The value of the Loss of Vehicle by Engine Fire cannot be calculated at this time as it relies, in part, on the Black Book value. Therefore, the loss has been calculated only for the goodwill payment of $140 for Hyundai and Kia which is $1,114,120.[17] Hyundai Class Vehicles represent $424,060[18] and Kia Class Vehicles represent $690,060[19] of the total value.

i.   The value of the Rebate Program cannot be calculated at this time as it relies, in part, on the Black Book value.

j.   The value of the Cost of Administration and Notice has not been calculated.

10.   Included in the Summary Table below is the total value of the claims made through September 16, 2020 for Hyundai and September 20, 2020 for Kia along with the value to the Class projected through April 12, 2021.

---

[8]  See Schedule 4 for Hyundai Other Repair-Related Reimbursements of $11,343,276 and Schedule 5 for Kia Other Repair-Related Reimbursement of $17,235,003 which totals $28,578,279.

[9]  Schedule 4.

[10]  Schedule 5.

[11]  See Schedule 4 for Hyundai $442,350 and Schedule 5 $691,563 for Kia which totals $1,133,913.

[12]  Schedule 4.

[13]  Schedule 5, Inconvenience Due to Repair Delays (Cash) of $601,000 + Inconvenience Due to Repair Delays (Service Card) of $90,563.

[14]  See Schedule 4 for Hyundai $1,111,600 and Schedule 5 for Kia $1,569,960 which totals $2,681,560.

[15]  Schedule 4.

[16]  Schedule 5.

[17]  See Schedule 4 for Hyundai 424,060 and Schedule 5 for Kia $690,060 which totals $1,114,120.

[18]  Schedule 4.

[19]  Schedule 5.

Summary Table:

| Value of the Settlement Agreement Benefits: | [a]<br>Hyundai | [b]<br>Kia | [c] = [a]+[b]<br>Total Current<br>September 20, 2020 | [d]<br>Hyundai | [e]<br>Kia | [f] = [d]+[e]<br>Total Class<br>Projection<br>April 21, 2020 |
|---|---|---|---|---|---|---|
| a. Value of the Lifetime Warranty Coverage | $  403,364,866 | $  286,347,493 | $  689,712,359 | $  541,647,464 | $  391,292,010 | $  932,939,474 |
| b. Value of the Free Diagnostic Inspection | 31,807,659 | 32,789,964 | 64,597,623 | 31,807,659 | 32,789,964 | 64,597,623 |
| c. Value of the KSDS Update Installation | 64,505,448 | 43,638,050 | 108,143,498 | 86,615,052 | 59,632,664 | 146,247,716 |
| d. Value of the Repair Reimbursement and Goodwill | 10,295,232 | 11,224,756 | 21,519,988 | 52,942,940 | 75,373,135 | 128,316,075 |
| e. Value of the Other Repair-Related Reimbursements | 2,205,775 | 2,566,661 | 4,772,436 | 11,343,276 | 17,235,003 | 28,578,279 |
| f. Value of the  Inconvenience Due to Repair Delays | 86,025 | 103,000 | 189,025 | 442,350 | 691,563 | 1,133,913 |
| g. Value of the Loss of Value for Sold or Traded-In Vehicles (Goodwill payment only) | 216,160 | 233,800 | 449,960 | 1,111,600 | 1,569,960 | 2,681,560 |
| h. Value of Loss of Vehicle by Engine Fire (Goodwill payment only) | 82,460 | 102,760 | 185,220 | 424,060 | 690,060 | 1,114,120 |
| i. Value of Rebate Program | - | - | - | - | - | - |
| j. Cost of Administration and Notice | N/A | N/A | N/A | N/A | N/A | N/A |
| Total Value of Settlement Agreement Benefits | $ 512,563,625 | $ 377,006,484 | $  889,570,109 | $ 726,334,401 | $ 579,274,358 | $1,305,608,759 |

## IV.    Background

11. The Settlement Agreement with HMA and KMA provides benefits to the following class: All owners and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in the U.S. territories and/or abroad.  The Class Vehicles include:[20]

- HMA model and year
  - Hyundai Sonata: 2011 – 2018 and certain 2019
  - Hyundai Santa Fe Sport: 2013 – 2018 and certain 2019
  - Hyundai Tucson: 2014 – 2015, 2018 and certain 2019
- KMA
  - Kia Optima: 2011 – 2018 and certain 2019
  - Kia Sorento: 2011 – 2018 and certain 2019
  - Kia Sportage: 2011 – 2018 and certain 2019

12. The benefits to the Class as described in the Settlement Agreement are:

### A.    Settlement Considerations

#### 1.    *Lifetime warranty*

13. "Lifetime Warranty" refers to the extension of the existing Powertrain Warranty to cover the short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, in those Class Vehicles owned by individual consumers that have completed the KSDS update in connection with Defendants' now-

---

[20] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ I.G. Definitions ("Class Vehicles"). See Exhibit C.

ongoing product improvement campaigns.[21]  The Lifetime Warranty shall also apply to any damage caused to the long block assembly due to connecting rod bearing failure. With the exception of cases of Exceptional Neglect and subject to the existing terms, limitations, and condition of the Class Vehicles' original Powertrain Warranty, the Lifetime Warranty shall otherwise endure irrespective of the Class Vehicle's mileage or duration of ownership. [22]

14. The Lifetime Warranty shall not apply or be available to commercial entities such as used car dealers, franchisees, or automobile auction houses.[23]  For Class Vehicles that may otherwise need a new engine pursuant to this warranty at or above 150,000 miles and more than eight (8) years from the original service date, Defendants have the option , in lieu of replacing the engine under warranty, to either, at the vehicle owner's election, (i) repurchase the vehicle at Bluebook value (very good/private party) or (ii) pay the owner $2,000.00 in lieu of an engine replacement, provided the owner has installed the KSDS, and which payment will require that the owner agree in writing to assume all risk going forward and to void the vehicle's remaining Lifetime Warranty.[24]

15. Effective on the notice date, HMA and KMA shall extend and sustain into full effect the Lifetime Warranty for all eligible Class Vehicles.[25]

16. For 90 days following the notice date, all class vehicles that have not received a recall inspection under at least one of the previous campaigns will be eligible under the Lifetime Warranty for free inspections and, as needed on a vehicle-by-vehicle basis, short block assembly repairs, irrespective of the Class Vehicles' mileage, duration of ownership, or prior repairs.[26]

The Lifetime Warranty shall cover all costs associated with inspections and repairs including, without limitation, the costs associated with replacement parts, labor, diagnoses, and mechanical or cosmetic damage to the Class Vehicles caused by the engine malfunction (e.g., engine failure or fire).[27]

---

[21] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ I.M. Definitions ("Lifetime Warranty"). See Exhibit C.

[22] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ I.M. Definitions ("Lifetime Warranty").  See Exhibit C.

[23] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ I.M. Definitions ("Lifetime Warranty").  See Exhibit C. Our understanding is that these are not included in the Class Vehicle information that is used in our calculations.

[24] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ I.M. Definitions ("Lifetime Warranty").  See Exhibit C.

[25] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.A.1. Lifetime Warranty Coverage For Engine Short Block.  See Exhibit C.

[26] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.A.2. Lifetime Warranty Coverage For Engine Short Block.  See Exhibit C.

[27] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.A.3. Lifetime Warranty Coverage For Engine Short Block.  See Exhibit C.

17. Notwithstanding any provision(s) to the contrary in any express warranty provided by HMA or KMA in conjunction with the sale or lease of Class Vehicles, the Lifetime Warranty shall persist in its full duration regardless of any transfer in ownership or lease of a Class Vehicle.[28]

### 2. *Recall and Product Improvements*

18. Past recalls of some Class Vehicles also offered a free inspection. These recalls provided a past benefit to owners of vehicles recalled under the various NHTSA Campaigns: NHTSA Campaign Numbers 15V-568, 17V-224, 17-V226, 18V934000 or 18V907000.

19. At the direction of Class Counsel, we discarded 15V-568 from our analysis because the recall occurred in 2015 and 17-V224 and 17-V226 because they occurred in 2017 before the case was filed.

20. HMA and KMA acknowledge that by January 2019, they each had initiated product improvement campaigns in which knock sensor detection software technology ("KSDS") could be added through a free software update to the Class Vehicles.[29]

21. HMA and KMA acknowledge that Class Counsel sought relief for some of the Class Vehicles subject to this agreement before any NHTSA inquiry or recall. As a result, recalls were issued for more than 227,000 Class Vehicles.[30] At the direction of counsel the 227,000 have been removed from the Class Vehicles when calculating the valuation of the free inspection. The 227,000 Class Vehicles are however included in the valuation of the Lifetime Warranty and the KSDS update.

### 3. *Repair Reimbursements*

22. To the extent any Claimant, before receiving notice of the Settlement, obtained a Qualifying Repair for a Class Vehicle, the Claimant will be entitled to a full reimbursement by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of any and all such expenses incurred for the Qualifying Repair, regardless of whether the Claimant was an original owner, lessee or subsequent purchaser or whether (for Class members with 2013 and 2014 Hyundai Sonata and Santa Fe Sport vehicles and 2011, 2012, 2013, and 2014 Kia Optima, Sorento, or Sportage vehicles) the Qualifying Repair was completed before or after receiving notification of NHTSA Campaign Numbers 17-V226 and 17-V224 unless the Claimant was previously reimbursed for any and all such expenses incurred.[31]

---

[28] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.A.4. Lifetime Warranty Coverage For Engine Short Block. See Exhibit C.

[29] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.B.3. Recall and Product Improvements. See Exhibit C.

[30] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.B.4. Recall and Product Improvements. See Exhibit C. .

[31] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.C.1. Repair Reimbursements. See Exhibit C.

23. For claims submitted for reimbursement for Qualifying Repairs performed at authorized Hyundai or Kia dealerships, Defendants shall take all reasonably available steps to acquire from the dealerships the information reasonably necessary to approve the claim.[32]

24. Class members who presented their Class Vehicle to an authorized dealership and were denied in-warranty repair prior to receiving notice of the Settlement, and then obtained their Qualifying Repair elsewhere are entitled to claim an additional $140 goodwill payment.[33]

### 4.  *Other Repair-Related Reimbursements*

25. To the extent any Claimant incurs expenses, for a rental car, towing service, or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair for a Class Vehicle, The Claimant shall be entitled to full reimbursement of any towing expenses or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair, and up to $40 per day for rental car expenses if a loaner vehicle was not originally provided by HMA or KMA.[34]

26. Claimants shall not be entitled to receive compensation apart from their out-of-pocket costs incurred.  For example, the Claimants are not entitled to lost wages or other forms of consequential damages.[35]  In addition, Claimants previously reimbursed in full or in part for rental car or towing expenses following an engine seizure, engine stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring a repair shall not be entitled to a reimbursement under this Settlement for that portion of the expense they have already been reimbursed.[36]

### 5.  *Inconvenience Due to Repair Delays*

27. If a Class member is or was inconvenienced by prolonged delays exceeding 60 days when obtaining any Qualifying Repair from an authorized Hyundai or Kia dealership, the Claimant shall be entitled to a goodwill payment based on the length of delay.  The

---

[32] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.C.3. Repair Reimbursements.  See Exhibit C.

[33] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.C.6. Repair Reimbursements.  See Exhibit C.

[34] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.D.1. Other Repair-Related Reimbursements.  See Exhibit C.

[35] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.D.2. Other Repair-Related Reimbursements.  See Exhibit C.

[36] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.D.3. Other Repair-Related Reimbursements.  See Exhibit C.

goodwill payment is $50 for delays lasting between 61-90 days, and $25 for each additional 30-day period of delay or fraction thereof.[37]

28. A Class member may elect to receive compensation in the form of a dealer service card valued at 150% of the amount that would otherwise be paid under this provision as a cash debit card. The dealer service card may only be used at any authorized Hyundai dealer (for Hyundai Class Vehicles) or any authorized Kia dealer (for Kia Class Vehicles) for payment towards any merchandise, parts, or service.[38]

29. Claimants that have already received a goodwill payment by HMA, KMA, or any authorized Hyundai or Kia dealerships for any delay due to a Qualifying Repair will be ineligible for this inconvenience payment.[39]

### 6.     _Loss of Value for Sold or Traded-In Vehicles due to a Loss Event_

30. Claimants who before notice of this Settlement experienced a Loss Event may recover for the loss.  Those Claimants who: (i) had a Class Vehicle experience an engine seizure, engine stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring repair of the engine block, and (ii) sold or traded-in the Class Vehicle without procuring the recommended repair , will be entitled to reimbursement by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the baseline Black Book value (i.e., wholesale used vehicle value) of the sold or traded-in Class Vehicle plus $140.00 at the time of loss minus actual amount received from the sale or trade-in.[40]

31. A Claimant's maintenance history or lack thereof before the repair diagnosis (except limited Exceptional Neglect circumstances), shall not be a basis for denying or limiting compensation under this section.[41]  To the extent a Claimant contends that the actual damages incurred exceed the reimbursement amount as provided in this section, the

---

[37] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.E.2. Inconvenience Due to Repair Delays.  See Exhibit C.

[38] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.E.3. Inconvenience Due to Repair Delays.  See Exhibit C.

[39] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.E.5. Inconvenience Due to Repair Delays.  See Exhibit C.

[40] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.F.1. Loss of Value for Sold or Traded-In Vehicles due to a Loss Event.  Loss Event is defined in the Settlement Agreement ¶ I.O:  "Loss Event" means any Class Vehicle incident that would have led to a Qualifying Repair (Including, but not limited to, an engine fire) but either the cost of the repair was too great or other circumstances led the Class member to dispose of the Class Vehicle at a loss.  This includes events in which there was insurance coverage, but where the Class member was still not made whole by such insurance payments.  See Exhibit C.

[41] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.F.2. Loss of Value for Sold or Traded-In Vehicles due to a Loss Event.  See Exhibit C.

Claimant must provide written notice to HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) requesting an alternative dispute resolution.[42]

### 7. *Loss of Vehicle by Engine Fire*

32. To the extent any Claimant suffers a loss of vehicle by engine fire directly caused by the Class Vehicle's failure arising from a vehicle condition that would have otherwise been addressed by a Qualifying Repair, the Claimant will be entitled to a payment by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the time of loss minus the actual value received (if any) plus an additional $140 goodwill payment.[43]

### 8. *Rebate Program*

33. To the extent any Class member loses faith in their Class Vehicle as a result of this Settlement, the Class member may present a claim for a rebate after selling the Class Vehicle in an arm's length transaction if (a) the Class member experienced an engine failure or engine component fire and (b) purchased a replacement Hyundai vehicle (for Hyundai Class members) or Kia vehicle (for Kia Class members).[44]

34. The amount of the rebate shall be calculated as actual loss by comparing sales documentation to the maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the time of the KSDS campaign launch up to the following amounts:[45]

- Model year 2011 – 2012: $2,000
- Model year 2013 – 2014: $1,500
- Model year 2015 – 2016: $1,000
- Model year 2017 – 2019: $  500

---

[42] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.F.3. Loss of Value for Sold or Traded-In Vehicles due to a Loss Event.  See Exhibit C.

[43] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.G.1. Loss of Vehicle by Engine Fire.  See Exhibit C.

[44] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.H.1-1a. Rebate Program.  See Exhibit C.

[45] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.H.3a-d. "Rebate Program" See Exhibit C.

### 9.    *Cost of Administration and Notice*

35. HMA and KMA shall be responsible for all costs of Class notice and settlement
administration.  In no event shall Plaintiff's Counsel or the Class be responsible for any
costs associated with Class notice or settlement administration.[46]


## V.    Analysis


36. The determination of value for the various elements of the Settlement Agreement
including the Lifetime Warranty, the installation of the KSDS update, the free diagnostic
inspection, and various cash reimbursements and payments, is based on information
supplied by HMA and KMA.  The methodology to determine the value already received
or eligible to be received by the Class is described in detail below.


### A.    **Class Vehicles**

37. Information was received from HMA and KMA related to the annual sales figures by
model and model year for each Class Vehicle from 2011 through 2019 and total 3,956,568
vehicles (See Schedule 7 for Hyundai Class Vehicles and Schedule 8 for Kia Class
Vehicles).   HMA reported a total of 2,402,230 Class Vehicles with 174,145 that were
scrapped, salvaged, crushed, or has a registration that had lapsed for three years or more,
resulting in 2,228,085 eligible Class Vehicles.[47] KMA reported a total of 1,868,031 Class
Vehicles with 138,177 having a branded title and 1,371 that were not sold, resulting in
1,728,483 eligible Class Vehicles.[48]  See Table 1.

**Table 1. Class Vehicles**

| Make | [a]<br>Total<br>Class<br>Vehicles | [d]<br>Less: Class<br>Vehicles With<br>Branded Title and<br>Unsold | [e] = [a]-[b]-[c]-[d]<br>Eligible Class<br>Vehicles |
|---|---|---|---|
| Hyundai | 2,402,230 | 174,145 | 2,228,085 |
| Kia | 1,868,031 | 139,548 | 1,728,483 |
| **Total** | **4,270,261** | **313,693** | **3,956,568** |

Branded title refers to vehicles that have been scrapped, salvaged, crushed  or registration
that had lapsed for three years or more.

---

[46] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.I. Cost of
Administration and Notice.  See Exhibit C.

[47] See Schedule 7. Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 6 (Exhibit D).

[48] See Schedule 8. Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 5 (Exhibit D).

### B.     Lifetime Warranty Coverage for Engine Short Block

38. The Settlement Agreement defines the "Lifetime Warranty" as an extension of the existing
Powertrain Warranty to cover the short block assembly, which consists of the engine
block, crankshaft and bearings, connecting rods and bearings, and pistons, in those Class
Vehicles owned by individual consumers that have completed the KSDS update in
connection with the Defendant's now-ongoing product improvement campaigns.  The
Lifetime Warranty also covers any damage caused to the long block assembly due to
connecting rod failure.[49]

39. HMA and KMA provided information for the manufacturer's suggested retail price
("MSRP") to a consumer for the Powertrain coverage.  Hyundai stated the



40. As shown in Table 2, multiplying the number of Class Vehicles by the estimated MSRP
value of the Lifetime Warranty for the short block engine assembly by the percentage of
Class Vehicles that currently have the KSDS software installed results in a Lifetime
Warranty value to the Class of no less than $689,712,359.[54]  The value of the Lifetime
Warranty for all Class Vehicles is calculated by multiplying the Total Class Vehicles by
the Estimated MSRP of the Lifetime Warranty for the short block engine assembly and
results in a Lifetime Warranty value for all Class Vehicles of no less than $932,939,474.[55]

---

[49] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ I.M. "Lifetime
Warranty".  See Exhibit C.

[50] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 7. See Exhibit D.

[51] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶
See Exhibit D.

[52] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 9. See Exhibit D. Schedule 6.

[5

[54] Schedule 2.

[55] Schedule 2.

Table 2. Value of Lifetime Warranty Coverage

| | | [a] | [b] | [c] = [b] x 10% | [d] | [e] = [a] x [c] x [d] | [f] = [a] x [c] |
|---|---|---|---|---|---|---|---|
| Make | Model | Total Class Vehicles | Estimated MSRP Powertrain Warranty | Short Block Assembly 10% of Powertrain Warranty | Percentage of Class Vehicles with KSDS | Total Value of Lifetime Warranty for Class Vehicles with KSDS | Total Value of Lifetime Warranty for All Class Vehicles |
| Hyundai | All | 2,228,085 | $ | $ | 74.47% | $ 403,364,866 | $ 541,647,463.50 |
| Kia | Sorento/Optima | 1,377,813 | $ | $ | 73.18% | $ 234,022,613 | $ 319,790,397.30 |
| Kia | Sportage | 350,670 | $ | $ | 73.18% | $ 52,324,880 | $ 71,501,613 |
| Subtotal Kia | | 1,728,483 | | | | $ 286,347,493 | $ 391,292,010 |
| **Total** | | **3,956,568** | | | | **$ 689,712,359** | **$ 932,939,474** |

41. To determine the reasonableness that the short block assembly, as a percentage of the Powertrain Warranty, is 10% we performed a separate analysis. The powertrain is made up of 3 main components, the engine, the transmission and the drive axel.[56] Through general information obtained from the internet, the average replacement costs for an engine is $3,500, a transmission is $2,600, and a drive axle is $484.[57] A replacement engine represents approximately 53% of the average cost of these three component repairs.[58] The average Powertrain Warranty MSRP's provided by HMA and KMA were multiplied by 53% to estimate a value for just the engine portion of the Powertrain Warranty resulting in a ███████████████████████████████████████████████[59]

42. The average cost of a short block assembly replacement is $800 which represents 22.86% of the average cost of $3,500 for engine replacement.[60] The MSRP values for the engine portion of the Powertrain Warranty calculated above were each multiplied by 22.86% to arrive at an estimated MSRP value for the Lifetime Warranty for the short block assembly ████████████████████. See Schedule 6.

---

[56] Hyundai Protection Plan, Powertrain coverage. See Exhibit G. Kia Protection Plan. See Exhibit H

[57] See Exhibit I. Screen shots of equipment replacement costs (not specific to Hyundai's or Kia's): general engine replacement costs range from $3,000 - $4,000 for an average cost of $3,500; general transmission replacement costs range from $1,800 - $3,400 for an average cost of $2,600; and general drive axle replacement costs range from $168-$799 for an average cost of $484.

[58] See Schedule 6a. Engine replacement average of 53% calculated by dividing the average cost for a replacement engine of $3,500 by average total cost of the engine, transmission and drive axel repairs of $6,584 (total of the average engine replacement of $3,500 + transmission replacement of $2,600 + drive axle replacement of $484).

[59] See Schedule 6a. Hyundai MSRP ████████████████████████████████████████████████████████████████████████

[60] See Exhibit I. Page 1 for engine cost range from $3,000 - $4,000 for an average cost of $3,500 and page 4 for Short Block Assembly cost range from $600 - $1,000 for an average cost of $800.

[61] Hyundai MSR███████████████████████████████████████████████████████████████████████ See Schedule 6a.

43. As shown in Table 2a, multiplying the number of Class Vehicles by the estimated MSRP value of the Lifetime Warranty for the short block engine assembly by the percentage of Class Vehicles that currently have the KSDS software installed results in a Lifetime Warranty value to the Class of $838,046,609.[62]  The value of the Lifetime Warranty for all Class Vehicles is calculated by multiplying the Total Class Vehicles by the Estimated MSRP of the Lifetime Warranty for the short block engine assembly and results in a Lifetime Warranty value for all Class Vehicles of $1,133,583,808.[63]

**Table 2a. Value of Lifetime Warranty Coverage**

| Make | Model | [a] Total Class Vehicles | [b] Estimated MSRP Lifetime Warranty Short Block Assembly | [c] Percentage of Class Vehicles with KSDS | [d] = [a] x [b] x[c] Total Value of Lifetime Warranty for Class Vehicles with KSDS | [e] = [a] x [b] Total Value of Lifetime Warranty for All Class Vehicles |
|---|---|---|---|---|---|---|
| Hyundai | All | 2,228,085 | $ ■ | 74.47% | $ 490,115,269 | $ 658,137,866 |
| Kia | Sorento/Optima | 1,377,813 | $ ■ | 73.18% | $ 284,353,114 | $ 388,566,704 |
| Kia | Sportage | 350,670 | $ ■ | 73.18% | $ 63,578,226 | 86,879,238 |
| Subtotal Kia | | 1,728,483 | | | $ 347,931,340 | $ 475,445,942 |
| **Total** | | **3,956,568** | | | **$ 838,046,609** | **$ 1,133,583,808** |

## C.  **Free Diagnostic Inspection**

44. For 90 days following Final Approval, Class Members who have not already had a diagnostic inspection under a prior recall will be entitled to a free inspection and any associated short block engine repairs.[64]

45. Hyundai will compensate dealers .5 hours for all Class Vehicles except for the 2019 Santa Fe which will be reimbursed for .6 hours.[65]  KMA will compensate dealers .7 hours of work to perform this diagnostic inspection.[66]

46.  Per KMA, a traditional recall response rate ranges between 25% to 35% depending on the recall and age of the vehicles.[67]  To calculate the value to the Class of the Free Diagnostic Inspection the lower response rate of 25% was used.  The number of Class Vehicles was reduced by 227,000 as they are covered under previous improvement campaigns.[68] The total number of remaining Class Vehicles was multiplied by 25% to calculate the estimated number of vehicles by model type and year that would come in for the free

---

[62] Schedule 2a.

[63] Schedule 2a.

[64] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.A.2 "Lifetime Warranty". See Exhibit C.

[65] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 15.  See Exhibit D.

[66] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 16. See Exhibit D.

[67] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 17. See Exhibit D.

[68] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.BA.4 "Recall and Product Improvements". See Exhibit C.

inspection.  This estimate of Class Vehicles was multiplied by the corresponding labor hours to be reimbursed by HMA and KMA and the average labor rates charged.  This results in a total value of the Free Diagnostic Inspection to the Class of $64,597,623.[69] See Table 3 below.

**Table 3. Value of Inspection**

| Make | Model | Year | [a] Total Class Vehicles | [b] Less Vehicles Covered un Previous Recalls (II.B.4) | [c] = [a] - [b] Class Vehicles Eligible for Diagnostic Inspection | [d] = [c] x 25% Estimated Class Vehicles that will obtain the free inspection = 25% | [e] National Average of Dealer Labor Rates | [f] Hours of Labor | [g] = [d]x[e]x[f] Class Vehicles with KSDS installed as of September 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Hyundai | Santa Fe | 2019 | 107,453 | (6,165) | 101,288 | 25,322 | $  120 | 0.6 | 1,823,184 |
| Hyundai | Remaining Class Vehicles | 2011 - 2019 | 2,120,632 | (121,667) | 1,998,965 | 499,741 | $  120 | 0.5 | 29,984,475 |
| Subtotal Hyundai | | | 2,228,085 | (127,832) | | 525,063 | | | 31,807,659 |
| Kia | All Class Vehicles | 2011 - 2019 | 1,728,483 | (99,168) | 1,629,315 | 407,329 | $  115 | 0.7 | 32,789,964 |
| **Total** | | | **3,956,568** | **(227,000)** | **3,729,568** | **932,392** | | | **64,597,623** |

47. In calculating the value of the free recall inspection, we did not include the value of any Qualifying Repairs performed as a result of the inspection.

## D.    Knock Sensor Update and Vehicle Improvements

48. The Settlement Agreement references a software update for all Class Vehicles related to the Knock Sensor Detection Software ("KSDS") free of charge pursuant to the product improvement campaigns referenced in the Settlement Agreement.[70]

49. The KSDS was developed to proactively address any potential future engine failures that could be caused by connecting rod bearing wear or lack of maintenance.  KSDS is designed to alert a driver of any early bearing wear before the occurrence of any severe engine damage that could ultimately lead to engine failure or fire.[71]  The KSDS is installed via a software updated to the Engine Control Unit and leverages the existing knock sensor to continuously monitor for symptoms of excessive connecting rod bearing wear.  The KSDS functions by detecting vibrations within a certain frequency range in the engine to identify the onset of excessive connecting rod bearing wear.[72]

50. If the KSDS detects a developing condition, two things will occur: (1) the check engine light (or Malfunction Indicator Lamp) on the dashboard will begin to flash continuously and (2) the car will be placed in a temporary engine protection mode, called "Limp Home

---

[69] Schedule 3.

[70] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ I.L. ("Knock Sensor Detection Software").  See Exhibit C.

[71] Declaration of Alan Dow Regarding Knock Sensor Detection System ("KSDS") ¶ 3.  See Exhibit F.

[72] Declaration of Alan Dow Regarding Knock Sensor Detection System ("KSDS") ¶ 4.  See Exhibit F.

Mode."[73]  Although the KSDS update is designed to enhance safety and detect mechanical problems before they become expensive or dangerous our valuation is limited to the labor cost of installation.

51. HMA and KMA stated in the January 27, 2020 interrogatory responses that the labor costs at Hyundai dealerships range from $75 to $202 per hour, with a national average of $120 per hour.[74]  The labor costs at Kia dealerships range from $83 to $173 per hour, with the national average of $115 per hour.[75]

52. HMA will reimburse dealers 0.3 hours of labor to install the KSDS update on Class Vehicles except for 2015 model year Sonatas and Santa Fe Sport Vehicles, for which Hyundai pays 0.5 hours.[76]  KMA will pay dealers 0.3 hours of labor on all Class Vehicles to install the KSDS update.[77]  To estimate the value to the Class for the KSDS update the Class Vehicles were multiplied by the corresponding labor hours to be reimbursed by HMA and KMA and the average labor rates charged.  This results in a total value of the KSDS to the Class of $146,247,716.[78]  See Table 4 below.

53. As of September 16, 2020 1,659,338 HMA Class Vehicles have received the KSDS update.[79]  As of September 21, 2020 approximately 1,264,871 KMA Class Vehicles have received the KSDS update.[80]  The total value of the labor expended to install the KSDS in those vehicles is $108,143,509.  The projected value for the remaining Class Vehicles to receive the KSDS update is $38,104,206.  See Table 3 below.

Table 4. Value of KSDS Installation

| Make | Model | Year | [a] Total Class Vehicles | | [b] National Average of Dealer Labor Rates | [c] Hours of Labor | [d] = [a]x[b]x[c] Total Value of Labor | | [e] Class Vehicles with KSDS installed as of September 2020 | [f] = [b]x[c]x[e] Value for Vehicles With KSDS installed | | [g] = [d] - [f] Value Remaining Class Vehicles |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hyundai | Sonata and Santa Fe | 2015 | 266,833 | $ | 120 | 0.5 | $ | 16,009,980 | 198,720 | $ | 11,923,229 | $ 4,086,751 |
| Hyundai | Remaining Class Vehicles | 2011-2019 | 1,961,252 | $ | 120 | 0.3 | $ | 70,605,072 | 1,460,618 | $ | 52,582,230 | $ 18,022,842 |
| Subtotal Hyundai | | | 2,228,085 | | | | $ | 86,615,052 | 1,659,338 | $ | 64,505,460 | $ 22,109,592 |
| Kia | All Class Vehicles | 2011 - 2019 | 1,728,483 | $ | 115 | 0.3 | $ | 59,632,664 | 1,264,871 | $ | 43,638,050 | $ 15,994,614 |
| Total | | | 3,956,568 | | | | $ 146,247,716 | | 2,924,209 | $108,143,509 | | $ 38,104,206 |

[73] Declaration of Alan Dow Regarding Knock Sensor Detection System ("KSDS") ¶ 5.  See Exhibit F.

[74] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 11. See Exhibit D.

[75] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 10. See Exhibit D.

[76] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 14. See Exhibit D.  The estimated hours that Hyundai pays dealers to install the KSDA software may be different than the amount of time that would be billed to a consumer outside of a warranty or recall.

[77] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 13. See Exhibit D. The estimated hours that Kia pays dealers to install the KSDA software may be different than the amount of time that would be billed to a consumer outside of a warranty or recall.

[78] Schedule 3a.

[79] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 19.  See Exhibit D.

[80] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 18.  See Exhibit D.

E.  **Repair-Related Reimbursements - Hyundai**

54. As of September 16, 2020, Hyundai reported the total number of claims, average claim amount and total value of claims by repair category totaling $12,501,007.[81] They also reported the number of claims received in other categories including, Inconvenience due to Repair Delays, Sold or Traded-In vehicles, Loss of Vehicle by Engine Fire and Rebate Program. This provided the total number of claims received in all repair categories.

55. Hyundai received 1,147 claims for Inconvenience due to Repair delays in excess of 60 days thus meeting the requirement for a goodwill payment.[82]  To calculate the value of the Inconvenience due to Repair Delays, we used the total number of claims for delays in excess of 60 days multiplied that by the average delay claim of 114 days.[83]  A delay of 114 days equates to a goodwill payment of $75.[84]  The total value of the goodwill payments related to Inconvenience Due to Repair Delays equals $86,025 as of September 20, 2020.  See Schedule 4.

56. We are unable to calculate the Loss of Value for Sold or Traded-In Vehicles as those calculations rely, in part, on knowing the Black Book value of the vehicles at the time of sale or trade-in.  We were able to calculate the goodwill payment associated with these transactions by multiplying the number of claims by the goodwill payment of $140[85] for a total value of $216,160.  See Schedule 4.

57. We are unable to calculate the Loss of Vehicles due to Engine Fire as those calculations rely, in part, on knowing the Black Book value at the time of the fire.  We are able to calculate the goodwill payment associated with the engine fires as the number of claims times the goodwill payment of $140[86] for a value of $82,460.  See Schedule 4.

58. We took this information and calculated the value of claims received as of September 16, 2020 of approximately $12,885,652.  This represents total repairs from August 1, 2020 through September 16, 2020 or approximately 7 weeks. This equates to approximately $1,840,807 per week.  We assumed the number of claims, and average costs per claim in the first 7 weeks of the period will continue through April 12, 2021, or an additional 29 weeks. This equates to approximately $53,378,574 for a total of $66,264,226 for August 2020 through April 12, 2021.[87]

---

[81] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 23. Categories included Repair Reimbursements (Hyundai) of $9,930,952, Other Repair-Reimbursements of $2,205,775, and Inconvenience: Repair Elsewhere of $364,280. See Exhibit D.

[82] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 23. See Exhibit D.

[83] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 23. See Exhibit D.

[84] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.E.2. Inconvenience Due to Repair Delays.  See Exhibit C.

[85] As provided for in the Settlement Agreement and discussed in detail in paragraph 30 above.

[86] As provided for in the Settlement Agreement and discussed in detail in paragraph 32 above.

[87] Schedule 4.

### F.    Repair-Related Reimbursements - KIA

59. As of September 20, 2020 Kia reported the total number of claims, average claim amount and total value of claims by repair category totaling $13,446,877.[88] They also reported the number of claims received in other categories including, Inconvenience due to Repair Delays, Sold or Traded-In vehicles, Loss of Vehicle by Engine Fire and Rebate Program. This provided the total number of claims received in all categories.  We took this information and calculated the total value of the claims received as of September 20, 2020 of approximately $14,230,977.[89]

60. Kia received 788 claims for Inconvenience due to Repair delays in excess of 60 days thus meeting the requirement for a goodwill payment.  The average delay claim was 159 days[90] which equates to a goodwill payment of $125.[91] [92] Of the 788 claims, 72 requested the service card option and the remaining 716 requested the cash option.  To calculate the value of the Inconvenience due to Repair Delays, we used the total number of claims for delays in excess of 60 days that requested the cash option and multiplied that by the $125 goodwill payment value. To calculate the value of the service card option the goodwill payment of $125 was multiplied by 150% then multiplied by the number of claims.  The total value of the goodwill payments related to the cash and service card option equals $103,000 as of September 20, 2020.[93]  See Schedule 5.

61. We are unable to calculate the Loss of Value for Sold or Traded-In Vehicles as those calculations rely, in part, on knowing the Black Book value of the vehicles at the time of sale or trade-in.  We were able to calculate the goodwill payment associated with these transactions by multiplying the number of claims by the goodwill payment of $140[94] for a total value of $233,800. See Schedule 5.

62. We are unable to calculate the Loss of Vehicles due to Engine Fire as those calculations rely, in part, on knowing the Black Book value at the time of the fire.  We are able to calculate the goodwill payment associated with the engine fires as the number of claims times the goodwill payment of $140[95] for a value of $102,760.  See Schedule 5.

63. Epic, the claims administrator for KIA, estimates that the total number of claims they expect to receive through April 12, 2020 is 86,400.[96] In order to determine the value of the

---

[88] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 24. Categories included Repair Reimbursements (KIA) of $5,560,944, Repair Reimbursements (3rd party) of $5,319,279, and Other Repair Related Reimbursements of $2,566,661. See Exhibit D and Schedule 5.

[89] See Schedule 5.

[90] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 24. See Exhibit D.

[91] Declaration of Adam Gonnelli In support of Final Approval of Class Settlement ¶ 24. See Exhibit D.

[92] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.E.2. Inconvenience Due to Repair Delays.  See Exhibit C.

[93] Total payment of $103,000 equals the Cash option total of $89,500 plus the Service card option totals $13,500.

[94] As provided for in the Settlement Agreement and discussed in detail in paragraph 30 above.

[95] As provided for in the Settlement Agreement and discussed in detail in paragraph 32 above.

[96] Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement ¶ 22. See Exhibit D.

total claims, we took the value of actual claims received, as discussed above and calculated on Schedule 5, as of September 20, 2020, and calculated the percentage of total claims made for each repair category. We used these percentages to estimate the total number of claims by repair category as of April 12, 2020. We then multiplied the estimated number of claims by the actual average claim amount at September 20, 2020, by category, to calculate the total value of the claims as of April 12, 2020 of $95,559,720. See Schedule 5.

### G.   Cost of Administration and Notice

64. HMA and KMA shall be responsible for all costs of Class notice and settlement administration.  In no event shall Plaintiff's Counsel or the Class be responsible for any costs associated with Class notice or settlement administration.[97]  The cost of administration and notice has not been calculated.

## VI.   Conclusion

65. As outlined in the Summary Table above, the total value of benefits provided to the Class under the Settlement Agreement based on the work completed as of October 16, 2020 totals $1,305,608,759.

66. The opinions expressed in this report are based on the information reviewed to date. When further information becomes available and reviewed, I reserve my right to amend, revise and finalize my report and opinions accordingly.

67. I declare the foregoing to all be correct and true to the best of my knowledge.  Executed on the 16th day of October 2020, at Fresno, CA.


_____
Susan K. Thompson, CPA/CFF

---

[97] Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 ¶ II.I.1. Cost of Administration and Notice.  See Exhibit C.

In re: Hyundai and Kia Engine Litigation
Schedule 1
Summary of the Settlement Agreement Value by Make (As of September 2020)

| Make | No. of Class Vehicles | No. of Vehicles that Received the KSDS Update | Percentage of Class Vehicles that Received the KSDS Update | Lifetime Warranty (Class Vehicles with KSDS Update) | Diagnostic Inspection (25% of Class Vehicles) | KSDS Installation (Class Vehicles with KSDS Installed) | Additional Claim Reimbursements (Actual Claims Received) | Total Lifetime Warranty Diagnostic and Claim Reimbursements |
|---|---|---|---|---|---|---|---|---|
| | [a] | [b] | [c] = [b] / [a] | [d] | [e] | [f] | [g] | [i] = [d]+[f]+[f]+[g] |
| 1. Hyundai | 2,228,085 | 1,659,338 | 74.47% | $403,364,866 | $31,807,659 | $64,505,448 | $12,885,652 | $512,563,625 |
| 2. Kia | 1,728,483 | 1,264,871 | 73.18% | 286,347,493 | 32,789,964 | 43,638,050 | 14,230,977 | 377,006,484 |
| Total | 3,956,568 | 2,924,209 | 73.91% | $689,712,359 | $64,597,623 | $108,143,498 | $27,116,629 | $889,570,109 |

Notes, Sources and Assumptions:
- Claim information as of September 16,2020 for Hyundai and September 21,2020 for Kia.
- Number of Class Vehicles and Class Vehicles with KSDS installed calculated on Schedule 7 and Schedule 8.
- Lifetime Warranty Value calculated for Class Vehicles at 10% of the Average Powertrain MSRP for Class Vehicles that have received the KSDS update. See Schedule 2.
- Diagnostic Inspection calculated based on Class Vehicles, less the 227,000 multiplied by 25%. As 227,000 Class Vehicles were covered under previous recalls at II.B.4 and Kia estimates a response rate of 25%-35%. Per Counsels direction 25% was used to value the Diagnostic Inspection calculated at Schedule 3.
- KSDS Installation value calculated for Class Vehicles with KSDS already installed as of September 16,2020 for Hyundai and September 21,2020 for Kia. See Schedule 3a.
- Additional Claim Reimbursements are calculated on Schedule 4 for Hyundai Class Vehicles and Schedule 5 for Kia Class Vehicles.
  For actual claims received through September 16,2020 for Hyundai and September 21,2020 for Kia.

Expert Report of Susan K. Thompson, CPA/CFF

In re: Hyundai and Kia Engine Litigation
Schedule 1a
Summary of the Settlement Agreement Value by Make Projected through April 12, 2021

| Make | No. of Class Vehicles [a] | No. of Vehicles that Received the KSDS Update [b] | Percentage of Class Vehicles that Received the KSDS Update [c] = [b] / [a] | Lifetime Warranty (All Class Vehicles) [d] | Diagnostic Inspection (25% of Class Vehicles) [e] | KSDS Installation (All Class Vehicles) [f] | Additional Claim Reimbursements (Projected Claims Through 4/12/2021) [g] | Total Lifetime Warranty Diagnostic and Claim Reimbursements [i] = [d]+ [e]+[f] +[g] |
|---|---|---|---|---|---|---|---|---|
| 1. Hyundai | 2,228,085 | 1,659,338 | 74.47% | $541,647,464 | $31,807,659 | $86,615,052 | $66,264,226 | $726,334,401 |
| 2. Kia | 1,728,483 | 1,264,871 | 73.18% | 391,292,010 | 32,789,964 | 59,632,664 | 95,559,720 | 579,274,358 |
| Total | 3,956,568 | 2,924,209 | 73.91% | $932,939,474 | $64,597,623 | $146,247,716 | $161,823,946 | $1,305,608,759 |

Notes, Sources and Assumptions:

- Claim information projected for all Class Vehicles through April 12, 2021.
- Number of Class Vehicles and Class Vehicles with KSDS installed calculated on Schedule 8.
- Lifetime Warranty Value calculated at 10% of the Average Powertrain MSRP for all Class Vehicles. See Schedule 2.
- Diagnostic Inspection calculated based on Class Vehicles, less the 227,000 Class Vehicles, less the 227,000 Class Vehicles that were covered under previous recalls at II.B.4. will obtain the Free Diagnostic Inspection. Kia estimates a response rate of 25%-35%. Per Counsels' direction 25% was used to value the Diagnostic Inspection, calculated on Schedule 3.
- KSDS Installation value calculated for all Class Vehicles. See Schedule 3a.
- Additional Claim Reimbursements set forth in the Settlement Agreement are calculated on Schedule 4 for Hyundai Class Vehicles and Schedule 5 for Kia Class Vehicles.

Expert Report of Susan K. Thompson, CPA/CFF

In re: Hyundai and Kia Engine Litigation
Schedule 2
Lifetime Warranty Value Calculation Hyundai and Kia Estimate

| Model Year | Make | Model | Approx. No of Class Vehicles | Est. Warranty Value Short Block Assembly (per Vehicle) | Percentage of Class Vehicles with KSDS | Warranty Value (Class Vehicles with KSDS) | Warranty Value (All Class Vehicles) |
|---|---|---|---|---|---|---|---|
| | | | [a] | [b] | [c] | [d] | [e]=[a] x [b] |
| **Hyundai** | | | | | | | |
| 2011 | Hyundai | Sonata | 268,106 | $ | 74.47% | $ | $ |
| 2012 | Hyundai | Sonata | 165,361 | | 74.47% | | |
| 2013 | Hyundai | Sonata | 265,644 | | 74.47% | | |
| 2014 | Hyundai | Sonata | 122,502 | | 74.47% | | |
| 2015 | Hyundai | Sonata | 216,776 | | 74.47% | | |
| 2016 | Hyundai | Sonata | 151,020 | | 74.47% | | |
| 2017 | Hyundai | Sonata | 138,480 | | 74.47% | | |
| 2018 | Hyundai | Sonata | 113,296 | | 74.47% | | |
| 2019 | Hyundai | Sonata | 81,775 | | 74.47% | | |
| **2011-2019 Hyundai Sonata** | | | **1,522,960** | | | $ | $ |
| 2013 | Hyundai | Santa Fe Sport | 84,583 | $ | 74.47% | $ | $ |
| 2014 | Hyundai | Santa Fe Sport | 74,341 | | 74.47% | | |
| 2015 | Hyundai | Santa Fe Sport | 50,057 | | 74.47% | | |
| 2016 | Hyundai | Santa Fe Sport | 52,324 | | 74.47% | | |
| 2017 | Hyundai | Santa Fe Sport | 131,170 | | 74.47% | | |
| 2018 | Hyundai | Santa Fe Sport | 97,165 | | 74.47% | | |
| 2019 | Hyundai | Santa Fe Sport | 107,453 | | 74.47% | | |
| **2013-2019 Hyundai Santa Fe Sport** | | | **597,093** | | | $ | $ |
| 2014 | Hyundai | Tucson | 28,295 | $ | 74.47% | $ | $ |
| 2015 | Hyundai | Tucson | 27,824 | | 74.47% | | |
| 2018 | Hyundai | Tucson | 6,852 | | 74.47% | | |
| 2019 | Hyundai | Tucson | 45,061 | | 74.47% | | |
| **2014-2015 & 2018-2019 Hyundai Tucson** | | | **108,032** | | | $ | $ |
| **Subtotal: Hyundai** | | | **2,228,085** | | | $ | $ |
| **Kia** | | | | | | | |
| 2011 | Kia | Optima | 56,910 | $ | 73.18% | $ | $ |
| 2012 | Kia | Optima | 88,889 | | 73.18% | | |
| 2013 | Kia | Optima | 179,024 | | 73.18% | | |
| 2014 | Kia | Optima | 92,517 | | 73.18% | | |
| 2015 | Kia | Optima | 198,897 | | 73.18% | | |
| 2016 | Kia | Optima | 113,348 | | 73.18% | | |
| 2017 | Kia | Optima | 51,744 | | 73.18% | | |
| 2018 | Kia | Optima | 87,174 | | 73.18% | | |
| 2019 | Kia | Optima | 64,361 | | 73.18% | | |
| **2011-2019 Kia Optima** | | | **932,864** | | | $ | $  216,517,734 |

In re: Hyundai and Kia Engine Litigation
**Schedule 2**
**Lifetime Warranty Value Calculation Hyundai and Kia Estimate**

| Model Year | Make | Model | Approx. No of Class Vehicles | Est. Warranty Value Short Block Assembly (per Vehicle) | Percentage of Class Vehicles with KSDS | Warranty Value (Class Vehicles with KSDS) | Warranty Value (All Class Vehicles) |
|---|---|---|---|---|---|---|---|
| | | | [a] | [b] | [c] | [d] = [a] x [b] x [c] | [e] = [a] x [b] |
| 2011 | Kia | Sorento | - | $ | 73.18% | $ | $ |
| 2012 | Kia | Sorento | 43,763 | | 73.18% | | |
| 2013 | Kia | Sorento | 40,683 | | 73.18% | | |
| 2014 | Kia | Sorento | 67,492 | | 73.18% | | |
| 2015 | Kia | Sorento | 57,646 | | 73.18% | | |
| 2016 | Kia | Sorento | 85,160 | | 73.18% | | |
| 2017 | Kia | Sorento | 63,113 | | 73.18% | | |
| 2018 | Kia | Sorento | 34,586 | | 73.18% | | |
| 2019 | Kia | Sorento | 52,506 | | 73.18% | | |
| | **2011-2019 Kia Sorento** | | **444,949** | | | $ | $ |
| 2011 | Kia | Sportage | 3,031 | $ | 73.18% | $ | $ |
| 2012 | Kia | Sportage | 2,115 | | 73.18% | | |
| 2013 | Kia | Sportage | 2,491 | | 73.18% | | |
| 2014 | Kia | Sportage | 30,838 | | 73.18% | | |
| 2015 | Kia | Sportage | 39,981 | | 73.18% | | |
| 2016 | Kia | Sportage | 42,730 | | 73.18% | | |
| 2017 | Kia | Sportage | 99,526 | | 73.18% | | |
| 2018 | Kia | Sportage | 67,389 | | 73.18% | | |
| 2019 | Kia | Sportage | 62,569 | | 73.18% | | |
| | **20111-2019 Kia Sportage** | | **350,670** | | | $ | $ |
| | **Subtotal: Kia** | | **1,728,483** | | | $ | $ |
| | **Total: Hyundai & Kia** | | **3,956,568** | | | $ 689,712,359 | $ 932,939,474 |

**Notes and Sources:**
- Vehicle counts by model year, make and model are determined at Schedule 7 and Schedule 8.
- Estimated value of the Lifetime Warranty calculated on Schedule 6 at 10% of the MSRP for the Powertrain Warranty.
- Percentage of Vehicles that have received the KSDS update based on Class Vehicles from Schedule 7 and Schedule 8 and :
  The number of Class Vehicles that received the KSDS update per Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par 18,19.
  (Exhibit D).

| | [a] Class Vehicle's | [b] Received KSDS update | [c] = [b]/[a] % |
|---|---|---|---|
| Hyundai | 2,228,085 | 1,659,338 | 74.47% |
| Kia | 1,728,483 | 1,264,871 | 73.18% |

In re: Hyundai and Kia Engine Litigation
Schedule 2a
Lifetime Warranty Value Calculation (HM Calculation)

| Model Year | Make | Model | Approx. No of Class Vehicles | Lifetime Warranty Est. Warranty Value Short Block Assembly (per Vehicle) | Percentage of Class Vehicles with KSDS | Warranty Value (Class Vehicles with KSDS) | Warranty Value (All Class Vehicles) |
|---|---|---|---|---|---|---|---|
| | | | [a] | [b] | [c] | [d]= [a] x [b] x [c] | [e]=[a] x [b] |
| **Hyundai** | | | | | | | |
| 2011 | Hyundai | Sonata | 268,106 | $ | 74.47% | $ | $79,193,887 |
| 2012 | Hyundai | Sonata | 165,361 | | 74.47% | | 48,844,786 |
| 2013 | Hyundai | Sonata | 265,644 | | 74.47% | | 78,466,654 |
| 2014 | Hyundai | Sonata | 122,502 | | 74.47% | | 36,184,977 |
| 2015 | Hyundai | Sonata | 216,776 | | 74.47% | | 64,031,890 |
| 2016 | Hyundai | Sonata | 151,020 | | 74.47% | | 44,608,702 |
| 2017 | Hyundai | Sonata | 138,480 | | 74.47% | | 40,904,603 |
| 2018 | Hyundai | Sonata | 113,296 | | 74.47% | | 33,465,684 |
| 2019 | Hyundai | Sonata | 81,775 | | 74.47% | | 24,154,924 |
| | | **2011-2019 Hyundai Sonata** | **1,522,960** | | | **$** | **$   449,856,107** |
| 2013 | Hyundai | Santa Fe Sport | 84,583 | $ | 74.47% | $ | $24,984,359 |
| 2014 | Hyundai | Santa Fe Sport | 74,341 | | 74.47% | | 21,959,049 |
| 2015 | Hyundai | Santa Fe Sport | 50,057 | | 74.47% | | 14,785,974 |
| 2016 | Hyundai | Santa Fe Sport | 52,324 | | 74.47% | | 15,455,607 |
| 2017 | Hyundai | Santa Fe Sport | 131,170 | | 74.47% | | 38,745,355 |
| 2018 | Hyundai | Santa Fe Sport | 97,165 | | 74.47% | | 28,700,865 |
| 2019 | Hyundai | Santa Fe Sport | 107,453 | | 74.47% | | 31,739,762 |
| | | **2013-2019 Hyundai Santa Fe Sport** | **597,093** | | | **$** | **$   176,370,970** |
| 2014 | Hyundai | Tucson | 28,295 | $ | 74.47% | $ | 8,357,855 |
| 2015 | Hyundai | Tucson | 27,824 | | 74.47% | | 8,218,730 |
| 2018 | Hyundai | Tucson | 6,852 | | 74.47% | | 2,023,963 |
| 2019 | Hyundai | Tucson | 45,061 | | 74.47% | | 13,310,242 |
| | | **2014-2015 & 2018-2019 Hyundai Tucson** | **108,032** | | | **$** | **$   31,910,789** |
| | | **Subtotal: Hyundai** | **2,228,085** | | | **$** | **$   658,137,866** |
| **Kia** | | | | | | | |
| 2011 | Kia | Optima | 56,910 | $ | 73.18% | $ | 16,049,588 |
| 2012 | Kia | Optima | 88,889 | | 73.18% | | 25,068,210 |
| 2013 | Kia | Optima | 179,024 | | 73.18% | | 50,487,813 |
| 2014 | Kia | Optima | 92,517 | | 73.18% | | 26,091,368 |
| 2015 | Kia | Optima | 198,897 | | 73.18% | | 56,092,337 |
| 2016 | Kia | Optima | 113,348 | | 73.18% | | 31,966,064 |
| 2017 | Kia | Optima | 51,744 | | 73.18% | | 14,592,688 |
| 2018 | Kia | Optima | 87,174 | | 73.18% | | 24,584,551 |
| 2019 | Kia | Optima | 64,361 | | 73.18% | | 18,150,897 |
| | | **2011-2019 Kia Optima** | **932,864** | | | **$   192.5** | **$   263,083,517** |

In re: Hyundai and Kia Engine Litigation
Schedule 2a
Lifetime Warranty Value Calculation (HM Calculation)

| Model Year | Make | Model | Approx. No of Class Vehicles | Est. Warranty Value Short Block Assembly (per Vehicle) | Percentage of Class Vehicles with KSDS | Warranty Value (Class Vehicles with KSDS) | Warranty Value (All Class Vehicles) |
|---|---|---|---|---|---|---|---|
| | | | [a] | [b] | [c] | [d] = [a] x [b] x [c] | [e] = [a] x [b] |
| 2011 | Kia | Sorento | - | $ ▮ | 73.18% | $ ▮ | $ - |
| 2012 | Kia | Sorento | 43,763 | | 73.18% | | 12,341,910 |
| 2013 | Kia | Sorento | 40,683 | | 73.18% | | 11,473,298 |
| 2014 | Kia | Sorento | 67,492 | | 73.18% | | 19,033,892 |
| 2015 | Kia | Sorento | 57,646 | | 73.18% | | 16,257,153 |
| 2016 | Kia | Sorento | 85,160 | | 73.18% | | 24,016,569 |
| 2017 | Kia | Sorento | 63,113 | | 73.18% | | 17,798,940 |
| 2018 | Kia | Sorento | 34,586 | | 73.18% | | 9,753,840 |
| 2019 | Kia | Sorento | 52,506 | | 73.18% | | 14,807,585 |
| **2011-2019 Kia Sorento** | | | **444,949** | | | $ ▮ | $ **125,483,187** |
| 2011 | Kia | Sportage | 3,031 | $ ▮ | 73.18% | $ ▮ | $ 750,937 |
| 2012 | Kia | Sportage | 2,115 | | 73.18% | | 523,996 |
| 2013 | Kia | Sportage | 2,491 | | 73.18% | | 617,151 |
| 2014 | Kia | Sportage | 30,838 | | 73.18% | | 7,640,180 |
| 2015 | Kia | Sportage | 39,981 | | 73.18% | | 9,905,378 |
| 2016 | Kia | Sportage | 42,730 | | 73.18% | | 10,586,448 |
| 2017 | Kia | Sportage | 99,526 | | 73.18% | | 24,657,778 |
| 2018 | Kia | Sportage | 67,389 | | 73.18% | | 16,695,768 |
| 2019 | Kia | Sportage | 62,569 | | 73.18% | | 15,501,603 |
| **20111-2019 Kia Sportage** | | | **350,670** | | | $ ▮ | $ **86,879,238** |
| **Subtotal: Kia** | | | **1,728,483** | | | $ ▮ | $ **475,445,942** |
| **Total: Hyundai & Kia** | | | **3,956,568** | | | $ **838,046,609** | $ **1,133,583,808** |

**Notes and Sources:**
- Vehicle counts by model year, make and model are determined at Schedule 7 and Schedule 8.
- Estimated value of the Lifetime Warranty calculated on Schedule 6a. Calculation estimates 12% of the MSRP of the Powertrain Warranty.
- Percentage of Vehicles that have received the KSDS update based on Class Vehicles from Schedule 7 and Schedule 8 and :
- The number of Class Vehicles that received the KSDS update per Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par 18,19. (Exhibit D)

| | [a] Class Vehicle's | [b] Received KSDS update | [c] = [b]/[a] % |
|---|---|---|---|
| Hyundai | 2,228,085 | 1,659,338 | 74.47% |
| Kia | 1,728,483 | 1,264,871 | 73.18% |

Expert Report of Susan K. Thompson, CPA/CFF

**In re: Hyundai and Kia Engine Litigation**
**Schedule 3**
**Diagnostic Inspection Calculations**

| Model Year | Make | Model | Total Class Vehicles | | Less Vehicles Already Inspected per (II.B.4) | Class Vehicles Eligible for Diagnostic Inspection | Hrs | Rate | Value Diagnostic Inspection | Value for 25% of Class Vehicles |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | [a] | | [b] | [c] = [a]-[b] | [d] | [e] | [f] = [d]x[e] | [g] = [c] x 25% x [f] |
| **Hyundai** | | | | | | | | | | |
| 2011 | Hyundai | Sonata | 268,106 | | 15,382 | 252,724 | 0.5 | $120 | $60 | $ 3,790,860 |
| 2012 | Hyundai | Sonata | 165,361 | | 9,487 | 155,874 | 0.5 | $120 | $60 | $ 2,338,110 |
| 2013 | Hyundai | Sonata | 265,644 | | 15,242 | 250,402 | 0.5 | $120 | $60 | $ 3,756,030 |
| 2014 | Hyundai | Sonata | 122,502 | | 7,028 | 115,474 | 0.5 | $120 | $60 | $ 1,732,110 |
| 2015 | Hyundai | Sonata | 216,776 | | 12,437 | 204,339 | 0.5 | $120 | $60 | $ 3,065,085 |
| 2016 | Hyundai | Sonata | 151,020 | | 8,664 | 142,356 | 0.5 | $120 | $60 | $ 2,135,340 |
| 2017 | Hyundai | Sonata | 138,480 | | 7,945 | 130,535 | 0.5 | $120 | $60 | $ 1,958,025 |
| 2018 | Hyundai | Sonata | 113,296 | | 6,500 | 106,796 | 0.5 | $120 | $60 | $ 1,601,940 |
| 2019 | Hyundai | Sonata | 81,775 | | 4,692 | 77,083 | 0.5 | $120 | $60 | $ 1,156,245 |
| | **2011-2019 Hyundai Sonata** | | **1,522,960** | | **87,377** | **1,435,583** | | | | **$21,533,745** |
| | | | | | | | | | | |
| 2013 | Hyundai | Santa Fe Sport | 84,583 | | 4,853 | 79,730 | 0.5 | $120 | $60 | $ 1,195,950 |
| 2014 | Hyundai | Santa Fe Sport | 74,341 | | 4,265 | 70,076 | 0.5 | $120 | $60 | $ 1,051,140 |
| 2015 | Hyundai | Santa Fe Sport | 50,057 | | 2,872 | 47,185 | 0.5 | $120 | $60 | $ 707,775 |
| 2016 | Hyundai | Santa Fe Sport | 52,324 | | 3,002 | 49,322 | 0.5 | $120 | $60 | $ 739,830 |
| 2017 | Hyundai | Santa Fe Sport | 131,170 | | 7,526 | 123,644 | 0.5 | $120 | $60 | $ 1,854,660 |
| 2018 | Hyundai | Santa Fe Sport | 97,165 | | 5,575 | 91,590 | 0.5 | $120 | $60 | $ 1,373,850 |
| 2019 | Hyundai | Santa Fe Sport | 107,453 | | 6,165 | 101,288 | 0.6 | $120 | $72 | $ 1,823,184 |
| | **2013-2019 Hyundai Santa Fe Sport** | | **597,093** | | **34,258** | **562,835** | | | | **$8,746,389** |
| | | | | | | | | | | |
| 2014 | Hyundai | Tucson | 28,295 | | 1,623 | 26,672 | 0.5 | $120 | $60 | $ 400,080 |
| 2015 | Hyundai | Tucson | 27,824 | | 1,596 | 26,228 | 0.5 | $120 | $60 | $ 393,420 |
| 2018 | Hyundai | Tucson | 6,852 | | 393 | 6,459 | 0.5 | $120 | $60 | $ 96,885 |
| 2019 | Hyundai | Tucson | 45,061 | | 2,585 | 42,476 | 0.5 | $120 | $60 | $ 637,140 |
| | **2014-2015 & 2018-2019 Hyundai Tucson** | | **108,032** | | **6,197** | **101,835** | | | | **$1,527,525** |
| | | | | | | | | | | |
| **Subtotal: Hyundai** | | | **2,228,085** | | **127,832** | **2,100,253** | | | | **$31,807,659** |
| | | | | | | | | | | |
| **Kia** | | | | | | | | | | |
| 2011 | Kia | Optima | 56,910 | | 3,265 | 53,645 | 0.7 | $115 | $81 | $ 1,079,606 |
| 2012 | Kia | Optima | 88,889 | | 5,100 | 83,789 | 0.7 | $115 | $81 | $ 1,686,254 |
| 2013 | Kia | Optima | 179,024 | | 10,271 | 168,753 | 0.7 | $115 | $81 | $ 3,396,154 |
| 2014 | Kia | Optima | 92,517 | | 5,308 | 87,209 | 0.7 | $115 | $81 | $ 1,755,081 |
| 2015 | Kia | Optima | 198,897 | | 11,411 | 187,486 | 0.7 | $115 | $81 | $ 3,773,156 |
| 2016 | Kia | Optima | 113,348 | | 6,503 | 106,845 | 0.7 | $115 | $81 | $ 2,150,256 |
| 2017 | Kia | Optima | 51,744 | | 2,969 | 48,775 | 0.7 | $115 | $81 | $ 981,597 |
| 2018 | Kia | Optima | 87,174 | | 5,001 | 82,173 | 0.7 | $115 | $81 | $ 1,653,732 |
| 2019 | Kia | Optima | 64,361 | | 3,693 | 60,668 | 0.7 | $115 | $81 | $ 1,220,944 |
| | **20111-2019 Kia Optima** | | **932,864** | | **53,521** | **879,343** | | | | **$17,696,778** |

**In re: Hyundai and Kia Engine Litigation**
**Schedule 3**
**Diagnostic Inspection Calculations**

| Model Year | Make | Model | Total Class Vehicles | | Less Vehicles Already Inspected per (II.B.4) | Class Vehicles Eligible for Diagnostic Inspection | Hrs | Rate | Value Diagnostic Inspection | Value for 25% of Class Vehicles |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | [a] | | [b] | [c] = [a]-[b] | [d] | [e] | [f] = [d]x[e] | [g] = [c] x 25% x [f] |
| 2011 | Kia | Sorento | - | | - | - | 0.7 | $115 | $81 | $        - |
| 2012 | Kia | Sorento | 43,763 | | 2,511 | 41,252 | 0.7 | $115 | $81 | $   830,197 |
| 2013 | Kia | Sorento | 40,683 | | 2,334 | 38,349 | 0.7 | $115 | $81 | $   771,774 |
| 2014 | Kia | Sorento | 67,492 | | 3,872 | 63,620 | 0.7 | $115 | $81 | $ 1,280,353 |
| 2015 | Kia | Sorento | 57,646 | | 3,307 | 54,339 | 0.7 | $115 | $81 | $ 1,093,572 |
| 2016 | Kia | Sorento | 85,160 | | 4,886 | 80,274 | 0.7 | $115 | $81 | $ 1,615,514 |
| 2017 | Kia | Sorento | 63,113 | | 3,621 | 59,492 | 0.7 | $115 | $81 | $ 1,197,277 |
| 2018 | Kia | Sorento | 34,586 | | 1,984 | 32,602 | 0.7 | $115 | $81 | $   656,115 |
| 2019 | Kia | Sorento | 52,506 | | 3,012 | 49,494 | 0.7 | $115 | $81 | $   996,067 |
| **2011-2019 Kia Sorento** | | | **444,949** | | **25,527** | **419,422** | | | | **8,440,868** |
| 2011 | Kia | Sportage | 3,031 | | 174 | 2,857 | 0.7 | $115 | $81 | $     57,497 |
| 2012 | Kia | Sportage | 2,115 | | 121 | 1,994 | 0.7 | $115 | $81 | $     40,129 |
| 2013 | Kia | Sportage | 2,491 | | 143 | 2,348 | 0.7 | $115 | $81 | $     47,254 |
| 2014 | Kia | Sportage | 30,838 | | 1,769 | 29,069 | 0.7 | $115 | $81 | $   585,014 |
| 2015 | Kia | Sportage | 39,981 | | 2,294 | 37,687 | 0.7 | $115 | $81 | $   758,451 |
| 2016 | Kia | Sportage | 42,730 | | 2,452 | 40,278 | 0.7 | $115 | $81 | $   810,595 |
| 2017 | Kia | Sportage | 99,526 | | 5,711 | 93,815 | 0.7 | $115 | $81 | $ 1,888,027 |
| 2018 | Kia | Sportage | 67,389 | | 3,866 | 63,523 | 0.7 | $115 | $81 | $ 1,278,400 |
| 2019 | Kia | Sportage | 62,569 | | 3,590 | 58,979 | 0.7 | $115 | $81 | $ 1,186,952 |
| **20111-2019 Kia Sportage** | | | **350,670** | | **20,120** | **330,550** | | | | **$6,652,319** |
| **Subtotal: Kia** | | | **1,728,483** | | **99,168** | **1,629,315** | | | | **$32,789,964** |
| **Total: Hyundai & Kia** | | | **3,956,568** | | **227,000** | **3,729,568** | | | | **$64,597,623** |

**Notes and Sources:**

- Vehicle counts by model year, make and model are determined at Schedule 7 and Schedule 8.
- Per the Settlement Agreement (Exhibit C) at II.B.4 approximately 227,000 vehicles were covered under previous recalls. The 227,000 vehicles have been allocated across all Class Vehicles based on each model and model years percentage of the Total Class.
- Kia estimates a recall response rate of approximately 25-35% depending on the recall and age of the vehicles. The lower rate of 25% was used to calculate the estimated value of Class Vehicles that will obtain the free Diagnostic Inspection. Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 17 (Exhibit D).
- Hours and labor rates obtained from Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 10-16 (Exhibit D).
- Hyundai will pay its dealers for the Free Diagnostic Inspection at .5 hours for all Class Vehicles except the 19MY Santa Fe for which it will pay .6 hours. (Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. Exhibit D par. 15)
- Kia will pay .7 of an hour for the diagnostic inspection. (Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 16)

**In re: Hyundai and Kia Engine Litigation**
**Schedule 3a**
**KSDS Installation Calculations**

| Model Year | Make | Model | Total Class Vehicles | % of Class Vehicles that have Received the KSDS Update | Class Vehicles Currently with KSDS | Hrs | Rate | Value KSDS Software Addition | Total Value for Class Vehicles With KSDS | Total Potential Value for KSDS Update |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | [a] | [b] | [c] = [x] x [b] | [d] | [e] | [f] = [d] x [e] | [g] = [c] x [f] | [h] = [a] x [f] |
| **Hyundai** | | | | | | | | | | |
| 2011 | Hyundai | Sonata | 268,106 | 74.47% | 199,669 | 0.3 | $120 | $36 | $7,188,084 | $9,651,816 |
| 2012 | Hyundai | Sonata | 165,361 | 74.47% | 123,151 | 0.3 | $120 | $36 | $4,433,436 | 5,952,996 |
| 2013 | Hyundai | Sonata | 265,644 | 74.47% | 197,835 | 0.3 | $120 | $36 | $7,122,060 | 9,563,184 |
| 2014 | Hyundai | Sonata | 122,502 | 74.47% | 91,232 | 0.3 | $120 | $36 | $3,284,352 | 4,410,072 |
| 2015 | Hyundai | Sonata | 216,776 | 74.47% | 161,441 | 0.5 | $120 | $60 | $9,686,460 | 13,006,560 |
| 2016 | Hyundai | Sonata | 151,020 | 74.47% | 112,470 | 0.3 | $120 | $36 | $4,048,920 | 5,436,720 |
| 2017 | Hyundai | Sonata | 138,480 | 74.47% | 103,131 | 0.3 | $120 | $36 | $3,712,716 | 4,985,280 |
| 2018 | Hyundai | Sonata | 113,296 | 74.47% | 84,376 | 0.3 | $120 | $36 | $3,037,536 | 4,078,656 |
| 2019 | Hyundai | Sonata | 81,775 | 74.47% | 60,901 | 0.3 | $120 | $36 | $2,192,436 | 2,943,900 |
| | | **2011-2019 Hyundai Sonata** | **1,522,960** | | **1,134,206** | | | | **$44,706,000** | **$60,029,184** |
| | | | | | | | | | | |
| 2013 | Hyundai | Santa Fe Sport | 84,583 | 74.47% | 62,991 | 0.3 | $120 | $36 | $2,267,676 | $3,044,988 |
| 2014 | Hyundai | Santa Fe Sport | 74,341 | 74.47% | 55,365 | 0.3 | $120 | $36 | $1,993,140 | 2,676,276 |
| 2015 | Hyundai | Santa Fe Sport | 50,057 | 74.47% | 37,279 | 0.5 | $120 | $60 | $2,236,740 | 3,003,420 |
| 2016 | Hyundai | Santa Fe Sport | 52,324 | 74.47% | 38,968 | 0.3 | $120 | $36 | $1,402,848 | 1,883,664 |
| 2017 | Hyundai | Santa Fe Sport | 131,170 | 74.47% | 97,687 | 0.3 | $120 | $36 | $3,516,732 | 4,722,120 |
| 2018 | Hyundai | Santa Fe Sport | 97,165 | 74.47% | 72,362 | 0.3 | $120 | $36 | $2,605,032 | 3,497,940 |
| 2019 | Hyundai | Santa Fe Sport | 107,453 | 74.47% | 80,024 | 0.3 | $120 | $36 | $2,880,864 | 3,868,308 |
| | | **2013-2019 Hyundai Santa Fe Sport** | **597,093** | | **444,676** | | | | **$16,903,032** | **$22,696,716** |
| | | | | | | | | | | |
| 2014 | Hyundai | Tucson | 28,295 | 74.47% | 21,072 | 0.3 | $120 | $36 | $758,592 | $1,018,620 |
| 2015 | Hyundai | Tucson | 27,824 | 74.47% | 20,722 | 0.3 | $120 | $36 | $745,992 | 1,001,664 |
| 2018 | Hyundai | Tucson | 6,852 | 74.47% | 5,103 | 0.3 | $120 | $36 | $183,708 | 246,672 |
| 2019 | Hyundai | Tucson | 45,061 | 74.47% | 33,559 | 0.3 | $120 | $36 | $1,208,124 | 1,622,196 |
| | | **2014-2015 & 2018-2019 Hyundai Tucson** | **108,032** | | **80,456** | | | | **$2,896,416** | **$3,889,152** |
| | | | | | | | | | | |
| | | **Subtotal: Hyundai** | **2,228,085** | | **1,659,338** | | | | **$64,505,448** | **$86,615,052** |
| | | | | | | | | | | |
| **Kia** | | | | | | | | | | |
| 2011 | Kia | Optima | 56,910 | 73.18% | 41,646 | 0.3 | $115 | $35 | $1,436,787 | $1,963,395 |
| 2012 | Kia | Optima | 88,889 | 73.18% | 65,047 | 0.3 | $115 | $35 | $2,244,122 | 3,066,671 |
| 2013 | Kia | Optima | 179,024 | 73.18% | 131,006 | 0.3 | $115 | $35 | $4,519,707 | 6,176,328 |
| 2014 | Kia | Optima | 92,517 | 73.18% | 67,702 | 0.3 | $115 | $35 | $2,335,719 | 3,191,837 |
| 2015 | Kia | Optima | 198,897 | 73.18% | 145,549 | 0.3 | $115 | $35 | $5,021,441 | 6,861,947 |
| 2016 | Kia | Optima | 113,348 | 73.18% | 82,946 | 0.3 | $115 | $35 | $2,861,637 | 3,910,506 |
| 2017 | Kia | Optima | 51,744 | 73.18% | 37,865 | 0.3 | $115 | $35 | $1,306,743 | 1,785,168 |
| 2018 | Kia | Optima | 87,174 | 73.18% | 63,792 | 0.3 | $115 | $35 | $2,200,824 | 3,007,503 |
| 2019 | Kia | Optima | 64,361 | 73.18% | 47,098 | 0.3 | $115 | $35 | $1,624,881 | 2,220,455 |
| | | **20111-2019 Kia Optima** | **932,864** | | **682,651** | | | | **$23,551,460** | **$32,183,808** |
| | | | | | | | | | | |
| 2011 | Kia | Sorento | - | 73.18% | - | 0.3 | $115 | $35 | $0 | $0 |
| 2012 | Kia | Sorento | 43,763 | 73.18% | 32,025 | 0.3 | $115 | $35 | $1,104,863 | 1,509,824 |
| 2013 | Kia | Sorento | 40,683 | 73.18% | 29,771 | 0.3 | $115 | $35 | $1,027,100 | 1,403,564 |
| 2014 | Kia | Sorento | 67,492 | 73.18% | 49,389 | 0.3 | $115 | $35 | $1,703,921 | 2,328,474 |
| 2015 | Kia | Sorento | 57,646 | 73.18% | 42,184 | 0.3 | $115 | $35 | $1,455,348 | 1,988,787 |
| 2016 | Kia | Sorento | 85,160 | 73.18% | 62,318 | 0.3 | $115 | $35 | $2,149,971 | 2,938,020 |
| 2017 | Kia | Sorento | 63,113 | 73.18% | 46,185 | 0.3 | $115 | $35 | $1,593,383 | 2,177,399 |
| 2018 | Kia | Sorento | 34,586 | 73.18% | 25,309 | 0.3 | $115 | $35 | $873,161 | 1,193,217 |
| 2019 | Kia | Sorento | 52,506 | 73.18% | 38,423 | 0.3 | $115 | $35 | $1,325,594 | 1,811,457 |
| | | **2011-2019 Kia Sorento** | **444,949** | | **325,604** | | | | **$11,233,338** | **$15,350,741** |

**In re: Hyundai and Kia Engine Litigation**
**Schedule 3a**
**KSDS Installation Calculations**

| Model Year | Make | Model | Total Class Vehicles | % of Class Vehicles that have Received the KSDS Update | Class Vehicles Currently with KSDS | Hrs | Rate | Value KSDS Software Addition | Total Value for Class Vehicles With KSDS | Total Potential Value for KSDS Update |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | [a] | [b] | [c] = [x] x [b] | [d] | [e] | [f] = [d] x [e] | [g] = [c] x [f] | [h] = [a] x [f] |
| 2011 | Kia | Sportage | 3,031 | 73.18% | 2,219 | 0.3 | $115 | $35 | $76,556 | $104,570 |
| 2012 | Kia | Sportage | 2,115 | 73.18% | 1,549 | 0.3 | $115 | $35 | $53,441 | 72,968 |
| 2013 | Kia | Sportage | 2,491 | 73.18% | 1,823 | 0.3 | $115 | $35 | $62,894 | 85,940 |
| 2014 | Kia | Sportage | 30,838 | 73.18% | 22,567 | 0.3 | $115 | $35 | $778,562 | 1,063,911 |
| 2015 | Kia | Sportage | 39,981 | 73.18% | 29,257 | 0.3 | $115 | $35 | $1,009,367 | 1,379,345 |
| 2016 | Kia | Sportage | 42,730 | 73.18% | 31,269 | 0.3 | $115 | $35 | $1,078,781 | 1,474,185 |
| 2017 | Kia | Sportage | 99,526 | 73.18% | 72,831 | 0.3 | $115 | $35 | $2,512,670 | 3,433,647 |
| 2018 | Kia | Sportage | 67,389 | 73.18% | 49,314 | 0.3 | $115 | $35 | $1,701,333 | 2,324,921 |
| 2019 | Kia | Sportage | 62,569 | 73.18% | 45,787 | 0.3 | $115 | $35 | $1,579,652 | 2,158,631 |
| **20111-2019 Kia Sportage** | | | **350,670** | | **256,616** | | | | **$8,853,252** | **$12,098,115** |
| **Subtotal: Kia** | | | **1,728,483** | | **1,264,871** | 0.3 | $115 | $35 | **$43,638,050** | **$59,632,664** |
| **Total: Hyundai & Kia** | | | **3,956,568** | | **2,924,209** | | | | **$108,143,498** | **$146,247,716** |

**Notes and Sources:**

- Vehicle counts by model year, make and model are determined at Schedule 7 and Schedule 8.

- Per the Settlement Agreement (Exhibit C) at II.B.4 approximately 227,000 vehicles were covered under previous recalls. The 227,000 vehicles have been allocated across all Class Vehicles based on each model and model years percentage of the Total Class.

- Kia estimates a recall response rate of approximately 25-35% depending on the recall and age of the vehicles. The lower rate of 25% was used to calculate the estimated value of Class Vehicles that will obtain the free Diagnostic Inspection. Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 17 (Exhibit D).

- Hours and labor rates obtained from Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 10-16 (Exhibit D).

- Hyundai will pay its dealers .3 hours to complete the KSDS update for all Class Vehicles other than the 2015 MY Sonata and Santa Fe for which it will pay .5 hours. (Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. Exhibit D par. 14)

- Kia will pay its dealers .3 hours to complete the KSDS update. (Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 13 Exhibit D)

In re: Hyundai and Kia Engine Litigation
Schedule 4
Additional Claim Reimbursements: Hyundai Claims

| Category | Ref | [a] # of Claims Received | [b] % of Total Claims | [c] = [d]/[a] Average Claim Amount | [d] Total Face Value Received | [e] = ([a]/7) x 36 # of Claims Estimated | [f] = % of Total Claims % of Total Estimated Claims | [g] = [c] Average Claim Amount | [h] = [e] x [g] Total Value Estimated | [i] = [h] - [d] Projected increase of |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Actual Claims Received through 9/16/2020 | | | | Estimated Total Claims Through April 12, 2021 | | | | |
| Repair Reimbursements (Hyundai) | [A] | 5,503 | 35.09% | $ 1,805 | $ 9,930,952 | 28,299 | 35.09% | $ 1,805 | $ 51,069,600 | $ 41,138,648 |
| Repair Reimbursements (3rd Party) | [E] | - | 0.00% | $ - | $ - | - | 0.00% | $ - | $ - | $ - |
| Other Repair-Related Reimbursements | [A] | 3,108 | 19.82% | $ 710 | $ 2,205,775 | 15,983 | 19.82% | $ 710 | $ 11,343,276 | $ 9,137,501 |
| Inconvenience: Required Elsewhere | [A] | 2,602 | 16.59% | $ 140 | $ 364,280 | 13,381 | 16.59% | $ 140 | $ 1,873,340 | $ 1,509,060 |
| Subtotal Repairs and Inconvenience | | 11,213 | | $ 2,654 | $ 12,501,007 | 57,663 | | | $ 64,286,216 | $ 51,785,209 |
| Inconvenience Due to Repair Delays (Cash) | [C] | 1,147 | 7.31% | $ 75 | $ 86,025 | 5,898 | 7.31% | $ 75 | $ 442,350 | $ 356,325 |
| Inconvenience Due to Repair Delays (Service Card) | [E] | - | - | $ - | $ - | - | - | $ - | $ - | $ - |
| Loss of Value for Sold or Traded-In Vehicles | [B] | 1,544 | 9.85% | $ 140 | $ 216,160 | 7,940 | 9.85% | $ 140 | $ 1,111,600 | $ 895,440 |
| Loss of Vehicle by Engine Fire | [B] | 589 | 3.76% | $ 140 | $ 82,460 | 3,029 | 3.76% | $ 140 | $ 424,060 | $ 341,600 |
| Rebate Program | [D] | 1,188 | 7.58% | Unknown | Unknown | 6,109 | 7.58% | Unknown | | $ - |
| Total Value Additional Claims | | 15,681 | 100.00% | | $ 12,885,652 | 80,640 | 100.00% | | $ 66,264,226 | $ 53,278,574 |

Notes and Sources:
[A] Number of Claims and Total Face Value  as of 9/16/2020.  (Exhibit D par 23).  The Average Claim amount was calculated by dividing the Total Face Value received by the # of Claims Received.
[B] Number of Claims obtained from Hyundai  as of 9/16/2020. Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 23 (Exhibit D). Goodwill payment amounts of $140 obtained from the Settlement Agreement: II.C.6, II.F.1., and  II.G.1. (Exhibit C). Total value calculated by number of claims x $140.
[C] Number of Claims obtained from Hyundai as of 9/16/2020. Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 23 (Exhibit D). Average number of delay days of 114 (Exhibit D par 23), which equates to a goodwill payment of $75 per the Settlement Agreement II.E.2. (Exhibit C). Total value calculated by number of claims received x $75.
[D] Number of claims obtained from Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 23. (Exhibit D ).  Value cannot be calculated at this time as it relies on the Black Book values.
[E] No information provided.

-   Estimated projected total claims received through April 12, 2021 assuming the remaining Claims will be submitted at the same frequency and type of claim as received through September 16, 2020.  Estimated Total Claims of 80,640 have been calculated by dividing the current claims of 15,681 by 7 weeks (number of weeks August 1 - September 16) multiplied by 36 weeks (number of weeks between August 1, 2020 and April 12, 2021).
    Estimated total Claims of 80,640 (15,681/7 = 2,240 a week x 36 weeks = 80,640.

In re: Hyundai and Kia Engine Litigation
Schedule 5
Additional Claim Reimbursements Kia Claims

| Category | | [a] # of Claims Received | [b] % of Total Claims | [c] Average Claim Amount | [d] = [a] x [c] Total Value Amount Claimed | [e] = 86,400 x % in [b] # of Claims Estimated | [f] = % of Total Estimated Claims | [g] = [c] Average Claim Amount | [h] = [e] x [g] Total Value Estimated | [i] = [h] - [d] Projected increase of |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Actual Claims Received through 9/20/2020 | | | | Estimated Future Claims Through April 12, 2021 | | | | |
| Repair Reimbursements (Kia) | [A] | 2,439 | 18.96% | $ 2,280 | $ 5,560,937 | 16,378 | 18.96% | $ 2,280 | $ 37,342,004 | $ 31,781,067 |
| Repair Reimbursements (3rd Party) | [A] | 2,461 | 19.13% | $ 2,161 | $ 5,319,279 | 16,525 | 19.13% | $ 2,161 | $ 35,717,631 | $ 30,398,352 |
| Other Repair-Related Reimbursements | [A] | 2,964 | 23.04% | $ 866 | $ 2,566,661 | 19,903 | 23.04% | $ 866 | $ 17,235,003 | $ 14,668,342 |
| Subtotal Repairs | | 7,864 | | $ 5,307 | $ 13,446,877 | 52,806 | | | $ 90,294,637 | $ 76,847,760 |
| Inconvenience: Repaired Elsewhere | [C] | | | $ 140 | $ 344,540 | - | | $ 140 | $ 2,313,500 | $ 1,968,960 |
| Inconvenience Due to Repair Delays (Cash) | [E] | 716 | 5.56% | $ 125 | $ 89,500 | 4,808 | 5.56% | $ 125 | $ 601,000 | $ 511,500 |
| Inconvenience Due to Repair Delays (Service Card) | [E] | 72 | 0.56% | $ 188 | $ 13,500 | 483 | 0.56% | $ 188 | $ 90,563 | $ 77,063 |
| Loss of Value for Sold or Traded-In Vehicles | [B] | 1,670 | 12.98% | $ 140 | $ 233,800 | 11,214 | 12.98% | $ 140 | $ 1,569,960 | $ 1,336,160 |
| Loss of Vehicle by Engine Fire | [B] | 734 | 5.70% | $ 140 | $ 102,760 | 4,929 | 5.70% | $ 140 | $ 690,060 | $ 587,300 |
| Rebate Program | [D] | 1,811 | 14.07% | Unknown | | 12,161 | 14.08% | Unknown | | $ - |
| **Total Value Additional Claims** | | 12,867 | 100.00% | | $ 14,230,977 | 86,400 | 100% | | $ 95,559,720 | $ 81,228,743 |

Notes and Sources:
[A] Number of claims, average claim amount and total claim value received obtained from Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 24 (Exhibit D ).
[B] Number of claims received obtained from (Exhibit D par. 24). Goodwill payment amounts of $140 obtained from the Settlement Agreement (II.F. 1, III.G.1)
[C] Inconvenience: Repaired Elsewhere calculated based on the # of claims Received or Estimated from Repair Reimbursements (3rd Party) x $140.00 goodwill payment. Settlement Agreement (II.C.6)
[D] Number of claims obtained from Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 24 (Exhibit D ). Value cannot be calculated at this time as it relies on the Black Book values.
[E] Total Inconvenience Due to Repair Delay Claims received was 1,490, within that are 788 claims for delays in excess of 60 days. For an average delay claim 159 days, or $125. 72 Claimants or 9.13% (72/788) are choosing the Service Card option (Exhibit D par. 24). The Service Card option which is valued at 150% of $188 of the amount otherwise paid in a cash debit card. (Exhibit C - Settlement Agreement 1I.E.3)

- Other Repair -Related Reimbursement assume to include all towing and rental car reimbursements.
- Projected Claim information provided by EPIQ. See Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 22 (Exhibit D ).
- The estimated total claims of 86,400 have been allocated to the various claim categories using the same allocation as the actual number of claims received as of 9/20/2020 (Exhibit D par 24).

Expert Report of Susan K. Thompson, CPA/CFF

In re: Hyundai and Kia Engine Litigation
Schedule 6
Extended/Lifetime Warranty Price Hyundai and Kia Estimate

Per the Settlement Agreement: "Lifetime Warranty" refers to the Extension of the existing Powertrain Warranty to cover the short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, in those Class Vehicles owned by individual consumers that have completed the KSDS update in connection with Defendants' now-ongoing product improvement campaigns described herein. The Lifetime Warranty shall also apply to any damage cased to the long block assembly due to connecting rod bearing failure. (Exhibit C , 1.M "Lifetime Warranty")

| | | [a] | [b] = Avg. of [a] | [c] = 10% | [d] = [b] x [c] |
| Estimated MSRP for Powertrain Warranty: | MSRP | Average | Estimated % of Short Block to Engine [1] | Estimated Value of Short Block Assembly Warranty | |
| **Hyundai:** | | | | |
| All Class Vehicles | | | 10.00% | $ |
| **Kia** | | | | |
| Sorento | | | 10.00% | $ |
| Optima | | | 10.00% | $ |
| Sportage | | | 10.00% | $ |

Notes and Sources:
- [1] Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 9 (Exhibit D ).HMA and KMA estimate the short block assembly represents no less than 10% of the Powertrain Warranty Cost.
- Hyundai Powertrain Warranty information Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 7 (Exhibit D ).
- Kia MSRP ranges for the Powertrain Warranty Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 8 (Exhibit D ).

Expert Report of Susan K. Thompson, CPA/CFF

**In re: Hyundai and Kia Engine Litigation**
**Schedule 6a**
**Extended/Lifetime Warranty Price (IIM Calculation)**

Per the Settlement Agreement: "Lifetime Warranty" refers to the Extension of the existing Powertrain Warranty to cover the short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, in those Class Vehicles owned by individual consumers that have completed the KSDS update in connection with Defendants' now-ongoing product improvement campaigns described herein.  The Lifetime Warranty shall also apply to any damage caused to the long block assembly due to connecting rod bearing failure.  (Exhibit C , 1.M "Lifetime Warranty")

| Estimated MSRP for Powertrain Warranty: | MSRP | Average | Estimated % of Engine Portion of the Warranty [1] | Est. of Engine Portion of Warranty | Estimated % of Short Block to Engine [2] | Estimated Value of Short Block Assembly Warranty | Short Block Assembly as a % of the MSRP |
|---|---|---|---|---|---|---|---|
| **Hyundai** | | | | | | | |
| All Class Vehicles | ███ | ███ | 53.16% | ███ | 22.86% | $ ███ | 12.15% |
| **Kia** | | | | | | | |
| Sorento | ███ | $ ███ | 53.16% | ███ | 22.86% | $ ███ | 12.15% |
| Optima | ███ | $ ███ | 53.16% | ███ | 22.86% | $ ███ | 12.15% |
| Sportage | ███ | $ ███ | 53.16% | ███ | 22.86% | $ ███ | 12.15% |

**Notes and Sources:**
- [1] Estimated % of Engine Portion of the Warranty is based on the average replacement value of an engine as a percentage of various items covered in the Powertrain Warranty (Exhibit I):
Estimated replacement cost Engine, Transmission and Drive Axle (Exhibit I):

| | Amount | % | |
|---|---|---|---|
| Average Engine Replacement | $ 3,500 | 53.16% | www.bridwellautocentr.com-engine-replacement-costs February 24, 2019 |
| Average Transmission Replacement | $ 2,600 | 39.49% | www.transmissionrepaircostguide.com |
| Average Drive Axle Replacement | $ 484 | 7.35% | autoservicecosts.com.cv-joint-costs |
| | $ 6,584 | 100% | |

- [2] estimated cost to replace cost of a short block as a percentage of a total engine replacement (Exhibit I)

| Average Short Block Replacement cost | $ 800 | 22.86% | www.bridwellautocenter.com.engine-replacement costs February 24, 2019 |
|---|---|---|---|
| Average Engine Replacement | $ 3,500 | | |

- Hyundai Powertrain Warranty information Declaration of Adam Gonnelli in Support of Final Approval of Class Settlement par. 7 (Exhibit D ).
- Kia MSRP ranges for the Powertrain Warranty Declaration of Adam Gonnelli in Support of Final Approval of Class Settlement par. 8 (Exhibit D ).

Expert Report of Susan K. Thompson, CPA/CFF

**In re: Hyundai and Kia Engine Litigation**
**Schedule 7**
**Hyundai Class Vehicles - Less Branded Title**

| Model Year | Make | Model | No of Class Vehicles | % of Total Class Vehicles | Est. Class Vehicles with branded title | Potential Class Vehicles |
|---|---|---|---|---|---|---|
| **Hyundai** | | | | | | |
| **Hyundai Sonata** | | | | | | |
| 2011 | Hyundai | Sonata | 289,061 | 12.03% | (20,955) | 268,106 |
| 2012 | Hyundai | Sonata | 178,285 | 7.42% | (12,924) | 165,361 |
| 2013 | Hyundai | Sonata | 286,407 | 11.92% | (20,763) | 265,644 |
| 2014 | Hyundai | Sonata | 132,077 | 5.50% | (9,575) | 122,502 |
| 2015 | Hyundai | Sonata | 233,719 | 9.73% | (16,943) | 216,776 |
| 2016 | Hyundai | Sonata | 162,824 | 6.78% | (11,804) | 151,020 |
| 2017 | Hyundai | Sonata | 149,303 | 6.22% | (10,823) | 138,480 |
| 2018 | Hyundai | Sonata | 122,151 | 5.08% | (8,855) | 113,296 |
| 2019 | Hyundai | Sonata | 88,166 | 3.67% | (6,391) | 81,775 |
| **Total Hyundai Sonata** | | | **1,641,993** | | | **1,522,960** |
| | | | | | | |
| **Hyundai Santa Fe** | | | | | | |
| 2013 | Hyundai | Santa Fe | 91,194 | 3.80% | (6,611) | 84,583 |
| 2014 | Hyundai | Santa Fe | 80,151 | 3.34% | (5,810) | 74,341 |
| 2015 | Hyundai | Santa Fe | 53,969 | 2.25% | (3,912) | 50,057 |
| 2016 | Hyundai | Santa Fe | 56,414 | 2.35% | (4,090) | 52,324 |
| 2017 | Hyundai | Santa Fe | 141,422 | 5.89% | (10,252) | 131,170 |
| 2018 | Hyundai | Santa Fe | 104,759 | 4.36% | (7,594) | 97,165 |
| 2019 | Hyundai | Santa Fe | 115,852 | 4.82% | (8,399) | 107,453 |
| **Total Hyundai Santa Fe** | | | **643,761** | | | **597,093** |
| | | | | | | |
| **Hyundai Tucson** | | | | | | |
| 2014 | Hyundai | Tucson | 30,506 | 1.27% | (2,211) | 28,295 |
| 2015 | Hyundai | Tucson | 29,999 | 1.25% | (2,175) | 27,824 |
| 2016 | Hyundai | Tucson | - | 0.00% | - | - |
| 2017 | Hyundai | Tucson | - | 0.00% | - | - |
| 2018 | Hyundai | Tucson | 7,388 | 0.31% | (536) | 6,852 |
| 2019 | Hyundai | Tucson | 48,583 | 2.02% | (3,522) | 45,061 |
| **Total Hyundai Tucson** | | | **116,476** | | | **108,032** |
| | | | | | | |
| **Total Hyundai** | | | **2,402,230** | | **(174,145)** | **2,228,085** |
| | | | | | | |
| Received the KSDS Update | | | | | | **1,659,338** |
| % Received the KSDS Update | | | | | | **74.47%** |
| Class Vehicles Branded Title | | | **174,145** | | | |
| Branded/Produced | | | **7.25%** | | | |

**Notes and Assumptions:**
- Number of Class Vehicles obtained from Declaration of Adam Gonnelli In Support of Final
  Approval of Class Settlement par. 6 and 21 (Exhibit D )
- The estimated branded vehicles by model and model year are allocated based on the
  model and model year's percentage of the total number of Class Vehicles.
- Class Vehicles totaling 2,402,230 provided by Hyundai have been reduced by the
  estimated number of branded vehicles of 174,145 for a net Potential number. (Exhibit D par. 6).
  of Class Vehicles used to value the Settlement Agreement of 2,228,085. (Exhibit D par. 6).
- Class Vehicles totaling 1,659,338 have received the KSDS update as of 9/16/2020. (Exhibit D par. 19).

**In re: Hyundai and Kia Engine Litigation**
**Schedule 8**
**Kia Class Vehicles - Less Branded Title**

| Model Year | Make | Model | No of Class Vehicles Produced | No of Class Vehicles Sold | % of Total Class Vehicles | Est. Class Vehicles with branded title | Potential Class Vehicles |
|---|---|---|---|---|---|---|---|
| **Kia** | | | | | | | |
| **Kia Optima** | | | | | | | |
| 2011 | Kia | Optima | 61,459 | 61,459 | 3.29% | (4,549) | 56,910 |
| 2012 | Kia | Optima | 95,995 | 95,995 | 5.14% | (7,106) | 88,889 |
| 2013 | Kia | Optima | 193,336 | 193,336 | 10.36% | (14,312) | 179,024 |
| 2014 | Kia | Optima | 99,955 | 99,913 | 5.35% | (7,396) | 92,517 |
| 2015 | Kia | Optima | 214,799 | 214,797 | 11.51% | (15,900) | 198,897 |
| 2016 | Kia | Optima | 122,478 | 122,409 | 6.56% | (9,061) | 113,348 |
| 2017 | Kia | Optima | 55,881 | 55,881 | 2.99% | (4,137) | 51,744 |
| 2018 | Kia | Optima | 94,284 | 94,143 | 5.04% | (6,969) | 87,174 |
| 2019 | Kia | Optima | 69,538 | 69,506 | 3.72% | (5,145) | 64,361 |
| **Total Kia Optima** | | | **1,007,725** | **1,007,439** | | | **932,864** |
| | | | | | | | |
| **Kia Sorento** | | | | | | | |
| 2011 | Kia | Sorento | - | - | 0.00% | - | - |
| 2012 | Kia | Sorento | 47,262 | 47,262 | 2.53% | (3,499) | 43,763 |
| 2013 | Kia | Sorento | 43,935 | 43,935 | 2.35% | (3,252) | 40,683 |
| 2014 | Kia | Sorento | 72,887 | 72,887 | 3.90% | (5,395) | 67,492 |
| 2015 | Kia | Sorento | 62,254 | 62,254 | 3.34% | (4,608) | 57,646 |
| 2016 | Kia | Sorento | 91,971 | 91,968 | 4.93% | (6,808) | 85,160 |
| 2017 | Kia | Sorento | 68,158 | 68,158 | 3.65% | (5,045) | 63,113 |
| 2018 | Kia | Sorento | 37,361 | 37,351 | 2.00% | (2,765) | 34,586 |
| 2019 | Kia | Sorento | 56,712 | 56,703 | 3.04% | (4,197) | 52,506 |
| **Total Kia Sorento** | | | **480,540** | **480,518** | | | **444,949** |
| | | | | | | | |
| **Kia Sportage** | | | | | | | |
| 2011 | Kia | Sportage | 3,273 | 3,273 | 0.18% | (242) | 3,031 |
| 2012 | Kia | Sportage | 2,284 | 2,284 | 0.12% | (169) | 2,115 |
| 2013 | Kia | Sportage | 2,690 | 2,690 | 0.14% | (199) | 2,491 |
| 2014 | Kia | Sportage | 34,006 | 33,303 | 1.78% | (2,465) | 30,838 |
| 2015 | Kia | Sportage | 43,177 | 43,177 | 2.31% | (3,196) | 39,981 |
| 2016 | Kia | Sportage | 46,147 | 46,146 | 2.47% | (3,416) | 42,730 |
| 2017 | Kia | Sportage | 107,488 | 107,483 | 5.76% | (7,957) | 99,526 |
| 2018 | Kia | Sportage | 73,088 | 72,776 | 3.90% | (5,387) | 67,389 |
| 2019 | Kia | Sportage | 67,613 | 67,571 | 3.62% | (5,002) | 62,569 |
| **Total Kia Sportage** | | | **379,766** | **378,703** | | | **350,670** |
| | | | | | | | |
| **Total Kia** | | | **1,868,031** | **1,866,660** | | **(138,177)** | **1,728,483** |

| | |
|---|---|
| Received the KSDS Update | **1,264,871** |
| % Received the KSDS Update | **73.18%** |
| Class Vehicles Branded Title | **138,177** |
| Branded/Produced | **7.40%** |

**Notes and Sources:**
- Number of Class Vehicles produced, sold and branded title information obtained from
  Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement par. 6 and 20 (Exhibit D)
- Branded title information by model and model year was not provided.  The estimated branded vehicles
  by model and model year are based on the model and model year's percentage
  of the total number of Class Vehicles.
- Potential Class Vehicles have been reduced by the estimated number of vehicles with a branded title.
- Class Vehicles totaling 1,868,031 have been reduced by 1,371 Class Vehicles not sold and 138,177 with a braded title.
     The net number of potential Class Vehicles used to value the Settlement Agreement are 1,728,483, see Exhibit D par. 5.
- Class Vehicles totaling 1,264,871 have received the KSDS update as of 9/21/2020, see Exhibit D par. 18.

# EXHIBIT A

**HEMMING | MORSE**
FORENSIC & FINANCIAL CONSULTANTS

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

## Employment & Education

| | |
|---|---|
| 2012 – Present | Hemming Morse, LLP |
| | Certified Public Accountants, Forensic and Financial Consultants |
| | Partner |
| | |
| 2001 – 2011 | Hemming Morse, Inc. |
| | Director, 2004-2011 |
| | Manager, 2001-2003 |
| | |
| 1987 – 2001 | Silva Harden & Adolph, AC |
| | Fresno, CA |
| | |
| 1985 – 1987 | Price Waterhouse |
| | San Jose, California |
| | |
| 1984 – 1985 | Price Waterhouse |
| | Newport Beach/Riverside, California |
| | |
| 1983 | Loma Linda University, Loma Linda, California |
| | B.S. Accounting |

**HEMMING | MORSE**
FORENSIC & FINANCIAL CONSULTANTS

HEMMING.COM

# SUSAN K. THOMPSON, CPA/CFF

## Professional & Service Affiliations

- Certified Public Accountant, State of California

- Certified in Financial Forensics

- California Society of Certified Public Accountants
  - Member, Forensic Services Section for Economic Damages
  - Member, Forensic Services Section for Fraud
  - Member, Litigation Steering Committee, 1997-2001
  - Chair, Litigation Services Committee, Fresno Chapter, 1997-1999

- American Institute of Certified Public Accountants
  - Loma Linda University Alumni Association
  - Smile For A Lifetime, Fresno/Clovis Chapter
  - Board of Directors, 2011- 2019 Publications

- Co-editor of The Witness Chair, published quarterly by the Litigation Sections of the California Society of Certified Public Accountants, 1999-2002

## Seminar Instruction/Presentations

- Speaker, AICPA Forensics & Valuation Services Conference: When Good Food Goes Bad, 2015

- Speaker, California Society of CPAs Economic Damages Section Conference – Business Interruptions: When Good Food Goes Bad, 2015

- Speaker, State Association of County Auditors 103rd Conference – Developing Your Fraud Investigation Through Percipient and Subject Interviews, 2013

- Speaker, Fresno Chapter of the Institute of Management Accountants

## Testimony

### Trial and Arbitration

- Mandeep Singh Samrai dba American Quality Logistics, et al. v. Harjit Singh Samrahi, et al. (2019) California Superior Court, Fresno County Case No. 16CECG02450

- C & C Properties, et al. v. Shell Pipeline Company, et al. (2019) U.S. District Court Eastern District of California Case No. 1:14-cv-01889-DAD-JLT

- Timothy Norman, Ph.D. v. Hanna Boys Center, Inc. (2018) California Superior Court, Sonoma County SCV-260065

- Cynthia Klein v. Kewel Munger, a.k.a. Kable Munger, et al. (2018) California Superior Court, Kern County Case No. S-1500-CV-276206 SPC

**HEMMING | MORSE**
FORENSIC & FINANCIAL CONSULTANTS

## SUSAN K. THOMPSON, CPA/CFF

**Testimony** continued

**Trial and Arbitration** continued

- Ariel Elia v. John Roberts, Texas Environmental Products, Inc. (2017) U.S. District Court Eastern District of California, Fresno Division, Case No. 1:16-cv-00557-AWI-EPG

- Ted Switzer v. Flournoy Management, LLC, et al. (2017) California Superior Court, Fresno County Central Divison, Case No. 11CECG04395 MWS

- Baltara Enterprises, L.P. v. R&C Patterson Family Limited Partnership, et al. (2017) California Superior Court, Fresno County Case No. 14CECG01033 MWS

- Bobby L. Lo and Nancy V. Lo v. Greater Fresno Health Organization, Inc.. dba North Marks Clinic; Vang Moua, et al. (2016) California Superior Court, County of Fresno, Civil Division, Case No. 15CECG00854

- Ashley Lane, LP v. Producers AG Insurance Group (2015) American Arbitration Association Case No. 74-20-1300-0169

- Fresno RV, Inc., et al. v. Paul Evert's RV Country, Inc., et al. (2013) California Superior Court, Fresno County Case No. 11CECG01433

- Muhammad Anwar, M.D. v. State of California, et al. (2012) California Superior Court, Madera County Case No. MCV034056

- Jaime Hernandez v. Eugenia Costa, et al. (2012) California Superior Court, Alameda County Case No. RG1049274

- Lopez, et al. v. Allstate Insurance Company, et al. (2012) California Superior Court, Fresno County Case No. 10CECG01035JH

- In re: Zachariah, Jacob v. AMCO, Inc. (2012) Judicial Arbitration and Mediation Services San Francisco Division, Ref No. 1100068786

- eMocha, LLC, et al. v. Central Plaza Union City, L.P., et al. (2010) California Superior Court, Alameda County Case No. RG06-296460

- Primex Farms, LLC v. Chapparal Farms, Inc. (2010) California Superior Court, Fresno County Case No. 07CECG02935

- Gallegos, et al. v. NCRC, Inc. (2009) California Superior Court, Fresno County Case No. 07CECG04060AMC

- People v. Harry Kassebaum (2008) California Superior Court, Fresno County Case No. F05906970-9

- Monarch Nut Company, Inc. v. Mutual Service Casualty Insurance Company (2005) California Superior Court, Tulare County Case No. 01-196556

- Cal Farm Insurance Company v. Mister "C" Investments (2003) California Superior Court, Fresno County Case No. 01 CE CG 00109

# HEMMING | MORSE
### FORENSIC & FINANCIAL CONSULTANTS

HEMMING.COM

## SUSAN K. THOMPSON, CPA/CFF

### Testimony continued

#### Deposition

- Robert P. Garver v. Principal Life Insurance Co., The Roth Companies, Inc., and Duane Roth (2020)
  U.S. District Court, District of Kansas
  Case No. 2:19-CV-02354

- Michelle Aivazian Sanders, et al. v. Deborah R. Aivazian, et al. (2019)
  California Superior Court, Fresno County
  Case No. 18CECG02412

- Mandeep Singh Samrai dba American Quality Logistics, et al. v. Harjit Singh Samrahi, et al. (2019)
  California Superior Court, Fresno County
  Case No. 16CECG02450

- Shawn Alger v FCA US LLC (2019)
  U.S. District Court Eastern District of California Sacramento Division (2019) Case No. 2:18-cv-00360-MCE-EFB

- Armando J. Becerra, et al. v. General Motors LLC (2019)
  U.S. District Court Southern District of California
  Case No. 15CV2365-JAH-LL

- Dorothy Rodden Jackson v. Richard Calone, et al (2018)
  U.S. District Court Eastern District of California
  Case No. 2:16-cv-00891 TLN KJN

- Jack Sislian and Christine Sislian v. Charlie Sis- lian, et al. (2018) California Superior Court, Fresno County
  Case No. 17 CECG 03588

- Timothy Norman, Ph.D. v. Hanna Boys Center, Inc. (2018)
  California Superior Court, Sonoma County SCV-260065

- In the Matter of The Ernest K. Valorosi and Cheryl Valorosi Revocable Living Trust (2017)
  California Superior Court, Madera County
  Case No. MPR013610

- Ariel Elia v. John Roberts, Texas Environmental Products, Inc. (2017) U.S. District Court Eastern District of California, Fresno Division
  Case No. 1:16-cv-00557-AWI-EPG

- Baltara Enterprises, L.P. v. R&C Patterson Family Limited Partnership, et al. (2017)
  California Superior Court, Fresno County
  Case No. 14CECG01033 MWS

- Kobe Falco, et al. v. Nissan North America, Inc. and Nissan Jidosha Kabushiki Kaisha (2017)
  U.S. District Court Central District of California
  Case No.  2:13-cv-00686-DDP-MAN

- Monarch Nut Company, LLC and Munger Farms v. Goodnature Products, Inc. (2016)
  U.S. District Court Western District of New York
  Case No. 14-cv-01017-WMS

- Alfred Salas and Gloria Ortega v. Toyota Motor Sales, U.S.A., Inc. (2016)
  U.S. District Court, Central District of California
  Case No. CV15-08629 FMO (Ex)

# HEMMING | MORSE
### FORENSIC & FINANCIAL CONSULTANTS

## SUSAN K. THOMPSON, CPA/CFF

### Testimony continued

### Deposition continued

- In re Dorothy R. Jackson and Donald D. Jackson Irrevocable Family Trust (2016) California Superior Court, Stanislaus County Case No. 2200192

- Bobby L. Lo and Nancy V. Lo v. Greater Fresno Health Organization, Inc.. dba North Marks Clinic; Vang Moua, et al. (2016) California Superior Court County of Fresno, Civil Division Case No. 15CECG00854

- Star Laundry Services, Inc. v. Western State De- sign, Inc., et al. (2015) California Superior Court County of San Diego - Central Division Case No. 37-2014-00011335-CU-BC-CTL

- Kobe Falco v. Nissan North America, Inc., et al. (2015) U.S. District Court, Central District of California Case No. 2:13-cv-00686-DDP-MANx

- Irvine Apartment Communities, L.P. v. Western National Construction, et al. (2015) American Arbitration Association Case No. 73 443 Y 00234 12

- Anamiria Madrigal, et al. v. New Cingular Wireless Services, Inc., et al. (2015) American Arbitration Association Case No. 74 484 Y 00301 11 nolg

- Melinda Ward v. Superior Carpet Care, et al. (2015) California Superior Court, Fresno County Case No. 13CEGG00704 MWS

- Centerplate v. Unite Here (2014) U.S. District Court, Case No. 13-CV-2318 DMR

- Sharron Warehime v. Farmers Insurance (2013) California Superior Court, Fresno County Case No. 08CECG02976

- Fresno RV, Inc., et al. v. Paul Evert's RV Country, Inc., et al. (2013) California Superior Court, Fresno County Case No. 11CECG01433

- Jaime Hernandez v. Eugenia Costa, et al. (2012) California Superior Court, Alameda County Case No. RG1049274

- Muhammad Anwar, M.D. v. State of California, et al. (2012) California Superior Court, Madera County Case No. MCV034056

- Primex Farms, LLC v. Roll International Corp., et al. (2012) California Superior Court, Fresno County Case No. 10CECG01114

- Lopez, et al. v. Allstate Insurance Company, et al. (2012) California Superior Court, Fresno County Case No. 10CECG01035JH

- Bobby L. Lo and Nancy V. Lo v. Greater Fresno Health Organization, Inc.. dba North Marks Clinic; Vang Moua, et al. (2016) California Superior Court County of Fresno, Civil Division Case No. 15CECG00854

**HEMMING | MORSE**
FORENSIC & FINANCIAL CONSULTANTS

## SUSAN K. THOMPSON, CPA/CFF

### Testimony continued

#### Deposition continued

- Primex Farms, LLC v. Chapparal Farms, Inc. (2010)
  California Superior Court, Fresno County
  Case No. 07CECG02935

- Gallegos, et al. v. NCRC, Inc. (2009)
  California Superior Court, Fresno County
  Case No. 07CECG04060AMC

- Tremblay v. Aladdin Resort & Casino, et al. (2009)
  District Court, Clark County, Nevada Case No. A494547

- Lucille Epperson v. Hope Manor, et al. (2008)
  California Superior Court, Fresno County
  Case No. 07CECG02718

- Elaine Cantu v. Family Healthcare, et al. (2007)
  California Superior Court, Fresno County
  Case No. 05CECG00738DSB

- Marla Lynn Swanson v. Susan Jane Tovar, et al. (2005)
  California Superior Court, Tulare County
  Case No. 04-211317

- AMCO Insurance Company v. Madera Quality Nut, LLC (2005) U.S. District Court, Case No. CIV-F-04-6456

- Monarch Nut Company, Inc. v. Mutual Service Casualty Insurance Company (2003)  California Superior Court, Tulare County Case No. 01-196556

### Selected Experience

- Expert witness for plaintiffs' counsel in a wage and  hour matter involving multiple employees spanning multiple years. The case involved unpaid overtime, meal and rest break violations, unpaid drive time to job sites, and off-the-clock time for traveling repairmen. Reviewed and analyzed employment history files, time and travel records, job site records, compensation data, and other documents to determine the proper employee compensation and to quantify damages.

- Expert witness for plaintiff in a loss of business  income case. Determined the loss that resulted from the failure to plant corn silage, based on the insurance agent's direction, on land that had previously flooded.

- Accounting consultant for the insured in a large business interruption case involving a nut processing plant. The case went to appraisal upon which each element of loss was unanimously decided in favor of client in excess of $1 million dollars.

- Accounting consultant for an insurance company to investigate a theft at the insured's nut processing plant. Analysis included documenting the accounting and physical controls surrounding inventory and

# SUSAN K. THOMPSON, CPA/CFF

## Selected Experience continued

- Accounting consultant for a large insurance company in a suspected fraudulent claim of a nut processing plant. Based upon analysis performed, including following transactions through the perpetual inventory system, the receiving and shipping processes, the claim was denied and further action was taken against the insured.

- Performs analysis of Trust Accountings in disputed matters. Has worked in matters where over 10 years of Trust Accounting had to be tested and analyzed for propriety, including analysis of related parties who had financial interactions with the Trust.

- Expert witness for the plaintiff, a nut processor. Calculated damages in a breach of contract dispute, ultimately determining the lost contribution margin due to the breach. Plaintiff was awarded damages according to testimony.

- Accounting consultant to the plaintiff, a nut grower, against their nut processor for suspected fraudulent accounting practices. Analysis included assessing reasonable processing costs, allocation of fixed and variable costs and analysis of third party transactions. The analysis lead to successful settlement in favor of the plaintiff before trial.

- Served as a neutral in an insurance appraisal hearing involving lost profits of a fast food restaurant.

- Performs internal control reviews for not for profit as well as for profit businesses.

- Accounting consultant on behalf of the insurance company to assist in quantifying the losses of their insured's due to Class 1 food recalls, both domestically and internationally. This included interacting with the insured's customers and  following the recalled product through all processors up to the point it is sold to the end consumer. Losses included raw product, work in progress and finished goods. The results of the analysis were used by counsel and the insured to settle claims. Assistance was provided in the  settlement process as well.

- Accounting consultant to many of the larger property and casualty insurance companies in California in assessing claims for loss of earnings, loss of inventory stock and loss of other business assets in agricultural, retail, food services and construction.

- Accounting consultant in several insurance fraud cases on behalf of the insurance company and/or the legal counsel assisting the insurance company. Duties included tracing money in money laundering schemes, providing financial status information for businesses or individuals, determining probable asset/inventory on hand, analysis and interpretation of accounting records and internal control structures, as well as analyzing various financial transactions.

- Accounting consultant in a large insurance fraud case. Worked with investigators from the Federal Bureau of Investigation and the District Attorney of Fresno's office in tracing funds through several bank accounts of several businesses.

# SUSAN K. THOMPSON, CPA/CFF

## Selected Experience continued

- Assisted attorneys in preparation for depositions, in various stages of litigation and in anticipation of litigation. Prepared exhibits and related write-up work for trial. Typical services included calculations of damages and loss of earnings, analysis and interpretation of accounting records, and analysis of internal controls in industries including agricultural, professional services, retail, food services, construction, automobile dealerships, governmental entities, and real estate development.

- Provided expert witness testimony in cases involving personal injury and wrongful termination and resulting lost wages/damages.

- Provided expert witness testimony in a criminal matter involving real estate fraud. Our involvement included tracing investor funds over several years through several bank accounts and various businesses.

- Assisted a general contractor and a California city in mediation proceedings by calculating damages and resulting lost profits to lessees which was relied upon by all parties involved.

- Provides damage calculations and expert testimony in class action lawsuits.

# EXHIBIT B

**In re: Hyundai and Kia Engine Litigation**
**Exhibit B**
**List of Information Considered**

**Documents Considered:**
Settlement Agreement; Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 (Exhibit C)
Declaration of Adam Gonnelli In Support of Final Approval of Class Settlement (Exhibit D)
Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement (E )
Declaration of Alan Dow Regarding Knock Sensor Detection System ("KSDS") (Exhbit F)
HMF - Hyundai Protection Plan: https://www.hmfusa.com/hpp-mechanical- Coverage  (Exhibit G)
Protection_Plans_Kia-distiction (Exhibit H)
Screen Shots of Average Replacement Costs (Exhibit I)

# EXHIBIT C

# SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into as of this 10th day of October, 2019, by and between Plaintiffs Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse (the "Plaintiffs" or "Class Representatives"), individually and as representatives of the Class defined below, and Defendants Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), Kia Motors Corporation ("KMC") and Kia Motors America ("KMA") (collectively the "Parties").

WHEREAS, Plaintiffs Centko and Lazar filed the proposed nationwide class action lawsuit *Centko and Lazar v. Kia Motors America, Inc.*, No. 8:17-cv-00838 (C.D. Cal.) on May 10, 2017; Plaintiffs Stanczak and Creps filed the proposed nationwide class action lawsuit *Stanczak and Creps v. Kia Motors America, Inc. et al.,* No. 8:17-cv-1365 (C.D. Cal.) on August 8, 2017; Plaintiffs Kinnick and Coats filed the proposed nationwide class action lawsuit *Kinnick and Coats v. Hyundai Motor Company, et al*., No. 8:17-cv-02208 (C.D. Cal.) on December 19, 2017; Plaintiff Brogan filed the proposed nationwide class action lawsuit *Brogan v. Hyundai Motor America, et al.*, No. 8:17-cv-00622 (C.D. Cal) on January 23, 2018; and Plaintiff Smolek filed the proposed nationwide class action lawsuit *Smolek v. Hyundai Motor America, et al.*, No. 2:18-cv-05255 (C.D. Cal.) on April 16, 2018;

WHEREAS, on August 7, 2018, the Court ordered these cases consolidated as *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.);

WHEREAS, these cases arise from Plaintiffs' allegations that certain Kia and Hyundai vehicles equipped with Theta II 2.0-liter and 2.4-liter gasoline direct injection engines were manufactured, marketed, sold, and leased with an engine defect that can result in sudden engine seizure, engine failure and/or engine fire;

WHEREAS, HMA, HMC, KMC and KMA deny Plaintiffs' allegations, deny all liability and culpability, and maintain that they have meritorious defenses;

WHEREAS, following consolidation of the cases, counsel for the Parties met and conferred several times, including with an engineering representative from HMA, HMC, KMC and KMA present, regarding Plaintiffs' allegations, HMA's, HMC's, KMC's and KMA's defenses, and potential resolution of the litigation;

WHEREAS, as part of these discussions, and in the context of a potential classwide resolution, HMA, HMC, KMC and KMA informed plaintiffs they planned to conduct a product improvement campaign of some of the vehicles at issue in these actions, in accordance with procedures reviewed by the National Highway Traffic Safety Administration;

WHEREAS, Defendants in *In re: Hyundai and Kia Engine Litigation* moved to dismiss the claims of the plaintiffs on September 4, 2018, and plaintiffs opposed the motion October 9, 2018;

WHEREAS, on December 14, 2018, Plaintiffs Fockler, House, Loomis, Miller, Moore, Rice, and Smith, along with other plaintiffs not subject to this Settlement (defined below), filed the proposed nationwide class action lawsuit *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.), alleging similar claims to those in *In re: Hyundai and Kia Engine Litigation*; *Flaherty* was amended twice, on January 10, 2019, and May 1, 2019, to add Plaintiffs Dickerson, McCallister, Montoya, Franklin, North, Schmitt, and Stackhouse, along with other plaintiffs not subject to this Settlement;

WHEREAS, Defendants and the Plaintiffs in *In re: Hyundai and Kia Engine Litigation* mediated on December 21, 2018, with the assistance of Hon. Ronald M. Sabraw (Ret.) of JAMS, at which time they reached a settlement in principle to resolve the class allegations, subject only to Hyundai and Kia management approval;

WHEREAS, the Parties, including counsel in *Flaherty,* continued settlement discussions over the next several months, resulting in certain modifications and enhancements to the proposed settlement;

WHEREAS, the Parties have continued to negotiate the final portions of this Settlement Agreement including fees and administrative matters;

WHEREAS, Class Counsel (defined below) have investigated the facts and law relating to Plaintiffs' claims and HMA's, HMC's, KMC's and KMA's defenses, and have concluded that a settlement with HMA, HMC, KMC and KMA according to the terms set forth below is in the best interests of Plaintiffs and the Class;

WHEREAS, despite their denial of any liability or culpability and their belief that they have meritorious defenses to the claims alleged, HMA, HMC, KMC and KMA nevertheless decided to enter into the Settlement described herein as a benefit to their customers and to avoid further litigation;

WHEREAS, Plaintiffs have and will continue to take reasonable confirmatory discovery, including deposition(s) of a corporate designee(s), to the extent that additional information is reasonably required to support the terms of the Settlement Agreement. Any such discovery shall be subject to limitations negotiated by Class Counsel and HMA's, HMC's, KMC's and KMA's counsel.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and intending to be legally bound, it is agreed by and among the undersigned that this Action be settled, compromised, and judgment entered on the terms and conditions set forth below.

## I.   DEFINITIONS

### A.   "Action"

"Action" refers to the consolidated litigation titled *In re: Hyundai and Kia Engine Litigation,* No. 8:17-cv-00838 (C.D. Cal.), inclusive of the underlying cases that were consolidated, and the claims of Plaintiffs Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, Chris Stackhouse and Class members from *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.). *Flaherty* is not settled in its entirety, and the claims of *Flaherty*'s named plaintiffs and putative class members not explicitly named, identified, or encompassed in this Settlement Agreement are subject to ongoing litigation.

### B.   "Claim"

A "Claim" is a request for reimbursement under this Settlement.

### C.   "Claimant"

"Claimant" is a Class member or other person or entity eligible to make a Claim pursuant to this Settlement Agreement (*e.g.*, a subsequent purchaser of a Class Vehicle under the terms of the Lifetime Warranty, described in Section II).

### D.    "Claim Form"

"Claim Form" refers to a form used to make a Claim under this Settlement, substantially in the form attached hereto as Exhibit B.

### E.   "Settlement Class" or "Class"

"Settlement Class" or "Class" refers to:

*All owners and lessees of a Class Vehicle who purchased or leased a Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories and/or abroad.*

Excluded from the claims of the Class (and not released by this Settlement) are all claims for death, personal injury, property damage (other than damage to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation. Also excluded from the Class are HMA, HMC, KMC and KMA; any affiliate, parent, or subsidiary of HMA, HMC, KMC or KMA; any entity in which HMA, HMC, KMC or KMA has a controlling interest; any officer, director, or employee of HMA, HMC, KMC or KMA; any successor or assign of HMA, HMC, KMC or KMA; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (c) individuals and/or entities who validly and timely opt-out of the settlement; (d) consumers or businesses that have purchased Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means); and (e) current or former owners of a Class Vehicles that previously released their claims in an individual settlement with HMA, HMC, KMC and KMA with respect to the issues raised the Action (for the purpose of clarity, individual owners of 2011-2014 Hyundai Sonatas who released claims against HMA and HMC in the settlement reached in *Mendoza v. Hyundai Motor Company Ltd., et. al.*, Case No. 15-cv-01685-BLF (C.D. Cal.) are not excluded from the claims of the Class).

**F.     "Class Counsel"**

"Class Counsel" means Matthew D. Schelkopf of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, and Bonner Walsh of Walsh PLLC, as per the Order of Judge Staton of June 16, 2018 in *In re: Hyundai and Kia Engine Litigation* (Dkt. 80), and also Steve Berman of Hagens Berman Sobol Shapiro LLP.

**G.     "Class Vehicles"**

"Class Vehicles" refer to all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Hyundai Sonata vehicles, all 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Hyundai Santa Fe Sport vehicles, all 2014, 2015, 2018, and certain 2019 model year Hyundai Tucson vehicles, all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and certain 2019 model year Kia Optima vehicles, all 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and

certain 2019 model year Kia Sorento vehicles, and all 2011, 2012, 2013, 2014, 2015, 2016, 2017,
2018, and certain 2019 model year Kia Sportage vehicles, originally equipped with or replaced
with a genuine Theta II 2.0 liter or 2.4 liter gasoline direct injection engine within OEM
specifications, that were purchased or leased in the United States, excluding the territories, and
including those that may have been purchased while the owner was abroad on active U.S.
military duty.  For 2019 model year vehicles listed above, the Class shall include those vehicles
that were manufactured before the Knock Sensor Detection System technology described in this
agreement was incorporated into their production.

    **H.**    **"Court"**

"Court" means the United States District Court for the Central District of California.

    **I.**    **"Effective Date"**

"Effective Date" means the first date after the Court's entry of final approval ("Final
Approval Order") and entry of Judgment is entered, if no appeal is timely filed or if no motion to
extend the time for filing an appeal has been filed.  If there is an appeal, the Effective Date of
Settlement shall be the date on which all appellate rights with respect to the Final Approval
Order and Judgement in the Action have expired or been exhausted in such a manner as to render
the Final Approval Order and Judgment non-appealable.

    **J.**    **"Exceptional Neglect"**

"Exceptional Neglect" means (a) when the vehicle clearly evidences a lack of
maintenance or care for a significant period of time of not less than one (1) year, such that the
vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance
was due to a Loss Event; or (b) failure of a Settlement Class member to have the KSDS ("Knock
Sensor Detection Software") installed pursuant to the KSDS Product Improvement Campaign by
a Hyundai or Kia dealer within 60 days of the Notice Date, or within 60 days of the mailing of
the KSDS campaign notice, whichever is later.  Diagnostic costs associated with establishing
Exceptional Neglect will be borne by Defendants.

    **K.**    **"Fairness Hearing" and/or "Final Approval Hearing"**

"Fairness Hearing" and/or "Final Approval Hearing" means the final hearing to be
conducted by the Court on such date as the Court may order to determine the fairness, adequacy,
and reasonableness of the Settlement in accordance with applicable jurisprudence, to be held
after notice has been provided to the Settlement Class in accordance with this Settlement, and

where the Court will: (a) determine whether to grant final approval to the certification of the Settlement Class; (b) determine whether to designate Plaintiffs as the representatives of the Settlement Class; (c) determine whether to designate Class Counsel as counsel for the Settlement Class; (d) determine whether to grant final approval to the Settlement; (e) rule on Class Counsel's Application for a Fee and Expense Award; (f) rule on Class Representatives' Application for Class Representative Service Awards;  and (g) consider whether to enter the Final Approval Order.

**L.      "Knock Sensor Detection Software"**

"Knock Sensor Detection Software" (or "KSDS") refers to the engine monitoring technology developed by Defendants that, with software innovations, leverages existing hardware on the subject Class Vehicles to continuously monitor engine performance for symptoms that may precede engine failure and that is being offered as a software update to Class members free of charge pursuant to the product improvement campaigns referenced herein.

**M.      "Lifetime Warranty"**

"Lifetime Warranty" refers to the extension of the existing Powertrain Warranty to cover the short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, in those Class Vehicles owned by individual consumers that have completed the KSDS update in connection with Defendants' now-ongoing product improvement campaigns described herein.  The Lifetime Warranty shall also apply to any damage caused to the long block assembly due to connecting rod bearing failure.   With the exception of cases of Exceptional Neglect and subject to the existing terms, limitations, and condition of the Class Vehicles' original Powertrain Warranty, the Lifetime Warranty shall otherwise endure irrespective of the Class Vehicle's mileage or duration of ownership.  The Lifetime Warranty shall not apply or be available to commercial entities such as used car dealers, franchisees, or automobile auction houses.  For Class Vehicles that may otherwise need a new engine pursuant to this warranty at or above 150,000 miles and more than eight (8) years from the original in-service date, Defendants shall have the option, in lieu of replacing the engine under warranty, to either, at the vehicle owner's election, (i) repurchase the vehicle at Bluebook value (very good/private party) or (ii) pay the owner $2,000.00 in lieu of an engine replacement, provided that the owner has installed the KSDS, and which payment will require that the owner agree in writing to assume all risk going forward and to void the vehicle's remaining Lifetime Warranty.

**N.    "Long Form Notice"**

"Long Form Notice" refers to the notice to be sent to the Class as detailed below, substantially in the same form as Exhibit A.

**O.    "Loss Event"**

"Loss Event" means any Class Vehicle incident that would have led to a Qualifying Repair (including, but not limited to, an engine fire) but either the cost of the repair was too great or other circumstances led the Class member to dispose of the Class Vehicle at a loss.  This includes events in which there was insurance coverage, but where the Class member was still not made whole by such insurance payments.

**P.    "Notice Date"**

"Notice Date" refers to the date 90 days after the Court enters an order preliminarily approving this Settlement.

**Q.    "Pamphlet"**

"Pamphlet" refers to the separate, color-printed document that will be provided after the Effective Date, substantially in the same form as attached as Exhibit C.  The Pamphlet shall be designed to be kept with the owner's manual for Class Vehicles.  The Pamphlet shall (i) prominently warn of the risk that Class Vehicles may suffer engine stalling while driving, (ii) list all warning signs known by HMA and HMC (for Hyundai Class Vehicles) and KMA and KMC (for Kia Class Vehicles) that potentially precede such an engine seizure or stall, such as engine knocking and illumination of the Class Vehicle's oil lamp; (iii) recommend that any Class member who has not already done so, should promptly present their Class Vehicle to an authorized Hyundai or Kia dealership (as appropriate depending on the vehicle) for a free inspection and, if appropriate, repair; (iv) describe the warranty and reimbursement benefits provided by this Settlement; and (v) describe HMA's, HMC's, KMC's or KMA's (as the case may be) product improvement campaign for the Class Vehicles, including the free knock sensor detection software update.

**R.    "Parties"**

"Parties" (or "Party" individually) means Plaintiffs and Defendants.

**S.    "Plaintiffs' Counsel"**

"Plaintiffs' Counsel" (as distinct from "Class Counsel") means Matthew D. Schelkopf of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, Bonner Walsh of Walsh PLLC,

Daniel C. Levin and Adam B. Cohen of Levin Sadran and Berman LLP, Jason S. Rathod, Nicholas Migliaccio, and Esfand Nafisi of Migliaccio & Rathod LLP, Steve Berman and Christopher Pitoun of Hagens Berman Sobol Shapiro LLP, and Robert Hilliard of Hilliard Muñoz Gonzales LLP.

**T.    "Preliminary Approval Order"**

"Preliminary Approval Order" means the proposed order to accompany the motion for preliminary approval, substantially in the form attached hereto as Exhibit D.

**U.    "Proof of Loss Event"**

"Proof of Loss Event" means the original or a copy of any document(s) generated pertaining to the loss that was incurred.

**V.    "Proof of Repair Expense"**

"Proof of Repair Expense" means the original or a copy of any document(s) generated at or around the time expense was incurred for a Qualifying Repair that identifies the Qualifying Repair's nature, date performed, and cost incurred by the Class member for the Qualifying Repair.  For Class members who had the Qualifying Repair performed at a Hyundai or Kia dealership, the cost incurred by the Class member for the Qualifying Repair shall be substantiated as set forth in Section II.C.3.

**W.    "Proof of Repair-Related Expense"**

"Proof of Repair-Related Expense" means the original or a copy of any document(s) generated at or around the time that expense was incurred for a rental car, towing service, or other out-of-pocket expense in direct conjunction with obtaining a Qualifying Repair, and which identifies the nature of the expense, the date the cost was incurred, and the dollar amount.

**X.    "Qualifying Repair"**

"Qualifying Repair" refers to any type of repair, replacement, diagnosis, or inspection of the Class Vehicle short block assembly consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, due to a connecting rod bearing failure or symptoms associated with connecting rod bearing failure, but excluding Exceptional Neglect.  Diagnostic costs associated with establishing Exceptional Neglect will be borne by Defendants.  For purposes of reimbursement of repairs that occurred before the Class member received notice of this Settlement, "Qualifying Repair" also includes any other Class Vehicle components, including but not limited to the Class Vehicle long block (and the long block's components),

battery, or starter, provided that the corresponding Proof of Repair Expense reflects that the work was conducted in an attempt to address engine seizure, engine stall, engine noise, engine compartment fire, illumination of the oil lamp, or otherwise repair mechanical or cosmetic damage to the Class Vehicle that are the natural and probable consequence of a connecting rod bearing failure or symptoms associated with connecting rod bearing failure, but excluding Exceptional Neglect, except for any repairs for which the Proof of Repair Expense reflects that the repairs were plainly unrelated to the engine short block assembly issues (for example, a stall caused by a fuel pump, oxygen sensor, or the electrical system). Any repairs or replacement of a Class Vehicle oil filter in an attempt to address engine seizure, engine stall, engine noise, or illumination of the oil lamp, caused by a connecting rod bearing failure, but excluding Exceptional Neglect, will be presumed to be included within the definition of a Qualifying Repair. Nothing in this definition shall require HMA, HMC, KMC or KMA to provide repairs caused by a collision involving a Class Vehicle, unless such collision is directly caused by a Class Vehicle failure otherwise subject to a Qualifying Repair, such as an engine fire.

Y.     **"Releasees"**

"Releasee[s]" shall refer jointly and severally, individually and collectively to entities that marketed the Class Vehicles, entities that designed, developed, and/or disseminated advertisements for the Class Vehicles, HMA, Hyundai America Technical Center, Inc. (also doing business as Hyundai-Kia America Technical Center), HMC, KMA, KMC, all affiliates of the Hyundai Motor Group, and each of their respective future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, dealers, distributors, agents, principals, suppliers, vendors, issuers, licensees, and joint ventures, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by, or under common control with a Releasee.

Z.     **"Releasors"**

"Releasor[s]" shall refer jointly and severally, individually and collectively to the Class Representatives, the Class members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their

respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

**AA.    "Settlement"**

"Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are as set forth in this Settlement Agreement and attached exhibits.

**BB.    "Settlement Administrator" or "Claims Administrator"**

"Settlement Administrator" or "Claims Administrator" means Defendants or their administrators selected to administer the Settlement and approved by the Court.

Capitalized terms in this Settlement Agreement not defined in this section shall have the meanings ascribed to them elsewhere in this Agreement.

## II.    SETTLEMENT CONSIDERATION

In consideration for the Settlement, entry of judgment, and dismissal, and for the mutual release provided herein, HMA and KMA agree to provide the following consideration to the Class:

**A.    Lifetime Warranty Coverage For Engine Short Block**

1.    Effective beginning on the Notice Date, HMA and KMA shall extend and sustain into full effect the Lifetime Warranty for all eligible Class Vehicles.

2.    For the 90-day period immediately following the Notice Date, all Class Vehicles that have not received a recall inspection under at least one of the campaigns referenced below will be eligible under the Lifetime Warranty for free inspections and, as needed on a vehicle-by-vehicle basis, short block assembly repairs, irrespective of the Class Vehicles' mileage, duration of ownership, or prior repairs.

3.    The Lifetime Warranty shall cover all costs associated with inspections and repairs including, without limitation, the costs associated with replacement parts, labor, diagnoses, and mechanical or cosmetic damage to the Class Vehicle caused by the engine malfunction (*e.g.,* engine failure or fire).

4.      Notwithstanding any provision(s) to the contrary in any express warranty provided by HMA or KMA in conjunction with the sale or lease of Class Vehicles, the Lifetime Warranty shall persist in its full duration regardless of any transfer in ownership or lease of a Class Vehicle.

5.      In conjunction with any Qualifying Repair, HMA (for Class members who own(ed) or leas(ed) Hyundai Class Vehicles, *i.e.* "Hyundai Class members") and KMA (for Class members who own(ed) or leas(ed) Kia Class Vehicles, *i.e.* "Kia Class members") shall, through authorized Hyundai or Kia dealerships, provide a comparable class of loaner vehicle, as may be available at a dealer location, at no cost if requested.  To the extent no loaner vehicle is reasonably available through HMA's or KMA's authorized Hyundai or Kia dealerships at the time of the request, HMA and KMA will provide reimbursement of reasonable rental car expenses up to $40 per day until engine replacement or repair is completed and submitted pursuant to section II.D.1.  No Lifetime Warranty inspections or repairs shall be denied for a Class Vehicle on the grounds that the Qualifying Repair was necessitated by the owner or lessor failing to properly service or maintain the vehicle, except in instances of Exceptional Neglect. Upon request, HMA (for Hyundai Class members) and KMA (for Kia Class members) will reasonably promptly furnish a list of all such cases of Exceptional Neglect, if any, to Class Counsel.  This Settlement shall not be construed as obligating HMA, KMA, or their dealerships to repair engines or provide new engines under the Lifetime Warranty, or provide any other compensation or reimbursement for otherwise inoperative vehicles (*e.g.*, branded, salvage, or junkyard vehicles not otherwise roadworthy) unless such inoperability is directly caused by a Class Vehicle failure originating from a connecting rod bearing failure and otherwise subject to a Qualifying Repair, such as an engine fire.

6.      Class members shall not be required to present the Long Form Notice, Pamphlet, Claim Form, or any other Settlement-related document in order to receive Lifetime Warranty inspections or repairs at an authorized Hyundai or Kia dealership. Class members are suggested to retain all vehicle maintenance records after the Notice Date, and may be required to provide records for vehicle maintenance performed after the Notice Date to receive Lifetime Warranty repairs.

7.      All rights otherwise available to owners and lessees under preexisting warranties will continue to remain available to Class members notwithstanding the implementation of this

Settlement.  Nothing in this Settlement will be construed as diminishing or otherwise affecting any express or implied warranty, duty, or contractual obligation of HMA or KMA in connection with Class Vehicles.

8.      HMA and KMA may implement or continue to implement any additional customer satisfaction or goodwill policy, program, or procedure at their discretion, and may extend goodwill consideration to individual Class members on a case-by-case basis, without regard to their entitlement to relief under the Settlement.  No such goodwill decision by HMA or KMA, however, shall act to deprive a Class member or Claimant of the benefits available under the Settlement.

9.      Any dispute concerning coverage under the Lifetime Warranty shall be resolved through a Better Business Bureau ("BBB") administered alternative dispute resolution process. The Claimant must provide written notice to HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) requesting alternative dispute resolution.  After receipt of the written notice, HMA or KMA shall be permitted a 30-day good faith period in which HMA or KMA can confer with the Class member in an attempt to resolve the claim.  If the claim cannot be resolved during this period, Claimant shall initiate a BBB administered alternative dispute resolution process. Class Counsel shall be notified of—through monthly reports provided by HMA--and have the right to participate in any such process.  Class Counsel, however, shall not be obligated to participate.  The BBB administered alternative dispute resolution fees and expenses shall be borne by HMA or KMA (as the case may be) unless the mediator or arbitrator finds that the Claimant's claims were brought in bad faith.  HMA and KMA will not bear the costs of the Claimant's attorneys' fees by Class Counsel or other counsel selected by the Claimant, if any.

10.     As set out in the Long Form Notice, any repairs performed pursuant to the Lifetime Warranty before the notice date shall preclude the Class members who received such repairs from opting out of the Class.  For sake of clarity, a class member who received a lifetime warranty under a previous KMA recall is not precluded from opting out of this Settlement.

**B.      Recall and Product Improvements**

1.      HMA acknowledges that the consideration provided in conjunction with its voluntary safety recall of certain model year 2011 and 2012 Sonata vehicles in or about September 2015 (NHTSA Campaign Number 15V-568) and its voluntary safety recall of certain model year 2013 and 2014 Hyundai Sonata and Santa Fe Sport vehicles in or about March 2017

(NHTSA Campaign Number 17V226), represent part of the consideration to the Class in exchange for the settlement in this Action.

2.       HMA and KMA acknowledge that in December 2018 and January 2019, they issued a subsequent recall of the same vehicles identified in the paragraph above to inspect and confirm proper reinstallation of the fuel tube in order to address car engines at risk of fire (NHTSA Campaign number 18V934000 as to HMA; NHTSA Campaign Number 18V907000 as to KMA).  HMA and KMA further acknowledge that, as required by existing law, they are each conducting the voluntary recalls in accordance with NHTSA mandates.

3.       HMA and KMA acknowledge that by January 2019, they each had initiated product improvement campaigns in which knock sensor detection technology could be added through a free software update to the Class Vehicles.

4.       HMA and KMA acknowledge that Class Counsel sought relief for some of the Class Vehicles subject to this agreement before any NHTSA inquiry or recall.  As a result, recalls were issued for more than 227,000 Class Vehicles.

## C.       Repair Reimbursements

1.       To the extent any Claimant, before receiving notice of this Settlement, obtained a Qualifying Repair for a Class Vehicle, the Claimant will be entitled to full reimbursement by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of any and all such expenses incurred for the Qualifying Repair, regardless of whether the Claimant was an original owner, lessee or subsequent purchaser or whether (for Class members with 2013 and 2014 Hyundai Sonata and Santa Fe Sport vehicles and 2011, 2012, 2013, and 2014 Kia Optima, Sorento, or Sportage vehicles) the Qualifying Repair was completed before or after receiving notification of NHTSA Campaign Numbers 17-V226 and 17-V224 unless the Claimant was previously reimbursed for any and all such expenses incurred, provided that:

a.       A Claim is submitted no later than 90 days after the Notice Date;

b.       The Claim contains a completed Claim Form;

c.       The Claim contains a Proof of Repair Expense incurred by the Claimant; and

d.       The Proof of Repair Expense reflects that the work was conducted in an attempt to address a Qualifying Repair.

2.      Class members who were also members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF (C.D. Cal.) class population) are also eligible for repair reimbursements under the terms of this section for Qualifying Repairs that arose after the claims period expired under the terms of that settlement.

3.      For Claims submitted for reimbursement for Qualifying Repairs performed at authorized Hyundai or Kia dealerships, HMA (for Hyundai Class Vehicles) and KMA (for Kia Class Vehicles) shall take all reasonably available steps to acquire from the dealership the information reasonably necessary to approve the Claim—namely, the date, nature, and cost charged for the Qualifying Repair. In connection with entering into this Settlement, HMA (for Hyundai Class Vehicles) and KMA (for Kia Class Vehicles) acknowledge and represent that they should be able to acquire that information in many instances, except for proof that cost for the Qualifying Repair was paid by the Claimant. Claimants shall substantiate the cost for the Qualifying Repair that they paid in a manner consistent with the method of payment the Claimant used.

4.      Claimants who paid for the Qualifying Repair with a credit card shall substantiate the cost for the Qualifying Repair that they paid with a repair receipt from the dealership showing their payment, a credit card receipt from the dealership, or a credit card statement showing a payment to the dealership.  Claimants who paid for the Qualifying Repair with a debit card or check shall substantiate the cost for the Qualifying Repair with a repair receipt from the dealership showing their payment, debit card receipt from the dealership, cleared check showing their payment to the dealership, or a bank statement showing a payment to the dealership. Claimants who paid for the Qualifying Repair with cash shall substantiate the cost for the Qualifying Repair with a repair receipt from the dealership showing their payment, or if they do not have such a repair receipt, the Claimant shall attest under penalty of perjury that they do not have a repair receipt from the dealership showing their payment and as to the specific dollar amount they paid in cash to the dealership.

5.      Consistent with the above provisions, repair reimbursements shall be provided irrespective of whether Qualifying Repairs were incurred at an authorized Hyundai or Kia dealership or elsewhere.

6.      Except in instances of Exceptional Neglect, reimbursements shall be provided to Claimants even if warranty coverage was initially denied for the Qualifying Repair on the

grounds that it was necessitated by a failure to properly service or maintain the vehicle. Customers who presented to a Hyundai or Kia dealership, were denied an in-warranty repair prior to receiving notice of this Settlement, and obtained their Qualifying Repair elsewhere, are entitled to claim an additional $140 goodwill payment.

7.     Claimants previously reimbursed in full or in part for the expense incurred in connection with a Qualifying Repair (*e.g.*, through an HMA, KMA, or dealership goodwill payment) shall not be entitled to a reimbursement under this Settlement for that portion of the expense for which they have already been reimbursed. Instead, they will be entitled to only that amount to fully reimburse them for a Qualifying Repair, if any.

**D.     Other Repair-Related Reimbursements**

1.     To the extent any Claimant incurs expenses, such as for a rental car or towing service, or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair for a Class Vehicle, the Claimant shall be entitled to full reimbursement of any towing expenses or other out-of-pocket expense reasonably related to obtaining a Qualifying Repair, and up to $40 per day for rental car expenses if a loaner vehicle was not originally provided by HMA or KMA provided that:

      a.     A Claim is submitted within 90 days after the later of (i) the Notice Date, (ii) the date on which the expense is incurred, or (iii) the date the expense is paid;

      b.     The Claim contains a completed Claim Form;

      c.     The Claim contains a Proof of Repair-Related Expense; and

      d.     The Claim contains a Proof of Repair Expense that reflects a Qualifying Repair performed within 30 days of the incurred rental car or towing expense.

2.     With respect to the reimbursements available pursuant to the above paragraph, Claimants shall not be entitled to receive compensation apart from their out-of-pocket costs incurred.  For example, the above paragraph shall not entitle Claimants to lost wages allegedly incurred due to an inability to get to or from a place of employment or to recover other forms of consequential damages.

3.     Claimants previously reimbursed in full or in part for rental car or towing expenses following an engine seizure, engine stall, engine noise, engine compartment fire, or

illumination of the oil lamp diagnosed as requiring repair of the engine (*e.g.,* through an HMA, KMA, or dealership goodwill payment) shall not be entitled to a reimbursement under this Settlement for that portion of the expense for which they have already been reimbursed.

### E.   Inconvenience Due to Repair Delays

1.      To the extent any Claimant is or was inconvenienced by prolonged delays (exceeding 60 days) obtaining any Qualifying Repair from an authorized Hyundai or Kia dealership, the Claimant shall be entitled to a goodwill payment based on the length of the delay provided that:

         a.      A Claim is submitted within 90 days after the later of (i) the Notice Date, or (ii) the date on which the repair is completed;

         b.      The Claim contains a statement under oath by the Claimant attesting that he or she felt inconvenienced by the delay;

         c.      The Claim specifies the number of days the repair was delayed and provides supporting documentation.

2.      The goodwill payment will be calculated as follows: $50 for delays lasting between 61 and 90 days, and $25 for each additional 30-day period of delay or fraction thereof (*e.g.*, a Class member may receive $50 for delays lasting 61-90 days, $75 for delays lasting 91-120 days, etc.).

3.      A Class member may elect to receive his or compensation in the form of a dealer service card valued at 150% of the amount that would otherwise be paid under this provision as a cash debit card.  The dealer service debit card may only be used at any authorized Hyundai dealer (for Hyundai Class Vehicles) or any authorized Kia dealer (for Kia Class Vehicles) in payment towards any merchandise, parts, or service.

4.      Class members who were also members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF (C.D. Cal.) class population) are also eligible for compensation for the inconvenience of delayed repairs under the terms of this section in connection with Qualifying Repairs that arose after the claims period expired under the terms of that settlement.

5.      Claimants that have already received a goodwill payment by HMA, KMA, or any authorized Hyundai or Kia dealerships for any delay due to a Qualifying Repair will be ineligible for this inconvenience payment.

### F.   Loss of Value for Sold or Traded-In Vehicles due to a Loss Event

1.     Claimants who before notice of this Settlement experienced a Loss Event may recover for the loss.  Those Claimants who: (i) had a Class Vehicle experience an engine seizure, engine stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring repair of the engine block, and (ii) sold or traded-in the Class Vehicle without first procuring the recommended repair, will be entitled to reimbursement by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the baseline Black Book value (*i.e.,* wholesale used vehicle value) of the sold or traded-in Class Vehicle plus $140.00 at the time of loss minus actual amount received from the sale or trade-in provided that:

  a.     A Claim is submitted no later than 90 days after the Notice Date;

  b.     The Claim contains a completed Claim Form; and

  c.     The Claim contains a proof of sale or trade-in and value received for sale or trade-in as well as any additional Proof of Loss Event.

2.     A Claimant's maintenance history or lack thereof before the repair diagnosis (except limited Exceptional Neglect circumstances), shall not be a basis for denying or limiting compensation under this section.  The notice, cure, and arbitration provisions of Section III shall apply and be available to Claimants who notify HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of their circumstances under this section.

3.     To the extent a Claimant contends that the actual damages incurred exceed the reimbursement amount as provided in this section, the Claimant must provide written notice to HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) requesting alternative dispute resolution.  After receipt of the written notice, HMA and KMA shall be permitted a 30-day good faith period in which HMA or KMA can confer with the Claimant in an attempt to resolve the claim.  If the claim cannot be resolved during this period, Claimant shall initiate a BBB administered alternative dispute resolution process.  The mediator or arbitrator shall have the ability to make the final determination regarding the amount to be paid to any Claimant who elects this process.  Class Counsel shall be notified of—through monthly reports provided by HMA or KMA—and have the right to participate in any such process.  Class Counsel, however, shall not be obligated to participate.  The BBB administered alternative dispute resolution fees and expenses shall be borne by HMA or KMA (as the case may be) unless the mediator or arbitrator finds that the Claimant's claims were brought in bad faith.  HMA and KMA will not

bear the costs of Claimant's attorneys' fees by Class Counsel or other counsel selected by the Claimant, if any.

4.      Class members who were also members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF (C.D. Cal.) class population) are also eligible for compensation under the terms of this section for Loss Events that arose after the claims period expired under the terms of that settlement.

5.      Claimants previously reimbursed in full or in part in connection with a sale or trade-in following an engine seizure, engine stall, engine noise, engine compartment fire, engine compartment fire, or illumination of the oil lamp, caused by a connecting rod bearing failure or symptoms associated with connecting rod bearing failure, but excluding Exceptional Neglect, diagnosed as requiring repair of the engine (*e.g.,* through an HMA, KMA, or dealership goodwill payment) shall not be entitled to a reimbursement under this Settlement for that portion of the expense for which they have already been reimbursed.  It shall be Defendants' burden to establish that any prior reimbursements were directly related to a connecting rod bearing failure or symptom.

   **G.      Loss of Vehicle By Engine Fire**

1.      To the extent any Claimant suffers a loss of vehicle by engine fire directly caused by the Class Vehicle's failure arising from a vehicle condition that would have otherwise been addressed by a Qualifying Repair, the Claimant will be entitled to payment by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the maximum Black Book value (*i.e.,* private party/very good) of the Class Vehicle at the time of loss minus actual value received (if any) plus an additional $140 goodwill payment provided that:

   a.      A Claim is submitted no later than 90 days after the Notice Date or, for losses incurred after the Notice Date, no later than 90 days after the engine compartment fire occurred;

   b.      The Claim contains a completed Claim Form;

   c.      The Claimant submits Proof of Loss Event for the Class Vehicle; and

   d.      The Claim contains documentation establishing that the fire originated from the engine compartment and was unrelated to any sort of collision.

2.      To the extent a Claimant contends that the actual damages incurred exceed the total reimbursement amount as provided in this section, the Claimant must provide written notice

to HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) requesting alternative dispute resolution.  After receipt of the written notice, HMA and KMA shall be permitted a 30-day good faith period in which HMA or KMA can confer with the Claimant in an attempt to resolve the claim.  If the claim cannot be resolved during this period, Claimant shall initiate a BBB administered alternative dispute resolution process.  The mediator or arbitrator shall have the ability to make the final determination regarding the amount to be paid to any Class member who elects this process.  Class Counsel shall be notified of—through monthly reports provided by HMA or KMA—and have the right to participate in any such process.  Class Counsel, however, shall not be obligated to participate.  The BBB administered alternative dispute resolution fees and expenses shall be borne by HMA or KMA (as the case may be) unless the mediator or arbitrator finds that the Claimant's claims were brought in bad faith.  HMA and KMA will not bear the costs of Claimant's attorneys' fees by Class Counsel or other counsel selected by the Claimant, if any.

3.      Any reimbursement for loss of vehicle by engine fire under this section shall not be construed as a waiver or release of claims for death or personal injury.

4.      Nothing in this section shall require HMA or KMA to provide for the loss of a Class Vehicle due to an engine fire caused by a collision or a source other than the engine.

**H.   Rebate Program**

1.      To the extent any Class member loses faith in their Class Vehicle as a result of this Settlement, the Class member may present a claim for a rebate after selling the Class Vehicle in an arm's length transaction provided that:

a.      The Class member (a) experienced an engine failure or engine compartment fire, and (b) purchases a replacement Hyundai vehicle (for Hyundai Class members) or Kia vehicle (for Kia Class members);

b.      A Claim is submitted within 90 days of the Notice Date;

c.      The Claim contains a completed Claim Form;

d.      The Claim contains a statement under oath that the Claimant lost faith in the Class Vehicle;

e.      The Claim contains a proof of sale or trade-in and value received for sale or trade-in;

   f. The Claim contains proof of purchase of a replacement Hyundai or Kia vehicle.

 2. This rebate is also available to any Class member who, after the Notice Date, experiences an engine failure or fire in a Class Vehicle, loses faith in their Class Vehicle, and completes all other steps to qualify for the rebate, including the purchase of a replacement Hyundai or Kia vehicle, provided that the Class member submits a Claim within 90 days of the engine failure or fire.

 3. The amount of the rebate shall be calculated as actual loss by comparing sales documentation to the maximum Black Book value (*i.e.,* private party/very good) of the Class Vehicle at the time of the Knock Sensor Detection System campaign launch up to the following amounts:

   a. For model year 2011-2012 Class Vehicles: $2,000

   b. For model year 2013 and 2014 Class Vehicles: $1,500

   c. For model year 2015 and 2016 Class Vehicles: $1,000

   d. For model year 2017, 2018, and 2019 Class Vehicles: $500

**I.** **Costs of Administration and Notice**

 HMA and KMA shall be responsible for all costs of Class notice and settlement administration.  In no event shall Plaintiffs' Counsel or the Class be responsible for any costs associated with Class notice or settlement administration.  Class Counsel retains the right to audit and review the administration of Claims.

**III.** **CLAIMS ADMINISTRATION**

 1. HMA and KMA have the option of self-administrating or electing a third-party administrator to process submitted claims.

 2. Claims submitted pursuant to this Settlement may be submitted, at the election of the Claimant, by U.S. mail, email, or through the dedicated settlement website discussed below. The mailing address and email address to which Claimants may submit Claims, as well as Claimants' right to submit their Claims through the settlement website, shall be posted prominently in each of the following locations: the Long Form Notice, the Pamphlet (once prepared and as made available before the Effective Date on the settlement website), the Claim Form, and the dedicated settlement website.  The www.hyundaiusa.com/myhyundai website shall provide a link to the dedicated settlement website for Hyundai Class Vehicles accessible

from its homepage.  The www.owners.kia.com website shall provide a link to the dedicated
settlement website for Kia Class Vehicles accessible from its homepage.

3.      The Claim Form shall provide an option for Claimants to indicate a preference for
communication via regular U.S. mail instead of email.  If HMA or KMA has an email address
for a Claimant and the Claimant did not indicate on the claim form that he or she prefers to
communicate via regular U.S. mail, HMA and KMA shall respond by email.  In instances in
which U.S. mail is used, HMA and KMA shall respond using the address provided on the
corresponding Claim Form.

4.      Upon receipt of a Claim, Defendants or their Settlement Administrators shall
review the Claim to determine whether the Claim meets all qualifications for payment set forth
in this Settlement Agreement and, if so, the amount of the reimbursement owed.

5.      Within 60 days of receiving a Claim, Defendants or their Settlement
Administrators shall provide written notice to the Claimant who submitted it, notifying the
Claimant of:

a.      the amount, if any, that HMA or KMA proposes to reimburse the Claimant
under this Settlement;

b.      the basis for HMA's or KMA's decision to either deny or pay less than a
full reimbursement (if applicable); and

c.      the Claimant's right to attempt to cure any deficiency that led to HMA's
or KMA's proposal to award less than full reimbursement.

6.      In response to receiving the written notice under section III.5, Claimants may:

a.      Attempt to cure the deficiency stated as justification for not awarding a
full reimbursement, by submitting the information and/or documentation
identified by HMA or KMA as lacking in the Claim, within 35 days of
receipt of the written notice.  Defendants or their Settlement
Administrators shall have 35 days from the date of the cure attempt to
provide written notice to the Claimant stating its final determination as to
the total reimbursement to be paid to the Claimant and the reasons for the
reimbursement amount if less than requested; or

b.      Accept the partial reimbursement offered by HMA or KMA, which acceptance will be presumed if no cure attempt is received by HMA or KMA within 35 days of the date of the written notice.

7.      Within 60 days of receipt of HMA's or KMA's final determination of a Claim, any Claimant dissatisfied with HMA's or KMA's determination may seek arbitration through a BBB administered alternative dispute resolution process by notifying HMA or KMA (as the case may be) in writing that the Claimant requests arbitration. HMA and KMA shall promptly provide copies of all such requests to Class Counsel. After receipt of the Claimant's written notice, HMA and KMA shall be permitted a 30-day good faith period in which to confer with the Claimant in an attempt to resolve the claim. If the claim cannot be resolved during this period, Claimant shall initiate arbitration proceedings through a BBB administered alternative dispute resolution process. The arbitration shall take place by written submission with a telephonic hearing to occur if the arbitrator determines it is needed. The arbitrator shall have the ability to make the final determination regarding the amount to be paid to any Claimant who elects this process. HMA and KMA shall provide Class Counsel with copies of any communications concerning such arbitration review, and Class Counsel shall have the right to participate in any written submission or telephonic hearing. Class Counsel, however, shall not be obligated to participate. The expense for each such arbitration review shall be borne by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) unless the arbitrator finds that the Claimant's claims were brought in bad faith. HMA and KMA will not bear the costs of Claimant's attorneys' fees by Class Counsel or other counsel selected by the Claimant (if any).

8.      On a monthly basis beginning 30 days after the Notice Date, HMA and KMA shall provide Class Counsel with a copy of each final determination notice sent by HMA and KMA pursuant to section III.5., along with the Claim Form and all other documentation associated with the Claim.

9.      For each Claim qualifying for a reimbursement payment under this Settlement Agreement, HMA (for Hyundai Class Vehicles) and KMA (for Kia Class Vehicles) shall mail to the Claimant, at the address on the Claim Form, no later than 30 days after the Effective Date, a check or a reimbursement debit card, at the Class member's request. The debit cards provided under this Settlement shall be redeemable for at least one year, without any fees charged by

HMA, KMA, or the debit card issuer, at ATMs and merchants that accept Visa cards.  The debit cards shall indicate their "use by" dates on their face.

10.     The value of any debit card shall remain the property of HMA or KMA unless and until it is expended by the Claimant.  Upon expiration of any debit card, any unexpended funds shall become the permanent property of HMA or KMA.

11.     The Parties acknowledge and agree that any and all provisions, rights, or benefits conferred by any law of any state or territory of the U.S., or any principle of common law, that provides for how residual amounts in a settlement fund should be distributed, including, but not limited to, California Code of Civil Procedure section 384(b), are not applicable to this Settlement Agreement.  Although the Parties expressly agree that this Settlement is not governed by California Code of Civil Procedure section 384(b) or other similar laws and does not create a settlement fund nor any "unpaid residue," the Class Representatives on behalf of themselves and the Class members nonetheless expressly acknowledge and agree that, to the extent permitted by law, they are waiving any protections of California Code of Civil Procedure section 384(b) and of any comparable statutory or common law provision of any other jurisdiction.

12.     The Parties acknowledge and agree that the forms of compensation set forth in sections II.C, II.D, II.E, II.F, II.G, and II.H do not constitute gift cards, gift certificates, or member rewards cards under any federal and/or state laws.

13.     Nothing in this Settlement Agreement shall be read to prevent HMA or KMA from electing, at its sole discretion and on a case-by-case basis, to implement or to continue to implement any customer satisfaction or goodwill policy, program, or procedure at its discretion, that provides consideration to Class members over and above that required by this Settlement, without regard to the Class members' entitlement to relief under the Settlement.  No such election by HMA or KMA, however, shall act to deprive a Class member or Claimant of any of the benefits available under the Settlement.

14.     Unless otherwise specified, all terms of this Settlement Agreement apply to class members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza* class population).

## IV.     NOTICE TO THE CLASS

### A.     CAFA Notice

1.      In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, HMA and KMA shall provide notice of this Settlement to the Attorney General of the United States, and the attorneys general of each state or territory in which a Class member resides.

### B.     Notice Deadline

1.      No later than the Notice Date, HMA and KMA shall cause notice to the Class to be disseminated by U.S. mail, email, and the dedicated settlement website (with a link to the dedicated settlement website from www.hyundaiusa.com/myhyundai (for Hyundai Class Vehicles) or www.owners.kia.com (for Kia Class Vehicles)).  The form and substance of all notices provided by HMA and KMA to Class members shall be subject to prior input and approval from Class Counsel.

### C.     Individual Class Notice Methods

1.      Following the Court granting preliminary approval of this Settlement, Defendants or their Settlement Administrators shall provide by direct U.S. mail, to all reasonably identifiable Class members, each of the following: (i) the Long Form Notice and (ii) a Claim Form.  For purposes of identifying the requisite names and addresses, Defendants or their Settlement Administrators agree to provide, to the extent they have not already done so, all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to R.L. Polk & Company, or a similar third-party entity, who shall be authorized to use that information to obtain the names and most current addresses of Class Vehicle owners through state agencies.  Because some states require a prior court order before vehicle owner and lessee information can be released, such information may not be available until after the preliminary approval order is entered.  Prior to mailing individual notice, Defendants or their Settlement Administrators shall conduct an address search through the United States Postal Service's National Change of Address database to update the address information for Class Vehicle owners.  For each individual notice that is returned as undeliverable, Defendants or their Settlement Administrators shall use its best efforts to conduct an advanced address search using HMA's and KMA's customer database information regarding the Class Vehicle owner to obtain a deliverable address.

2.      Additionally, Defendants or their Settlement Administrators shall provide by email, to all Class members for which HMA and KMA maintain email addresses, a hyperlink to the dedicated settlement website discussed below and electronic versions of the Long Form Notice and Claim Form following the Court granting preliminary approval of this Settlement.

3.      Defendants or their Settlement Administrators shall each maintain a dedicated settlement website— the content and domain name of such are subject to prior Class Counsel approval—which will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism by which Claimants can submit Claims electronically; (iii) instructions on how to contact Defendants or their Settlement Administrators for assistance with their Claims; (iv) the Long Form Notice; (v) the Pamphlet; (vi) the Claim Form; (vii) this Settlement Agreement; (viii) any orders issued in this Action approving or disapproving of the proposed settlement; and (ix) any other information the Parties determine is relevant to the Settlement.  Defendants or their Settlement Administrators shall make the same information available to Class members through www.hyundaiusa.com/myhyundai and www.owners.kia.com via links to the dedicated settlement websites (apart from the mechanism for submitting Claims).

4.      Defendants or their Settlement Administrators shall be prepared, through Defendants' customer service departments, to respond to questions regarding the status of submitted Claims, how to submit a Claim, and other aspects of this Settlement.  Defendants or their Settlement Administrators shall maintain a dedicated toll-free telephone number for Class members to call.  The telephone numbers shall be listed on the Long Form Notice, Pamphlet, Claim Form, and the dedicated settlement websites.

5.      For a period ending 90 days after the Notice Date, Defendants or their Settlement Administrators shall provide Class Counsel with reasonable periodic reports of the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable.  The Claims Administrator shall communicate with Class Counsel regarding delivery of notice and the number of Class members who have responded to the notice.

6.      Following the Effective Date of the Settlement Agreement, Defendants or their Settlement Administrators shall provide a copy of the company's version of the Pamphlet by direct U.S. mail to all of HMA's and KMA's respective reasonably identifiable Class members. Defendants or their Settlement Administrators shall use the name and address information

compiled through the steps described in section IV.C.1 and the claims process pursuant to the Settlement Agreement.

7.      Additionally, following the Effective Date of the Settlement Agreement, Defendants or their Settlement Administrators shall each provide an electronic version of the Pamphlet by email to all of its Class members for which HMA and KMA maintain email addresses.  The Parties may publically release and announce the fact and terms of the settlement, subject to the Parties reaching mutual written consent on the contents of the press release prior to filing for preliminary approval.  Excepting such announcement and the Exhibits to this agreement, neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any other press release concerning this Agreement or the settlement set forth herein, unless otherwise agreed to in writing and neither the Parties or their Counsel shall make (or cause any other Person to make) any statements of any kind to the press concerning this Agreement or the settlement set forth herein, except that a Party or Party's counsel may respond to an inquiry from a member of the press by (a) directing the member of the press to a public resource to review or obtain a copy of this Agreement or the Class Notice or (b) by supplying additional information to the member of the press, provided that the responding Party will provide such additional information to the other Parties as promptly as practicable.  A Party or Party's counsel shall provide notice to the other Parties before responding to a press inquiry whenever reasonably possible.  If such notice cannot reasonably be provided before responding to a press inquiry, the responding Party or Party's Counsel shall notify the other Parties promptly after responding to the press inquiry.  This paragraph does not prevent Class Counsel from communicating with individual class members about the Settlement.

8.      Beginning no later than two weeks after the Effective Date, HMA and KMA shall provide—in both hard copy and electronic form— the Pamphlet to each of its authorized dealerships, with instruction to disseminate the Pamphlet to any person who presents a Class Vehicle for maintenance or service of any type and information regarding HMA's and KMA's product improvement campaign, including the free knock sensor detection software update.

## V.    ATTORNEYS' FEES AND SERVICE PAYMENTS

1.      Plaintiffs, through Class Counsel, shall petition the Court for an attorneys' fee award, cost award, and for Class Representative service payments.  Any petition by Plaintiffs, through Class Counsel, shall be inclusive of an attorneys' fee and cost award sought on behalf of

Plaintiffs' Counsel, including any attorneys currently or previously affiliated with those law firms.

2.      The total amount of attorneys' fees requested will be negotiated by the parties at a later date.  If the parties are unable to agree on the requested amount of attorneys' fees, the parties will submit the issue to the Court.

3.      Subject to entry of the Final Approval Order and Judgment pursuant to section VII.C, HMA and KMA will not oppose, undermine, or solicit others to oppose or undermine Class Representative service payments in the amount of each.

4.      HMA and KMA agree to pay the attorneys' fees, costs, and service payments separate and apart from, and in addition to, the relief provided to the Class.

5.      HMA and KMA shall pay Class Counsel the fees, expenses, and service payments awarded by the Court within the later of thirty (30) days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order.  Within three (3) days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Class Counsel shall provide HMA and KMA, for each payee, a W-9, wire instructions on their firm letterhead for the payment to Class Counsel of fees, expenses, and service payments awarded by the Court.

## VI.   MUTUAL RELEASE

1.      Upon entry of a Court order granting final approval of the Settlement and entering judgment pursuant to section VII.C below, Releasors irrevocably release, waive, and discharge any and all past, present, and future liabilities, claims, causes of action, legal claims, damages, costs, attorneys' fees, losses, or demands that have been brought or could have been brought, whether known or unknown, existing or potential, or suspected or unsuspected relating to Class Vehicles against Releasees, whether or not specifically named herein, asserted or unasserted, under or pursuant to any statute, regulation, common law, or equitable principle, based on (i) the facts alleged in any complaint filed in the Action and all legal claims of whatever type or description arising out of, that may have arisen as a result of, or which could have been brought based on, any of the facts, acts, events, transactions, occurrences, courses of conduct,

representations, omissions, circumstances or other matters pleaded in complaints filed in the Action, (ii) oil consumption, oil maintenance, engine repairs or replacement related to oil maintenance for the Class Vehicles, engine durability related to oil maintenance for the Class Vehicles, or vehicle fire originating in the engine compartment or (iii) marketing or advertising for the oil consumption, oil maintenance, engine repairs or replacement related to oil maintenance for the Class Vehicles, engine durability related to oil maintenance for the Class Vehicles, or vehicle fire originating in the engine compartment.  The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, (iii) damage to tangible property other than a Class Vehicle, or (iv) subrogation.

The release effected by this Settlement Agreement is intended to be a specific release and not a general release.  If, despite, and contrary to the Parties' intention, a court construes the release as a general release under California law and determines that Section 1542 of the California Civil Code is applicable to the release, the Class Representatives, on behalf of themselves and all Class members, hereby expressly waive and relinquish to the fullest extent permitted by law, the rights provided by Section 1542 of the California Civil Code, which provides:

> *Certain Claims Not Affected By General Release:*  *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

Each of the Class Representatives expressly acknowledges that the Class Representative has been advised by Class Counsel of the contents and effects of Section 1542, and with knowledge, each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, whatever benefits the Class Representatives and the Class members may have had pursuant to such section.  Each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, the benefit of any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

2.      Plaintiffs and the Class members recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and Judgment, Releasors fully, finally, and forever settle and release any and all legal claims against Releasees.  The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement.

3.      By this Settlement Agreement, HMA, KMA, HMC, and KMC, release the Plaintiffs and Plaintiffs' Counsel from any and all claims or causes of action that were, or could have been, asserted by HMA, KMA, HMC, and KMC, pertaining to this Action or Settlement. HMA, KMA, HMC, and KMC, recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, both entities nevertheless agree that, upon entry of an order granting final approval to this Settlement and entering judgment, HMA, KMA, HMC, and KMC, fully, finally, and forever settle and release any and all such claims.  The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement.

4.      This Settlement and the release in the preceding paragraph do not affect the rights of Class members who timely and properly request exclusion from the Class, or anyone encompassed within the class definitions set forth in the complaints in this Action who are not a member of the Class defined in this Settlement Agreement, including but not limited to the named plaintiffs and putative class members in *Flaherty* that are not expressly named, identified, or encompassed in this Settlement Agreement.  The Parties do not intend this Settlement Agreement and release to affect any legal claims that arise out of a consumer's purchase or use of any vehicle other than a Class Vehicle.  The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, (iii) damage to tangible property other than a Class Vehicle, or (iv) subrogation.

5.      The administration and consummation of the Settlement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Settlement.  The Court retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement, including, but not limited to, orders enjoining Class members from prosecuting claims that are released pursuant to the Settlement and allowing for discovery related to objectors.

6.      Upon issuance of the Final Approval Order and Judgment: (i) the Settlement shall be the exclusive remedy for Class members; (ii) Releasees shall not be subject to liability or expense of any kind to any Class member(s) for reasons related to the Action except as set forth herein; and (iii) Class members shall be permanently barred from initiating, asserting, or prosecuting any and all released claims against the Releasees.

## VII.    SETTLEMENT APPROVAL PROCESS

### A.    Intention to Complete Settlement.

1.      The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement and the transactions contemplated hereby.  Plaintiffs shall prepare all preliminary approval and final approval papers.

2.      If the preliminary approval order or the Final Approval Order and Judgment is not obtained from the Court in the form contemplated by this Settlement or Final Approval Order and Judgment is reversed or materially modified on appeal this Settlement should be null and void *ab initio* upon election of any of the Parties and have no further force and effect with respect to any of the Parties in this Action.  Nothing in this provision shall affect HMA and KMA's obligation to pay all costs reasonably incurred by the settlement administration process.

### B.    Preliminary Court Approval

1.      Promptly after execution of this Settlement by the Parties, counsel for the Parties shall present this Settlement to the Court for review and jointly seek entry of an order that certifies the Class as a settlement class, grants preliminary approval of this Settlement, and directs HMA and KMA to provide notice of the Settlement in the manners listed herein.

2.      No later than twenty (20) days before the Court hearing on final approval of the Settlement, HMA and KMA shall provide affidavits for the Court, with a copy to Class Counsel, attesting that notice was disseminated in a manner consistent with the terms of this Settlement Agreement, or as otherwise required by the Court.

### C.    Final Court Approval

1.      Once the Court enters a preliminary approval order, counsel for the Parties shall use their best efforts to promptly obtain entry of a Final Approval Order and Judgment that:

a. Finds the Settlement to be fair, reasonable, and adequate;

b. Finds that the Class notice given constitutes the best notice practicable;

c. Approves the release specified in Section VI as binding and effective as to all Class members who have not properly excluded themselves from the Class;

d. Directs that judgment be entered on the terms stated herein; and

e. Provides that the Court will retain jurisdiction over the Parties and Class members to enforce the terms of the final order and judgment.

2. Upon entry of the final order and judgment, this Action shall be dismissed, on its merits and with prejudice, with respect to all Plaintiffs and all Class members who have not properly excluded themselves from the Class, and without prejudice as to anyone else, subject to the continuing jurisdiction of the Court, including but not limited to the claims of the named plaintiffs and putative class members in *Flaherty* that are not expressly named, identified, or encompassed in this Settlement Agreement.

## VIII.  REQUESTS FOR EXCLUSION

1. The provisions of this section shall apply to any request by a Class member for exclusion from the Class.

2. Any Class member may make a request for exclusion by submitting such request in writing as set forth in the Class notice.

3. Any request for exclusion must be submitted not later than the date specified in the Court's preliminary approval order.

4. Any request for exclusion shall (i) state the Class member's full name and current address, (ii) provide the model year and Vehicle Identification Number ("VIN") of his/her/its Class Vehicle(s) and the approximate date(s) of purchase or lease, and (iii) specifically and clearly state his/her/its desire to be excluded from the Settlement and from the Class.

5. Failure to comply with these requirements and to timely submit the request for exclusion will result in the Class member being bound by the terms of the Settlement Agreement.

6. Any Class member who submits a timely request for exclusion may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

7.      HMA and KMA shall report the names of all Class members who have submitted a request for exclusion to Class Counsel on a weekly basis, beginning 30 days after the Notice Date.

8.      Class Counsel represent and warrant that they have no other agreements with other counsel respecting Class members, including any agreements with respect to referring, soliciting, or encouraging any Class members to request to be excluded (or "opt out") from this agreement.

9.      Upon certification of the Class in connection with the Preliminary Approval of this agreement, Class Counsel agree to seek in the Preliminary Approval Order from the Court a provision encouraging all written communications to multiple Class members with respect to this Agreement to be reviewed and approved by Class Counsel and the Court, and Class Counsel agree to abide by that provision as may be required by the Court.

## IX.    OBJECTIONS

1.      The Parties will request that the Court enter an order requiring any Class member who wishes to enter an objection to be considered, to submit a written notice of objection to HMA and KMA by the deadline set in the Court's preliminary approval order.

2.      To state a valid objection to the Settlement, an objecting Class member must provide the following information in his, her, or its written objection: (i) the case name and number, *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.); (ii) his/her/its full name, current address, and current telephone number; (iii) the model year and VIN of his/her/its Class Vehicle(s); (iv) a statement of the objection(s), including all factual and legal grounds for the position; (v) copies of any documents the objector wishes to submit in support; (vi) the name and address of the lawyer(s), if any, who is representing the objecting Class member in making the objection or who may be entitled to compensation in connection with the objection; (vii) a statement of whether the Class member objecting intends to appear at the Final Approval Hearing, either with or without counsel; (viii) the identity of all counsel (if any) who will appear on behalf of the Class member objecting at the Final Approval Hearing and all persons (if any) who will be called to testify in support of the objection; and (ix) the signature of the Class member objecting, in addition to the signature of any attorney representing the Class member objecting in connection with the objection, and date the objection.  In addition, any Class member objecting to the Settlement shall provide a list of any other objections submitted

by the objector, or the objector's counsel, to any class action settlements submitted in any court
in the United States in the previous five years.  If the Class member or his or her counsel has not
made any such prior objection, the Class member shall affirmatively so state in the written
materials provided with the objection.

3.      If the objecting Class member intends to appear, in person or by counsel, at the
final approval hearing, the objecting Class member must so state in the objection.  Any Class
member who does not state his or her intention to appear in accordance with the applicable
deadlines and other specifications, or who has not filed an objection in accordance with the
applicable deadlines and other specifications, will be deemed to have waived any objections to
the Settlement and can be barred from speaking or otherwise presenting any views at the final
approval hearing.

4.      The Parties will request that the Court enter an order providing that the filing of
an objection allows Class Counsel or counsel for HMA and KMA to notice such objecting
person for and take his, her, or its deposition consistent with the Federal Rules of Civil Procedure
at an agreed-upon location, and to seek any documentary evidence or other tangible things that
are relevant to the objection.  Failure by an objector to make himself/herself/itself available for a
deposition or comply with expedited discovery requests may result in the Court striking the
objection and otherwise denying that person the opportunity to be heard.  The Court may tax the
costs of any such discovery to the objector or the objector's counsel should the Court determine
that the objection is frivolous or made for improper purpose.

5.      Any objector who seeks a fee for their objection shall do so as prescribed under
Federal Rule of Civil Procedure 23(e)(5)(B).

6.      These procedures and requirements for objecting are intended to ensure the
efficient administration of justice and the orderly presentation of any Class member's objection
to the Settlement, in accordance with the due process rights of all Class members.

7.      Any Class member who fails to file and serve timely a written objection
containing all of the information listed in paragraphs 2 and 3 above, including notice of his/her
intent to appear at the Final Approval Hearing, shall not be permitted to object to the Settlement
and shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement
Agreement by any means, including but not limited to an appeal.

8.      The Parties shall promptly inform the Court of any consideration sought by an objector and the circumstances of such a request.

## X.      MISCELLANEOUS

### A.      Choice of Law

This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of California without giving effect to any choice or conflict of law provision, or rule that would cause the application of the laws of any other jurisdiction.

### B.      Not Evidence

1.      The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party.

2.      Neither this Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of it: (a) is, or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any legal claim made by Plaintiffs or Class members, or of any wrongdoing or liability of HMA and/or KMA, or (b) is, or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of Releasees in any proceeding in any court, administrative agency, or other tribunal.

3.      This provision shall survive the expiration or voiding of the Settlement Agreement.

### C.      Headings

The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

### D.      Effect of Exhibits

The exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

### E.     Entire Agreement

This Settlement Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this agreement has been made or relied on except as expressly set forth in this Settlement Agreement.  No modification or waiver of any provisions of this Settlement Agreement shall in any event be effective unless the same shall be in writing and signed by the person or Party against whom enforcement of the Agreement is sought.

### F.     Counterparts

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it, and all of which shall be deemed a single agreement.

### G.     Arm's-Length Negotiations

1.     The Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length.  The provisions for attorneys' fees and costs and service awards set forth herein were negotiated separately from and after agreement on the provisions for relief to Plaintiffs and the Class.

2.     All terms, conditions, and exhibits in their exact form are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

3.     The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel.  Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

**H.    Public Statements.**

1.    The Parties and their Counsel agree to keep the substance of this agreement confidential until the date on which the agreement is filed with the Court, provided that this Section shall not prevent HMA or KMA from disclosing such information, prior to the date on which the agreement is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or attorneys, nor shall it prevent the Parties and their Counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of the agreement; provided further that HMA and KMA may disclose publicly the terms of the agreement that it deems necessary to meet its regulatory obligations or fiduciary duties; and provided further that Plaintiffs may disclose the terms to their expert(s).  Neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any press release concerning the existence or substance of this agreement, excepting the jointly-created press release described previously in Section IV.C.7.

**I.    Good Faith**

The Parties acknowledge that prompt approval, consummation, and implementation of this Settlement is essential.  The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement, shall promptly perform their respective obligations hereunder, and shall attempt to resolve any dispute that may arise under this Settlement in a good faith and expeditious manner.

**J.    Continuing Jurisdiction**

The Parties agree the Court may retain continuing and exclusive jurisdiction over them, and all Class members, for the purpose of the administration and enforcement of this Settlement.

**K.    Extensions of Time**

The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement without further notice (subject to Court approval as to court dates).

**L.    Service of Notice**

Whenever, under the terms of this Settlement Agreement, written notice is required to HMA, HMC, KMC, or KMA or Class Counsel, such service or notice shall be directed to the

individuals and addresses specified below, unless those individuals or their successors give

notice to the other parties in writing:

As to Plaintiffs:                 Matthew Schelkopf (pro hac vice)
                                  Sauder Schelkopf
                                  555 Lancaster Ave.
                                  Berwyn, PA 19312
                                  Telephone: (610) 200-0581
                                  Email: mds@sstriallawyers.com

                                  Adam Gonnelli, Esq. (pro hac vice)
                                  THE SULTZER LAW GROUP
                                  85 Civic Center Plaza, Suite 104
                                  Poughkeepsie, NY 12601
                                  Tel: (845) 483-7100
                                  Fax: (888) 749-7747
                                  Email: gonnellia@thesultzerlawgroup.com

                                  Bonner Walsh (pro hac vice)
                                  WALSH PLLC
                                  1561 Long Haul Road
                                  Grangeville, ID 83530
                                  Telephone: (541) 359-2827
                                  Facsimile: (866) 503-8206
                                  Email: bonner@walshpllc.com

                                  Steve W. Berman
                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                  1301 Second Avenue, Suite 2000
                                  Seattle, WA 98101
                                  Telephone: (206) 623-7292
                                  Fax: (206) 623-0594
                                  Email: steve@hbsslaw.com


As to HMA, HMC,
KMC and KMA:                      Shon Morgan
                                  **QUINN EMANUEL URQUHART
                                  & SULLIVAN, LLP**
                                  865 S. Figueroa St. 10th Floor
                                  Los Angeles, California 90017


IN WITNESS HEREOF, each of the Parties hereto has caused this agreement to be

executed, as of the day(s) set forth below.

Dated: October _10_, 2019          By: _____

Matthew Schelkopf
Sauder Schelkopf
555 Lancaster Ave.
Berwyn, PA 19312
Telephone: (610) 200-0581
Email: mds@sstriallawyers.com

Adam Gonnelli, Esq.
THE SULTZER LAW GROUP
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
Email: gonnellia@thesultzerlawgroup.com
Co-Lead Counsel

Bonner Walsh
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
Email: bonner@walshpllc.com
Executive Committee

*Counsel for Plaintiffs, In re: Hyundai and Kia Engine
Litigation*, No. 8:17-cv-00838 (C.D. Cal.)

Dated: October _10_, 2019          By: _____

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Christopher R. Pitoun
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave., Suite 920
Pasadena, CA 91101
Tel: (213) 330-7150

Page 38 of 39

Case 8:17-cv-00838-JLS-JDE   Document 145-2   Filed 10/19/20   Page 88 of 188   Page ID
#:2171
Case 8:17-cv-00838-JLS-JDE   Document 145-2   Filed 10/19/20   Page 89 of 188   Page ID
#:2171

Fax: (213) 330-7152
Email: christopherp@hbsslaw.com

Robert Hilliard
HILLIARD MUNOZ GONZALES L.L.P.
719 S Shoreline Blvd, Suite #500
Corpus Christi, TX 78401
Tel: (361) 882-1612
Fax: (361) 882-3015
Email: bobh@hmglawfirm.com

*Counsel for Plaintiffs, Flaherty v. Hyundai Motor
Company, et al.*, No. 18-cv-02223 (C.D. Cal.)

Dated:  October ___9___, 2019        By: _____
                                          Shon Morgan
                                          **QUINN EMANUEL URQUHART
                                          & SULLIVAN, LLP**
                                          865 S. Figueroa St. 10th Floor
                                          Los Angeles, California 90017

*Counsel for Defendants Hyundai Motor America, Hyundai
Motor Company, Kia Motors Company and Kia Motors
America*

# EXHIBIT A

# NOTICE OF PROPOSED CLASS SETTLEMENT

**If you bought or leased a 2011-2019 model year Hyundai Sonata, 2013-2019 Hyundai Santa Fe Sport, a 2014-2015 or 2018-2019 Hyundai Tucson, a 2011-2019 Kia Optima, a 2011-2019 Kia Sorento or a 2011-2019 Kia Sportage equipped with a 2.0L or 2.4L Gasoline Direct Injection engine you may benefit from a class action settlement.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

*Your rights are affected whether you act or don't act.  Read this notice carefully.*

- The purpose of this Notice is to inform you of a proposed settlement of a class action lawsuit known as In re: Hyundai and Kia Engine Litigation, No. 8:17-cv-00838-JLS-JDE and Flaherty v. Hyundai Motor Company, et al., No. 18-cv-02223 (C.D. Cal.).  You are receiving this Notice because Hyundai Motor America, Inc.'s ("HMA"), Hyundai Motor Company ("HMC"), Kia Motors Corporation ("KMC") and Kia Motors America, Inc.'s ("KMA") records indicate that you may be entitled to claim certain financial benefits offered by this Settlement.

- These lawsuits allege that the Class Vehicles suffer from a defect that can cause engine seizure, stalling, engine failure, and engine fire, that engine seizure or stalling can be dangerous if experienced and that some owners and lessees have been improperly denied repairs under the vehicle's warranty.  Neither HMA, HMC, KMC, or KMA have been found liable for any of the claims alleged in these lawsuits.  The parties have instead reached a voluntary settlement in order to avoid a lengthy litigation. The individuals who owned or leased Class Vehicles are known as "Class Members."  Settlement Class Members may be entitled to compensation if they submit valid and timely claims that are approved pursuant to the review process described in this Notice and approved by the Court.

- Under the proposed settlement, and subject to proof, HMA, HMC, KMC, and KMA will provide financial and other benefits for certain engine related repairs.

- The settlement extends the Powertrain Warranty to a Lifetime Warranty for the engine short block assembly, upon completion of the Knock Sensor Detection System Update.  It also provides a free recall inspection for any recalled vehicles not yet inspected, regardless of current mileage or prior repairs, and rental car reimbursement or loaner vehicles for any vehicles that undergo engine replacement.

- The settlement provides cash reimbursements for qualifying past out-of-pocket repairs and repair-related expenses, such as rental cars and towing, and cash reimbursements for certain trade-ins and sales of unrepaired vehicles.

- The settlement provides compensation for inconvenience due to repair delays while the vehicle was serviced by Hyundai or Kia dealers.

- The settlement provides compensation for vehicles lost due to certain engine fires.  In some instances, the settlement also provides a cash rebate if you lost faith in the vehicle after experiencing engine troubles related to the defect and you purchased another Hyundai or Kia vehicle within a specified timeframe.

- To qualify you must have bought or leased a "Class Vehicle," which are 2011-2019 Hyundai Sonata, 2013-2019 Hyundai Santa Fe Sport, 2014-2015 and 2018-2019 Hyundai Tucson, 2011-2019 Kia Optima, 2011-2019 Kia Sorento, and 2011-2019 Kia Sportage vehicles equipped with or replaced with a genuine Theta II 2.0 liter or 2.4 liter gasoline direct injection engine within OEM specifications.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM** | The <u>only</u> way to get a reimbursement.  It is not necessary to submit a claim form to benefit from the Lifetime Warranty, as long as you have installed the Knock Sensor Detection System Update.  The deadline to submit a claim is XXXX. |
| **EXCLUDE YOURSELF** | Get no payment and for Hyundai vehicles, no Lifetime Warranty, (any lifetime warranty offered under a previous service campaign will remain in effect).  This is the only option that allows you to ever file or be part of any other lawsuit against Hyundai or Kia about the legal claims in this case.  The deadline to submit a request for exclusion is XXXX. |
| **OBJECT** | In order to object to the Settlement, you must remain a member of the lawsuit—you cannot ask to be excluded. You may object to the Settlement by writing to the Court and indicating why you do not like the Settlement. The deadline to object is XXXX. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no reimbursement.  Receive only the Lifetime Warranty upon installation of the Knock Sensor Detection System software. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still must decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after appeals are resolved. The Court approval process may take some time, so please be patient.

- Please visit [website] for a copy of this notice in Spanish.Visite [sitio web] para obtener una copia de este aviso en español.

**BASIC INFORMATION**........................................................................................................**1**

1.  Why did I get this notice package?...................................................................... 1

2.  What are  these lawsuits about?........................................................................... 1

3.  Why is this a class action?.................................................................................. 1

4.  Why is there a settlement?.................................................................................. 1

**WHO IS IN THE SETTLEMENT?** ................................................................................**2**

5.  How do I know if I am part of the Settlement? ................................................... 2

6.  Which vehicles are included?.............................................................................. 2

7.  If I bought or leased a Class Vehicle that has not had problems, am I included? .............. 2

8.  I am still not sure if I'm included. ...................................................................... 2

**SETTLEMENT BENEFITS – WHAT YOU GET** ........................................................**3**

9.  What does the Settlement provide? ..................................................................... 3

**HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM** ..............**7**

10.  How do I make a claim? .................................................................................... 7

11.  When would I get my reimbursement?................................................................ 7

12.  What if my claim is found to be deficient?.......................................................... 7

13.  What am I giving up to stay in the Settlement Class? .......................................... 7

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ..............................................**8**

14.  How do I get out of the Settlement? ................................................................... 8

15.  If I don't exclude myself, can I sue for the same thing later?................................ 9

16.  If I exclude myself, can I get the benefits of this Settlement?............................... 9

**THE LAWYERS REPRESENTING YOU** .................................................................**10**

17.  Do I have a lawyer in this case?....................................................................... 10

18.  How will the lawyers be paid and will the Settlement Class representatives receive service
    payments? ....................................................................................................... 10

**OBJECTING TO THE SETTLEMENT** ......................................................................**10**

19.  How do I tell the Court if I do not like the Settlement?..................................... 10

20.  What is the difference between objecting and excluding?................................... 12

**THE COURT'S FAIRNESS HEARING** .....................................................................**12**

21.  When and where will the Court decide whether to approve the Settlement? ....... 12

22.  Do I have to come to the Fairness Hearing?...................................................... 12

23.  May I speak at the Fairness Hearing? ............................................................... 12

**IF YOU DO NOTHING** .............................................................................................**13**

24.  What happens if I do nothing at all? ................................................................. 13

Case 8:17-cv-00838-JLS-JDE   Document 145-2   Filed 10/19/19   Page 94 of 74   Page ID
#:2218

**GETTING MORE INFORMATION**............................................................................................**13**

25.      Are there more details about the Settlement? ...................................................... 13

26.      How do I get more information?.......................................................................... 13

| BASIC INFORMATION |
|---|

**1. Why did I get this notice package?**

According to the records of HMA, HMC, KMC, or KMA, you bought or leased a Class Vehicle in the United States. This may also include a Class Vehicle you purchased while abroad on active U.S. military duty.

The Court has ordered this notice be sent to you because you have a right to know about a proposed settlement of a class action lawsuit and about your options in that lawsuit before the Court decides whether to approve the Settlement. If the Court approves the Settlement and after objections and appeals are resolved, HMA, HMC, KMC, or KMA will provide payments and other benefits agreed to in the Settlement. This notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

**You should read this entire notice.**

**2. What are  these lawsuits about?**

The people who filed these lawsuits are called Plaintiffs, and the companies they sued, HMA, HMC, KMC, and KMA, are called Defendants. The Plaintiffs allege that the Class Vehicles suffer from a defect that can cause engine seizure, stalling, engine failure, and engine fire. The Plaintiffs also allege that engine seizure or stalling can be dangerous if experienced. The Plaintiffs also allege that some owners and lessees have been improperly denied repairs under the vehicle's warranty. HMA, HMC, KMC, and KMA all deny Plaintiffs' allegations.

**3. Why is this a class action?**

In a class action lawsuit, one or more persons, called "Class Representatives" (in this case Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse), sue on behalf of people who have similar claims. All of these people and those similarly situated are a "Settlement Class" or "Settlement Class Members." One court resolves the issues for all Class Members, except those who exclude themselves from the Settlement Class. The court in charge of the cases is the United States District Court for the Central District of California, and the cases are known as *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838-JLS-JDE and *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.). District Judge Josephine Staton is presiding over this class action.

**4. Why is there a settlement?**

The Class Representatives and Defendants agreed to a Settlement to avoid the cost and risk of further litigation, including a potential trial, and so that the Class Members can get payments and other benefits, in exchange for releasing Defendants from liability. The Settlement does not mean that Defendants broke any laws and/or did anything wrong, and the Court did not decide which side was right.

The Class Representatives and Defendants entered into a Settlement Agreement that was preliminarily approved by the Court, which authorized the issuance of this notice. The Class Representatives and the

lawyers representing them (called "Class Counsel") believe that the Settlement is in the best interest of the Settlement Class Members.

This notice summarizes the essential terms of the Settlement. The Settlement Agreement along with all exhibits and addenda sets forth in greater detail the rights and obligations of all the parties and are available at [settlement website]. If there is any conflict between this notice and the Settlement Agreement, the Settlement Agreement governs.

---

### WHO IS IN THE SETTLEMENT?

**5.      How do I know if I am part of the Settlement?**

Judge Staton decided that, for the purposes of this proposed settlement, everyone who fits this description is covered by the Settlement:  <u>All owners and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the United States including those that were  purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in the U.S. territories and/or abroad.</u>

However, the Class excludes all claims for death, personal injury, property damage, and subrogation. The Class also excludes HMA, HMC, KMC, and KMA; any affiliate, parent, or subsidiary of Hyundai Motor America or Kia Motors America; any entity in which HMA, HMC, KMC, or KMA has a controlling interest; any officer, director, or employee of HMA, HMC, KMC, or KMA; any successor or assign of HMA, HMC, KMC, or KMA; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; individuals and/or entities who validly and timely opt-out of the settlement; consumers or businesses that have purchased Class Vehicles previously deemed a total loss (i.e., salvage) (subject to verification through Carfax or other means); and current or former owners of a Class Vehicle that previously released their claims against HMA, HMC, KMC, or KMA with respect to the same issues raised in this class action.

**6.      Which vehicles are included?**

The "Class Vehicles," for the purposes of the description in section 5 above, are 2011-2019 model year Hyundai Sonata, 2013-2019 model year Hyundai Santa Fe Sport, 2014-2015 and 2018-2019 model year Hyundai Tucson, 2011-2019 model year Kia Optima, 2011-2019 model year Kia Sorento, and  2011-2019 model year Kia Sportage vehicles equipped with 2.0 liter and 2.4 liter  genuine Theta II gasoline direct injection engines within OEM specifications.

**7.      If I bought or leased a Class Vehicle that has not had problems, am I included?**

Yes.  You did NOT have to experience stalling, engine seizure, engine failure, or a vehicle fire to be included in this Settlement.  If you still own or lease a Class Vehicle you will be eligible to take advantage of the Settlement's extension of the Powertrain Warranty to a Lifetime Warranty, as well as certain other benefits of the Settlement.

**8.      I am still not sure if I'm included.**

If you are still not sure whether you are included, you can ask for free help.  You can visit the website at [settlement website].  You can also call [Hyundai phone number; or Kia phone number] and ask whether

your vehicle is included in the Settlement.  Whether you visit the website or call the toll-free number, you will need to have your Vehicle Identification Number ("VIN") ready.  The VIN is located on a small placard on the top of the dashboard and is visible through the driver's side corner of the windshield.  It also appears on your vehicle registration card and probably appears on your vehicle insurance card.  Your VIN should have 17 characters, a combination of both letters and numbers.

## SETTLEMENT BENEFITS – WHAT YOU GET

**9.     What does the Settlement provide?**

The Settlement provides the following benefits:

1.     <u>Warranty Extension</u>

HMA is extending the Powertrain Warranty to a Lifetime Warranty for Hyundai Class Vehicles.  The extension of the warranty will cover the short block assembly, consisting of the engine block, crankshaft and bearings, connecting rods and bearings, and pistons, in those Class Vehicles owned by individual consumers that have completed the knock sensor program software update.  With the exception of cases of exceptional neglect (defined below) and subject to the existing terms, limitations, and condition of the Class Vehicles' original Powertrain Warranty, the Limited Warranty shall otherwise endure irrespective of the Class Vehicle's mileage, duration of ownership, or prior warranty engine repairs and/or warranty replacements.

The extension of the warranty covers all costs of inspections and repairs including, parts, labor, and diagnosis, for the engine short block assembly.   Class members are suggested to retain all vehicle maintenance records after the Notice Date, and may be required to provide records for vehicle maintenance performed after the Notice Date to receive Lifetime Warranty repairs.

The warranty extension may be denied for "Exceptional Neglect" of the vehicle, which means (a) when the vehicle clearly evidences a lack of maintenance or care for a significant period of time of not less than one (1) year, such that the vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance was due to a Loss Event, as defined in the settlement agreement; or (b) where a class member has failed to have the KSDS ("Knock Sensor Detection Software") installed in the vehicle pursuant to the KSDS Product Improvement Campaign by a Hyundai or Kia dealer within 60 days from Notice Date, or within 60 days of mailing of KSDS campaign notice, whichever is later.

Hyundai and Kia will provide a free recall inspection for up to 90 days after the Notice Date for any vehicle where recall inspections were not completed, regardless of current mileage or prior repairs.

Hyundai and Kia dealerships will provide a free loaner vehicle of comparable value if requested, until repairs are completed.  If no loaner vehicle is available, Hyundai and Kia will provide full reimbursement of reasonable rental car expenses up to $40 per day.  (See below for how to make a claim for rental car reimbursements.)

Any repairs to Hyundai Class Vehicles performed pursuant to the Lifetime Warranty will preclude class members from opting out of the class.

You do <u>NOT</u> need to submit a Claim Form to receive this extension of the Powertrain Warranty for the engine short block assembly under this Settlement.

       2.     <u>Reimbursement for Past Repairs</u>

Money you spent on certain Class Vehicle repairs will be reimbursed in full, and in certain instances, you may receive an additional $140 goodwill payment and/or inconvenience payment based on the following requirements:

**(a) DATE OF REPAIRS**

- Any Qualifying Repairs completed prior to the date that the Settlement was signed or within 90 days of the Notice Date.

**(b) TYPES OF "QUALIFYING REPAIRS"**

- Any repair to the engine short block assembly, which includes the engine block, crankshaft and bearings, connecting rods and bearings, and pistons.

- Repairs to any other components (such as the long block assembly, battery, or starter) <u>if</u> paperwork shows the work was an attempt to address (i) engine seizure, (ii) engine stalling, (iii) engine noise, or (iv) illumination of the oil lamp. (Repair costs will not be reimbursed if the paperwork reflects that the repairs were plainly unrelated to the short block assembly).

- Any replacement of an oil filter based on Hyundai TSB No. 12-EM-006 necessitated by an engine short block assembly issue.

- It does not include repairs caused by a collision involving a Class Vehicle, unless the collision was directly caused by a Class Vehicle failure otherwise subject to a Qualifying Repair, such as an engine fire

**(c) GOODWILL PAYMENT FOR PREVIOUSLY DENIED WARRANTY REPAIRS**

- If before receiving notice of this Settlement you presented a Qualifying Repair to a Hyundai or Kia dealership and were denied an in-warranty repair and subsequently obtained the Repair elsewhere, you are eligible to receive an additional $140 goodwill payment.

**(d) COMPENSATION FOR INCONVENIENCE DUE TO REPAIR DELAYS**

- If you experienced prolonged delays (exceeding 60) days obtaining any Qualifying Repair from an authorized Hyundai or Kia dealership you are eligible to receive a goodwill payment based on the length of the delay.

- This compensation is also available to Settlement Class Members who were also members of the prior settlement class of 2011-2014 Hyundai Sonatas (*i.e. Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF (C.D. Cal.) class population) for the inconvenience of delayed repairs under the terms of this section in connection with Qualifying Repairs that arose after the claims period expired under the terms of that settlement.

- If you had delays between 61 and 90 days you will be entitled to $50, and an additional $25 for each additional 30-day period of delay.  (E.g., a Class Member may receive $50 for delays lasting 61-90 days, $75 for delays lasting 91-120 days, etc.).

- A class member may elect to receive this compensation in the form of a dealer service card valued at 150% of the amount that would otherwise be paid.

**(e)  MAKE A TIMELY CLAIM**

- See section 10 for how to make your claim using the Claim Form.

\* \* \*

Class members are eligible for a reimbursement even if warranty coverage was denied on grounds of improper service or maintenance (excepting limited Exceptional Neglect circumstances), and even if the repairs were performed at an independent mechanic. Exceptional Neglect means (a) when the vehicle clearly evidences a lack of maintenance or care for a significant period of time of not less than one (1) year, such that the vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance was due to a Loss Event, as defined in the settlement agreement; or (b) where a class member has failed to have the KSDS ("Knock Sensor Detection Software") installed in the vehicle pursuant to the KSDS Product Improvement Campaign by a Hyundai or Kia dealer within 60 days from Notice Date, or within 60 days of mailing of KSDS campaign notice, whichever is later.

3.      Reimbursement for Rental Cars, Towing, Etc.

Money you spent on rental cars, towing services, and similar services will also be reimbursed in full, based on the following requirements:

- The expense was reasonably related to obtaining one of the Qualifying Repairs listed above, **and**

- You make a timely claim using the Claim Form.  (See section 10 for how to do so.)

4.      Compensation If You Sold or Traded-In a Class Vehicle

If your Class Vehicle (i) experienced an engine seizure, engine stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring repair of the engine block, AND  (ii) you sold or traded-in the Class Vehicle without first procuring the recommended repair, you may receive compensation for any effect on fair market value of the Class Vehicle that resulted.  You may also receive an additional goodwill payment of $140.00.

The amount of compensation will be based on the sale or trade-in transaction as a whole (among other considerations).  The vehicle's maintenance history or lack thereof before the repair diagnosis will not be a basis for denying or limiting compensation under this section (excepting limited Exceptional Neglect circumstances). Exceptional Neglect means (a) when the vehicle clearly evidences a lack of maintenance or care for a significant period of time of not less than one (1) year, such that the vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance was due to a Loss Event, as defined in the settlement agreement; or (b) where a class member has failed to have the KSDS ("Knock Sensor Detection Software") installed in the vehicle pursuant to the KSDS Product Improvement Campaign by a Hyundai or Kia dealer within 60 days from Notice Date, or within 60 days of mailing of KSDS campaign notice, whichever is later.

To be considered for compensation, submit a claim using the Claim Form.  Instructions are provided in section 10 below.  After you submit your claim, you will be contacted by HMA or KMA and advised of the process for evaluation of your transaction and proposed compensation.  If you are unhappy with the proposal, you can elect telephone arbitration through the Better Business Bureau ("BBB").

5. <u>Compensation for Vehicle involved in Engine Fire</u>

If your Class Vehicle suffered an engine fire that would have otherwise been addressed by a Qualifying Repair that caused you to lose the vehicle because either the cost of the repair was too great or you had to dispose your vehicle at a loss, you may receive compensation for the value of the vehicle, and an additional $140 goodwill payment.

The amount of compensation will be based on the maximum Black Book value of the vehicle, provided that you submit a claim demonstrating the fire originated from the engine compartment and was unrelated to any sort of collision.

The vehicle's maintenance history or lack thereof before the repair diagnosis will <u>not</u> be a basis for denying or limiting compensation under this section (excepting limited Exceptional Neglect circumstances). Exceptional Neglect means (a) when the vehicle clearly evidences a lack of maintenance or care for a significant period of time of not less than one (1) year, such that the vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance was due to a Loss Event, as defined in the settlement agreement; or (b) where a class member has failed to have the KSDS ("Knock Sensor Detection Software") installed in the vehicle pursuant to the KSDS Product Improvement Campaign by a Hyundai or Kia dealer within 60 days from Notice Date, or within 60 days of mailing of KSDS campaign notice, whichever is later.

To be considered for compensation, submit a claim using the Claim Form.  Instructions are provided in section 10 below.  After you submit your claim, you will be contacted by HMA or KMA or Kia Motors America and advised of the process for evaluation of your transaction and proposed compensation.  If you are unhappy with the proposal, you can elect telephone arbitration through the Better Business Bureau ("BBB").

6. <u>Rebate Program</u>

If you have lost faith in your Class Vehicle as a result of an engine failure or engine compartment fire and you purchase a replacement Hyundai vehicle (for Hyundai Class members) or Kia vehicle (for Kia Class members) you may be entitled to a rebate.  You must complete the claim form to be entitled to any rebate, but may qualify for the following amounts: for model year 2011-2012 Class Vehicles $2,000; for model year 2013 and 2014 Class Vehicles $1,500; for model year 2015 and 2016 Class Vehicles: $1,000; and for model year 2017 and 2018 Class Vehicles $500.

7. <u>Informational Pamphlet</u>

The Settlement provides that HMA and KMA will distribute an informational pamphlet to Class Members that provides further recommended guidance on the maintenance of the engines in the Class Vehicles and that reminds Class Members of the available inspections and repairs.

## HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM

**10.    How do I make a claim?**

- Fill out the Claim Form (paper or online), <u>and</u>

- Include the documentation specified on the Claim Form, <u>and</u>

- Submit online, by mail, or email the Claim Form to the address listed on the Claim Form, <u>and</u>

- Do so by [DATE] unless your claim is for rental car or towing costs incurred in the future, in which case you have 90 days from the date those costs were incurred.

Please keep a copy of your completed Claim Form and all documentation you submit for your own records.

If you fail to submit a Claim Form and supporting documents by the required deadline, you will not get paid.  Sending in a Claim Form late will be the same as doing nothing.

**11.    When would I get my reimbursement?**

In general, valid claims will be paid as they are approved after the Effective Date.  The Effective Date for the Settlement will be the date of the Court's Order giving final approval to the Settlement if there are no objections or appeals.  If there are objections or appeals, the date will be later.  When the date becomes known it will be posted at www._____.com

The Hon. Josephine Staton, U.S. District Court Judge, will hold a Fairness Hearing on [DATE] at the U.S. District Court for the Central District of California, Los Angeles Courthouse, 411 W. Fourth St., Santa Ana, CA 92701, to decide whether to approve the Settlement. (The hearing may be rescheduled without further notice.  To obtain updated scheduling information, see the [settlement website].)  If the Court approves the Settlement, there may be appeals afterwards.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Please be patient.

You may continue to check on the progress of the Settlement by visiting the website [settlement website] or calling [Hyundai phone number or Kia phone number].  **Payments under the Settlement will begin once the Settlement has been finally approved by the Court and any appeals from that decision are completed.**

**12.    What if my claim is found to be deficient?**

If a claim is found to be deficient and is rejected during the review process by the Settlement Administrator, the Settlement Class Member will be notified of the deficiency. The Settlement Class Member will then have an opportunity to remedy the deficiency within (60) days of the notice.

**13.    What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself in writing as described in the answer to Question 13, you will be treated as part of the Settlement Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit against HMA, HMC, KMC, KMA or other related entities or individuals (listed in the Settlement

Agreement, which you can view at [settlement website]) about the legal issues in *this* case if the Settlement is approved. It also means that all of the Court's orders will apply to you and legally bind you.

However, nothing in this Settlement will prohibit you from pursuing claims for: (i) personal injury; (ii) damage to property other than to a Class Vehicle; or (iii) any and all claims that relate to something other than a Class Vehicle and the alleged defect here.

If you have any questions about the scope of the legal claims you give up by staying the Settlement Class, you may view Section VI of the Settlement Agreement (available at [settlement website]) or you can contact the lawyers representing the Settlement Class for free or speak with your own lawyer at your own expense:

| | |
|---|---|
| Matthew D. Schelkopf<br>Sauder Schelkopf<br>555 Lancaster Avenue<br>Berwyn, Pennsylvania 19312<br>mds@sstriallawyers.com<br>www.sauderschelkopf.com<br><br><br>Bonner Walsh<br>WALSH PLLC<br>1561 Long Haul Road<br>Grangeville, ID 83530<br>bonner@walshpllc.com | Steve Berman<br>Hagens Berman Sobol Shapiro LLP<br>1301 Second Avenue<br>Suite 2000<br>Seattle, WA 98101 |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want the benefits or reimbursements provided in this settlement, and you want to keep the right to sue or continue to sue HMA, HMC, KMC, KMA, or other related entities or individuals, on your own, about the legal issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

**14.    How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a letter by U.S. mail (or an express mail carrier) saying that you want to "opt-out of" or "be excluded from" the Class Settlement in *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838-JLS-JDE and *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.). Be sure to include (i) your full name and current address, (ii) the model year, approximate date(s) of purchase or lease, and Vehicle Identification Number ("VIN") of your vehicle (which is located on a placard on the top of the dashboard visible through the driver's side corner of the windshield), and (iii) clearly state your desire to be excluded from the settlement and from the Class. You must mail your exclusion request postmarked no later than [DATE] to:

| Defense Counsel & |
| :---: |
| **KMA's Settlement Administrator** |
| Shon Morgan |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 865 S. Figueroa St., 10th Floor |
| Los Angeles, California 90017 |
| |
| Epiq Class Action & Claims Solutions, Inc. |
| 10300 SW Allen Blvd. |
| Beaverton, OR 97005 |

You can't exclude yourself on the phone, on any website, or by e-mail. Please keep a copy of any exclusion (or opting out) letter for your records.

If you ask to be excluded, you cannot receive any benefits under this Settlement, and you cannot object to the Settlement. If you choose to be excluded or opt out, you will be excluded for all claims you have that are included in the Settlement. You will not be legally bound by anything that happens in this lawsuit. Depending on the laws in your state, you may be able to sue (or continue to sue) HMA, HMC, KMC, KMA, or other related entities or individuals in the future about the legal issues in this case.

With respect to Hyundai Class Vehicles only, any repairs performed pursuant to the Settlement's extension of the Powertrain Warranty on your Hyundai Class Vehicle shall preclude you from excluding yourself from the Class or opting out.

## 15. If I don't exclude myself, can I sue for the same thing later?

No. Unless you exclude yourself (opting out), you give up the right to sue HMA, HMC, KMC, KMA, and other related entities or individuals for the claims that this Settlement resolves.

If you have a pending lawsuit against HMA, HMC, KMC, KMA, or the related entities listed in the prior paragraph, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Settlement Class to continue your own lawsuit if it concerns the same legal issues in this case. Remember, the exclusion deadline is [DATE].

If you are a Settlement Class Member and you do nothing, you will remain a Settlement Class Member and all of the Court's orders will apply to you, you will be eligible for the Settlement benefits described above as long as you satisfy the conditions for receiving each benefit, and you will not be able to sue Defendants over the issues in this lawsuit.

## 16. If I exclude myself, can I get the benefits of this Settlement?

No. If you exclude yourself, do not send in a Claim Form to ask for any reimbursement and, with respect to Hyundai vehicles only, do not seek repairs under the Settlement's extension of the Powertrain Warranty. But, you may sue, continue to sue, or be part of a different lawsuit against HMA, HMC, KMC, KMA, and other related entities or individuals for the claims that this Settlement resolves.

## THE LAWYERS REPRESENTING YOU

**17.    Do I have a lawyer in this case?**

The Court has appointed Matthew D. Schelkopf of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, Steve Berman of Hagens Berman Sobol Shapiro LLP, and Bonner Walsh of Walsh PLLC to represent you and other Settlement Class Members.  Together these lawyers are called Class Counsel. You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own cost.

**18.    How will the lawyers be paid and will the Settlement Class representatives receive service payments?**

At a later date, Class Counsel will ask the Court for attorneys' fees, expenses,  and service payments to each of the named Settlement Class representatives, Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse.  It will be up to the Court to decide whether Defendants will be ordered to pay any of those fees, expenses, and service payments.  The Court may award less than the amounts requested by Class Counsel.  Defendants will separately pay the fees and expenses and service payments that the Court awards.  These amounts will not come out of the funds for payments to Settlement Class Members. You may continue to check on the progress of Class Counsel's request for attorneys' fees, expense and service awards by visiting the website [settlement website].

Defendants will also separately pay the costs to administer the settlement.  The payment of settlement administration costs will not come out of the funds for payments to Settlement Class Members.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

**19.    How do I tell the Court if I do not like the Settlement?**

If you are a member of the Settlement Class, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.

To object, you must mail a letter saying that you object to the addresses below:

| Defense Counsel & KMA's Settlement Administrator | Class Counsel | Court |
|---|---|---|
| Shon Morgan<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br><br>Epiq Class Action & Claims Solutions, Inc.<br>10300 SW Allen Blvd.<br>Beaverton, OR 97005 | Matthew D. Schelkopf<br>Sauder Schelkopf<br>555 Lancaster Avenue<br>Berwyn, Pennsylvania 19312 | Clerk of the Court<br>Ronald Reagan Federal Building and U.S. Courthouse<br>411 West 4th Street, Room 1053<br>Santa Ana, CA 92701-4516 |

Your objection letter must include:

1) The name and title of the lawsuit, *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838-JLS-JDE and *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.);
2) A detailed written statement of each objection being made, including the specific reasons for each objection, and any evidence or legal authority to support each objection;
3) Your full name, address, and telephone number;
4) The model year and VIN of your Class Vehicle;
5) A statement whether you or your lawyer will ask to appear at the Fairness Hearing to talk about your objections, and if so, how long you will need to present your objections;
6) Any supporting papers, materials, exhibits, or briefs that you want the Court to consider when reviewing the objection;
7) The identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to your objection;
8) The number of times in which you, your counsel (if any), or your counsel's law firm (if any) have objected to a class action settlement within the five years preceding the date that the objector files the objection and the caption of each case in which such objection was made;
9) A statement disclosing any consideration that you, your counsel (if any), or your counsel's law firm (if any) has received in connection with the resolution or dismissal of an objection to a class action settlement within the five years preceding the date that the objector files the objection; and
10) Your signature and that of your attorney, if you have one.

Submitting an objection allows Class Counsel or counsel for Defendants to notice your deposition and to seek any documentary evidence or other tangible things that are relevant to your objection. Failure to make yourself available for such a deposition or comply with expedited discovery requests may result in the Court striking your objection or denying you the opportunity to be heard. The Court may require you or your counsel to pay the costs of any such discovery should the Court determine the objection is frivolous or made for improper purpose.

Objections must be sent by first class mail to each of the above addresses and postmarked no later than [DATE]. Objections submitted after this date will not be considered.

If you do not state your intention to appear in accordance with the applicable deadlines and specifications, or you do not submit an objection in accordance with the applicable deadlines and specifications, you will waive all objections and can be barred from speaking at the final approval hearing.

20.     **What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and the Settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

| THE COURT'S FAIRNESS HEARING |
|---|

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, subject to the requirements above, but you don't have to.

21.     **When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at [Time] in [DATE] at the U.S. District Court for the Central District of California, Los Angeles Courthouse, 411 W. Fourth St., Santa Ana, CA 92701. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel and whether to approve the class representatives' service awards. After the hearing, the Court will decide whether to finally approve the Settlement. We do not know how long these decisions will take.

The hearing may be rescheduled without further notice to you, so it is recommended you periodically check [settlement website] for updated information.

22.     **Do I have to come to the Fairness Hearing?**

No. Class Counsel will answer any questions Judge Staton may have. But, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also attend or pay your own lawyer to attend, but it's not necessary. Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval.

23.     **May I speak at the Fairness Hearing?**

You may ask the Court's permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838-JLS-JDE and *Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.)" or state in your objections that you intend to appear at the hearing. Be sure to include your name, address, telephone number, the model year and VIN for your Class Vehicle(s), and signature, as well as the identities of any attorneys who will represent you. Your Notice of Intention to Appear must be postmarked no later than [DATE], and be sent to Class Counsel and Defense Counsel, at the following addresses:

| Defense Counsel | Class Counsel |
|---|---|
| Shon Morgan<br>QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017 | Matthew D. Schelkopf<br>Sauder Schelkopf<br>555 Lancaster Avenue<br>Berwyn, Pennsylvania 19312 |

## IF YOU DO NOTHING

**24.    What happens if I do nothing at all?**

If you do nothing, you'll get no reimbursements from this Settlement, though you will be entitled to the benefits of the Lifetime Warranty (if you continue to own or lease your Class Vehicle).  But, unless you exclude yourself, you won't be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against HMA, HMC, KMC, KMA, or other related entities or individuals about the legal issues in this case, ever again.

However, even if you take no action, you will keep your right to sue Defendant for any other claims not resolved by the Settlement.

## GETTING MORE INFORMATION

**25.    Are there more details about the Settlement?**

This notice summarizes the proposed Settlement.  More details are in a Settlement Agreement, which you can view at [settlement website].

Neither Defendants nor the Class Representatives make any representation regarding the tax effects, if any, of receiving any benefits under this Settlement.  Consult your tax adviser for any tax questions you may have.

**26.    How do I get more information?**

You can call [Hyundai's phone number or Kia's phone number] toll free or visit [settlement website], where you will find information and documents about the settlement, a Claim Form, plus other information.  You may also contact Class Counsel listed in response to Question 12.

**Other than a request to review the Court's files at the Clerk of the Court's Office, please do not contact the Clerk of the Court or the Judge with questions.**

Case 8:17-cv-00838-JLS-JDE Document 145-2 Filed 10/19/20 Page 107 of 188 Page ID
Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 Page 93 of 74 Page ID
#:4733
#:2290

# EXHIBIT B

Claims can be submitted electronically at [settlement website].

# CLAIM FORM – Six Steps to Make a Claim

*In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.)
*Flaherty v. Hyundai Motor Company, et al.*, No. 18-cv-02223 (C.D. Cal.)

**[1] Verify the below information is correct. If it is incorrect or missing, please provide the information in the spaces below:**

[Auto Fill Name]
[Auto Fill Address 1]
[Auto Fill Address 2]
[Auto Fill City], [Auto Fill State] [Auto Fill Zip Code]

First Name:

Last Name:

Address 1:

Address 2:

City:                                     State:

Zip Code:

**[2] (Optional) - Please provide your email address:**

**Email:**

If you choose to provide your email address, Hyundai or Kia will contact you about the settlement by email. If not, Hyundai or Kia will contact you about the settlement at the postal address above.

**[3] Please provide your Vehicle Identification Number ("VIN").** The VIN is located on a small placard on the top of the dashboard and is visible through the driver's side corner of the windshield. It also appears on your vehicle registration card and probably appears on your vehicle insurance card. Your VIN should have 17 characters, a combination of both letters and numbers.

**VIN:**

**[4] Indicate the Reimbursement(s) You Are Claiming, The Amount of the Reimbursement You are Requesting, and Enclose The Required Documents. NOTE: More Than One Type of Reimbursement May Apply to You.**

☐ I AM REQUESTING REIMBURSEMENT FOR REPAIRS PERFORMED AT A HYUNDAI OR KIA DEALERSHIP FOR ENGINE STALLING, KNOCKING, ENGINE FAILURE, ENGINE FIRE, ILLUMINATION OF THE OIL LAMP OR OTHER ENGINE SHORT BLOCK ASSEMBLY REPAIR

Please provide the amount of the repairs for which you are requesting reimbursement:          $ [    ] . [    ]

04772-00006/11104326.6 *For more information please view the Class Notice, call* [Hyundai toll free no. & Kia toll free no.] *or visit www.*[website]*com*

**Documentation:** Enclose a credit card receipt, receipt from the dealership, credit card statement, OR other document showing the amount that you (or a friend or family member) paid for the repair(s).  (If you paid in cash and have no receipt, your signature on the reverse side of this claim form will constitute your attestation, under penalty of perjury, that you (or a friend or family member) paid for the repair in cash and do not have a receipt or documentation for the payment.)

☐   **I AM REQUESTING REIMBURSEMENT FOR REPAIRS PERFORMED AT A THIRD-PARTY REPAIR FACILITY (UNRELATED TO HYUNDAI OR KIA) FOR ENGINE STALLING, KNOCKING, ENGINE FAILURE, ENGINE FIRE, ILLUMINATION OF THE OIL LAMP OR OTHER ENGINE SHORT BLOCK ASSEMBLY REPAIR**

Please provide the amount of the repairs for which you are requesting reimbursement:                      $ ☐☐☐☐ . ☐☐

**Documentation:**  Enclose a repair invoice or document that shows: (i) the repair type, (ii) the repair date, and (iii) the amount paid (e.g., credit card receipt, credit card statement, or bank statement).  (If you paid in cash and have no receipt, your signature on the reverse side of this claim form will constitute your attestation, under penalty of perjury, that you (or a friend or family member) paid for the repair in cash and do not have a receipt or documentation for the payment.)

☐   **I AM REQUESTING THE $140 GOODWILL PAYMENT FOR PREVIOUSLY DENIED WARRANTY REPAIRS [If before receiving notice of this Settlement you presented a Qualifying Repair to a Hyundai or Kia dealership and were denied an in-warranty repair and subsequently obtained the Repair elsewhere, you may be eligible to receive an additional $140 goodwill payment.]**

☐   **I AM REQUESTING REIMBURSEMENT FOR RENTAL CAR / TOWING / OTHER COSTS INCURRED FOR ENGINE STALLING, KNOCKING, ENGINE FAILURE, ENGINE FIRE, ILLUMINATION OF THE OIL LAMP OR OTHER ENGINE SHORT BLOCK ASSEMBLY REPAIR**

Please provide the total amount of rental car, towing, and/or other costs for which you are requesting reimbursement:                      $ ☐☐☐☐ . ☐☐

**Documentation:**  Enclose a receipt or document showing all of the below:
- ▪ What was purchased (e.g., a rental car or towing service)
- ▪ Date of purchase
- ▪ Amount paid (e.g., credit card receipt, credit card statement, or bank statement).  (If you paid in cash and have no receipt, your signature on the reverse side of this claim form will constitute your attestation, under penalty of perjury, that you (or a friend or family member) paid for the repair in cash and do not have a receipt or documentation for the payment.)
- ▪ The date and nature of the corresponding repair (not needed if the repair was performed at a Hyundai or Kia dealership)

☐   **I AM REQUESTING COMPENSATION FOR INCONVENIENCE DUE TO REPAIR DELAYS EXCEEDING 60 DAYS**

Please provide the total number of days obtaining any repairs done at an authorized Hyundai or Kia dealership.

☐ I AM REQUESTING A CASH PAYMENT [If you had delays between 61 and 90 days you will be entitled to $50, and an additional $25 for each additional 30-day period (or fraction thereof) of delay.]

☐ I AM REQUESTING A DEALER SERVICE CARD FOR 150% OF THE CASH PAYMENT I WOULD OTHERWISE BE ENTITLED TO FOR THIS BENEFIT.

**Documentation: Documents supporting the number of delayed days (e.g. repair order identifying open and close date).**

☐ I AM REQUESTING REIMBURSEMENT FOR A CLASS VEHICLE I SOLD OR TRADED-IN AFTER THE VEHICLE WAS DIAGNOSED AS REQUIRING A QUALIFYING REPAIR, BUT BEFORE THE REPAIR WAS PERFORMED

- If you check this box Hyundai or Kia will contact you about your request for compensation.
- To potentially qualify for compensation your vehicle must have experienced an engine seizure, engine stall, engine noise, or illumination of the oil lamp that was diagnosed as requiring repair of the engine, but you sold or traded-in your vehicle before the repair was performed.
- The sale or trade-in must have occurred before [insert 90 days after notice date].
- You are eligible for reimbursement by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the baseline Black Book value (i.e., wholesale used vehicle value) of the sold or traded-in Class Vehicle plus $140.00 at the time of loss minus actual amount received from the sale or trade-in.
- If you have documents that you believe support your request for compensation, such as the repair facility diagnosis and paperwork showing what you received for your vehicle as a sale or trade-in, providing those documents with this claim form may assist in the processing of your claim.

☐ I AM REQUESTING REIMBURSEMENT FOR A CLASS VEHICLE THAT EXPERIENCED AN ENGINE FIRE

- If you check this box Hyundai or Kia will contact you about your request for compensation.
- To potentially qualify for compensation your vehicle must have experienced an engine fire as a result of an engine seizure, engine stall, engine noise, or illumination of the oil lamp due to a connecting rod bearing failure or symptoms associated with connecting rod bearing failure, that resulted in your loss of the vehicle.
- You must submit this claim no later than 90 days after the Notice Date or, for losses incurred after the Notice Date, no later than 90 days after the engine compartment fire occurred.
- You are eligible for payment by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the time of loss minus actual value received (if any).
- In addition to reimbursement for the vehicle, you are eligible to receive an additional $140 goodwill payment.If you have documents that you believe support your request for compensation, such as the repair facility diagnosis and paperwork showing what you received for your vehicle (if anything), providing those documents with this claim form may assist in the processing of your claim.

☐ I LOST FAITH IN MY VEHICLE UPON RECEIPT OF THE SETTLEMENT NOTICE, SOLD MY VEHICLE, AND PURCHASED A REPLACEMENT KIA (for KIA class members) OR HYUNDAI (for Hyundai class members) VEHICLE WITHIN 90 DAYS AFTER RECEIPT OF THE SETTLEMENT NOTICE

- If you check this box Hyundai or Kia will contact you about your request for compensation.

*For more information please view the Class Notice, call [Hyundai toll free no. & Kia toll free no.] or visit www.[website]com*

- To potentially qualify for this compensation, you must sell your vehicle in an arm's length transaction and purchase another vehicle from Kia (for Kia class members) or from Hyundai (for Hyundai class members).
- To potentially qualify for compensation your vehicle must have experienced an engine failure or an engine fire due to a connecting rod bearing failure or symptoms associated with connecting rod bearing failure.
- You must submit this claim within 90 days of the Notice Date, or for engine failure or fire occurring after the Notice Date, you must submit this claim within 90 days of the event.
- If you choose this option you are eligible for a rebate which shall be calculated as the actual loss by comparing sales documentation to the maximum Black Book value of the vehicle at the time the Knock Sensor Detection System campaign launch. You may be entitled to payment up to the following amounts:
  a. For model year 2011-2012 Class Vehicles: $2,000
  b. For model year 2013 and 2014 Class Vehicles: $1,500
  c. For model year 2015 and 2016 Class Vehicles: $1,000
  d. For model year 2017 and 2018 Class Vehicles: $500
- If you have documents that you believe support your request for compensation, such as the repair facility diagnosis, paperwork showing what you received for your vehicle's sale or trade-in, and paperwork showing proof of purchase of another Hyundai or Kia vehicle, providing those documents with this claim form may assist in the processing of your claim.

## [5] Sign & Date

The information on this form is true and correct to the best of my knowledge. I agree to participate in the settlement. I authorize any dealership that serviced my vehicle to release records to Hyundai or Kia to help pay my claim. To the extent I am seeking reimbursement for a dealership repair and do not have a receipt or other documentation for the corresponding cash payment, I attest under penalty of perjury that I (or a friend or family member) paid for the repair in cash and I do not have a receipt or documentation for the payment. If I am seeking to participate in the rebate program, I attest under penalty of perjury that I have lost faith in my vehicle.

Signature:_____ Date:_____

## [6] Submit: Email the completed form and the documentation to [Hyundai email address or Kia Settlement Administrator email address] or mail it to [Hyundai postal mail address or Kia Settlement Administrator postal mail address]

# EXHIBIT C

# Pamphlet

### *[Text only; to be accompanied by color vehicle photography]*

***Cover Page***

INFORMATION ABOUT THE ENGINE IN YOUR [HYUNDAI/KIA] VEHICLE

*Please keep this brochure in your [Hyundai/Kia] vehicle's glove box with your Owner's Manual*

***Page 1***

**Software Upgrade: Knock Sensor Detection System**

A new engine monitoring technology called a "knock sensor detection system" has been developed. The technology enables the detection of potential early engine issues caused by excessive bearing wear, and has been evaluated by one of the world's leading engineering and scientific consulting firms. The technology has recently been made available for your vehicle.

If you have not already done so, please take your vehicle to a [Hyundai/Kia] dealership to receive the knock sensor detection software update. This will be provided to you at no cost.

The software is designed to detect early signs of excessive connecting rod bearing wear that are ordinarily associated with an engine knocking noise. Once detected, the system alerts the driver, through dashboard warnings and by placing the vehicle in a reduced, engine protection mode, that the vehicle needs to be serviced immediately at a [Hyundai/Kia] dealer. In that case, please proceed directly to a [Hyundai/Kia] dealer.

***Page 2***

**Lifetime Warranty**

Hyundai is also providing lifetime warranty coverage for certain engine repairs for original and subsequent owners of model year 2011-2019 Sonatas, 2013-2018 Santa Fe Sports, 2019 Santa Fes, and 2014, 2015, 2018 and 2019 Tucsons who obtain the software updated described above. The lifetime warranty will cover the short block assembly, consisting of the engine block, crankshaft and main bearings, connecting rods and connecting rod bearings, and pistons. The lifetime warranty will also apply to any damage caused to the long block assembly due to connecting rod bearing failure.

***Back Cover***

Should you have any questions regarding the information contained in this pamphlet, please contact the [Hyundai Customer Connect Center at _____] Kia Customer Assistance Center at _____].

Thank you for choosing [Hyundai/Kia].

Case 8:17-cv-00838-JLS-JDE Document 145-2 Filed 10/09/20 Page 114 of 188 Page ID
Case 8:17-cv-00838-JLS-JDE Document 112-2 Filed 10/10/19 Page 65 of 74 Page ID
#:4740
#:2297

# EXHIBIT D

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | 8:17-cv-00838-JLS-JDE<br><br>Related Cases:<br>8:17-cv-01365-JLS-JDE<br>8:17-cv-02208-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE<br>8:18-cv-02223-JLS-JDE<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

WHEREAS, Plaintiffs Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse ("Named Plaintiffs" or "Class Representatives"), individually and as representatives of a Class defined below, and Defendants Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), Kia Motors Corporation ("KMC") and Kia Motors America ("KMA") (collectively the "Parties") have entered into a Settlement Agreement dated October 10, 2019, which, if approved, would resolve this class action;

WHEREAS, the Named Plaintiffs have filed a motion for preliminary approval of the proposed settlement, and the Court has reviewed and considered the motion, the supporting brief, the Settlement Agreement, and all exhibits thereto, including the proposed class notice (the "Long Form Notice"), claim form ("Claim Form"), and

pamphlet ("Pamphlet"), and finds there is sufficient basis for granting preliminary approval of the settlement, directing that notice be disseminated to the class, and setting a hearing at which the Court will consider whether to grant final approval of the settlement;

IT IS HEREBY ORDERED that:

1.     Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.

2.     Under the Settlement Agreement, the Class has been defined as: All owners and lessees of a Class Vehicle who purchased or leased a Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in U.S. territories and/or abroad. Excluded from the claims of the Class (and not released by this Settlement) are all claims for death, personal injury, property damage (other than damage to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation. Also excluded from the Class are HMA, HMC, KMC and KMA; any affiliate, parent, or subsidiary of HMA, HMC, KMC or KMA; any entity in which HMA, HMC, KMC or KMA has a controlling interest; any officer, director, or employee of HMA, HMC, KMC or KMA; any successor or assign of HMA, HMC, KMC or KMA; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (c) individuals and/or entities who validly and timely opt-out of the settlement; (d) consumers or businesses that have purchased Class Vehicles previously deemed a total loss (i.e., salvage or junkyard vehicles) (subject to verification through Carfax or other means); and (e) current or former owners of a Class Vehicles that previously released their claims in an individual settlement with HMA, HMC, KMC and KMA with respect to the issues raised the Action (for the purpose of clarity, individual owners of 2011-2014 Hyundai Sonatas who released claims against HMA and HMC

in the settlement reached in *Mendoza v. Hyundai Motor Company Ltd., et. al.*, Case No. 15-cv-01685-BLF (C.D. Cal.) are not excluded from the claims of the Class).

3.   The Court preliminarily approves the proposed settlement, finding that the terms of the Settlement Agreement appear sufficiently fair, reasonable, and adequate to warrant dissemination of the Long Form Notice of the proposed settlement to the Class. The Court finds that the Settlement Agreement contains no obvious deficiencies and that the parties entered into the Settlement Agreement in good faith, following arm's-length negotiation between their respective counsel.

4.   The Court appoints Matthew D. Schelkopf of Sauder Schelkopf, Adam Gonnelli of The Sultzer Law Group, Bonner Walsh of Walsh PLLC, and Steve W. Berman of Hagens Berman Sobol Shapiro LLP as Class Counsel and Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse as Class Representatives.

5.   The Court hereby approves the form and procedures for disseminating notice of the proposed settlement to the Class as set forth in the Settlement Agreement. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid and sufficient notice to the Class in full compliance with the requirements of due process and applicable law.

6.   For purposes of identifying current and former owners and lessees of Class Vehicles, R.L. Polk & Company, or a similar third-party entity, is hereby authorized to provide the names and most current addresses of such owners and lessees to HMA and/or KMA or their designee(s). Any governmental agency in possession of names or addresses of current and former Class Vehicle owners or

[PROPOSED] ORDER GRANTING PLTFS.' MOTION FOR
PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT - 3

lessees is hereby authorized and directed to release that information to R.L. Polk & Company, or a similar third-party entity, upon request.

      7.    As set forth in the Settlement Agreement, HMA, HMC, KMC and KMA shall bear all costs and expenses in connection with providing notice to the Class and administering the proposed settlement.

      8.    Any Class Member shall have the right to opt out of the Class and the settlement by sending a written request for exclusion from the Class to the address listed in the Long Form Notice postmarked no later than the deadline provided for such exclusion as set forth in the Long Form Notice. To be effective, the request for exclusion must include:

        (i)    the Class Member's full name and current address;

        (ii)    the model year and Vehicle Identification Number ("VIN") of the Class Member's Class Vehicle(s) and the approximate date(s) of purchase or lease;

        (iii)    a clear and specific statement of the Class Member's desire to be excluded from the Settlement and from the Class.

Any Class Member who does not submit a timely and valid request for exclusion shall be subject to and bound by the Settlement Agreement and every order or judgment entered concerning the Settlement Agreement.

      9.    Any Class Member who intends to object to final approval of the settlement and/or the amount of attorneys' fees must send a letter, postmarked no later than the deadline provided for such objection to the Court, Class Counsel, and Defense Counsel, as set forth in the Long Form Notice. Each objection must include:

        (i)    the case name and number, *In re: Hyundai and Kia Engine Litig.*, No. 8:17-cv-00838 (C.D. Cal.);

        (ii)    the objecting Class Member's full name, current address, and current telephone number;

|   |   |   |
|---|---|---|
| 1 | (iii) | the model year and VIN of the objecting Class Member's Class |
| 2 |  | Vehicle(s); |
| 3 | (iv) | a statement of the objection(s), including all factual and legal |
| 4 |  | grounds for the position; |
| 5 | (v) | copies of any documents the objecting Class Member wishes to |
| 6 |  | submit in support; |
| 7 | (vi) | the name and address of the lawyer(s), if any, who is representing |
| 8 |  | the objecting Class member in making the objection or who may be |
| 9 |  | entitled to compensation in connection with the objection; |
| 10 | (vii) | a statement of whether the Class member objecting intends to |
| 11 |  | appear at the Final Approval Hearing, either with or without |
| 12 |  | counsel; |
| 13 | (viii) | the identity of all counsel (if any) who will appear on behalf of the |
| 14 |  | Class member objecting at the Final Approval Hearing and all |
| 15 |  | persons (if any) who will be called to testify in support of the |
| 16 |  | objection; |
| 17 | (ix) | the signature of the Class member objecting, in addition to the |
| 18 |  | signature of any attorney representing the Class member objecting |
| 19 |  | in connection with the objection, and date the objection; and |
| 20 | (x) | a list of any other objections submitted by the objector, or the |
| 21 |  | objector's counsel, to any class action settlements submitted in any |
| 22 |  | court in the United States in the previous five years (or Class |
| 23 |  | member shall affirmatively state in writing that the Class member |
| 24 |  | or his or her counsel has not made any such prior objection); and |
| 25 | (xi) | a statement disclosing any consideration that the objector, or the |
| 26 |  | objector's counsel (if any), or the objector's counsel's law firm (if |
| 27 |  | any) has received in connection with the resolution or dismissal of |
| 28 |  |  |

[PROPOSED] ORDER GRANTING PLTFS.' MOTION FOR
PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT - 5

an objection to a class action settlement within the five years
preceding the date that the objector files the objection.

10. If the objecting Class member intends to appear, in person or by counsel, at the final approval hearing, the objecting Class member must so state in the objection.

11. The Court will hold a Fairness Hearing addressing the final approval of the Settlement Agreement, an award of fees and expenses to Class Counsel, and incentive payments to the Class Representatives, before the undersigned judge at the U.S. District Court for the Central District of California, Los Angeles Courthouse, 411 W. Fourth St., Santa Ana, CA 92701. At the Fairness Hearing, the Court will consider: (i) whether the settlement should be approved as fair, reasonable, and adequate for the class; (ii) whether a judgment granting approval of the settlement and dismissing the lawsuit with prejudice should be entered; and (iii) whether Class Counsel's application for attorneys' fees and expenses should be granted.

12. The following schedule shall govern the class action settlement proceedings:

(i) HMA, HMC, KMC and KMA must cause individual notice, substantially in the form attached to the Settlement Agreement as Exhibit A (proposed Class Notice) and Exhibit B (the Claim Form), to be mailed via first-class mail to all reasonably identifiable Class Members by _____ (within 90 days after entry of this Preliminary Approval Order).

(ii) Class Members must mail any letter objecting to the proposed settlement on or before _____ (within 60 days after the Notice Date).

     (iii) Class Members must mail any letter electing to exclude themselves from the Class on or before _____ (within 60 days after the Notice Date).

     (iv) The Parties shall submit motions for final approval of the proposed settlement, including any exhibits or attachments thereto, on or before _____ (14 days prior to the Fairness Hearing).

     (v) The Fairness Hearing shall be held on _____ (165 days after entry of this Preliminary Approval Order).

The dates established for items (ii), (iii), and (v) shall be included in the Long Form Notice mailed to Class Members.

   13. Plaintiffs shall file, on or before _____ (30 days after the Notice Date), a motion for attorneys' fees and expenses. HMA, HMC, KMC and KMA shall file any responses to the motion on or before _____, and, if necessary, Plaintiffs shall file a reply brief in support of its motion on or before _____.

   14. The Court has the authority and duty under Rule 23 of the Federal Rules of Civil Procedure to manage this class action litigation, ensure that clear and accurate notices are provided to the class, and protect the class members from information and communications about the proposed settlement or litigation that are coercive, deceptive, false, misleading, confusing, omit material information, or otherwise undermine the class action process. The Court has approved certain forms of notice that provide class members with clear, accurate, and objective information about the proposed settlement. The Court intends to carefully scrutinize any additional communications with, or information directed to, class members that are brought to its attention by a moving party, including communications or information provided by or on behalf of persons or entities who are not named parties in this litigation. *See* Manual for Complex Litigation (4th) § 21.33 ("Objectors to a class settlement or their

attorneys may not communicate misleading or inaccurate statements to class members about the terms of a settlement to induce them to file objections or to opt out."); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1140 n.60 (7th Cir. 1979) ("Solicitations to opt-out tend to reduce the effectiveness of (b)(3) class actions for no legitimate reason.").

15.     With respect to any such communications or information, the Court intends to make specific findings based on the particular circumstances, and will take appropriate action in accordance with the standards set forth in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).  In order to reduce the risk of class members receiving misleading or confusing information outside the context of the forms of notice approved by the Court and to reduce the need for costly curative notice, the Court encourages any person who wishes to send or provide a written communication to multiple class members about the proposed settlement or this litigation to submit the proposed communication to the Court for review and approval prior to issuing it.

16.     Since the Court has appointed Class Counsel and preliminarily certified the class, the Court also finds that the class members are represented by Class Counsel, and the ethical rule relating to communications with represented persons applies to attorney communications with the class members. *See, e.g.*, ABA Model Rule of Professional Conduct 4.2 (and the relevant counterparts in each state or jurisdiction); *see also Jacobs v. CSAA Inter-Ins.*, No. C07-00362MHP, 2009 WL 1201996, at *3 (N.D. Cal. May 1, 2009).  Therefore, the Court reminds any lawyer wishing to communicate with class members to comply with applicable ethical rules. *See, e.g.*, ABA Model Rule of Professional Conduct 4.2 ("[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").

17. In most circumstances, communications by lawyers with class members about this class action litigation or the proposed settlement must go through Class Counsel, and direct contact is prohibited. However, this Order is not intended to prevent an individual class member from proactively seeking the advice of a third-party attorney regarding his or her rights in the context of this class action during the opt-out period.


DATED: _____


_____
Hon. Josephine L. Staton
U.S. District Court Judge

# EXHIBIT D

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

*In re: Hyundai and Kia Engine Litigation*

8:17-cv-00838-JLS-JDE

Related Cases:
8:17-cv-01365-JLS-JDE
8:17-cv-02208-JLS-JDE
2:18-cv-05255-JLS-JDE
8:18-cv-00622-JLS-JDE
8:18-cv-02223-JLS-JDE

**DECLARATION OF ADAM GONNELLI IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT**

1    1.    My name is Adam Gonnelli, one of the Class Counsel in this case.

2    2.    At the request of Hemming Morse, the valuation expert Class Counsel

3    retained to opine on the value of the proposed settlement, I obtained certain

4    information that Hemming Morse wished to use in their analysis.

5    3.    In addition to the Defendants' Interrogatory responses of January 27,

6    2020, from August through October 2020, I requested and received the following

7    information from the defendants and their counsel and from Epiq, the settlement

8    claims administrator for Kia Motors America.

9    4.    The information included updated Interrogatory responses, information

10   about warranty pricing, further detail on Class vehicles sales by year and model, and

11   claims data.

12   5.    In an updated response to Interrogatories propounded by plaintiffs, Kia

13   stated that as of September 14, 2020, the total population of Kia Class Vehicles was

14   1,868,031.  Of those,  138,177 had a branded title and 1,371 were not sold mainly due

15   to fire damage in transport. This leaves the number of Kia Class Vehicles at

16   1,728,483.

17   6.    In an updated response to Interrogatories propounded by plaintiffs,

18   Hyundai stated that as of September 16, 2020, the total number of Hyundai Class

19   Vehicles sold was 2,402,230, of which 174,145 were scrapped, salvaged, crushed or

20   whose registration had lapsed for three years or more.  The number of Hyundai Class

21   Vehicles included in the settlement is thus 2,228,805.

22   7.    According to Hyundai, the average MSRP in 2020 for the 10-

23   year/100,000 mile Powertrain warranty is $2,431 for a vehicle with 60,000 miles.

24   8.    Kia provided the MSRP for the following warranties:

| Model | Protection Plan | MSRP Cost (New/Used) |
|-------|-----------------|----------------------|
| Sorento | Gold Coverage | ██████████████ |
|  |  | ████████████████ |
|  | Platinum Coverage | ████████████ |

1

DECLARATION OF ADAM GONNELLI IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

| Model | Protection Plan | MSRP Cost (New/Used) |
|---|---|---|
| | | ███████████████ |
| | Powertrain Coverage | ███████████ |
| | | |
| Sportage | Gold Coverage | ███████████████ |
| | | ███████████████ |
| | Platinum Coverage | ██████████ |
| | | ███████████ |
| | Powertrain Coverage | ██████████ |
| | | |
| Optima | Gold Coverage | ████████████ |
| | | ████████████ |
| | Platinum Coverage | ████████████ |
| | | ████████████ |
| | Powertrain Coverage | ████████████ |

9. Hyundai and Kia stated that the value of the short engine block does not constitute less than 10% of the value of the powertrain.

10. In its Interrogatory responses of January 27, 2020, Kia stated that labor rates at dealerships in the United States ranged from $83 to $173 per hour and that the average labor rate in the United States at a Kia dealership is $115 per hour.

11. In its Interrogatory responses of January 27, 2020 Hyundai stated that labor rates at dealerships in the United States ranged from $75 to $202 per hour and that the average labor rate in the United States at a Hyundai dealership is $120 per hour.

12. Defendants clarified to me that the average labor rates were calculated on a dealer-by-dealer basis, by adding the labor rates at all dealers and dividing by number of dealers.

DECLARATION OF ADAM GONNELLI IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

13.     In its Interrogatory responses of January 27, 2020, Kia stated that it reimburses dealers for 0.3 hours of labor to install the KSDS update in in Class Vehicles.

14.     In its Interrogatory responses of January 27, 2020, Hyundai stated that it reimburses dealers for 0.3 hours of labor to install the KSDS update in in Class Vehicles other than the 2015 model year Sonata and Sante Fe Sport vehicles, for which it reimburses dealers for 0.5 hours of labor.

15.     Hyundai stated that it will reimburse dealers for 0.5 hours for a diagnostic inspection for all Hyundai Class Vehicles except for the 2019 Hyundai Santa Fe model, for which Hyundai reimburses 0.6 hours.

16.     Kia stated that it will reimburse dealers for 0.7 hours of labor for a diagnostic inspection.

17.     Kia stated that the range of participation in a typical recall is approximately 25-35%.  I asked Hemmings Morse to use the bottom of the range, 25%, to estimate how many Class vehicles would be inspected under the free inspection component of the settlement.

18.     In an updated response to Interrogatories propounded by plaintiffs, Kia stated that the KSDS had been installed on 1,264,871 Kia Class Vehicles as of September 21, 2020.

19.     In an updated response to Interrogatories propounded by plaintiffs, Hyundai stated that the KSDS had been installed on 1,659,338 Hyundai Class Vehicles as of September 16, 2020.

20.     Kia provided the following updated information on sales:

| Model | Year | # of Class Vehicles Produced | # of Retailed thru 9/14/2020 | Remarks |
|---|---|---|---|---|
| Sportage (Theta II 2.4 GDI | 2011 | 3,273 | 3,273 | |
| | 2012 | 2,284 | 2,284 | |

DECLARATION OF ADAM GONNELLI IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

| | | | | |
|---|---|---|---|---|
| & 2.0 TGDI) | 2013 | 2,690 | 2,690 | |
| | 2014 | 34,006 | 33,303 | Some (703) of production were fire-damaged while on vessel ('Asian Empire') & scrapped |
| | 2015 | 43,177 | 43,177 | |
| | 2016 | 46,147 | 46,146 | |
| | 2017 | 107,488 | 107,483 | |
| | 2018 | 73,088 | 72,776 | |
| | 2019 | 67,613 | 67,571 | |
| | Total | 379,766 | 378,703 | |
| | | | | |
| Optima (Theta II 2.4 GDI & 2.0 TGDI) | 2011 | 61,459 | 61,459 | |
| | 2012 | 95,995 | 95,995 | |
| | 2013 | 193,336 | 193,336 | |
| | 2014 | 99,955 | 99,913 | Some (42) of production were fire-damaged while on vessel ('Asian Empire') & scrapped |
| | 2015 | 214,799 | 214,797 | |
| | 2016 | 122,478 | 122,409 | |
| | 2017 | 55,881 | 55,881 | |
| | 2018 | 94,284 | 94,143 | |
| | 2019 | 69,538 | 69,506 | |
| | Total | 1,007,725 | 1,007,439 | |
| | | | | |
| Sorento (Theta II 2.4 GDI & 2.0 TGDI) | 2011 | 0 | 0 | |
| | 2012 | 47,262 | 47,262 | |
| | 2013 | 43,935 | 43,935 | |
| | 2014 | 72,887 | 72,887 | |
| | 2015 | 62,254 | 62,254 | |

4

| | 2016 | 91,971 | 91,968 | |
|---|---|---|---|---|
| | 2017 | 68,158 | 68,158 | |
| | 2018 | 37,361 | 37,351 | |
| | 2019 | 56,712 | 56,703 | |
| | Total | 480,540 | 480,518 | |

| Overall | 1,868,031 | 1,866,660 | 1,371 not sold (745 of 1,371 were scrapped due to fire damage.) |
|---|---|---|---|

21.    Hyundai provided the following information on sales of Class Vehicles by year:

| Vehicle Model | Model Year | Class Vehicles |
|---|---|---|
| **Sonata** | 2011 | 289,061 |
| | 2012 | 178,285 |
| | 2013 | 286,407 |
| | 2014 | 132,077 |
| | 2015 | 233,719 |
| | 2016 | 162,824 |
| | 2017 | 149,303 |
| | 2018 | 122,151 |
| | 2019 | 88,166 |
| **Sonata Total** | | **1,641,993** |
| **Santa Fe** | 2013 | 91,194 |
| | 2014 | 80,151 |
| | 2015 | 53,969 |
| | 2016 | 56,414 |
| | 2017 | 141,422 |
| | 2018 | 104,759 |

5

| | 2019 | 115,852 |
|---|---|---|
| Santa Fe Total | | **643,761** |
| | 2014 | 30,506 |
| | 2015 | 29,999 |
| Tucson | 2018 | 7,388 |
| | 2019 | 48,583 |
| | | **116,476** |
| Grand Total | | **2,402,230** |

22.    Epiq projects that they will receive 86,400 Kia claims by the end of the claim period, April 12, 2020.

23.    Hyundai reported as of September 16, 2020 receiving the following claims:

| Settlement Claims in process | No. Claims Received | Face Value (Received) |
|---|---|---|
| Reimbursement for past repairs | 5,503 | $9,930,952 |
| Inconvenience: repaired elsewhere | 2,602 | $364,280 |
| Inconvenience: repair delay | 1,147 | $319,000 |
| Vehicle fire incidents | 589 | $34,626 |
| Prior disadvantaged trade/sales | 1,544 | $7,640 |
| Lost faith rebates | 1,188 | $5,545 |
| Out of Pocket expenses/towing/rentals | 3,108 | $2,205,775 |

DECLARATION OF ADAM GONNELLI IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

Hyundai states that the average number of days of delay stated in claims for inconvenience/delay is 114.

24.     Kia and Epiq reported receiving the following claims as of September 18, 2020:

| Claim Type | Total Claims | Amount Claimed | Average Per Claim |
|---|---|---|---|
| Kia Repair | 2,439 | $5,560,936.56 | $2,280.01 |
| Third Party Repair | 2,461 | $5,319,279.00 | $2,161.43 |
| Rental/Towing Costs | 2,964 | $2,566,661.03 | $865.95 |
| Sold Before Repair | 1,670 | | |
| Engine Fire | 734 | | |
| Lost Faith | 1,811 | | |

Kia further states that as of September 18, 2020 there were 1,490 claims for repair delays; 788 of those claims are for over 60 days; and that the average claim is for 159 days.  The average claim is for $125, and most claimants are choosing the cash option, with only 72 claimants having elected the dealer service card.

I state under penalty of perjury that the above statements are true.

Dated this day of October 16, 2020.

_____
Adam Gonnelli

DECLARATION OF ADAM GONNELLI IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT
Case No.: 8:17-cv-00838

# EXHIBIT E

1   Matthew D. Schelkopf
    SAUDER SCHELKOPF
2   555 Lancaster Avenue
    Berwyn, Pennsylvania 19312
3   mds@sstriallawyers.com

4   Adam Gonnelli (*pro hac vice*)
    THE SULTZER LAW GROUP
5   85 Civic Center Plaza, Suite 104
    Poughkeepsie, NY 12601
6   gonnelia@thesultzerlawgroup.com

7   Bonner Walsh (*pro hac vice*)
    WALSH PLLC
8   1561 Long Haul Road
    Grangeville, ID 83530
9   bonner@walshpllc.com

10  *Attorneys for Plaintiffs and the Proposed Class*

11  **[LIST OF ADDITIONAL COUNSEL ON SIGNATURE PAGE]**

12          **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14

15  | *In re: Hyundai and Kia Engine Litigation* | 8:17-cv-00838-JLS-JDE |
    |---|---|

16  Related Cases:

17  8:17-cv-01365-JLS-JDE
    8:17-cv-02208-JLS-JDE
18  2:18-cv-05255-JLS-JDE
    8:18-cv-00622-JLS-JDE
19  8:18-cv-02223-JLS-JDE

20

21  **PLAINTIFFS' NOTICE OF
    MOTION AND UNOPPOSED**
22  **MOTION FOR PRELIMINARY
    APPROVAL OF CLASS ACTION**
23  **SETTLEMENT**

24

25  Date: December 13, 2019
    Time: 10:30 a.m.
26  Hon. Josephine L. Staton
    Courtroom: 10A
27

28

---

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No.: 8:17-cv-00838

# TABLE OF CONTENTS

*Page*

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND..................................................................1

    A.   Plaintiffs' Allegations and Pre-Litigation Investigation ...............1

    B.   History of the Litigation ...............................................................1

    C.   Settlement ....................................................................................3

    D.   Terms of the Settlement Agreement .............................................3

        1.   Lifetime Warranty Coverage for Engine Short Block ........4

        2.   Recall and Product Improvements .....................................5

        3.   Repair Reimbursements .....................................................5

        4.   Other Repair-Related Reimbursements ..............................7

        5.   Inconvenience Due to Repair Delays..................................7

        6.   Loss of Value for Sold or Traded-In Vehicles....................7

        7.   Loss of Vehicle by Engine Fire .........................................8

        8.   Rebate Program .................................................................9

III.  ARGUMENT........................................................................................9

    A.   The Settlement Merits Preliminary Approval. ..............................9

        1.   The Settlement is the Product of Serious, Informed, Arm's-Length Negotiations by Experienced Counsel. ............................................................10

        2.   The Settlement Does Not Improperly Grant Preferential Treatment to the Class Representatives or Segments of the Class..........................12

        3.   The Settlement Has No Obvious Deficiencies. ................13

        4.   The Settlement Falls Within the Range of Possible Approval. .........13

            i.   The Strength of Plaintiffs' Case .............................13

            ii.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation.................................................15

            iii.   The Risk of Maintaining Class Action Status Through Trial..16

            iv.   The Amount or Type of Relief Offered in Settlement ...........16

i

v.      The Extent of Discovery Completed and the Stage of the Proceedings........................................................................17

vi.     The Experience and Views of Counsel ..................................18

vii.    The Presence of a Governmental Participant ........................18

viii.   The Reaction of Class Members.............................................19

B.    The Settlement Class Satisfies Rule 23........................................................19

1.    The Settlement Class Meets the Requirements of Rule 23(a). ..........19

2.    The Settlement Class Meets the Requirements of Rule 23(b)(3). ......21

C.    The Court Should Order Dissemination of the Class Notice. .....................23

1.    The Settlement Provides the Best Method of Notice Practicable......23

2.    The Proposed Notice Adequately Informs Class Members of their Rights. ....................................................................................25

3.    Notice to Federal and State Officials.................................................26

D.    The Court Should Set a Schedule for Final Approval ................................26

IV.    CONCLUSION...............................................................................................26

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007)............................................................16

*Aikens v. Malcolm Cisneros*,
No. 5:17-CV-02462-JLS-SP, 2019 WL 3491928 (C.D. Cal. July 31, 2019) ...................................................................................19, 20, 21

*Altamirano v. Shaw Indus., Inc.*,
No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) ........................................................................................12

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)............................................................19, 23

*In re Bluetooth Headset Products Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...................................................10

*Brogan v. Hyundai Motor America, et al.*,
No. 8:17-cv-00622 (C.D. Cal) ..................................................2

*Centko and Lazar v. Kia Motors America, Inc.*,
No. 8:17-cv-00838 (C.D. Cal.) ...............................................1, 2

*Chamberlan v. Ford Motor Co.*,
223 F.R.D. 524 (N.D. Cal. 2004)............................................22

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ..............................................10, 25

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*,
No. CV-10-3873-JST, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ...............17

*Collins v. Cargill Meat Sols. Corp.*,
274 F.R.D. 294 (E.D. Cal. 2011) ..........................................10

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ...............................................16

iii

*Flaherty v. Hyundai Motor Co., et al.*,
    No. 18-cv-02223 (C.D. Cal.) ........................................................2, 3, 11, 17

*G. F. v. Contra Costa Cty.*,
    No. 13-CV-03667-MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ..............10, 12

*In re Gen. Motors Corp. Pickup Truck Fuel Tank Products Liab. Litig.*,
    MDL 961, 1993 WL 204116 (E.D. Pa. June 10, 1993)........................................18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................19, 20, 21, 22

*Hughes v. Microsoft Corp.*,
    Nos. C98–1646C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ......................10

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d at 566 .........................................................................2, 21, 23

*Kakani v. Oracle Corp.*,
    No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007) ....................13

*Kinnick and Coats v. Hyundai Motor Co., et al.*,
    No. 8:17-cv-02208 (C.D. Cal.) ........................................................................2

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ........................................................15, 17

*Mendoza v. Hyundai Motor Company Ltd., et. al.*,
    Case No. 15-cv-01685-BLF (C.D. Cal.)................................................................4, 6

*Musgrave v. Hyundai Motor America, Inc.*,
    No. 4:18-cv-07313-YGR (N.D. Cal.) ................................................................2

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)................................................................16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615, 625 (9th Cir. 1982) ........................................................13, 17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................................18

iv

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .................................................................11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..........................................................19

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) .........................................................25

*Ruch v. AM Retail Grp., Inc.*,
    No. 14-CV-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ...................12

*Saenz v. Lowe's Home Centers, L.L.C.*,
    No. 2:1-cv-08758-ODW-PLA, 2019 WL 1382968 (C.D. Cal. Mar. 27, 2019) ..........................................................20

*Schaffer v. Litton Loan Servicing, LP*,
    No. 05-cv-07673-MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012)..........25

*Smith v. Am. Greetings Corp.*,
    No. 14-CV-02577-JST, 2016 WL 362395 (N.D. Cal. Jan. 29, 2016) ..............12

*Smolek v. Hyundai Motor America, et al.*,
    No. 2:18-cv-05255 (C.D. Cal.) ...............................................................2

*Stanczak and Creps v. Kia Motors America, Inc. et al.*,
    No. 8:17-cv-1365 (C.D. Cal.) ................................................................2

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..........................................................9, 13

*Sullivan v. Am. Express Publ'g Corp.*,
    No. SACV 09-142-JST, 2011 WL 2600702 (C.D. Cal. June 30, 2011) ...........23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................20

*West v. Circle K Stores, Inc.*,
    No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) .............................................................................13

v

*Wolin v. Jaguar Land Rover N. Am., L.L.C.,*
    617 F.3d 1168 (9th Cir. 2010) ...............................................................20, 22

**Rules and Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .........................................26

Fed. R. Civ. P. 23 ...........................................................................*passim*

L.R. 7-3 ...................................................................................................1

**Other Authorities**

A. Conte & H.B. Newberg, Newberg on Class Actions § 11:41...............10, 15

Manual for Complex Litigation (Fourth) § 21.7 ("Manual (Fourth)...................11, 13, 19

Manual for Complex Litigation (Third) § 30.42 ("Manual (Third)") .............10

Wright, Miller & Kane, Federal Practice and Procedure § 1778 (2d Ed.
    1986) ................................................................................................21

vi

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 13, 2019, at 10:30 a.m. before Honorable Josephine L. Staton in Court 10A, 10th Floor, of the United States District Court for the Central District of California, located at Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Plaintiffs Cara Centko, Jenn Lazar, Christopher Stanczak, Rose Creps, James Kinnick, Wallace Coats, Maryanne Brogan, Andrea Smolek, Danny Dickerson, Robert Fockler, Amy Franklin, Donald House, Dave Loomis, Joseph McCallister, Arron Miller, Ricky Montoya, Lynn North, Mark Rice, Reid Schmitt, James Smith, and Chris Stackhouse will and hereby do move for an order of the Court to preliminarily approve the settlement; certify the proposed settlement class under Rule 23(b)(3); appoint Plaintiffs as class representatives; appoint the undersigned attorneys as Class Counsel; order dissemination of the class notice pursuant to the notice plan set forth in the Settlement Agreement; and set a schedule for final settlement approval.

Plaintiffs' unopposed motion is based on this notice; the accompanying Memorandum of Law; the Declarations of Matthew D. Schelkopf and Steve W. Berman and all attachments thereto (including the Settlement Agreement); the Proposed Order Granting Preliminary Approval of the Class Action Settlement; and all other papers filed and proceedings had in this Action.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 10, 2019.

Dated: October 10, 2019        Respectfully submitted,

               By:/s/ *Matthew D. Schelkopf*
                 Joseph G. Sauder
                 Matthew D. Schelkopf
                 Joseph B. Kenney
                 **SAUDER SCHELKOPF**
                 555 Lancaster Avenue

1

Case 8:17-cv-00838-JLS-JDE   Document 145-2   Filed 10/19/20   Page 142 of 188   Page ID
Case 8:17-cv-00838-JLS-JDE   Document 145   Filed 10/10/19   Page 9 of 37   Page ID #:2199
#:4768

Berwyn, Pennsylvania 19312
Telephone: (610) 200-0581
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

Adam Gonnelli (*pro hac vice*)
**THE SULTZER LAW GROUP**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
gonnelia@thesultzerlawgroup.com

Bonner Walsh (*pro hac vice*)
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com

.

2

# I. INTRODUCTION

After more than a year of settlement negotiations and discovery, the Parties have resolved this consumer class action in which Plaintiffs allege the Class Vehicles[1] suffer from premature engine failure. Plaintiffs allege Defendants knew of a material defect in the Settlement Class Vehicles, but failed to disclose the defect at the point of sale. Under the proposed settlement, Settlement Class Members may receive a range of benefits, including reimbursement for certain out-of-pocket repairs and costs, a Lifetime Warranty extension, goodwill payments, a rebate, and reimbursement for sold or traded-in Settlement Class Vehicles with a failed engine.

Because the proposed settlement provides substantial benefits to Settlement Class Members while avoiding the risks and costs of protracted litigation, Plaintiffs respectfully request this Court grant their unopposed Motion for Preliminary Approval of the Class Action Settlement.

# II. FACTUAL BACKGROUND

## A. Plaintiffs' Allegations and Pre-Litigation Investigation

This class action lawsuit was first commenced on May 10, 2017. It was filed after an extensive pre-suit investigation by Plaintiffs' counsel that began on or about February 2, 2017. This investigation included speaking with members of the potential class, reviewing documents provided by class members, reviewing Hyundai and Kia engine designs with automotive experts, and investigating potential legal claims applicable to the class.

## B. History of the Litigation

On May 10, 2017, Plaintiffs Cara Centko and Jenn Lazar filed the proposed nationwide class action lawsuit *Centko and Lazar v. Kia Motors America, Inc.*, No. 8:17-cv-00838 (C.D. Cal.). On August 8, 2017, Plaintiffs Christopher Stanczak and Rose

---

[1] The capitalized terms used in this Memorandum are defined in Section I of the Settlement Agreement. The Settlement Agreement and its exhibits are attached as Exhibit 1 to the Declaration of Matthew D. Schelkopf ("Schelkopf Decl."). The list of Settlement Class Vehicles in this case are also listed in Section II(D), *infra*.

1

Creps filed the proposed nationwide class action lawsuit *Stanczak and Creps v. Kia Motors America, Inc. et al.,* No. 8:17-cv-1365 (C.D. Cal.). On December 19, 2017, Plaintiffs James Kinnick and Wallace Coats filed the proposed nationwide class action lawsuit *Kinnick and Coats v. Hyundai Motor Co., et al.*, No. 8:17-cv-02208 (C.D. Cal.). On January 23, 2018, Plaintiff Maryanne Brogan filed the proposed nationwide class action lawsuit *Brogan v. Hyundai Motor America, et al.*, No. 8:17-cv-00622 (C.D. Cal). On April 16, 2018, Plaintiff Andrea Smolek filed the proposed nationwide class action lawsuit *Smolek v. Hyundai Motor America, et al.*, No. 2:18-cv-05255 (C.D. Cal.). On August 7, 2018, the Court ordered these cases consolidated as *In re: Hyundai and Kia Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.) (ECF No. 85.).

On September 4, 2018, Kia Motors America, Inc. and Hyundai Motor America, Inc. and Hyundai Motor Company, Ltd. filed separate motions to dismiss Plaintiffs' claims. (ECF Nos. 86-89.) On October 9, 2018, Plaintiffs filed oppositions to Defendants' motions to dismiss. (ECF Nos. 93-94.) Shortly thereafter, the Court entered the parties' request to continue the hearing date on Defendants' motions to dismiss to allow the parties to explore the opportunity for settlement. (ECF Nos. 97, 98.)

On December 14, 2018, Plaintiffs Fockler, House, Loomis, Miller, Moore, Rice, and Smith, along with other plaintiffs not subject to this proposed settlement, filed the proposed nationwide class action lawsuit *Flaherty v. Hyundai Motor Co., et al.*, No. 18-cv-02223 (C.D. Cal.), alleging similar claims to those in *In re: Hyundai and Kia Engine Litigation*. *Flaherty* was amended twice, on January 10, 2019, and May 1, 2019, to add Plaintiffs Dickerson, McCallister, Montoya, Franklin, North, Schmitt, and Stackhouse, along with other plaintiffs not subject to this proposed settlement.

On April 22, 2019, plaintiffs in a separate lawsuit pending in the Northern District of California moved to transfer and coordinate or consolidate this Action with *Musgrave v. Hyundai Motor America, Inc.*, No. 4:18-cv-07313-YGR (N.D. Cal.) as well as others in the Central District of California. The Judicial Panel on Multidistrict Litigation denied that motion on August 1, 2019.

2

### C.     Settlement

After this Court entered the consolidation order on August 7, 2018, counsel in the consolidated cases met and conferred with counsel for Defendants on multiple occasions, including with an engineering representative from HMA and KMA present, regarding the allegations in the consolidated action, the potential defenses of HMA and KMA, and potential resolution. These meetings between counsel culminated in a mediation session before Honorable Ronald M. Sabraw (Ret.) of JAMS on December 21, 2018, where the parties settled in principle. Counsel, including counsel in *Flaherty*, continued settlement discussions over the next several months, which resulted in additional modifications and enhancements to the proposed settlement.

In order to confirm that the proposed Settlement Agreement is fair, reasonable, and adequate, Plaintiffs' counsel deposed two Hyundai Motor Co., Ltd. employees, both of whom traveled from South Korea for their deposition. With the aid of an experienced translator, the depositions spanned two days and covered hundreds of pages of documents produced by Defendants during confirmatory discovery.

### D.     Terms of the Settlement Agreement

If approved, the settlement will provide substantial benefits to the following Class: All owners and lessees of a Class Vehicle who purchased or leased the Class Vehicle in the United States, including those that were purchased while the owner was abroad on active U.S. military duty, but excluding those purchased in the U.S. territories and/or abroad. The Class Vehicles include: all 2011-2018 and certain 2019 model year Hyundai Sonata vehicles, all 2013-2018 and certain 2019 Hyundai Santa Fe Sport vehicles, all 2014-2015, 2018, and certain 2019 Hyundai Tucson vehicles, all 2011-2018 and certain 2019 Kia Optima vehicles, all 2011-2018 and certain 2019 Kia Sorento vehicles, and all 2011-2018 and certain 2019 Kia Sportage vehicles originally equipped with or replaced

3

with a genuine Theta II 2.0 liter or 2.4 liter gasoline direct injection engine within OEM specifications.[2]

### 1. Lifetime Warranty Coverage for Engine Short Block

First, effective on the notice date, the Class Vehicles will receive a Lifetime Warranty, which covers all costs associated with inspections and repairs, including the costs associated with replacement parts, labor, diagnoses, and mechanical or cosmetic damage to the Class Vehicles caused by the engine malfunction upon completion of the Knock Sensor Detection System ("KSDS") software update. For 90 days immediately following the notice date, all Class Vehicles that have not received a recall inspection[3] will be eligible for free inspections and, if necessitated by the free inspections, short block assembly repairs, irrespective of the Class Vehicles' mileage, duration of ownership, or any prior repairs.

Defendants will also provide a comparable class of loaner vehicle to Class members during any repairs under the Lifetime Warranty. If no loaner vehicle is reasonably available through Defendants' authorized dealerships, reimbursement of up to $40 per day for reasonable rental car expenses will be provided until the repairs are completed.

---

[2] Excluded from the Class (and not released by this settlement) are all claims for death, personal injury, property damage (other than damage to a Class Vehicle that is the subject of a Qualifying Repair), and subrogation. Also excluded from the Class are (a) HMA and KMA; any affiliate, parent, or subsidiary of HMA or KMA; any entity in which HMA or KMA has a controlling interest; any officer, director, or employee of HMA or KMA;(b) any successor or assign of HMA or KMA; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (c) individuals and/or entities who validly and timely opt-out of the settlement; (d) consumers or business that have purchased Class Vehicles previously deemed a total loss (i.e., salvage) (subject to verification through Carfax or other means); and (e) current or former owners of a Class Vehicles that previously released their claims against HMA, HMC, KMC, and KMA in an individual settlement with respect to the issues raised in the Action (for the purpose of clarity, individual owners of 2011-2014 Hyundai Sonatas who released claims against HMA and HMC in the settlement reached in *Mendoza v. Hyundai Motor Company Ltd., et. al.*, Case No. 15-cv-01685-BLF (C.D. Cal.) are not excluded from the claims of the Class).

[3] Previous recall campaigns are discussed *infra*.

Should any disputes about coverage under the Lifetime Warranty occur, they will be resolved through the Better Business Bureau's ("BBB") alternative dispute resolution process. Class Counsel shall have the right to participate in the BBB proceedings. All costs and fees associated with the BBB alternative dispute resolution process will be borne by Defendants, excluding any attorneys' fees, unless the mediator or arbitration finds that the Claimant's claims were brought in bad faith.

### 2. *Recall and Product Improvements*

In prior litigation, Hyundai recalled certain model year 2011-2012 Hyundai Sonata vehicles in September 2015 through the National Highway Transportation Safety Administration (NHTSA) Campaign Number 15V-568 and recalled certain model year 2013-2014 Hyundai Sonata and Santa Fe Sport vehicles in March 2017 through NHTSA Campaign 17V-226. In December 2018 and January 2019, Defendants issued a subsequent recall of those same vehicles to inspect and confirm proper reinstallation of the fuel tube to address car engines at risk of fire, through NHTSA Campaign numbers 18V93400 (as to HMA) and 18V907000 (as to KMA). Also, as of January 2019, Defendants represent that they had each initiated product improvement campaigns in which knock sensor technology could be added through a free software update to the Class Vehicles.

As part of the settlement, Defendants represent that these recalls and product improvements represent part of the consideration to the Class.

### 3. *Repair Reimbursements*

For any Class member that obtained a Qualifying Repair for a Class Vehicle before receiving notice of the settlement, the Class member will be eligible for full reimbursement by Defendants, regardless of whether the Class member was an original owner, lessee, or subsequent purchaser, or whether the repair was completed before or after the recall campaigns identified in the preceding section. To receive reimbursement, the Class member must submit a completed Claim Form within 90 days after the notice

5

date with proof of the repair expense that reflects that the work was conducted to address the repair.[4]

For reimbursement claims from repairs performed at authorized Hyundai or Kia dealerships, Defendants shall take all reasonably available steps to acquire from the dealerships the information reasonably necessary to approve the claim (i.e. the date, nature, and cost charged for the repair). Defendants represent that they should be able to acquire that information in many instances, except for proof that cost for the repair was paid by the Class member. Thus, Class members will likely only need to substantiate the cost for the repair through a repair receipt, credit card receipt, credit card statement, or any other receipt or statement showing a payment to the authorized dealership. If the Class member does not have a repair receipt, the Class member may attest under the penalty of perjury that they do not have a receipt. Repair reimbursements shall be provided regardless of whether the repairs were performed at an authorized Hyundai or Kia dealership, or by a third-party.

Reimbursements for repairs shall be provided even if warranty coverage was initially denied for allegedly failing to properly service or maintain the Class Vehicle. Class members who presented their Class Vehicle to an authorized dealership and were denied in-warranty repair prior to receiving notice of this settlement, and then obtained their repair elsewhere are eligible for an additional $140 goodwill payment. Repair reimbursements will be denied if Exceptional Neglect is shown.[5]

---

[4] Class members that were members of the prior settlement class of 2011-2014 Hyundai Sonatas in *Mendoza* are also eligible for reimbursements for repairs that arose after the claims period expired in that settlement.

[5] "Exceptional Neglect" means (a) when the vehicle clearly evidences a lack of maintenance or care for a significant period of time of not less than one (1) year, such that the vehicle appears dilapidated, abandoned, and/or beyond repair unless such lack of maintenance was due to a Loss Event; or (b) failure of a Class member to have the KSDS installed pursuant to the KSDS Product Improvement Campaign by a Hyundai or Kia dealer within 60 days from notice date, or within 60 days of mailing of KSDS campaign notice, whichever is later. Diagnostic costs associated with establishing Exceptional Neglect will be borne by Defendants.

6

### 4.   Other Repair-Related Reimbursements

In addition to reimbursements for Qualifying Repairs, Class members may submit claims to receive full reimbursement of any towing expenses or other out-of-pocket expenses reasonably related to obtaining a repair, and up to $40 per day for rental car expenses if a loaner vehicle was not originally provided by Defendants. Class members will not be able to submit claims for any alleged lost wages or other consequential damages. If a Class member was previously reimbursed in full or in part for rental car or towing expenses, they are not entitled to reimbursement for any portion of the expense for which they were already reimbursed.

### 5.   Inconvenience Due to Repair Delays

If a Class member is or was inconvenienced by delays of more than 60 days when obtaining a repair from an authorized Hyundai or Kia dealership, the Class member may submit a claim for a goodwill payment based on the length of delay. Class members are eligible for goodwill payments of $50 for delays lasting between 61 and 90 days, and $25 for each additional 30-day period of delay or fraction thereof. If so elected, Class members can receive their compensation in the form a dealership service card valued at 150% of the amount that would otherwise be paid, which can only be used at authorized Hyundai dealerships (for Hyundai Class Vehicles) or Kia dealerships (for Kia Class Vehicles) in payment toward parts, service, or merchandise.

### 6.   Loss of Value for Sold or Traded-In Vehicles

Class members that experienced a Loss Event before receiving notice of the settlement may submit a claim to recover for the loss. To submit a claim, the Class Vehicle must have experienced an engine seizure, stall, engine noise, engine compartment fire, or illumination of the oil lamp diagnosed as requiring repair of the engine block, and the Class member must have sold or traded-in the Class Vehicle without first procuring the recommended repair. The Claim must be submitted within 90 days of the Notice Date and contain a proof of sale or trade-in and value received for sale or trade-in as well as any additional proof of the Loss Event. After submitting a

7

completed and approved Claim Form, the Class member is entitled to reimbursement of the baseline Black Book value (i.e., wholesale used vehicle value) of the sold or traded-in Class Vehicle at the time of loss plus an additional $140 goodwill payment, minus the actual amount received from the sale or trade-in. If a Class member was reimbursed in full or in part in connection with a sale or trade-in, they are not entitled reimbursement under the settlement for that portion of the expense for which they were previously reimbursed.

If a Class member contends that the actual damages incurred exceed the reimbursement provided, the Class member can provide written notice to Hyundai or Kia requesting alternative dispute resolution through the BBB. The costs of the BBB administered alternative dispute resolution will be borne by Hyundai or Kia, excluding attorneys' fees, unless the mediator or arbitrator determines the Class member's claims were brought in bad faith.

### 7. *Loss of Vehicle by Engine Fire*

Class members that suffered a Loss Event due to an engine fire directly caused by a Class Vehicle's failure arising from a vehicle condition that would have otherwise been addressed by a Qualifying Repair is eligible to receive payment by HMA (for Hyundai Class Vehicles) or KMA (for Kia Class Vehicles) of the maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the time of loss plus an additional $140 goodwill payment, minus actual value received (if any). A claim for such an event must be submitted within 90 days of the Notice Date or within 90 days of the engine fire occurrence.  In addition, the completed Claim Form must contain proof of the Loss Event and documentation establishing that the fire originated from the engine compartment and was unrelated to any sort of collision.

If a Class member contends the actual damages incurred exceed the reimbursement provided, the Class member can provide written notice to Hyundai or Kia requesting alternative dispute resolution through the BBB. The costs of the BBB administered alternative dispute resolution will be borne by Hyundai or Kia, excluding attorneys' fees,

unless the mediator or arbitrator determines the Class member's claims were brought in bad faith.

### 8. Rebate Program

If a Class member loses faith in their Class Vehicle as a result of this settlement, the Class member may present a claim for a rebate after selling the Class Vehicle in an arm's length transaction if (a) the Class member experienced an engine failure or engine component fire and (b) purchased a replacement Hyundai vehicle (for Hyundai Class members) or Kia vehicle (for Kia Class members).

A rebate is also available to any Class member who, after the notice date, experiences an engine failure or fire in a Class Vehicle, loses faith in their Class Vehicle, and completes all other steps to qualify for the rebate, including the purchase of a replacement Hyundai or Kia vehicle and submission of a claim within 90 days of the engine failure or fire.

The amount of the rebate shall be calculated as actual loss by comparing sales documentation to the maximum Black Book value (i.e., private party/very good) of the Class Vehicle at the time of the KSDS campaign launch up to the following amounts: (a) for model year 2011-2012 Class Vehicles: $2,000; (b) for model year 2013-2014 Class Vehicles: $1,500; (c) for model year 2015-2016 Class Vehicles: $1,000; (d) for model year 2017-2019 Class Vehicles: $500.

## III. ARGUMENT

### A. The Settlement Merits Preliminary Approval.

The Court must determine "'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Preliminary approval of a settlement and notice to the proposed class is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class,

9

and falls with the range of possible approval…" *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### 1. The Settlement is the Product of Serious, Informed, Arm's-Length Negotiations by Experienced Counsel.

First, the settlement was not the result of collusion among the negotiating parties. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (vacating and remanding a settlement approval order because the district court had not considered possible collusion); *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (considering and rejecting objectors' argument that settlement was product of collusion where allegations in the complaint preceded settlement by one year and there was no other evidence of collusion). Courts look to whether the proposed settlement is a product of arm's length negotiations, performed by counsel well versed in the type of litigation at issue. *See* A. CONTE & H.B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41 ("NEWBERG") (a proposed settlement is entitled to "an initial presumption of fairness" when the settlement has been "negotiated at arm's length by counsel for the class"); *See Hughes v. Microsoft Corp.*, Nos. C98–1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." (*quoting* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 ("MANUAL (THIRD)")).

Here, neither the litigation and settlement process nor the substance of the settlement indicate any collusion. The settlement was only achieved after months of arm's-length negotiations among the parties, including in-person meetings between Plaintiffs' counsel and Hyundai representatives to discuss claims and settlement possibilities, confirmatory discovery, and mediation before Hon. Ronald M. Sabraw (Ret.) of JAMS. (Schelkopf Dec. ¶ 14; Berman Decl. ¶¶ 7, 10.) *See*, *e.g.*, *G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015)

10

("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted). In the consolidated action, the Parties briefed two motions to dismiss before the settlement negotiations began. In confirmatory discovery, Defendants produced and Plaintiffs' counsel reviewed thousands of pages of internal documents relating to the Class Vehicles' engine design, engineering, manufacturing, and pre- and post-production testing. (Schelkopf Decl. ¶ 15; Berman Decl. ¶ 6.) Plaintiffs' counsel then took the depositions of two Hyundai executives that traveled from Korea to testify over the course of two days. (Schelkopf Decl. ¶ 15; Berman Decl. ¶ 6.) Plaintiffs' counsel for the consolidated action and for *Flaherty* were in frequent, separate contact by phone and email with Defendants' counsel during this time to discuss substantive settlement issues and ongoing discovery efforts. (Berman Decl. ¶ 6.) Plaintiffs' counsel have represented consumers in a number of significant class actions against Hyundai and Kia, several of which resulted in successful, court-approved settlements. (Schelkopf Decl. ¶¶ 3, 11; Berman Decl. ¶ 10.) As outlined above, the settlement's terms are favorable to the settlement class and on par with the relief Plaintiffs' demanded in their respective complaints.

Finally, although Defendants have agreed to separately pay an award of attorneys' fees and costs, the Parties have yet to negotiate them in order to avoid any perceived conflict of interest with the Class members and the settlement relief. (Berman Decl. ¶ 11.) Waiting to negotiate fees until confirmatory discovery and settlement negotiations have concluded is generally preferable to avoid risk or appearance of collusion. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.7 ("MANUAL (FOURTH)") ("Separate negotiation of the class settlement before an agreement on fees is generally preferable."); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 334-35 (3d Cir. 1998) (affirming final approval of class settlement and fee award where "[t]here [was] no indication the parties began to negotiate attorneys' fees until after they had finished negotiating the settlement agreement.").

The settlement was thoroughly negotiated and results in a fair outcome for Class members. The Court should preliminarily approve the proposed settlement.

### 2.  *The Settlement Does Not Improperly Grant Preferential Treatment to the Class Representatives or Segments of the Class.*

Whether the settlement agreement provides preferential treatment to any settlement class member turns on whether there is any disparity among what class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment); *accord Contra Costa Cty.*, 2015 WL 4606078, at *13-14 (analyzing whether the settlement singles out particular class members or whether it instead "appears uniform").

Here, Plaintiffs are seeking certification of a single class of vehicle owners and lessees, and all members of the proposed class may, individual circumstances permitting, make a claim for the various remedies offered under the settlement. This ensures Class members are compensated in kind for the harm they suffered. For example, a Class member with a vehicle engine fire may be eligible for more compensation (e.g., reimbursements, goodwill payments, etc.) than a Class member that has not suffered an engine malfunction (e.g., Lifetime Warranty). This means Class members are proportionately made whole.

Likewise, the Class representatives will not receive preferential treatment or compensation disproportionate to their respective harm and contribution to the case under this proposed settlement. They are permitted to make claims for relief under the settlement terms like any other Class member, and while the Parties have not yet agreed on service awards for these Class representatives, Plaintiffs seek less than $5,000 for each. *See Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *12 (N.D. Cal. Mar. 24, 2016) (internal quotations omitted) (permitting service awards to class representatives); *see also Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST,

12

2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (finding $5,000 service awards are "presumptively reasonable").

### 3.    The Settlement Has No Obvious Deficiencies.

Courts employ a "threshold of plausibility" standard intended to identify conspicuous defects. *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, at *6 (N.D. Cal. June 19, 2007). Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to Class members under Rule 23(e). *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006) (citation omitted); MANUAL (FOURTH) § 21.632, at 321-22. Because the proposed settlement here meets the requirements required for preliminary approval, as detailed herein, it is not obviously defective.

### 4.    The Settlement Falls Within the Range of Possible Approval.

In determining whether to grant preliminary approval, district courts must consider several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### i.    The Strength of Plaintiffs' Case

The crux of Plaintiffs' claims are that Defendants sold Class Vehicles with Theta II GDI engines that were manufactured under the same negligent processes and oversight, rendering these engines prone to sudden and catastrophic failure. Such engine failure puts

13

the vehicle at risk of an engine fire. Engine failures and fires are expensive, destructive, and dangerous to consumers and other drivers. The engine defect here can manifest in any of the Class Vehicles, necessitating recalls and implementation of the KSDS for early engine wear detection. Defendants claim to have improved their design and manufacturing processes to reduce and potentially eliminate the problem in later model years. But without the knock sensor technology, it is impossible to identify and repair those Class Vehicles that will manifest the defect beforehand, even if it is a small percentage of the Class Vehicle population. Plaintiffs expect to present evidence suggesting that Defendants each knew about the dangerous safety defect before Class Vehicles were made available for purchase, and that the Class Vehicles' engines can and do fail even if they are properly maintained. Plaintiffs are positioned to mount a formidable case that Defendants violated numerous state consumer protection statutes, breached state and federal warranty laws, and engaged in fraud by failing to disclose a known safety defect that put consumers in avoidable danger and caused them to incur expensive and lengthy repairs.

Nevertheless, Plaintiffs' counsel are seasoned in automobile defect class litigation, and recognize that even were they able to make such factual showings, their case could fail on liability, or at least be whittled down in terms of overall liability. For example, Defendants may argue they did not conceal material information about the engines because they did not discover the problem until after they had sold many of the Class Vehicles. They may raise the fact that not all Class Vehicles will ever even manifest the engine defect, and that Defendants developed the KSDS to notify Class members before the defect manifests to prevent future engine failure or fire. Defendants might also argue they covered many engine repairs under warranty or through goodwill, and that those repairs not covered were fairly denied because the dealership's inspection revealed the engine oil was exceedingly low. Finally, if the case were to proceed to trial, and if Plaintiffs were to prevail both at trial and on appeal, any such recovery would not be made available for years. And any damage award at that time would need to be

14

distributed to Class members based on vehicle ownership records that would then be several years older. Class members would also likely need to locate receipts for repairs that would be equally old, significantly reducing the overall recovery. Additionally, many of the benefits of implementing the Lifetime Warranty for the Class Vehicles would be diminished, as would the overall value of Class Vehicles that would by that time be years older and even possibly sold by Class members seeking to mitigate damages before warranty expiration. In other words, a victory at trial, coming several years from now, would likely not deliver results superior to the settlement before the Court now.

### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Class actions typically entail a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (affirming district court's approval of settlement and certification of class). If the Parties were unable to resolve this case through settlement, the litigation would likely be protracted and costly. Plaintiffs' counsel frequently litigate automotive defect class actions that take several years to resolve, and some have gone on for over a decade with appeals. Before ever approaching trial in this case, the Parties likely would finish briefing the motions to dismiss, conduct discovery on and brief class certification (along with a potential Rule 23(f) appeal), and brief summary judgment and *Daubert* motions, in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. It is unlikely the case would reach trial before late 2020, with post-trial activity to follow. By that time, many more Class members will have sold their vehicles, losing the very powertrain warranty being extended indefinitely under the settlement for both original and subsequent owners. The passage of time would also pose a risk to Class members because of the potential for engine seizure or stalling, which they will now be notified about and able to address through free inspections and repairs.

The proposed settlement balances these costs, risks, and potential for delay with its benefits, achieving a settlement that is fair and desirable to the Class. *See* NEWBERG §

15

11:50 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."); *accord Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

### iii. The Risk of Maintaining Class Action Status Through Trial

A litigation class has not been certified here, and there are a few other class cases involving the same defect and vehicles brought by firms that were not included in the settlement negotiations. If this litigation continued without settlement, Plaintiffs may face significant risk at the class certification stage. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value of a class action 'depends largely on the certification of the class,' and [] class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit.") (*quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995). Plaintiffs believe this case is appropriate for class certification and they could marshal evidence in support of such a motion. Class certification proceedings, however, are highly discretionary and require a finding that it is manageable. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011).

### iv. The Amount or Type of Relief Offered in Settlement

The proposed settlement provides Class members with virtually everything Plaintiffs sought in their complaints. Defendants are warning affected drivers of the risk of engine stalling and providing a Lifetime Warranty extension that will allow all Class Vehicles free inspections and necessary repairs. Defendants are also reimbursing Class members for past repair expenses in full, including those incurred for rental cars and towing services in connection with obtaining repairs, with only minimal documentation requirements and a streamlined claims process. Certain Class members are eligible for additional goodwill payments for engine failures or fires and/or delays in repairs. And any Class members who sold or traded-in their vehicles after receiving a sizable engine repair estimate instead of having the vehicle repaired will be entitled to compensation.

16

Class members that experienced the defect, lost faith in their Class Vehicle, and purchased a replacement Hyundai or Kia can also file a claim for rebate of varying value. The settlement even provides a mechanism for Class members to seek additional actual damages or review of warranty denials through BBB administered alternative dispute resolution, with the costs to be borne by Defendants.

The settlement offers an excellent result for the Class. Even though it is unlikely that trial would produce a better result than that achieved by the proposed settlement, the settlement need not be the best possible outcome in order to meet the fair and adequate standard. *See Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") (*citing Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)).

### v.     The Extent of Discovery Completed and the Stage of the Proceedings

This factor necessitates an evaluation of whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Discovery can be both formal and informal. *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011).

Before filing the initiating complaint, Class Counsel devoted substantial time and energy to investigating the underlying facts and developing the factual and legal allegations. This included a review of several publicly available sources of technical information, interviews of class members, analyses of the allegedly defective engines, and consultation with automotive experts. (Schelkopf Decl. ¶ 13; Berman Decl. ¶ 6.) The Parties then engaged in confirmatory discovery that provided greater insight into the data and conclusions Defendants provided regarding the Class Vehicles, including a supervised tear-down inspection of one named plaintiff's vehicle by Kia representatives and the deposition of two Korean engineers with knowledge of the design and manufacture of the Class Vehicle's' engines. Separately, counsel for the *Flaherty*

17

Plaintiffs inspected Class Vehicle engines, conducted extensive research via publicly available documents, spoke to hundreds of Class members, and engaged an expert to investigate the defect and provide guidance before filing suit and throughout the negotiations. (Berman Decl. ¶ 6.)

Document discovery included data and analysis relating to relevant warranty claims, customer complaints, goodwill payments, and field service reports. It also included materials that were prepared by Defendants internally regarding the nature and scope of the alleged engine defect and root cause analysis. Based on Class Counsel's substantial experience litigating automotive defect cases, the information they received was sufficient to evaluate the fairness of the proposed settlement for the class. (Schelkopf Decl. ¶¶ 11, 16; Berman Decl. ¶ 6.) In the course of resolving this litigation, Plaintiffs had a reasonably good sense of the strength and weakness of their case and were well-situated to make an informed decision regarding settlement. (Schelkopf Decl. ¶¶ 12-16; Berman Decl. ¶ 5.)

### vi.     The Experience and Views of Counsel

Class Counsel believes the Settlement is fair, reasonable, and adequate based on their extensive experience litigating class actions. At the preliminary approval stage, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Class Counsel's experience is discussed in their respective declarations. *See* Schelkopf Decl. ¶¶ 4-11; Berman Decl. ¶¶ 2-3, 9-10.

### vii.     The Presence of a Governmental Participant

The only connection with governmental entities in this litigation are Defendants' voluntary recalls of certain Class Vehicles, described in Section II(D)(2), *supra*, which was overseen by NHTSA. While NHTSA might have eventually initiated an investigation into all of the Class Vehicles, a great benefit of the Parties' settlement is that it avoids the protracted process of a multistage NHTSA investigation that can take years to complete. *See generally In re Gen. Motors Corp. Pickup Truck Fuel Tank Products Liab. Litig.*,

18

MDL 961, 1993 WL 204116, at *3 (E.D. Pa. June 10, 1993) (noting NHTSA proceedings can take several years to conclude).

### viii.       The Reaction of Class Members

Finally, the Class has yet to be notified of the settlement and given an opportunity to object, so it is premature to assess this factor. Before the final approval hearing, the Parties will provide the Court with any objections they receive after notice is disseminated, and reserve the right to address the substance of any of the objections in their final approval papers. But granting preliminary approval and directing notice to Class members where the Class has not been certified before settlement may actually enhance Class members' opt-out rights. *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205-06 (S.D.N.Y. 1995) (explaining that "because the right to exclusion [from the class] is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement," class members have a more concrete basis upon which to decide what they will sacrifice by opting out).

### B.       The Settlement Class Satisfies Rule 23.

#### 1.       The Settlement Class Meets the Requirements of Rule 23(a).

In granting preliminary approval, the Court should also confirm the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL (FOURTH), § 21.632. The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation, each of which is satisfied here. Fed. R. Civ. P. 23(a); *Hanlon,* 150 F.3d at 1019.

First, Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." "The Ninth Circuit has required at least fifteen members, to certify a class, and classes of at least forty members are usually found to have satisfied the numerosity requirement." *Aikens v. Malcolm Cisneros*, No. 5:17-CV-02462-JLS-SP, 2019 WL 3491928, at *3 (C.D. Cal. July 31, 2019) (quoting *Makaron v. Enagic USA,*

19

*Inc.*, 324 F.R.D. 228, 232 (C.D. Cal. 2018)). Here, the proposed settlement class encompasses approximately 4.1 million Class Vehicles, satisfying numerosity.

Second, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citation and internal quotation marks omitted). The Ninth Circuit held that "commonality only requires a significant question of law or fact." *Saenz v. Lowe's Home Centers, LLC*, No. 2:17-cv-08758-ODW-PLA, 2019 WL 1382968, at *3 (C.D. Cal. Mar. 27, 2019). "What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted). Here, the common issues include: (i) whether the Class Vehicles' engines all suffered the same risks arising from Defendants' unreasonable acts and omissions in the manufacturing and production of certain Theta II GDI engines and its components (defective engines); (ii) whether the defective engines can cause catastrophic engine failure and potentially result in engine fires; (iii) whether and when Defendants knew of the defective engines; (iv) whether a reasonable consumer would consider the defective engine and its consequences to be material; (v) whether the defective engine implicates safety concerns; and (vi) whether Defendants' conduct violates the consumer protection statutes alleged, and the terms of their warranties. Commonality is also satisfied here. *See, e.g.*, *Aikens*, 2019 WL 3491928, at *4.

Third, Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality is satisfied where the representative claims are "reasonably co-extensive with those of absent class members; [but] they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' claims arise out of the same facts and circumstances as those of the Class because they each purchased a Class Vehicle that contains a defective engine and thus suffered the same injury – namely, they were sold a defective vehicle that has required or will require

20

a repair to make the vehicle safe. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect."). Typicality is satisfied.

Fourth, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." There are two components to adequacy. First, the named plaintiffs and their counsel can have no conflicts of interest with other class members. Second, the named plaintiffs and their counsel must prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020. Here, Plaintiffs and Class Counsel do not have any conflicts of interest with other Class members and they vigorously litigated this action and negotiated the proposed Settlement Agreement over several months, with the assistance of a respected mediator and confirmatory discovery. *See Aikens*, 2019 WL 3491928, at *4 ("Again, Plaintiff's claims arise out of the same set of facts as the claims for the proposed Class. The Court finds no sign of a potential conflict of interest between Plaintiff and the Class Members she seeks to represent. Accordingly, the Court concludes that Plaintiff is an adequate class representative."); *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d at 566 (adequacy satisfied if plaintiffs and their counsel lack conflicts of interest and will prosecute the action vigorously on behalf of the class). Plaintiffs and Class Counsel easily satisfy the adequacy requirement.

## 2. The Settlement Class Meets the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires the Court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

First, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . [and] focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. Where common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," predominance is met. *Id.*

21

(citing Wright, Miller & Kane, Federal Practice and Procedure § 1778 (2d Ed. 1986)). Here, the overriding questions at the core of Plaintiffs' claims are whether the Class Vehicles are similarly defective (namely, they were all equipped with Theta II GDI engines built under and using the common procedures, practices, and manufacturing/production processes), whether Defendants had a duty to disclose any resulting manufacturing/production issues, whether Defendants knowingly concealed manufacturing/production issues, and whether one (or more) of these manufacturing/production issues is a material fact. Here, confirmatory discovery indicated the Class Vehicles were outfitted with Theta II GDI engines and these engines were all subject to the same flawed manufacturing and production processes, making them prone to premature and irregular engine wear that, if not caught early, can result in catastrophic engine failure, and in some instances engine fire. Defendants became aware of these problems based on warranty claims and complaints, but failed to disclose the defect to Class members before purchase or lease. Plaintiffs' counsel's communications with Class members and named plaintiffs make clear this engine defect and its associated risks were material to Class members. These are precisely the predominately common questions courts have found to justify class treatment. *See, e.g., Wolin*, 617 F.3d at 1173 (allegedly defective alignment geometry); *Hanlon*, 150 F.3d at 1022-1023 (allegedly defective rear liftgate latches); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (allegedly defective engine intake manifolds).

Similarly, there can be little doubt that resolving all Class members' claims through a single class action is superior to a series of individual lawsuits involving these defective Class Vehicles. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. By remedying the defect via internal processes improvements (newer model years), implementing and installing the knock sensor detection system (all Class Vehicles), and providing compensation for

22

Case 8:17-cv-00838-JLS-JDE Document 145 Filed 10/19/20 Page 325 of 378 Page ID #:4721

actual harm (vehicles suffering engine failure or fire), the settlement resolves the significant problem of the defect for all Class members.

Finally, in a settlement, "the proposal is that there be no trial," and so manageability considerations do not affect whether the proposed settlement class should be certified. *Amchem*, 521 U.S. at 620; *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 557 ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3), and therefore should be preliminarily approved by this Court.

## C. **The Court Should Order Dissemination of the Class Notice.**

Under the terms of the settlement, Defendants are responsible for all costs of Class notice and settlement administration. The settlement provides HMA and KMA the option of self-administering the settlement or electing to use a third-party administrator to process submitted claims. Claims can be submitted by U.S. mail, email, or through the dedicated settlement websites. Hyperlinks to the settlement websites will be posted on HMA's and KMA's respective websites.

### 1. *The Settlement Provides the Best Method of Notice Practicable.*

Before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Agreement provides that individual notice will be disseminated by U.S. mail to all reasonably identifiable Class members, which satisfies the requirements of due process. *See Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-JST (ANx), 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) ("Notice by mail has been found by the Supreme Court to be sufficient if the notice is 'reasonably calculated . . . to apprise

Case 8:17-cv-00838-JLS-JDE Document 145-2 Filed 10/19/20 Page 166 of 188 Page ID
#:4722
Case 8:17-cv-00838-JLS-JDE Document 145-2 Filed 10/19/20 Page 166 of 188 Page ID
#:4722

interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (*quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))). The Long Form Notice and Claim Form will be provided via U.S. mail. To identify Class members for notice, Defendants will provide all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to R.L. Polk & Company, or a similar third-party entity, who are authorized to use that information to obtain the names and most current addresses of Class members through state agencies. In addition, an address search will be conducted through the United States Postal Service's National Change of Address database to update the address information for Class members. If a notice is returned as undeliverable, best efforts will be used to conduct an advanced address search using Defendants' customer database to obtain a deliverable address.

Besides notice through U.S. mail, Defendants will also email a hyperlink to the dedicated settlement websites and an electronic version of the Long Form Notice and Claim Form. The dedicated settlement websites will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism for Class members to submit claims electronically; (iii) instructions on how to contact Defendants or their Settlement Administrators for assistance with claims; (iv) the Long Form Notice; (v) the Pamphlet; (vi) the Claim Form; (vii) the Settlement Agreement; (viii) any orders issued in this litigation approving or disapproving of the proposed settlement; and (ix) any other information the Parties determine is relevant to the settlement. Defendants or their Settlement Administrators will make the same information available to Class members through www.hyundaiusa.com/myhyundai and www.owners.kia.com via links to the dedicated settlement websites (apart from the mechanism for submitting claims).

In addition, Defendants' customer service departments will be available to respond to questions regarding the status of submitted claims, how to submit a claim, and other aspects of the settlement via a dedicated, toll-free telephone number. Defendants will also inform their authorized dealerships of the settlement so the dealerships can inform their

customers of the settlement, and provide Pamphlets to the dealerships for distribution to their customers.

Plaintiffs request that the Court approve this method of notice as the best practicable under the circumstances. *See, e.g.*, *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (finding mailed notice the best notice practicable where reasonable efforts were taken to ascertain class members' addresses).

### 2. *The Proposed Notice Adequately Informs Class Members of their Rights.*

The notice provided to Class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by the Parties complies with those requirements. (Settlement Agreement, Exs. A, C.) The notice sent to all Class members through U.S. Mail will explain the terms of the settlement, the Class definition, the underlying litigation, and the fact that Class members may appear through counsel; detail the process for requesting exclusion from the settlement; and disclose the binding effect of the settlement on class members if they do not request exclusion from the Court.

Plaintiffs believe this is the most effective way to alert Class members to the existence of the settlement and convey detailed information about the settlement approval process, and accordingly ask the Court to approve the proposed forms of notice. *See Schaffer v. Litton Loan Servicing, LP*, No. 05-cv-07673-MMM, 2012 WL 10274679, at *8-9 (C.D. Cal. Nov. 13, 2012) (approving a similar notice plan); *see also Churchill*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (*quoting Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980))).

### 3.   Notice to Federal and State Officials

Notice of the proposed settlement will also be provided to the U.S. Attorney General and appropriate regulatory officials in all fifty states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Defendants will provide these government officials with copies of all required materials so the states and federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention before final approval.

### D.   The Court Should Set a Schedule for Final Approval

| Event | Date |
|---|---|
| Notice Date | 90 days after entry of the preliminary approval order |
| Class Counsel Fee and Service Award Application | 30 days after the Notice Date |
| Opt-Out or Objection Deadline | 60 days after the Notice Date |
| Claim Forms Due | 90 days after the Notice Date |
| Final Approval papers to be filed | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | At a date convenient for the Court, not less than 165 days after entry of the preliminary approval order |

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Order preliminarily approving the proposed settlement.


Dated: October 10, 2019          Respectfully submitted,


By:/s/ *Matthew D. Schelkopf*
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF**

26

555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0581
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

Adam Gonnelli (*pro hac vice*)
**THE SULTZER LAW GROUP**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
gonnelia@thesultzerlawgroup.com

Bonner Walsh (*pro hac vice*)
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206
bonner@walshpllc.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com

---

27

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew D. Schelkopf, hereby certify that on this 10th day of October, 2019, I caused the foregoing to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.


DATED: October 10, 2019          Respectfully submitted,


By: */s/ Matthew D. Schelkopf*
Matthew D. Schelkopf

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No.:  8:17-cv-002208

# EXHIBIT F

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

  Kari Wohlschlegel (Bar No. 294807)
  kariwohlschlegel@quinnemanuel.com
  Tina Lo (Bar No. 311184)
  tinalo@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | CASE NO. 8:17-cv-00838<br><br>Member Cases:<br>8:17-cv-01365-JLS-JDE<br>8:17-cv-02208-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE<br><br>Related Case:<br>8:18-cv-02223-JLS-JDE<br><br>**DECLARATION OF ALAN DOW REGARDING KNOCK SENSOR DETECTION SYSTEM ("KSDS")**<br><br>The Hon. Josephine L. Staton<br><br>Trial Date:    None Set |

I, Alan Dow, declare as follows:

1.    I am a National Manager of Engineering and Technical Analysis at Kia Motors America, Inc. ("KMA").  I have been an employee since 1995.  If I were called as a witness, I could and would testify competently to the information contained here.

2.    In July 2018, KMA initiated a product improvement campaign beginning with the 2015 Kia Sorento for the free installation of the Knock Sensor Detection System ("KSDS") which continued and expanded over the course of several months on a phased basis to include the class vehicles subject to the class settlement in *In re: Hyundai and Engine Litigation*, No. 8:17-cv-00838 (C.D. Cal.) and *Flaherty v. Hyundai Motor Company, et al.,* No. 8:18-cv-02223 (C.D. Cal.). Kia dealers were instructed to install the software free of charge.

3.    The KSDS was developed to proactively address any potential future engine failures that could be caused by connecting rod bearing wear or lack of maintenance.  KSDS is designed to alert a driver of any early bearing wear *before* the occurrence of any severe engine damage that could ultimately lead to engine failure or fire. The technology was evaluated and verified internally as well as by an independent, leading engineering and scientific consulting firm and tested using a fleet of vehicles with success.

4.    The KSDS is installed via a software update to the Engine Control Unit and leverages the existing knock sensor to continuously monitor for symptoms of excessive connecting rod bearing wear.  The KSDS functions by detecting vibrations within a certain frequency range in the engine to identify the onset of excessive connecting rod bearing wear.

5.    If the KSDS detects a developing condition, two things will occur: (1) the check engine light (or the Malfunction Indicator Lamp) on the dashboard will begin to flash continuously and (2) the car will be placed in a temporary engine protection mode, called "Limp Home Mode."  The temporary protection mode

1  reduces acceleration, limits the maximum speed of the car to 65 miles per hour, and

2  limits engine RPMS to approximately 1800 to 2000 RPM to ensure that the driver

3  understands their vehicle must be serviced.  This mode allows the driver to drive at a

4  safe speed back home or to a repair facility for inspection and diagnosis while

5  limiting the risk of a stall and possible accident.

6      6.      Because the KSDS detects the onset of abnormal connecting rod

7  bearing wear, its installation is expected to prevent and diminish the risk of a driver

8  experiencing engine damage, failure, or in the worst case, a fire caused by excessive

9  connecting rod bearing wear.

10     7.      As of September 21, 2020, 73.1% of class vehicles have had the KSDS

11  installed.  In light of this data, we project that 75% of class vehicles will have the

12  KSDS installed by the end of 2020.

13     I declare under penalty of perjury under the laws of the United States that the

14  foregoing is true and correct. Executed this 23 of September 2020, at Irvine,

15  California.

16  _____

17  Alan Dow

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT G



HOME  |  VISIT HYUNDAIUSA.COM

| Username | ☐ Remember me |
| Password | LOG IN |

Forgot Username or Password?
Create an Account

MY ACCOUNT    PAYMENTS    LEASE-END    BUY OR LEASE    **VEHICLE PROTECTION**    OFFERS

# VEHICLE PROTECTION

| Overview | Mechanical Coverage | Maintenance Plan | Damage Care | Loss & Theft |

### ARE YOU A CURRENT CUSTOMER?

We are here to support your vehicle protection needs. Contact your dealer for assistance. For additional support, you can reach the HPP Customer Service Team at 800.477.8089 or info@hyundaiprotectionplan.com

**Vehicle Service Contract (VSC)**

**Original Lessee/Owner Vehicle Service Contract**

**Certified Pre-Owned Wrap (CPOW)**

**Term Protection Plus**



Vehicle Service Contract

DOWNLOAD BROCHURE

## Protect your car from the unexpected with the only VSC backed by Hyundai.

When it comes to protecting your Hyundai vehicle, there's only one option that's backed by the quality and commitment that come with the Hyundai name. The Hyundai Protection Plan Vehicle Service Contract (VSC) builds upon the Hyundai industry-leading 10-year powertrain warranty. In addition to more protection, you'll enjoy peace of mind with comprehensive protection for mechanical repairs, parts, labor and Roadside Assistance for up to 10 years or 100,000 miles.

## More value and convenience

We realize the less you have to think about payments, the better. With the Hyundai Protection Plan VSC, you pay nothing at the time of repair, other than your preselected deductible. And to make your purchase of our VSC easy to manage, the cost can be rolled into your auto-financing plan.

## Comprehensive protection

Hyundai offers three plans to best fit your needs: Powertrain, Gold and Platinum. Our Platinum plan offers our most comprehensive protection, with coverage for more than 1,500 vehicle parts. But whichever plan you choose, extending the protection for mechanical repair of major components is one of the best investments you can make in your vehicle.

## All three plans include:

- **Nationwide service** available at all participating Hyundai dealers
- **24/7 Roadside Assistance** with enhanced roadside benefits for the full term of your VSC

- **Rental car reimbursement** up to $35 per day for up to 10 days if required[1]
- **Trip interruption coverage** up to $200 per day for up to five days if required[1]

- **Towing** to your nearest Hyundai Dealership or authorized service provider
- **Transferable coverage** may add to your vehicle's resale value if you decide to sell it to a private party

[1]Due to a covered Mechanical Breakdown.

**Three available plans**

| Component Group | Powertrain | Gold | Platinum |
|---|---|---|---|
| Engine | ✓ | ✓ | ✓ |
| Transmission | ✓ | ✓ | ✓ |
| Drive Axle | ✓ | ✓ | ✓ |
| Climate Control | | ✓ | ✓ |
| Shocks | | ✓ | ✓ |
| Front Suspension | | ✓ | ✓ |
| Rear Suspension | | ✓ | ✓ |
| Fuel System | | ✓ | ✓ |
| Electrical System | | ✓ | ✓ |
| Steering | | | ✓ |
| Brakes | | | ✓ |
| CV Boots | | | ✓ |
| Navigation | | | ✓ |
| Audio | | | ✓ |
| High-tech | | | ✓ |

**Contact your local Hyundai dealer to request additional information and confirm their participation in the Hyundai Protection Plan Program.**

View Disclaimer

BACK TO TOP



Original Lessee/Owner Vehicle Service Contract

DOWNLOAD BROCHURE

**A VSC helps make unexpected repairs less expensive.**

It's no fun to get blindsided by an unexpected repair. And even less so when you have to foot the bill. Hyundai Protection Plan Original Lessee/Owner Vehicle Service Contract (VSC) was built for lessees who are buying their vehicle as well as original Hyundai owners [1] to help protect from unanticipated expenses and the costs that come with them. How? By delivering benefits beyond your factory warranty, with coverage for mechanical repairs that include parts and labor for 10 years or 100,000 miles.[2] Pay nothing on covered repairs other than your deductible.

## Service you can trust, parts you can count on

- **Genuine Hyundai parts**[3] **and service** for your vehicle

- **Nationwide service** available at all participating Hyundai dealers or other authorized service providers

- **24-hour roadside assistance** with enhanced roadside benefits

- **Towing** to your nearest participating dealership or authorized service provider

- **Rental car reimbursement** up to $35 per day for up to 10 days if required[4]

- **Trip interruption coverage** up to $200 per day for up to 5 days if required[4]

## Covered Components

Hyundai Protection Plan Original Lessee/Owner VSC Platinum plan includes extensive coverage for the service of major components, and covers a wide range of parts:

- **Shocks, front and rear suspension**
  Including suspension bushings and bearings

- **Fuel systems, electrical systems**
  Including fuel injection, sensors, and power windows and seats

- **Steering, brakes, CV boots**
  Including power steering and anti-lock braking system components

- **Climate control**
  Including air conditioner and heater components

- **Navigation, audio, high-tech**
  Including navigation display, HomeLink®, Blue Link®, Bluetooth® and nearly all factory installed technology and safety features

- **And Much More...**

**Contact your** [local Hyundai dealer](#) **to request additional information and confirm their participation in the Hyundai Protection Plan Program.**

View Disclaimer

BACK TO TOP



## Enhance the protection on your car with the only CPO Service Contract backed by Hyundai.

When it comes to protecting your Certified Pre-Owned Hyundai vehicle, our CPO Wrap is the only CPO Service Contract that's backed by the quality and commitment that come with the Hyundai name. The Hyundai Protection Plan CPO Wrap takes our already award-winning Certified Pre-Owned (CPO) Program and elevates it to new levels of protection. Enhance your Hyundai factory limited warranty and Roadside Assistance with the added protection of mechanical repairs, parts and labor for the full term of your Hyundai CPO Program coverage.

*Best of all*, you pay nothing on covered repairs other than your deductible. And to make your purchase of our CPO Wrap easy to manage, the cost can be rolled into your auto-financing plan.

### Comprehensive protection

We offer two CPO Wrap plans to meet your individual needs. Our Platinum plan offers our most comprehensive protection, with coverage for more than 1,500 vehicle parts. But whichever plan you choose, extending the protection for mechanical repair of major components is one of the best investments you can make in your Hyundai CPO vehicle.

### Plus, both levels of coverage include:

- **Up to 1,500+ covered components**

- **Nationwide service** available at all participating dealers

- **Towing** to your nearest Hyundai Dealership or authorized service provider

- **Rental car reimbursement** up to $35 per day for up to 10 days if required[1]

• **Enhanced 24-hour roadside assistance** with roadside benefits including towing, battery service, flat tire change, lock-out service, fuel delivery

• **Trip interruption coverage** up to $200 per day for up to 5 days if required[1]

• **Transferable coverage** may add to your vehicle's resale value if you decide to sell it to a private party

**Two available plans**

| Component Group | Gold | Platinum |
|---|---|---|
| Engine | ✓ | ✓ |
| Transmission | ✓ | ✓ |
| Drive Axle | ✓ | ✓ |
| Climate Control | ✓ | ✓ |
| Shocks | ✓ | ✓ |
| Front Suspension | ✓ | ✓ |
| Rear Suspension | ✓ | ✓ |
| Fuel System | ✓ | ✓ |
| Electrical System | ✓ | ✓ |
| Steering | | ✓ |
| Brakes | | ✓ |
| CV Boots | | ✓ |
| Navigation | | ✓ |
| Audio | | ✓ |
| High-tech | | ✓ |

**Contact your local Hyundai dealer to request additional information and confirm their participation in the Hyundai Protection Plan Program.**

View Disclaimer

BACK TO TOP



Term Protection Plus

DOWNLOAD BROCHURE

**Protect your new vehicle from the wear of everyday driving.**

You love driving your Hyundai vehicle, and we want to make sure it stays that way by keeping you protected along the way. Term Protection Plus builds on the Hyundai industry-leading 10-year powertrain warranty to give you peace of mind far beyond

mechanical repair. You'll enjoy comprehensive coverage for costs of repairs resulting from everyday vehicle wear, including wheel alignment and replacement of your battery, brake pads and many other components.

## Covered components

Getting a new car should be a carefree experience. With coverage options for up to four years or 60,000 miles, Term Protection Plus gives you comprehensive protection and complete peace of mind, not to mention nationwide repair service at all participating Hyundai dealers. Ask your Hyundai dealer for plan details.

- **Brake pads**
  Includes one replacement set of front and rear pads/shoes during the term of your contract

- **Battery**
  Covers one replacement battery during the term of your contract

- **Headlamps**
  Includes unlimited replacement of headlamps, other than those damaged in an impact

- **Belts and hoses**
  Covers unlimited replacement of engine belts and hoses

- **Windshield wiper blades**
  Includes one replacement set of wiper blades and/or inserts

- **Fuses and bulbs**
  Covers unlimited replacement of fuses and light bulbs, other than those damaged due to collison

- **Wheel alignment**
  Includes one wheel alignment during the term of your contract

- **Diagnostics and fluid repairs**
  Included in all covered repairs

Contact your **local Hyundai dealer** to request additional information and confirm their participation in the Hyundai Protection Plan Program.

View Disclaimer

BACK TO TOP

© Hyundai Motor Finance 2020. All Rights Reserved.

Licensed by the Connecticut Department of Banking to do business in Connecticut under License Numbers SFC-1885, SFC-BCH-931398, SFC-BCH-20110 & SFC-BCH-931638. Expiration date: December 31, 2020.

# EXHIBIT H







# EXHIBIT I



Engine Replacement



Transmission Replacement



Drive Axle Replacement



Short Block Replacement