Matthew D. Schelkopf
SAUDER SCHELKOPF
555 Lancaster Avenue
Berwyn, PA 19312
mds@sstriallawyers.com

Adam Gonnelli (*pro hac vice*)
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
7030 E. Genesee Street
Fayetteville, NY 13066
adam@arglawoffice.com

Bonner Walsh (*pro hac vice*)
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
bonner@walshpllc.com

*Attorneys for Plaintiffs and the Proposed Class*

***[LIST OF ADDITIONAL COUNSEL ON SIGNATURE PAGE]***

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | 8:17-cv-00838-JLS-JDE |
| | Related Cases:<br>8:17-cv-01365-JLS-JDE<br>8:17-cv-02208-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE<br>8:18-cv-02223-JLS-JDE |
| | **RESPONSE TO OBJECTIONS TO THE PROPOSED CLASS ACTION SETTLEMENT** |

# **TABLE OF CONTENTS**

Introduction ................................................................................................... 1

Objectors Who Misunderstood The Settlement And Are Actually Entitled To
   Benefits ................................................................................................... 1

Objectors Whose Issues Are Outside The Scope Of The Settlement ......................... 2

Objectors Dissatisfied With The Offered Relief ................................................ 3

Objections To Process ................................................................................... 5

Objection of Daniel F. Thornton ..................................................................... 6

Objection of Arnold L. Levey ........................................................................ 9

Objection of Edward A. Maybury ................................................................... 11

Objection of John H. Metz ............................................................................ 12

Objection of Knight Motors, LP and Doman Auto and Marine Sales, Inc. ............... 13

CONCLUSION ............................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ..................................................................................... 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................... 4, 9

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...................................................................................... 11

*In re Hyundai Sonata Engine Litigation*,
    No. 5:15-cv-1685 (N.D. Cal.) ..................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ......................................................................... 4

*Snell v. Allianz Life Ins. Co. of N. Am.*,
    Civ. No. 97-2784 (RLE), 2000 U.S. Dist. LEXIS 13611 (D. Minn. Sept.
    8, 2000) ........................................................................................................ 10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 4

**Introduction**

In a settlement covering more than 3.9 million Class Vehicles, only 49 objections have been submitted.  See Declarations of Bonner Walsh, Dkt. 150-1 and Dkt. 161-1. Of these 49, three are not Class members, four are requests to appear at the fairness hearing with no objection provided[1], one is a comment, and four have been withdrawn or resolved.

The bulk of the remaining 37 objections properly before the Court can be largely categorized as those who misunderstand the terms of the Settlement; those whose complaints are unrelated to the Settlement; and those who want more than the Settlement offers. The remaining handful are attorney objectors and an automotive business with an ongoing lawsuit against Hyundai.

No government entity has objected, nor have any public interest groups.

None of these objections provide any grounds to reject the Settlement.

**Objectors Who Misunderstood The Settlement And Are Actually Entitled To Benefits**

Fifteen Class Members objected because they mistakenly believed that they were not entitled to settlement benefits.

For example, some believed that vehicles with low mileage did not qualify for any benefits,[2] and that used vehicles did not qualify for the lifetime warranty.[3] However, Settlement benefits are not contingent on mileage or prior ownership. Others believed that they could not submit claims for financial damages such as past trade-ins for vehicles of a different make, or past sales of Class Vehicles.[4] But Class

---

[1] Joshua Hursa, Dkt. 150-1 p. 76; Stephen K. Jones Dkt. 161-1 p. 189-190, Kravchenko Dmitriy, Dkt. 161-1 p. 192; and Maryia M. Kabuya, Dkt. 161-1 p. 194.
[2] Dennis Spencer Kahane, Dkt. 150-1 p. 87.
[3] James E. Langford, Dkt. 150-1 p. 186.
[4] Gerald Cornelius Frank, Dkt. 150-1 pp. 58-59; Carrie A. Takamatsu, Dkt. 150-1 p.

Members can submit claims to recoup lost value on sales, trade-ins, or insurance for engine fires. In addition, Class Members can make a claim for other financial losses under the "other costs incurred" section of the Claim Form on page 2 where it specifically includes "financing-based damages".  Class members have until April 12, 2021 to file such claims for their financial losses.

Class Counsel have contacted these objectors and are working to inform them of their rights under the Settlement and resolve their concerns. So far, three have withdrawn their objections.[5]

### Objectors Whose Issues Are Outside The Scope Of The Settlement

Some objectors complained about issues unrelated to the Settlement. There are three objectors who do not have Class Vehicles[6] and one did not provide contact information, VIN, or other context.[7]  Others complained about individual mechanical problems with their vehicles: one objector requested a warranty on door

---

222-223; Jennifer Canelos, Dkt. 150-1 p.40 (Ms. Canelos also refers to a "$50 offer," which is not part of the Settlement); Dale C. Huebener, Dkt. 150-1 p. 75; Eric Evan Greene, Dkt. 150-1 p. 71; Tamera Colcord, Dkt. 150-1, p. 45; Zhaleh Khosravi and Ehsan Naderi, Dkt. 150-1 p. 88; Wilfredo Rosa, Dkt. 150-1 p. 212; and Douglas A. Banich, Dkt. 150-1 p. 4.  Lordis V. Lynn Cotton and Calvin Cotton suffered a similar loss when their vehicle was totaled in an accident.  Dkt.161-1 p. 163-165.

[5] Roberta Lawther, Richard Nilles, and Christopher A. Wright have withdrawn their objections. Decl. Bonner Walsh ("Walsh Decl."), Exhibit 1.  The concerns of Megan S. Jones and Derek H. Jones have been addressed and, in accordance with Rule 23, Hyundai Motor America plans to file a motion seeking Court approval of their proposed resolution in advance of the final approval hearing.

[6] The VINs provided by Frank Bergkvist, Tennie Kruse, Dkt. 150-1 p. 180-181, and John Caro, Dkt. 161-1 p. 177-179 are not Class Vehicles.  Walsh Decl. at ¶ 7.

[7] Joshua S. Hursa, Dkt. 150-1 p. 77. Due to the lack of information provided by Mr. Hursa, it is impossible to tell if he is a Class member or if he intended to object. Walsh Decl. at ¶ 8.

handles[8] and another complained about a problem with the wiring harness.[9] Claims not related to the short engine block are not released under the Settlement.  Other objections concerned general dissatisfaction with Hyundai vehicles,[10] that no Kia dealerships were convenient to their residence;[11] and a Kia dealer's inability to diagnose the vehicle's issues.[12]  These are all individual issues that do not form a basis for criticism of the Settlement.

However, some objectors complained about oil consumption issues,[13] and some these may be related to the engine defect. These issues should be addressed in the first instance with a diagnostic inspection (free under the Lifetime Warranty, and free regardless of symptom or warranty for 90 days after final approval). Once the issue is properly diagnosed, if it is related to the engine defect, repairs will be free under the Lifetime Warranty.

These objections are not grounds to reject the Settlement.

**Objectors Dissatisfied With The Offered Relief**

Some Class members objected because they want additional or different relief under the Settlement. Some requested new engines for everyone,[14] cash for

---

[8] Mike Brennan, Dkt. 150-1 p. 38.

[9] William Joseph Dill, Dkt. 150-1 p. 53.

[10] Dale C. Huebener, Dkt. 150-1 p. 75

[11] Ronald A. Wallace, Dkt. 150-1 p. 249.

[12] Zhong Liu, 150-1 p. 193 Mr. Liu describes malfunctions that might be related to the engine defect. But rather than a highlight a flaw in the Settlement, his objection demonstrates the value of the free diagnostic, lifetime warranty, and the KSDS.

[13] Theresa Ann LaBree, Dkt. 150-1 p. 183; Darlene K. Dotson Dkt. 161-1 p. 14, Braunwynn Franklin Dkt. 161-1 p. 4; Darlene Bennett, Dkt. 150-1 p29; Kelvin Bennett, Dkt. 150-1 p. 34.

[14] Ginny N. Graham and Michael A. Graham Dkt. 150-1 p. 66; Jean G. F. Card, Dkt. 161-1 p. 35-36 (engine replacements); Clayton N. Saettel and Diane M. Saettel, Dkt. 150-1 p. 215; Maria Theresa and Laura Flores Dkt. 150-1 p. 56.

everyone,[15] full refunds,[16] double Blue Book value plus a $10,000 credit,[17] and a lifetime warranty for the entire engine, not just the short block.[18] Others requested additional relief based on their individual circumstances.[19]

However, that alternative or more favorable settlement terms can be imagined provides no basis to reject a fair and adequate settlement achieved through adversarial litigation and arduous, arm's length negotiations. A settlement is "a yielding of absolutes and an abandoning of highest hopes." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982)); As the Ninth Circuit stated in affirming the approval of a settlement in an automotive defect case:

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Officers for Justice*, 688 F.2d at 625 ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.").

---

[15] Darlene Bennet Dkt. 150-1 p. 29; Kelvin Bennet, Dkt. 150-1 p. 34; Leticia R. Ramon Dkt. 161-1 p. 92-93.

[16] Michael Wilson II, Dkt. 150-1 p. 257.

[17] Daniel Thornton, Dkt. 150-1 p. 239 (Mr. Thornton's other objections are addressed at greater length, supra p. 7-10).

[18] James E. Langford, Dkt. 150-1 p. 186.

[19] Cecil Tuley and Judy Tuley, Dkt. 150-1 p. 245 (request to purchase new engine for $500 for their individual circumstances), Naibori Shaw, Dkt. 150-1 p. 217 (requests new car because Class Vehicle subject to too many recalls and had battery problems).

Here, Class members receive a full refund for past repairs, compensation for lost value for past sales and trade-ins, and a free Lifetime Warranty to address defects that may manifest in the future.

Others worried the Settlement offered no protection for the future resale value of their vehicles.[20]  However, for these objectors, the fact that the Lifetime Warranty and KSDS stay with the vehicle permanently, and the presence of the trade-in option with the rebate mitigate these concerns.

While it is impossible to craft a settlement that satisfies each and every Class member, particularly a group of several million people, the objections that have been raised here provide no basis to reject the Settlement.

**Objections To Process**

One objector, Thomas Barber (Dkt. 150-1 p. 24) believes that the opt-out deadline should be extended to thirty days after the fairness hearing so that Class members can study the Settlement Agreement. (*Id.* at 24) But Class members have had notice since as early as August, and there is no basis to provide additional time to review it. Mr. Barber also requests that Kia be required to post on its website whether a specific vehicle has had the KSDS installed. (*Id.* at 27) But class members only need to go to the National Highway and Traffic Safety Administration and enter their VIN to see if any outstanding recalls (including the KSDS) have been performed. Mr. Barber has zero outstanding Recalls.  Walsh Decl. at ¶ 6.  Mr. Barber's suggestions do little to improve the information available to Class members and certainly do not invalidate the existing notice scheme. This objection should be overruled.

---

[20] Naomi S. Warren, Dkt. 150-1 p. 252 (loss of future resale value compared to Hondas); Ashley Warring, Dkt. 150-1 p. 255; William Joseph Dill, Dkt. 150-1 p. 53; Gordon Deats Dkt. 161-1 p. 18.

Mr. Barber is also concerned that the KSDS software update will negatively impact vehicle performance. (*Id.* at 27-28) Mr. Barber's claims flow from his understanding of knock sensors solely based upon accelerometers. (*Id.* at 27) Hyundai has explained in detail how the knock sensor also has an auditory component that deals with many of the concerns raised by Mr. Barber. (Dkt. 143-1 at 61-63) A Hyundai engineer further explained the characteristics of the vehicle when it is placed in limp mode which allows for a maximum speed of 65 miles per hour until the vehicle is taken to a dealership for repairs, which limits the risk of an accident. (*Id.*)

**Objection of Daniel F. Thornton**

Attorney Daniel F. Thornton presents four objections to the Settlement: that the it does not make Class members like himself whole; that it is inadequate for New Jersey Class members; that it is duplicative of the *Mendoza* warranty (Dkt. 150-1 p. 232); and that Hyundai should not self-administer the Settlement (*Id*. p. 237).

First, Mr. Thornton states that "only a metal-shaving-free engine" could make him whole. (*Id*. p. 233) But this is exactly what the Settlement is designed to provide. The engine defect does not manifest itself in the overwhelming majority of vehicles. The KSDS detects early manifestations so the vehicle may be serviced under the free Lifetime Warranty before catastrophic engine failure or fire occurs.

Second, Mr. Thornton argues that under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210, "if I were to litigate the same issues … my likely recovery would consist of – at a minimum – 300% of the cost of installing a defect-free short block in my vehicle." (*Id*.) However, as Mr. Thornton acknowledges, the New Jersey statute has an "ascertainable loss" standard. (*Id*.)

Under Mr. Thornton's theory of the case, he can show ascertainable loss because metal shavings were left in every engine of the class vehicles during the manufacturing process. (Walsh Decl. Ex. 2 p. 60, lines 17-21) These shavings should have been removed by magnets, but the defective manufacturing process left the metal shavings in the engines. (*Id*. p. 37-38, lines 22-1) In actuality, the defect, when and if it manifests at all, causes metal shavings to accumulate in the engines over time in affected vehicles. Mr. Thornton's vehicle passed an engine inspection, but he does not believe it is possible to determine whether the engine is affected without disassembling it. (*Id*. p. 59, lines 7-15) As such, Mr. Thornton admits that individual litigation under the New Jersey statute would be expensive and time-consuming, would require an expert to "disassemble the short block totally," (*Id*. p. 61, lines 8-16) and that the monetary loss would be "diminution in value." (*Id*. p. 64, lines 15-16, errata) Recovery under the New Jersey statute is thus expensive and risky. However, Class members could opt out of the Settlement to pursue such claims. For those like Thornton who did not opt out, the Settlement provides a KSDS designed to detect engine problems early, and provides for free repairs under the Lifetime Warranty.

Mr. Thornton's third objection is that the Lifetime Warranty is "largely duplicative" of the warranty already offered under the settlement in *In re Hyundai Sonata Engine Litigation*, No. 5:15-cv-1685 (N.D. Cal.) ("*Mendoza*"). (Dkt. 150-1, p. 234)

The 2017 settlement in the *Mendoza* case provided 10- year/120,000 mile warranties for roughly 885,000 2011-14 Hyundai Sonatas. Plaintiffs' proposed Settlement includes, rather than carves out, those vehicles. The Settlement extends those vehicle warranties for life and gives those Class members another opportunity for reimbursement for repairs and other monetary compensation for events occurring after the expiration of the *Mendoza* claims period, which ended with repairs done to

those vehicles on or before November 9, 2015. See Settlement Agreement I.E., II.C.2, II.E.4, II.F.4 and III.14.  (Dkt. 128-1)

It is true that there is overlap between the 10-year *Mendoza* warranties and the lifetime warranties for the 2011-14 Sonatas. However, rather than duplicating the *Mendoza* remedies, this Settlement improves them by extending the warranties for life and giving those Class Members additional compensation that they would not have had otherwise. In Mr. Thornton's case, his *Mendoza* warranty expired earlier this year, so the Lifetime Warranty is not duplicative. (Walsh Decl. Ex. 2, p. 42, lines 18-19)

Mr. Thornton's final objection is that, based on the anecdotal evidence of his father-in-law's experience under *Mendoza*, Hyundai should not be trusted with administering the Settlement. (Dkt. 150-1 p. 237) Under the facts as presented by Mr. Thornton, it appears Hyundai did not pay his father-in-law's claim because it was submitted after the claims period had ended.

Apparently, in August 2015, his father-in-law paid for a replacement engine (and was reimbursed at a later time) in his 2011 Sonata, but thereafter experienced a Malfunction Indicator Light ("MIL") alert relating to an $O_2$ sensor. The Hyundai dealer was unable to resolve the MIL but charged him a diagnosis fee of $119.00. Then, on November 10, 2015, a third-party diagnosed the problem as a short in the engine wiring harness, caused during the August 2015 engine replacement, and charged him $418.89 to repair it. The total for these charges totaled $537.89. (*Id.*)

His father-in-law then submitted a reimbursement for this $537.89 cost under *Mendoza*, but it was denied. Under the terms of *Mendoza*, reimbursement is provided for repairs prior to November 9, 2015, for 2011 and 2012 model year vehicles. Even though his father-in-law's engine was replaced in August 2015, the corrected repair completed by a third-party occurred on November 10, 2015, one

day after the *Mendoza* cutoff. Mr. Thornton's father-in-law can now re-submit this claim for reimbursement under the current Settlement.

Mr. Thornton's father-in-law's experience is thus unpersuasive evidence that Hyundai should not self-administer the Settlement.

The underlying theme of Mr. Thornton's objection letters and depositions is that he simply wants more or different relief than is offered by the Settlement. He wants a "metal-shaving free engine," (*Id*. p. 233) he wants "300% of the cost of installing a defect-free short block in my vehicle," (*Id*.) he wants "to see Hyundai buy back class vehicles like mine at double their book value … and then provide a substantial credit – $10,000 or more – so as to place these drivers in new or newer Hyundai vehicles." (*Id*. p. 239) The $2,000 rebate offered to Class members who trade in their vehicles for a new Kia or Hyundai is "a nice gesture," but "any dealer worth their salt offers a $2,000 incentive on a regular basis." (*Id*. p. 237-238) (In actuality the rebate is in addition to any such incentive and applied for directly through Hyundai only after the other trade is completed.) But what one consumer may consider adequate, in Mr. Thornton's words, "depends on the circumstances sometimes and on the consumers' wishes." (Walsh Decl., Ex. 2, p. 78, lines 7-9) As discussed above, "the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Mr. Thornton's objections should be overruled.

**Objection of Arnold L. Levey**

Attorney Arnold L. Levey, like Mr. Thornton, objects that the Lifetime Warranty provided by the Settlement is overvalued, "particularly when considering the previous warranty extension resulting from the earlier litigation," and that the cash compensation is lacking.  (Dkt. 161-1 p. 87-90).

For the same reasons discussed in response to Mr. Thornton's objection, Mr. Levey's views are not a basis to reject the Settlement. The current Settlement applies to 3.1 million Class vehicles in addition to the *Mendoza* class vehicles. Now those *Mendoza* class members receive from this settlement: warranty extensions; the KSDS; and an additional opportunity to submit more recent repair bills or receive compensation related to sales or trade-ins. Thus far Class members have already submitted claims for over $60 million in cash, so cash compensation is not lacking. See Declaration of Adam Gonnelli, Dkt. 164-2 ¶ 8.

Mr. Levey also alleges Class Counsel colluded with Kia to increase their attorney fees and named plaintiff's incentive awards at the expense of the relief to the Class, a practice with which he says he has "personal experience."  (Dkt. 161-1 p. 88). Mr. Levey's personal experience includes that he states he was paid $15,000 to withdraw his appeal of an earlier Kia class settlement. (*Id*. p.89).

Mr. Levey's speculation about collusion, combined with his previous success at holding a settlement hostage[21], suggests that his objection has goals other than the improvement of an already exceptional settlement. *See*, *e.g.*, *Snell v. Allianz Life Ins. Co. of N. Am.*, Civ. No. 97-2784 (RLE), 2000 U.S. Dist. LEXIS 13611, at *31-32 (D. Minn. Sept. 8, 2000) (repeat objectors "maraud proposed settlements -- not to assess their merits on some principled basis -- but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process.").

Mr. Levey's collusion allegation is baseless. Attorney fees and incentive awards were not negotiated until after the Settlement was agreed to, and do not reduce the relief to the Class in any way. (Declaration of Matthew Schelkopf, Dkt.

---

[21] Mr. Levey's objection to the *Mendoza* settlement is attached to the Walsh Decl. as Ex. 5.

139-1, p. 6-7.)   In fact, the agreement on fees and incentive awards was not reached until just before a contested fee application was to be filed.

### Objection of Edward A. Maybury

Edward A. Maybury objects to the amount of attorney fees in the Class Notice. (Dkt. 150-1, p. 197-199) Subsequent to the Class Notice, Plaintiffs filed an Unopposed Motion for Class Counsel Fee (Dkt. 139) requesting $6,900,000 in attorney fees, or 57.5% of the $12,000,000 maximum attorney fee figure that Mr. Maybury objected to, but not as low as the $1,200,000 cap that Mr. Maybury suggested. Mr. Maybury described Class Counsel's "intellectual work" involved in pursuing this litigation as "equivalent to whiting out the name of the last corporation tagged with a law … for their personal enrichment on the backs of consumers." Dkt. 150-1, p. 198. In the same paragraph, Mr. Maybury walks backs his characterization of Counsel: "I'm not saying they actually whited out the name of a prior corporation or they have a pattern of litigation against companies with similar flimsy underpinnings or that I have evidence that their motivation is simply money." *Id.* His suggested $1.2 million cap on attorney fees is thus arbitrary, and does not reflect the number of hours put in by the attorneys prosecuting this case over the last three years, as outlined in the Unopposed Motion for Class Counsel Fee (Dkt. 139) and updated in Plaintiffs' Supplement to Motion for Final Approval of Class Settlement and Motion for Class Counsel Fee and Expense Award and Class Representative Service Awards (Dkt. 164) or the substantial relief offered to the Class under the Settlement. The Supreme Court has long encouraged negotiated fees, and especially fees that are (a) negotiated after settlement terms for the class are agreed to, and (b) paid in addition to the benefits to the class, so as not reduce those benefits. *See*, *e.g.*, *Evans v. Jeff D*., 475 U.S. 717, 734-38 n.30 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (negotiated fees are the "ideal" toward which parties should strive). The parties did that here.

Additionally, Mr. Maybury says he has "received [the] considerable compensation for [his] prior objection to a class action law suit" of "sleeping well at night knowing I objected to what has been called 'legal blackmail' and 'hydraulic pressure…. to settle' pursued by class action legal firms." (Dkt. 150-1, p. 199) (ellipsis original) It is evident from his letter that Mr. Maybury's real objection is to class action legal practice in general and class action lawyers in particular, and not to the specifics of this case. This can further be seen by reviewing his objection in the Subway matter that he entitles "subway money grab."  Decl. of Bonner Walsh, Ex. 6.

Mr. Maybury's objection is without merit.

**Objection of John H. Metz**

John H. Metz objects that the 'limp mode' associated with the KSDS update is unsafe because it prevented him from keeping up with the flow of highway traffic, putting him in a dangerous and fearful situation. He states that he drove for ***11 hours with the engine light on*** and the vehicle in limp mode, and was informed the next morning when he took his vehicle in for service that "this was Hyundai's mode to have a governor on the engine till you get to a Hyundai dealer." (Dkt. 150-1 p. 201-202.)

Some time after this notice Mr. Metz' engine light came on again, the vehicle again went into limp mode, and he again proceeded to drive it for another 11 hours in that condition. (*Id.*) His engine was then replaced by Hyundai with a reconditioned engine. (*Id.*) Mr. Metz' behavior is akin to contributory negligence and demonstrates the need for provisions such as Extreme Neglect in the Settlement.

Mr. Metz wants compensation for his "significant emotional distress, fear and inconvenience." (*Id.* at 203). If so, he should have opted out of the Settlement in order to pursue those individual claims.

Mr. Metz, an attorney from Ohio, also demonstrates a fundamental misunderstanding of the class action process. He objects to the necessity of opting out of the Settlement to preserve individual claims based on the same legal issues, and states incorrectly that the Settlement forecloses suits for personal injuries or death. (*Id*.) Mr. Metz expresses worry about Class Counsel's compensation, wondering what the contingency fee for one third of a repair is, and presuming legal fees will be determined on a common fund standard. (*Id*. at 204) As stated above, attorney fees were negotiated subsequent to and separate from the Settlement, and do not reduce the value of the Settlement.

The objections of Mr. Metz should be overruled.

**Objection of Knight Motors, LP and Doman Auto and Marine Sales, Inc.**

Last year, Hyundai sued objector Knight Motors, LP ("Knight") in Pennsylvania for fraud.[22] Allegedly, Knight's practice is to buy hundreds of working 2011-14 Hyundai Sonatas for a few a thousand dollars each at auction, damage the engines, and then present them to Hyundai for repair under the *Mendoza* settlement. Hyundai, upon examining the damaged cars, found that it was too expensive to repair them, and bought them back at several times Knight's purchase price. Knight's efforts earned them the distinction of the number four ranking on *Auto Dealer Today*'s "Top 10 Fraud Stories of 2019."[23] Knight is not shy about its practices. Knight itself describes its behavior as a pattern of "purchasing 2011-2014

---

[22] Sabatini, Patricia, "Hyundai alleges local dealers damaged car engines for Profit," Pittsburgh Post-Gazette, Sept. 27, 2019.  (https://www.post-gazette.com/business/money/2019/09/27/Hyundai-dealers-damaged-car-engines-profit-Pantelis-Doman-Knight-Motors/stories/201909260178 last visited Nov. 3, 2020).

[23] https://www.autodealertodaymagazine.com/359842/top-10-fraud-stories-of-2019 last visited Nov. 3, 2020.

qualifying Hyundai Sonatas *en masse*" and presenting them to Hyundai dealerships for repair under the *Mendoza* settlement. (Doc. 158 p. 8-9).

Apparently, Knight views this settlement as an attack on their business plan. Knight devotes substantial real estate in its objection to *Mendoza*, and characterizes this settlement as a nefarious attempt to get around Hyundai's responsibilities under the *Mendoza* settlement.  This settlement is, in Knight's words, "intentionally designed so that Hyundai could stop what [Knight's principal] Mr. Pantelis (and others like him) are attempting to do." (Doc. 158 p. 19).  Knight complains that "although Hyundai could have excluded certain owners of 2011-2014 Hyundai Sonatas from the Class, Hyundai did not do so."  (Doc. 158 p. 4-5). Knight further complains that Hyundai did not exclude commercial entities in another settlement "where similar defects are alleged." (Doc. 158 p.19)[24]

In short, Knight's objection is not an attempt to improve the quality or fairness of the Settlement.  It is just a continuation of Knight's feud with Hyundai.

Knight relies on a limited reading of the definition of Exceptional Neglect to require that the KSDS update be installed within a 60-day window. Under the Settlement Agreement, the "Lifetime Warranty" applies to "those Class Vehicles owned by individual consumers that have completed the KSDS update in connection with Defendants' now-ongoing product improvement campaigns described herein." (Doc. 128-1 I.M). "Exceptional Neglect" is shown if a Class member fails to have the KSDS update installed within 60 days of the Notice Date or the mailing of the KSDS campaign notice, whichever is later. (*Id.* I.J) Read together, this means that

---

[24] Knight alleges the defects are similar in *Brown v. Hyundai Motor America*, No.: 2:28-cv-11249 (D.N.J. Sept. 27, 2019).  However, the defect there is wholly unrelated and involves a different part of the engine and the resolution requires no knock sensor. The operative complaint in that matter is attached to the Walsh Decl. as Ex. 4.

the Lifetime Warranty applies to vehicles that have had the KSDS update at any time prior to 60 days after the Notice Date.

Knight also claims that "car dealers and auction houses or finance companies serve as essential clearinghouses for recall implementations in the US and are the most likely to submit cars in accord with the settlement agreement." (Doc. 158 p. 18) Whether this is true for auto dealers in general, it is not true for Knight. Of the 162 VIN numbers submitted by Knight, only 19 of the vehicles have had the KSDS update and have no open recalls. Walsh Decl. at ¶ 5. The remaining 143 vehicles all have open recalls, and most have multiple open recalls; in total there are 530 outstanding recalls for these vehicles. The worst two examples have 10 open recalls, some dating back to 2013. (*Id.*) On each of the non-updated vehicles, the notice date for the KSDS campaign was August of 2018.  (*Id.*) Knight's objections regarding selling vehicles with known defects to the public is therefore disingenuous. (Doc. 158 p. 18) Knight suggests that a proper definition of Exceptional Neglect would include a period of two years without performing the KSDS update. (Dkt. 158-1 p. 343) On their own terms, they have had enough time to perform the update.

In their other arguments, Knight estimates the number of vehicles which have had the KSDS installed to be "fewer than 20%." (Doc. 158 p. 25). In fact, Hyundai's updated responses to Plaintiffs' Interrogatories show that the KSDS update has been installed on more than 77% of all Hyundai Class Vehicles.  Declaration of Adam Gonnelli in Support of Final Approval of Class Settlement at ¶¶ 6, 19 (Dkt. 143-2), (Dkt. 164-2 at ¶¶ 14).  Knight's concerns about a "bottleneck" whereby Defendants could prevent the timely installation of the KSDS update and then deny coverage are unfounded. (Dkt. 158 p. 22)

**CONCLUSION**

As laid out above, the objection rate to the Settlement is exceedingly small, and none of the objectors have laid forth compelling reasons not to approve the

Settlement, which provides substantial benefits to the class.  As such, the objections should be overruled.

Dated: November 6, 2020       Respectfully submitted,

By:    /s/ *Bonner C. Walsh*
       Bonner Walsh (*pro hac vice*)
       **WALSH PLLC**
       1561 Long Haul Road
       Grangeville, ID 83530
       Telephone: (541) 359-2827
       Facsimile: (866) 503-8206
       bonner@walshpllc.com

       Joseph G. Sauder
       Matthew D. Schelkopf
       Joseph B. Kenney
       **SAUDER SCHELKOPF**
       1109 Lancaster Avenue
       Berwyn, PA 19312
       Telephone: (610) 200-0581
       jgs@sstriallawyers.com
       mds@sstriallawyers.com
       jbk@sstriallawyers.com

       Adam Gonnelli (*pro hac vice*)
       **LAW OFFICE OF ADAM R.**
       **GONNELLI, L.L.C.**
       7030 E. Genesee Street
       Fayetteville, NY 13066
       Telephone: (917) 541-7110
       Facsimile: (315) 446-7521
       adam@arglawoffice.com

       Steve W. Berman (*pro hac vice*)
       **HAGENS BERMAN SOBOL SHAPIRO**
       **LLP**
       1301 Second Avenue, Suite 2000
       Seattle, WA 98101
       Telephone: (206) 623-7292
       Fax: (206) 623-0594
       steve@hbsslaw.com

1

## **CERTIFICATE OF SERVICE**

2

3

4

I, Bonner C. Walsh, hereby certify that on this 6th day of November, 2020, I caused the foregoing to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.

5

6

7

By: ____*/s/ Bonner C. Walsh*_____
Bonner C. Walsh

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28