QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100
 Kari Wohlschlegel (Bar No. 294807)
  kariwohlschlegel@quinnemanuel.com
 Tina Lo (Bar No. 311184)
  tinalo@quinnemanuel.com
 Christine W. Chen (Bar No. 327581)
  christinechen@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | CASE NO. 8:17-cv-00838<br><br>Member Cases:<br>8:17-cv-01365-JLS-JDE<br>8:17-cv-02208-JLS-JDE<br>2:18-cv-05255-JLS-JDE<br>8:18-cv-00622-JLS-JDE<br><br>Related Case:<br>8:18-cv-02223-JLS-JDE<br><br>**HYUNDAI MOTOR AMERICA'S SUBMISSION IN RESPONSE TO KNIGHT MOTORS LP'S OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT** |

**Preliminary Statement**

Knight Motors' objection attempts to infuse disputed issues from another active litigation between Knight Motors and Hyundai Motor America ("HMA") into this action, which have no bearing on the fairness, reasonableness, and adequacy of the proposed class settlement before this Court.

Knight Motors is a used car dealer and a class member of a prior class settlement reached in *In re: Hyundai Sonata Engine Litigation*, No. 5:15-cv-01685-BLF (N.D. Cal) ("the *Mendoza* action") that included owners and lessees of 2011-2014 Hyundai Sonatas equipped with a Theta II 2.0 liter or 2.4 liter GDI engine. That settlement was granted final approval on January 23, 2017 and provided benefits such as (1) a 10-year/120,000-mile warranty extension, (2) reimbursement for past repairs, rental car, and towing costs, and (3) compensation for a sold or traded-in vehicle. (*See* Dkt. 158-1 at PageID.6234-6239.) Upon learning of HMA's practice of generously compensating owners of eligible class vehicles that qualified for inspection and repair, Knight Motors began collecting eligible Sonatas *en masse* as part of a business strategy, obtaining over 700 class vehicles as part of its scheme and presenting over 600 to Hyundai for buyback—many apparently intentionally disabled to qualify for greater settlement benefits. (*See* Dkt. 158 at 56.)[1] HMA and Knight Motors have been engaged in litigation over Knight Motors' exploitation of the *Mendoza* settlement as well as other disputed allegations underlying Knight Motors' objection.[2] (*See* Dkt. 158-1 at PageID.6105-6118).

The Court need not delve into the merit of these allegations to evaluate the settlement under consideration. Knight Motors' submission only raises a handful of

---

[1] *See also* ADT Staff, *Top 10 Fraud Stories of 2019*, Auto Dealer Today (Dec. 30, 2019), https://www.autodealertodaymagazine.com/359842/top-10-fraud-stories-of-2019.

[2] Knight Motors quotes without context from a discovery conference with Judge Philip A. Ignelzi from the litigation against HMA. (*See* Dkt. 158 at 12). The quote misleadingly suggests that the court agreed with Knight Motors' contentions on fraud, when upon examination of the transcript, the court is merely summarizing
(footnote continued)

issues that actually relate to this proposed settlement, none of which provide sufficient bases to deny approval. As detailed more fully below, Knight Motor incorrectly contends this settlement dilutes the settlement benefits provided under *Mendoza* and that used car dealers are included in the class but excluded from settlement benefits. Both statements are wrong; all benefits from the *Mendoza* action endure, and used car dealers remain eligible for all remedies provided by this settlement with the one exception of the Lifetime Warranty (although that benefit extends to consumers who buy *from* a used car dealer). Knight Motors also takes issue with the opt-out procedure, which is not unique to this action and was not dictated by the settling parties or this Court. None of the purported issues raised by Knight should disrupt granting final approval.

## Argument

### I. BENEFITS FROM THE *MENDOZA* SETTLEMENT ARE NOT DIMINISHED BY THIS CLASS SETTLEMENT

Knight Motors incorrectly contends the proposed settlement here somehow alters the terms of the *Mendoza* settlement. (Dkt. 158 at 13.) All benefits provided under the settlement in the *Mendoza* action remain in place and are not affected or diminished by the terms of this settlement. And indeed, even though HMA obtained full claims releases in connection with the *Mendoza* settlement that would preclude any additional relief from class members such as Knight Motors, it generously agreed to allow *Mendoza* class members to participate in this settlement as well. In most scenarios, class members from the *Mendoza* action will enjoy extended benefits and additional relief under the proposed settlement here. For example, owners of 2011-2014 Sonatas are covered under the 10-year/120,000-mile warranty extension from the *Mendoza* action; however, when that expires (as it soon will for owners of 2011 Sonatas), they, with the exception of commercial entities, will be

---

Knight Motors' position in an effort to understand the relevance argument for a
(footnote continued)

covered under the Lifetime Warranty provided by the settlement here. In addition, any claims for reimbursement for repair or repair-related expenses that were not made in a timely manner and within the designated claims period under the *Mendoza* settlement may be made now, along with additional avenues for compensation (*e.g.,* inconvenience due to repair delays, loss of vehicle by engine fire, and rebate for buying another Hyundai or Kia).

Although installation of the KSDS is a pre-requisite to obtaining Lifetime Warranty benefits, *Mendoza* class members are not required to install KSDS for the continued application of its 10-year/120,000 mile warranty. However, because the KSDS is a preventative software designed to alert drivers of engine irregularities that suggest bearing wear, all Class Vehicle owners have been advised to have it installed as soon as practicable and if they want to remain eligible for the Lifetime Warranty.

To the extent Knight Motors takes issue with the administration and execution of the *Mendoza* settlement (Dkt. 158 at 3-7), those issues should have been raised with the court that presided over the *Mendoza* settlement. Significantly, in the almost four years since the *Mendoza* settlement went final, Knight Motors has not raised *any* complaints with Judge Freeman of the Northern District about the administration of that settlement.[3] Instead it is trying to raise untimely gripes through a side door here—in a separate case overseen by a different judge and on an inadequate record.

---

document sought in discovery. (*See* Dkt. 158-1, PageID.6365-6376.)

[3] Thus, contrary to Knight Motors' suggestion, HMA did not misstate the record when it said no class member has voiced concerns to the *Mendoza* court about HMA's self-administration. (Dkt. 158 at 10). That statement was accurate when made. Recently, during the claims period for *this* settlement, a member of both the *Mendoza* and *In re: Hyundai and Kia Engine Litigation* classes did contact Judge Freeman about a claim for benefits that implicated both settlements, which counsel for both parties are cooperating to resolve.

## II. USED CAR DEALERS ARE ENTITLED TO FAIR SETTLEMENT BENEFITS

Knight Motors also incorrectly argues that used car dealers and auction houses, like itself, were included in the settling class but barred from any settlement benefits. In fact, used car dealers can avail themselves of several benefits provided by the proposed settlement. For example, they can still obtain free installation of the Knock Sensor Detection Software for any Class Vehicles, reimbursement of any past expenses related to a Qualifying Repair incurred before the Notice Date (*see* Dkt. 128-1 at 13-16), and/or a rebate under the rebate program (*id.* at 18-19). Further, although used car dealers as well as other commercial entities are excluded from Lifetime Warranty benefits (*id.* at 6), *consumer* purchasers of used Class Vehicles would still be eligible for the Lifetime Warranty (*id.* at 11). This ensures that consumers who drive the Class Vehicles for personal use are covered while commercial entities, like Knight Motors, are prevented from exploiting the settlement benefits for their own financial gain. (*See* Dkt. 158 at 6 (stating Knight Motors was "incentivized" in part by the "financial gain" posed by the *Mendoza* settlement agreement)).

## III. THE OPT-OUT PROCEDURE HERE IS STANDARD

It is settled law that in order to have standing to lodge an objection to a proposed settlement, a class member must remain in the class. *Lozano v. AT&T Wireless Servs., Inc.*, No. CV020090CASAJWX, 2010 WL 11515433, at *5 (C.D. Cal. Nov. 22, 2010) (finding that objector opted out and thus lacked standing to object to the settlement); *Kim v. Tinder, Inc.*, No. 18 CV 3093 JFW (ASX), 2019 WL 3064464, at *1 (C.D. Cal. May 24, 2019) ("In a class action lawsuit, an objector is a non-named *class member*." (emphasis added)). This is not a procedural requirement arbitrarily imposed by the parties in this action or this Court; it is a long-established rule baked into the class action process. Class members, upon notice of the settlement and examination of its terms, have the opportunity to

consider and assess whether they (1) want to opt out entirely and pursue individual claims or (2) remain in the class and object to the settlement and/or enjoy the benefits of the settlements.  Here, Knight Motors is represented by counsel, owns more than 162 class vehicles, and is engaged in active litigation with HMA elsewhere.  (*See* Dkt. 158 at 24-25.)  It does not dispute it received notice of the settlement and had ample opportunity to discuss with its attorney the pros and cons of opting out of this class settlement and in consideration of the 162 class vehicles in its inventory (which would have sufficient value to justify such an opt out).  Presumably, Knight Motors made an informed and calculated decision with its counsel not to exclude itself from the settlement, fully understanding the structure of the settlement.  The exclusion deadline has now passed and Knight made its election; it must accept the consequences.

### Conclusion

For the above reasons, Knight Motors' objection is without merit and is not a sufficient basis to deny the proposed settlement in this action.

DATED: November 9, 2020              QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Shon Morgan
Shon Morgan
*Attorneys for Hyundai Motor America*