Matthew D. Schelkopf
SAUDER SCHELKOPF
1109 Lancaster Avenue
Berwyn, PA 19312
mds@sstriallawyers.com

Adam Gonnelli (*pro hac vice*)
LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
7030 E. Genesee Street
Fayetteville, NY 13066
adam@arglawoffice.com

Bonner Walsh (*pro hac vice*)
WALSH PLLC
1561 Long Haul Road
Grangeville, ID 83530
bonner@walshpllc.com

*Attorneys for Plaintiffs and the Proposed Class*

**[LIST OF ADDITIONAL COUNSEL ON SIGNATURE PAGE]**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Hyundai and Kia Engine Litigation* | 8:17-cv-00838-JLS-JDE |
| | Related Cases: |
| | 8:17-cv-01365-JLS-JDE |
| | 8:17-cv-02208-JLS-JDE |
| | 2:18-cv-05255-JLS-JDE |
| | 8:18-cv-00622-JLS-JDE |
| | 8:18-cv-02223-JLS-JDE |
| | **RESPONSE TO KNIGHT MOTORS, LP'S NOTICE REGARDING FINAL APPROVAL AND REQUEST TO TAKE JUDICIAL NOTICE** |

-1-

On December 1, 2020 Knight Motors, LP ("Knight") filed a Notice Regarding Final Approval and Request to Take Judicial Notice. ECF No. 187. The subject of Knight's Request is a November 23, 2020 Consent Order entered into between Hyundai and NHTSA stemming from NHTSA's allegations that Hyundai's recalls of certain Class Vehicles in 2015 and 2017 were untimely and that Hyundai had not been completely forthcoming in its recall filings with NHTSA.

It is unclear what, if anything, Knight believes the impact of the Consent Order should have on the Court's evaluation of the settlement, and Knight does not offer any argument in this regard.

Plaintiffs do not believe the Consent Order has any impact on the approval of the settlement. The Consent Order addresses alleged administrative process deficiencies related to Recalls 15V-568 and 17V-226 of certain Hyundai Sonatas and Santa Fe Sport vehicles[1] and imposes civil penalties on Hyundai for its conduct related to those recalls.

The terms of the Consent Order do not affect the relief offered to Class Members nor make it less valuable. Under the terms of the Consent Order, Hyundai will pay a civil penalty of $54 million directly to NHTSA; another $46 million which NHTSA will hold in abeyance pending Hyundai's compliance with the Consent Order; and Hyundai agrees to spend another $40 million on investment in "advanced data analytics capabilities to enhance its ability to detect and study emerging safety-related defect trends" and to build a test facility in the United States. Consent Order ¶¶ 12, 22-23. The Consent Order also requires Hyundai to make corporate organizational and process improvements such as the appointment of an American Chief Safety Officer. ¶¶ 38-40.

Thus, the requirements in the Consent Order do not provide any direct relief to Class Members and do not overlap with the relief offered in the Settlement. Nor

---

[1] These recalls are addressed in the Settlement Agreement at II.B.1. and Plaintiffs' Motion

Response to Knight Motors, LP's Notice Regarding Final Approval and Request to Take Judicial Notice

could it. "[The] NHTSA only has the legal authority to order [manufacturers] to offer free inspection and repair, not reimbursement and warranty extension." *Edwards v. Ford Motor Co.*, No. 11CV1058-MMA (BLM), 2016 WL 1665793, at *7 (S.D. Cal. Jan. 22, 2016) (quoting *Chin v. DaimlerChrysler Corp.*, 461 F. Supp. 2d 279, 284 (D.N.J. 2006)).

In addition, it is not unusual for NHTSA to enter into a consent order with an automotive manufacturer following a class action settlement. For example, in *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Pracs., and Prods. Liab. Litig.*, 08:10-ML-02151-JVS, Judge Selna approved a $1.2-1.4 billion class settlement. On the heels of that litigation, NHTSA and the DOJ imposed a $1.2 billion criminal penalty on Toyota related to the recalls that Toyota had previously administered in relation to the same unintended acceleration at issue in the class action case. Indeed, the primary purpose of the NHTSA fines is deterrence from similar conduct in the future. Conversely, the primary purpose of the class action settlement is to redress injury to the Settlement Class Members. The administrative actions taken by NHTSA after the final approval hearing do not supplant or alter the hard-fought relief that will be provided to the Settlement Class Members in this litigation.

Lastly, the Consent Order does not mention, let alone discuss, this litigation. As such, any inference by Knight that the Consent Order took issue with any aspect of the Settlement should be rejected, as should the inference that the parties were in some way concealing the Consent Order from the Court.[2] Class Counsel was not involved with the Consent Order, and it has no direct relation to the consumer class

---

for Final Approval, ECF No. 143, at pp. 8-9. Although the Settlement Agreement provides that the recalls are part of the consideration offered to the Class, Plaintiffs did not include the recalls and related inspections in the valuation analysis. ECF No. 143, at 9 n.12.

[2] This week, Defendant Kia Motors America, Inc. informed class counsel that it has also entered into a Consent Order with NHTSA. A copy of the Consent Order is attached hereto as **Exhibit A**.

litigation before this Court. Put simply, the Consent Order has no impact on the Court's analysis of the fairness, reasonableness, or adequacy of the Settlement.

As discussed in the settling parties' previous update (Dkt. 186), the parties intend to address the points raised by the Court during the final approval hearing by December 17, 2020, but in the meantime, Plaintiffs felt compelled to put Knight's Notice in the proper context.

Dated: December 4, 2020       Respectfully submitted,

By:   /s/ *Bonner C. Walsh*
      Bonner Walsh (*pro hac vice*)
      **WALSH PLLC**
      1561 Long Haul Road
      Grangeville, ID 83530
      Telephone: (541) 359-2827
      Facsimile: (866) 503-8206
      bonner@walshpllc.com

      Joseph G. Sauder
      Matthew D. Schelkopf
      Joseph B. Kenney
      **SAUDER SCHELKOPF**
      1109 Lancaster Avenue
      Berwyn, PA 19312
      Telephone: (610) 200-0581
      jgs@sstriallawyers.com
      mds@sstriallawyers.com
      jbk@sstriallawyers.com

      Adam Gonnelli (*pro hac vice*)
      **LAW OFFICE OF ADAM R.**
      **GONNELLI, L.L.C.**
      7030 E. Genesee Street
      Fayetteville, NY 13066
      Telephone: (917) 541-7110
      Facsimile: (315) 446-7521
      adam@arglawoffice.com

-4-

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com

-5-

**<u>CERTIFICATE OF SERVICE</u>**

I, Bonner C. Walsh, hereby certify that on this 4th day of December, 2020, I caused the foregoing to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.

By:   ___/s/ *Bonner C. Walsh*_____
Bonner C. Walsh

# EXHIBIT A

**UNITED STATES DEPARTMENT OF TRANSPORTATION**
**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION**
1200 New Jersey Avenue, SE
West Building, W41-326
Washington, DC 20590

| | |
|---|---|
| **In re:** | ) |
| | ) |
| **Kia Motors America, Inc.** | ) |
| RQ17-003 | ) |
| NHTSA Recall No. 17V-224 | ) |
| | ) |
| | ) |

## <u>CONSENT ORDER</u>

This Consent Order is issued pursuant to the authority of the National Highway Traffic Safety Administration ("NHTSA"), an operating administration of the U.S. Department of Transportation. This Consent Order sets forth the requirements and performance obligations agreed to by Kia Motors America, Inc. ("Kia"), under the following terms and conditions.

### I.   NATURE OF THE ACTION

1.   The National Traffic and Motor Vehicle Safety Act of 1966 as amended and recodified (the "Safety Act"), 49 U.S.C. Chapter 301, provides for regulation of motor vehicles and motor vehicle equipment by the Secretary of Transportation. The Secretary has delegated her authorities under the Safety Act to the NHTSA Administrator. *See* 49 C.F.R. § 1.95(a). All authorities lawfully vested and reserved to the NHTSA Administrator may be exercised by the NHTSA Deputy Administrator. *See* 49 C.F.R. § 501.5(a).

2.   A manufacturer of a motor vehicle that decides in good faith that the vehicle contains a defect related to motor vehicle safety or does not comply with an applicable federal motor vehicle safety standard ("FMVSS") must notify NHTSA by submitting a Defect and Noncompliance Information Report ("DIR"). 49 U.S.C. § 30118(c); 49 C.F.R. § 573.6. A

manufacturer must submit the DIR not more than five working days after it knew or should have known of a safety-related defect or noncompliance in its vehicles.  *See* 49 C.F.R. § 573.6(b).

3.   A manufacturer must amend its DIR within five working days after it has new information that updates or corrects information previously reported relating to identification of the vehicles or items of motor vehicle equipment potentially containing the defect or noncompliance, including a description of the manufacturer's basis for its determination of the recall population and a description of how the vehicles or items of equipment to be recalled differ from similar vehicles or items of equipment that the manufacturer has not included in the recall.  49 C.F.R. § 573.6(b).

4.   On March 31, 2017, Kia filed a DIR with NHTSA.  This recall was assigned NHTSA recall number 17V-224.  Kia recalled certain Model Year 2011-2014 Optima, 2012-2014 Sorento, and 2011-2013 Sportage vehicles equipped with 2.4L and 2.0L Theta II Gasoline Direct Injection ("GDI") engines.  The description of the defect stated:

> Metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft which may not have been completely removed from the crankshaft's oil passages during the cleaning process. In addition, the machining processes of the crankpins caused an uneven surface roughness. As a result, the metal debris and uneven surface roughness can restrict oil flow to the bearings, thereby increasing bearing temperatures causing premature bearing wear. A worn connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the engine warning lamp and/or oil pressure lamp in the instrument panel. If the warnings are ignored and the vehicle is continued to be driven, the bearing may fail and the vehicle could stall while in motion.

5.   Previously, on September 10, 2015, Hyundai Motor America ("HMA") filed a DIR recalling certain vehicles containing engines from the shared Theta II GDI engine model family, describing the defect as an issue involving manufacturing debris.  This recall was assigned NHTSA recall number 15V-568.  Subsequently, in its March 31, 2017 recall, Kia's

chronology included its description of why no action was required by Kia when it learned of
Hyundai's recall (15V-568).  The chronology explained that in September 2015, "Kia learns of
Hyundai recall (15V-568) related to engine damage in 2011-2012 MY Sonata vehicles with
Theta engines caused by oil blockage from debris left in engines during manufacturing at
Alabama plant.  Kia checks Theta engine manufacturing process for Optima on separate
assembly line and identifies different procedures and no issues.  Field review shows warranty
and field claims extremely low.  Decision:  no action required."

6.  On May 18, 2017, NHTSA opened Recall Query ("RQ") 17-003 to investigate
both the timeliness and scope of Kia's Theta II GDI engine recall, and Kia's compliance with
reporting requirements.

7.  Based on Kia's responses to NHTSA's RQ17-003 investigation, which included a
voluminous production of information, NHTSA asserted that Kia may be liable for civil penalties
under 49 U.S.C. §§ 30165(a)(1) and (3) on multiple grounds, including because Recall No. 17V-
224 was untimely and Kia's DIR contained certain inaccuracies.  Kia disagreed with these
assertions.  To administratively resolve these issues, NHTSA and Kia have mutually agreed to
this Consent Order.

8.  NHTSA issues this Consent Order pursuant to its authority under the Safety Act,
49 U.S.C. Chapter 301, consistent with U.S. Department of Transportation enforcement
procedures, 49 C.F.R. Part 5, Subpart D, and in accordance with the delegations at 49 C.F.R.
§§ 1.95, 501.5(a), to compromise the amount of civil penalties, 49 U.S.C. § 30165(b), to inspect
and investigate, 49 U.S.C. § 30166(b)(1), to ensure that defective vehicles and equipment are
recalled, 49 U.S.C. §§ 30118-30120, and to require reports or answers to specific questions,
49 U.S.C. § 30166(e).

3

It is **AGREED** by Kia and **ORDERED** by NHTSA that the following provisions shall apply.

## II.    TERMS AND CONDITIONS OF CONSENT ORDER

**Civil Penalty**

9.    In determining an appropriate civil penalty amount, NHTSA considered the civil penalty factors set forth in 49 U.S.C. § 30165(c) and Kia's views of how those factors should be applied.  NHTSA has also taken into account Kia's cooperation with NHTSA's RQ17-003 investigation.

10.    Subject to the terms in the remainder of this Paragraph, Kia shall pay a civil penalty in the sum of seventy million dollars ($70,000,000) ("Total Civil Penalty").

  a.    Of the Total Civil Penalty, the sum of twenty-seven million dollars ($27,000,000) ("Non-Deferred Amount") shall be paid within sixty (60) calendar days of the Effective Date of this Consent Order in accordance with instructions provided by NHTSA.

  b.    Of the Total Civil Penalty, the sum of twenty-seven million dollars ($27,000,000) ("Abeyance Amount") shall be deferred and held in abeyance by NHTSA pending Kia's satisfactory completion, as reasonably determined by NHTSA, of the requirements of this Consent Order.  In the event that Kia commits material violations of the Safety Act, regulations thereunder, or this Consent Order, during the term of this Consent Order, Kia may be obligated to pay the Abeyance Amount or a portion thereof in accordance with Paragraph 17 below, and may be liable for additional civil penalties beyond

the Abeyance Amount for those violations of the Safety Act and regulations

thereunder.

c.   Of the Total Civil Penalty, sixteen million dollars ($16,000,000)

("Performance Obligation Amount") shall be expended by Kia during the term

of this Consent Order to fulfill the Safety Data Analytics infrastructure

obligations identified in Paragraph 20.

11.   Pursuant to this agreement, Kia admits that it owes a debt in the amount of

seventy million dollars ($70,000,000), as provided for in Paragraph 10, arising from activities

under the jurisdiction of the U.S. Department of Transportation, due and owing to the United

States under the Federal Claims Collection Act of 1966, as amended and codified at 31 U.S.C.

§ 3701, *et seq*. (hereinafter the "Claims Collection Act").

12.   If Kia fails to make the payment of the Non-Deferred Amount as set forth in

Paragraph 10a above, or any payments of the Abeyance Amount as may be imposed in

accordance with this Consent Order, on or before their respective due dates, Kia shall be in

default of this Consent Order and the remaining balance of the Total Civil Penalty shall become

due immediately.  In that event: (i) Kia agrees not to contest any collection action undertaken by

NHTSA or the United States pursuant to applicable law, including the Claims Collection Act and

the U.S. Department of Transportation's regulations, 49 C.F.R. Part 89, either administratively or

in any court, and (ii) Kia affirmatively waives any and all defenses or rights that would otherwise

be available to it in any such proceeding.  In addition, in such a proceeding, Kia shall pay the

United States all reasonable costs of collection and enforcement, including attorneys' fees and

expenses.  This provision does not preclude Kia from contesting the imposition of any of the

Abeyance Amount in accordance with Paragraph 17 below.

5

13.   Upon receipt of the Non-Deferred Amount and upon expiration of the Consent Order (including any extensions), Kia, including its current and former directors, officers, employees, agents, successors, and assigns will be deemed released from liability for civil penalties pursuant to 49 U.S.C. § 30165 in connection with any and all violations of the Safety Act or regulations thereunder relating to RQ17-003, including the timeliness and reporting of Recall No. 17V-224, from the inception of the Safety Act through the Effective Date of this Consent Order.

14.   Nothing in this Consent Order discharges Kia from any obligation to comply with the Safety Act or regulations thereunder, including the obligation to carry out recalls in accordance with law, and to initiate a recall upon any future determination by Kia, or upon any finally adjudicated order from NHTSA, that vehicles equipped with Theta II GDI engines contain a defect related to motor vehicle safety or do not comply with an applicable FMVSS. Likewise, other than RQ17-003, this Consent Order is not intended to affect any other current or future investigation of NHTSA, DOT, or the United States, which may involve vehicles equipped with Theta II GDI engines, expressly including but not limited to NHTSA Preliminary Evaluation ("PE") 19-004.

15.   This Consent Order does not release Kia from liabilities, if any, that may be asserted by the United States, the U.S. Department of Transportation, NHTSA, or any governmental entity, other than the civil penalty liability under 49 U.S.C. § 30165 as described in Paragraph 13.

*Abeyance Amount*

16. The Abeyance Amount is subject to release on the following schedule:

a.  If NHTSA does not make a determination that Kia has materially violated the Safety Act, regulations thereunder, or the terms of this Consent Order by the end of the first year of the Consent Order, nine million dollars ($9,000,000) will be deemed released.

b.  If NHTSA does not make a determination that Kia has materially violated the Safety Act, regulations thereunder, or the terms of this Consent Order by the end of the second year of the Consent Order, and does not exercise its option for an additional year pursuant to Paragraph 37, the remainder of the Abeyance Amount will be deemed released.

c.  If NHTSA exercises its option for an additional year pursuant to Paragraph 37, and if NHTSA does not make a determination that Kia has materially violated the Safety Act, regulations thereunder, or the terms of this Consent Order by the end of the second year of the Consent Order, nine million dollars ($9,000,000) will be deemed released.

d.  If NHTSA exercises its option for an additional year pursuant to Paragraph 37, and if NHTSA does not make a determination that Kia has materially violated the Safety Act, regulations thereunder, or the terms of this Consent Order by the end of the third year of the Consent Order, the remainder of the Abeyance Amount will be deemed released.

17.  Should NHTSA receive notice or reasonably believe that Kia has materially violated the Safety Act, regulations thereunder, or the terms of this Consent Order, NHTSA shall provide written notice to Kia, including a statement regarding the Abeyance Amount that will be due if NHTSA makes a determination in accordance with this Paragraph.  Kia will have thirty

7

(30) calendar days or such other time as mutually agreed by NHTSA and Kia, from the date on which the issue was communicated to Kia by NHTSA ("Evaluation Period") to respond to the notice in writing.  Kia's response will provide its views, along with any supporting information and documentation.  Should there be a reasonable dispute, the parties agree to reasonably discuss the alleged violation.  If no mutually agreeable resolution is reached after discussion and NHTSA reasonably determines that Kia has materially violated the Safety Act, regulations thereunder, or the terms of this Consent Order, then Kia will be liable for the Abeyance Amount determined by NHTSA, to be paid in accordance with instructions from NHTSA within thirty (30) calendar days of such determination.

18.  Kia shall only be liable for the payment of the Abeyance Amount in accordance with the conditions in Paragraph 17.  Kia will be deemed released from any portion of the Abeyance Amount remaining at the expiration of this Consent Order.

### *Performance Obligation Amount*

19.  This Consent Order requires Kia to expend sixteen million dollars ($16,000,000) in Safety Data Analytics infrastructure (i.e. the "Performance Obligation Amount") pursuant to the timeline set forth in Paragraphs 21 and 26.

## **Performance Obligation**

20. Kia will invest in advanced data analytics capabilities to enhance its ability to detect and study emerging safety-related defect trends on its vehicles (the "Safety Data Analytics infrastructure").  This infrastructure will encompass, *inter alia*, assessing the potential of integrating machine learning and predictive analytics and sensing methodologies into Kia's existing processes to identify and investigate potential defect trends.

8

21.  Kia shall meet with NHTSA, either virtually or in person, no later than ninety
(90) calendar days after the Effective Date of this Consent Order to discuss an initial plan for the
Safety Data Analytics infrastructure, along with an estimated timeline for its implementation and
cost.  Kia shall notify NHTSA of any material changes to this information, and shall reasonably
consider any feedback from NHTSA on its Safety Data Analytics infrastructure.  Kia shall
update NHTSA on the progress of implementing the Safety Data Analytics infrastructure during
its meetings with the agency pursuant to Paragraph 36.

**<u>Third-Party Auditor</u>**

22.  No later than twenty-one (21) calendar days after the Effective Date of this
Consent Order, Kia shall provide to NHTSA the names of three (3) individuals with expertise in
motor vehicle safety and the requirements of the Safety Act and qualified to serve as an
independent, Third-Party Auditor for NHTSA to select.

23. Kia shall retain, at its sole cost and expense, the independent, Third-Party Auditor
selected by NHTSA no later than fourteen (14) calendar days after NHTSA notifies Kia in
writing of its selection.  Kia shall pay the compensation and expenses of the Third-Party Auditor,
including any persons hired by the Third-Party Auditor as is reasonably necessary to carry out
the duties of the Third-Party Auditor, after consultation with Kia.

24.  Kia agrees to cooperate with the Third-Party Auditor to ensure that the Third-
Party Auditor has access to the information that is reasonably necessary for it to carry out its
duties under the Consent Order.

25.  The Third-Party Auditor shall report to NHTSA directly, and shall be responsible
for reviewing and assessing Kia's compliance with this Consent Order, the Safety Act, and
regulations thereunder, including but not limited to Kia's Performance Obligation expenditures,
the implementation and efficacy of the Safety Data Analytics infrastructure, Kia's recall

9

decision-making and processes, Kia's independent recall authority, and the implementation and efficacy of Kia's new Safety Office.  In carrying out the responsibilities herein, the Third-Party Auditor may interview Kia personnel, request to attend meetings, review non-privileged documents and other materials, and make other reasonable requests to Kia to allow it to carry out its responsibilities.  To the extent the Third-Party Auditor reasonably seeks access to information contained in privileged documents, Kia will use best efforts to provide the Third-Party Auditor with access to information without compromising the privilege.  The Third-Party Auditor must notify NHTSA if not provided the access or assistance from Kia it believes it needs to carry out its responsibilities under this Consent Order.

26.  To substantiate completion and satisfaction of the Performance Obligation amount for the Safety Data Analytics infrastructure, Kia shall provide the Third-Party Auditor documentation with sufficient detail to enable the Third-Party Auditor to prepare a report to NHTSA confirming the amount that Kia expended in furtherance of its obligations to invest in Safety Data Analytics infrastructure.  If Kia has not expended the full Performance Obligation Amount no later than twenty-three (23) months after the Effective Date of this Consent Order, or thirty-five (35) months if the Consent Order is extended for a third year, the unexpended portion of the Performance Obligation Amount shall become immediately due and owing to the U.S. Treasury, except that NHTSA, in its sole discretion, may count a reasonable amount of Kia's future costs in implementing the Safety Data Analytics infrastructure toward the required investment.

27.  No later than thirty (30) calendar days after the Third-Party Auditor is retained by Kia, the Third-Party Auditor will submit to NHTSA a work plan and schedule for the completion of the assessments required by Paragraph 25.  The Third-Party Auditor shall periodically

continue to assess Kia's compliance with this Consent Order, the Safety Act, and regulations
thereunder, and make such reports to NHTSA as required by Paragraph 29.

28.  The Third-Party Auditor shall make recommendations to Kia for improvements
to align with industry best practices ("Best Practices").  No later than thirty (30) calendar days
after the Third-Party Auditor is retained by Kia, the Third-Party Auditor will submit to NHTSA a
work plan and schedule for providing the recommendations required by this Paragraph.  The
Third-Party Auditor shall periodically continue to review Best Practices for the duration of the
Consent Order and make additional recommendations as warranted.

29.  The Third-Party Auditor shall provide reports to NHTSA detailing its findings
regarding Kia's compliance with the terms of this Consent Order, the Safety Act, and regulations
thereunder, including but not limited to Kia's Performance Obligation expenditures, the
implementation and efficacy of the Safety Data Analytics infrastructure, Kia's recall decision-
making process, Kia's independent recall authority, and the implementation of Kia's new Safety
Office and its efficacy, as well its recommendations on Best Practices.  The reports will also
provide an assessment of the extent to which Kia has accepted or adopted each of the Third-Party
Auditor's recommended Best Practices.  No less than seven (7) calendar days prior to providing
any such report to NHTSA, the Third-Party Auditor shall provide a draft of the report to Kia, and
Kia shall have the opportunity to provide technical corrections and comments on the draft to the
Third-Party Auditor prior to submission to NHTSA.  The Third-Party Auditor may, based on
independent judgment, accept or reject such technical corrections or comments from Kia.  These
reports will be provided to NHTSA and Kia on the following schedule: the first is due six (6)
months after the Effective Date of this Consent Order, the second is due twelve (12) months after
the execution of this Consent Order, and the third is due twenty (20) months after the Effective

Date of this Consent Order.  If NHTSA elects to extend the term of this Consent Order by one year, a fourth report will be due thirty-three (33) months after the Effective Date of this Consent Order.

30.  On a recurring quarterly basis, the Third-Party Auditor shall meet with NHTSA, either virtually or in person, to discuss Kia's performance under this Consent Order, compliance with the Safety Act and regulations thereunder, and Kia's acceptance and adoption of the Third-Party Auditor's recommended Best Practices.  Kia may participate in these meetings if it elects to do so.

31.  To the extent that Kia does not accept and adopt all of the Third-Party Auditor's recommended Best Practices on or before twenty (20) months after the Effective Date of this Consent Order, Kia must submit a report to NHTSA detailing why it has not accepted the recommended Best Practices.

32.  Nothing in the reporting or meeting structure established herein is intended to restrict the ability for the Third-Party Auditor to otherwise raise issues to NHTSA, at any time during the Consent Order, as the Third-Party Auditor reasonably deems warranted.

33. Likewise, nothing herein is intended to limit NHTSA's ability to contact the Third-Party Auditor or Kia or request additional information from the Third-Party Auditor or Kia about any matter within the scope of this Consent Order outside of the reporting structure specified herein, as NHTSA reasonably deems warranted.  Any failure of the Third-Party Auditor to meet the specifications of this Consent Order shall not be deemed a violation of the Consent Order by Kia.

**Creation of Kia Safety Office and Kia's Independent Recall Decision-Making Authority**

34.  Kia commits and agrees to the following corporate organizational and process improvements:

a.  Establishing a Kia Safety Office, headed by a Chief Safety Officer ("CSO"), who is authorized to exercise all safety-recall decision-making for the United States market, independently and without approval from Kia Motors Corporation ("KMC"), its parent company in Korea, or any other entities.

b.  Kia has represented that the CSO will be insulated from anticipated recall cost information unless and until the CSO has made a decision that a recall is required.

c.  The CSO will report directly to the President of Kia Motors North America ("KMNA"), which provides the overall coordinating function for all North American operations of Kia in North America, including Kia Motors America, Inc. ("KMA"), Kia Motors Manufacturing Georgia ("KMMG"), Kia Manufacturing Mexico ("KMM"), Kia Canada, Inc., ("KCI"), and other North American functions.

d.  Kia will conduct periodic training on Vehicle Safety Act responsibilities for appropriate personnel.

e.  Kia will significantly increase staffing for vehicle safety issues, and such staff will be reorganized into the Kia Safety Office.  The additional staff will perform data analysis, engineering investigations, preparation for meetings with NHTSA, recall planning and execution, and compliance with NHTSA statutes and regulations.

13

f.  In reviewing safety issues, the Kia Safety Office will have immediate access to global claims/complaints data on vehicles or components that are common to Kia vehicles in the United States.

g.  The CSO is authorized to request engineering and investigative support from KMC and Kia represents that KMC has committed to supporting such requests.

h.  The CSO will have a formal liaison with HMA, Hyundai Motor Corporation ("HMC"), and KMC to review emerging issues with common components on a regular basis and share information about field inputs or reports regarding common platforms and/or components.

i.  The CSO will have a formal liaison with Kia's Office of General Counsel and will meet regularly to review new claims and lawsuits, evidence that may have been developed by litigation experts, and developments in existing matters.

j.  The CSO will participate in the monthly meetings with NHTSA's Office of Defects Investigation ("ODI"), as referenced in Paragraph 36, to review open issues, recent Technical Service Bulletins ("TSBs"), new Vehicle Owner Questionnaires ("VOQs"), and other issues of interest to NHTSA's ODI.

35.  Kia shall submit a Safety Evaluation List ("SEL") to NHTSA on a monthly basis. The SEL will be compiled in a form, manner, and scope agreed to by NHTSA and Kia, and shall include potential safety-related defects or noncompliances, including issues related to existing recalls, regardless of whether those issues are being investigated or reviewed by NHTSA.  The first report is due within sixty (60) calendar days after reaching agreement on the form and

manner of the SEL.  In addition to the SEL reports being required under this Consent Order, the SEL reports are also considered required reports under 49 U.S.C. § 30166(e).

36.  Members from Kia's Safety Office, including the CSO, will continue to meet with NHTSA, either virtually or in person, on at least a monthly basis during the term of this Consent Order, and will include in those meetings a discussion of the SEL list (as referenced in Paragraph 35), as well as any open issues, recent TSBs, VOQs, Kia's recall decision-making (including decisions not to recall) or other issues of interest to NHTSA's ODI.  If one or more monthly meetings fails to occur due to circumstances beyond Kia's control, the meeting omission shall not be deemed a violation of this Consent Order by Kia.

**III.    TERM OF THE CONSENT ORDER**

37.  Unless otherwise specified, the term of this Consent Order and Kia's performance obligations is two years from the Effective Date; provided, however, that NHTSA may extend the term of this Consent Order for an additional year if NHTSA reasonably finds that an extension is warranted.

**IV.    AMENDMENT**

38.  This Consent Order cannot be modified, amended, or waived except by an instrument in writing signed by all parties, and no provision may be modified, amended, or waived other than by a writing setting forth such modification, amendment or waiver.

39. The parties may agree, without need for an amendment as specified in Paragraph 38, to reasonable changes to specified report or meeting dates, schedules, or meeting cadences.

15

## V.    MISCELLANEOUS

40.   Kia shall use its best efforts to take all actions and to do all things necessary to comply with this Consent Order, and to cooperate with NHTSA in carrying out the requirements of this Consent Order.

41.   Nothing in this Consent Order shall be interpreted or construed in a manner inconsistent with, or contravening, any federal law, rule, or regulation at the time of the execution of this Consent Order, or as amended thereafter.

42.   None of the specific reporting obligations described in this Consent Order relieve Kia of its obligation to submit any other reports required by the Safety Act or its corresponding regulations, or otherwise comply with existing laws and regulations.

43.   The parties shall each bear their own respective attorneys' fees, costs, and expenses, except as provided in Paragraph 12 above.

44.   This Consent Order shall be effective upon its full execution by all individuals and parties listed as signatories below ("Effective Date").  Any breach of the obligations under this Consent Order, may, at NHTSA's option, be immediately enforceable in any United States District Court.  Kia agrees that it will not raise any objection as to venue.

45.   In the event of Kia's breach of, or failure to perform, any term of this Consent Order, NHTSA reserves the right to pursue any and all appropriate administrative and/or judicial remedies, including, but not limited to, assessing interest for untimely civil penalty payments and/or commencing litigation to enforce this Consent Order in any United States District Court.

46.   This Consent Order was negotiated and prepared by both NHTSA and Kia.  If any of the provisions in this Consent Order require a court's interpretation, no ambiguity shall be construed against the drafter.

47.   The parties who are the signatories to this Consent Order have the legal authority to enter into this Consent Order, and each party has authorized its undersigned to execute this Consent Order on its behalf.

48.   In any legal action between the parties concerning the enforceability of this Consent Order, Kia expressly waives any and all defenses and agrees not to plead, argue, or otherwise raise any defenses other than (i) that the payment of the Non-Deferred Amount, set forth in Paragraph 10a, was made, if applicable, and/or (ii) that Kia has substantially complied with the terms of this Consent Order.

49.   This Consent Order shall be binding upon, and inure to the benefit of, Kia and its current and former directors, officers, employees, agents, parents, subsidiaries, affiliates, successors, and assigns.  Kia agrees to waive any and all defenses that may exist or arise in connection with any person or entity succeeding to the interests or obligations herein, including as a result of any changes to the corporate structure or relationships among or between Kia and any of its parents, subsidiaries, or affiliates.

50.   Should any condition or other provision contained herein be held invalid, void, or illegal by any court of competent jurisdiction, it shall be deemed severable from the remainder of this Consent Order and shall in no way affect, impair, or invalidate any other provision of this Consent Order.

51.   This Consent Order shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Order.

52.   This Consent Order may be executed in counterparts, each of which shall be considered effective as an original signature.

53.  This Consent Order is a fully integrated agreement and shall in all respects be interpreted, enforced, and governed under the federal law of the United States.  This Consent Order, which is fully incorporated hereto by reference, sets forth the entire agreement between the parties with regard to the subject matter hereof.  There are no promises, agreements, or conditions, express or implied, other than those set forth in this Consent Order.

[SIGNATURE PAGES FOLLOW]

APPROVED AND SO ORDERED:


NATIONAL HIGHWAY TRAFFIC SAFETY
ADMINISTRATION,
U.S. DEPARTMENT OF TRANSPORTATION


Dated: November 23, 2020

By: James Owens

Digitally signed by James Owens
DN: cn=James Owens, o, ou=NHTSA,
email=james.owens@dot.gov, c=US
Date: 2020.11.23 16:59:38 -05'00'

James C. Owens
Deputy Administrator


Dated: November 23, 2020

By: JONATHAN CHARLES MORRISON

Digitally signed by JONATHAN
CHARLES MORRISON
Date: 2020.11.23 16:57:13 -05'00'

Jonathan C. Morrison
Chief Counsel


Dated: November 23, 2020

By: KERRY E KOLODZIEJ

Digitally signed by KERRY E
KOLODZIEJ
Date: 2020.11.23 16:51:16 -05'00'

Kerry E. Kolodziej
Assistant Chief Counsel
   for Litigation and Enforcement


Dated: November 23, 2020

By: SARAH E SORG

Digitally signed by SARAH E
SORG
Date: 2020.11.23 16:49:04 -05'00'

Sarah E. Sorg
Senior Trial Attorney


Dated: November 23, 2020

By: HUNTER BRADLEY OLIVER

Digitally signed by HUNTER
BRADLEY OLIVER
Date: 2020.11.23 16:40:00 -05'00'

Hunter B. Oliver
Trial Attorney


19

AGREED:

KIA

Dated: November 20, 2020                    By: _____

Mark Goldzweig
Executive Director, Associate General
    Counsel
Kia Motors America, Inc.


Dated: November 20, 2020                    By: _____

Erika Z. Jones
Mayer Brown LLP
Counsel for Kia Motors America, Inc.